# **Exhibit 1**



# BEAZLEY COMMERCIAL CRIME

These Declarations along with the statements contained in the information and materials provided to the Underwriters in connection with the underwriting and issuance of this Policy, and the Policy with endorsements shall constitute the contract between the **Insureds** and the Underwriters.

## GENERAL INFORMATION

**Insurer:** Beazley Insurance Company, Inc.

**Named Insured:** International Paper Company

**Named Insured Address:** 6400 Poplar Avenue
Memphis, TN 38197

**Notice of Claim:** Beazley USA Services, Inc.
Attn: Claims
30 Batterson Park Road
Farmington, CT 06032
Tel: (888) 222-1123
Fax: (860) 679-0247
Email: Crime_Insurance_Claims@beazley.com

**Administrative Notice:** Beazley USA Services, Inc.
30 Batterson Park Road
Farmington, CT 06032
Tel: (860) 677-3700
Fax: (860) 679-0247

## POLICY INFORMATION

**Policy Number:** V27C90190101

**Policy Period:** From: 01-Jul-2019     To: 01-Jul-2020
*Both at 12:01 a.m. Local Time at the Named Insured Address*

**Premium:** $110,124

**Policy Form:** Beazley Commercial Crime (F00718 092018 ed.)

F00719
092018 ed.
Date Issued: 22-Jul-2019 11:27:17 AM

Page 1 of 3

222cv02789_BeazProd_000017



| COVERAGE SCHEDULE (Currency in USD) | | |
|---|---|---|
| | Limit (each loss) | Deductible (each loss) |
| Employee Dishonesty | $15,000,000 | $1,000,000 |
| On-Premises | $15,000,000 | $1,000,000 |
| In-Transit | $15,000,000 | $1,000,000 |
| Forgery or Alteration | $15,000,000 | $1,000,000 |
| Money Orders and Counterfeit Paper Currency Fraud | $15,000,000 | $10,000 |
| Computer Fraud and Funds Transfer Fraud | $15,000,000 | $1,000,000 |
| Client Property Coverage | $15,000,000 | $10,000 |
| Credit Card Coverage | $15,000,000 | $10,000 |
| Expense Coverage | $500,000 | $0 |
| Fraudulent Instruction | $10,000,000 | $1,000,000 |

## ENDORSEMENTS EFFECTIVE AT INCEPTION

| | | |
|---|---|---|
| 1. | E02804 032011 ed. | Sanction Limitation and Exclusion Clause |
| 2. | A01747TN 092018 ed. | Tennessee Amendatory Endorsement |
| 3. | BICMU05070406 | War and Civil War Exclusion |
| 4. | EIP013 072019 ed. | Amend  Automatic Discovery  Period |
| 5. | E12904 052019 ed. | Amend Definition of Control Group |
| 6. | E11815 092018 ed. | Amend Fraudulent Instruction Coverage (No Authentication) |
| 7. | E11816 092018 ed. | Amend Notices Threshold |
| 8. | E11796 092018 ed. | Amend Terminated Employee to 90 Days |
| 9. | E11812 092018 ed. | Amend Transactions That Impact Coverage |
| 10. | BICMU05100507 | Inconsistency Endorsement |
| 11. | E11798 092018 ed. | Omnibus Insured Endorsement |
| 12. | E11811 092018 ed. | Tax Compensation Endorsement |

F00719
092018 ed.
Date Issued: 22-Jul-2019 11:27:17 AM

Page 2 of 3

222cv02789_BeazProd_000018


_____
Authorized Representative

22-Jul-2019
_____
Date

_____
Secretary

_____
President

F00719
092018 ed.
Date Issued: 22-Jul-2019 11:27:17 AM

Page 3 of 3

222cv02789_BeazProd_000019



# BEAZLEY COMMERCIAL CRIME

In consideration of payment of the premium and in reliance on all statements made in the Application for this Policy and all information provided to the Underwriters and subject to all the provisions of this Policy, the Underwriters and the first named **Insured** on behalf of all **Insureds** agree:

## INSURING AGREEMENTS

### Employee Dishonesty

The Underwriters shall indemnify the **Insured** for:

1. **Loss** resulting directly from **Employee Theft** or **Employee Forgery**, and

2. **Loss** sustained by an **ERISA Plan** resulting from a **Fraudulent or Dishonest Act** committed by an **Employee** acting alone or in collusion with others.

### On Premises

The Underwriters shall indemnify the **Insured** for **Loss** resulting directly from:

1. **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party** of **Money, Securities** or **Property** within the **Premises** or **Banking Premises**;

2. physical destruction, misplacement or mysterious unexplainable disappearance of **Money, Securities** or **Property** from the **Premises**;

3. **Loss** of or damage to **Property** within the **Premises** resulting from an actual or attempted **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party**;

4. damage to the **Premises** or its exterior resulting from an actual or attempted **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party** but only to the extent that the **Insured** is the owner of the **Premises** or is liable for such damage; or

5. **Loss** of or damage to a locked safe, vault, cash box, cash register or cash drawer within the **Premises** resulting from an actual or attempted **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party**.

### In Transit

The Underwriters shall indemnify the **Insured** for **Loss** resulting directly from:

1. **Robbery** or **Theft** committed solely by a **Third Party** of **Money** or **Securities** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**;

2. physical destruction, misplacement or mysterious unexplainable disappearance of **Money** or **Securities** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**; or

222cv02789_BeazProd_000020

3.    damage from an actual or attempted **Robbery** or **Theft** committed solely by a **Third Party** to the **Insured's Property** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**.

### Forgery or Alteration

The Underwriters shall indemnify the **Insured** for **Loss** resulting directly from **Forgery** or alteration by a **Third Party** of any checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in **Money** that are:

1.    made or drawn by or upon the **Insured** or that are purported to have been so made or drawn; or

2.    made or drawn by one acting as the **Insured's** agent or that are purported to have been so made or drawn.

### Counterfeit Checks

The Underwriters shall indemnify the **Insured** for **Loss** resulting directly from any check that is purported to have been made or drawn upon the **Insured** which is a counterfeit.

### Money Orders and Counterfeit Paper Currency Fraud

The Underwriters shall indemnify the **Insured** for **Loss** resulting directly from the **Insured's** acceptance in good faith, in exchange for **Merchandise, Money** or services of:

1.    any money order issued or purporting to have been issued by any post office, express company or bank, if such money order is not paid upon presentation; or

2.    counterfeit paper currency of any country that is acquired in the regular course of business from a **Third Party**.

### Computer Fraud and Funds Transfer Fraud

The Underwriters shall indemnify the **Insured** for:

1.    **Loss** resulting directly from **Computer Fraud** committed solely by a **Third Party**; or

2.    **Loss** resulting directly from **Funds Transfer Fraud** committed solely by a **Third Party**.

### Client Property Coverage

The Underwriters shall indemnify the **Insured** for **Loss** of or damage to **Money**, **Securities** or **Property** sustained by a **Client** resulting directly from **Theft** or **Forgery** committed by an identified **Employee** not in collusion with the **Client** or any agent or employee of the **Client**, but only to the extent the **Insured** is legally liable to the **Client** for such **Loss**.

### Credit Card Coverage

The Underwriters shall indemnify the **Insured** for **Loss** resulting directly from **Credit Card Fraud**.

222cv02789_BeazProd_000021

**Expense Coverage**

The Underwriters shall indemnify the **Insured** for **Expenses** incurred by the **Insured** and that results from any **Loss** covered hereunder.

**Fraudulent Instruction**

The Underwriters shall indemnify the **Insured** for **Loss** resulting directly from an **Insured** having transferred, paid, or delivered any **Money** or **Securities** as a direct result of **Fraudulent Instructions** provided by a person purporting to be a **Vendor**, **Client**, or an **Authorized Employee**.

## DEFINITIONS

**Authorized Employee** means an **Employee** who is authorized by the **Insured** to transfer **Money** or **Securities** or to instruct other **Employees** to transfer **Money** or **Securities**.

**Banking Premises** means the interior of that portion of any building occupied by a banking institution or similar safe depository institution, including any night depository chute or safe maintained by the institution.

**Change of Control** means:

1.     the acquisition of any **Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of any **Insured** into or with another entity such that the Insured is not the surviving entity; or

2.     the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate more than 50% of the board of directors or board of managers or to exercise a majority control of the board of directors, board of managers, or a functional equivalent thereof of any Insured.

**Client** means a customer of the **Insured** to whom the **Insured** provides goods or services under a written contract or for a fee.

**Computer Fraud** means the **Theft** of **Money, Securities** or **Merchandise** by a **Third Party**, through the use of any **Computer System**.

**Computer System** means a computer or computer network including input, output, processing, storage and communication facilities and shall include off-line media libraries.

**Control Group** means the General Counsel, Human Resource, Internal Audit or Risk Management departments of the **Insured** or their equivalent.

**Credit Card Fraud** means **Forgery** or alteration of, on or in, any written instrument required in connection with any credit, debit or access card issued to the **Insured** or at the request of the **Insured**, for business purposes of the **Insured**, to any **Employee** of the **Insured**; provided such **Forgery** or alteration is committed by a **Third Party**.

**Data** means information contained in manuscripts, records, accounts, microfilms, tapes or other records, whether or not contained in a **Computer System**.

**Discovery** or **Discovered** means the moment when any member of the **Control Group** of the **Insured** first becomes aware of facts which would cause a reasonable person to believe that a

222cv02789_BeazProd_000022

**Loss** covered by this Policy has been or will be incurred, even though the exact amount or details of **Loss** may not then be known. This includes **Loss**:

1.  sustained prior to the coverage inception date shown under the Policy Information in the Declarations; or

2.  which does not exceed the Deductible shown under the Coverage Schedule in the Declarations.

**Discovery** or **Discovered** also includes the **Insured's** receipt of notice of an actual or potential claim against the **Insured** alleging facts that if true would constitute a covered **Loss** under this Policy.

**Employee** means:

1.  a natural person:

    (i)   while in the regular service of the **Insured** in the ordinary course of its business or for sixty (60) days after termination of service;

    (ii)  whom the **Insured** has the right to direct and control while performing labor or service for the **Insured** whether such labor or service is on a part-time, temporary, seasonal or full-time basis; and

    (iii) who is compensated directly by the **Insured** through salary, wages or commissions;

2.  a natural person who is a volunteer or leased **Employee** directed and controlled by the **Insured** while performing labor or service for the **Insured** pursuant to a lease or other written contract to which the **Insured** is a party;

3.  a natural person who is a director, trustee, officer, administrator, manager or partner of the **Insured,** when performing acts coming within the scope of the usual duties of an **Employee**, whether or not they are compensated;

4.  a natural person who is a trustee, officer, employee, administrator, fiduciary or manager of any **ERISA Plan** or any other natural person who is required to be bonded by Title 1 of the Employee Retirement Income Security Act of 1974, as amended;

5.  a natural person who is a former or retired **Employee** who is retained as a consultant, but solely while such individuals are performing acts within the scope of the usual duties of an **Employee** for or on behalf of the **Insured**, and while under the supervision, direction and control of the **Insured**.

6.  members of any committee duly authorized by the **Insured**, but solely while such individuals are performing services within the scope of the usual duties of an **Employee** for or on behalf of the **Insured**.

7.  students and/or interns gaining work experience;

8.  employees on leave of absence or military leave of absence;

but solely while such individuals are performing acts within the scope of the usual duties of an employee for or on behalf of the **Insured**, and while under the supervision, direction and control of the Insured.

222cv02789_BeazProd_000023

The term **Employee** does not include any agent, broker or commission merchant of the **Insured**.

**Employee Forgery** means **Forgery** or alteration by an **Employee** of any checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in **Money,** that are:

1. made or drawn by or drawn upon the **Insured** or that are purported to have been so made or drawn; or

2. made or drawn by one acting as the **Insured's** agent or that are purported to have been so made or drawn.

**Employee Forgery** includes **Forgery** or alteration by an **Employee** of, on or in, any written instrument required in connection with any credit, debit or access card issued to the **Insured** or at the request of the **Insured**, to any **Employee** of the **Insured**.

**Employee Theft** means the unlawful taking of **Money, Securities** or **Property** to the deprivation of an **Insured** by an **Employee**, whether identified or not, acting alone or in collusion with others to obtain financial benefit for the Employee Financial benefit does not include any employee benefits earned in the normal course of employment, including salaries, commission, fees, bonuses, promotions, awards, profit sharing or pensions.

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974 ("**ERISA**"), as amended, which is operated solely by an **Insured** or jointly by an **Insured** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this Policy or which is created or acquired after the inception of this Policy.

**Executive Shareholder** means any **Employee**, director, trustee, officer, administrator, manager, partner, or shareholder of the **Insured** that has a 25% or greater ownership interest in the **Insured** or any other person or entity that has a 25% or greater ownership interest in the **Insured**.

**Expenses** means reasonable expenses, other than an **Insured's** internal corporate costs (such as **Employee** remuneration or **Employee** expenses), incurred by an **Insured** with the Underwriters' prior written consent to:

1. establish the existence and amount of a covered loss in excess of the Deductible;

2. reproduce **Data**; or

3. repair or replace to a substantially similar standard any safe or vault damaged as a result of **Robbery** or **Safe Burglary**.

With respect to **Forgery** coverage under the Forgery or Alteration insuring agreement, **Expenses** also means reasonable attorney fees, court costs and legal expenses incurred and paid with the Underwriters' prior written consent by the **Insured** in defending the **Insured** in any legal proceeding to enforce payment of checks, drafts or similar written promises, orders or directions to pay a sum of certain money that are made, drawn by or drawn upon an **Insured** or by anyone acting as an **Insured's** agent or that are purported to have been so made or drawn upon.

With respect to **Credit Card Fraud** coverage under the Credit Card Coverage insuring

222cv02789_BeazProd_000024

agreement, **Expenses** also means reasonable attorney fees, court costs and legal expenses incurred and paid with the Underwriters' prior written consent in defending an **Insured** in any legal proceeding brought against it to enforce payment of a written instrument in connection with a credit card.

The Underwriters shall not be liable for **Expenses** arising out of punitive, exemplary or multiplied damages of any kind.

**Financial Institution** means:

1.  a bank, credit union, saving and loan association, trust company or other licensed financial service where the **Insured** maintains a **Transfer Account**; or

2.  a securities broker-dealer, mutual fund, liquid assets fund or similar investment company where the **Insured** maintains a **Transfer Account**.

**Forgery** means the signing of another natural person or entity's name with intent to deceive but does not mean a signature that includes one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

**Fraudulent or Dishonest Act** shall be defined as having the meaning set forth in Title 29, Code of Federal Regulations, Section 2580.412-9, as amended.

**Fraudulent Instruction** means a fraudulent written instruction, electronic instruction (including email or web-based instruction) or telephone instruction that is intended to mislead an **Insured** through the misrepresentation of a material fact that is relied upon in good faith by such **Insured**.

**Funds Transfer Fraud** means the fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions by a **Third Party** issued to a **Financial Institution** directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by an **Insured** at such institution, without the **Insured's** knowledge or consent.

**Insured(s)** means the entity designated under the General Information in the Declarations and/or any additional **Insureds** listed therein and any **Subsidiary** or **ERISA Plan**.

**Loss** means direct financial loss.

Solely with respect to **Loss** sustained by an **ERISA Plan,** payment by the Underwriters for covered **Loss** shall be to the **ERISA Plan** sustaining such **Loss**. If such payment is in excess of the amount of coverage required by ERISA for any such **ERISA Plan(s)**, such excess shall be held for the use and benefit of any other named **ERISA Plan(s)** should such **ERISA Plan(s)** also discover **Loss** recoverable hereunder.

All **Loss** arising out of or resulting from the same **Fraudulent Instruction**, multiple or a series of **Fraudulent Instructions** purporting to be from the same **Vendor, Client** or **Authorized Employee** or related **Vendors, Clients** or **Authorized Employees**, or multiple or a series of **Fraudulent Instructions** from the same **Third Party** or related **Third Parties** shall be deemed a single **Loss** under this Policy subject to the limit set forth in the Declarations.

The Underwriters shall not be liable for **Loss** arising out of punitive, exemplary or multiplied damages of any kind.

**Merchandise** means the **Insured's** inventory, raw materials, work in progress and manufactured or distributed products.

222cv02789_BeazProd_000025

**Messenger** means any **Insured** or **Employee** duly authorized by the **Insured** to have care and custody of **Money**, **Securities** or the **Insured's Property** outside the **Premises**.

**Money** means:

1.    means a medium of exchange in current use authorized or adopted by a domestic or foreign government as a part of its currency; and

2.    any traveler's checks, register checks or money orders held for sale to the public.

**Out-of-Band Authentication** means a method of challenge and response to the requestor of a transfer, payment or delivery of **Money** or **Securities** by an **Insured**, via a method other than the original means of request, to verify the authenticity or validity of the request.

**Policy Period** means the period from the effective date and time of this Policy to the Policy expiration date and time as set forth under the Policy Information in the Declarations or its earlier cancellation or termination, if any, pursuant to the Liability for Prior Losses provision under the General Conditions.

**Premises** means the interior portion of any building occupied by the **Insured** in conducting its business.

**Property** means tangible property other than **Money** or **Securities** that has intrinsic value but does not include any property excluded under this Policy.

**Robbery** means the unlawful taking of **Money**, **Securities** or **Property** from the custody of an **Employee** or other person authorized by an **Insured** to act as custodian of such **Money, Securities** or **Property**, except a person acting as a watchman, porter or janitor, by violence or threat of violence, committed in the presence and cognizance of such person.

**Safe Burglary** means the unlawful taking of **Money**, **Securities** or **Property** by forcible or violent entry, evidenced by visible marks, from a locked vault or safe located within the **Premises**.

**Securities** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property** and includes:

1.    tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

2.    evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **Insured**,

but does not include **Money**.

**Subsidiary** means any entity, while more than 50% of the outstanding voting securities representing the present right to vote for the election of such entity's directors or the right to elect or otherwise designate more than 50% of such entity's managers is owned or controlled by the **Insured** directly or indirectly, if such entity:

1.    was so owned prior to the inception date of this Policy and was insured under a policy issued by the Underwriters of which this Policy is a renewal;

2.    was so owned on the inception date of this Policy;

222cv02789_BeazProd_000026

3.    becomes so owned after the inception date of this Policy pursuant to the Transactions That Impact Coverage provision under the General Conditions.

**Subsidiary** also means the **Insured's** participation in a Joint Venture, but only to the extent of the **Insured's** ownership interest unless:

1.    the **Insured** has the largest ownership of any Joint Venture partner;

2.    the **Insured** is contractually obligated to manage and supervise the operation; and

3.    the **Insured's** policies and procedures are established and adhered to for operation of the Joint Venture.

If all three of the above conditions are met, then the Joint Venture will be covered. It is further understood that if the respective Joint Venture has other valid or collectible insurance, then this Policy shall apply in as excess to that other valid and collectible insurance, but only to the extent of the **Insured's** ownership interest.

**Theft** means the unlawful taking of **Money**, **Securities** or other **Property** to the deprivation of the **Insured** or a **Client**.

**Third Party** means any person or entity other than an **Insured, Employee** or **Executive Shareholder**.

**Transfer Account** means an account maintained by the **Insured** at a **Financial Institution** from which the **Insured** can initiate the transfer, payment or delivery of **Money** or **Securities**.

**Vendor** means any entity or natural person that provides goods or services to the **Insured** pursuant to a written agreement.

## EXCLUSIONS

### Trading Losses

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of the authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of the **Insured** and whether or not in a genuine or fictitious account; provided however, that this exclusion does not apply to **Loss** caused by **Employee Theft** that results in improper financial gain to such **Employee**; provided further that salary, commissions, fees or other emoluments, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**, shall not constitute improper financial gain;

### Trade Secrets and Confidential Information

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of loss of trade secrets, confidential processing methods, confidential information, patents, copyrights, trademarks or intangible or intellectual property of any kind;

### Nuclear and Fire

This Policy does not cover **Loss** directly or indirectly occasioned by, happening through or in consequence of:

222cv02789_BeazProd_000027

1. nuclear reaction, nuclear radiation, radioactive contamination or any related act or incident; and

2. fire, however caused;

### Potential Income

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of income not realized as the result of a covered **Loss**;

### Indirect or Consequential

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of indirect or consequential loss of any kind except for covered **Expenses** under the Expense Coverage insuring agreement;

### Data Fees, Costs or Expenses

The Underwriters shall not be liable under any insuring agreement for **Loss** or **Expenses** arising out of:

1. the reconstitution of **Data** recorded on magnetic or optical media if there are no analysis files, specifications, nor backups of software or **Data** held outside the **Premises**;

2. the reconstitution of **Data** if an **Insured** knowingly uses illegal copies of programs;

3. rendering **Data** usable by replacement processing equipment;

4. the design, update or improve software or programs or to perfect their operation or performance;

5. expenses incurred as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the **Computer System**; or

### Legal Fees, Costs or Expenses

The Underwriters shall not be liable for **Loss** or **Expenses** incurred or paid by an **Insured** in defending or prosecuting any legal proceeding or claim, provided that this Exclusion shall not apply to the coverage provided under the Expense Coverage insuring agreement;

### Voluntary Exchange or Purchase

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of the **Insured** knowingly having given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**; provided that this exclusion shall not apply to loss under the Money Orders and Counterfeit Paper Currency Fraud insuring agreement;

### Custodial

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of damage to **Money, Securities** or **Property** while in the care and custody of an armored motor vehicle company; however, this exclusion shall not apply in the event the **Insured** cannot

222cv02789_BeazProd_000028

recover the amount of **Loss**:

1. under the **Insured's** contract with such armored motor vehicle company; or

2. from any insurance or indemnity carried by or for the benefit of customers of, the armored motor vehicle company;

### Affiliates and Prior Employees

The Underwriters shall not be liable under the Employee Dishonesty, Client Property Coverage or Expense Coverage insuring agreements for loss or damage sustained by any **Insured** caused by:

1. any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor, or similar person or entity; or

2. any **Employee** acting alone or in collusion with any other employee more than 30 days following the termination of such **Employee**.

### Fraudulent, Dishonest or Criminal Acts

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of:

1. any fraudulent, dishonest or criminal act or omission by any **Insured** or any **Executive Shareholder** thereof whether acting alone or in collusion with others;

2. any fraudulent, dishonest or criminal act or omission by any **Employee**:

    (i) whether acting alone or in collusion with any other person or entity; or

    (ii) while performing services for the **Insured** or otherwise;

    except when covered under the Employee Dishonesty, Client Property Coverage or Expense Coverage insuring agreements.

### Damage, Vandalism and Malicious Mischief

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of

1. damage to the **Premises**, except as covered under the On-Premises insuring agreement;

2. loss of or damage to any property, safe, vault, or to the **Premises** or its exterior, by vandalism or malicious mischief.

### Accounting or Arithmetical Errors

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of

1. accounting or arithmetical errors or omissions;

2 **Loss**, or that part of any **Loss**, the proof of which as to its existence or amount is dependent solely upon:

    (i) an inventory computation or physical count; or

222cv02789_BeazProd_000029

(ii)     a profit and loss computation;

## Kidnap, Ransom or Extortion

The Underwriters shall not be liable under any insuring agreement for **Loss** or **Expenses** arising out of a kidnap, ransom or other extortion payment surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property.

## Other Insuring Clauses

The Underwriters shall not be liable under the On-Premises, In-Transit or Expense Coverage insuring agreements for loss or damage sustained by any **Insured** resulting directly or indirectly from:

1.     **Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Paper Currency Fraud** or **Credit Card Fraud**; or

2.     loss of or damage to **Money, Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

## Forgery or Alteration

The Underwriters shall not be liable under the Credit Card Coverage or Expense Coverage insuring agreements for loss or damage sustained by any **Insured** resulting directly or indirectly from **Forgery** or alteration of, on or in any written instrument; provided that this exclusion shall not apply if:

1.     the terms and conditions under which the credit, debit or access card was issued were fully complied with; and

2.     an **Insured** is legally liable to the issuer of such credit, debit or access card for such loss.

## Fraudulent Instruction

1.     The Underwriters shall not be liable under this Policy for any **Loss** or **Expenses** sustained by any **Insured** that results from or arises out of, directly or indirectly, any actual or purported instruction to transfer **Money**, **Securities**, **Property**, **Merchandise**, **Data** or any other item or information; provided that this exclusion shall not apply to **Loss** to which the Fraudulent Instruction insuring agreement applies.

2.     The Underwriters shall not be liable under the Fraudulent Instruction insuring agreement for **Loss** or **Expenses** arising out of or resulting from, either directly or indirectly:

(i)     the actual or alleged use of credit, debit, charge, access, convenience, customer identification or other cards;

(ii)     any transfer of money, goods, information or other item involving any person or entity, who is not an **Authorized Employee**, with authorized access to the **Insured's** authentication mechanism;

(iii)     the processing of, or the failure to process, credit, check, debit, personal identification number debit, electronic benefit transfers or mobile

222cv02789_BeazProd_000030

payments for merchant accounts; or

(iv)     any **Fraudulent Instruction** that was not verified with the requestor using an **Out-of-Band Authentication**.

**Plastic Card**

The use of credit, debit, charge, access, convenience, identification or other cards

1.     in obtaining credit; or

2.     in gaining access to automated mechanical devices which, on behalf of the **Insured**, disburse money, accept deposits, cash checks, drafts or similar written instruments or make credit card loans; or

3.     in gaining access to point of sale terminals, customer-bank communication terminals, or similar electronic terminals of electronic funds transfer systems

## LIMIT OF LIABILITY AND COVERAGE

The Underwriters' maximum limit of liability for each **Loss** shall be the Limits of Liability for each insuring agreement as set forth under the Coverage Schedule in the Declarations. The payment of loss under one insuring agreement shall not reduce the Limit of Liability available for the other insuring agreements.

A **Loss** resulting from a single act or any number of acts in which the same **Employee** or **Third Party** is concerned or implicated, whether such act or acts occurred before or during the **Policy Period**, will be treated as a single **Loss** hereunder.

If a **Loss** is covered under more than one insuring agreement, the maximum amount payable under this Policy shall not exceed the largest single applicable Limit of Liability of such insuring agreements as provided under the Coverage Schedule in the Declarations.

If covered **Loss** is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered **Loss** shall be the lesser of 10% of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's fiscal** year or five hundred thousand dollars ($500,000).

If covered **Loss** is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered **Loss** shall be the lesser of 10% of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year or one million ($1,000,000); provided that, in all events:

1.     if the applicable Limit of Liability as set forth under the Coverage Schedule in the Declarations is less than the amounts set forth in paragraphs 1. or 2. above, then the applicable Limit of Liability shall be amended to the respective amounts set forth in paragraphs 1. or 2. above; or

2.     if the applicable Limit of Liability as set forth under the Coverage Schedule in the Declarations equals or exceeds the amounts set forth in paragraphs 1. or 2. above, then the applicable Limit of Liability shall be the Limit of Liability as set forth in the Declarations applicable to this coverage section.

222cv02789_BeazProd_000031

## NON-ACCUMULATION OF LIABILITY

When there is more than one **Insured** involved in a **Loss**, the maximum liability of the Underwriters for **Loss** sustained by one or all such **Insureds** shall not exceed the amount for which the Underwriters would be liable if all **Loss** was sustained by any one of the **Insureds**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the amount the Underwriters shall pay for a **Loss** shall not be cumulative from year to year or from one policy period to another policy period.

## DEDUCTIBLE

The Underwriters shall pay **Loss** that exceeds the amount of recoveries made prior to such payment, less the applicable Deductible set forth under the Coverage Schedule in the Declarations.

If an **Insured** receives payment under another Policy or bond which was issued to the **Insured**, after applying a deductible, for **Loss** also covered hereunder, then the Deductible set forth under the Coverage Schedule in the Declarations shall be reduced by the deductible previously applied to such **Loss**.

With respect to a **Loss** for which coverage is provided by this policy and which is sustained partly during the period of other policies providing coverage for such **Loss** issued to the **Insured** or to any predecessor in interest of the **Insured** and terminated or cancelled or allowed to expire as of the inception date of this policy, the amount of the deductible that is applicable to the portion of the **Loss** sustained during this policy period shall be reduced, in whole or in part, by:

1.    The amount of the **Loss** which is sustained by the **Insured** during the period of other policies if such **Loss** is less than the amount of the deductible applicable to that **Loss** under these other policies, or

2.    The amount of the deductible applicable to the **Loss** sustained by the **Insured** during the period of the other policies if the applicable deductible is less than the amount of the **Loss** sustained during that period.

## DISCOVERY

Subject to the Liability for Prior Losses provision under the General Conditions, this Policy only applies to **Loss** which is **Discovered** during the **Policy Period**.

**Loss** is covered under this Policy only if **Discovered** no later than 60 days from the end of the **Policy Period** (such 60-day period is the "automatic discovery period"). At any time prior to the termination of this Policy, the **Insured** may give written notice to the Underwriters requesting an extension of the discovery period for **Loss** under this Policy to 12 months from the end of the **Policy Period** (the "extended discovery period") and shall pay an additional premium to be determined by the Underwriters in its sole discretion. The automatic discovery period terminates immediately upon the inception date of any other insurance obtained by the **Insured** replacing in whole or in part the insurance afforded hereunder whether or not such other insurance provides coverage for **Loss** sustained prior to its effective date. Coverage provided by such automatic discovery period or extended discovery period will apply only to **Loss Discovered** during the automatic and/or extended reporting period(s) that is sustained during the **Policy Period**. In all events, the extended discovery period will not be available if this Policy is cancelled for non-payment of premium as provided in part 2.(ii) of the Termination, Cancellation and Nonrenewal provision under the General Conditions.

222cv02789_BeazProd_000032

**Loss** for **ERISA Plan** assets is covered under this Policy only if **Discovered** no later than twelve (12) months from the end of the **Policy Period**, as required under ERISA.

## NOTICES

It is a condition precedent to coverage hereunder that, upon **Discovery** of **Loss** or an occurrence which may result in a covered **Loss** which exceeds or is likely to exceed 50% of the applicable Deductible, the first named **Insured** shall comply with the following:

1.      The first named **Insured** shall give written notice to the Underwriters at the earliest practicable moment and in any event within the earliest of:

   (i)      90 days of **Discovery**; or

   (ii)     90 days following termination of the Policy.

2.      Such notice to the Underwriters shall be provided to the contact shown under the General Information in the Declarations at the address set forth therein.

## PROOF OF LOSS AND LEGAL PROCEEDINGS

It is a condition precedent to coverage hereunder that, upon **Discovery** of **Loss** or an occurrence which may result in a covered **Loss** which exceeds or is likely to exceed 50% of the applicable Deductible, the first named **Insured** shall comply with the following:

1.      The first named **Insured** in the Declarations shall furnish a sworn proof of loss with full particulars to the Underwriters within 6 months of **Discovery** and shall thereafter:

   (i)      submit to examination under oath at the Underwriters' request;

   (ii)     produce all pertinent records at such reasonable times and places as the Underwriters shall designate;

   (iii)    fully cooperate with the Underwriters or their counsel in all matters pertaining to a **Loss**; and

   (iv)    not take any action which in any way increases the Underwriters' exposure under this Policy.

   The first named **Insured** in the Declarations shall have 12 months to furnish a sworn proof of loss to the Underwriters for losses that may be covered under the ERISA Plan Coverage insuring agreement pursuant to the ERISA Act of 1974.

2.      The first named **Insured** in the Declarations may offer a comparison between an **Insured's** inventory records and actual physical count of its inventory to prove the amount of **Loss**, but only where the **Insured** establishes wholly apart from such comparison that it has sustained a covered **Loss**.

## GENERAL CONDITIONS

### Reliance Upon and Incorporation of Application

In issuing this Policy, the Underwriters have relied upon the statements made in the

222cv02789_BeazProd_000033

written application for this Policy and all information provided to the Underwriters. All such statements are the basis of this Policy and shall be incorporated in and constitute part of this Policy.

## Transactions That Impact Coverage

If an **Insured** consolidates or merges with, acquires majority voting rights in or acquires the assets of another entity which results in an increase of the **Insured's** total revenues by more than 25%, coverage is provided to such entity if an **Insured**:

1.     gives the Underwriters written notice within 90 days from the date of such consolidation, merger or acquisition; and

2.     pays the Underwriters any additional premium required by the Underwriters.

Coverage hereunder shall be afforded for **Loss** which is sustained on or after the effective date of the transaction.

## Termination, Cancellation and Nonrenewal

1.     This Policy shall terminate as to any **Employee** as soon as any **Insured** or any member of the **Control Group** of the **Insured** not in collusion with the **Employee** acquires knowledge of any unlawful taking of **Money**, **Securities** or **Property**, or other fraudulent or dishonest act committed by such **Employee** during any term of employment with an **Insured**;

2.     This Policy shall terminate in its entirety upon occurrence of any of the following:

   (i)     10 days after the mailing of written notice to the **Insured** from the Underwriters in the event of nonpayment of premium; or

   (ii)    60 days after the mailing of written notice to the **Insured** from the Underwriters for any other reason

   (iii)   **Change of Control**.

3.     The notice of cancellation from the Underwriters shall state the reason for cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

4.     This Policy may be cancelled by the **Insured** by mailing or delivering to the Underwriters advance written notice of cancellation. The mailing or delivery of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.

5.     If this Policy is cancelled, the Underwriters shall send the **Insured** any premium refund as soon as practicable. The refund shall be on a pro-rata basis. The return or tender of a return premium is not a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

6.     If the Underwriters decides not to renew this Policy, the Underwriters shall provide written notice to the **Insured** designated under the General Information in the Declarations at least 60 days before the end of the Policy Period. The notice of nonrenewal shall state the reason for nonrenewal.

222cv02789_BeazProd_000034

## Liability for Prior Losses

If the **Insured** or its predecessor in interest, sustained **Loss** during the policy period of any prior insurance policy that was substantially similar to this Policy and could have recovered under that insurance policy except that the time within which to discover loss had expired, the Underwriters will pay for it under this Policy provided:

1. This insurance became effective at the time of cancellation or termination of the prior insurance or insurance subsequent thereto without any interruption in coverage;

2. The **Loss** would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred; and

3. The **Loss** is **Discovered** during the **Policy Period**; or during the discovery period described in the Liability for Prior Losses provision under the General Conditions.

In no event will coverage be available under this Policy if such **Loss** is covered under any renewal or replacement of this Policy in whole or in part.

Any coverage provided pursuant to this paragraph is part of and not in addition to the Limits of Liability applicable to this Policy and the Underwriters' liability shall not exceed the limit of liability under the policy in force at the time such **Loss** was sustained or the applicable Limit of Liability shown under the Coverage Schedule in the Declarations, whichever is less.

In the event that a **Loss** is covered under this Policy and another policy, it is hereby agreed that the applicable insuring agreement deductible for this Policy shall be reduced by the applicable deductible of the other policy.

Coverage will be available for **Loss** sustained at any time and **Discovered** during the **Policy Period**, provided that coverage for loss sustained prior to the effective date of this **Policy Period**, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, is subject to the following:

1. if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was not issued by the Underwriters or its affiliates and such loss was first **Discovered** by an **Insured** prior to the expiration of the time allowed for discovery under the last such policy, then no coverage shall be available under this Policy, unless the total amount of covered loss exceeds the limit of liability of the last such bond or policy carried by the **Insured** or predecessor in interest of such **Insured**, and the Company's Limit of Liability for any such loss will be in excess of the limit of liability of the last bond or policy subject to all of the terms and conditions of this Policy; or

2. if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was issued by the Underwriters or its affiliates then such prior bond or policy shall terminate as of the inception of this Policy and such prior bond or policy shall not cover any loss not discovered and noticed to the Underwriters prior to the inception of this Policy then the Underwriters' Limit of Liability for such loss shall be the applicable Limit of Liability shown under the Coverage Schedule in the Declarations.

222cv02789_BeazProd_000035

### First Named Insured's Rights and Obligations

By acceptance of this Policy, the **Insured** agrees that the first named **Insured** shall act on behalf of all **Insureds** with respect to:

1. the filing of notice or proof of loss in accordance with the Notices and Proof of Loss provisions of this Policy;

2. the filing of a claim, adjustment of the amount of **Loss**, receipt or enforcement of payment of a **Loss**;

3. the payment of premium for, the acceptance of amendments to, or termination of, this Policy; and

4. the return of any premiums by the Underwriters to the **Insured**.

### Other Insurance

The insurance under this Policy will apply in excess of any other valid and collectible insurance available to any **Insured** unless such other insurance is written only as specific excess insurance over this Policy.

### Ownership of Property; Interests Covered

This Policy covers only **Money**, **Securities** or **Property**:

1. that the **Insured** owns or leases;

2. that the **Insured** holds for others;

3. for which the **Insured** is legally liable; or

4. under the Client Property Coverage insuring agreement only;

    (i) that a **Client** owns or leases;

    (ii) that a **Client** holds for others; or

    (iii) for which a **Client** is legally liable

    while the **Money**, **Securities** or **Property** is inside the interior of that portion of any building the **Client** occupies in conducting its business.
    However, this Policy is for the **Insured's** benefit only. It provides no rights or benefits to any other person or entity. Any claim for loss that is covered under this Policy must be presented by the **Insured.**

### Territory

This Policy shall apply to **Loss** of the **Insured** occurring anywhere in the world.

### Valuation and Currency

In the event of a covered loss of **Money**, **Securities** or **Property**, the Underwriters shall pay, subject to Limits of Liability and Coverage, Non-Accumulation of Liability, Deductible and Discovery provisions of this Policy:

222cv02789_BeazProd_000036

1. the least of:

   (i) the face value of **Money**; or

   (ii) the United States dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day **Loss** involving foreign currency is **Discovered**.

2. the least of:

   (i) the closing price of **Securities** on the business day immediately preceding the day on which a loss is **Discovered**; or

   (ii) the cost of replacing **Securities**; or

   (iii) the cost to post a lost instrument bond.

3. the cost of blank materials, such as blank books, pages or tapes;

4. the least of:

   (i) the actual cash value of the **Property** at the time the **Loss** was sustained; or

   (ii) the cost to repair or replace the **Property** with that of similar quality and value at the time an **Insured** complies with the Proof of Loss provision of this policy regarding the furnishing of proof of loss.

## Recoveries

Recoveries, whether effected by the Underwriters or by the **Insured**, less the cost of recovery, shall be distributed as follows:

1. first, to the **Insured** for the amount of **Loss** otherwise covered but in excess of the Limits of Liability;

2. second, to the Underwriters for the amount paid to the **Insured** for covered **Loss**;

3. third, to the **Insured** for the Deductible; and

4. fourth, to the **Insured** for **Loss** specifically excluded hereunder.

Recovery from reinsurance or indemnity of the Underwriters shall not be deemed a recovery hereunder.

## Subrogation

In the event of any payment under this Policy, the Underwriters shall be subrogated to the extent of such payment to the **Insured's** rights of recovery and the **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Underwriters effectively to bring suit in the name of the **Insured**.

## No Action Against the Insurer

No action shall lie against the Underwriters unless, as a condition precedent thereto,

222cv02789_BeazProd_000037

there has been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Underwriters as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Underwriters be impleaded by the **Insured** or their legal representatives.

### Entire Agreement; Alteration and Assignment of Interest

The **Insured** agrees that this Policy, including the Declarations, constitutes the entire agreement between the **Insured** and the Underwriters or any of their agents or brokers. No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is issued by the Underwriters. Notice to or knowledge possessed by the Underwriters, the **Insured** or any agent, broker or other person acting on behalf of the **Insured** or the Underwriters shall not effect a waiver of or stop the Underwriters from asserting any rights under this Policy.

### Concealment, Misrepresentation or Fraud

This Policy is void in any case of fraud by the **Insured** as it related to this Policy at any time. It is also void if the **Insured**, at any time, in the application or otherwise, intentionally conceals or misrepresents a material fact concerning:

1. this Policy;

2. any **Money**, **Securities** or **Property** covered under this Policy;

3. the **Insured's** interest in any **Money**, **Securities** or **Property** covered under this Policy; or

4. any claim under this Policy.

### Employee Benefit ERISA Plan Provisions

In compliance with certain provisions of ERISA:

1. If any **ERISA Plan** is insured jointly with any other entity under this insurance, the **Insured** or the **ERISA Plan** administrator must select a limit of liability under the Employee Dishonesty insuring agreement that is sufficient to provide an amount of insurance for each **ERISA Plan** that is at least equal to that required if each **ERISA Plan** was separately insured.

2. If the **Insured** first named under the General Information in the Declarations is an entity other than a **ERISA Plan**, any payment the Underwriters makes to that **Insured** for **Loss** sustained by any **ERISA Plan** will be held by that **Insured** for the use and benefit of the **ERISA Plan(s)** sustaining the **Loss**.

3. If two or more **ERISA Plans** are insured under this insurance, any payment the Underwriters makes for **Loss**:

   (i)    sustained by two or more plans; or

   (ii)   of commingled funds or other property of two or more **ERISA Plans**;

   is to be shared by each **ERISA Plan** sustaining **Loss** in the proportion that the amount of insurance required for each such **ERISA Plan** under ERISA provisions bears to the total of those amounts.

222cv02789_BeazProd_000038

4.   The Deductible applicable to the Employee Dishonesty insuring agreement does not apply to **Loss** sustained by any **ERISA Plan** subject to ERISA which is insured under this insurance.

222cv02789_BeazProd_000039

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

### SANCTION LIMITATION AND EXCLUSION CLAUSE

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E02804
032011 ed.

Page 1 of 1

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**TENNESSEE AMENDATORY ENDORSEMENT**</u>

This endorsement modifies insurance provided under the following:

**BEAZLEY COMMERCIAL CRIME**

Items 2., 3., 4., 5., and 6. of **GENERAL CONDITIONS, Termination, Cancellation and Nonrenewal** are deleted in their entirety and replaced with the following:

2.   The Underwriters may cancel this Policy by mailing or delivering to the **Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The notice of cancellation shall state the reason for cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the Underwriters shall be equivalent to mailing.

Provided however, if this Policy has been in effect sixty (60) days or more or is a renewal Policy, the Underwriters may only cancel this Policy for any of the following reasons:

(i)   nonpayment of premium;

(ii)   conviction of the **Insured** of a crime having as one of its necessary elements an act increasing any hazard insured against;

(iii)   discovery of fraud or material misrepresentation on the part of either the **Insured** or the **Insured's** representative in obtaining the insurance or the **Insured** in pursuing a **Claim** under the Policy;

(iv)   failure to comply with written loss control recommendations;

(v)   material change in the risk which increases the risk of loss after insurance coverage has been issued or renewed;

(vi)   determination by the Commissioner that the continuation of the Policy would jeopardize a company's solvency or would place the Underwriters in violation of the insurance laws of Tennessee; or

(vii)   violation or breach by the **Insured** of any Policy terms or conditions.

3.   If the Underwriters cancel this Policy for the reason set forth in 2. (i) above, the Underwriters shall mail or deliver written notice to the **Named Insured** at least ten (10) days before the effective date of cancellation. If the Underwriters cancels this Policy for any of the reasons set forth in 2. (ii) through 2. (vii) above, the Underwriters shall mail or deliver written notice to the **Named Insured** at least sixty (60) days before the effective date of cancellation. The notice of cancellation shall state the reason for cancellation. If cancelled for nonpayment of premium the notice shall also include the amount of the Policy's premium that is due and the due date. No cancellation for nonpayment of premium shall be effective if payment of the amount due is made prior to the effective date set forth in the notice. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the Underwriters shall be equivalent to mailing.

222cv02789_BeazProd_000041

4. If this Policy is cancelled pursuant to the first paragraph hereinabove, the Underwriters shall retain the customary short rate portion of the premium hereon. If this Policy is cancelled pursuant to the second and third paragraphs hereinabove, the Underwriters shall retain the pro rata portion of the premium hereon. Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of cancellation.

5. If the Underwriters decide not to renew this Policy, the Underwriters shall mail or deliver written notice to the **Named Insured** at the address shown in the Declarations at least sixty (60) days before the end of the **Policy Period**. The notice of nonrenewal shall state the reason for nonrenewal.

6. If the Underwriters condition renewal on an increase of rates greater than twenty-five percent (25%), the Underwriters shall mail or deliver written notice to the **Named Insured** at the address shown in the Declarations at least sixty (60) days before the end of the **Policy Period**.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of this Policy or any endorsement to this Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of this state.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000042

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## WAR AND CIVIL WAR EXCLUSION

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding anything to the contrary contained herein this Policy does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000043

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

**AMEND AUTOMATIC DISCOVERY PERIOD**

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **DISCOVERY** is deleted in its entirety and replaced with the following:

**DISCOVERY**

Subject to the Liability for Prior Losses provision under the General Conditions, this Policy only applies to **Loss** which is **Discovered** during the **Policy Period**.

**Loss** is covered under this Policy only if **Discovered** no later than 90 days from the end of the **Policy Period** (such 90-day period is the "automatic discovery period"). At any time prior to the termination of this Policy, the **Insured** may give written notice to the Underwriters requesting an extension of the discovery period for **Loss** under this Policy to 12 months from the end of the **Policy Period** (the "extended discovery period") and shall pay an additional premium to be determined by the Underwriters in its sole discretion. The automatic discovery period terminates immediately upon the inception date of any other insurance obtained by the **Insured** replacing in whole or in part the insurance afforded hereunder whether or not such other insurance provides coverage for **Loss** sustained prior to its effective date. Coverage provided by such automatic discovery period or extended discovery period will apply only to **Loss Discovered** during the automatic and/or extended reporting period(s) that is sustained during the **Policy Period**. In all events, the extended discovery period will not be available if this Policy is cancelled for non-payment of premium as provided in part 2.(ii) of the Termination, Cancellation and Nonrenewal provision under the General Conditions.

**Loss** for **ERISA Plan** assets is covered under this Policy only if **Discovered** no later than twelve (12) months from the end of the **Policy Period**, as required under ERISA.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

EIP013
072019 ed.

Page 1 of 1

222cv02789_BeazProd_000044

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND DEFINITION OF CONTROL GROUP

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Control Group** is deleted in its entirety and replaced with the following:

**Control Group** means the Risk Manager of the **Insured** or their equivalent.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000045

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

<u>**AMEND FRAUDULENT INSTRUCTION COVERAGE (NO AUTHENTICATION)**</u>

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      Part 2.(iv). of the **Fraudulent Instruction** exclusion is deleted in its entirety.

2.      The definition of **Out-of-Band Authentication** is deleted in its entirety.


All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000046

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND NOTICES THRESHOLD

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the first paragraph of **NOTICES** is deleted in its entirety and replaced with the following:

It is a condition precedent to coverage hereunder that, upon **Discovery** of Loss or an occurrence which may result in a covered **Loss** which exceeds or is likely to exceed 35% of the applicable Deductible, the first named **Insured** shall comply with the following:

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000047

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## <u>AMEND TERMINATED EMPLOYEE TO 90 DAYS</u>

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the part 1.(i). of the definition of **Employee** is deleted in its entirety and replaced with the following:

1.(i).    while in the regular service of the **Insured** in the ordinary course of its business or for 90 days after termination of service;

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

222cv02789_BeazProd_000048

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the
"Underwriters"**

### AMEND TRANSACTIONS THAT IMPACT COVERAGE

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that
**Transactions That Impact Coverage** under **GENERAL CONDITIONS** is deleted in its entirety and
replaced with the following:

**Transactions That Impact Coverage**

If an **Insured** consolidates or mergers with, acquires majority voting rights in or acquires the
assets of another entity which results in an increase of the **Insured's** total revenues by more than
35%, coverage is provided to such entity if an **Insured**:

1.     gives the Underwriters written notice within 90 days from the date of such consolidation,
merger or acquisition; and

2.     pays the Underwriters any addition premium required by the Underwriters.

Coverage hereunder shall be afforded for loss which is discovered on or after the effective date of
the transaction.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000049

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## INCONSISTENCY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the regulatory requirements set forth in any state Amendatory Endorsement shall supersede and take precedence over any provisions of this Policy or any endorsement to this Policy, whenever added, that are inconsistent with or contrary to the provisions of such Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of this state.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000050

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**OMNIBUS INSURED ENDORSEMENT**</u>

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Insured** is amended to include any employee benefit or welfare plan now existing or hereinafter created or acquired, whether or not required to be bonded under the Employee Retirement Income Security Act of 1974; as amended by Pension Protection Act 2006.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

222cv02789_BeazProd_000051

**Effective date of this Endorsement: 01-Jul-2019**
**This Endorsement is attached to and forms a part of Policy Number: V27C90190101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### TAX COMPENSATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley Commercial Crime**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.  The Underwriters shall adjust the amount of any **Loss** paid in the United States to compensate for additional federal or state tax liability incurred by the **Insured** as a result of the payment of such **Loss** in the United States rather than in the country in which such **Loss** was sustained, provided that:

    A.  The **Loss** was sustained by an entity not subject to United States or state tax provisions; and

    B.  The payment for such **Loss** is reportable income under the Internal Revenue Code and Regulations or the tax laws of any state or commonwealth of the United States.

2.  **Loss Payment** shall be adjusted using the following formula:

    $$\text{Final Payment equals Loss Payment} \times \frac{\text{One minus the Marginal Foreign Tax Rate}}{\text{One minus the Marginal U.S. and State Tax Rate}}$$

3.  Solely for the purposes of this endorsement, **DEFINITIONS** is amended by the addition of the following:

    **Final Payment** means the amount paid after tax adjustment.

    **Loss Payment** means the amount to be paid prior to tax adjustment.

    **Marginal Foreign Tax Rate** means the marginal rate of income taxation of the **Insured** entity sustaining the **Loss** during the local tax year in which such **Loss** is written off.

    **Marginal U.S. and State Tax Rate** means the marginal rate of Federal and State income taxation of the **Insured**, in the United States, of the **Loss Payment** for the tax year in which such **Loss** is to be made.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

222cv02789_BeazProd_000052