# **Exhibit 17**



# Transcript of Pia Ellis

**Date:** December 18, 2023
**Case:** International Paper Company -v- Beazley Insurance Company, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE WESTERN DISTRICT OF TENNESSEE

3                  WESTERN DIVISION

4    - - - - - - - - - - - - x

5    INTERNATIONAL PAPER        :

6    COMPANY,                   :

7         Plaintiff,           :

8      v.                       :    Civil Action No.

9    BEAZLEY INSURANCE          :    22-02789-TLP-CGC

10   COMPANY, INC., and         :

11   ZURICH AMERICAN            :

12   INSURANCE COMPANY,         :

13        Defendants.          :

14   - - - - - - - - - - - - x

15

16        Videotaped Deposition of PIA ELLIS

17              Conducted Virtually

18           Monday, December 18, 2023

19                10:07 a.m. EST

20

21

22    Job No.:  518471

23    Pages: 1 - 188

24    Reported By: Karen Klerekoper, CSR-4250, RPR

25

1

2      Videotaped Deposition of PIA ELLIS, conducted

3   virtually:

4

5

6

7

8

9      Pursuant to Notice, before Karen Klerekoper,

10   Notary Public in and for the State of Michigan.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    A P P E A R A N C E S

2

3        ON BEHALF OF THE PLAINTIFF:

4            JOHN SYLVESTER, ESQUIRE

5            NATHAN TOWNSEND, ESQUIRE

6            LAURA VEITH, ESQUIRE

7            K&L GATES LLP

8            210 Sixth Avenue

9            Pittsburgh, Pennsylvania  15222

10

11

12       ON BEHALF OF THE DEFENDANTS:

13           EUGENE MURPHY, ESQUIRE

14           WILLIAM MAXWELL DALEY, ESQUIRE   (Providence office)

15           ROBINSON & COLE LLP

16           777 Brickell Avenue, Suite 680

17           Miami, Florida 33131

18

19

20   ALSO PRESENT:

21   VIDEOGRAPHER CHARLOTTE FORREST, PLANET DEPOS

22   A/V TECHNICIAN HAROLD RODRIGUEZ, PLANET DEPOS

23   MARY JANE PALMER, IP

24

25
```

```
1                              INDEX

2    WITNESS:                                      PAGE:

3     PIA ELLIS

4              EXAMINATION BY MR. SYLVESTER:         6

5

6    EXHIBIT:                                      PAGE:

7    (Exhibits attached to the transcript.)
```

```
8    Exhibit 1, revised Rule 30(b)(6) notice of     10

9    deposition of Beazley

10   Exhibit 2, individual Notice                   11

11   Exhibit 3, LinkedIn bio                        29

12   Exhibit 4, Beazley commercial crime policy     45

13   Exhibit 17, settlement agreement               52

14   Exhibits 5 & 6, International's complaint & answer   69

15   filed by Beazley

16   Exhibit 7, Beazley Insurance Company's Supplemental   84

17   Responses

18   Exhibit 18, claim notes                       113

19   Exhibit 19, Sitaraman Jagannath's countercomplaint   126

20   for damages

21   Exhibit 22, Beazley Insurance Company's Responses to 154

22   Plaintiff's Second Set of Interrogatories
```

```
23

24

25
```

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
| 1  | P R O C E E D I N G S                                        |          |
| 2  | THE VIDEOGRAPHER:  Here begins Media                         | 10:06:49 |
| 3  | Number 1 in the videotaped deposition of Pia Ellis           | 10:06:50 |
| 4  | in the matter of International Paper Company V.               | 10:06:53 |
| 5  | Beazley Insurance Company, et al., in the United             | 10:06:59 |
| 6  | States District Court for the Western District of            |          |
| 7  | Tennessee, Western Division, Case Number                     | 10:07:05 |
| 8  | 22-02789-TLP-CGC.  Today's date is December 18th,            | 10:07:14 |
| 9  | 2023.  The time on the video monitor is                      | 10:07:16 |
| 10 | 10:07 a.m., Eastern Standard Time.                           | 10:07:21 |
| 11 | The remote videographer today is Charlotte                   | 10:07:23 |
| 12 | Forrest, representing Planet Depos.  All parties             | 10:07:27 |
| 13 | of this video deposition are attending remotely.            | 10:07:29 |
| 14 | Would counsel please voice-identify                          | 10:07:31 |
| 15 | themselves and state whom they represent.                    | 10:07:33 |
| 16 | MR. SYLVESTER:  John Sylvester of the law                    | 10:07:36 |
| 17 | firm K&L Gates, representing the plaintiff,                  | 10:07:38 |
| 18 | International Paper Company.  And my colleagues,             | 10:07:41 |
| 19 | Nathan Townsend and Laura Veith, will be on from            | 10:07:43 |
| 20 | time to time.  And also, our client from                     | 10:07:47 |
| 21 | International Paper, Mary Jane Palmer, will also             | 10:07:49 |
| 22 | be on from time to time.                                     | 10:07:53 |
| 23 | MR. MURPHY:  Gene Murphy with Robinson                       | 10:07:55 |
| 24 | Cole on behalf of defendant, Beazley Insurance              | 10:08:00 |
| 25 | Company.  And I'm also joined by my colleague,              | 10:08:01 |

1   William Daley.                                         10:08:04

2       THE VIDEOGRAPHER:  The court reporter              10:08:06

3   today is Karen Klerekoper, representing Planet         10:08:07

4   Depos.                                                 10:08:09

5       The witness will now be sworn.                     10:08:09

6    (Oath stipulation read and agreed by counsel          10:08:12

7   and witness.)                                          10:08:12

8   PIA ELLIS, having been duly sworn testified as

9   follows:                                               10:09:07

10                    EXAMINATION                          10:09:07

11  BY MR. SYLVESTER:                                      10:09:07

12      Q  Good morning, Ms. Ellis.  My name is John       10:09:07

13  Sylvester, as I've stated on the record.  I am         10:09:15

14  counsel for the plaintiff, International Paper          10:09:17

15  Company, in this lawsuit against Beazley Insurance     10:09:20

16  Company arising out of an employee-theft claim         10:09:23

17  that International Paper has made to Beazley           10:09:26

18  Insurance Company.                                     10:09:33

19      Do you understand that you are here                10:09:34

20  appearing both as a corporate representative           10:09:36

21  witness for Beazley Insurance Company and also in      10:09:38

22  your individual capacity?                              10:09:40

23      A  Yes.                                            10:09:42

24      Q  Okay.  And before we begin the substantive      10:09:44

25  questioning, let me ask you to formally state on       10:09:48

1    the record your name and your residence address?          10:09:50

2        A   My full name is Pia, P-I-A, last name          10:09:54

3    Ellis, E-L-L-I-S.          10:09:59

4        Q   And your residence address?          10:10:03

5        A   45 Rockefeller Plaza, 16th Floor, 10010.          10:10:05

6        Q   What city is that?          10:10:16

7        A   New York, New York.          10:10:18

8        Q   That's your residence address?          10:10:20

9        A   That's the Beazley corporate office          10:10:22

10   address.          10:10:26

11       Q   Oh, okay.  And where do you live?          10:10:26

12       A   I live in White Plains, New York.          10:10:30

13       Q   And who is your employer?          10:10:34

14       A   Beazley Insurance Company.          10:10:40

15       Q   What is your title or position with          10:10:42

16   Beazley?          10:10:44

17       A   Claims manager.          10:10:46

18       MR. MURPHY:  John, can I interrupt for one          10:10:49

19   second, I apologize.  Just the initial          10:10:52

20   identification about this being both a corporate          10:10:53

21   rep deposition and Pia Ellis testifying in her          10:10:59

22   individual capacity, I know we have both those          10:11:03

23   notices, but I think I need some kind of          10:11:05

24   understanding as to, you know, which capacity          10:11:07

25   she's testifying on.  I think, unless otherwise          10:11:11

| | | |
|---|---|---|
| 1 | stated, this a corporate rep deposition.  And if | 10:11:14 |
| 2 | we think something is going beyond the scope of | 10:11:18 |
| 3 | notice, I'll certainly let you know.  Is that | 10:11:21 |
| 4 | acceptable? | 10:11:24 |
| 5 | MR. SYLVESTER:  Yes, I was going to get | 10:11:26 |
| 6 | into that in a minute, Gene -- | 10:11:28 |
| 7 | MR. MURPHY:  Okay. | |
| 8 | MR. SYLVESTER:  -- to the extent anything | 10:11:30 |
| 9 | is beyond the scope of the notice of corporate | 10:11:31 |
| 10 | designee testimony that she would be testifying in | 10:11:33 |
| 11 | her individual capacity. | 10:11:37 |
| 12 | Q  Let me ask you, Ms. Ellis, are you | 10:11:40 |
| 13 | represented by counsel here today? | 10:11:43 |
| 14 | A  Yes. | 10:11:44 |
| 15 | Q  Can you identify your counsel for the | 10:11:47 |
| 16 | record? | 10:11:50 |
| 17 | A  Robinson Cole. | 10:11:50 |
| 18 | Q  Okay.  Have you given a deposition before, | 10:11:52 |
| 19 | Ms. Ellis? | 10:11:56 |
| 20 | A  Not on this matter. | 10:12:03 |
| 21 | Q  In any matter, have you ever given a | 10:12:05 |
| 22 | deposition? | 10:12:07 |
| 23 | A  No. | 10:12:09 |
| 24 | Q  Okay.  Well, let me just go over a couple | 10:12:09 |
| 25 | ground rules.  I'm sure your counsel probably has | 10:12:15 |

| | | |
|---|---|---|
| 1 | already mentioned them to you. | 10:12:18 |
| 2 | We're here to get information from you | 10:12:20 |
| 3 | that may be helpful to the resolution of this | 10:12:22 |
| 4 | case.  I will ask you questions and ask that you | 10:12:24 |
| 5 | wait until I finish my question before you give | 10:12:28 |
| 6 | your answer.  And similarly, I'll wait until you | 10:12:30 |
| 7 | finish your answer before I ask the next question. | 10:12:35 |
| 8 | That way we won't talk over each other and allow | 10:12:38 |
| 9 | the court reporter to have a clean record. | 10:12:42 |
| 10 | Do you understand that? | 10:12:43 |
| 11 | A  Yes. | 10:12:44 |
| 12 | Q  If I ask you a question that you don't | 10:12:45 |
| 13 | understand or that you think requires | 10:12:48 |
| 14 | clarification, will you let me know that so that I | 10:12:51 |
| 15 | can rephrase it or clarify in a way that you can | 10:12:53 |
| 16 | give your best answer? | 10:12:57 |
| 17 | A  Yes. | 10:12:58 |
| 18 | Q  We'll be taking breaks from time to time | 10:12:58 |
| 19 | in the course of this deposition.  If you ever | 10:13:03 |
| 20 | need a break, other than when a question is | 10:13:06 |
| 21 | pending, we can take a break to accommodate you. | 10:13:09 |
| 22 | You just have to let me know that.  Do you | 10:13:12 |
| 23 | understand that? | 10:13:15 |
| 24 | A  Yes, I do. | 10:13:15 |
| 25 | Q  And because we're in a remote deposition, | 10:13:16 |

| | | |
|---|---|---|
| 1 | we're not all sitting in the same conference room | 10:13:19 |
| 2 | as otherwise might be the case, I need to first | 10:13:22 |
| 3 | ask you, is there anybody else sitting in the room | 10:13:26 |
| 4 | where you are sitting? | 10:13:31 |
| 5 | A  No. | 10:13:32 |
| 6 | Q  And do you understand that while the | 10:13:32 |
| 7 | question-and-answer session is going you are not | 10:13:34 |
| 8 | permitted to communicate with anybody else, either | 10:13:37 |
| 9 | electronically or otherwise? | 10:13:40 |
| 10 | Do you understand that? | 10:13:43 |
| 11 | A  Yes. | 10:13:44 |
| 12 | Q  Did you bring any notes or any documents | 10:13:45 |
| 13 | that you have for your reference to this | 10:13:50 |
| 14 | deposition? | 10:13:53 |
| 15 | A  I have the deposition notice. | 10:13:56 |
| 16 | Q  Okay.  And just so that we see what we're | 10:13:59 |
| 17 | talking about here, can you take a look at | 10:14:03 |
| 18 | Exhibit 1, which is the revised Rule 30(b)(6) | 10:14:05 |
| 19 | notice of deposition of Beazley.  Is that the | 10:14:10 |
| 20 | notice of deposition that you're referring to? | 10:14:12 |
| 21 | (Marked for identification Exhibit 1, | 10:14:14 |
| 22 | revised Rule 30(b)(6) notice of deposition of | 10:14:07 |
| 23 | Beazley.) | 10:14:10 |
| 24 | A  Yes, it is. | 10:14:16 |
| 25 | Q  Okay.  And while we're looking at that, | 10:14:17 |

| | | |
|---|---|---|
| 1 | I'll ask the tech to put up Exhibit 2, as well, | 10:14:19 |
| 2 | which is an individual notice. | 10:14:22 |
| 3 | (Marked for identification Exhibit 2, | 10:14:24 |
| 4 | individual Notice.) | 10:14:23 |
| 5 | Q  But with regard to Exhibit 1, you've seen | 10:14:25 |
| 6 | this Notice before, I take it? | 10:14:27 |
| 7 | A  Yes. | 10:14:29 |
| 8 | Q  You understand that there are 25 subject | 10:14:30 |
| 9 | matters for which International Paper has asked | 10:14:36 |
| 10 | Beazley to provide a corporate witness to testify | 10:14:40 |
| 11 | about the corporate information regarding those 25 | 10:14:43 |
| 12 | topics? | 10:14:50 |
| 13 | A  Yes. | 10:14:53 |
| 14 | Q  Do you understand that you have been | 10:14:54 |
| 15 | designated as the witness to address each of those | 10:14:56 |
| 16 | 25 topics? | 10:14:59 |
| 17 | A  Yes. | 10:15:02 |
| 18 | Q  Are you prepared to testify with respect | 10:15:03 |
| 19 | to each of those 25 topics? | 10:15:05 |
| 20 | A  Yes. | 10:15:09 |
| 21 | Q  Okay.  And take a look at Exhibit 2, which | 10:15:10 |
| 22 | is notice of individual deposition of your name, | 10:15:17 |
| 23 | Pia Ellis, where we asked that you be provided to | 10:15:25 |
| 24 | testify also as an individual in this case. | 10:15:28 |
| 25 | Have you seen that notice of deposition? | 10:15:31 |

1    A   Sorry, I'm just opening up the other            10:15:38
2    exhibit.                                             10:15:43
3    Q   Sure.  Take your time.                           10:15:43
4    A   Yes, I have.                                      10:15:59
5    Q   You understand that I may ask you                10:16:00
6    questions that are within your knowledge, but they   10:16:03
7    may be outside the scope of the 25 topics, in        10:16:07
8    which case you'll be testifying in your individual   10:16:10
9    capacity and not as a binding corporate              10:16:13
10   representative of Beazley?                            10:16:16
11   A   Yes.                                             10:16:22
12   Q   Okay.  Now, what did you do to prepare for       10:16:23
13   today's deposition?                                  10:16:28
14   A   I reviewed the file notes and also the           10:16:32
15   topics listed within the deposition notice.          10:16:37
16   Q   Okay.  What other documents other than the       10:16:43
17   file notes and the deposition notice did you look    10:16:45
18   at?                                                  10:16:49
19   A   Also the original complaint and answer.          10:16:49
20   Q   Okay.  Did you review any interrogatory          10:16:54
21   answers that Beazley propounded in response to       10:16:59
22   interrogatories by International Paper?              10:17:03
23   A   Yes.                                             10:17:06
24   Q   And you have verified some interrogatory         10:17:07
25   answers; do you recall that?                         10:17:12

1    A  Yes.                                              10:17:15

2    Q  Did you review any transcripts of any            10:17:16

3  deposition testimony that's been taken in this        10:17:21

4  case?                                                 10:17:23

5    A  No.                                              10:17:26

6    Q  Did you review the transcript of the            10:17:27

7  examination under oath of Doug Dowdell that           10:17:30

8  International Paper provided to Beazley prior to       10:17:36

9  the litigation?                                       10:17:38

10   A  No.                                              10:17:42

11   Q  Are you aware otherwise of the contents of       10:17:43

12  the examination under oath that Mr. Dowdell gave      10:17:49

13  in this case?                                         10:17:55

14   A  Yes.                                             10:17:59

15   Q  How did you become aware of the substance        10:18:00

16  of his testimony in that examination under oath?      10:18:03

17   A  I observed portions of it.                       10:18:08

18   Q  It was a two-day deposition.  Did you            10:18:14

19  observe both days or just one day of that             10:18:18

20  examination under oath?  They were separated by       10:18:22

21  several months, as I recall.                          10:18:28

22   A  I believe I only observed part of the            10:18:29

23  first day.                                            10:18:34

24   Q  Do you know about what was discussed in          10:18:34

25  the second day of his examination under oath under    10:18:39

| | | |
|---|---|---|
| 1 | the questioning of Mr. Keeley? | 10:18:42 |
| 2 | A  I don't recall the specifics of the second | 10:18:48 |
| 3 | day. | 10:18:51 |
| 4 | Q  You mentioned that you had not reviewed | 10:18:51 |
| 5 | the transcripts of any depositions in this case. | 10:18:56 |
| 6 | Have you come to learn of the substance of the | 10:18:58 |
| 7 | testimony of the number of witnesses who have | 10:19:01 |
| 8 | testified in this case by some other means other | 10:19:03 |
| 9 | than reading the transcript? | 10:19:06 |
| 10 | A  Could you repeat question? | 10:19:14 |
| 11 | Q  Sure.  I think you said earlier that you | 10:19:16 |
| 12 | had not read the transcripts of the depositions of | 10:19:18 |
| 13 | a number of witnesses who have testified in this | 10:19:21 |
| 14 | case.  My question is, did you come to learn of | 10:19:24 |
| 15 | substance of the testimony of those witnesses | 10:19:27 |
| 16 | through some other means, other than reading the | 10:19:30 |
| 17 | transcript? | 10:19:32 |
| 18 | A  Yes. | 10:19:37 |
| 19 | Q  And what other means did you come to learn | 10:19:47 |
| 20 | about the substance of other depositions in the | 10:19:50 |
| 21 | case? | 10:19:53 |
| 22 | MR. MURPHY:  The witness is instructed not | 10:19:55 |
| 23 | to disclose any attorney-client communications, | 10:19:56 |
| 24 | but other than that, she's free to answer. | 10:20:00 |
| 25 | Q  Do you understand the question, Ms. Ellis? | 10:20:25 |

| | | |
|---|---|---|
| 1 | A  Yes, but it would have been through | 10:20:28 |
| 2 | attorney-client information. | 10:20:31 |
| 3 | Q  Okay.  So without revealing any of the | 10:20:34 |
| 4 | substance of your attorney-client communications | 10:20:42 |
| 5 | can you confirm that you have received reports | 10:20:44 |
| 6 | from counsel about the substance of the testimony | 10:20:46 |
| 7 | of the witnesses in this case who have given | 10:20:49 |
| 8 | deposition testimony? | 10:20:52 |
| 9 | MR. MURPHY:  Objection as to form. | 10:20:53 |
| 10 | You can answer. | 10:20:55 |
| 11 | A  Yes. | 10:20:58 |
| 12 | Q  Okay.  Any other documents that you've | 10:20:59 |
| 13 | reviewed?  Did you review any emails or any other | 10:21:03 |
| 14 | documents, other than the ones that you've listed | 10:21:06 |
| 15 | in the complaint, the answer, interrogatory | 10:21:09 |
| 16 | answers, the notice of deposition? | 10:21:12 |
| 17 | A  Those were the items that I reviewed. | 10:21:14 |
| 18 | Q  And how long did you spend preparing for | 10:21:17 |
| 19 | this deposition, approximately, in hours? | 10:21:24 |
| 20 | A  Approximately, six to seven hours. | 10:21:26 |
| 21 | Q  Okay.  Did you speak to anybody other than | 10:21:36 |
| 22 | your counsel in preparation for your deposition? | 10:21:40 |
| 23 | A  No. | 10:21:46 |
| 24 | Q  How long have you been the claims | 10:21:47 |
| 25 | professional for Beazley responsible for this | 10:21:56 |

| | | |
|---|---|---|
| 1 | matter? | 10:21:58 |
| 2 | A  Since -- at varying times since July of | 10:22:00 |
| 3 | 2020. | 10:22:12 |
| 4 | Q  Okay.  And who was responsible as the | 10:22:13 |
| 5 | claims professional for this matter prior to your | 10:22:19 |
| 6 | taking over in July of 2020? | 10:22:21 |
| 7 | A  Antonio Trotta. | 10:22:25 |
| 8 | Q  Antonio.  Go ahead. | 10:22:29 |
| 9 | A  Trotta. | 10:22:32 |
| 10 | Q  Okay.  And when was Antonio Trotta | 10:22:36 |
| 11 | responsible for the claim, to your knowledge? | 10:22:40 |
| 12 | A  Well, it was prior to my coming on board | 10:22:49 |
| 13 | with Beazley. | 10:22:52 |
| 14 | Q  So you came on board with Beazley in July | 10:22:55 |
| 15 | of 2020, correct? | 10:22:59 |
| 16 | A  Correct. | 10:23:10 |
| 17 | Q  And was this claim immediately given to | 10:23:01 |
| 18 | you as one of your new claims to handle when you | 10:23:04 |
| 19 | came on with Beazley in July of 2020? | 10:23:07 |
| 20 | A  It was part of a bulk file transfer. | 10:23:10 |
| 21 | Q  In the course of that bulk file transfer, | 10:23:13 |
| 22 | did you have discussions with Antonio Trotta who | 10:23:18 |
| 23 | preceded you with regard to any details about this | 10:23:23 |
| 24 | claim? | 10:23:26 |
| 25 | A  Well, I reviewed the file notes at that | 10:23:28 |

1    time.                                                      10:23:31

2        Q   Right.  But did you talk the claims              10:23:31

3    handler, Antonio Trotta, who had responsibility           10:23:35

4    prior to your taking over in July of 2020.                10:23:38

5        A   I don't recall specifically.                     10:23:41

6        Q   If the files notes reflect involvement of        10:23:47

7    an Angela Lee, do you know Angela Lee?                     10:23:51

8        A   Well, she -- I don't know her -- I don't          10:23:54

9    know her, but she was the initial handler at the          10:23:57

10   time of the loss notice.                                  10:24:01

11       Q   Okay.  And so, the loss notice, let's say,        10:24:03

12   was in December of 2019.  How long did Angela Lee         10:24:09

13   have responsibility for the loss notice from              10:24:12

14   International Paper?                                       10:24:15

15       A   I -- I don't know specifically how long          10:24:19

16   she handled the file.                                     10:24:23

17       Q   And then was it transferred from her to          10:24:24

18   Antonio Trotta?                                            10:24:30

19       A   Yes.                                              10:24:32

20       Q   Okay.  And that was before you joined the        10:24:32

21   company in July of 2020.  Now, you mentioned that         10:24:34

22   you've had responsibility at various times since          10:24:38

23   July of 2020, what did you mean by "at various            10:24:43

24   times"?  Did that responsibility not be constant          10:24:47

25   from July of 2020 until today?                            10:24:51

1    A   When the proof of loss was submitted, the          10:24:58

2    file was reassigned to Antonio Trotta.  And then          10:25:00

3    when he left Beazley, I took over the direct          10:25:09

4    handling again of the file.          10:25:12

5    Q   So the proof of loss, let's say it was          10:25:16

6    submitted in December of 2020, you said the file          10:25:18

7    was then handed back to Antonio Trotta?          10:25:23

8    A   Correct.          10:25:29

9    Q   And for how long did he have before it          10:25:30

10    came back to you?          10:25:32

11    A   He left Beazley in roughly June or July of          10:25:33

12    the following year.  So at that point, the file          10:25:41

13    was reassigned to me, back to me.          10:25:44

14    Q   Okay.  And have you had frontline claims          10:25:48

15    handling responsibility on the file from June or          10:25:53

16    July of 2021 until today?          10:25:57

17    A   I've been the claims manager on the file          10:26:00

18    since then.          10:26:03

19    Q   Okay.  And when you say you've been the          10:26:03

20    claims manager, who did you report to with regard          10:26:09

21    to this claim?          10:26:12

22    A   My manager is William Clark.          10:26:14

23    Q   William Clark, is that what you said?          10:26:24

24    A   Yes, yes.          10:26:26

25    Q   And what is his title?          10:26:27

| | |
|---|---|
| 1 | A  He's the executive risk claims team | 10:26:30 |
| 2 | leader. | 10:26:36 |
| 3 | Q  And where is he located? | 10:26:39 |
| 4 | A  New York. | 10:26:42 |
| 5 | Q  Same office as you in Rockefeller Center? | 10:26:43 |
| 6 | A  Yes. | 10:26:51 |
| 7 | Q  You understand that this is a claim for | 10:26:51 |
| 8 | the $15 million limits of the Beazley policy that | 10:26:57 |
| 9 | International Paper has submitted to Beazley under | 10:27:02 |
| 10 | its commercial crime coverage for an | 10:27:05 |
| 11 | employee-theft claim, do you not? | 10:27:08 |
| 12 | A  Yes, I understand the -- the alleged | 10:27:13 |
| 13 | claim. | 10:27:17 |
| 14 | Q  Okay.  Do you have any authority to accept | 10:27:17 |
| 15 | or deny that claim? | 10:27:22 |
| 16 | MR. MURPHY:  Are we talking to her in her | 10:27:29 |
| 17 | individual capacity now? | 10:27:31 |
| 18 | MR. SYLVESTER:  Sure. | 10:27:33 |
| 19 | Q  Do you, as claims manager for this claim, | 10:27:36 |
| 20 | have the authority to accept or deny this claim? | 10:27:38 |
| 21 | A  No. | 10:27:42 |
| 22 | Q  Who does? | 10:27:43 |
| 23 | A  The decisions are made within the | 10:27:49 |
| 24 | reporting structure of the claims department. | 10:27:51 |
| 25 | Q  And for a claim of this size who would | 10:27:58 |

| 1 | have authority to accept or deny the claim that | 10:28:01 |
| 2 | International Paper has submitted that's at issue | 10:28:05 |
| 3 | in this litigation? | 10:28:07 |
| 4 | A  Beth Diamond. | 10:28:11 |
| 5 | Q  Did you say Beth Diamond? | 10:28:14 |
| 6 | A  Yes. | 10:28:16 |
| 7 | Q  What is Beth Diamond's position? | 10:28:17 |
| 8 | A  Head of claims for Beazley Insurance | 10:28:22 |
| 9 | Company. | 10:28:29 |
| 10 | Q  Where is Beth Diamond located? | 10:28:29 |
| 11 | A  In the same office in New York. | 10:28:33 |
| 12 | Q  Does William Clark report to Beth Diamond? | 10:28:37 |
| 13 | A  No. | 10:28:43 |
| 14 | Q  Who does William Clark report to? | 10:28:44 |
| 15 | A  Steve Chang. | 10:28:48 |
| 16 | Q  What is Steve Chang's position? | 10:28:52 |
| 17 | A  The head of third party claims. | 10:28:56 |
| 18 | Q  And who does Steve Chang report to? | 10:28:59 |
| 19 | A  Beth Diamond. | 10:29:03 |
| 20 | Q  Has Beazley made a determination as to | 10:29:05 |
| 21 | whether to accept or deny the claim that gives | 10:29:19 |
| 22 | rise to this litigation, that is International | 10:29:21 |
| 23 | Paper's employee-theft claim? | 10:29:24 |
| 24 | A  At this time, Beazley does not have enough | 10:29:26 |
| 25 | information to confirm a loss under the policy. | 10:29:31 |

1    Q  So, at this point in the litigation, are          10:29:41

2  you saying that Beazley is not denying the claim?      10:29:45

3    A  I'm saying that we don't have enough              10:29:50

4  documentation or information from the insured to       10:29:53

5  make a determination with respect to coverage.         10:29:57

6    Q  This is a claim that International Paper           10:30:02

7  gave notice to about four years ago; is that           10:30:06

8  correct?                                               10:30:15

9    A  Approximately, yes.                               10:30:15

10   Q  This is a claim for which IP provided a           10:30:19

11  proof of loss about three years ago, right,           10:30:27

12  December of 2020?                                      10:30:31

13   A  Of 2020.                                           10:30:31

14   Q  Okay.  This is a claim for which                  10:30:34

15  International Paper has provided hundreds of           10:30:39

16  thousands of pages of documents to Beazley, both      10:30:42

17  prior to litigation and during the course of          10:30:47

18  litigation; isn't that right?                         10:30:48

19   A  The insured has provided a large volume of        10:30:54

20  documents.                                             10:30:57

21   Q  The insured, International Paper, has also        10:31:00

22  submitted a number of its witnesses for               10:31:04

23  examination under oath prior to litigation, and       10:31:08

24  also depositions in the litigation, correct?          10:31:10

25   A  Yes.                                               10:31:16

1    Q  We're nearing the close of discovery in                    10:31:20

2  this case with a trial set in April of next year.              10:31:23

3  So is it Beazley's contention, as we sit here                  10:31:28

4  today on December 18th, 2023, that it has not made             10:31:32

5  a decision yet, notwithstanding the four years of              10:31:35

6  information exchange that has preceded it, that it             10:31:41

7  has not made a decision whether or not to cover               10:31:45

8  the claim?                                                     10:31:48

9        MR. MURPHY:  Objection as to form.                       10:31:49

10       You can answer.                                          10:31:51

11   A  At this -- at this time, Beazley does not                 10:31:54

12 have sufficient documentation to demonstrate                   10:31:57

13 employee dishonesty under the policy.                          10:32:02

14   Q  What more information does Beazley need to                10:32:04

15 make that decision?                                            10:32:09

16   A  Well, again, based on what we've received                10:32:14

17 to date we have not been able to make that                     10:32:18

18 determination of an employee dishonesty under the             10:32:21

19 policy.                                                        10:32:24

20   Q  Why not?                                                 10:32:25

21   A  Well, as I said, we don't have the                       10:32:33

22 information to demonstrate an employee dishonesty             10:32:43

23 under the policy.                                              10:32:47

24   Q  I understand that, but what additional                   10:32:51

25 information would you need to make that                        10:32:53

| | | |
|---|---|---|
| 1 | determination? | 10:32:56 |
| 2 | MR. MURPHY:  Objection -- | 10:32:59 |
| 3 | Q  What information do you not have that you | 10:33:00 |
| 4 | would need in order to make that determination? | 10:33:02 |
| 5 | MR. MURPHY:  Objection as to form. | 10:33:05 |
| 6 | You can answer. | 10:33:06 |
| 7 | A  Well, there are still items that are still | 10:33:08 |
| 8 | open in the discovery process right now. | 10:33:11 |
| 9 | Q  Like what? | 10:33:17 |
| 10 | A  Well, we haven't received full responses | 10:33:19 |
| 11 | to them. | 10:33:45 |
| 12 | Q  What are they specifically that you're | 10:33:46 |
| 13 | waiting for in the form of responses to make a | 10:33:49 |
| 14 | decision as to whether or not to cover the claim? | 10:33:52 |
| 15 | A  Documentation that demonstrates an | 10:33:57 |
| 16 | employee dishonesty. | 10:34:05 |
| 17 | Q  What kind of documentation would satisfy | 10:34:06 |
| 18 | you that would document employee dishonesty over | 10:34:09 |
| 19 | and before the hundreds of thousands of pages that | 10:34:12 |
| 20 | IP has already produced to Beazley in response to | 10:34:17 |
| 21 | Beazley's request? | 10:34:18 |
| 22 | A  Well, it's not the quantity of -- of | 10:34:18 |
| 23 | documents.  It's what do they actually demonstrate | 10:34:20 |
| 24 | with respect to an employee dishonesty. | 10:34:23 |
| 25 | Q  Do you believe there has been employee | 10:34:26 |

1    dishonesty by Sitaraman Jagannath, who is referred          10:34:29

2    to as Jag in this litigation?          10:34:35

3         Do you believe that he has engaged in          10:34:37

4    employee dishonesty?          10:34:40

5         MR. MURPHY:  Objection as to form.          10:34:41

6         You can answer.          10:34:42

7     A  At this time, Beazley does not have enough          10:34:46

8    information to demonstrate employee dishonesty          10:34:49

9    with respect to the policy.          10:34:54

10    Q  Do you understand the nature of the claim          10:34:56

11   that IP has made in this case, that is that its          10:34:59

12   purchasing agent for Specialty Chemicals in the          10:35:03

13   Global Sourcing department, a man who's referred          10:35:07

14   to as Jag, was awarding contracts to two companies          10:35:11

15   that were controlled by his half-brother, Shiv          10:35:18

16   Kumar, and that monies in the millions of dollars          10:35:21

17   were sent through those contracts to DGS and          10:35:26

18   Mid-South and that some of that money coming back          10:35:30

19   was funneled to accounts controlled by Jag?          10:35:32

20        Do you understand that's the nature of the          10:35:36

21   claim that International Paper has made to Beazley          10:35:38

22   for coverage?          10:35:43

23        MR. MURPHY:  Objection as to form.          10:35:47

24        You can answer.          10:35:48

25    A  We understand that that's what's been          10:35:50

1    alleged.                                                    10:35:55

2       Q   What part of that allegation does Beazley          10:35:56

3    not believe has been established?                          10:36:00

4       A   That there has been an employee dishonesty         10:36:06

5    under the policy.                                           10:36:10

6       Q   What reason do you have to doubt the fact          10:36:12

7    that when Jag awarded contracts to his brother's           10:36:15

8    companies, without getting any waiver of conflict          10:36:21

9    of interest, and that monies being paid to DGS and         10:36:26

10   Mid-South were funneled back to Jag's control,             10:36:31

11   what part of that do you think does not establish          10:36:36

12   that Jag was engaged in employee dishonesty?               10:36:39

13       MR. MURPHY:  Objection as to form.                     10:36:43

14       You can answer.                                        10:36:44

15      A   Again, at this time, Beazley does not have          10:36:46

16   enough information to determine that there was an          10:36:52

17   employee dishonesty under the policy.                      10:36:54

18      Q   Who made that determination that the               10:36:57

19   information is insufficient at this point?                 10:36:59

20      A   Within our claims reporting structure.             10:37:06

21      Q   Is that somebody other than you?                   10:37:13

22      A   Yes.                                                10:37:18

23      Q   And who is that?                                   10:37:19

24      A   Within the reporting structure that I             10:37:21

25   referenced earlier.                                        10:37:30

| | | |
|---|---|---|
| 1 | Q   Have you personally made any decision as | 10:37:32 |
| 2 | to whether you believe there is employee | 10:37:34 |
| 3 | dishonesty established under the policy? | 10:37:36 |
| 4 | MR. MURPHY:  Just so we're clear, the | 10:37:39 |
| 5 | question is referring to you individually, | 10:37:41 |
| 6 | Ms. Ellis, just so you understand. | 10:37:43 |
| 7 | A   No. | 10:37:48 |
| 8 | Q   You've not made a decision as to whether | 10:37:50 |
| 9 | this is a covered claim; is that correct? | 10:37:52 |
| 10 | A   No, I have not. | 10:37:57 |
| 11 | Q   What recommendation have you made to your | 10:37:59 |
| 12 | superiors regarding the handling of this claim as | 10:38:03 |
| 13 | to how to resolve it? | 10:38:06 |
| 14 | A   To continue our investigation. | 10:38:12 |
| 15 | Q   What specific pieces of information do you | 10:38:17 |
| 16 | still need to get in your investigation that will | 10:38:20 |
| 17 | help you decide whether to agree that this is a | 10:38:23 |
| 18 | covered employee dishonesty claim? | 10:38:27 |
| 19 | A   Well, there are still some items pending | 10:38:38 |
| 20 | from discovery at this time. | 10:38:41 |
| 21 | Q   Discovery closes on January 12th of 2024. | 10:38:47 |
| 22 | Do you understand that? | 10:38:50 |
| 23 | A   Yes. | 10:38:52 |
| 24 | Q   Will Beazley make a decision after the | 10:38:53 |
| 25 | close of discovery on January 12th as to whether | 10:38:58 |

| | | |
|---|---|---|
| 1 | this is a covered claim? | 10:39:01 |
| 2 | A  Beazley hopes to be able to do that in the | 10:39:06 |
| 3 | near term. | 10:39:09 |
| 4 | Q  Well, when you say "in the near term," | 10:39:12 |
| 5 | discovery closes on January 12th, in less than a | 10:39:16 |
| 6 | month.  The case has been going on -- or the claim | 10:39:19 |
| 7 | has been going on for four years. | 10:39:23 |
| 8 | Will Beazley make a decision shortly after | 10:39:25 |
| 9 | January 12th as to whether to accept the claim or | 10:39:29 |
| 10 | deny the claim? | 10:39:31 |
| 11 | A  Again, we're hoping to be able to make a | 10:39:37 |
| 12 | decision in the near term.  I don't have an exact | 10:39:41 |
| 13 | date. | 10:39:44 |
| 14 | Q  Well, there's a trial that's starting in | 10:39:46 |
| 15 | April.  Do you expect to be able to make a | 10:39:48 |
| 16 | decision before the April trial of this case? | 10:39:51 |
| 17 | A  Again, we would expect to make a decision | 10:39:57 |
| 18 | in the near term. | 10:40:00 |
| 19 | Q  Is that within weeks?  Within months?  IP | 10:40:03 |
| 20 | has been waiting for four years.  They would like | 10:40:08 |
| 21 | to know when they are going to get a definitive | 10:40:10 |
| 22 | decision. | 10:40:13 |
| 23 | Can you give any more specifics other than | 10:40:14 |
| 24 | saying it will be in the near term? | 10:40:17 |
| 25 | A  No. | 10:40:20 |

| | | |
|---|---|---|
| 1 | Q   Who has authority to settle this claim on | 10:40:21 |
| 2 | behalf of Beazley with International Paper? | 10:40:28 |
| 3 | A   Beth Diamond. | 10:40:34 |
| 4 | Q   Who is directing outside counsel with | 10:40:49 |
| 5 | regard to the litigation of this claim, who at | 10:40:52 |
| 6 | Beazley, that is, in-house? | 10:40:56 |
| 7 | A   I am. | 10:41:01 |
| 8 | Q   How many employee theft claims have you | 10:41:05 |
| 9 | handled over the course of your career, that is, | 10:41:08 |
| 10 | employee theft coverage or employee dishonesty | 10:41:11 |
| 11 | coverage claims to any of insurance companies that | 10:41:15 |
| 12 | you've worked for? | 10:41:20 |
| 13 | A   I don't have the exact number. | 10:41:21 |
| 14 | Q   Give me a rough estimate. | 10:41:28 |
| 15 | A   Several hundred. | 10:41:31 |
| 16 | Q   Have you seen other claims, employee theft | 10:41:40 |
| 17 | claims, like the one alleged by International | 10:41:46 |
| 18 | Paper, where a purchasing employee of the company | 10:41:48 |
| 19 | has awarded contracts to a third party and the | 10:41:51 |
| 20 | third party has funneled money from those | 10:41:55 |
| 21 | contracts back to the purchasing agent? | 10:41:59 |
| 22 | MR. MURPHY:  Objection as to form. | 10:42:01 |
| 23 | A   Well, each claim has, you know, unique | 10:42:07 |
| 24 | circumstances, so I can't say that I had something | 10:42:11 |
| 25 | specific to these set of circumstances. | 10:42:15 |

1      Q  Are you saying you think this is a unique          10:42:20

2   claim that you've never seen before?          10:42:24

3      A  I'm saying that each claim has a unique          10:42:27

4   set of facts and circumstances.          10:42:31

5      Q  Okay.  Let's take a look at Exhibit 3.          10:42:33

6         (Marked for identification Exhibit 3,          10:42:37

7   LinkedIn bio.)          10:42:53

8         MR. SYLVESTER:  I'll ask the tech to put          10:42:38

9   that in the chat room.          10:42:40

10     Q  Exhibit 3 is a copy of your I think is          10:42:44

11  take bio, which I think is taken off of LinkedIn.          10:42:50

12  Are you familiar with that?          10:42:54

13        While you're opening that --          10:42:59

14        MR. SYLVESTER:  -- I'll ask the tech to          10:43:01

15  put Exhibit 4 into the chat.          10:43:02

16     Q  Do you have that --          10:43:08

17     A  Yeah, I have it -- I have it open.          10:43:09

18     Q  Okay.  Is this a copy of your LinkedIn          10:43:11

19  bio?          10:43:14

20     A  Yes, it is.          10:43:40

21     Q  Okay.  And it shows that you have a          10:43:42

22  bachelor's in sociology that you got from Miami          10:43:48

23  University in 2002, along with a minor in          10:43:53

24  criminology; is that correct?          10:43:55

25     A  Yes.          10:43:58

```
1        Q  And also a minor in developmental        10:43:59
2   psychology; is that right?                        10:44:02
3        A  Yes.                                      10:44:04
4        Q  So, then you've worked for various        10:44:10
5   insurance companies since that, Progressive       10:44:14
6   Insurance Company, AIG, Chubb and now Beazley; is 10:44:18
7   that right?                                        10:44:21
8        A  Yes, it is.                               10:44:21
9        Q  And in the course of working for those    10:44:22
10  different insurance companies, have you come to   10:44:26
11  handle insurance coverage claims under commercial 10:44:29
12  crime policies for employer dishonesty?           10:44:32
13       A  From employer dishonesty?                 10:44:39
14       Q  I misspoke.  Employee dishonesty.  Let me 10:44:43
15  restate the question.                             10:44:47
16          In the course of your working for those   10:44:47
17  various insurance companies after getting your    10:44:50
18  degrees at Miami University, have you come to work 10:44:52
19  on claims for employee theft and employee         10:44:56
20  dishonesty in the various insurance companies for 10:45:00
21  which you have been employed?                     10:45:02
22       A  Yes.                                      10:45:06
23       Q  And would that be for all of the insurance 10:45:08
24  companies, that is Progressive, AIG, Chubb and    10:45:11
25  Beazley, that you address employee dishonesty,    10:45:16
```

| | |
|---|---|
| 1 | employee theft claims in each of those roles that | 10:45:21 |
| 2 | you had in the claims department of those | 10:45:24 |
| 3 | companies? | 10:45:27 |
| 4 | A  All of them, excluding Progressive | 10:45:28 |
| 5 | Insurance. | 10:45:32 |
| 6 | Q  Okay.  So, Progressive, you worked, it | 10:45:33 |
| 7 | liked like, from the time of your graduation until | 10:45:39 |
| 8 | about 2007, you worked for Progressive, correct? | 10:45:44 |
| 9 | A  I also worked for the City of New York, as | 10:45:51 |
| 10 | well. | 10:46:01 |
| 11 | Q  Oh, okay.  I didn't see that on your | 10:46:01 |
| 12 | resume.  What was your position with the City of | 10:46:03 |
| 13 | New York? | 10:46:06 |
| 14 | A  I was a child protective specialist. | 10:46:07 |
| 15 | Q  Okay.  And then starting in 2007, you took | 10:46:13 |
| 16 | a job at AIG as a fidelity bond analyst and worked | 10:46:21 |
| 17 | there for eight years or so, until 2015, followed | 10:46:27 |
| 18 | by working at Chubb for several years from 2015 to | 10:46:32 |
| 19 | 2019 -- I'm sorry, to 2020.  And then starting in | 10:46:36 |
| 20 | July of 2020, you worked for Beazley, correct? | 10:46:41 |
| 21 | A  Yes, that's correct. | 10:46:45 |
| 22 | Q  While working in the claims department | 10:46:47 |
| 23 | with AIG, Chubb and Beazley, you've had occasion | 10:46:49 |
| 24 | to handle claims involving employee theft and | 10:46:53 |
| 25 | employee dishonesty; is that right? | 10:46:57 |

1       A   Yes.                                          10:46:58

2       Q   So, I think you said hundreds of claims       10:46:59

3    you've handled of that nature, correct?              10:47:03

4       A   Approximately.                                10:47:07

5       Q   And based on your education in psychology     10:47:08

6    and criminology and sociology, and based on your    10:47:12

7    experience in working on employee theft and         10:47:16

8    employee dishonesty cases from 2007 to the          10:47:20

9    present, have you come to understand some common    10:47:24

10   characteristics of an employee thief?               10:47:29

11      A   Well, again, each circumstance has --         10:47:34

12   is -- is unique and has its own facts and details,  10:47:39

13   as well.                                            10:47:43

14      Q   Right, but are there some commonalities of    10:47:46

15   the behavior and conduct that employees who carry   10:47:50

16   on a theft scheme with their company?               10:47:53

17      A   They can vary.                                10:48:07

18      Q   Well, let's talk about a few.  Is             10:48:10

19   deception something common to employee thiefs?      10:48:13

20      A   Potentially.                                  10:48:33

21      Q   Is lying a common characteristic of          10:48:35

22   employee thieves?                                    10:48:40

23      MR. MURPHY:  Well, I know there is a              10:48:44

24   question pending.  These questions are to the       10:48:47

25   witness individually, correct, Mr. Sylvester?       10:48:49

```
1          MR. SYLVESTER:  Yes.                      10:48:52

2          MR. MURPHY:  Okay.                        10:48:53

3      A  Potentially.                               10:48:54

4      Q  Is misrepresentations to other persons    10:48:58

5  within the company a common characteristic of an 10:49:02

6  employee thief?                                   10:49:05

7      A  Potentially.                               10:49:10

8      Q  Is concealment or covering up what he or  10:49:16

9  she is doing a common characteristic of an       10:49:21

10 employee engaged in employee theft?              10:49:23

11     A  Concealment of what?                       10:49:32

12     Q  Of what the employee is doing to steal     10:49:34

13 from the company.                                 10:49:37

14     A  From my own experience?                    10:49:51

15     Q  Well, in your experience in studying       10:49:54

16 criminology and handling hundreds of employee    10:49:57

17 theft and employee dishonesty cases, is one of the 10:50:00

18 telltale signs of an employee thief that that    10:50:05

19 employee thief is engaged in some concealment or  10:50:08

20 covering up of what he or she is doing to steal   10:50:12

21 from the company?                                 10:50:16

22         MR. MURPHY:  Objection as to form.        10:50:16

23         You can answer.                           10:50:19

24     A  Potentially.                               10:50:21

25     Q  So, those are telltale signs that an       10:50:23
```

| | |
|---|---|
| 1 | employee may be stealing from the company, he's | 10:50:26 |
| 2 | engaged in deception, lying, misrepresentation to | 10:50:30 |
| 3 | his fellow employees, concealment of what he's | 10:50:33 |
| 4 | doing, right? | 10:50:37 |
| 5 | MR. MURPHY:  Objection as to form. | 10:50:37 |
| 6 | A  Potentially. | 10:50:42 |
| 7 | Q  And in your experience, employee thiefs | 10:50:44 |
| 8 | can be intelligent, right, at figuring out how to | 10:50:51 |
| 9 | steal from the company without anybody knowing | 10:50:59 |
| 10 | about it? | 10:51:01 |
| 11 | MR. MURPHY:  Well, my apologies, could you | 10:51:01 |
| 12 | repeat the question that you -- you went out for | 10:51:04 |
| 13 | one word.  I couldn't hear, Mr. Sylvester. | 10:51:07 |
| 14 | MR. SYLVESTER:  Sure.  I'll repeat it. | 10:51:09 |
| 15 | Q  Ms. Ellis, would you agree that employee | 10:51:11 |
| 16 | thieves often are very intelligent in figuring out | 10:51:15 |
| 17 | ways to steal from the company without anybody | 10:51:19 |
| 18 | learning about it? | 10:51:22 |
| 19 | A  I couldn't say specifically yes or no. | 10:51:26 |
| 20 | Q  Well, would you agree that oftentimes | 10:51:34 |
| 21 | employee thiefs abuse the trust that other | 10:51:37 |
| 22 | coworkers have in them and are able to steal from | 10:51:43 |
| 23 | the company because others aren't watching | 10:51:46 |
| 24 | everything that they are doing carefully -- | 10:51:50 |
| 25 | MR. MURPHY:  Excuse me. | 10:51:53 |

1    Q  -- trust that person to act with honesty          10:51:55

2  and integrity?                                         10:51:58

3        MR. MURPHY:  Objection as to form.               10:51:59

4    A  Can you repeat that question, please?             10:52:02

5    Q  Is a common situation with employee theft         10:52:05

6  one where the employee engaged in the theft is         10:52:08

7  actually a trusted employee that others in the         10:52:13

8  company trust not to do anything wrong and the         10:52:17

9  employee takes advantage of that trust to engage       10:52:21

10 in a theft scheme that nobody is checking on?          10:52:26

11       MR. MURPHY:  Objection as to form.               10:52:32

12   A  No.                                               10:52:35

13   Q  You don't think that's common in employee         10:52:37

14 theft circumstances?                                   10:52:43

15       MR. MURPHY:  Same objection.                     10:52:43

16   A  No.                                               10:52:51

17   Q  The fact that an employee thief is an             10:52:53

18 upstanding member of the community doesn't mean        10:53:02

19 that he or she isn't stealing from the company,        10:53:04

20 right?                                                 10:53:07

21   A  Is that just a general?  I -- can you             10:53:12

22 clarify what you're --                                 10:53:15

23   Q  Right.  An employee thief can still be, on        10:53:17

24 the surface, an upstanding member of the               10:53:20

25 community, that doesn't preclude that person from      10:53:23

| | | |
|---|---|---|
| 1 | stealing from his company, correct? | 10:53:29 |
| 2 | A  Correct. | 10:53:27 |
| 3 | Q  Are there any other common characteristics | 10:53:31 |
| 4 | of employee thieves that you've encountered in | 10:53:33 |
| 5 | handling hundred of cases of employee theft in | 10:53:41 |
| 6 | your job experience? | 10:53:44 |
| 7 | MR. MURPHY:  Objection as to form. | 10:53:46 |
| 8 | A  Can you repeat the question, please? | 10:53:56 |
| 9 | Q  Sure.  Are there any other | 10:53:58 |
| 10 | characteristics, other than the ones we've talked | 10:54:00 |
| 11 | about, that you believe are common characteristics | 10:54:02 |
| 12 | of the conduct of an employee thief that you've | 10:54:08 |
| 13 | seen over the years in handling employee theft | 10:54:12 |
| 14 | cases? | 10:54:17 |
| 15 | MR. MURPHY:  Objection as to form. | 10:54:17 |
| 16 | A  No. | 10:54:20 |
| 17 | Q  When you worked at AIG as a fidelity bond | 10:54:30 |
| 18 | analyst, it said, at least in your LinkedIn bio, | 10:54:36 |
| 19 | that you worked with risk managers to quantify | 10:54:39 |
| 20 | claim losses due to various types of internal | 10:54:42 |
| 21 | employee thefts, robberies, burglaries and various | 10:54:49 |
| 22 | types of fraud; is that right? | 10:54:52 |
| 23 | Am I reading that correctly from your bio? | 10:54:56 |
| 24 | A  Yes, it's in my bio. | 10:55:05 |
| 25 | Q  And is that true? | 10:55:08 |

| | | |
|---|---|---|
| 1 | A   Yes. | 10:55:13 |
| 2 | Q   Have you done any work in this case to | 10:55:13 |
| 3 | quantify claim losses that are alleged to have | 10:55:16 |
| 4 | been suffered by International Paper? | 10:55:21 |
| 5 | A   I would defer to the expert reports on | 10:55:31 |
| 6 | that. | 10:55:35 |
| 7 | Q   And when you say "the expert reports," are | 10:55:37 |
| 8 | you talking about Ms. Rosemary Coates and Brad | 10:55:39 |
| 9 | Wilson whose expert reports Beazley has recently | 10:55:45 |
| 10 | submitted in the litigation? | 10:55:51 |
| 11 | A   Yes. | 10:55:54 |
| 12 | Q   Were you involved in the preparation of | 10:55:55 |
| 13 | those reports? | 10:55:58 |
| 14 | MR. MURPHY:  Objection as to form. | 10:56:04 |
| 15 | You can answer. | 10:56:06 |
| 16 | A   No. | 10:56:08 |
| 17 | Q   Okay.  We'll come back to that. | 10:56:09 |
| 18 | In your LinkedIn bio, you said working for | 10:56:17 |
| 19 | Chubb, which I guess you started as a fidelity | 10:56:23 |
| 20 | claims examiner Roman IV and then became claim | 10:56:27 |
| 21 | director.  Was that a promotion that you got at | 10:56:30 |
| 22 | Chubb? | 10:56:33 |
| 23 | A   Yes. | 10:56:34 |
| 24 | Q   So you went to work in 2015 with Chubb. | 10:56:35 |
| 25 | Why did you leave AIG to go to work for Chubb? | 10:56:40 |

1    A   An advancement opportunity.                   10:56:45

2    Q   Okay.  And while you were at Chubb, were      10:56:51

3  you only dealing with fidelity coverage claims?     10:56:53

4    A   Yes.                                          10:57:06

5    Q   And that included employee theft claims,      10:57:06

6  employee dishonesty claims?                         10:57:10

7    A   Yes.                                          10:57:11

8    Q   Since there is no narrative under your        10:57:12

9  Chubb work as there was under AIG and Progressive,  10:57:22

10  describe what your role and responsibilities were, 10:57:27

11  both as a fidelity claim examiner and as a claims  10:57:31

12  director.                                          10:57:36

13   A   I was handling claims on Chubb's              10:57:41

14  commercial form and financial fidelity forms.  And 10:57:49

15  the claims could entail from employee dishonesty   10:57:54

16  premises, including robbery -- robbery/burglary,   10:58:00

17  computer fraud, fraudulent instruction or social   10:58:05

18  engineering types of losses.                       10:58:09

19   Q   In your position as a claims examiner and     10:58:15

20  a claims director, you have authority to make      10:58:19

21  decisions to accept coverage claims arising from   10:58:21

22  employee theft and employee dishonesty by the      10:58:27

23  policyholders?                                      10:58:30

24   A   Yes.                                          10:58:34

25   Q   And did you make decisions to accept or       10:58:35

1    deny coverage on policyholder claims?                    10:58:40

2        A   For the acceptance of coverage.                  10:58:49

3        Q   Yes.                                             10:58:51

4        A   Yes.                                             10:58:52

5        Q   While you were handling employee theft and      10:58:53

6    employee dishonesty claims while at Chubb, there         10:59:00

7    were claims where you were able to agree that the        10:59:04

8    claim was covered, correct?                              10:59:07

9        A   Yes.                                             10:59:08

10       Q   And were there also claims were you denied       10:59:09

11   coverage, saying the claim was definitively not          10:59:14

12   covered under the Chubb policy at issue?                 10:59:18

13       A   I didn't have denial authority.                 10:59:21

14       Q   Now that you're at Beazley, do you have          10:59:26

15   denial authority?                                        10:59:31

16       A   No.                                              10:59:36

17       Q   And with respect to International Paper's        10:59:38

18   claim for coverage, who has denial authority?            10:59:43

19       A   William Clark.                                   10:59:52

20       Q   Has William Clark made any recommendations      11:00:00

21   with regard to International Paper's claim for           11:00:04

22   coverage to his superiors?                               11:00:07

23       A   At this time, we don't, meaning Beazley,         11:00:14

24   does not have enough information to make a final         11:00:17

25   coverage determination for this matter.                 11:00:20

1    Q  Well, you've been working at Beazley since          11:00:24

2    July of 2022.  About how employee theft, employee     11:00:30

3    dishonesty claims are you handling or have you         11:00:36

4    handled in that three-and-a-half-year period?          11:00:38

5    A  I don't have the exact number.                      11:00:41

6    Q  Give me a rough estimate, please.                   11:00:44

7    A  Again, I -- I don't -- I can't really               11:00:47

8    speculate.  I don't have the exact number.             11:00:51

9    Q  I'm not asking for the exact number.  I             11:00:54

10   just want you to give me a rough estimate.  Is it      11:00:56

11   in the dozens?  Is it in the hundreds?                 11:01:00

12   A  I've handled claims, but I don't have an            11:01:05

13   approximation, though.                                 11:01:10

14   Q  Is it more than ten?                                11:01:11

15   A  Yes.                                                11:01:18

16   Q  Is it more than 100 employee theft,                 11:01:19

17   employee dishonesty claims that you've had             11:01:23

18   responsibility for while at Beazley over the last      11:01:26

19   three and a half years?                                11:01:28

20   A  Again, I don't really have an exact                 11:01:31

21   number.                                                11:01:33

22   Q  Have you accepted other claims, that is,            11:01:34

23   you've agreed that other policyholders who have        11:01:38

24   made employee theft and employee dishonesty claims     11:01:40

25   to Beazley, that their claim was, in fact, covered     11:01:44

1   under the crime policy that Beazley issued to          11:01:47

2   them?                                                  11:01:50

3       A  I have made coverage determinations for         11:01:58

4   matters under the policy.                              11:02:02

5       Q  And have you made affirmative coverage           11:02:06

6   determinations for other Beazley policyholders         11:02:10

7   that their employee theft or employee dishonesty       11:02:12

8   claim was, in fact, covered under the policy?          11:02:16

9       A  Yes.                                             11:02:21

10      MR. MURPHY:  Excuse me, Mr. Sylvester, not          11:02:23

11  right away, but within the next five minutes,          11:02:25

12  unfortunately, too much coffee, I'm going to need      11:02:29

13  a five-minute break, if you don't mind.                11:02:32

14      MR. SYLVESTER:  Sure.  Let me just finish           11:02:35

15  up this line quick and then we'll go on.               11:02:36

16      Q  You said that you have made positive             11:02:38

17  coverage determinations.  Have you also made           11:02:40

18  recommendations to your superior to deny coverage      11:02:43

19  for any employee theft or employee dishonesty          11:02:46

20  claims while at Beazley?                               11:02:50

21      A  I don't recall offhand.                          11:02:57

22      Q  You don't recall.                                11:03:06

23      And as you've said a number of times with           11:03:08

24  respect to International Paper's claim for              11:03:12

25  coverage, you said Beazley does not have enough         11:03:14

1   information at this time to determine whether, in        11:03:17

2   fact, there is a covered claim for employee theft        11:03:20

3   with regard to the scheme the employee Jag, who          11:03:25

4   was the purchasing manager for Global Sourcing           11:03:31

5   Specialty Chemicals; is that right, you don't have       11:03:39

6   enough information at this time to make a                11:03:41

7   decision?                                                11:03:43

8        MR. MURPHY:  Objection as to form asked            11:03:43

9   and answered.                                            11:03:45

10       You can answer.                                     11:03:45

11    A  Yes, that's correct.                                11:03:46

12    Q  Okay.  So I would like you to explain, as           11:03:48

13   best as you can, because this deposition may be         11:03:51

14   shown to a court or a jury, as best as you can,         11:03:56

15   what additional facts one way or another that you       11:03:59

16   might learn in the rest of the discovery period in      11:04:02

17   this case will persuade you and Beazley one way or      11:04:06

18   another as to whether International Paper's             11:04:11

19   employee theft claim is covered or not covered          11:04:15

20   under the Beazley policy?                                11:04:17

21       MR. MURPHY:  Objection as to form.                  11:04:18

22    A  Are you look -- can you clarify the                 11:04:22

23   question for me, please?                                 11:04:32

24    Q  Sure.  There has been a lot of information          11:04:33

25   provided, a lot of testimony provided in this          11:04:36

| | | |
|---|---|---|
| 1 | case, a lot of facts and figures provided by | 11:04:38 |
| 2 | International Paper to Beazley of the past claim | 11:04:43 |
| 3 | (coughing). | 11:04:47 |
| 4 | I'm asking you to explain as best you can, | 11:04:47 |
| 5 | to the court or to the jury or who would listen, | 11:04:50 |
| 6 | what additional information do you expect or need | 11:04:53 |
| 7 | to get in the next remaining weeks of discovery in | 11:04:57 |
| 8 | this case that will allow Beazley to determine, | 11:05:03 |
| 9 | yes or no, is this a covered claim under the | 11:05:06 |
| 10 | Beazley policy? | 11:05:10 |
| 11 | MR. MURPHY:  Same objection. | 11:05:11 |
| 12 | A  I would defer to the expert reports on | 11:05:19 |
| 13 | that. | 11:05:22 |
| 14 | Q  Well, the expert report only goes to | 11:05:23 |
| 15 | damages.  It doesn't go to whether it's a covered | 11:05:26 |
| 16 | claim or not.  So I'm asking, putting aside the | 11:05:28 |
| 17 | amount of damages or loss, what facts one way or | 11:05:32 |
| 18 | another are you expecting or that you need to get | 11:05:36 |
| 19 | in the remaining few weeks of discovery in this | 11:05:40 |
| 20 | case that will allow Beazley to make a | 11:05:42 |
| 21 | determination, yes or no, is this a covered claim | 11:05:45 |
| 22 | that International Paper has submitted to Beazley? | 11:05:49 |
| 23 | MR. MURPHY:  Same objection. | 11:05:52 |
| 24 | A  Again, we're hoping to have a decision in | 11:06:11 |
| 25 | the near term, but there are some items that are | 11:06:16 |

| | |
|---|---|
| 1 | still pending from discovery. | 11:06:18 |
| 2 |    Q  Right.  But could you tell me what | 11:06:23 |
| 3 | specific items it is that you're waiting for to | 11:06:25 |
| 4 | make a decision as to whether this is a covered | 11:06:29 |
| 5 | claim? | 11:06:32 |
| 6 |    A  We would need to have documentation that | 11:06:34 |
| 7 | demonstrates that there was employee dishonesty. | 11:06:36 |
| 8 |    Q  Right.  And what kind of documentation | 11:06:39 |
| 9 | would satisfy you that there is employee | 11:06:41 |
| 10 | dishonesty? | 11:06:43 |
| 11 |     MR. MURPHY:  Objection as to form, asked | 11:06:44 |
| 12 | and answered. | 11:06:50 |
| 13 |    A  Well, as -- as stated previously, we would | 11:06:50 |
| 14 | need to have documentation that demonstrates that | 11:06:54 |
| 15 | there was an employee dishonesty with respect to | 11:06:57 |
| 16 | the policy language. | 11:07:00 |
| 17 |    Q  Can you point to any witness whose | 11:07:03 |
| 18 | testimony you're still waiting for to make that | 11:07:06 |
| 19 | determination? | 11:07:09 |
| 20 |    A  No. | 11:07:18 |
| 21 |    Q  Can you point to any specific document | 11:07:30 |
| 22 | whose production you're still waiting for in order | 11:07:33 |
| 23 | to make that determination? | 11:07:36 |
| 24 |     MR. MURPHY:  Objection as to form, asked | 11:07:37 |
| 25 | and answered. | 11:07:45 |

1    A  Well, as I said previously, we need to          11:07:45

2  have documentation that demonstrates that there     11:07:48

3  was an employee dishonesty with respect to our      11:07:50

4  policy language.                                     11:07:53

5    Q  But you can't identify any particular          11:07:54

6  document that would satisfy you at this point, as   11:07:57

7  you sit here today; is that correct?                11:08:01

8       MR. MURPHY:  Objection as to form, calls       11:08:02

9  for speculation.                                     11:08:04

10   A  I mean, again, Mr. Sylvester, we would         11:08:13

11  need to have documentation that demonstrates that  11:08:15

12  there is an employee dishonesty --                  11:08:18

13   Q  And you're not satisfied --                     11:08:20

14   A  -- under the policy.                            11:08:22

15 Q  And you're not --

16   A  And we don't have that information.             11:08:24

17      MR. SYLVESTER:  Okay.  Your counsel has        11:08:28

18  asked for a break.  Why don't we take a ten-minute 11:08:31

19  break.  It's 11:08 a.m. Eastern.  Go off the       11:08:34

20  record.                                             11:08:37

21      THE VIDEOGRAPHER:  We are going off the        11:08:37

22  record.  The time is 11:08 a.m.                     11:08:39

23      (Off the record.)                               11:08:41

24      (Marked for identification Exhibit 4,          11:20:55

25  Beazley commercial crime policy.)                   11:21:19

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  We are back on the | 11:20:58 |
| 2 | record.  The time is 11:21 a.m. | 11:21:06 |
| 3 | BY MR. SYLVESTER: | 11:21:09 |
| 4 | Q  Ms. Ellis, I would ask you to put before | 11:21:09 |
| 5 | you Exhibit Number 4, which we've marked as the | 11:21:13 |
| 6 | Beazley commercial crime policy at issue in this | 11:21:19 |
| 7 | case for the policy period the 1st of July, 2019, | 11:21:22 |
| 8 | through the 1st of July, 2020, policy number | 11:21:27 |
| 9 | V27C90190101. | 11:21:33 |
| 10 | Do you have that policy in front of you? | 11:21:34 |
| 11 | A  Yes, I do. | 11:21:39 |
| 12 | Q  You have seen this policy before.  It's | 11:21:40 |
| 13 | the subject of International coverage... | 11:21:43 |
| 14 | (The court reporter asked for clarification.) | 11:21:48 |
| 15 | Q  Have you seen this policy, this Beazley | 11:21:51 |
| 16 | commercial crime policy before, Exhibit Number 4, | 11:21:56 |
| 17 | which is the subject of International Paper's | 11:21:58 |
| 18 | claim for coverage in this case? | 11:22:01 |
| 19 | A  Yes. | 11:22:04 |
| 20 | Q  Have you had a chance to review this | 11:22:04 |
| 21 | policy and its terms and conditions in connection | 11:22:07 |
| 22 | with International Paper's claim for coverage? | 11:22:11 |
| 23 | A  Yes. | 11:22:16 |
| 24 | Q  And are you familiar with the terms, the | 11:22:16 |
| 25 | meaning and understanding of the terms and | 11:22:20 |

| | | |
|---|---|---|
| 1 | conditions of Beazley's policy? | 11:22:23 |
| 2 | A  Yes. | 11:22:28 |
| 3 | Q  You see on the first page that it shows a | 11:22:29 |
| 4 | premium amount of $110,124 under the policy | 11:22:36 |
| 5 | information section of the first page of | 11:22:43 |
| 6 | Exhibit 4? | 11:22:45 |
| 7 | Do you see that? | 11:22:46 |
| 8 | A  Yes. | 11:22:48 |
| 9 | Q  And does Beazley acknowledge that | 11:22:49 |
| 10 | International Paper paid (coughing) the premium | 11:22:52 |
| 11 | for this policy? | 11:22:56 |
| 12 | (The court reporter asked for clarification.) | 11:22:56 |
| 13 | Q  Does Beazley acknowledge that it | 11:23:01 |
| 14 | International Paper paid the premium for this | 11:23:02 |
| 15 | policy? | 11:23:05 |
| 16 | A  Yes. | 11:23:07 |
| 17 | Q  Is Beazley contending that International | 11:23:08 |
| 18 | Paper made any misrepresentations in the | 11:23:14 |
| 19 | procurement of this policy from Beazley? | 11:23:19 |
| 20 | A  Could you repeat that question? | 11:23:25 |
| 21 | Q  Is Beazley contending that International | 11:23:28 |
| 22 | Paper made any misrepresentations in procuring | 11:23:32 |
| 23 | this policy from Beazley? | 11:23:36 |
| 24 | A  No. | 11:23:37 |
| 25 | Q  Is Beazley contending that International | 11:23:38 |

| | | |
|---|---|---|
| 1 | Paper made any material nondisclosures or | 11:23:42 |
| 2 | omissions in its procurement of this policy from | 11:23:46 |
| 3 | Beazley? | 11:23:50 |
| 4 | A  No. | 11:23:55 |
| 5 | Q  The policy provides coverage for losses | 11:23:56 |
| 6 | resulting from employee theft. | 11:24:01 |
| 7 | Do you see that within the body of the | 11:24:03 |
| 8 | policy, particularly on page Bates numbered ending | 11:24:09 |
| 9 | in 020? | 11:24:16 |
| 10 | A  What page number is that of the PDF? | 11:24:19 |
| 11 | Q  Yeah, of the PDF -- let me check here. | 11:24:22 |
| 12 | Yeah, it's page 4 of the 36-page PDF. | 11:24:35 |
| 13 | A  Okay. | 11:24:39 |
| 14 | Q  See that there is an insuring agreement | 11:24:43 |
| 15 | saying that the underwriters, referencing Beazley, | 11:24:47 |
| 16 | shall indemnify the insured for loss resulting | 11:24:50 |
| 17 | directly from employee theft? | 11:24:54 |
| 18 | A  Yes, I see that on the page. | 11:24:57 |
| 19 | Q  And you understand that's what | 11:24:59 |
| 20 | International Paper is claiming happened, that it | 11:25:01 |
| 21 | was victimized by an employee theft scheme by its | 11:25:04 |
| 22 | former employee, Sitaraman Jagannath; do you | 11:25:09 |
| 23 | understand that? | 11:25:15 |
| 24 | A  I understand that is the allegation. | 11:25:15 |
| 25 | Q  And can we refer to Sitaraman Jagannath | 11:25:18 |

| | | |
|---|---|---|
| 1 | throughout this deposition as Jag for short? | 11:25:22 |
| 2 | A  Yes. | 11:25:26 |
| 3 | Q  Okay.  Now, if you would, look at the | 11:25:27 |
| 4 | definition of employee theft, which is I think | 11:25:35 |
| 5 | four pages later in this document.  See in the | 11:25:38 |
| 6 | definitions, the definition of employee theft, | 11:25:50 |
| 7 | it's on Bates number ending 024. | 11:25:52 |
| 8 | Do you have that? | 11:25:58 |
| 9 | A  Yes. | 11:25:59 |
| 10 | Q  And it says:  Employee theft means the | 11:25:59 |
| 11 | unlawful taking of money, securities or property | 11:26:02 |
| 12 | to the deprivation of an insured by an employee, | 11:26:06 |
| 13 | whether identified or not, acting alone or in | 11:26:12 |
| 14 | collusion with others to obtain financial benefit | 11:26:14 |
| 15 | for the employee. | 11:26:16 |
| 16 | Do you see that? | 11:26:17 |
| 17 | A  Yes. | 11:26:20 |
| 18 | Q  And should there be a period after the | 11:26:21 |
| 19 | word "employee" before the start of the next words | 11:26:25 |
| 20 | in that definition?  Is that a typo missing a | 11:26:32 |
| 21 | period because a new sentence is starting with | 11:26:50 |
| 22 | "financial benefit"? | 11:26:52 |
| 23 | A  I'm not sure. | 11:26:56 |
| 24 | Q  Well, do you read it to end with the word | 11:27:02 |
| 25 | "employee" before reading the words:  Financial | 11:27:07 |

1  benefit does not include any employee benefits          11:27:12

2  earned in the normal course of employment,               11:27:16

3  including salaries, commission fees, bonuses,            11:27:18

4  promotions, awards, profit sharing or pensions.         11:27:20

5      Is that a separate sentence that is                 11:27:24

6  following the first sentence that ends with the         11:27:27

7  word "employee"?                                         11:27:29

8      A  Well, it's all part of the definition of         11:27:35

9  employee theft under the policy.                        11:27:38

10     Q  Okay.  Well, let's take it one at a time.        11:27:40

11 Do you agree that International Paper is an               11:27:45

12 insured, correct?                                        11:27:47

13     A  Yes, it's the named insured on the policy.       11:27:50

14     Q  Would you agree that at the time of the          11:27:53

15 alleged loss that Jag was an employee of                 11:27:57

16 International Paper as defined in this policy?           11:28:01

17     A  Yes.                                              11:28:06

18     Q  Now, it says:  Theft means the unlawful          11:28:07

19 taking of money, securities for property to the          11:28:16

20 deprivation of an insured by an employee, whether        11:28:19

21 identified or not, acting alone or in collusion          11:28:22

22 with others to obtain financial benefit for the          11:28:25

23 employee.                                                11:28:28

24     Do you see that language?                           11:28:28

25     A  Yes.                                              11:28:32

```
1      Q  Do you understand that Jag has admitted        11:28:33

2   that some of the monies that were paid under his     11:28:36

3   direction from International Paper to his            11:28:42

4   brother's companies, DGS and Mid-South, were        11:28:44

5   transferred back to him into accounts that he       11:28:47

6   controlled?                                         11:28:51

7          Do you understand that?                      11:28:51

8      A  Beazley -- Beazley understands the            11:28:53

9   allegation.                                         11:28:57

10     Q  Well, you've seen evidence of that,           11:28:58

11  correct?                                            11:29:01

12     A  Again, we understand the allegation.          11:29:04

13     Q  Well, you've seen a settlement agreement      11:29:06

14  signed by Jag where he admitted that, correct?      11:29:09

15         MR. MURPHY:  Objection as to form.           11:29:12

16         You can answer.                              11:29:14

17     A  I have seen the settlement agreement.         11:29:16

18     Q  And isn't it correct that, in that           11:29:19

19  settlement agreement, Jag signed the agreement and  11:29:23

20  he confirmed that some of the monies that were      11:29:28

21  paid under contract to DGS and Mid-South were       11:29:30

22  transferred back to accounts that he controlled;    11:29:34

23  isn't that right?                                   11:29:40

24         MR. MURPHY:  Objection as to form.           11:29:40

25         You can answer.                              11:29:41
```

1      A  Do you have a copy of the document for                11:29:44

2   reference?                                                   11:29:46

3      Q  Sure.  I'll ask our tech to pull up                   11:29:47

4   Exhibit 17.                                                  11:29:51

5         (Marked for identification Exhibit 17,                11:29:52

6   settlement agreement.)                                       11:31:01

7         A/V TECHNICIAN:  Counsel, would you like              11:30:22

8   this marked in sequence?  This would be Number 5?           11:30:23

9         MR. SYLVESTER:  No, just keep it                      11:30:27

10  Exhibit 17.                                                  11:30:30

11        A/V TECHNICIAN:  Got it.  Thank you.                  11:30:30

12     Q  Can you open the exhibit?                             11:30:32

13     A  Yes, I can open it.                                   11:30:54

14     Q  Have you seen this settlement agreement              11:30:56

15  previously?                                                  11:30:58

16     A  Yes.                                                   11:31:00

17     Q  And have you studied it as part of your              11:31:03

18  investigation of this case?                                  11:31:10

19        MR. MURPHY:  Objection as to form.                   11:31:13

20        You can answer.                                       11:31:15

21     A  I've seen the document previously.                   11:31:17

22     Q  Okay.  Can you turn to paragraph 15 of the           11:31:20

23  settlement agreement?  It's at the bottom of                 11:31:24

24  page 3.                                                      11:31:37

25     A  Okay.                                                  11:31:38

1      Q   Do you see where it says:  The related        11:31:38

2   parties, and specifically Jag and Shiv, agree that    11:31:42

3   DGS and Mid-South received funds from IP pursuant     11:31:46

4   to their contracts with IP and its suppliers, and     11:31:51

5   further agree that some of those funds were           11:31:53

6   transferred to accounts controlled by Jag.            11:31:55

7        Do you see that?                                 11:31:57

8      A   I do.                                          11:31:59

9      Q   And "Shiv" is referring to Shiv Kumar, who     11:32:00

10   is the half-brother of Jag, correct?                 11:32:07

11     A   Yes, that's what -- what's been reported.      11:32:10

12     Q   Do you have any reason to believe             11:32:14

13   otherwise?                                            11:32:16

14     A   Again, that's what's been reported            11:32:23

15   throughout the claim.                                 11:32:27

16     Q   Right.  But I'm saying that there's           11:32:28

17   evidence in the record that Jag and Shiv are          11:32:36

18   half-brothers.                                        11:32:41

19        Does Beazley have any reason to believe         11:32:42

20   that that's not true?                                 11:32:45

21     A   Based on current information, we do not.      11:32:52

22     Q   Okay.  And DGS and Mid-South, those are       11:32:56

23   diversity supply entities that were controlled by     11:33:00

24   Shiv, correct?                                        11:33:05

25     A   That's what has been reported, yes.           11:33:12

1    Q  Does Beazley have any reason to believe          11:33:15

2  otherwise, that DGS and Mid-South were not            11:33:17

3  controlled by Shiv?                                   11:33:21

4    A  Again, that's what's been reported --            11:33:23

5    Q  Do you have --                                   11:33:26

6    A  -- in the claim information.                     11:33:27

7    Q  I'm sorry.                                       11:33:28

8       Do you have any contrary information that        11:33:28

9  DGS and Mid-South were not the controlled by Jag's    11:33:31

10  brother Shiv?                                         11:33:35

11    A  Again, it's -- it's what's been reported        11:33:42

12  in the claim information.                             11:33:44

13    Q  Right.  Do you believe it to be true?           11:33:45

14       MR. MURPHY:  Objection as to form.              11:33:51

15       You can answer.                                 11:33:53

16    A  Again, it's what's been reported in the         11:33:55

17  claim presentation.                                   11:34:00

18    Q  Based on your analysis of all the               11:34:00

19  documentation in the case, all of the evidence and   11:34:02

20  testimony, do you believe that that's true, that     11:34:06

21  DGS and Mid-South were entities controlled by        11:34:09

22  Shiv, Jag's brother?                                  11:34:12

23       MR. MURPHY:  Same objection.                    11:34:14

24       You can answer.                                 11:34:16

25    A  Again, that's what's been reported.             11:34:17

| | | |
|---|---|---|
| 1 | Q  I know it's been reported.  My question | 11:34:20 |
| 2 | is, do you believe it to be true? | 11:34:22 |
| 3 | MR. MURPHY:  Same objection. | 11:34:25 |
| 4 | A  And, again, Mr. Sylvester, that's what's | 11:34:28 |
| 5 | been alleged.  It's what has been reported, but -- | 11:34:31 |
| 6 | Q  Does Beazley have any evidence to | 11:34:35 |
| 7 | contradict the notion that Shiv controlled both | 11:34:38 |
| 8 | DGS and Mid-South? | 11:34:43 |
| 9 | A  Again, that's what's been reported. | 11:34:46 |
| 10 | Q  It says in paragraph 15 that:  Both Jag | 11:34:49 |
| 11 | and Shiv agree that DGS admits received funds from | 11:34:56 |
| 12 | IP pursuant to their contracts with IP and its | 11:35:03 |
| 13 | suppliers and further agree that some of those | 11:35:05 |
| 14 | funds were transferred to accounts controlled by | 11:35:07 |
| 15 | Jag. | 11:35:10 |
| 16 | Do you see that? | 11:35:11 |
| 17 | A  I see item 15, yes. | 11:35:13 |
| 18 | Q  Would that constitute financial benefit | 11:35:17 |
| 19 | for Jag? | 11:35:20 |
| 20 | A  Potentially. | 11:35:30 |
| 21 | Q  If that fact is true, would that | 11:35:32 |
| 22 | constitute financial benefit for the employee, | 11:35:37 |
| 23 | Jag, as referenced in the definition of employee | 11:35:42 |
| 24 | theft? | 11:35:45 |
| 25 | MR. MURPHY:  Objection as to form, asked | 11:35:46 |

| | |
|---|---|
| 1 | and answered. | 11:35:51 |
| 2 |    A  Potentially. | 11:35:51 |
| 3 |    Q  Does Beazley have any reason to believe | 11:35:53 |
| 4 | that that's not true, that is, that some of the | 11:35:55 |
| 5 | funds that DGS and Mid-South received from IP were | 11:35:59 |
| 6 | not transferred to accounts controlled by Jag? | 11:36:05 |
| 7 |    MR. MURPHY:  Objection as to form. | 11:36:08 |
| 8 |    A  Can you repeat the question, please? | 11:36:11 |
| 9 |    Q  Sure.  Does Beazley have any reason to | 11:36:13 |
| 10 | believe that that statement signed by Jag and Shiv | 11:36:15 |
| 11 | in paragraph 15 is not true, that is, that funds | 11:36:19 |
| 12 | from DGS and Mid-South were not transferred to | 11:36:24 |
| 13 | accounts controlled by Jag? | 11:36:28 |
| 14 |    A  And I'm sorry, can you repeat the question | 11:36:36 |
| 15 | again for me, please? | 11:36:39 |
| 16 |    Q  Yes.  Do you see the statement made in | 11:36:41 |
| 17 | paragraph 15 of the settlement agreement with Jag | 11:36:43 |
| 18 | and Shiv? | 11:36:46 |
| 19 |    Do you see that? | 11:36:47 |
| 20 |    A  Yes, yes. | 11:36:48 |
| 21 |    Q  Page 3, bates number ending in 0615. | 11:36:49 |
| 22 |    Does Beazley have any evidence or reason | 11:36:54 |
| 23 | to believe that the statement in paragraph 15 is | 11:36:58 |
| 24 | not correct? | 11:37:02 |
| 25 |    A  With respect to -- | 11:37:11 |

1    Q  With respect to some of the funds of DGS          11:37:17

2    and Mid-South that they received from contracts      11:37:20

3    with International Paper were transferred to          11:37:23

4    accounts controlled by Jag?                           11:37:25

5    A  I don't know.                                      11:37:33

6    Q  I'm asking you as the corporate                    11:37:37

7    representative of Beazley, as you sit here today,     11:37:39

8    does Beazley have any evidence to suggest that        11:37:44

9    that statement is not true?                           11:37:46

10       MR. MURPHY:  Objection as to form, asked          11:37:49

11   and answered.                                         11:37:57

12   A  Again, I'm not sure.                               11:37:57

13   Q  Are you aware of any evidence based on             11:38:01

14   your investigation of this claim to suggest that      11:38:03

15   that statement in paragraph 15 is not true?           11:38:07

16       MR. MURPHY:  I believe counsel is asking          11:38:11

17   you as an individual fact witness right now,          11:38:13

18   Ms. Ellis.                                            11:38:17

19   A  I am not.                                          11:38:23

20   Q  And if that statement is true,                     11:38:26

21   paragraph 15, would that constitute financial         11:38:29

22   benefit for the employee, Jag, as referenced in       11:38:32

23   the definition of an employee -- in the Beazley       11:38:35

24   policy, Exhibit 4?                                     11:38:40

25       MR. MURPHY:  Objection as to form, asked          11:38:42

1    and answered.                                        11:38:44

2         You can answer.                                 11:38:44

3    A   Potentially.                                     11:38:47

4    Q   When you say "potentially," why would it         11:38:48

5    not be?  What's the possibility that it's not for    11:38:52

6    the financial benefit of Jag?                        11:38:58

7    A   Well, again, it potentially could.               11:39:13

8    Q   Well, isn't that something you have to           11:39:18

9    decide in order to determine whether this is a       11:39:20

10   covered claimed?                                     11:39:22

11   A   Well, we would have to have documentation        11:39:27

12   of an employee dishonesty first.                     11:39:29

13   Q   Well, I understand that.  But with regard        11:39:33

14   to needing the definition of employee theft, that    11:39:36

15   there was financial benefit for the employee,        11:39:43

16   isn't that something you'd have to determine to      11:39:47

17   determine whether there was a covered claim, was     11:39:48

18   there any financial benefit to the employee, Jag,    11:39:50

19   from the alleged scheme?                             11:39:52

20        Isn't that part of your decision-making         11:39:53

21   process?                                             11:39:58

22   A   It's part of the definition of employee          11:39:58

23   theft.                                               11:40:00

24   Q   What more do you need to make a                  11:40:03

25   determination as to whether Jag received financial   11:40:06

1    benefit from this arrangement that he had with his        11:40:10

2    brother's companies?                                      11:40:13

3        A   Other than line 15?                               11:40:16

4        Q   Do you need anything else other than             11:40:36

5    line 15 (coughing) Jag received a financial               11:40:38

6    benefit from his arrangement with his brother's           11:40:41

7    companies?                                                11:40:45

8            MR. MURPHY:   Objection as to form.               11:40:48

9        A   We would need documentation to support any        11:40:57

10   allegation.                                               11:41:04

11       Q   Well, under this settlement agreement, Jag        11:41:07

12   and Shiv paid $15 million back to International            11:41:11

13   Paper, correct?                                           11:41:15

14       A   Yes.                                              11:41:27

15       Q   Where do you think they got the money            11:41:29

16   from?                                                     11:41:33

17           MR. MURPHY:   Objection as to form, calls         11:41:36

18   for speculation.                                          11:41:38

19       A   Where does Beazley believe they obtained         11:41:45

20   the settlement funds?                                     11:41:48

21       Q   Correct.                                          11:41:49

22           MR. MURPHY:   Same objection.                     11:41:52

23       A   Could you clarify the question?                   11:42:04

24       Q   Yeah.   The question is, simply, Jag and          11:42:09

25   Shiv agreed in the settlement agreement to pay $15        11:42:11

| | | |
|---|---|---|
| 1 | million to International Paper. | 11:42:13 |
| 2 | Where do you think they got that kind of | 11:42:16 |
| 3 | money, based on your investigation? | 11:42:18 |
| 4 | A  I don't -- I don't recall the exact source | 11:42:33 |
| 5 | of the settlement funds. | 11:42:39 |
| 6 | Q  Do you think that they got the money | 11:42:41 |
| 7 | through legitimate business operations? | 11:42:43 |
| 8 | MR. MURPHY:  Objection as to form. | 11:42:46 |
| 9 | A  I can't really speculate on the source of | 11:42:52 |
| 10 | those funds. | 11:42:55 |
| 11 | Q  Why do you think that they would pay it | 11:43:00 |
| 12 | other than recognizing or acknowledging that they | 11:43:02 |
| 13 | obtained it wrongfully? | 11:43:06 |
| 14 | Why do you think that they would have paid | 11:43:08 |
| 15 | it back to International Paper? | 11:43:10 |
| 16 | MR. MURPHY:  Objection as to form. | 11:43:14 |
| 17 | A  I can't speculate on their rationale for | 11:43:19 |
| 18 | doing so. | 11:43:27 |
| 19 | Q  Doesn't it suggest to you that they | 11:43:28 |
| 20 | acknowledged that they had wrongfully obtained | 11:43:31 |
| 21 | this dollar -- these dollars and that's why | 11:43:34 |
| 22 | they're paying it back in settlement rather than | 11:43:37 |
| 23 | proceeding with civil and criminal proceedings? | 11:43:40 |
| 24 | MR. MURPHY:  Objection, form. | 11:43:45 |
| 25 | You can answer. | 11:43:46 |

| | | |
|---|---|---|
| 1 | A   Well, I understand the criminal case was | 11:43:52 |
| 2 | dismissed. | 11:43:55 |
| 3 | Q   Correct, as part of the deal. | 11:43:56 |
| 4 | Let's go back to the definition of | 11:44:01 |
| 5 | employee theft in the policies. | 11:44:03 |
| 6 | Do you have that in front of you? | 11:44:09 |
| 7 | A   Yes. | 11:44:11 |
| 8 | Q   It says:  Employee theft means the | 11:44:12 |
| 9 | unlawful taking of monies, securities or property | 11:44:15 |
| 10 | to the deprivation of the insured. | 11:44:18 |
| 11 | Do you see that? | 11:44:20 |
| 12 | A   Yes. | 11:44:22 |
| 13 | Q   And what does "unlawful" mean in that | 11:44:23 |
| 14 | provision? | 11:44:27 |
| 15 | MR. MURPHY:  Objection as to form. | 11:44:29 |
| 16 | A   It's an undefined term. | 11:44:34 |
| 17 | Q   The word "unlawful" is undefined in the | 11:44:40 |
| 18 | Beazley policy Exhibit 4; is that right? | 11:44:44 |
| 19 | A   Yes, that's correct. | 11:44:46 |
| 20 | Q   How does Beazley interpret that for | 11:44:48 |
| 21 | purposes of considering claims for employee theft? | 11:44:53 |
| 22 | How does Beazley consider unlawful to be | 11:44:57 |
| 23 | defined or what it means? | 11:45:01 |
| 24 | MR. MURPHY:  Objection as to form. | 11:45:05 |
| 25 | You can answer. | 11:45:07 |

1   A  We would refer to the dictionary                   11:45:12

2   definition.                                           11:45:15

3   Q  And what dictionary would you look to, to          11:45:16

4   get that definition?                                  11:45:23

5       MR. MURPHY:  Same objection.                      11:45:25

6   A  For the -- the Black's Law.                        11:45:26

7   Q  Black's Law dictionary.                            11:45:33

8       Okay.  Would you agree that for there to          11:45:35

9   be an unlawful taking to satisfy that provision of    11:45:40

10  this definition, (technical difficulty) need not      11:45:44

11  be convicted...                                       11:45:48

12      MR. MURPHY:  You faded out.                        11:45:53

13      THE WITNESS:  You were going out.                 11:45:55

14  Q  I'm sorry.                                         11:45:56

15      (Off the record.)                                 11:46:04

16  Q  Would you agree, Ms. Ellis, that an                11:46:09

17  employee need not be convicted of a crime for him     11:46:13

18  or her to have engaged in an unlawful taking as       11:46:16

19  defined in this definition of employee theft in       11:46:21

20  the Beazley policy?                                   11:46:25

21      MR. MURPHY:  Objection as to form, goes           11:46:26

22  beyond the scope.                                     11:46:29

23  A  The policy doesn't require criminal                11:46:35

24  conviction.                                           11:46:38

25  Q  You understand that Jag and Shiv were              11:46:45

| | |
|---|---|
| 1 | charged criminally by the federal government for | 11:46:52 |
| 2 | the arrangement that they had going on between IP | 11:46:57 |
| 3 | Global Sourcing Specialty Chemicals Group on the | 11:47:03 |
| 4 | one hand and DGS Mid-South on the other hand, do | 11:47:06 |
| 5 | you not? | 11:47:11 |
| 6 | MR. MURPHY:  Objection as to form. | 11:47:11 |
| 7 | A  Yes, we understand that. | 11:47:16 |
| 8 | Q  Is the criminal charge by the U.S. | 11:47:18 |
| 9 | Attorney's Office evidence that their actions were | 11:47:26 |
| 10 | unlawful in the arrangement that they had going on | 11:47:29 |
| 11 | between IP's Specialty Chemicals Group and DGS and | 11:47:36 |
| 12 | Mid-South? | 11:47:42 |
| 13 | MR. MURPHY:  Objection as to form. | 11:47:43 |
| 14 | A  Well, again, the criminal matter was | 11:47:48 |
| 15 | dismissed. | 11:47:50 |
| 16 | Q  Right.  It was dismissed as part of a | 11:47:54 |
| 17 | settlement.  But the fact that the U.S. Attorney's | 11:47:56 |
| 18 | Office charged them criminally, is that evidence | 11:48:00 |
| 19 | that what they were engaged in was unlawful? | 11:48:02 |
| 20 | MR. MURPHY:  Objection as to form. | 11:48:06 |
| 21 | A  Again, the case -- the criminal matter was | 11:48:14 |
| 22 | dismissed and there was no conviction. | 11:48:17 |
| 23 | Q  Right.  But you said that a criminal | 11:48:20 |
| 24 | conviction is not required under the policy, | 11:48:23 |
| 25 | right? | 11:48:26 |

1    A   Correct.                                      11:48:27

2    Q   So, what is required in order to             11:48:27

3  demonstrate to Beazley that their activity was     11:48:31

4  unlawful?                                           11:48:34

5    A   It would have to be an actual taking of      11:48:50

6  money, securities or property by an employee       11:48:54

7  pursuant to the definition of employee theft.      11:49:02

8    Q   Well, does Beazley have any evidence to      11:49:07

9  demonstrate that this arrangement that Jag and     11:49:12

10  Shiv had between IP's Specialty Chemicals Group    11:49:18

11  and DGS and Mid-South on other hand was not       11:49:24

12  unlawful?                                          11:49:27

13    A   At this time, Beazley does not have         11:49:35

14  enough -- have documentation that demonstrates    11:49:37

15  that there was an employee theft resulting in     11:49:42

16  employee dishonesty.                               11:49:45

17    Q   When you say that Beazley does not have     11:49:48

18  enough documentation, you understand that the     11:49:51

19  document discovery in this case closed earlier    11:49:53

20  this month, correct?                               11:49:56

21      MR. MURPHY:  Objection as to form, beyond     11:49:58

22  the scope of the notice.                           11:50:00

23      You can answer as an individual.              11:50:01

24    A   Can you repeat the question, please?        11:50:05

25    Q   Yes.  Do you understand that document       11:50:07

| 1 | discovery in this case closed earlier this month? | 11:50:10 |
| 2 | MR. MURPHY:  Same objection. | 11:50:14 |
| 3 | A  Yes. | 11:50:23 |
| 4 | Q  So, there is not going to be any more | 11:50:25 |
| 5 | document exchange between the parties in this | 11:50:29 |
| 6 | case.  So, when you say you need more | 11:50:32 |
| 7 | documentation, does that mean that you're denying | 11:50:34 |
| 8 | coverage because the documents that you've | 11:50:37 |
| 9 | received, which are now complete from | 11:50:39 |
| 10 | International Paper, don't satisfy you that | 11:50:42 |
| 11 | there's been an employee theft? | 11:50:46 |
| 12 | MR. MURPHY:  Objection as to form, | 11:50:48 |
| 13 | compound, misleading, improper characterizations. | 11:50:50 |
| 14 | You can answer. | 11:50:54 |
| 15 | A  Again, it's -- as in my previous response, | 11:51:00 |
| 16 | we have not received enough information to | 11:51:06 |
| 17 | demonstrate that there was an employee dishonesty. | 11:51:42 |
| 18 | Q  So, does that mean you're denying coverage | 11:51:13 |
| 19 | now that there is no further documentation that | 11:51:15 |
| 20 | will be exchanged in the case? | 11:51:18 |
| 21 | MR. MURPHY:  Objection as to form, asked | 11:51:20 |
| 22 | and answered. | 11:51:26 |
| 23 | A  Again, as previously stated, we have not | 11:51:26 |
| 24 | made a coverage determination at this time. | 11:51:31 |
| 25 | Q  Going back to the definition of employee | 11:51:44 |

| | | |
|---|---|---|
| 1 | theft in the policy, where it says it means the | 11:51:46 |
| 2 | unlawful taking of money, securities or property | 11:51:50 |
| 3 | to the deprivation of an insured, by an employee, | 11:51:52 |
| 4 | whether identified or not, acting alone or in | 11:51:56 |
| 5 | collusion with others, to obtain financial benefit | 11:51:59 |
| 6 | for the employee, in that definition, is it | 11:52:02 |
| 7 | correct that the financial benefit to the employee | 11:52:06 |
| 8 | does not have to be equivalent to the amount of | 11:52:10 |
| 9 | loss suffered by the company, the insured, in | 11:52:15 |
| 10 | order for there to be coverage? | 11:52:18 |
| 11 | MR. MURPHY:  Objection as to form. | 11:52:21 |
| 12 | A  Can you repeat the question, please? | 11:52:24 |
| 13 | Q  Sure.  Where it talks about as part of the | 11:52:26 |
| 14 | definition of employee theft there has to be | 11:52:30 |
| 15 | financial benefit to the employee -- do you see | 11:52:33 |
| 16 | that portion of the definition? | 11:52:35 |
| 17 | A  Yes. | 11:52:37 |
| 18 | Q  If an insured is claiming a loss under | 11:52:38 |
| 19 | this employee-theft definition, the loss does not | 11:52:41 |
| 20 | have to be the same amount of money as the amount | 11:52:46 |
| 21 | of financial benefit to the employee; is that | 11:52:49 |
| 22 | right? | 11:52:53 |
| 23 | MR. MURPHY:  Objection as to form. | 11:52:53 |
| 24 | A  No. | 11:53:09 |
| 25 | Q  That's not right, or, no, you agree with | 11:53:11 |

1    what I just said?                                    11:53:14

2        A  Well, you're -- I'm not really sure what      11:53:16

3    you're asking, to be honest.                         11:53:28

4        Q  I'll give you an example.  Let's assume        11:53:30

5    that there is a covered employee-theft claim and     11:53:32

6    everybody at Beazley agrees it's a covered claim,    11:53:35

7    and the insured demonstrates a loss of $1 million.   11:53:38

8            And it turns out that the employee who       11:53:44

9    engaged in the theft got $500,000 of that million    11:53:48

10   and then somebody else on the outside got the        11:53:52

11   other 500,000.                                        11:53:54

12           Would you agree that the insured's loss is    11:53:55

13   not limited to the amount of financial benefit       11:53:59

14   that the employee received; it's entitled to         11:54:02

15   coverage for the full amount of its loss?            11:54:06

16           MR. MURPHY:  Objection as to form,           11:54:09

17   hypothetical, beyond the scope of the notice.        11:54:11

18           You can answer.                              11:54:13

19       A  I -- I don't think I could answer             11:54:21

20   affirmatively yes or no in that example.             11:54:24

21       Q  Well, then let's talk about the real claim     11:54:28

22   that International Paper has made.  International     11:54:31

23   Paper, in proving its loss from the employee-theft   11:54:35

24   scheme involving Jag and Shiv, does not need to be   11:54:41

25   the same amount of money that Jag has received in    11:54:46

1  financial benefit from the scheme; would you agree          11:54:53

2  with that?                                                  11:54:55

3      MR. MURPHY:  Objection as to form.                      11:54:58

4      A  Yes, it's still subject to the terms and            11:55:06

5  conditions of the policy.                                   11:55:10

6      Q  Okay.  Thank you.                                    11:55:11

7      A  And any potential exclusions.                        11:55:19

8      Q  Right.  But assuming there is a covered             11:55:22

9  claim, the insured's loss for which it can obtain           11:55:26

10  coverage under the Beazley policy is not limited           11:55:30

11  to the amount of financial benefit that the                11:55:32

12  employee thief has obtained from the arrangement?          11:55:35

13      MR. MURPHY:  Objection as to form.                     11:55:38

14      A  Again, subject to the terms and conditions         11:55:44

15  of the policy, and any applicable exclusions.              11:55:46

16      Q  Right.  The answer is, yes, subject to the         11:55:51

17  other terms and conditions of the policy,                  11:55:53

18  including exclusions, correct?                             11:55:55

19      MR. MURPHY:  Objection as to form, asked              11:55:57

20  and answered.                                              11:56:02

21      A  Yes, as previously stated.                          11:56:02

22      Q  Okay.  I think I asked you this before,            11:56:06

23  but forgive me if I did, but you would agree that          11:56:13

24  Jag qualifies as an employee under the definition          11:56:16

25  of employee theft for purposes of this claim,             11:56:20

| | | |
|---|---|---|
| 1 | correct? | 11:56:22 |
| 2 | A  Yes, as previously stated. | 11:56:23 |
| 3 | Q  Okay.  Now, let's take a look at | 11:56:26 |
| 4 | Exhibits 5 and 6. | 11:56:33 |
| 5 | Exhibit 5 is International's complaint in | 11:56:35 |
| 6 | this action. | 11:56:39 |
| 7 | (Marked for identification Exhibits 5 & 6, | 11:56:39 |
| 8 | International's complaint & answer filed by | 11:56:38 |
| 9 | Beazley.) | 11:56:44 |
| 10 | Q  Exhibit 6 is the answer filed by Beazley | 11:56:40 |
| 11 | in this case. | 11:56:45 |
| 12 | Tell me when you have those saved and | 11:56:45 |
| 13 | opened. | 11:56:51 |
| 14 | A  Bear with me here. | 11:57:18 |
| 15 | Okay, I have Exhibit 5 open. | 11:57:27 |
| 16 | Q  Okay.  And if you look on Exhibit 5, which | 11:57:29 |
| 17 | is International's complaint, there is a breach of | 11:57:33 |
| 18 | contract count that is on page 11 of the | 11:57:37 |
| 19 | complaint. | 11:57:40 |
| 20 | Can you turn to that page? | 11:57:41 |
| 21 | A  Okay.  I have it opened. | 11:57:51 |
| 22 | Q  See that in paragraph 72 of | 11:57:54 |
| 23 | International's complaint, it says:  Defendants -- | 11:58:02 |
| 24 | and at this time was referring to both Beazley and | 11:58:04 |
| 25 | Zurich, although Zurich is now settled out of the | 11:58:07 |

1    case -- but defendants have breached their                11:58:10

2    contracts of insurance affording coverage to              11:58:13

3    International Paper by refusing or failing to              11:58:15

4    acknowledge their duty to provide coverage to             11:58:17

5    International Paper for all -- for the                     11:58:21

6    employee-theft scheme.                                    11:58:24

7         And then 73 says:  All conditions                    11:58:24

8    precedent to recovery under the crime policies            11:58:27

9    have been satisfied or waived.                            11:58:30

10        And then 74 says -- and it carries over to           11:58:32

11   page 12:  As a direct result of defendant's              11:58:37

12   breaches of their contract of insurance,                  11:58:41

13   International Paper has been deprived of the               11:58:43

14   benefit of the insurance coverage for which               11:58:45

15   substantial premiums were paid.  International            11:58:47

16   Paper has incurred actual damages because it has          11:58:51

17   suffered many millions of dollars of financial            11:58:54

18   losses and has incurred substantial sums in               11:58:57

19   investigating these losses and pursuing recovery          11:59:01

20   from Jag with no coverage for those losses and            11:59:04

21   expenses from the insureds.                               11:59:08

22        Now, I want to turn to the corresponding             11:59:10

23   responses in the answer to the complaint by               11:59:14

24   Beazley, paragraph 72 to 75, can you open up              11:59:18

25   Exhibit 6?                                                11:59:22

1      Starting on page 9, there is the response          11:59:23

2  to the breach of contract counts in the complaint.    11:59:36

3      A  I have it open.                                 11:59:42

4      Q  Okay.  And do you see bottom of page 9, it      11:59:44

5  says:  Count 1 breach of contract.                    11:59:49

6      And skipping over to paragraph 72, 73, 74,         11:59:52

7  which I just read into the record of the              11:59:56

8  complaint:  Beazley denies the allegations of         11:59:59

9  paragraph 72 of the complaint.  Beazley denies the    12:00:02

10 allegations of paragraph 73 of the complaint.         12:00:06

11 Beazley denies the allegations in paragraph 74 of     12:00:08

12 the complaint.                                         12:00:11

13     Do you see that?                                   12:00:12

14     A  Yes.                                            12:00:14

15     Q  And underneath that, right above the           12:00:15

16 heading affirmative defenses, it says:  Beazley       12:00:18

17 denies that plaintiff is entitled to any of the       12:00:22

18 relief requested.                                      12:00:25

19     Do you see that language?                          12:00:26

20     A  Yes.                                            12:00:28

21     Q  So, at the time that -- at the time that       12:00:29

22 this answer was filed -- and you can check at the     12:00:34

23 top of the page, it was filed December 7th, 2022,     12:00:38

24 about a year ago.                                      12:00:43

25     Beazley was denying that plaintiff was            12:00:44

| | | |
|---|---|---|
| 1 | entitled to any coverage that it was requesting at | 12:00:49 |
| 2 | that time. | 12:00:54 |
| 3 | Do you see that language? | 12:00:54 |
| 4 | A  Yes, I do. | 12:00:57 |
| 5 | Q  And isn't it the case that at the time | 12:01:00 |
| 6 | that it denied that International Paper was | 12:01:04 |
| 7 | entitled to relief a year ago when this document | 12:01:07 |
| 8 | was filed, Beazley had not made a decision as to | 12:01:11 |
| 9 | whether coverage was afforded or not afforded for | 12:01:16 |
| 10 | this claim? | 12:01:19 |
| 11 | A  Can you repeat the question? | 12:01:29 |
| 12 | Q  Yeah.  This answer to the complaint was | 12:01:31 |
| 13 | filed by Beazley a year ago, right? | 12:01:33 |
| 14 | A  Yes. | 12:01:37 |
| 15 | Q  And as of today, a year later, you're | 12:01:38 |
| 16 | saying Beazley has not made a decision whether | 12:01:42 |
| 17 | IP -- and when I say "IP," I'm referring to | 12:01:45 |
| 18 | International Paper -- as of today, Beazley has | 12:01:48 |
| 19 | not made a decision on whether International Paper | 12:01:51 |
| 20 | is entitled to coverage for the employee-theft | 12:01:54 |
| 21 | scheme that it has submitted to Beazley, right? | 12:01:57 |
| 22 | A  Yes, that's correct. | 12:02:02 |
| 23 | Q  And so, the same would have been true as | 12:02:04 |
| 24 | of a year ago when this document, this answer was | 12:02:06 |
| 25 | filed, that Beazley had not made a coverage | 12:02:09 |

1    decision, right?                                    12:02:12

2        A  Beazley was still in the process of          12:02:16

3    evaluating the claim.                               12:02:19

4        Q  Okay.  So, what, then, follows in the        12:02:21

5    answer that Beazley filed are what's called         12:02:25

6    affirmative defenses, and there's 15 of them.  15   12:02:28

7    reasons why the claim may not be covered.           12:02:34

8        Do you see that?                                12:02:38

9        A  Yes, I do.                                   12:02:41

10       Q  I think you said you reviewed this answer    12:02:42

11   and affirmative defenses in preparation for the     12:02:48

12   depo here today; is that right?                     12:02:51

13       A  Yes.                                         12:02:52

14       Q  So, my question is, as of a year ago,        12:02:53

15   Beazley was putting out these 15 potential reasons  12:03:00

16   why a claim wasn't covered.  We're now a year       12:03:02

17   later, nearing the close of discovery, following    12:03:08

18   the end of document discovery, nearing the end of   12:03:10

19   deposition discovery, does Beazley contend that     12:03:13

20   any of these affirmative defenses that were         12:03:18

21   reserved when it filed its answer a year ago, is    12:03:22

22   Beazley satisfied that some of them are not         12:03:25

23   applicable to this claim such that Beazley is       12:03:27

24   prepared to withdraw them?                          12:03:30

25       A  We have a few that are not being pursued,    12:03:39

1    but we're not necessarily withdrawing them.            12:03:44

2        Q   Okay.  Well, tell me which affirmative        12:03:48

3    defenses of these 15 Beazley is not pursuing.          12:03:51

4            MR. MURPHY:  And if I can just interject,      12:03:58

5    Pia, before you respond, I just want to be clear       12:04:02

6    for the record, the first affirmative defense is       12:04:04

7    being withdrawn.                                        12:04:07

8            And I'm sure Ms. Ellis is in agreement,        12:04:10

9    but you can certainly ask it.                           12:04:12

10           MR. SYLVESTER:  Okay.  Thanks, Gene.           12:04:16

11       Q   So, your counsel stated that the first         12:04:18

12   affirmative defense, the complaint fails to state      12:04:19

13   a claim upon which relief can be granted.              12:04:22

14           Beazley is not pursuing that affirmative       12:04:25

15   defense; is that right?                                 12:04:29

16       A   Yes, that's correct.                           12:04:30

17       Q   But you're not withdrawing it, or you are      12:04:31

18   withdrawing it?                                         12:04:35

19       A   We are withdrawing it.                         12:04:37

20       Q   Okay.  Okay.  Tell me what other              12:04:40

21   affirmative defenses Beazley is not pursuing?          12:04:45

22       A   The 5th affirmative defense.                   12:04:52

23       Q   Okay.  So, the 5th affirmative defense:       12:04:56

24   Plaintiff's claims are barred in whole or in part      12:04:59

25   to the extent that the fraudulent, dishonest or        12:05:02

1   criminal exclusion in the Beazley policy applies.                    12:05:06

2           You're not pursuing that, right?                    12:05:08

3       A   Correct.                    12:05:10

4       Q   And the -- is Beazley withdrawing that                    12:05:13

5   defense?                    12:05:16

6       A   No, it's not being pursued at this time.                    12:05:20

7       Q   Not pursued, but you're not withdrawing                    12:05:23

8   it --                    12:05:26

9   A   Yes, that's correct.

10      Q   -- is that correct?                    12:05:27

11      A   Yes, that's correct.                    12:05:27

12      Q   And the 5th affirmative defense, which is                    12:05:28

13  on page 11, says at the end of it, I mean, that                    12:05:33

14  that exclusion has a specific exception when                    12:05:40

15  covered under the employee-dishonesty client                    12:05:45

16  property coverage or expense coverage insuring                    12:05:49

17  agreements, right?                    12:05:53

18      A   Yes, it does.                    12:05:53

19      Q   So, that exclusion does not apply to                    12:05:54

20  employee-dishonesty claims, and that's the nature                    12:05:59

21  of the claim that International Paper is making in                    12:06:01

22  this case, right?                    12:06:03

23      A   Yes, as stated under the policy.                    12:06:08

24      Q   So, why isn't Beazley then withdrawing it                    12:06:11

25  if it doesn't -- if it can't apply to an employee                    12:06:16

| | |
|---|---|
| 1 | dishonesty claim, which is the claim which is | 12:06:28 |
| 2 | being made by International Paper in this case? | 12:06:23 |
| 3 | A  Again, as stated previously, it's not | 12:06:34 |
| 4 | being pursued at this time. | 12:06:32 |
| 5 | Q  But you're reserving the right to pursue | 12:06:35 |
| 6 | it at later time; is that -- you're not | 12:06:38 |
| 7 | withdrawing it, so you're reserving the right to | 12:06:40 |
| 8 | pursue it at a later time; is that right? | 12:06:44 |
| 9 | A  We're not withdrawing it, but we're not | 12:06:46 |
| 10 | pursuing it at this point in time. | 12:06:48 |
| 11 | Q  Okay.  Well, how could this exclusion for | 12:06:51 |
| 12 | fraudulent, dishonest or criminal exclusion ever | 12:06:57 |
| 13 | apply to International Paper's claim when there is | 12:07:01 |
| 14 | a specific exception for coverage under the | 12:07:03 |
| 15 | employee-dishonesty portion of the policy, which | 12:07:11 |
| 16 | is the only portion of the policy that | 12:07:13 |
| 17 | International Paper is pursuing its claim under? | 12:07:16 |
| 18 | A  We hadn't made a coverage determination | 12:07:18 |
| 19 | yet at this point with respect to the employee | 12:07:22 |
| 20 | dishonesty entering agreement under the policy. | 12:07:26 |
| 21 | So, again, it's not being pursued, but | 12:07:32 |
| 22 | we're not withdrawing it either. | 12:07:35 |
| 23 | Q  What potential fraudulent, dishonest or | 12:07:40 |
| 24 | criminal exclusion might possibly serve to prevent | 12:07:42 |
| 25 | IP from recovering coverage for its | 12:07:49 |

| | |
|---|---|
| 1  employee-dishonesty claim? | 12:07:54 |
| 2      A  Well, I can't really speculate, but, | 12:08:00 |
| 3  again, it's not being pursued, but we're not | 12:08:02 |
| 4  withdrawing it at this point either. | 12:08:06 |
| 5      Q  Okay.  What other affirmative defenses are | 12:08:08 |
| 6  Beazley not pursuing and/or withdrawing? | 12:08:14 |
| 7      A  The 6th affirmative defense. | 12:08:19 |
| 8      Q  Okay.  The potential income exclusion. | 12:08:26 |
| 9  Beazley is not pursuing it; is that right? | 12:08:31 |
| 10     A  Yes, that's correct. | 12:08:34 |
| 11     Q  Is Beazley withdrawing that defense? | 12:08:36 |
| 12     A  No. | 12:08:39 |
| 13     Q  Why not? | 12:08:40 |
| 14     A  Again, it's not being pursued at this | 12:08:46 |
| 15  point, but we're not withdrawing it either. | 12:08:49 |
| 16     Q  Okay.  What other affirmative defenses are | 12:08:56 |
| 17  not being pursued and/or being withdrawn by | 12:08:58 |
| 18  Beazley? | 12:09:04 |
| 19     A  The 9th. | 12:09:04 |
| 20     Q  Ninth affirmative defense? | 12:09:14 |
| 21     A  On page 12. | 12:09:16 |
| 22     Q  Okay.  The 9th affirmative defense says: | 12:09:18 |
| 23  Pursuant to the discovery provision in the Beazley | 12:09:21 |
| 24  policy, plaintiff's claims are barred to the | 12:09:23 |
| 25  extent they were discovered prior to the policy | 12:09:27 |

1   period for the Beazley policy.                          12:09:30

2        Beazley is withdrawing the 9th affirmative         12:09:31

3   defense; is that right?                                 12:09:34

4      A  We're not pursuing it.  It's not being            12:09:35

5   withdrawn.  It's not being pursued at this time,        12:09:38

6   but we are not withdrawing it, based on the             12:09:42

7   available information.                                  12:09:51

8      Q  Okay.  Any other affirmative defenses that        12:09:58

9   Beazley, as of today, is not pursuing?                  12:10:04

10     A  The 10th affirmative defense.                     12:10:09

11     Q  Okay.  The 10th affirmative defense says:         12:10:13

12  Plaintiff's claims are barred in whole or in part       12:10:18

13  to the extent that plaintiff did not provide            12:10:21

14  Beazley with written notice as required by the          12:10:23

15  notices provision in the Beazley policy.  Beazley       12:10:25

16  policy terminated and plaintiff's claims are            12:10:28

17  barred in whole or in part to the extent and as         12:10:31

18  soon as plaintiff acquired knowledge of the             12:10:34

19  unlawful taking of money or other fraudulent or         12:10:38

20  dishonest act committed by Sitaraman Jagannath          12:10:42

21  during the term of his employment with plaintiff.

22       That's the defense you're not pursuing,            12:10:46

23  correct?                                                12:10:49

24     A  Correct, based on available information.          12:10:49

25     Q  Is Beazley withdrawing the 10th                   12:10:56

| | | |
|---|---|---|
| 1 | affirmative defense? | 12:10:59 |
| 2 | A No. | 12:11:00 |
| 3 | Q Is Beazley still investigating the | 12:11:02 |
| 4 | potential applicability of the 10th affirmative | 12:11:06 |
| 5 | defense? | 12:11:13 |
| 6 | A Well, again, it's not being pursued based | 12:11:13 |
| 7 | on the information that we have available, but | 12:11:16 |
| 8 | we're not withdrawing it at this time. | 12:11:18 |
| 9 | Q Does Beazley have any evidence to suggest | 12:11:22 |
| 10 | that International Paper gave late notice to | 12:11:31 |
| 11 | Beazley with respect to the employee-theft claim | 12:11:37 |
| 12 | that's at issue in this case? | 12:11:40 |
| 13 | A Well, again, that affirmative defense is | 12:11:46 |
| 14 | not being pursued based on the available | 12:11:48 |
| 15 | information at this time. | 12:11:51 |
| 16 | Q Is Beazley still investigating whether | 12:11:55 |
| 17 | that 10th affirmative defense might apply? | 12:11:58 |
| 18 | A It's not being pursued based on the | 12:12:03 |
| 19 | available information at this time. | 12:12:06 |
| 20 | Q And when you say "it's not being pursued," | 12:12:08 |
| 21 | what does that mean, given that you're not | 12:12:11 |
| 22 | withdrawing it? | 12:12:13 |
| 23 | A Well, we reserve our rights to the | 12:12:17 |
| 24 | potential it may apply. But at this point in | 12:12:19 |
| 25 | time, it's not being pursued. | 12:12:22 |

1    Q   Not being pursued by whom?                           12:12:24

2    A   It's not being pursued as an affirmative             12:12:28

3  defense.                                                   12:12:33

4    Q   But you're reserving the right to assert             12:12:33

5  it at a later time by not withdrawing it; is that          12:12:36

6  correct?                                                   12:12:40

7    A   Yes, that's correct.                                 12:12:40

8    Q   Well, do you have any evidence to support            12:12:42

9  that defense as you sit here today, that is, the           12:12:49

10  10th affirmative defense, regarding notice?               12:12:53

11    A   It's not being pursued based on available           12:12:57

12  information.                                               12:13:00

13    Q   Does that mean you don't have any                   12:13:02

14  available information as you sit here today to             12:13:04

15  support the 10th affirmative defense?                      12:13:06

16    A   It means that we're not pursuing it based           12:13:09

17  on the information that we have at this time.              12:13:13

18    Q   But you may pursue it in the future,                12:13:15

19  correct?                                                   12:13:19

20    A   If there's additional information, we may.          12:13:21

21  It's not being withdrawn at this time.                    12:13:26

22    Q   Okay.  Any other affirmative defenses               12:13:29

23  either not being pursued and/or being withdrawn?          12:13:33

24    A   Going to the next page, the -- the 12th             12:13:45

25  affirmative defense.                                       12:13:50

1    Q  Okay.  The 12th affirmative defense says:    12:13:53

2    Plaintiff's claims are barred.  To the extent    12:13:56

3    plaintiff has breached any condition precedent to    12:13:59

4    coverage under the Beazley policy, including, but    12:14:01

5    not limited, to taking any action which in any way    12:14:03

6    increases the underwriter's exposure under the    12:14:05

7    Beazley policy.    12:14:10

8        That's an affirmative defense that's not    12:14:11

9    being pursued by Beazley at this time; is that    12:14:13

10   right?    12:14:18

11   A  No, sorry, that is not correct.  That is    12:14:18

12   incorrect.  Scratch that.  Scratch that.  Excuse    12:14:21

13   me.    12:14:26

14   Q  Wait, so, you are maintaining the 12th    12:14:28

15   affirmative defense?    12:14:31

16   A  Yes, we are.    12:14:32

17   Q  Okay.  Scratch that.    12:14:33

18       Was there any other affirmative defense    12:14:35

19   that Beazley is either not pursuing or    12:14:37

20   withdrawing?    12:14:41

21   A  No.    12:14:42

22   Q  All the rest you continue to assert may be    12:14:43

23   applicable to deny or limit coverage; is that    12:14:52

24   right?    12:14:56

25   A  Correct, we are not withdrawing or not    12:14:56

| | | |
|---|---|---|
| 1 | pursuing any others. | 12:15:00 |
| 2 | MR. MURPHY:  Let me just interrupt, just | 12:15:05 |
| 3 | because I don't want the record to keep going a | 12:15:08 |
| 4 | certain way. | 12:15:11 |
| 5 | Ms. Ellis, can you just check with regard | 12:15:12 |
| 6 | to the 15th affirmative defense? | 12:15:15 |
| 7 | THE WITNESS:  Hold on, I have to make this | 12:15:19 |
| 8 | a little bigger for my eyes. | 12:15:22 |
| 9 | Q  The 15th affirmative defense says: | 12:15:26 |
| 10 | Plaintiff's claims are barred in whole or in part | 12:15:27 |
| 11 | by the applicable statute of limitations. | 12:15:30 |
| 12 | Is Beazley pursuing that affirmative | 12:15:33 |
| 13 | defense? | 12:15:47 |
| 14 | A  That -- excuse me, the 15th is not being | 12:15:47 |
| 15 | pursued. | 12:15:50 |
| 16 | Q  Okay.  The 15th affirmative defense is not | 12:15:53 |
| 17 | being pursued by Beazley.  That's the one relating | 12:15:56 |
| 18 | to the claim being barred by the statute of | 12:16:00 |
| 19 | limitations, correct? | 12:16:02 |
| 20 | A  Yes, that's correct. | 12:16:04 |
| 21 | Q  Is that affirmative defense being | 12:16:04 |
| 22 | withdrawn by Beazley? | 12:16:08 |
| 23 | A  It's not being withdrawn. | 12:16:09 |
| 24 | Q  And so Beazley reserves the right to raise | 12:16:13 |
| 25 | it at a later time? | 12:16:17 |

1    A   Yes, Beazley does.  Yes, Beazley does.        12:16:19

2    Q   Okay.  And so, underneath the 15th            12:16:22

3    affirmative defense, it says:  Reservation of     12:16:29

4    rights.                                            12:16:32

5        It says:  Beazley states it presently has     12:16:34

6    insufficient knowledge or information on which to 12:16:39

7    form a belief.  As to whether it may have         12:16:41

8    additional as yet unstated affirmative defenses,  12:16:43

9    Beazley reserves all rights to file an amended    12:16:46

10   answer asserting additional defenses in the event 12:16:51

11   that discovery in this action or other            12:16:53

12   developments so warrant.                           12:16:56

13       Do you see that language?                      12:16:58

14   A   Yes, I do.                                      12:16:59

15   Q   So, are there any other affirmative            12:17:00

16   defenses, other than those stated here in the     12:17:02

17   answer, as you sit here today, a year later, that 12:17:04

18   Beazley is pursuing in defense of the coverage    12:17:07

19   claim by International Paper in this case?         12:17:11

20   A   No, there are no additional.                   12:17:17

21       MR. SYLVESTER:  Okay.  So, why don't we go     12:17:38

22   off the record for a minute.  I see that the time 12:17:39

23   is 12:17.  I did want to take a lunch break.  I'm  12:17:41

24   going to be going into a new area.  Does it make  12:17:46

25   sense to take that lunch break now and come back  12:17:50

| | |
|---|---|
| 1 | in a half an hour or so, or do you want to go for | 12:17:54 |
| 2 | a while and then take the lunch break?  Do you | 12:17:56 |
| 3 | have any preference in that regard? | 12:17:59 |
| 4 | THE VIDEOGRAPHER:  We are going off the | 12:18:06 |
| 5 | record.  The time is 12:18 p.m. | 12:18:09 |
| 6 | (Off the record.) | 12:18:13 |
| 7 | (Marked for identification Exhibit 7, | 12:18:56 |
| 8 | Beazley Insurance Company's Supplemental | 12:19:56 |
| 9 | Responses.) | 12:18:57 |
| 10 | THE VIDEOGRAPHER:  We are back on the | 12:19:19 |
| 11 | record.  The time is 12:19 p.m. | 12:19:20 |
| 12 | BY MR. SYLVESTER: | 12:19:23 |
| 13 | Q  Okay.  Ms. Ellis, I have put -- | 12:19:23 |
| 14 | A  Just one second.  It didn't open up yet. | 12:19:25 |
| 15 | Okay. | 12:19:31 |
| 16 | All right.  I have it open now, Exhibit 7. | 12:19:36 |
| 17 | Q  Right.  Hang on for one minute. | 12:19:53 |
| 18 | Okay.  Exhibit 7 are Defendant Beazley | 12:19:54 |
| 19 | Insurance Company's Supplemental Responses to | 12:19:56 |
| 20 | Plaintiff's First Set of Interrogatories. | 12:19:58 |
| 21 | Are you familiar with this document, | 12:20:00 |
| 22 | Ms. Ellis? | 12:20:02 |
| 23 | A  Yes. | 12:20:06 |
| 24 | Q  And if you look at the last page of this | 12:20:07 |
| 25 | document, do you see that there is a verification | 12:20:09 |

1  signed by you, dated November 29th, 2023?    12:20:13

2      A  Yes.    12:20:20

3      Q  So, you signed a verification regarding    12:20:21

4  these interrogatory answers two or three weeks    12:20:28

5  ago.    12:20:32

6          Do you recall that?    12:20:32

7      A  Yes.    12:20:33

8      Q  And before signing, did you review the    12:20:34

9  interrogatory answers to confirm that what you    12:20:39

10 were saying in the verification was accurate?    12:20:43

11     A  Yes.    12:20:46

12     Q  And you said that the facts and matters    12:20:47

13 stated herein are true to the best of my    12:20:50

14 information, knowledge and belief with other    12:20:54

15 language in the verification.    12:20:56

16         Do you recall that?    12:20:57

17     A  Yes.    12:20:59

18     Q  And did you review these supplemental    12:21:00

19 interrogatory answers in preparation for your    12:21:05

20 deposition here today?    12:21:06

21     A  Yes.    12:21:11

22     Q  Okay.  So, let's turn to page 4 of    12:21:12

23 Exhibit 7.  Tell me when you have the fourth page.    12:21:25

24     A  I have it open.    12:21:41

25     Q  So, interrogatory 1 -- I'm sorry, look at    12:21:43

1    interrogatory number 2, where International Paper,          12:21:55

2    it says:  Identify all facts supporting your              12:21:59

3    denial of any of the allegations set forth in the         12:22:02

4    complaint.                                                12:22:06

5          Okay.  And do you see in the answer the             12:22:06

6    response begins by saying:  Beazley objects that          12:22:11

7    this interrogatory is premature and that it seeks         12:22:14

8    information that is still being collected and             12:22:19

9    developed through discovery, which is still in its        12:22:21

10   early stages.                                             12:22:24

11         Do you see that?                                    12:22:25

12   A   Yes.                                                  12:22:27

13   Q   Now, at the time you verified this                    12:22:28

14   document on November 29th, discovery was not in           12:22:32

15   its early stages, right?                                  12:22:35

16         It was near the ending of discovery,                12:22:38

17   correct?                                                  12:22:41

18   A   Well, discovery was still open at the                 12:22:43

19   time.                                                     12:22:47

20   Q   Right.  But discovery had been ongoing for            12:22:47

21   some time, and we were approaching the close of           12:22:50

22   document discovery in early December and the close        12:22:57

23   of depositions in early January, correct?                 12:23:01

24   A   As far as the dates?                                  12:23:11

25   Q   Yes.                                                  12:23:13

| | | |
|---|---|---|
| 1 | A  Yes. | 12:23:14 |
| 2 | Q  Okay.  And you realize that the trial of | 12:23:16 |
| 3 | this case is only about four months away, in April | 12:23:19 |
| 4 | of 2023, correct -- I'm sorry, 2024, do you | 12:23:22 |
| 5 | understand that? | 12:23:26 |
| 6 | A  Yes. | 12:23:28 |
| 7 | Q  Okay.  Now, as of the time you signed this | 12:23:29 |
| 8 | verification, November 29th, 2023, Beazley had | 12:23:47 |
| 9 | been investigating this claim for about four | 12:23:53 |
| 10 | years, since first notice in late 2019; isn't that | 12:23:56 |
| 11 | right? | 12:24:05 |
| 12 | A  We -- we did receive the original notice | 12:24:05 |
| 13 | in 2019, yes. | 12:24:07 |
| 14 | Q  And in that four-year period between | 12:24:09 |
| 15 | getting the original notice in late 2019 -- I | 12:24:13 |
| 16 | believe the date is December 6th, if I recall | 12:24:19 |
| 17 | correctly.  If you look at the bottom of page 7 of | 12:24:24 |
| 18 | this document, you'll see a statement at the | 12:24:27 |
| 19 | bottom of page 7 that says:  On or about | 12:24:34 |
| 20 | December 6th, 2019, plaintiff provided notice to | 12:24:38 |
| 21 | Beazley of a claim resulting from potential | 12:24:40 |
| 22 | employee theft. | 12:24:43 |
| 23 | Do you see that? | 12:24:44 |
| 24 | A  Yes, I do. | 12:24:50 |
| 25 | Q  And since that date, Beazley has been | 12:24:51 |

1    requesting substantial amounts of information and          12:24:55

2    documentation from International Paper over the            12:24:57

3    past four years, correct?                                  12:25:00

4        A   Yes, we've requested documentation from            12:25:03

5    International Paper.                                        12:25:05

6        Q   And International Paper has provided               12:25:06

7    substantial documentation about this claim in              12:25:08

8    response to those requests, correct?                       12:25:13

9        A   We have received documents from                    12:25:18

10   International Paper, yes.                                   12:25:21

11       Q   Are there any specific documents that              12:25:23

12   Beazley has requested that International Paper has          12:25:26

13   refused to provide?                                        12:25:29

14       A   Not that I recall specifically.                    12:25:40

15       Q   And who has been responsible for reviewing         12:25:42

16   all those hundreds of thousands of pages of                12:25:49

17   documents that International Paper has provided to          12:25:52

18   Beazley in response to Beazley's various requests,         12:25:56

19   before and after the litigation?                           12:26:00

20       MR. MURPHY:  Objection as to form.                     12:26:03

21       You can answer.                                        12:26:04

22       A   We have engaged experts to assist in the           12:26:09

23   document review.                                           12:26:14

24       Q   And who specifically has been involved,            12:26:15

25   other than counsel, in reviewing documents                 12:26:20

1  produced by International Paper in response to          12:26:24

2  Beazley's request regarding this claim?                 12:26:28

3      A  Stoneturn.                                        12:26:33

4      Q  Okay.  Anybody else?                              12:26:37

5      A  And also Ms. Coates, as well.                     12:26:43

6      Q  Okay.  And when was Stoneturn engaged to          12:26:47

7  review documents with regard to this claim?             12:26:53

8      A  I don't recall the exact date of their            12:26:58

9  engagement.                                             12:27:00

10     Q  Approximately, when were they retained?           12:27:01

11     A  They were retained in 2023.                       12:27:11

12     Q  Okay.  Earlier this year.                         12:27:16

13        And what about Ms. Coates, in what year           12:27:20

14  was Ms. Coates retained?                                12:27:23

15     A  Also in 2023.                                     12:27:26

16     Q  Okay.  Again, earlier this year.                  12:27:29

17        But by that point, documentation had been         12:27:32

18  provided by International Paper for several years       12:27:36

19  before that, commencing with the notice in late        12:27:40

20  2019, the proof of loss in December of 2020, and        12:27:50

21  thousands and thousands of pages of documents           12:27:56

22  produced in response to various letter requests        12:27:58

23  prior to the litigation?                                12:28:03

24        Who -- who reviewed all those documents in        12:28:04

25  that time period prior to 2023 that IP had              12:28:08

1   provided to Beazley at Beazley's request?                    12:28:12

2       A  We had engaged coverage counsel.                      12:28:23

3       Q  And who was the coverage counsel?                     12:28:26

4       A  Clark Hill.                                           12:28:30

5       Q  Were you involved in that engagement or               12:28:39

6   retention of Clark Hill?                                     12:28:41

7       A  They were engaged on the file prior to it             12:28:44

8   being assigned to me.                                        12:28:48

9       Q  Is that Mr. Michael Keeley's law firm that            12:28:50

10  you're referring to?                                         12:28:54

11      A  Yes.                                                  12:28:57

12      Q  Okay.  Any other law firms retained by                12:28:59

13  Beazley to review documents produced in response            12:29:06

14  to Beazley's document request to IP?                         12:29:10

15      MR. MURPHY:  Objection as to form.                       12:29:14

16      You can answer.                                          12:29:16

17      A  No.                                                   12:29:22

18      Q  Did you personally review any of the                  12:29:23

19  documents that were produced by International                12:29:29

20  Paper pre-litigation in response to Beazley's                12:29:35

21  various letter requests?                                     12:29:38

22      A  I did review some of the information.                 12:29:46

23      Q  What information did you review                       12:29:49

24  specifically?                                                12:29:53

25      A  Their loss narrative.                                 12:29:56

1    Q   Okay.  Anything else other than the loss          12:30:00
2  narrative?                                              12:30:04
3    A   Not that I recall specifically.                   12:30:08
4    Q   Now, the lawsuit was filed a little over a        12:30:12
5  year ago against Beazley for failure to provide         12:30:18
6  coverage.  That was the date of the complaint that      12:30:24
7  we looked at earlier, which I believe is                12:30:27
8  November 11th, 2022.                                    12:30:30
9        Do you recall that?                               12:30:31
10   A   Yes.                                              12:30:33
11   Q   Okay.  Now, after the lawsuit was filed,          12:30:35
12 Beazley engaged new counsel to represent it in the      12:30:45
13 lawsuit, the Robinson Cole firm, correct?               12:30:51
14   A   Yes, that's correct.                              12:30:55
15   Q   But Mr. Keeley and the Clark Hill firm had        12:30:57
16 been representing Beazley for the several years          12:31:04
17 prior to that lawsuit being filed, correct?             12:31:06
18   A   Yes, that's correct.                              12:31:13
19   Q   Mr. Keeley and his law firm had been the          12:31:15
20 ones who had reviewed all of the information and         12:31:18
21 documentation and participated in the examination       12:31:21
22 under oath of Mr. Dowdell prior to the litigation       12:31:25
23 on behalf of Beazley; isn't that right?                 12:31:30
24       MR. MURPHY:  Objection as to form.                12:31:32
25       You can answer.                                   12:31:33

| | | |
|---|---|---|
| 1 | A  Yes. | 12:31:36 |
| 2 | Q  And so why is it that you switched law | 12:31:38 |
| 3 | firms once the lawsuit was filed in November 11th, | 12:31:41 |
| 4 | 2022, so that Clark Hill was no longer | 12:31:45 |
| 5 | representing Beazley and you brought in a new law | 12:31:49 |
| 6 | firm of Robinson Cole? | 12:31:51 |
| 7 | MR. MURPHY:  The witness is cautioned | 12:31:54 |
| 8 | against disclosing any attorney-client | 12:31:56 |
| 9 | communications in response to that answer. | 12:31:59 |
| 10 | A  Can you repeat the question, please? | 12:32:12 |
| 11 | Q  Yes.  Why did Beazley switch law firms and | 12:32:14 |
| 12 | not retain Clark Hill, who had been investigating | 12:32:19 |
| 13 | the claim for several years once the lawsuit was | 12:32:21 |
| 14 | filed and replace them with the Robinson Cole law | 12:32:24 |
| 15 | firm? | 12:32:28 |
| 16 | MR. MURPHY:  Objection, as to form, | 12:32:29 |
| 17 | characterization of Clark Hill. | 12:32:33 |
| 18 | And, again, the witness is cautioned not | 12:32:35 |
| 19 | to disclose any attorney-client communications in | 12:32:39 |
| 20 | responding to the question. | 12:32:44 |
| 21 | A  Mr. Sylvester, I'm not able to answer that | 12:32:51 |
| 22 | question. | 12:32:54 |
| 23 | Q  And why are you unable to answer that | 12:32:55 |
| 24 | question? | 12:32:58 |
| 25 | A  Due to attorney-client privilege. | 12:32:58 |

1    Q  Was it your decision to switch law firms                    12:33:01

2  from Mr. Keeley's law firm to the Robinson Cole                  12:33:06

3  law firm once the lawsuit was filed?                             12:33:10

4    A  It was a decision made within the claims                    12:33:16

5  reporting structure.                                             12:33:19

6    Q  Was that a decision that you recommended?                   12:33:20

7    A  Again, it was a decision made within the                    12:33:28

8  claims reporting structure.                                      12:33:31

9    Q  Did you understand that by switching law                    12:33:35

10  firms that a new law firm would have to get up to               12:33:38

11  speed on all of the information and documents that              12:33:42

12  had been disclosed and investigated and reviewed               12:33:46

13  by Mr. Keeley's law firm on behalf of Beazley in               12:33:50

14  the years prior to the litigation?                              12:33:55

15       MR. MURPHY:  Objection, form.                              12:33:57

16       You can certainly answer.                                  12:33:59

17    A  Yes.                                                       12:34:06

18    Q  Did you understand that that might cause                   12:34:08

19  delays in terms of your new counsel understanding              12:34:10

20  all of the information that your previous counsel              12:34:14

21  had already developed through years of                         12:34:16

22  investigation?                                                 12:34:19

23       MR. MURPHY:  Objection as to form.                         12:34:21

24       You can answer.                                            12:34:22

25    A  Can you repeat the question, please?                       12:34:31

1    Q   Yes.  Did you understand that that would          12:34:33

2    cause delays by switching law firms to a new law      12:34:35

3    firm that had not been previously involved from       12:34:39

4    the law firm that you had had investigating this      12:34:41

5    claim for Beazley for years prior to the lawsuit      12:34:44

6    being filed?                                          12:34:48

7        MR. MURPHY:  Same objection.  Same                12:34:50

8    objection to the characterization of the previous    12:34:52

9    firm.                                                 12:34:54

10       You can answer as appropriate.                    12:34:55

11   A   Beazley would disagree that there were any        12:34:57

12   delays.                                               12:35:03

13   Q   Were there any conflicts of interest that         12:35:06

14   Beazley and Zurich had with regard to this claim      12:35:10

15   once the lawsuit was filed?                           12:35:14

16       MR. MURPHY:  Objection as to perform.  The        12:35:22

17   witness is free to answer, again, just being          12:35:24

18   cautioned as to disclosing any attorney-client        12:35:44

19   communications.                                       12:35:34

20   A   Not that I'm aware of.                            12:35:35

21   Q   In the course of your consideration of            12:35:46

22   International Paper's claim for coverage in this      12:35:47

23   employee-theft matter (coughing) with Zurich          12:35:49

24   representatives who were also on notice, Zurich       12:35:54

25   being the insurer whose limits attached directly     12:35:57

1    above the Beazley policy?                           12:36:01

2         MR. MURPHY:  Mr. Sylvester, could you          12:36:03

3    repeat that?  You faded out in the middle of the    12:36:05

4    question.                                           12:36:08

5         MR. SYLVESTER:  Sure.                           12:36:08

6         Q  Ms. Ellis, during the course of your        12:36:09

7    handling of this claim for employee theft, did you  12:36:12

8    have any communications with representatives of     12:36:16

9    the Zurich Insurance Company whose policy was also  12:36:20

10   put on notice and whose policy sat directly above   12:36:24

11   the limits of the Beazley policy?                   12:36:29

12        A  We were in email communications with        12:36:41

13   coverage counsel.                                   12:36:46

14        Q  You were on email communications with       12:36:50

15   coverage counsel.  Explain what you mean by that.   12:36:52

16        A  We were both copied on various              12:36:55

17   communications with coverage counsel.               12:36:59

18        Q  Well, as I understand it, prior to the      12:37:03

19   lawsuit, the Clark Hill firm was representing both  12:37:05

20   Beazley and Zurich.  Is that right, in connection   12:37:10

21   with this matter?                                   12:37:14

22        A  Yes.                                         12:37:15

23        Q  And did you have a joint or a common        12:37:16

24   interest or some sort of joint representation       12:37:22

25   agreement with Zurich at that time?                 12:37:24

| | | |
|---|---|---|
| 1 | A  Yes. | 12:37:30 |
| 2 | Q  Aside from whatever communications you got | 12:37:31 |
| 3 | from common counsel, did you personally speak with | 12:37:39 |
| 4 | any claims professionals at Zurich about this | 12:37:41 |
| 5 | claim during the time prior to the litigation when | 12:37:46 |
| 6 | you were both on notice of the claim? | 12:37:50 |
| 7 | A  I don't recall the date, but I believe | 12:38:08 |
| 8 | once. | 12:38:11 |
| 9 | Q  What do you recall about that | 12:38:14 |
| 10 | communication? | 12:38:17 |
| 11 | A  I don't -- I don't recall the specifics. | 12:38:19 |
| 12 | Q  Well, what was the purpose of the | 12:38:27 |
| 13 | communication? | 12:38:29 |
| 14 | A  I -- I don't recall. | 12:38:35 |
| 15 | Q  Well, do you remember who you spoke to at | 12:38:40 |
| 16 | Zurich? | 12:38:42 |
| 17 | A  The Zurich claim handler. | 12:38:46 |
| 18 | Q  Do you remember the name of the Zurich | 12:38:50 |
| 19 | claims handler? | 12:38:53 |
| 20 | A  Oh, my gosh, I'm having a... | 12:38:55 |
| 21 | Her name is escaping me at the moment. | 12:39:09 |
| 22 | Q  But you had a conversation with her about | 12:39:15 |
| 23 | the claim? | 12:39:17 |
| 24 | A  Goodness, it's -- oh, Donna Malcolm. | 12:39:23 |
| 25 | Q  Donna Malcolm, okay.  She was who you | 12:39:34 |

1  spoke to about the claim.                              12:39:42

2       Do you recall generally when you spoke to         12:39:43

3  her about the claim?  Was it before or after the       12:39:46

4  litigation started?                                    12:39:48

5     A  I -- I don't recall if it was before or          12:39:56

6  after.                                                 12:39:59

7     Q  What generally was discussed during that         12:40:01

8  communication?                                         12:40:05

9     A  I don't recall the specifics of -- of the        12:40:09

10 discussion.                                            12:40:15

11    Q  Did you talk to her about whether you            12:40:16

12 believe there was sufficient evidence to confirm       12:40:21

13 that an employee theft had taken place?                12:40:24

14    A  I don't recall.                                  12:40:28

15    Q  Is that the only communication you ever          12:40:30

16 had with somebody at Zurich, the one time where        12:40:34

17 you spoke to Donna Malcolm about the claim?            12:40:36

18    A  I believe she was the only person that was       12:40:42

19 handling the file for Zurich, that I'm aware of.       12:40:45

20    Q  If you had such a conversation, would that       12:40:49

21 be in your file notes?                                 12:40:52

22    A  It may.                                          12:41:01

23    Q  Did you review your file notes?  I think         12:41:04

24 you said you did in preparation for this               12:41:07

25 deposition.                                            12:41:09

| | | |
|---|---|---|
| 1 | A  Yes. | 12:41:09 |
| 2 | Q  Do you recall seeing any references to | 12:41:11 |
| 3 | conversations with Zurich about this claim, that | 12:41:13 |
| 4 | is, with Zurich representatives other than | 12:41:18 |
| 5 | counsel? | 12:41:20 |
| 6 | A  No. | 12:41:21 |
| 7 | Q  Now, turn, if you would, go back to | 12:41:24 |
| 8 | Exhibit 7, which are the interrogatory answers | 12:41:47 |
| 9 | that you verified, page 8. | 12:41:50 |
| 10 | Let me ask you one other question -- | 12:41:58 |
| 11 | A  I can't -- can you speak up a little bit? | 12:42:05 |
| 12 | I can't hear you very well. | 12:42:07 |
| 13 | MR. MURPHY:  You did fade out again. | 12:42:10 |
| 14 | MR. SYLVESTER:  Yeah, sorry about that. | 12:42:13 |
| 15 | I'm not sure why that's happening. | 12:42:15 |
| 16 | Q  But do you remember the law firm of | 12:42:27 |
| 17 | Kaufman Dolowich?  Does that name ring a bell? | 12:42:29 |
| 18 | A  Yes. | 12:42:35 |
| 19 | Q  Did that firm have some involvement in | 12:42:37 |
| 20 | advising Beazley with regard to this claim? | 12:42:41 |
| 21 | A  I think at the time of the initial notice. | 12:42:49 |
| 22 | Q  Was Kaufman Dolowich the first law firm | 12:42:55 |
| 23 | that was retained by Beazley to advise it with | 12:42:59 |
| 24 | regard to International Paper's employee-theft | 12:43:02 |
| 25 | claim at issue? | 12:43:06 |

| | | |
|---|---|---|
| 1 | A  Yes. | 12:43:09 |
| 2 | Q  And what was their role? | 12:43:10 |
| 3 | A  They provided an initial letter and the | 12:43:19 |
| 4 | proof of loss form to International Paper | 12:43:23 |
| 5 | following the loss notice. | 12:43:28 |
| 6 | Q  And then were they replaced at some point | 12:43:33 |
| 7 | by Clark Hill? | 12:43:36 |
| 8 | A  Yes. | 12:43:39 |
| 9 | Q  Why were they replaced? | 12:43:40 |
| 10 | MR. MURPHY:  Once again, the witness is | 12:43:47 |
| 11 | just cautioned not to disclose any attorney-client | 12:43:49 |
| 12 | communications. | 12:43:55 |
| 13 | You are free to answer. | 12:43:55 |
| 14 | A  I don't recall why they were replaced. | 12:43:57 |
| 15 | Q  Were you on the claim at the time they | 12:44:00 |
| 16 | were replaced, or was this before your time? | 12:44:06 |
| 17 | A  I was not on the file at the time. | 12:44:08 |
| 18 | Q  Have you ever had any communications with | 12:44:14 |
| 19 | anybody from the Kaufman Dolowich firm as to | 12:44:17 |
| 20 | anything they have learned in their investigation | 12:44:22 |
| 21 | of the claim? | 12:44:25 |
| 22 | MR. MURPHY:  Objection as to form. | 12:44:26 |
| 23 | A  Not that I recall. | 12:44:31 |
| 24 | Q  Once you got on the file in July of 2020, | 12:44:33 |
| 25 | did you have regular briefing about the | 12:44:41 |

1    investigation of the claim?  And, again, I don't          12:44:47

2    want to know the substance.  I just want to know          12:44:51

3    the regularity of any communications you had with         12:44:54

4    Clark Hill.                                               12:44:58

5        A  Updates were provided.                            12:44:59

6        Q  And if you got an update from Clark Hill,         12:45:01

7    would that be reflected in your claim notes?             12:45:05

8        A  It would have been a combination of the          12:45:13

9    notes and/or the file itself.                           12:45:17

10       Q  During the time that you have been               12:45:20

11   handling this claim since July of 2020, have you         12:45:26

12   had any direct communications with anybody               12:45:29

13   representing International Paper?                         12:45:32

14       A  No.                                               12:45:36

15       Q  Have you had any communications prior to         12:45:47

16   today with any counsel for International Paper           12:45:52

17   with regard to this claim during the course of          12:45:55

18   your handling of the claim?                             12:45:58

19       A  Can you repeat the last part of that            12:46:04

20   question, please?                                       12:46:06

21       Q  Yes.  Since you've been handling this          12:46:07

22   claim, starting in July of 2020, have you had any       12:46:10

23   communications with any counsel, in-house, or           12:46:15

24   outside counsel for International Paper about this       12:46:17

25   claim?                                                   12:46:19

1      A  No.                                                    12:46:20

2      Q  Is that unusual that you would be handling             12:46:21

3   a claim for several years from a policyholder and           12:46:27

4   not speak to anybody representing the                       12:46:30

5   policyholder?                                               12:46:33

6      A  Again, each claim is unique in its                     12:46:41

7   circumstances.                                              12:46:46

8      Q  But in the course of handling this claim               12:46:50

9   since July of 2020, you never felt a need to pick           12:46:53

10  up the phone or to email anybody at IP,                     12:46:57

11  International Paper, to talk about the claim, any           12:46:59

12  concerns that you had, any issues that you were             12:47:02

13  thinking about, that never happened?                        12:47:05

14      MR. MURPHY:  Objection as to form.                       12:47:09

15     A  The communications at that time were going            12:47:18

16  through our coverage counsel.                               12:47:20

17     Q  The coverage counsel being who, Michael                12:47:24

18  Keeley at Clark Hill?                                       12:47:27

19     A  Clark Hill, yes, that's correct.                       12:47:29

20     Q  And why were they going through coverage               12:47:32

21  counsel?  Why were you not directly speaking to            12:47:35

22  your policyholder representative, somebody from             12:47:38

23  IP?                                                         12:47:42

24      MR. MURPHY:  Objection as to form.                       12:47:43

25     A  Again, at that time, we had communications            12:47:50

1   that were going through our -- our coverage        12:47:53

2   counsel.        12:47:55

3     Q  Was that your decision, not to speak        12:47:58

4   directly with IP, but to have all communications        12:48:02

5   go through counsel?        12:48:05

6     MR. MURPHY:  Objection as to form.        12:48:06

7     You can answer.        12:48:07

8     A  That was the continued route of        12:48:17

9   communication, was through coverage counsel on        12:48:20

10   this -- for this particular matter.        12:48:25

11     Q  When you say "the continued route of        12:48:27

12   communication," what do you mean by that?        12:48:29

13     A  Meaning that the initial communications        12:48:35

14   were from Kaufman Dolowich, and then subsequently        12:48:40

15   through Clark Hill, when they were assigned as        12:48:48

16   coverage counsel replacing Kaufman Dolowich.        12:48:52

17     Q  In other employee-dishonesty claims that        12:48:57

18   you've handled for Beazley, have you had direct        12:49:02

19   communications with the policyholder        12:49:05

20   representatives rather than going through lawyers?        12:49:07

21     A  Yes.        12:49:15

22     Q  So, why did you have a different        12:49:18

23   arrangement such that your communication with        12:49:22

24   International Paper would only go through lawyers        12:49:26

25   on this matter, even before the lawsuit was filed?        12:49:28

| | | |
|---|---|---|
| 1 | MR. MURPHY: Objection as to form. | 12:49:31 |
| 2 | A  That was the decision by claims management | 12:49:46 |
| 3 | at the time. | 12:49:50 |
| 4 | Q  And when you say "by claims management," | 12:49:53 |
| 5 | who specifically are you referring to? | 12:49:56 |
| 6 | A  As far as the continuation? | 12:50:03 |
| 7 | Q  No, who made the original decision that | 12:50:07 |
| 8 | all communications with International Paper on | 12:50:10 |
| 9 | this claim would go through lawyers as opposed to | 12:50:12 |
| 10 | speaking to International Paper representatives | 12:50:16 |
| 11 | directly? | 12:50:17 |
| 12 | MR. MURPHY: Objection, form, calls for | 12:50:18 |
| 13 | speculation. | 12:50:21 |
| 14 | You can answer. | 12:50:22 |
| 15 | A  That was the decision at the time of the | 12:50:26 |
| 16 | loss notice. | 12:50:29 |
| 17 | Q  And do you know who made that decision? | 12:50:31 |
| 18 | A  Angela Lee. | 12:50:37 |
| 19 | Q  Angela Lee.  Is Ms. Lee still with | 12:50:40 |
| 20 | Beazley? | 12:50:46 |
| 21 | Does she still work for Beazley? | 12:50:47 |
| 22 | A  No. | 12:50:48 |
| 23 | Q  Where does she work, do you know? | 12:50:49 |
| 24 | A  I don't know where she's employed offhand. | 12:50:52 |
| 25 | Q  And your predecessor, Antonio Trotta, you | 12:50:56 |

| | | |
|---|---|---|
| 1 | said he left the company in July of 2020. | 12:51:02 |
| 2 | Do you know where he's located? | 12:51:05 |
| 3 | A   I -- I don't know his employer offhand. | 12:51:08 |
| 4 | Q   Do you know if he's still in the New York | 12:51:10 |
| 5 | area? | 12:51:13 |
| 6 | A   I don't know his address. | 12:51:16 |
| 7 | Q   Well, in preparing for this deposition, | 12:51:23 |
| 8 | you did not speak to either Antonio Trotta or | 12:51:28 |
| 9 | Angela Lee, correct? | 12:51:34 |
| 10 | A   No. | 12:51:36 |
| 11 | Q   Did you speak to any lawyers at Kaufman | 12:51:37 |
| 12 | Dolowich in preparation for this deposition? | 12:51:41 |
| 13 | A   No. | 12:51:48 |
| 14 | Q   Did you speak to any lawyers at Clark | 12:51:49 |
| 15 | Hill, including Mr. Keeley, in preparation for | 12:51:52 |
| 16 | this deposition? | 12:51:55 |
| 17 | A   No. | 12:51:57 |
| 18 | Q   Did you speak to any lawyers other than | 12:51:59 |
| 19 | Mr. Murphy or others at his law firm, Robinson | 12:52:02 |
| 20 | Cole, in preparation for this deposition? | 12:52:06 |
| 21 | A   No. | 12:52:08 |
| 22 | Q   Have you spoken to in-house counsel at | 12:52:11 |
| 23 | Beazley in preparation for this deposition? | 12:52:13 |
| 24 | A   No. | 12:52:20 |
| 25 | MR. SYLVESTER:  Okay.  I see that's 12:52. | 12:52:24 |

1    I think we had agreed this would be about the                12:52:27

2    stopping time for lunch.  I would suggest about 40           12:52:30

3    minutes, if that works for everybody.                        12:52:34

4          THE VIDEOGRAPHER:  We are going off the                12:52:38

5    record.  The time is 12:52 p.m.                              12:52:39

6          (Off the record.)                                      12:52:42

7          THE VIDEOGRAPHER:  We are back on the                  13:47:35

8    record.  The time is 1:47 p.m.                               13:47:37

9    BY MR. SYLVESTER:                                            13:47:40

10     Q  Ms. Ellis, before the lunch break, we were             13:47:40

11   discussing whether you had had any direct                    13:47:44

12   communications with International Paper.  And I               13:47:48

13   believe you said no, that all Beazley                         13:47:50

14   communications took place through outside counsel.           13:47:54

15         Let me ask whether you have, during the                13:47:59

16   course of investigating this claim, had any                   13:48:02

17   communications directly with Jag, the employee               13:48:06

18   whose theft is alleged by International Paper?               13:48:16

19     A  No.                                                     13:48:13

20     Q  Have you ever spoken to any representative             13:48:17

21   of Jag?                                                      13:48:20

22     A  No.                                                     13:48:21

23     Q  I'm sorry, did you say no?                             13:48:22

24     A  Correct, I said no.  Sorry, I was                      13:48:24

25   adjusting my headset.                                        13:48:32

| | | |
|---|---|---|
| 1 | Q   No problem. | 13:48:33 |
| 2 |      Did you have any communications with | 13:48:34 |
| 3 | anyone -- well, did you have any communications | 13:48:35 |
| 4 | with Shiv, the brother of Jag? | 13:48:38 |
| 5 | A   No. | 13:48:40 |
| 6 | Q   Did you have any communications with any | 13:48:41 |
| 7 | representative of Shiv, the brother of Jag? | 13:48:45 |
| 8 | A   No. | 13:48:48 |
| 9 | Q   Did you have any communications with | 13:48:49 |
| 10 | anybody who worked or purported to work for DGS? | 13:48:53 |
| 11 | A   No. | 13:48:59 |
| 12 | Q   Did you have any communications with | 13:49:00 |
| 13 | anybody who purported to work for Mid-South | 13:49:02 |
| 14 | Diversity, the other entity that is the subject of | 13:49:06 |
| 15 | this claim? | 13:49:08 |
| 16 | A   No. | 13:49:10 |
| 17 | Q   Do you know whether any Beazley | 13:49:12 |
| 18 | representative had communications directly with | 13:49:19 |
| 19 | Jag? | 13:49:22 |
| 20 | A   Directly with Jag? | 13:49:30 |
| 21 | Q   Yes. | 13:49:33 |
| 22 | A   No. | 13:49:34 |
| 23 | Q   Did any representatives of Beazley have | 13:49:35 |
| 24 | any communications directly with Shiv? | 13:49:39 |
| 25 | A   No. | 13:49:44 |

1    Q  Did any representative of Beazley have        13:49:45

2  communications with any representative of Jag?     13:49:50

3    A  Yes.                                          13:49:54

4    Q  And what were those communications?           13:49:55

5    A  What were those communications?               13:50:00

6    Q  Yes.                                          13:50:02

7    A  I -- there were a few phone calls, I          13:50:04

8  believe some emails and one -- I believe one       13:50:12

9  in-person meeting.                                 13:50:18

10    Q  And who participated in those               13:50:22

11  communications on either side?                    13:50:25

12    A  Clark Hill and the representatives for Jag   13:50:30

13  and Shiv.                                          13:50:39

14    Q  And who were the representatives for Jag     13:50:41

15  and Shiv that you're referring to?                13:50:44

16    A  Their attorneys.                             13:50:47

17    Q  And what did you learn from those            13:50:50

18  communications between Clark Hill lawyers          13:50:56

19  representing Beazley and lawyers for Jag and Shiv? 13:51:00

20    A  I don't recall the exact details of those   13:51:13

21  communications.                                   13:51:18

22    Q  Well, what generally do you recall about    13:51:19

23  those communications?                             13:51:21

24    A  I think there was some discussion about --  13:51:29

25  I think a counterclaim that was filed against     13:51:41

| | | |
|---|---|---|
| 1 | International Paper. | 13:51:46 |
| 2 | Q  Okay.  What else do you recall, or did you | 13:51:50 |
| 3 | learn that's relevant to your investigation of | 13:51:53 |
| 4 | IP's claim? | 13:51:59 |
| 5 | A  I can't recall any other specifics from | 13:52:04 |
| 6 | those communication. | 13:52:12 |
| 7 | Q  Now, you said you believe there were | 13:52:13 |
| 8 | several calls and an in-person meeting; is that | 13:52:15 |
| 9 | right? | 13:52:19 |
| 10 | A  Yes. | 13:52:19 |
| 11 | Q  Did you authorize your counsel to meet | 13:52:23 |
| 12 | with representatives of Jag and Shiv? | 13:52:26 |
| 13 | A  They were authorized to meet with them. | 13:52:31 |
| 14 | Q  Do you understand that International Paper | 13:52:35 |
| 15 | was not informed about those meetings that were | 13:52:37 |
| 16 | going to take place between Beazley | 13:52:40 |
| 17 | representatives and representatives of Jag and | 13:52:44 |
| 18 | Shiv? | 13:52:47 |
| 19 | A  Yes. | 13:52:48 |
| 20 | Q  Why did you keep it secret from | 13:53:00 |
| 21 | International Paper that your lawyers were meeting | 13:53:02 |
| 22 | with Jag's and Shiv's lawyers? | 13:53:06 |
| 23 | MR. MURPHY:  Objection as to form. | 13:53:08 |
| 24 | You can answer. | 13:53:10 |
| 25 | A  We were performing our claim | 13:53:13 |

| | | |
|---|---|---|
| 1 | investigation. | 13:53:16 |
| 2 | Q  And you didn't believe it was appropriate | 13:53:20 |
| 3 | to let International Paper know that you were | 13:53:26 |
| 4 | meeting with their former employee that was the | 13:53:30 |
| 5 | subject of the employee-theft claim?  That was the | 13:53:33 |
| 6 | conscious decision of Beazley not to inform | 13:53:36 |
| 7 | International Paper; is that correct? | 13:53:39 |
| 8 | MR. MURPHY:  Objection as to form. | 13:53:40 |
| 9 | A  Again, we were performing a claim | 13:53:46 |
| 10 | investigation. | 13:53:49 |
| 11 | Q  And you determined on behalf of Beazley | 13:53:52 |
| 12 | not to inform International Paper that this | 13:53:55 |
| 13 | meeting was going to take place or to allow them | 13:53:57 |
| 14 | to participate; is that right? | 13:54:01 |
| 15 | MR. MURPHY:  Same objection. | 13:54:02 |
| 16 | A  Again, we were performing a claim | 13:54:06 |
| 17 | investigation. | 13:54:09 |
| 18 | Q  And you didn't think it was required to | 13:54:11 |
| 19 | let International Paper, your policyholder, know | 13:54:14 |
| 20 | that you were meeting with representatives of the | 13:54:19 |
| 21 | employees or former employees who were accused of | 13:54:21 |
| 22 | theft so that they could have the benefit of | 13:54:26 |
| 23 | whatever information was obtained; is that right? | 13:54:29 |
| 24 | MR. MURPHY:  Objection as to form, asked | 13:54:32 |
| 25 | and answered. | 13:54:36 |

| | |
|---|---|
| 1 | A   Again, Beazley was conducting a claim | 13:54:36 |
| 2 | investigation. | 13:54:39 |
| 3 | Q   Is that how you typically conduct | 13:54:42 |
| 4 | employee-theft investigations, you meet secretly | 13:54:48 |
| 5 | with the accused employee, or former employee, | 13:54:51 |
| 6 | without letting the policyholder know that you | 13:54:54 |
| 7 | are doing so? | 13:54:57 |
| 8 | MR. MURPHY:  Objection to form, calls for | 13:54:57 |
| 9 | speculation, not fact specific. | 13:55:01 |
| 10 | You can answer, if you know. | 13:55:04 |
| 11 | A   Again, as stated previously, it was part | 13:55:14 |
| 12 | of our claim investigation.  We were investigating | 13:55:16 |
| 13 | the claim at that time. | 13:55:18 |
| 14 | Q   Don't you think International Paper would | 13:55:19 |
| 15 | want to know what you learned from that meeting? | 13:55:22 |
| 16 | MR. MURPHY:  Objection as to form, calls | 13:55:25 |
| 17 | for speculation. | 13:55:26 |
| 18 | A   Again, as stated previously, we were in | 13:55:41 |
| 19 | the process of conducting a claim investigation. | 13:55:44 |
| 20 | Q   Why didn't you tell International Paper | 13:55:46 |
| 21 | after the meeting, after the secret meeting, why | 13:55:49 |
| 22 | didn't you tell International Paper what you had | 13:55:52 |
| 23 | learned from Jag and Shiv to get their response or | 13:55:55 |
| 24 | reaction to it? | 13:55:58 |
| 25 | MR. MURPHY:  Objection as to form. | 13:56:01 |

1    A  We were still performing a claim                    13:56:04

2    investigation at that time.                            13:56:06

3    Q  Well, if Jag and Shiv were telling you              13:56:08

4    something, wasn't it incumbent upon Beazley to at      13:56:12

5    least inform International Paper what they had         13:56:16

6    told you so that you could get International           13:56:19

7    Paper's response to those statements made by Jag       13:56:21

8    and Shiv during the secret meeting?                    13:56:29

9        MR. MURPHY:  Objection as to form, beyond          13:56:30

10   the scope.                                             13:56:32

11   A  Again, we were in the process of                    13:56:37

12   performing and conducting a claim investigation.       13:56:40

13   Q  So, before this secret meeting, you didn't          13:56:45

14   let International Paper know that it was going to       13:56:48

15   take place, and after the secret meeting, you          13:56:51

16   didn't tell International Paper what you learned        13:56:53

17   from that meeting; isn't that right?                   13:56:55

18       MR. MURPHY:  Objection as to form,                 13:56:57

19   compound, repeated question.                           13:56:59

20   A  As stated previously, we were in the                13:57:07

21   process of conducting a claim investigation.           13:57:09

22   Q  My question is, isn't it correct that both          13:57:14

23   before the secret meeting and after the secret         13:57:17

24   meeting you did not inform International Paper          13:57:20

25   about the meeting?                                     13:57:23

1        MR. MURPHY:  Objection as to form, asked          13:57:26

2    and answered.                                         13:57:33

3    A  Again, we were performing a claim                  13:57:33

4    investigation.                                        13:57:35

5    Q  But you felt no obligation to tell                 13:57:38

6    International Paper what your investigation had        13:57:41

7    learned from your meetings with Jag and Shiv;         13:57:43

8    isn't that right?                                     13:57:49

9        MR. MURPHY:  Same objection.                      13:57:49

10   A  We were performing a claim investigation           13:58:06

11   and still obtaining information from International     13:58:06

12   Paper, as well.                                       13:58:07

13   Q  Why didn't you tell International Paper             13:58:07

14   what you had learned from the meeting with Jag and    13:58:09

15   Shiv that they were not informed about, nor           13:58:12

16   invited to participate in?                            13:58:15

17       MR. MURPHY:  Observation as to form,              13:58:18

18   compound.                                             13:58:20

19   A  Again, as stated previously, we were in            13:58:23

20   the middle of a claim investigation.                  13:58:27

21   Q  Did Jag and Shiv give you any information          13:58:34

22   during that meeting that Beazley believes             13:58:40

23   exculpates them (coughing)...                         13:58:44

24   A  We provided summaries of those                     13:58:50

25   communications.                                       13:58:52

1    Q  What's that?                                    13:58:57

2    A  We provided summaries of those                  13:58:58

3  communications.                                      13:59:00

4    Q  The first time that International Paper          13:59:01

5  ever learned about the secret meeting was in         13:59:04

6  discovery in this litigation, correct?               13:59:07

7        MR. MURPHY:  Objection as to form.             13:59:09

8    Q  That's when you provided the claim notes        13:59:11

9  that referenced it; isn't that right?                13:59:14

10   A  I don't recall if that's the first time.        13:59:18

11   Q  Well, do you recall ever telling anybody        13:59:21

12 at IP about the secret meeting, other than           13:59:25

13 producing documents in discovery in this             13:59:30

14 litigation, including your claim notes that          13:59:32

15 referenced that meeting?                             13:59:36

16       MR. MURPHY:  Observation as to form.           13:59:38

17   A  I -- I don't recall if they were advised        13:59:43

18 previously.                                          13:59:46

19   Q  Let me ask our tech, Harold, here if he         13:59:48

20 would please, (coughing) 18, which are your claim    13:59:53

21 notes, Ms. Ellis.                                    13:59:56

22       (Marked for identification Exhibit 18,         13:59:58

23 claim notes.)                                        13:59:56

24   Q  Do you see those in the chat box?  Can you      14:00:10

25 open those up?                                       14:00:21

```
1        A  Exhibit 18?                                    14:00:22

2        Q  Yes.  Do you have that open?  Can you turn     14:00:24

3    to page 16 of the PDF, Bates numbered 00301?  Tell    14:00:54

4    me when you have that open.                           14:01:10

5        A  Okay.  I have it open.                         14:01:12

6        Q  See you have a note dated October 12th,        14:01:13

7    2021, at 5:31 p.m.                                    14:01:17

8           Is that your note that you entered into        14:01:19

9    the claim notes file?                                 14:01:21

10          Do you see that?                               14:01:22

11       A  Yes, I do.                                     14:01:28

12       Q  Under the second blacked out part of that      14:01:29

13   note, it says:  We have advised the insured that      14:01:33

14   it's the insured's burden to prove its claim.  To     14:01:37

15   date, the insured's presentation has attempted to     14:01:41

16   place Beazley in the position to determine the        14:01:42

17   insured's loss and what records would support the     14:01:44

18   same.  A response letter to the insured is also       14:01:47

19   being drafted.                                        14:01:54

20          And then it says, after an asterisk:           14:01:55

21   During the June 2021 meeting/call with the            14:01:59

22   principal, Jagannath, he alleged that IP had          14:02:02

23   similar diversity agreements with other companies.    14:02:06

24   Jagannath alleged IP used the services of a           14:02:10

25   company called Buckman for chemical services.  It     14:02:13
```

| | |
|---|---|
| 1 | is alleged that when Buckman was requested to | 14:02:15 |
| 2 | provide Diversity Suppliers, the granddaughter of | 14:02:18 |
| 3 | the founder, Kathy Buckman Gibson, started an | 14:02:25 |
| 4 | entity called KBG Technologies. | 14:02:26 |
| 5 | If you keep reading to the next page. | 14:02:29 |
| 6 | Which was certified as a woman-owned | 14:02:31 |
| 7 | business.  Jagannath reported that KBG was set up | 14:02:35 |
| 8 | in a similar manner to act as a passthrough entity | 14:02:40 |
| 9 | to meet the Diversity Supplier requirements of IP | |
| 10 | customers, Coca Cola and P&G. | 14:02:44 |
| 11 | Jagannath has also alleged that other | 14:02:44 |
| 12 | senior managers were aware of the arrangement with | 14:02:49 |
| 13 | Mid-South and DGS and sign off on the same. | 14:02:53 |
| 14 | Jagannath advised that he did not have the | 14:02:55 |
| 15 | authority to enter into contracts or agreements on | 14:02:57 |
| 16 | behalf of IP during his employment. | 14:02:59 |
| 17 | Then there is a blacked-out portion. | 14:03:02 |
| 18 | And it says:  Jagannath provided photos of | 14:03:04 |
| 19 | his former manager and his brother at a family | 14:03:07 |
| 20 | function for Jagannath to prove the same knew they | 14:03:11 |
| 21 | were related. | 14:03:14 |
| 22 | Next steps, response letter to the | 14:03:14 |
| 23 | insured, deeper dive of the records provided by | 14:03:17 |
| 24 | the insured. | 14:03:20 |
| 25 | That's your note about a meeting or | 14:03:20 |

| | | |
|---|---|---|
| 1 | communication with Jagannath in June of 2021, | 14:03:24 |
| 2 | correct? | 14:03:29 |
| 3 | A  Yes. | 14:03:29 |
| 4 | Q  And by the way, the claim note says that | 14:03:39 |
| 5 | the meeting was with Jagannath. | 14:03:41 |
| 6 | It doesn't says his lawyers.  It says | 14:03:44 |
| 7 | Jagannath. | 14:03:48 |
| 8 | Were you referring to his lawyers there, | 14:03:48 |
| 9 | or did, in fact -- does this refresh your | 14:03:50 |
| 10 | recollection that your folks that Beazley lawyers | 14:03:52 |
| 11 | met with Jagannath himself? | 14:03:55 |
| 12 | A  I don't recall if it was Jagannath | 14:04:04 |
| 13 | directly or his attorneys, but I believe it was | 14:04:07 |
| 14 | with his attorneys.  I think that was included in | 14:04:10 |
| 15 | some of the documents that were provided, as well. | 14:04:13 |
| 16 | Q  At the end of this claim note that I just | 14:04:17 |
| 17 | read on page 17, under the blacked-out part, it | 14:04:21 |
| 18 | says:  Jagannath provided photos of his former | 14:04:25 |
| 19 | manager and his brother at a family function for | 14:04:28 |
| 20 | Jagannath. | 14:04:31 |
| 21 | We have asked for those photos to be | 14:04:32 |
| 22 | produced and we have not received any such photos, | 14:04:36 |
| 23 | does Beazley have these photos that Jagannath or | 14:04:39 |
| 24 | his representative was referring to in your claim | 14:04:42 |
| 25 | note? | 14:04:45 |

| | | |
|---|---|---|
| 1 | A   No. | 14:04:47 |
| 2 | Q   Have you ever seen those photos? | 14:04:49 |
| 3 | A   I don't recall if I saw the photos. | 14:04:55 |
| 4 | Q   Well, you wrote this in your claim note. | 14:05:03 |
| 5 | Where did you get that information? | 14:05:07 |
| 6 | A   From an update provided by Clark Hill. | 14:05:14 |
| 7 | Q   Did they provide you with copies of the | 14:05:20 |
| 8 | photos that were allegedly showing Jag and his | 14:05:22 |
| 9 | brother at a family function with the former | 14:05:26 |
| 10 | manager? | 14:05:30 |
| 11 | A   I don't recall. | 14:05:30 |
| 12 | Q   Does Beazley believe Jag when he said that | 14:05:34 |
| 13 | his brother and his former manager knew that they | 14:05:39 |
| 14 | were related? | 14:05:41 |
| 15 | A   It was alleged. | 14:05:51 |
| 16 | Q   Right.  Well, what has your investigation | 14:05:52 |
| 17 | concluded?  Does Beazley believe that any of | 14:05:56 |
| 18 | Jagannath's supervisors knew and approved of Jag | 14:06:00 |
| 19 | doing business with his brother's companies, DGS | 14:06:04 |
| 20 | and Mid-South, knowing that they were controlled | 14:06:08 |
| 21 | by Jag's brother? | 14:06:12 |
| 22 | A   Well, at this point, our claim | 14:06:15 |
| 23 | investigation hasn't come to a final conclusion. | 14:06:17 |
| 24 | Q   You mean as of today, you still don't have | 14:06:23 |
| 25 | a final conclusion on that information that was | 14:06:25 |

1    provided back in June of 2021?                    14:06:29

2        A  We haven't concluded the claim             14:06:34

3    investigation at this point.  It's still ongoing.  14:06:37

4        Q  My review of the claim notes makes         14:06:45

5    reference to this meeting in June of 2021.  That's  14:06:47

6    the meeting between your counsel and at least     14:06:51

7    Jag's counsel that was not disclosed to           14:06:56

8    International Paper beforehand, right?  That's the  14:07:01

9    meeting we're talking about?                      14:07:03

10       MR. MURPHY:  Objection as to form.            14:07:05

11       A  Yes, we're talking about the June meeting  14:07:12

12   from 2021.                                        14:07:15

13       Q  And that's the same meeting that after the  14:07:17

14   meeting took place, Beazley did not inform        14:07:19

15   International Paper about the information that you  14:07:24

16   received from Jag or his lawyers at this meeting,  14:07:30

17   correct?                                          14:07:33

18       MR. MURPHY:  Objection as to form, asked      14:07:38

19   and answered.                                     14:07:44

20       A  We were conducting our claim              14:07:44

21   investigation.                                    14:07:46

22       Q  The first time you disclosed the existence  14:07:48

23   of this meeting to International Paper was in     14:07:51

24   (coughing) copies of claim notes in response to   14:07:57

25   our discovery request in this lawsuit, correct?   14:08:00

1    A   I don't recall if that was the first time.          14:08:04

2    Q   Do you recall any time prior that you or          14:08:07

3    anybody at Beazley ever informed International          14:08:13

4    Paper that you had had this secret meeting with          14:08:15

5    Jag's representatives in June of 2021?          14:08:18

6        MR. MURPHY:  Objection as to form.          14:08:21

7    A   I don't recall if that was the first time          14:08:25

8    the insured was aware of the meeting with Jag and          14:08:31

9    Shiv.          14:08:35

10   Q   Prior to the litigation, you didn't give          14:08:36

11   International Paper any opportunity to respond to          14:08:39

12   these statements by Jag because you didn't tell          14:08:41

13   them about the meeting with Jag that you had had          14:08:45

14   your lawyers conduct; isn't that right?          14:08:48

15       MR. MURPHY:  Objection as to form.          14:08:50

16   A   Well, again, we were performing our claim          14:08:54

17   investigation at that time.          14:08:57

18   Q   And in performing your claim          14:09:01

19   investigation, you didn't feel it was necessary to          14:09:03

20   inform International Paper that you had had a          14:09:06

21   secret meeting with Jag and that this is what he          14:09:10

22   told you to give International Paper an          14:09:12

23   opportunity to respond; is that right?          14:09:14

24       MR. MURPHY:  Objection as to form, asked          14:09:17

25   and answered.          14:09:26

1    A  Again, as stated previously, we were still    14:09:26

2  performing a claim investigation during that time    14:09:30

3  period.    14:09:33

4    Q  Right.  And in performing an    14:09:34

5  investigation, don't you think it would have been    14:09:36

6  fair to inform International Paper what Jag's    14:09:39

7  representatives had told you to give them an    14:09:42

8  opportunity to respond?    14:09:45

9    MR. MURPHY:  Same objection.    14:09:48

10    A  Again, we were performing our claim    14:09:53

11  investigation during that time period.    14:09:56

12    Q  I know that.  You've already said that    14:10:02

13  several times.    14:10:05

14    My question is different:  Didn't you    14:10:05

15  think you owed it to your policyholder,    14:10:08

16  International Paper, to tell them what you had    14:10:10

17  learned in the secret meeting so that they could    14:10:12

18  respond and enhance your investigation with their    14:10:15

19  side of the story?    14:10:18

20    MR. MURPHY:  Objection as to form, asked    14:10:20

21  and answered several times, as many times as it's    14:10:23

22  been asked.    14:10:27

23    You can answer once again.    14:10:29

24    A  As stated, we were performing our claim    14:10:31

25  investigation at this time.    14:10:33

| | | |
|---|---|---|
| 1 | Q  So you felt no obligation to tell | 14:10:36 |
| 2 | International Paper what you had learned from your | 14:10:39 |
| 3 | meeting with Jag to give them an opportunity to | 14:10:42 |
| 4 | respond -- | 14:10:45 |
| 5 | MR. MURPHY:  Same objection. | 14:10:46 |
| 6 | Q  -- isn't that right? | 14:10:47 |
| 7 | MR. MURPHY:  Same objection. | 14:10:48 |
| 8 | A  We were performing a claim investigation, | 14:10:53 |
| 9 | along with seeking coverage counsel. | 14:10:58 |
| 10 | Q  You mentioned earlier in your testimony | 14:11:05 |
| 11 | that there were a few phone calls and emails with | 14:11:07 |
| 12 | Jag or Jag's representatives. | 14:11:12 |
| 13 | This is one meeting that's referenced in | 14:11:15 |
| 14 | your claim notes.  I didn't see any other meetings | 14:11:18 |
| 15 | or calls, but tell me, were there other meetings | 14:11:22 |
| 16 | or calls between Beazley's representatives and Jag | 14:11:25 |
| 17 | or Shiv's representatives, other than this June | 14:11:33 |
| 18 | 2021 meeting? | 14:11:36 |
| 19 | A  Let me just refer to the documents. | 14:11:38 |
| 20 | Q  What documents do you refer to? | 14:11:54 |
| 21 | A  We provided a response on that.  It's in | 14:11:56 |
| 22 | the second set of interrogatories on page 5. | 14:12:01 |
| 23 | Q  Okay.  This is Exhibit 7?  On page 5 of | 14:12:05 |
| 24 | Exhibit 7, the supplemental responses to | 14:12:16 |
| 25 | plaintiff's interrogatories, is that what | 14:12:19 |

1   you're --                                              14:12:21

2       A   Responses to -- Defendant Beazley              14:12:21

3   Insurance Company Responses to Plaintiff's Second      14:12:24

4   Set of Interrogatories.                                14:12:28

5       Q   Oh, second set of interrogatories.             14:12:28

6       A   Yeah.                                          14:12:30

7       Q   Okay.  Can you read those into the record?     14:12:31

8       A   It's a seven-page document.                    14:12:33

9       Q   No, the part of it that you say is             14:12:37

10  responsive to my question.                             14:12:39

11      A   There were -- let's see here.  There were      14:12:50

12  also four telephone calls between counsel for          14:12:56

13  Beazley and counsel for Mr. Jagannath and              14:12:58

14  Mr. Kumar on June 16th, 2021.  Caralisa Connell        14:13:03

15  and Howard Mannis discussed -- and that's his --       14:13:12

16  their -- their attorney -- discussed counsel's         14:13:18

17  representation of insured as related to their          14:13:21

18  investigation of IP's claim for coverage.              14:13:24

19      Q   Are you reading from something, Ms. Ellis?     14:13:30

20      A   Yes.  Defendant Beazley Insurance              14:13:32

21  Company's Responses to Plead to Second Set of          14:13:35

22  Interrogatories.                                       14:13:38

23      Q   And do you have those in hard copy in          14:13:40

24  front of you?                                          14:13:42

25      A   Yes.                                           14:13:44

1    Q  Earlier in the deposition when I asked you          14:13:48

2    if you had any documents in front of you that you      14:13:50

3    would make reference to, I believe you said no.        14:13:54

4    Was that statement incorrect?                          14:13:58

5         Do you, in fact, have documents that              14:14:00

6    are --                                                 14:14:01

7         MR. MURPHY:  Objection as to -- excuse me,        14:14:01

8    please finish your question.                           14:14:04

9    Q  Do you wish to correct your testimony from          14:14:07

10   earlier?                                               14:14:10

11        MR. MURPHY:  Objection as to form,                14:14:11

12   mischaracterizes testimony.                            14:14:13

13        You can respond.                                  14:14:14

14   A  Well, this is a document that's part of             14:14:17

15   the case, so it's just something for reference and     14:14:20

16   it responded to your question.                         14:14:24

17   Q  Right.  That's why I asked whether you              14:14:27

18   brought any documents with you to help provide a       14:14:30

19   reference to respond to any of my questions.  And      14:14:33

20   I thought your answer previously was that, no, you     14:14:36

21   had not.  But now you're referring to a document.      14:14:39

22        Have you had that document with you since         14:14:41

23   the beginning of the deposition?                       14:14:44

24        MR. MURPHY:  Objection as to form,                14:14:47

25   multiple questions, compound, mischaracterizes         14:14:49

1  testimony.                                          14:14:51

2       A  It was in -- it was part of something else   14:15:00

3  that was here, but, yes.                            14:15:01

4       Q  Do you have any other documents with you    14:15:09

5  for reference other than Beazley's responses to     14:15:13

6  International's second set of interrogatories?       14:15:19

7       A  No, but I think I referred to that in the   14:15:23

8  beginning when you were asking me --                14:15:27

9       Q  -- document, is that right, other than one  14:15:35

10  set of answers to the second set of                 14:15:37

11  interrogatories?  That's the only document you      14:15:39

12  have in front of you for reference; is that right?  14:15:41

13       MR. MURPHY:  Objection, asked and              14:15:43

14  answered.                                           14:15:45

15       A  And I would also reference the claim        14:15:45

16  notes, as well.                                     14:15:47

17       Q  Oh, you have a copy of the claim notes in  14:15:49

18  front of you?                                       14:15:51

19       A  Yeah, I'm pretty sure I said that in the   14:15:52

20  very beginning.                                     14:15:56

21       Q  Yeah, I don't recall that.                  14:15:57

22       Do you have anything else other than the      14:15:58

23  claim notes and the responses to the second set of  14:16:00

24  interrogatories?                                    14:16:03

25       A  No.                                         14:16:05

1    Q  So, you mentioned multiple telephone calls          14:16:06

2    with your counsel and Jag's representatives, and          14:16:20

3    you mentioned what I call the secret meeting on          14:16:24

4    June of 2021.          14:16:28

5         Is it correct that, prior to this lawsuit,          14:16:33

6    Beazley never informed International Paper that it          14:16:37

7    was having these communications with Jag and Shiv          14:16:43

8    representatives and never informed them of the          14:16:48

9    substance of those communications?          14:16:52

10        MR. MURPHY:  Objection as to form, asked          14:16:54

11   and answered.          14:17:00

12    A  I don't recall if that was relayed          14:17:00

13   previously.          14:17:05

14    Q  Well, is there any evidence in your claim          14:17:06

15   notes that you reported this information to your          14:17:08

16   policyholder, International Paper, after you          14:17:11

17   received it from Jag and Shiv's representatives?          14:17:13

18    A  Can you repeat the question, please?          14:17:20

19    Q  Do you have any evidence that you reported          14:17:24

20   any of this information you learned on (technical          14:17:26

21   difficulty) meetings with Jag and Shiv to          14:17:29

22   International Paper prior to this litigation?          14:17:32

23    A  I don't recall.          14:17:37

24    Q  And is that common practice for Beazley,          14:17:38

25   when you're doing an investigation of an employee          14:17:52

| | | |
|---|---|---|
| 1 | theft, to have secret meetings with the | 14:17:55 |
| 2 | representatives of the employee whose theft is | |
| 3 | reported by the policyholder, without telling the | 14:17:59 |
| 4 | policyholder that are you doing? | 14:18:00 |
| 5 | MR. MURPHY:  Objection as to form, | 14:18:02 |
| 6 | mischaracterizes the testimony, and beyond the | 14:18:03 |
| 7 | scope of the notice. | 14:18:08 |
| 8 | A  Again, we were performing a claim | 14:18:13 |
| 9 | investigation at that time. | 14:18:16 |
| 10 | Q  Did Jag's representatives give you a copy | 14:18:22 |
| 11 | of some proposed counterclaim that that they were | 14:18:26 |
| 12 | allegedly going to file against International | 14:18:30 |
| 13 | Paper in response to International Paper's lawsuit | 14:18:32 |
| 14 | against them? | 14:18:36 |
| 15 | A  I think there was a mention.  I don't | 14:18:39 |
| 16 | recall if they provided a copy. | 14:18:42 |
| 17 | MR. SYLVESTER:  Let me ask if our tech | 14:18:50 |
| 18 | could put up Exhibit 19 in the box. | 14:18:51 |
| 19 | (Marked for identification Exhibit 19, | 14:18:53 |
| 20 | Sitaraman Jagannath's countercomplaint for | 14:19:27 |
| 21 | damages.) | 14:18:54 |
| 22 | Q  Can you open Exhibit 19, which is | 14:19:15 |
| 23 | entitled:  Counterclaim, Plaintiff Sitaraman | 14:19:18 |
| 24 | Jagannath's countercomplaint for damages. | 14:19:27 |
| 25 | A  Okay, I have it open. | 14:19:36 |

1      Q   Okay.  So, this is a document, Exhibit 19,          14:19:38
2   that was produced from Beazley's files.  It has a         14:19:46
3   Beazley production number.                                14:19:49
4        Do you see that at the bottom of the first           14:19:50
5   page?                                                     14:19:52
6      A   Yes.                                               14:19:54
7      Q   This was in Beazley's file, this                   14:19:56
8   counterclaim, the draft counterclaim, I should            14:20:00
9   say.                                                      14:20:04
10        Do you see it?                                      14:20:04
11     A   I do.                                              14:20:05
12     Q   So, when Beazley got this, did you provide         14:20:07
13   it to International Paper?                                14:20:11
14     A   No.                                                14:20:17
15     Q   Why not?                                           14:20:19
16     A   Of this -- of the -- why we didn't provide         14:20:35
17   a copy of this document?                                 14:20:38
18     Q   Correct.  If Jag said he was going to file         14:20:40
19   against International Paper this counterclaim in          14:20:46
20   the civil action that International Paper had             14:20:49
21   brought against him and his brother and their            14:20:52
22   companies, why did you not inform International           14:20:56
23   Paper that you had gotten a copy of this and give        14:20:59
24   it over to International Paper so that they, your         14:21:02
25   policyholder, International Paper, could be               14:21:04

| | |
|---|---|
| 1 | prepared for it and respond to it? | 14:21:07 |
| 2 | A  Well, Beazley was performing a claim | 14:21:12 |
| 3 | investigation at that time. | 14:21:14 |
| 4 | Q  I understand that.  But if you learned | 14:21:20 |
| 5 | something that would be of interest to your | 14:21:23 |
| 6 | policyholder, such as the responses that Jag had | 14:21:25 |
| 7 | to their claim of theft, didn't you owe it to your | 14:21:30 |
| 8 | policyholder to provide them, that is, | 14:21:35 |
| 9 | International Paper, your policyholder, with this | 14:21:37 |
| 10 | information so that they could respond to it? | 14:21:41 |
| 11 | MR. MURPHY:  Objection, overbroad, asked | 14:21:45 |
| 12 | and answered. | 14:22:00 |
| 13 | A  Again, we were still investigating the | 14:22:00 |
| 14 | claim at this time.  And we were still awaiting | 14:22:02 |
| 15 | documents from the insured, as well. | 14:22:08 |
| 16 | Q  I understand that you were still | 14:22:13 |
| 17 | investigating, but when you got this important | 14:22:15 |
| 18 | document about a threatened counterclaim against | 14:22:18 |
| 19 | your policyholder, International Paper, from the | 14:22:21 |
| 20 | former employee who is accused of theft, why | 14:22:27 |
| 21 | didn't you provide a copy of this to International | 14:22:31 |
| 22 | Paper so that they could be aware of it and even | 14:22:35 |
| 23 | respond to all of the allegations in here? | 14:22:38 |
| 24 | MR. MURPHY:  Objection, compound, asked | 14:22:42 |
| 25 | and answered. | 14:22:48 |

1      A   A draft was not provided to International          14:22:50

2   Paper.                                                   14:22:58

3      Q   Was not provided to International Paper by         14:22:58

4   Beazley; isn't that right?                               14:23:01

5      A   Yes, that's correct.                              14:23:03

6      Q   And was that your decision not to give it         14:23:05

7   to them, not to show it to them?                         14:23:08

8      A   Well, it was a draft.                             14:23:12

9      Q   That's right.  At the top of the first            14:23:15

10  page, it says:  Privileged and confidential             14:23:18

11  settlement communications.                               14:23:24

12      Do you see that?                                     14:23:25

13     A   I do.                                             14:23:31

14     Q   And this was provided to Beazley and              14:23:32

15  produced out of Beazley's files, right?                  14:23:35

16     A   Yes.                                              14:23:43

17     Q   And it was provided to Beazley by lawyers         14:23:44

18  for Jag and Shiv, correct?                               14:23:50

19     A   Yes.                                              14:23:56

20     Q   And it's characterized at the top as             14:23:59

21  privileged and confidential settlement                   14:24:01

22  communications.                                          14:24:03

23      Was Beazley having any settlement                    14:24:04

24  communications with Jag and Shiv and their               14:24:06

25  lawyers?                                                 14:24:10

| | | |
|---|---|---|
| 1 | MR. MURPHY:  Objection to the form of the | 14:24:12 |
| 2 | question. | 14:24:14 |
| 3 | You can answer. | 14:24:14 |
| 4 | A  No. | 14:24:17 |
| 5 | Q  Did Beazley have any discussions with Jag | 14:24:20 |
| 6 | and Shiv about trying to resolve the claim for | 14:24:23 |
| 7 | coverage through some sort of three-party deal, | 14:24:31 |
| 8 | that is, between International Paper, Beazley and | 14:24:35 |
| 9 | the accused? | 14:24:39 |
| 10 | A  No. | 14:24:42 |
| 11 | Q  Why did they call it a settlement | 14:24:45 |
| 12 | communication when they gave it to you? | 14:24:47 |
| 13 | MR. MURPHY:  Object as to form, calls for | 14:24:50 |
| 14 | speculation. | 14:24:54 |
| 15 | A  I don't know why they titled -- gave it | 14:24:56 |
| 16 | that title. | 14:24:58 |
| 17 | Q  This draft counterclaim has over 60 pages | 14:25:00 |
| 18 | of information, with Jag's side of the story, so | 14:25:04 |
| 19 | to speak, correct? | 14:25:10 |
| 20 | MR. MURPHY:  Objection as to form. | 14:25:12 |
| 21 | A  It is 62 pages, yes. | 14:25:14 |
| 22 | Q  Have you read it?  Did you read it when | 14:25:17 |
| 23 | you obtained a copy of it? | 14:25:20 |
| 24 | A  I did read it. | 14:25:24 |
| 25 | Q  Do you believe it? | 14:25:26 |

1      A   Believe what specifically?                    14:25:38

2      Q   Do you believe what he's saying in here as    14:25:42

3   to why there was no theft and that he's an           14:25:45

4   innocent man?                                        14:25:49

5          MR. MURPHY:  Objection, compound,             14:25:51

6   overbroad.                                           14:25:53

7      A   Well, he makes various statements within      14:25:58

8   the document.                                        14:26:02

9      Q   Right.  And he contradicts International      14:26:06

10  Paper's contention that he was stealing from the     14:26:10

11  company with his business arrangement with his       14:26:12

12  brother and DGS and Mid-South, doesn't he?           14:26:15

13     A   In portions, yes.                             14:26:23

14     Q   And do you believe him?  Do you believe       14:26:25

15  he's innocent of employee theft, based on what       14:26:28

16  you've read in this draft and/or anything else       14:26:32

17  that you've seen?                                     14:26:34

18         MR. MURPHY:  Objection as to form,            14:26:36

19  overbroad.                                           14:26:37

20     A   Well, I do know the criminal matter was       14:26:41

21  dismissed.                                            14:26:45

22     Q   Right.  And as we talked about, criminal      14:26:49

23  conviction is not necessary for employee theft       14:26:52

24  under the policy.                                     14:26:55

25         So, my question is, do you believe him?       14:26:56

1    Do you believe Jag --                              14:26:59

2         MR. MURPHY:  Objection as to form,            14:27:02

3    argumentative.                                     14:27:04

4    MR. SYLVESTER:  Let me finish the

5    question.                                          14:27:06

6         Q  Do you believe Jag when he's saying that   14:27:06

7    he didn't steal from the company, that he was just 14:27:09

8    acting in the ordinary course of business?         14:27:13

9         A  I'm not in a position to make a            14:27:18

10   determination on the veracity of his statements.   14:27:20

11        Q  When will you be in a position to make a   14:27:33

12   determination on the veracity of his statements in 14:27:37

13   this draft counterclaim, or anywhere else?         14:27:40

14        A  Again, I'm not in a position to make a     14:27:57

15   determination on the veracity of his statements.   14:27:59

16        Q  So, you haven't reached a judgment one way 14:28:06

17   or another about whether he is a thief or not a    14:28:08

18   thief, as employee theft is defined under the      14:28:26

19   Beazley policy?                                    14:28:17

20        MR. MURPHY:  Objection as to form, asked      14:28:18

21   and answered multiple times.                       14:28:23

22        A  As stated previously, we are still         14:28:27

23   conducting our evaluation of this matter under the 14:28:30

24   insurance policy.                                  14:28:35

25        Q  Do you recall Beazley being offered by     14:28:37

1    International Paper the opportunity to take                      14:28:40

2    control of the subrogation action against Jag and                14:28:44

3    Shiv early on after the claim was noticed?                       14:28:51

4        A  Well, Beazley wouldn't have been in a                     14:28:59

5    position to take control of a subrogation action                 14:29:01

6    while we were still in the process of evaluating                 14:29:06

7    the claim allegations under the policy.                          14:29:12

8        Q  Okay.  Let me rephrase the question.                      14:29:15

9           Do you recall early on after the claim was                14:29:19

10   noticed to Beazley that International offered that               14:29:22

11   Beazley could pursue Jag and Shiv and take control               14:29:25

12   of that litigation against them in an effort to                  14:29:29

13   try to recoup monies that may have been stolen                   14:29:33

14   through this employee-theft scheme?                              14:29:37

15       A  Well, again, Beazley would not have been                  14:29:41

16   in a position to take control of or direct the                   14:29:46

17   civil action because we had no rights of                         14:29:52

18   subrogation at that point.                                       14:29:55

19       Q  You only have rights of subrogation after                 14:29:57

20   you pay money on the claim; is that right?                       14:30:00

21       A  Yes, pursuant to the policy.                              14:30:03

22       Q  Prior to providing coverage payments to                   14:30:08

23   International Paper, Beazley is not entitled to                   14:30:14

24   control any claim for recoupment against the                     14:30:19

25   employee thief; is that right?                                   14:30:26

1          MR. MURPHY:  Objection, form, to the          14:30:27

2     extent it calls for a legal conclusion.          14:30:28

3          You can answer.                              14:30:30

4       A  Can you repeat the question, please?  I     14:30:31

5     heard --                                         14:30:34

6       Q  It's only after Beazley makes coverage      14:30:35

7     payments to its policyholder, International Paper, 14:30:37

8     that it would have the right or ability to pursue 14:30:41

9     Jag or Shiv, or any other person or entity to try 14:30:49

10    to recoup the payments of coverage that were made; 14:30:54

11    isn't that right?                                14:30:59

12         MR. MURPHY:  Same objection.                14:30:59

13      A  Yes.                                         14:31:03

14      Q  Do you recall nonetheless being offered     14:31:06

15    the opportunity early on by International Paper   14:31:08

16    that Beazley could take the lead in pursuing Jag  14:31:13

17    and Shiv?                                         14:31:18

18      A  Again, Beazley was not in any position at   14:31:22

19    that point to take over or to direct a subrogation 14:31:26

20    action on this matter.                           14:31:32

21      Q  I understand.  Sorry.  That's not my        14:31:35

22    question.                                        14:31:37

23         My question is, regardless of what your     14:31:37

24    response is, do you recall that International     14:31:40

25    Paper offered to Beazley, that Beazley could take 14:31:43

1   control of the pursuit of Jag and Shiv, if it so          14:31:48

2   desired?  Putting aside what your response would           14:31:53

3   have been, but do you recall at least that offer          14:31:55

4   being made by International Paper early on after           14:31:58

5   the claim was noticed?                                    14:32:00

6       A  I -- I don't recall exactly, but we would          14:32:04

7   not have been able to do so.                              14:32:18

8       Q  Okay.  So, if you had been asked by                14:32:15

9   International Paper, that would have been                  14:32:22

10  Beazley's response, that you would not take over           14:32:24

11  pursuit of Jag and Shiv unless and until you               14:32:28

12  determined that there was coverage under the               14:32:32

13  policy and paid money in coverage under the                14:32:34

14  policy; is that right?                                     14:32:38

15      A  Yes.                                                14:32:41

16      Q  Did anybody from Beazley have any                   14:32:43

17  communications with the Department of Justice,             14:32:46

18  U.S. Attorney's Office or the FBI regarding                14:32:51

19  International Paper's employee-theft claim?                 14:32:54

20      A  No.                                                 14:33:00

21      Q  And by that, I mean your lawyers, as well           14:33:01

22  as anybody working for Beazley.  Did any of your           14:33:05

23  outside counsel on this matter have any                    14:33:09

24  communications with the Department of Justice,             14:33:12

25  U.S. Attorney's Office or the FBI?                         14:33:15

| | | |
|---|---|---|
| 1 | A  No, not that I recall. | 14:33:19 |
| 2 | Q  Can you go back to Exhibit 7, which is the | 14:33:22 |
| 3 | Beazley supplemental responses to the first set of | 14:33:33 |
| 4 | interrogatories that were propounded -- | 14:33:37 |
| 5 | A  Could they be posted in the chat again?  I | 14:33:42 |
| 6 | think maybe -- well, actually -- oh, you know, I | 14:33:44 |
| 7 | saved it, right?  Hold on, let me see here. | 14:33:46 |
| 8 | Q  It should still be -- | 14:33:49 |
| 9 | A  Is it still in the chat? | 14:33:51 |
| 10 | Q  It's in mine, Exhibit 7, although -- | 14:33:55 |
| 11 | A  Well, I -- I closed out of the meeting. | 14:33:56 |
| 12 | Let me see.  Thank you.  I see it. | 14:33:59 |
| 13 | Q  Oh, I guess you put it back in. | 14:34:02 |
| 14 | A  Okay.  Exhibit 7, I have it open. | 14:34:06 |
| 15 | Q  Okay.  Let's see, go to page 8 of this | 14:34:13 |
| 16 | document. | 14:34:22 |
| 17 | A  Okay.  I have it open. | 14:34:25 |
| 18 | Q  These are the interrogatory answers that | 14:34:28 |
| 19 | you verified back on November 29th, 2023.  We were | 14:34:29 |
| 20 | looking at them before lunch.  And you'll see at | 14:34:33 |
| 21 | the top paragraph, at the end of the top paragraph | 14:34:39 |
| 22 | on page 8, the last sentence says:  Plaintiff | 14:34:42 |
| 23 | claims that Dowdell -- referring to Doug | 14:34:47 |
| 24 | Dowdell -- discovered certain alleged | 14:34:52 |
| 25 | irregularities with respect to plaintiff's | 14:34:55 |

1   dealings with two diversity specialty chemical          14:34:57

2   suppliers:  Diversified Global Sourcing, DGS, and        14:34:59

3   Mid-South Diversity Group, Mid-South.                    14:35:03

4        Do you see that?                                    14:35:05

5    A  Yes, I see that sentence.                            14:35:07

6    Q  And, again, in this deposition, when we              14:35:11

7   refer to "DGS," we're talking about the entity           14:35:15

8   Diversified Global Sourcing.  That was a diverse         14:35:18

9   supplier with which Jag was doing business on            14:35:22

10  behalf of International Paper, right?                     14:35:27

11       Do you understand that's what DGS stands            14:35:29

12  for?                                                     14:35:32

13   A  Yes.                                                 14:35:32

14   Q  And do you understand that Mid-South is              14:35:32

15  shorthand for Mid-South Diversity Group, again,          14:35:36

16  another diverse supplier that Jag was doing              14:35:41

17  business with on behalf of International Paper?           14:35:43

18   A  Yes.                                                 14:35:45

19   Q  You understand that IP has alleged that              14:35:47

20  both DGS and Mid-South were entities that were           14:35:51

21  controlled by Jag's brother, Shiv Kumar?                 14:35:56

22   A  Yes.                                                 14:36:01

23   Q  And do you agree that those entities were,           14:36:01

24  in fact, based on your investigation, entities           14:36:06

25  that were controlled by Shiv Kumar, or Shiv as we        14:36:10

1   call him for short?                                    14:36:14

2       A   That's what's been alleged, yes.              14:36:16

3       Q   Well, have you been able to confirm that      14:36:19

4   in your investigation?                                 14:36:21

5       A   Well, our investigation is still ongoing      14:36:25

6   at this time.                                          14:36:29

7       Q   You mean you haven't reached a conclusion     14:36:29

8   on that fact as to whether Shiv controls DGS and       14:36:31

9   Mid-South?                                             14:36:37

10      MR. MURPHY:  Objection, asked and answered         14:36:38

11  earlier in the deposition.                             14:36:40

12      A   As stated previously, the matter is still     14:36:47

13  under investigation.                                   14:36:49

14      Q   Let's go back to Exhibit 17, which is the     14:36:53

15  settlement agreement.                                  14:36:57

16      Do you have that?  Is that in your chat            14:36:59

17  box, or does that need to be reposted?                 14:37:05

18      A   That one I still had open.  Let me...  I      14:37:08

19  have it open, the six-page settlement agreement.       14:37:16

20      Q   Yep.                                           14:37:19

21      Okay.  Can you go to the page 4 of that            14:37:20

22  settlement agreement, paragraph 24?                    14:37:28

23      Do you have it?                                    14:37:42

24      A   Yes.                                           14:37:46

25      Q   Paragraph 24 at the bottom of page 4, the     14:37:47

| | | |
|---|---|---|
| 1 | first sentence says:  Each of the undersigned | 14:37:49 |
| 2 | represents and warrants that he/she is fully | 14:37:53 |
| 3 | authorized to execute this agreement on behalf of | 14:37:56 |
| 4 | his/her respective party. | 14:37:59 |
| 5 | Do you see that? | 14:38:03 |
| 6 | A  Yes, I see that sentence. | 14:38:04 |
| 7 | Q  Okay.  And it says:  Each party represents | 14:38:05 |
| 8 | and warrants that it's authorized to enter into | 14:38:08 |
| 9 | this settlement agreement, that the execution and | 14:38:11 |
| 10 | delivery of this agreement will not conflict with | 14:38:13 |
| 11 | or result in any violation or default under any | 14:38:15 |
| 12 | provision of its articles of incorporations, | 14:38:18 |
| 13 | charters, bylaw, partnership or other agreement or | 14:38:22 |
| 14 | of any decree, statute, law, ordinance, rule or | 14:38:25 |
| 15 | regulation applicable to it, and that no further | 14:38:29 |
| 16 | consent, approval, order, authorization or filing | 14:38:33 |
| 17 | with any entity, governmental or otherwise, is | 14:38:36 |
| 18 | required in connection with the execution and | 14:38:39 |
| 19 | delivery of this agreement or the consummation of | 14:38:41 |
| 20 | the actions described in this agreement. | 14:38:44 |
| 21 | Do you see that? | 14:38:46 |
| 22 | A  Yes. | 14:38:47 |
| 23 | Q  Okay.  And then scroll down. | 14:38:47 |
| 24 | Do you see there's a signature block for | 14:38:51 |
| 25 | Diversified Global Sourcing, Inc., DGS?  Do you | 14:38:53 |

| | | |
|---|---|---|
| 1 | see that? | 14:38:58 |
| 2 | A  Yes, I so. | 14:38:58 |
| 3 | Q  Who is signing on behalf of DGS? | 14:39:00 |
| 4 | MR. MURPHY:  Object -- note my objection | 14:39:09 |
| 5 | to form. | 14:39:11 |
| 6 | You can answer. | 14:39:11 |
| 7 | A  It says Shiv Kumar. | 14:39:14 |
| 8 | Q  Right.  So, Shiv Kumar signed on behalf of | 14:39:18 |
| 9 | DGS. | 14:39:22 |
| 10 | And then look below that, do you see a | 14:39:23 |
| 11 | signature block for Mid-South Diversity Group? | 14:39:26 |
| 12 | Who signed on behalf of Mid-South? | 14:39:29 |
| 13 | MR. MURPHY:  Objection as to form. | 14:39:32 |
| 14 | A  It's -- it says Shiv Kumar. | 14:39:37 |
| 15 | Q  Okay.  So -- | 14:39:42 |
| 16 | (Indiscernible crosstalk.) | 14:39:44 |
| 17 | Q  Right.  So, in this settlement agreement, | 14:39:46 |
| 18 | Shiv is not only signing for himself, but he is | 14:39:49 |
| 19 | signing for DGS and Mid-South, right? | 14:39:52 |
| 20 | MR. MURPHY:  Objection as to form. | 14:39:55 |
| 21 | A  He's -- his name is on the signature page, | 14:40:04 |
| 22 | yes. | 14:40:06 |
| 23 | Q  And in light of that, are you saying that | 14:40:06 |
| 24 | Beazley still hasn't determined whether Shiv Kumar | 14:40:09 |
| 25 | controls Mid-South and DGS, the two entities that | 14:40:13 |

| | |
|---|---|
| 1  are the subject of IP's employee-theft scheme? | 14:40:19 |
| 2      MR. MURPHY:  Objection as to form, asked | 14:40:25 |
| 3  and answered. | 14:40:31 |
| 4    A  Again, as indicated previously, we're | 14:40:31 |
| 5  still investigating this matter. | 14:40:36 |
| 6    Q  Right.  But even though you're still | 14:40:41 |
| 7  investigating the coverage claim, there still | 14:40:58 |
| 8  could be certain facts that you've reached a | 14:40:47 |
| 9  conclusion on, even if you're examining other | 14:40:50 |
| 10 facts in the claim, right? | 14:40:52 |
| 11   A  Potentially. | 14:40:59 |
| 12   Q  Okay.  Well, will you acknowledge that one | 14:41:00 |
| 13 of the facts that has been established is that | 14:41:03 |
| 14 Shiv Kumar controlled DGS and Mid-South? | 14:41:05 |
| 15     MR. MURPHY:  Objection as to form, asked | 14:41:10 |
| 16 and answered. | 14:41:24 |
| 17   A  I'm not really in a position to give an | 14:41:24 |
| 18 affirmative statement on that. | 14:41:28 |
| 19   Q  Are you doing some other investigation | 14:41:30 |
| 20 that's ongoing about the corporate structure or | 14:41:32 |
| 21 control for those two entities, such that you're | 14:41:36 |
| 22 not able to reach a conclusion that Shiv controls | 14:41:42 |
| 23 DGS and Mid-South? | 14:41:45 |
| 24     MR. MURPHY:  Objection to form. | 14:41:47 |
| 25   A  At this time, we have -- we're still | 14:41:52 |

1  evaluating the claim in its totality and we have          14:41:54

2  not concluded our investigation.          14:41:58

3      Q  I understand that, but are you          14:42:00

4  investigating the question of whether Shiv          14:42:02

5  controls Mid-South and/or DGS?          14:42:04

6          Are you currently investigating that?  And          14:42:10

7  if so, how?          14:42:12

8          MR. MURPHY:  Objection as to form,          14:42:14

9  multiple questions.          14:42:16

10     A  We have not made a final determination on          14:42:22

11 that yet, on that item.          14:42:25

12     Q  Well, what items --          14:42:28

13     A  As I stated, we're still investigating and          14:42:29

14 evaluating the claim that's been alleged under the          14:42:31

15 policy.          14:42:35

16     Q  Well, what aspects of IP's claim for this          14:42:35

17 employee-theft scheme have you made a          14:42:39

18 determination on?  Not the entire claim.  I          14:42:42

19 understand you said that you haven't made a final          14:42:45

20 decision.  But what aspects of the claim have you          14:43:03

21 reached a conclusion on after four years of          14:42:51

22 investigation?          14:42:56

23         MR. MURPHY:  Objection, overbroad.          14:42:57

24     A  Again, we're still evaluating the claim          14:43:04

25 and the materials that have been provided thus far          14:43:09

1    from the insured.  We have not made a final                        14:43:14

2    determination with regards to an                                   14:43:17

3    employee-dishonesty matter under the policy.                       14:43:24

4        Q  So, you can't say as you sit here today                     14:43:26

5    that you at least would acknowledge that Shiv                       14:43:29

6    controls DGS; is that right?                                       14:43:33

7        MR. MURPHY:  Objection as to form, and                         14:43:37

8    asked and answered.                                                14:43:39

9        A  As previously stated, we have not made a                    14:43:45

10   final determination on this claim matter.                          14:43:48

11       Q  And as you sit here today, four years into                  14:43:50

12   the investigation, you cannot acknowledge that                     14:43:52

13   Shiv Kumar controlled Mid-South Diversity Group;                   14:43:57

14   is that right?                                                     14:44:02

15       MR. MURPHY:  Objection as to form, asked                       14:44:02

16   and answered.                                                      14:44:06

17       A  Again, we're still investigating this                       14:44:06

18   matter and we have not made a final determination                  14:44:12

19   on that item.                                                      14:44:15

20       Q  If you look at the paragraph, the last                      14:44:16

21   full paragraph on page 8 of Exhibit 7, the                         14:44:20

22   paragraph that starts with the statement:  IP                      14:44:23

23   Specialty Chemicals Group provided chemicals to                    14:44:28

24   the IP mills to operate the mills and provide                      14:44:30

25   certain --                                                         14:44:35

1     A   I'm sorry, which -- which page are you on?          14:44:35

2     Q   Page 8 of Exhibit 7, the same page we were         14:44:38

3   just looking at, the last full paragraph at the          14:44:40

4   bottom, that starts with the phrase "IP Specialty        14:44:45

5   Chemicals Group."                                        14:44:51

6         Do you see that?                                   14:44:51

7     A   Yes, I do.                                         14:44:52

8     Q   Go to the last sentence of that paragraph,         14:44:53

9   it says -- I'm sorry, the second to the last             14:44:56

10   paragraph.  It says:  Thus, it was impossible for       14:45:01

11   IP to contract with diverse companies to                14:45:04

12   manufacture the chemicals required by the               14:45:09

13   Specialty Chemicals Group.  As a result, IP             14:45:11

14   entered into other arrangements with diverse or         14:45:14

15   minority-owned businesses to meet the goals of its      14:45:17

16   diversity supplier program and the requirements of      14:45:20

17   its customers.                                          14:45:23

18         Do you see that?                                  14:45:24

19     A   I do.                                             14:45:25

20     Q   What requirements of what customers are          14:45:26

21   you referring to in this answer by Beazley?             14:45:29

22     A   Which customers?  Can you repeat the             14:45:50

23   question, again?                                        14:45:56

24     Q   Yes.  Beazley is saying in your verified         14:45:58

25   interrogatory answers that:  IP entered into            14:46:01

1    arrangements with diverse or minority-owned          14:46:05

2    businesses to meet the goals of its diversity        14:46:09

3    supplier program and the requirements of its         14:46:13

4    customers.                                           14:46:15

5         Do you see that sentence in your answer?        14:46:16

6    A  Yes.                                              14:46:18

7    Q  What are the requirements of International         14:46:18

8    Paper's customers that you're referring to there?    14:46:22

9    A  For International Paper to have a diverse          14:46:25

10   meaning women and/or minority-owned businesses       14:46:38

11   within its supply chain.                             14:46:42

12   Q  And you aware that the only requirements           14:46:46

13   in any customer contract were reporting              14:46:51

14   requirements, not actual requirements for any        14:46:53

15   level of diversity spending, are you aware of        14:46:56

16   that?                                                14:47:00

17        MR. MURPHY:  Objection as to form.              14:47:00

18   A  I don't recall that specifically.                 14:47:15

19   Q  Are you aware of any customer of                   14:47:17

20   International Paper that required that                14:47:20

21   International Paper do business with DGS?             14:47:22

22   A  I don't recall that specifically.                 14:47:33

23   Q  Are you aware of any customer of                   14:47:35

24   International Paper that required that                14:47:38

25   International Paper do business with Mid-South?       14:47:41

1      A  I don't -- I don't recall that                    14:47:54

2  specifically.                                            14:47:55

3      Q  Isn't it true that International Paper            14:47:56

4  could have not done business with DGS and                14:48:01

5  Mid-South and still fulfilled its contractual            14:48:05

6  requirements with its customers?                         14:48:09

7      A  Could you repeat the question again,              14:48:17

8  please?                                                  14:48:32

9      Q  There was no customer who mandated that           14:48:20

10 International Paper spend money with DGS; isn't           14:48:23

11 that right?                                               14:48:29

12     A  Not that I recall.                                14:48:29

13     Q  And there is no customer of International         14:48:33

14 Paper that mandated that as part of its contract          14:48:35

15 with IP, that IP had to do business with                  14:48:37

16 Mid-South; isn't that right?                              14:48:41

17     A  Not that I recall.                                14:48:43

18     Q  At the bottom of page 8, in the partial          14:48:47

19 paragraph at the bottom, it says:  As part of its         14:49:00

20 operations, plaintiff utilized diverse or                 14:49:05

21 minority-owned businesses.  Plaintiff's supplier          14:49:07

22 diversity program was established in 1985.                14:49:10

23     Do you see that?                                     14:49:13

24     A  Yes, I do.                                        14:49:14

25     Q  The next sentence carries over to the next       14:49:16

| | | |
|---|---|---|
| 1 | page. It says: According to plaintiffs, Global | 14:49:19 |
| 2 | Sourcing policy and procedure manual, effective | 14:49:23 |
| 3 | March 1, 2019, the purpose of International | 14:49:26 |
| 4 | Paper's supplier diversity program is to promote | 14:49:29 |
| 5 | growth and development of diverse businesses. The | 14:49:33 |
| 6 | company will source its goods and services | 14:49:36 |
| 7 | requirements on a competitive basis to obtain the | 14:49:38 |
| 8 | greatest value in terms of quality, cost and | 14:49:41 |
| 9 | service. | 14:49:44 |
| 10 | Do you see that language? | 14:49:44 |
| 11 | A  Yes, I do. | 14:49:48 |
| 12 | Q  Do you understand that that was, in fact, | 14:49:49 |
| 13 | a purpose of International's diversity supplier | 14:49:53 |
| 14 | program, to source its goods and requirements on a | 14:49:58 |
| 15 | competitive basis to attain the greatest value in | 14:50:02 |
| 16 | terms of quality, cost and service? | 14:50:06 |
| 17 | A  I see that sentence. | 14:50:13 |
| 18 | Q  And that was part of the diversity | 14:50:15 |
| 19 | program. In addition to promoting the growth and | 14:50:18 |
| 20 | development of diverse businesses, the company was | 14:50:21 |
| 21 | directing its purchasing agents to source goods | 14:50:25 |
| 22 | and services on a competitive basis to attain the | 14:50:28 |
| 23 | greatest value in terms of quality, cost and | 14:50:31 |
| 24 | service; isn't that right? | 14:50:35 |
| 25 | A  Can you repeat the questions again, | 14:50:43 |

1   please?                                              14:50:47

2       Q   Right.  Would you agree that as part of      14:50:48

3   International Paper's Global Sourcing policy and     14:50:51

4   procedural manual, it stated that the purpose of    14:50:55

5   International's supplier diversity program was not   14:51:00

6   only to promote the growth and development of       14:51:03

7   diverse businesses, but to source its goods and     14:51:05

8   services requirements on a competitive basis to     14:51:08

9   attain the greatest value in terms of quality,      14:51:12

10  cost and service?                                   14:51:15

11      A   Yes, I do see that section on page 9.        14:51:37

12      Q   And you understand that International's      14:51:41

13  supplier diversity program did not allow for        14:51:46

14  spending money on diverse suppliers just to say     14:51:51

15  that they were spending money on diverse            14:51:54

16  suppliers, that those diverse suppliers had to      14:51:57

17  provide the greatest value in terms of quality,     14:52:00

18  cost and service; isn't that right?                 14:52:04

19          MR. MURPHY:  Objection as to form.          14:52:06

20      A   I do see that section, yes, the quoted       14:52:12

21  section.                                            14:52:18

22      Q   Right.  But I was asking, beyond that        14:52:19

23  quoted section, you understand that the supplier    14:52:22

24  diversity program of International did not provide   14:52:27

25  that purchasing agents were to give money to        14:52:31

| | |
|---|---|
| 1 | diverse suppliers just because they were diverse, | 14:52:34 |
| 2 | but, rather, they also had to meet the | 14:52:37 |
| 3 | characteristics of providing the greatest value to | 14:52:44 |
| 4 | IP in terms of quality, cost and service? | 14:52:48 |
| 5 | MR. MURPHY:  Objection as to form. | 14:52:53 |
| 6 | A  I mean, I do understand what that means, | 14:52:58 |
| 7 | yes. | 14:53:02 |
| 8 | Q  Okay.  So, that means IP was not seeking | 14:53:03 |
| 9 | to spend money on diversity suppliers, like DGS or | 14:53:11 |
| 10 | Mid-South, unless they were giving the greatest | 14:53:16 |
| 11 | quality, cost and service in return; isn't that | 14:53:19 |
| 12 | right? | 14:53:21 |
| 13 | MR. MURPHY:  Objection as to form. | 14:53:21 |
| 14 | A  Can you repeat the question, again, | 14:53:24 |
| 15 | please? | 14:53:29 |
| 16 | Q  Right.  International Paper was not | 14:53:29 |
| 17 | looking to spend money with DGS or Mid-South | 14:53:31 |
| 18 | unless they were providing a greatest value in | 14:53:37 |
| 19 | terms of quality, cost and service; isn't that | 14:53:40 |
| 20 | right? | 14:53:44 |
| 21 | MR. MURPHY:  Same objection. | 14:53:44 |
| 22 | A  I'm just referring to the document on the | 14:53:51 |
| 23 | screen again. | 14:53:53 |
| 24 | Okay.  Yes, it did come from their -- the | 14:54:15 |
| 25 | insured's manual. | 14:54:19 |

1      Q   Okay.  Now, look at the next paragraph on          14:54:20
2  page 9 of this Exhibit 7.  It starts by saying --          14:54:22
3  and, again, this is Beazley talking in its                 14:54:26
4  interrogatory answer.  Beazley says, quote:  IP            14:54:29
5  received significant benefits from doing business          14:54:32
6  with diverse or minority-owned businesses,                 14:54:35
7  including DGS and Mid-South, regardless of the             14:54:38
8  goods or services provided by those companies.             14:54:41
9          So, my question to you is, what were those         14:54:44
10 significant benefits that IP received from DGS and         14:54:47
11 Mid-South that Beazley is referring to in these            14:54:51
12 answers?                                                   14:54:54
13     A   Can you repeat that question, please?              14:55:07
14     Q   Yes.  In this paragraph on page 9 of               14:55:09
15 Exhibit 7, Beazley is saying that IP receives              14:55:12
16 significant benefits from doing business with              14:55:16
17 diverse or minority-owned businesses, including            14:55:18
18 DGS and Mid-South, regardless of the goods or              14:55:22
19 services provided by those companies.                      14:55:26
20         My question to you is, what significant            14:55:27
21 benefits did IP get from doing business with DGS           14:55:30
22 and Mid-South as referenced in Beazley's answer            14:55:33
23 here?                                                      14:55:37
24     A   Well, I would refer to the actual response        14:55:44
25 where it makes reference to tax benefits, among           14:55:49

1    other reasons.                                          14:55:54

2        Q   Okay.  Let's talk about tax benefits.          14:55:56

3        What tax benefits is Beazley contending            14:55:58

4    that International received as a result of doing        14:56:05

5    business with DGS and Mid-South?                        14:56:07

6        A   We're still investigating that.                14:56:16

7        Q   Well, were you aware that International         14:56:20

8    Paper has stated in discovery responses and in         14:56:24

9    testimony that there is no tax benefit that it         14:56:29

10   obtained from doing business with DGS around           14:56:31

11   Mid-South?                                              14:56:36

12       Are you aware of that fact?                         14:56:36

13       MR. MURPHY:  Ms. Ellis, did you hear the            14:56:41

14   entire question that time?                              14:56:43

15       THE WITNESS:  Yes, I did.                           14:56:48

16       MR. MURPHY:  Okay.  You can respond.                14:56:50

17       A   We're still looking at that particular         14:57:04

18   item.                                                   14:57:06

19       Q   Well, what are you looking at?                  14:57:06

20   International has already said it didn't get any        14:57:09

21   tax benefits from doing business with DGS or           14:57:12

22   Mid-South.  Do you not believe International Paper      14:57:15

23   when it says that?                                      14:57:18

24       A   Well, they did make reference to -- other      14:57:31

25   piece here, it says:  On average, the supplier         14:57:42

1  diversity program was a benefit to International      14:57:45

2  Paper.                                                14:57:52

3       Q  You're quoting something about diversity     14:57:52

4  supplier programs in general.                         14:57:57

5           I'm talking about DGS and Mid-South.         14:58:00

6           Isn't it the case that International Paper   14:58:06

7  did not receive any tax benefits from doing           14:58:08

8  business with DGS or Mid-South during the relevant    14:58:12

9  period of loss, which is 2011 to 2019; isn't that     14:58:16

10 right?                                                14:58:27

11      A  I don't recall on that particular item.       14:58:27

12      Q  Well, as you sit here today, having           14:58:31

13 investigated this issue for four years, does          14:58:34

14 Beazley have any evidence to suggest that             14:58:36

15 International Paper got some tax benefit from          14:58:41

16 doing business with DGS and Mid-South?                14:58:42

17      A  I don't recall that specific item.            14:58:53

18      Q  So, as you sit here today, you can't          14:58:58

19 identify any tax benefit that International Paper      14:59:01

20 received from doing business with DGS or              14:59:04

21 Mid-South; is that correct?                           14:59:09

22      A  I don't recall specifically on that           14:59:12

23 particular item.                                      14:59:14

24      Q  Well, is Beazley withdrawing its statement    14:59:20

25 that International Paper received some tax benefit     14:59:25

1    from doing business with DGS and Mid-South?          14:59:29

2        A  We're continuing our investigation at this     14:59:37

3    point.                                                14:59:41

4        Q  What tax investigation is Beazley             14:59:41

5    currently doing to determine whether International    14:59:44

6    Paper has gotten some tax benefit from doing          14:59:50

7    business with DGS and Mid-South, even though          14:59:52

8    International Paper has provided sworn discovery       14:59:56

9    responses that it has not received such benefits?     14:59:59

10       A  Well, I'm referring to the overall            15:00:05

11   investigation is still ongoing.                       15:00:08

12       Q  Right.  But what specifically in the          15:00:11

13   investigation is investigating that point such        15:00:14

14   that you won't concede that IP is telling the         15:00:17

15   truth whenever it tells you that it did not           15:00:22

16   receive tax benefits from doing business with DGS     15:00:25

17   and Mid-South?                                        15:00:29

18       A  I don't recall on that particular item.       15:00:41

19       MR. SYLVESTER:  Okay.  Why don't we take a       15:00:46

20   short break.  We've been going for about an hour      15:00:48

21   and 15 minutes.  Come back in 10 minutes?            15:00:50

22       THE VIDEOGRAPHER:  We are going off the          15:00:53

23   record.  The time is 3:00 p.m.                        15:00:55

24       (Off the record.)                                15:00:56

25       THE VIDEOGRAPHER:  We are back on the            15:12:27

1   record.  The time is 3:12 p.m.                    15:12:28

2   BY MR. SYLVESTER:                                 

3      Q  Ms. Ellis, I put before you what we've      15:12:31

4   marked as Exhibit 22.                             15:12:34

5         (Marked for identification Exhibit 22,      15:12:36

6   Beazley Insurance Company's Responses to          15:12:39

7   Plaintiff's Second Set of Interrogatories.)       15:12:42

8      Q  And it's entitled:  Defendant Beazley       15:12:37

9   Insurance Company's Responses to Plaintiff's      15:12:39

10  Second Set of Interrogatories.                    15:12:42

11        Do you have those before you?               15:12:43

12     A  Yes, I do.                                   15:12:46

13     Q  And I believe you were referring to these   15:12:47

14  as a document that you had in hard copy there at  15:12:51

15  your desk when we were discussing meetings and    15:12:55

16  communications between Beazley and representatives 15:12:59

17  of Jag and Shiv.                                  15:13:02

18        Do you recall that discussion we had?       15:13:04

19     A  Yes.                                        15:13:07

20     Q  So, if you would, turn to the page 5 of     15:13:08

21  this document, page numbered 5 of Exhibit 22, and 15:13:13

22  specifically the paragraph that begins discussing 15:13:19

23  the different telephone calls that Beazley        15:13:24

24  representatives had with representatives of Jag   15:13:29

25  and Shiv.                                         15:13:38

1        Do you have that paragraph on page 5?          15:13:38

2   There were also four telephone calls?               15:13:41

3     A  Yes, I see that paragraph.                      15:13:45

4     Q  Okay.  So, each one of these phone calls        15:13:49

5   took place, it looks like, in 2021.  The first one   15:13:51

6   on June 16th, 2021, Caralisa Connell, who is at      15:13:57

7   the Clark Hill firm, and Howard Mannis, which is     15:14:05

8   counsel for one of the defendants then, Jag, had a   15:14:08

9   phone conversation.                                  15:14:14

10        And then secondly, on June 21, 2021,           15:14:15

11  Ms. Connell and Michael Keeley of the Clark Hill     15:14:21

12  firm, as well as Delaney Beier of the Clark Hill     15:14:25

13  firm, spoke again with Mr. Mannis about this         15:14:30

14  claim.                                               15:14:32

15        And then the third call is listed at           15:14:33

16  July 20th, 2021, where Mr. Keeley and Ms. Caralisa   15:14:37

17  Connell spoke with Mr. Mannis again and other        15:14:48

18  lawyers for Jag and Shiv regarding a July 13th       15:14:49

19  meeting and additional requests for information.     15:14:52

20        And then on September 29th, 2021,              15:14:54

21  Ms. Connell and Mr. Mannis discussed the insured's   15:14:59

22  investigation of IP's claim and settlement           15:15:04

23  discussions relating to IP's claims against          15:15:07

24  Mr. Jag and Mr. Kumar.                               15:15:11

25        Do you see those references to those           15:15:12

| | |
|---|---|
| 1 | telephone conversations between your counsel and | 15:15:16 |
| 2 | counsel for Jag and Shiv? | 15:15:18 |
| 3 | A  Yes, I do. | 15:15:21 |
| 4 | Q  None of those telephone calls were | 15:15:22 |
| 5 | revealed to International Paper at or about the | 15:15:28 |
| 6 | time those calls were taking place, right? | 15:15:30 |
| 7 | A  Not to my knowledge. | 15:15:34 |
| 8 | Q  And then it says there was a meeting on | 15:15:35 |
| 9 | July 13th, 2021, in Memphis with respect to dates, | 15:15:40 |
| 10 | methods and contents -- oh, I'm sorry.  Strike | 15:15:45 |
| 11 | that. | |
| 12 | It says that -- but there was a meeting on | 15:15:49 |
| 13 | July 13th in Memphis in which Beazley's coverage | 15:15:52 |
| 14 | counsel, Mr. Keeley and Ms. Connell from Clark | 15:15:56 |
| 15 | Hill, and Mr. Jagannath's attorneys, Mr. Mannis | 15:16:00 |
| 16 | and Mr. Simpson, and Mr. Kumar's attorney, | 15:16:04 |
| 17 | Mr. Ballin, all attended that meeting, right? | 15:16:08 |
| 18 | A  Yes. | 15:16:13 |
| 19 | Q  And, again, the contents of that meeting | 15:16:14 |
| 20 | were not revealed to International Paper at the | 15:16:17 |
| 21 | time the meeting took place, right? | 15:16:21 |
| 22 | A  Not to my knowledge. | 15:16:23 |
| 23 | Q  And if you go back to your notes in your | 15:16:24 |
| 24 | claim notes on Exhibit 18, page numbered 18, you | 15:16:35 |
| 25 | make reference to at least the meeting. | 15:16:39 |

1        Tell me when you have gotten there.  It's          15:16:44

2    the page numbered 18 at the bottom, which is Bates         15:16:48

3    number ending in 303.  You have a note of August          15:16:57

4    5th, 2021, at 3:44 p.m.                                    15:17:00

5        Do you see that?                                 15:17:02

6      A  Yes.                                         15:17:03

7      Q  Okay.  And your prior note, by the way, is  15:17:06

8    in February of 2021.                                       15:17:08

9        So, when these calls are taking place in        15:17:10

10   June of 2021, and the meeting in July of 2021, you        15:17:20

11   didn't enter a note until August 5th of 2021; is          15:17:23

12   that right?                                                15:17:27

13       There is nothing in between February 10th,      15:17:27

14   2021, and August 5th, 2021, correct?                      15:17:29

15     A  In the notes, correct.                      15:17:35

16     Q  And so, is your first internal note about   15:17:36

17   these communications taking place unknown to              15:17:47

18   International Paper between Beazley's counsel and          15:18:05

19   Jag and Shiv's counsel, that first reference in           15:17:52

20   your note is August 5th, 2021; is that right?             15:17:55

21       MR. MURPHY:  Objection as to form.              15:17:58

22       You can answer.                                 15:17:59

23     A  From my note?                               15:18:11

24     Q  Yes.  Is that your first note talking       15:18:12

25   about all of these communications between your            15:18:14

1    counsel and Jag and Shiv's counsel unbeknownst to          15:18:16

2    International Paper?                                        15:18:20

3        MR. MURPHY:  Objection as to form.                     15:18:21

4        You can answer.                                        15:18:23

5    A   That's the first note entry that I made.               15:18:26

6    Q   Okay.  And by the way, just for chronology             15:18:30

7    purposes, I see the February 2021 note is listed           15:18:43

8    by Antonio Trotta, and then you're listing a note          15:18:47

9    August 5th of 2021, right?                                 15:18:52

10   A   Yes, that's the date of the note.                      15:18:55

11   Q   And if you go to the next page, it shows               15:18:58

12   you entering a note in September of 2020, and              15:19:03

13   obviously this -- these claim file notes go in             15:19:10

14   reverse chronological order.  So, you entered a            15:19:13

15   note September 2, 2020.  And then it shows notes           15:19:20

16   from Antonio Trotta from November of 2020, through         15:19:25

17   February of 2021.                                          15:19:30

18       Is that a period when he had taken over                15:19:32

19   responsibility for the claim, from you, and then           15:19:37

20   it was given back to you sometime between February         15:19:40

21   and August of 2021?                                        15:19:43

22   A   Yes, that's correct.                                   15:19:47

23   Q   Does that refresh your recollection as to              15:19:48

24   when specifically you took over for Mr. Trotta,            15:19:51

25   the second time when he left the company?                  15:19:56

1       Do you remember when in 2021 that                15:20:01

2   occurred?                                                    15:20:03

3     A  Well, as stated previously, it was either      15:20:04

4   July or August of 2021.  I don't have the exact             15:20:08

5   date, but that was the time period of when he               15:20:13

6   left, approximately.                                        15:20:16

7     Q  Okay.  So, in your August 5th, 2021, note,    15:20:18

8   halfway through it, after you say that the insured          15:20:24

9   has submitted 130,000 documents for review to               15:20:29

10  date, you said, quote:  We have meet -- I think             15:20:33

11  you meant "met" -- with the principal and his               15:20:36

12  attorney June 2021.                                         15:20:40

13      Now, I think you testified earlier that's      15:20:41

14  a mistake.  There was no meeting with Jag himself,          15:20:44

15  just his attorneys; is that correct?                        15:20:48

16      MR. MURPHY:  Objection as to form.            15:20:49

17      You can answer.                               15:20:50

18    A  I -- I don't recall if it was him             15:20:53

19  directly, but I believe it was with just his               15:20:57

20  attorneys.  I don't recall if he was present, as            15:21:01

21  well.                                                       15:21:03

22    Q  Okay.  But it goes on to say:  And they       15:21:04

23  have alleged the diversity vendor program with the          15:21:07

24  insured may not have included pricing                       15:21:10

25  considerations and that same only needed to                 15:21:13

| | | |
|---|---|---|
| 1 | provide value. | 15:21:16 |
| 2 | What did you mean by that note? | 15:21:19 |
| 3 | A  Hold on a second.  Which date of the note | 15:21:22 |
| 4 | are you -- | 15:21:44 |
| 5 | Q  August 5th, 2021. | 15:21:45 |
| 6 | A  Still the August. | 15:21:47 |
| 7 | Q  After you mentioned that the insured | 15:21:48 |
| 8 | submitted a proof of loss for 32 million and the | 15:21:50 |
| 9 | insured has submitted 130,000 documents for | 15:21:53 |
| 10 | review, you said:  We have meet with the principal | 15:21:56 |
| 11 | and his attorney June 2021, and they have alleged | 15:21:59 |
| 12 | the diversity vendor program with the insured may | 15:22:04 |
| 13 | not have included pricing considerations and that | 15:22:07 |
| 14 | same only needed to provide value. | 15:22:10 |
| 15 | Do you see that? | 15:22:12 |
| 16 | A  Yes. | 15:22:15 |
| 17 | Q  What did you mean by that?  What were they | 15:22:16 |
| 18 | telling you? | 15:22:20 |
| 19 | A  That was coming from an update provided by | 15:22:44 |
| 20 | our coverage counsel at the time. | 15:22:50 |
| 21 | Q  And that was Clark Hill, Mr. Keeley and | 15:22:52 |
| 22 | Ms. Connell; is that right? | 15:22:55 |
| 23 | A  Yes.  Well, as far as relaying what | 15:22:59 |
| 24 | occurred during the meetings or was presented | 15:23:04 |
| 25 | during the meetings. | 15:23:07 |

1    Q   Okay.  Well, what did you understand that          15:23:09
2  to mean when you write that they, referring to Jag        15:23:11
3  and his representatives, have alleged the                 15:23:16
4  diversity vendor program with the insured may not         15:23:19
5  have included pricing considerations and that same        15:23:22
6  only needed to provide value?                             15:23:25
7    A   Well, at the time, we had limited                   15:23:33
8  information on that, so I was just updating the            15:23:34
9  file note based on what was presented at that             15:23:40
10 time.                                                     15:23:43
11   Q   But what kind of value did they say that            15:23:48
12 diverse suppliers needed to provide under the             15:23:50
13 diversity vendor program at International Paper?           15:23:54
14   A   I don't recall how value was defined.               15:23:57
15   Q   You go on to say in your note:  That same           15:24:04
16 indicated they could provide information to               15:24:09
17 support same.                                             15:24:11
18       What did you mean by that?                          15:24:13
19   A   It's referring back to value, but what              15:24:15
20 that would have entailed, we didn't have that             15:24:24
21 information.                                               15:24:27
22   Q   Well, what information was being offered            15:24:29
23 by Jag or his representatives to support what they        15:24:34
24 were saying about having to provide value?                15:24:39
25   A   Well, the type or -- the type of value --           15:24:45

| | | |
|---|---|---|
| 1 | Q   What -- | 15:24:51 |
| 2 | A   -- wasn't defined. | 15:24:51 |
| 3 | Q   Well, what information were they promising | 15:24:53 |
| 4 | to provide? | 15:24:56 |
| 5 | A   I don't recall the specifics of what | 15:24:59 |
| 6 | information they indicated they may have had. | 15:25:01 |
| 7 | Q   Well, what information did they provide to | 15:25:07 |
| 8 | you? | 15:25:10 |
| 9 | A   I don't recall what was provided with | 15:25:13 |
| 10 | respect to that item. | 15:25:17 |
| 11 | Q   Well, when you wrote this, what did you | 15:25:24 |
| 12 | understand that they were promising to provide to | 15:25:26 |
| 13 | support their position that Jag was not a thief? | 15:25:29 |
| 14 | A   Well, as -- as stated in my note, | 15:25:37 |
| 15 | something to demonstrate value.  But the type | 15:25:40 |
| 16 | of -- of alleged value, purported value, I didn't | 15:25:44 |
| 17 | have that information at the time I wrote the | 15:25:49 |
| 18 | note. | 15:25:53 |
| 19 | Q   Did they ever provide you that information | 15:25:53 |
| 20 | to support the value that they were allegedly | 15:25:55 |
| 21 | providing through DGS and Mid-South? | 15:26:00 |
| 22 | A   I don't recall specifically what, if | 15:26:06 |
| 23 | anything, they provided. | 15:26:12 |
| 24 | Q   Let's go back to Exhibit 22, your answers | 15:26:13 |
| 25 | to the second set of interrogatories.  And go to | 15:26:18 |

| 1 | page 5, if you would. | 15:26:29 |
| 2 | Do you see at the bottom of page 5 again | 15:26:39 |
| 3 | the reference to the meeting that took place, the | 15:26:40 |
| 4 | secret meeting on July 13th, 2021, between | 15:26:42 |
| 5 | Beazley's counsel and Jag and Shiv's counsel that | 15:26:46 |
| 6 | International Paper was not advised about? | 15:26:51 |
| 7 | A  I see the reference to the meeting. | 15:26:55 |
| 8 | Q  And then it says at the top of page 6:  At | 15:27:03 |
| 9 | the meeting, the parties discussed... | 15:27:05 |
| 10 | Do you see that on the second and third | 15:27:07 |
| 11 | line? | 15:27:10 |
| 12 | A  Yes. | 15:27:12 |
| 13 | Q  It says:  Mr. Jagannath's employment at | 15:27:13 |
| 14 | IP, including his background at the company, | 15:27:17 |
| 15 | generally, and more specifically, relating to the | 15:27:20 |
| 16 | allegations that are the subject of the claim, | 15:27:23 |
| 17 | including IP's diversity supplier program, the | 15:27:26 |
| 18 | relationship between Mr. Jagannath and Mr. Kumar, | 15:27:31 |
| 19 | and Diversified Global Sourcing, Inc., and | 15:27:34 |
| 20 | Mid-South Diversity Group retention as diverse | 15:27:38 |
| 21 | suppliers, IP's agreements with Mr. Kumar, DGS and | 15:27:41 |
| 22 | Mid-South, Mr. Jagannath's draft counterclaim in | 15:27:45 |
| 23 | International Paper versus Sitaraman Jagannath, et | 15:27:51 |
| 24 | al. | 15:27:55 |
| 25 | Do you see that? | 15:27:55 |

| | |
|---|---|
| 1 | A  I do. | 15:27:57 |
| 2 | Q  Is that where Beazley got a copy of the | 15:27:58 |
| 3 | draft counterclaim that Jag's lawyers were | 15:28:01 |
| 4 | proposing to file in the civil lawsuit? | 15:28:08 |
| 5 | A  I don't recall if it was provided at the | 15:28:20 |
| 6 | meeting, but it was provided -- | 15:28:22 |
| 7 | Q  And, again -- | 15:28:27 |
| 8 | A  -- draft counterclaim. | 15:28:29 |
| 9 | Q  Right.  Draft counterclaim. | 15:28:30 |
| 10 | And then it says:  And the role of other | 15:28:32 |
| 11 | diverse suppliers at IP, like KBG Technologies and | 15:28:37 |
| 12 | Chou Chemicals, which counsel for Mr. Jagannath | 15:28:44 |
| 13 | and Mr. Kumar claim to operate in a similar manner | 15:28:47 |
| 14 | as DGS and Mid-South. | 15:28:47 |
| 15 | Do you see that? | 15:28:50 |
| 16 | A  I do. | 15:28:50 |
| 17 | Q  And then finally, it says:  Beazley did | 15:28:51 |
| 18 | not reach any conclusion regarding the accuracy | 15:28:53 |
| 19 | and reliability of the information obtained during | 15:28:56 |
| 20 | the aforementioned emails, calls and meeting. | 15:28:58 |
| 21 | Do you see that statement? | 15:28:59 |
| 22 | A  I do. | 15:29:03 |
| 23 | Q  And that meeting took place, as is | 15:29:03 |
| 24 | reflected in this interrogatory answer, on | 15:29:08 |
| 25 | July 13th, 2021, which is some two and a half | 15:29:12 |

1  years ago.                                                    15:29:18

2          So, here we are now in December of 2023.             15:29:19

3  Has Beazley now reached conclusions regarding the             15:29:23

4  accuracy and reliability of the information that              15:29:27

5  was relayed to them by Mr. Jag and Mr. Shiv's                 15:29:30

6  lawyers at that meeting?                                      15:29:35

7      A  With respect to what in particular?                    15:29:48

8      Q  The information that's listed here about               15:29:52

9  IP's agreements, about the relationships between              15:29:59

10 Mr. Jagannath and Mr. Kumar and DGS and Mid-South             15:30:03

11 about the role of other diverse suppliers.                    15:30:07

12         Have you now reached any conclusions about            15:30:11

13 whether Jag and Shiv were giving you accurate                 15:30:14

14 information through their lawyers when you had the             15:30:19

15 secret meeting in July of 2021?                               15:30:21

16     A  Beazley hasn't made a final determination              15:30:26

17 on that particular item.                                      15:30:31

18     Q  If you go back a page, at the bottom of                15:30:35

19 page 5, I guess, there's a middle paragraph, the              15:30:41

20 last sentence of the middle paragraph on page 5.              15:30:47

21 And, again, we're looking at Exhibit 22, these                15:30:50

22 interrogatory answers of Beazley.  It says:  On               15:30:52

23 September 29th, 2021 -- and this is after the                 15:30:58

24 meeting -- Ms. Connell and Mr. Mannis discussed               15:31:01

25 the insured's investigation of IP's claim and                 15:31:05

1    settlement discussions relating to IP's claims          15:31:09

2    against Mr. Jagannath and Mr. Kumar.                    15:31:12

3         Do you see that?                                   15:31:15

4    A  I do.                                                15:31:18

5    Q  What settlement discussions did Beazley's            15:31:19

6    lawyers have with Jag's lawyer, Mr. Mannis, in          15:31:23

7    connection with IP's claim?                             15:31:30

8    A  I don't recall the -- any details of a               15:31:36

9    settlement discussion.                                  15:31:49

10   Q  Well, do you recall generally what were              15:31:52

11   they talking about when it references settlement        15:31:55

12   discussions being discussed?                            15:31:57

13   A  I don't recall with any specificity that             15:32:07

14   there were -- with any -- that there were any           15:32:10

15   settlement discussions.                                 15:32:14

16   Q  Okay.  Can you go back to your claim                 15:32:18

17   notes, Exhibit 18, on page 14, tell me when you're      15:32:20

18   there.                                                  15:32:38

19   A  I'm on page 14.                                      15:32:38

20   Q  The bottom of page 14, there's a note                15:32:40

21   dated October 21, 2021, that you entered into the       15:32:44

22   claim notes.  Do you see that?                          15:32:47

23   A  Yes.                                                 15:32:51

24   Q  And if you continue to the next page after           15:32:57

25   all the blacked-out portion of that note, there's       15:33:03

1    an unblacked-out portion of your note on            15:33:07

2    October 21.                                          15:33:10

3         Do you see it?  It says:  We have also         15:33:11

4    obtained a copy...                                   15:33:15

5         Do you see that?                                15:33:20

6    A  On page 14?                                       15:33:21

7    Q  15.  We're now looking at page 15.  It's a        15:33:30

8    continuation of your October --                      15:33:35

9    A  Yes, I see it.                                     15:33:36

10   Q  It's a continuation of your note dated            15:33:37

11   October 21, 2021.  It says:  We have also obtained   15:33:40

12   a copy of the countercomplaint filed by Jag, the     15:33:47

13   reported dishonest employee, against IP.             15:33:51

14        Okay.  So, as of that date, October of          15:33:53

15   '21, you had this draft counterclaim in your         15:33:57

16   hands, right?                                         15:34:01

17   A  Yes.                                               15:34:06

18   Q  And you didn't show it to International            15:34:07

19   Paper when you got it, right?                         15:34:08

20   A  We did not share the draft with them.              15:34:12

21   Q  Did you agree --                                   15:34:14

22        (Indiscernible crosstalk.)                       15:34:16

23   Q  Did you agree with Jag's lawyers that, in          15:34:17

24   order to get it, you would not show it to             15:34:20

25   International Paper?                                   15:34:22

1        Did you have that agreement with them?                    15:34:23

2     A  I don't recall if we had an agreement to                  15:34:30

3  share a draft complaint with the insured.                       15:34:32

4     Q  But is that why you didn't share it with                  15:34:37

5  IP, your policyholder, because you promised Jag                 15:34:39

6  and Shiv that if they showed it to you, you                     15:34:43

7  wouldn't show it to IP; was that the deal?                      15:34:46

8     A  I don't -- I don't recall if that was                     15:34:50

9  the -- the rationale.                                           15:34:54

10     Q  Your note says:  It alleges -- "it"                       15:34:59

11  referring to the countercomplaint -- the                        15:35:01

12  following, among other item:  IP's decision to use              15:35:04

13  DGS as an IP supplier and/or diversity supplier                 15:35:07

14  predated Mr. Jagannath having a position at IP in               15:35:12

15  which he had any input or influence over IP                     15:35:16

16  utilizing any diversity supplier, including DGS.                15:35:19

17        Do you believe that to be true?                          15:35:23

18     A  I don't recall the exact dates of his                     15:35:27

19  employment capacities with IP and when either DGS               15:35:34

20  or Mid-South were part of their diversity program.              15:35:41

21     Q  Okay.  It goes on to say:  Thus, as of the                15:35:47

22  time IP decided to utilize DGS after fully vetting              15:35:51

23  and certifying that DGS was capable of meeting                  15:35:56

24  IP's diversity supplier company needs,                          15:36:00

25  Mr. Jagannath was not in a position to have played              15:36:01

1    any role and, therefore, could not have played any          15:36:03

2    role in the decision-making process.          15:36:06

3          That's going on to page 16.          15:36:15

4          Do you believe that information now after          15:36:17

5    you have seen all of the discovery in this case,          15:36:21

6    that Jag had no role in the decision-making          15:36:24

7    process to do business with DGS?          15:36:28

8      A  He was not the sole decision-maker.          15:36:38

9      Q  Right.  But do you -- do you believe that          15:36:43

10   he had no role in that decision making?  That's          15:36:51

11   what he's saying here in your note.  Mr. Jagannath          15:36:57

12   was not in the position to have played any role          15:37:00

13   and, therefore, could not have played any role in          15:37:03

14   that decision-making process.          15:37:06

15         Do you believe that based on your          15:37:07

16   investigation?          15:37:10

17     A  Well, that statement is referring back to          15:37:32

18   the previous sentences in that note.          15:37:37

19     Q  Which previous sentence?          15:37:42

20     A  The sentences beginning with "thus, as          15:37:51

21   of"...          15:37:58

22     Q  Thus, as of the time IP decided to utilize          15:37:58

23   DGS after fully vetting and certifying that DGS          15:38:04

24   was capable of meeting IP's diversity supplier          15:38:10

25   company's needs, Mr. Jagannath was not in a

1    position to have played any role.                    15:38:12

2         Is that what you're talking about?             15:38:14

3    A  Yes.                                              15:38:16

4    Q  Do you believe that DGS was fully vetted          15:38:17

5    and certified, that DGS was capable of meeting       15:38:22

6    IP's diversity supplier company needs?              15:38:26

7    A  We understand that they were part of the          15:38:31

8    insured's diversity program.                         15:38:34

9    Q  Right.  You saw evidence that they were           15:38:36

10   certified as a diversity supplier, right?            15:38:39

11   A  That they were part of the -- that they           15:38:44

12   were part of the insured's diversity supplier        15:38:49

13   program, yes.                                        15:38:52

14   Q  Right.  But you heard testimony that, in          15:38:53

15   terms of determining whether they were qualified     15:38:56

16   to meet the needs of any particular contract, that   15:38:58

17   was up to the buyer to decide that.  That was not    15:39:01

18   up to the diversity supplier program to decide       15:39:04

19   that.                                                15:39:07

20        Do you recall that testimony in the record      15:39:08

21   of this case?                                        15:39:10

22   A  I don't recall that specifically.                 15:39:14

23   Q  Well, if that's true, then Jag is not             15:39:18

24   telling the truth that he had no role in             15:39:21

25   determining whether they were capable of             15:39:24

| | | |
|---|---|---|
| 1 | satisfying contractual requirements; isn't that | 15:39:28 |
| 2 | right? | 15:39:54 |
| 3 | A  Can you repeat your question, please? | 15:39:54 |
| 4 | Q  If the only thing that IP diversity | 15:39:57 |
| 5 | supplier program certified was that DGS was a | 15:40:00 |
| 6 | diverse supplier, but not that it had the | 15:40:06 |
| 7 | capability of meeting any particular needs, and | 15:40:08 |
| 8 | that that was the decision of the buyer for IP, | 15:40:12 |
| 9 | which in this case was Jag, then his statement | 15:40:17 |
| 10 | that he had no role in determining whether DGS was | 15:40:21 |
| 11 | capable of meeting company needs is false, isn't | 15:40:25 |
| 12 | it? | 15:40:28 |
| 13 | A  I can't really comment on the accuracy of | 15:40:46 |
| 14 | his previous representations with respect to Jag. | 15:40:50 |
| 15 | Q  Okay.  Go back to Exhibit 7, which were | 15:40:56 |
| 16 | your interrogatory answers to the first set of | 15:41:04 |
| 17 | interrogatories.  Then page 10 is where I'm at on | 15:41:07 |
| 18 | Exhibit 7. | 15:41:23 |
| 19 | Do you have that? | 15:41:24 |
| 20 | A  Yes, I do. | 15:41:26 |
| 21 | Q  Well, let me go back.  I'm sorry, go back | 15:41:27 |
| 22 | to page 9.  Remember when we talked about | 15:41:43 |
| 23 | significant benefits allegedly provided by DGS and | 15:41:46 |
| 24 | Mid-South for doing business with IP? | 15:41:50 |
| 25 | Do you recall that discussion on page 9, | 15:42:02 |

| | | |
|---|---|---|
| 1 | where it said, quote:  IP received significant | 15:42:05 |
| 2 | benefits from doing business with diversity or | 15:42:08 |
| 3 | minority-owned businesses, including DGS and | 15:42:12 |
| 4 | Mid-South, regardless of the goods or services | 15:42:16 |
| 5 | provided by those companies. | 15:42:18 |
| 6 | Do you see that statement by Beazley in | 15:42:22 |
| 7 | your interrogatory answer? | 15:42:23 |
| 8 | A  Yes. | 15:42:24 |
| 9 | Q  So, if this arrangement was so beneficial | 15:42:25 |
| 10 | for International Paper to do business with DGS | 15:42:31 |
| 11 | and Mid-South, why did International Paper fire | 15:42:35 |
| 12 | Jag when it learned about his doing business with | 15:42:38 |
| 13 | his brother's company at DGS and Mid-South? | 15:42:42 |
| 14 | A  My understanding was due to his failure to | 15:43:02 |
| 15 | disclose the relationship. | 15:43:12 |
| 16 | Q  Okay.  Then, if it was so beneficial for | 15:43:19 |
| 17 | IP to do business with DGS and Mid-South, why did | 15:43:23 |
| 18 | IP cut off immediately doing business with DGS and | 15:43:27 |
| 19 | Mid-South once it found out about this arrangement | 15:43:33 |
| 20 | between Jag and DGS and Mid-South? | 15:43:36 |
| 21 | Even if they fired Jag, why didn't they | 15:43:42 |
| 22 | keep doing business with DGS and Mid-South if it | 15:43:46 |
| 23 | was so beneficial to International Paper? | 15:43:50 |
| 24 | MR. MURPHY:  Objection as to form. | 15:43:52 |
| 25 | A  I can't speculate on their rationale. | 15:43:54 |

|   |   |   |
|---|---|---|
| 1 | Q   Why did they sue DGS and Mid-South?  Why | 15:43:57 |
| 2 | did International Paper sue DGS and Mid-South when | 15:44:01 |
| 3 | it found out about this arrangement? | 15:44:05 |
| 4 | Does that sound like something | 15:44:07 |
| 5 | International Paper would do if it thought that | 15:44:10 |
| 6 | the arrangement was so beneficial to itself? | 15:44:11 |
| 7 | MR. MURPHY:  Objection as to form. | 15:44:15 |
| 8 | You can answer. | 15:44:16 |
| 9 | A   I can't speak to the rationale of why the | 15:44:17 |
| 10 | insured chose to do that. | 15:44:22 |
| 11 | Q   Well, does that sound like a company | 15:44:26 |
| 12 | that's happy with all of the benefits it's getting | 15:44:36 |
| 13 | with doing business with DGS and Mid-South, that | 15:44:38 |
| 14 | once it founds out about this arrangement between | 15:44:41 |
| 15 | Jag and his brother's companies, that they fire | 15:44:45 |
| 16 | Jag, that they cut off business with DGS and | 15:44:47 |
| 17 | Mid-South and that they file suit against them? | 15:44:50 |
| 18 | Does that sound like a company that thinks | 15:44:52 |
| 19 | it's getting a beneficial relationship by doing | 15:44:54 |
| 20 | business with Mid-South and DGS? | 15:44:56 |
| 21 | MR. MURPHY:  Objection as to form, | 15:44:59 |
| 22 | compound, asked and answered. | 15:45:00 |
| 23 | A   Again, I can't speak to International | 15:45:03 |
| 24 | Paper's rationale. | 15:45:08 |
| 25 | Q   I know you can't speak to their rationale, | 15:45:13 |

1    but doesn't it sound to you, given your degrees in        15:45:16

2    psychology and sociology and criminology, that a          15:45:20

3    company that was having such a beneficial                 15:45:24

4    relationship with DGS and Mid-South, that once            15:45:26

5    they found out about the arrangement between Jag          15:45:30

6    and his brother's companies, that they would file        15:45:33

7    suit against them, cut off all contracts with them       15:45:38

8    and alert the criminal authorities and file a            15:45:43

9    criminal complaint?                                       15:45:46

10        Does that sound like a company that              15:45:47

11   thought it was having a very mutually beneficial         15:45:49

12   relationship with DGS and Mid-South?                     15:45:51

13       MR. MURPHY:  Objection as to form, calls           15:45:55

14   for speculation.                                          15:45:56

15    A  I can't speak to the insured's corporate            15:46:01

16   mind-set with regard to that.                             15:46:06

17    Q  Well, what do you interpret from those             15:46:09

18   actions in your investigation of the claim to           15:46:11

19   determine whether, in fact, this was really theft       15:46:14

20   or was ordinary course of business as Jag alleged?      15:46:18

21       MR. MURPHY:  Objection as to form.                 15:46:24

22    A  Well, I know the criminal matter was no            15:46:31

23   longer being pursued and the civil case has been        15:46:33

24   dismissed.                                                15:46:37

25    Q  Right.  And that's as a result of                 15:46:44

| | | |
|---|---|---|
| 1 | settlement and Jag and Shiv's agreement to pay $15 | 15:46:46 |
| 2 | million back to International Paper. | 15:46:50 |
| 3 | But I'm talking about the initial actions | 15:46:54 |
| 4 | that IP took back in 2019 when it learned that Jag | 15:46:57 |
| 5 | was doing business with his brother's company, | 15:47:03 |
| 6 | DGS, and his brother's other company, Mid-South. | 15:47:06 |
| 7 | Does the actions of firing Jag, | 15:47:11 |
| 8 | terminating those contracts with DGS and | 15:47:14 |
| 9 | Mid-South, filing a criminal complaint, filing a | 15:47:18 |
| 10 | civil action, do those sound like the actions of a | 15:47:21 |
| 11 | company that thought it had a good and beneficial | 15:47:25 |
| 12 | relationship from doing business with DGS and | 15:47:29 |
| 13 | Mid-South? | 15:47:35 |
| 14 | MR. MURPHY:  Same objection, asked and | 15:47:36 |
| 15 | answered. | 15:47:39 |
| 16 | A  I can't speculate on that item. | 15:47:39 |
| 17 | Q  Well, do you take those facts into | 15:47:42 |
| 18 | consideration when you're determining whether this | 15:47:44 |
| 19 | was theft on the one hand, as International Paper | 15:47:46 |
| 20 | contends, or whether it was just the ordinary | 15:47:50 |
| 21 | course of business, as Jag contends? | 15:47:53 |
| 22 | Do those actions inform you in your | 15:47:57 |
| 23 | investigation as to who's telling the truth and | 15:47:59 |
| 24 | who's lying? | 15:48:02 |
| 25 | MR. MURPHY:  Observation as to form. | 15:48:05 |

1      A   Again, they are both -- one has been          15:48:10

2   dismissed and one is not being pursued with regard   15:48:13

3   to the criminal investigation and the civil -- and   15:48:16

4   the civil action that was filed.                     15:48:21

5      Q   Right.  And do you know why they are not       15:48:25

6   being pursued?                                       15:48:28

7      A   Because the insured provided a full            15:48:30

8   release in the settlement agreement.                 15:48:36

9      Q   Right.  And that release was in exchange       15:48:40

10  for payment of $15 million from Jag and Shiv back    15:48:42

11  to the company; isn't that right?                    15:48:47

12     A   That was the approximate number from the      15:48:50

13  settlement agreement, yes.                           15:48:54

14     Q   Well, that's the exact number, isn't it,      15:48:55

15  from the settlement agreement?                       15:48:57

16     A   Well, can you just refer to the document?     15:49:02

17  I don't want to misspeak on the number, but...       15:49:04

18     Q   Well, we've looked at it already.  I don't    15:49:09

19  want to spend time digging it up again.              15:49:11

20         But, again, are you trying to make a          15:49:14

21  determination -- you said that your investigation    15:49:18

22  is continuing.                                       15:49:19

23         Is Beazley trying to make a determination     15:49:20

24  whether this is employee theft, on the one hand,     15:49:23

25  versus order course of business, as Jag contends?    15:49:25

1     Is that what you're investigating right          15:49:29

2   now and you haven't reached a conclusion yet?      15:49:31

3       MR. MURPHY:  Objection as to form.             15:49:33

4     A  Our investigation is we're determining        15:49:38

5   whether there was an employee theft that occurred  15:49:41

6   with respect to the insurance commercial crime     15:49:45

7   policy.                                            15:49:47

8     Q  Right.  And Jag told you in the secret        15:49:50

9   meetings that he didn't do that, that he was just  15:49:52

10  engaged in the ordinary course of business with    15:49:55

11  DGS and Mid-South; isn't that he told you?         15:49:58

12      MR. MURPHY:  Objection to form and your        15:50:00

13  continued reference to, quote, "secret," unquote,  15:50:02

14  meetings.                                          15:50:05

15    A  Can you repeat your question, please?         15:50:14

16    Q  When you had the undisclosed meeting with     15:50:20

17  Jag and Shiv's lawyers, back in July of 2021,      15:50:23

18  wasn't Jag and Shiv trying to tell your lawyers    15:50:30

19  that this was not theft from International Paper,   15:50:33

20  but it was ordinary course of business            15:50:38

21  transactions between IP on the one hand and DGS    15:50:41

22  and Mid-South on the other?                        15:50:47

23    A  That's what was alleged.                      15:50:56

24    Q  And my question is, when you're doing your    15:51:01

25  investigation and you're looking at all of the     15:51:05

| | |
|---|---|
| 1 | facts to determine is this employee theft or is | 15:51:06 |
| 2 | this ordinary course of business, do you think | 15:51:10 |
| 3 | that International Paper would have fired Jag, | 15:51:14 |
| 4 | filed a civil and criminal complaint against Jag | 15:51:18 |
| 5 | and Shiv and Mid-South and DGS and terminated all | 15:51:20 |
| 6 | contracts with DGS and Mid-South immediately if | 15:51:25 |
| 7 | this were just ordinary course of business for IP | 15:51:28 |
| 8 | that had been approved by Jag and his superiors? | 15:51:32 |
| 9 | MR. MURPHY:  Objection as to form, vague, | 15:51:36 |
| 10 | compound. | 15:51:38 |
| 11 | You can answer, if you can. | 15:51:39 |
| 12 | A  I can't speculate.  I can't -- cannot | 15:51:43 |
| 13 | speculate on the insured's rationale for taking | 15:51:47 |
| 14 | the actions that you just laid out. | 15:51:52 |
| 15 | Q  I'm not asking you to speculate.  I'm | 15:51:57 |
| 16 | asking you, how do you process that information as | 15:52:00 |
| 17 | a claims handler who has to make a decision on who | 15:52:03 |
| 18 | to believe? | 15:52:07 |
| 19 | Do you believe your policyholder who says | 15:52:09 |
| 20 | they are victim of theft, or do you believe the | 15:52:11 |
| 21 | alleged thief? | 15:52:14 |
| 22 | You have to make some credibility | 15:52:15 |
| 23 | determinations, don't you, as to who's telling the | 15:52:17 |
| 24 | truth and who's lying?  Don't you?  Isn't that | 15:52:20 |
| 25 | part of what you do? | 15:52:22 |

1      MR. MURPHY:  Objection as to form.  Which          15:52:23

2  question do you want her to answer?                    15:52:26

3      Q  The question is, don't you make a               15:52:30

4  credibility determination as between your policy       15:52:33

5  on the one hand and the alleged thief, in this         15:52:35

6  case Jag on the other, in determining whether this     15:52:38

7  is employee theft or whether it's just ordinary        15:52:40

8  course of business, as Jag alleges?                    15:52:43

9      A  Well, we would conduct our -- a claim           15:52:51

10  investigation for determining an employee-            15:52:55

11  dishonesty matter under the policy to see if one      15:52:58

12  is actually -- if -- if it has actually occurred.     15:53:04

13      Q  Can you turn to page 11 of Exhibit 7?          15:53:09

14      This is, again, further answer to                 15:53:22

15  interrogatory number 2 in your answers to            15:53:23

16  interrogatories.                                      15:53:27

17      A  You said page 11?                              15:53:29

18      Q  Bottom paragraph.                              15:53:30

19      A  You said page 11?                              15:53:31

20      Q  Yes, page 11.  Yes.  Do you have it?           15:53:32

21      A  Okay.                                          15:53:35

22      Yes, I do.                                        15:53:39

23      Q  Down at the bottom, at the end of that         15:53:40

24  page, the last couple sentences say:  All or most    15:53:42

25  of the contracts, invoices and other transaction     15:53:47

1    data relating to Tier 1 suppliers do not reflect          15:53:49

2    any value-added services in exchange for this             15:53:54

3    markup.  Where a Tier 1 supplier did provide some         15:53:57

4    form of additional service, e.g. transport,               15:54:00

5    processing, packaging, inventory management, bulk         15:54:03

6    purchases or distribution, the value of those             15:54:10

7    services did not approach the amount of the price         15:54:12

8    markup it charged to IP.                                  15:54:13

9         Do you see that?                                     15:54:16

10     A  I -- I do.                                            15:54:17

11     Q  And is this statement true with regard to            15:54:19

12   DGS, that the value of its services did not               15:54:21

13   approach the amount of price markup it was                15:54:27

14   charging to IP?                                           15:54:30

15     A  We haven't made a determination on that.             15:55:06

16     Q  Well, this doesn't qualify your statement.           15:55:10

17   I mean, the paragraph starts by saying:  The              15:55:13

18   Specialty Chemicals Group did business with               15:55:16

19   diverse or minority-owned businesses in two ways,         15:55:18

20   referred to as Tier 1 and Tier 2 arrangements.            15:55:22

21        And then you go on to describe them.                 15:55:25

22   A  Correct.

23     Q  And then you say at the end, you say that:           15:55:28

24   All or most of the contracts, invoices and other          15:55:31

25   transaction data relating to Tier 1 suppliers did         15:55:34

1    not reflect any value-added services in exchange          15:55:38

2    for this markup.  Where a Tier 1 supplier did             15:55:41

3    provide some form of additional service,                  15:55:45

4    transport, process improvements, packaging,               15:55:48

5    inventory management, bulk purchases or                   15:55:50

6    distribution, the value of those services did not         15:55:54

7    approach the amount of price markup it charged to         15:55:56

8    IP.                                                       15:55:59

9            And I'm asking, when DGS was serving as a         15:55:59

10   Tier 1 supplier for IP, for Specialty Chemicals,          15:56:04

11   is your statement, as you made it in this answer          15:56:08

12   that you verified a couple of weeks ago, correct?         15:56:11

13       A   This -- this statement is regard -- with          15:56:22

14   regards to all of the diverse and minority-owned          15:56:24

15   businesses within Specialty Chemicals.                    15:56:31

16       Q   And that includes DGS, right?                     15:56:33

17       A   They were one of the insured's diversity          15:56:39

18   suppliers.                                                15:56:43

19       Q   Right.  And this statement that the amount        15:56:46

20   of service they performed did not approach the            15:56:49

21   amount of the price markup it charged to IP, that         15:56:52

22   applies also to Mid-South, correct, which was also        15:56:56

23   a diverse supplier of IP, correct?                        15:56:59

24       A   Yes, they were a diverse supplier of IP.          15:57:04

25       Q   Well, not only were they --                       15:57:08

| | | |
|---|---|---|
| 1 | (Indiscernible crosstalk.) | 15:57:09 |
| 2 | Q  But I'm asking about the whole statement | 15:57:09 |
| 3 | that you made about Tier 1 suppliers. | 15:57:11 |
| 4 | When Mid-South was acting as a Tier 1 | 15:57:14 |
| 5 | supplier, is it correct that Beazley contends that | 15:57:17 |
| 6 | even when they did provide some form of additional | 15:57:23 |
| 7 | service, the value of those services did not | 15:57:26 |
| 8 | approach the amount of the price markup it charged | 15:57:30 |
| 9 | to IP? | 15:57:30 |
| 10 | A  And that statement is -- is what we're | 15:57:35 |
| 11 | saying with regards to all of the diverse | 15:57:38 |
| 12 | minority-owned businesses. | 15:57:42 |
| 13 | Q  I understand.  But I'm asking about a | 15:57:46 |
| 14 | specific diverse supplier, Mid-South. | 15:57:48 |
| 15 | You're saying definitively, without | 15:57:50 |
| 16 | qualification, that when Mid-South acted as a | 15:57:53 |
| 17 | Tier 1 supplier and did perform some form of | 15:57:59 |
| 18 | additional service, the value of Mid-South's | 15:58:01 |
| 19 | services to IP did not approach the amount of the | 15:58:04 |
| 20 | price markup it charged to IP. | 15:58:06 |
| 21 | Isn't that what you're saying right here? | 15:58:08 |
| 22 | A  That statement is with regard to all of | 15:58:12 |
| 23 | the diverse and minority-owned suppliers within | 15:58:16 |
| 24 | Specialty Chemicals. | 15:58:20 |
| 25 | Q  And that included Mid-South, right? | 15:58:20 |

| | | |
|---|---|---|
| 1 | A   Among others. | 15:58:23 |
| 2 | Q   Yes. | 15:58:25 |
| 3 | And it included DGS, as well, correct? | 15:58:28 |
| 4 | A   And others. | 15:58:34 |
| 5 | Q   Okay.  So, DGS and Mid-South and others. | 15:58:36 |
| 6 | Which others do you also contend that that | 15:58:42 |
| 7 | applies to? | 15:58:45 |
| 8 | A   The other minority and diverse suppliers | 15:58:46 |
| 9 | within Specialty Chemicals.  That's what that | 15:58:51 |
| 10 | statement is -- is referencing. | 15:58:54 |
| 11 | Q   Okay.  And Jag was the purchaser for | 15:58:56 |
| 12 | Specialty Chemicals at IP, correct? | 15:59:01 |
| 13 | He was the one in charge of negotiating | 15:59:03 |
| 14 | contracts with diverse suppliers and majority | 15:59:06 |
| 15 | suppliers, correct? | 15:59:10 |
| 16 | A   That was part of his job function. | 15:59:12 |
| 17 | Q   Okay.  Now, when you talk about where a | 15:59:18 |
| 18 | Tier 1 supplier did provide some form of | 15:59:21 |
| 19 | additional service, you give examples. | 15:59:23 |
| 20 | Transport.  Are you aware of any | 15:59:26 |
| 21 | transportation services that DGS ever provided to | 15:59:31 |
| 22 | IP for the markup it was charging as a Tier 1 | 15:59:33 |
| 23 | supplier? | 15:59:38 |
| 24 | A   I don't recall specifically. | 15:59:47 |
| 25 | Q   You said process improvements.  Are you | 15:59:48 |

1  aware of any process improvements that DGS ever          15:59:51

2  provided to IP for the markup it was charging?          15:59:54

3      A  I don't recall specifically.                     16:00:06

4      Q  The next one is packaging.  Do you recall        16:00:07

5  any packaging services DGS ever provided to IP for      16:00:10

6  the markup it was charging?                             16:00:14

7      A  I don't recall specifically.                     16:00:26

8      Q  The next one is inventory management.  Are       16:00:27

9  you aware of any inventory management services          16:00:29

10 that DGS ever provided to IP for the markup it was      16:00:31

11 charging?                                               16:00:36

12     A  I don't recall specifically.                     16:00:41

13     Q  The next one is bulk purchases.  Do you          16:00:43

14 recall any bulk purchasing services that DGS ever       16:00:47

15 provided to IP for the markup it was charging?          16:00:52

16     A  I don't recall specifically.                     16:00:58

17     Q  The next one is distribution.  Do you            16:01:00

18 recall any distribution services that DGS ever          16:01:02

19 provided IP for the markup it was charging?             16:01:06

20     A  Again, I don't recall the specifics on          16:01:17

21 that item.                                              16:01:20

22     Q  Same questions for Mid-South.  Do you            16:01:20

23 recall any transport, process improvement,              

24 packaging, inventory management, bulk purchases or      16:01:23

25 distribution services that Mid-South ever provided      16:01:25

1    to IP for the markup it was charging?                      16:01:28

2        A  I don't recall specifically.                        16:01:34

3        Q  Are you aware of any plant or equipment             16:01:37

4    that DGS owned that could provide any of these             16:01:42

5    logistical services that you just described?               16:01:46

6        MR. MURPHY:  Objection as to form.                     16:01:50

7        A  I do not recall specifically.                       16:01:56

8        Q  Same question for Mid-South, are you aware          16:01:58

9    of any plant or equipment that Mid-South owned or          16:02:01

10   operated that could provide any of these types of          16:02:04

11   services that you've just described for Tier 1             16:02:07

12   suppliers?                                                 16:02:10

13       MR. MURPHY:  Same objection.                           16:02:11

14       A  I don't recall specifically.                        16:02:14

15       MR. MURPHY:  Can I just interrupt,                     16:02:17

16   Mr. Sylvester, just for a moment, just a question          16:02:21

17   of timing?                                                 16:02:21

18       We're a little after 4:00.  You know, we               16:02:22

19   can go a little bit longer, but I'm trying to get          16:02:29

20   a sense, if you would, as to how long we are going         16:02:31

21   to go to get this concluded.                               16:02:35

22       MR. SYLVESTER:  Yeah, I mean, I have a lot              16:02:37

23   more questions of the witness.  So, I mean, going          16:02:38

24   another 15, 20 or half an hour is not going to             16:02:40

25   conclude the deposition.                                   16:02:43

| | | |
|---|---|---|
| 1 | You know, I'm willing to go, obviously, as | 16:02:44 |
| 2 | long as the witness can go today, recognizing | 16:02:48 |
| 3 | there may be childcare or other needs that have to | 16:02:51 |
| 4 | be accommodated.  But my sense is that we're | 16:02:54 |
| 5 | probably going to have to resume at some other | 16:02:58 |
| 6 | time, and if that's the case and you want to | 16:03:02 |
| 7 | adjourn now, we can do that, so long as we have an | 16:03:04 |
| 8 | agreement to resume at a mutually convenient time | 16:03:08 |
| 9 | subsequently. | 16:03:10 |
| 10 | MR. MURPHY:  Okay.  I think that's | 16:03:13 |
| 11 | probably what we're going to have to do, is agree | 16:03:16 |
| 12 | to resume. | 16:03:19 |
| 13 | Let's go off the record, and if it's okay, | 16:03:19 |
| 14 | what I would like to do is just go off video and | 16:03:27 |
| 15 | audio and just have a confidential discussion with | 16:03:31 |
| 16 | my client for a moment. | 16:03:33 |
| 17 | MR. SYLVESTER:  Sure, sure, to talk about | 16:03:35 |
| 18 | availability in the future, yes. | 16:03:37 |
| 19 | THE VIDEOGRAPHER:  We are going off the | 16:03:40 |
| 20 | record.  The time is 4:03 p.m. | 16:03:41 |
| 21 | (Off the record.) | 16:03:43 |
| 22 | THE VIDEOGRAPHER:  We are back on the | 16:09:35 |
| 23 | record.  The time is 4:09 p.m. | 16:09:36 |
| 24 | MR. SYLVESTER:  Okay.  So, we're back on | 16:09:41 |
| 25 | the record.  This is the end of Day 1 of | 16:09:44 |

1    Ms. Ellis' deposition.  I'm going to confer with          16:09:46
2    her counsel and we will resume at a mutually              16:09:51
3    agreed upon date in the near future.                      16:09:54
4         Thank you, Ms. Ellis, for her time and               16:09:56
5    attention today, and we will see her at some              16:09:58
6    subsequent date.                                          16:10:01
7         MR. MURPHY:  Agreed.  Thank you.                      16:10:02
8         THE VIDEOGRAPHER:  This marks the end of             16:10:04
9    Day 1 of the deposition of Pia Ellis.  We are            16:10:06
10   going off the record at 4:10 p.m.                         16:10:09
11   (Deposition concluded at 4:10 p.m. EST
12    Signature of the witness was not
13    requested.)
14
15
16
17
18
19
20
21
22
23
24
25

1    CERTIFICATE OF SHORTHAND REPORTER NOTARY PUBLIC

2        I, Karen Klerekoper, the officer before

3    whom the foregoing proceedings were taken, do

4    hereby certify that the foregoing transcript is a

5    true and correct record of the proceedings; that

6    said proceedings were taken by me stenographically

7    and thereafter reduced to typewriting under my

8    supervision; that review was NOT requested; and

9    that I am neither counsel for, related to, nor

10   employed by any of the parties to this case and

11   have no interest, financial or otherwise, in its

12   outcome.

13     IN WITNESS WHEREOF, I have hereunto set my hand

14   and affixed my notarial seal this 22nd day of

15   December 2023.

16

17   MY COMMISSION EXPIRES:

18   OCTOBER 7, 2024

19

20

21   _Karen Klerekoper_

22   NOTARY PUBLIC IN AND FOR THE STATE OF MICHIGAN

23

24

25

## A

**ability**
134:8
**able**
22:17, 27:2,
27:11, 27:15,
34:22, 39:7,
92:21, 135:7,
138:3, 141:22
**about**
7:20, 10:17,
11:11, 13:24,
14:20, 15:6,
16:23, 21:7,
21:11, 31:8,
32:18, 34:10,
34:18, 36:11,
37:8, 40:2,
66:13, 67:21,
71:24, 87:3,
87:9, 87:19,
88:7, 89:13,
96:4, 96:9,
96:22, 97:1,
97:3, 97:11,
97:17, 98:3,
98:14, 99:25,
100:24, 101:11,
101:13, 105:1,
105:2, 107:22,
107:24, 108:15,
111:25, 112:15,
113:5, 113:12,
115:25, 118:9,
118:11, 118:15,
119:13, 128:18,
130:6, 131:22,
132:17, 137:7,
141:20, 151:2,
152:3, 152:5,
153:20, 155:13,
156:5, 157:16,
157:25, 161:24,
163:6, 165:8,
165:9, 165:11,
165:12, 166:11,
170:2, 171:22,

172:12, 172:19,
173:3, 173:14,
174:5, 175:3,
182:2, 182:3,
182:13, 183:17,
186:17
**above**
71:15, 95:1,
95:10
**abuse**
34:21
**accept**
19:14, 19:20,
20:1, 20:21,
27:9, 38:21,
38:25
**acceptable**
8:4
**acceptance**
39:2
**accepted**
40:22
**accommodate**
9:21
**accommodated**
186:4
**according**
147:1
**accounts**
24:19, 51:5,
51:22, 53:6,
55:14, 56:6,
56:13, 57:4
**accuracy**
164:18, 165:4,
171:13
**accurate**
85:10, 165:13
**accused**
109:21, 110:5,
128:20, 130:9
**acknowledge**
47:9, 47:13,
70:4, 141:12,
143:5, 143:12
**acknowledged**
60:20
**acknowledging**
60:12

**acquired**
78:18
**act**
35:1, 78:20,
115:8
**acted**
182:16
**acting**
49:13, 50:21,
66:4, 132:8,
182:4
**action**
1:8, 69:6,
81:5, 83:11,
127:20, 133:2,
133:5, 133:17,
134:20, 175:10,
176:4
**actions**
63:9, 139:20,
174:18, 175:3,
175:7, 175:10,
175:22, 178:14
**activity**
64:3
**actual**
64:5, 70:16,
145:14, 150:24
**actually**
23:23, 35:7,
136:6, 179:12
**addition**
147:19
**additional**
22:24, 42:15,
43:6, 80:20,
83:8, 83:10,
83:20, 155:19,
180:4, 181:3,
182:6, 182:18,
183:19
**address**
7:1, 7:4, 7:8,
7:10, 11:15,
30:25, 104:6
**adjourn**
186:7
**adjusting**
105:25

**admits**
55:11
**admitted**
51:1, 51:14
**advancement**
38:1
**advantage**
35:9
**advise**
98:23
**advised**
113:17, 114:13,
115:14, 163:6
**advising**
98:20
**affirmative**
41:5, 71:16,
73:6, 73:11,
73:20, 74:2,
74:6, 74:12,
74:14, 74:21,
74:22, 74:23,
75:12, 77:5,
77:7, 77:16,
77:20, 77:22,
78:2, 78:8,
78:10, 78:11,
79:1, 79:4,
79:13, 79:17,
80:2, 80:10,
80:15, 80:22,
80:25, 81:1,
81:8, 81:15,
81:18, 82:6,
82:9, 82:12,
82:16, 82:21,
83:3, 83:8,
83:15, 141:18
**affirmatively**
67:20
**affixed**
188:14
**afforded**
72:9
**affording**
70:2
**aforementioned**
164:20

**after**
26:24, 27:8,
30:17, 49:18,
88:19, 91:11,
97:3, 97:6,
110:21, 111:15,
111:23, 114:20,
118:13, 125:16,
133:3, 133:9,
133:19, 134:6,
135:4, 142:21,
159:8, 160:7,
165:23, 166:24,
168:22, 169:4,
169:23, 185:18
**again**
18:4, 22:16,
25:15, 27:11,
27:17, 32:11,
40:7, 40:20,
43:24, 45:10,
51:12, 53:14,
54:4, 54:11,
54:16, 54:25,
55:4, 55:9,
56:15, 57:12,
58:7, 63:14,
63:21, 65:15,
65:23, 68:14,
76:3, 76:21,
77:3, 77:14,
79:6, 79:13,
89:16, 92:18,
93:7, 94:17,
98:13, 99:10,
100:1, 101:6,
101:25, 109:9,
109:16, 110:1,
110:11, 110:18,
111:11, 112:3,
112:19, 119:16,
120:1, 120:10,
120:23, 126:8,
128:13, 132:14,
133:15, 134:18,
136:5, 137:6,
137:15, 141:4,
142:24, 143:17,

144:23, 146:7,
147:25, 149:14,
149:23, 150:3,
155:13, 155:17,
156:19, 163:2,
164:7, 165:21,
173:23, 176:1,
176:19, 176:20,
179:14, 184:20
**against**
6:15, 91:5,
92:8, 107:25,
126:12, 126:14,
127:19, 127:21,
128:18, 133:2,
133:12, 133:24,
155:23, 166:2,
167:13, 173:17,
174:7, 178:4
**agent**
24:12, 28:21
**agents**
147:21, 148:25
**ago**
21:7, 21:11,
71:24, 72:7,
72:13, 72:24,
73:14, 73:21,
85:5, 91:5,
165:1, 181:12
**agree**
26:17, 34:15,
34:20, 39:7,
50:11, 50:14,
53:2, 53:5,
55:11, 55:13,
62:8, 62:16,
66:25, 67:12,
68:1, 68:23,
137:23, 148:2,
167:21, 167:23,
186:11
**agreed**
6:6, 40:23,
59:25, 105:1,
187:3, 187:7
**agreement**
4:13, 48:14,

51:13, 51:17,
51:19, 52:6,
52:14, 52:23,
56:17, 59:11,
59:25, 74:8,
76:20, 95:25,
138:15, 138:19,
138:22, 139:3,
139:9, 139:10,
139:13, 139:19,
139:20, 140:17,
168:1, 168:2,
175:1, 176:8,
176:13, 176:15,
186:8
**agreements**
75:17, 114:23,
115:15, 163:21,
165:9
**agrees**
67:6
**ahead**
16:8
**aig**
30:6, 30:24,
31:16, 31:23,
36:17, 37:25,
38:9
**al**
5:5, 163:24
**alert**
174:8
**all**
5:12, 10:1,
30:23, 31:4,
50:8, 54:18,
54:19, 70:5,
70:7, 81:22,
83:9, 84:16,
86:2, 88:16,
89:24, 91:20,
93:11, 93:20,
102:4, 103:8,
105:13, 128:23,
156:17, 157:25,
166:25, 169:5,
173:12, 174:7,
177:25, 178:5,

179:24, 180:24,
181:14, 182:11,
182:22
**allegation**
25:2, 48:24,
51:9, 51:12,
59:10
**allegations**
71:8, 71:10,
71:11, 86:3,
128:23, 133:7,
163:16
**alleged**
19:12, 25:1,
28:17, 37:3,
50:15, 55:5,
58:19, 105:18,
114:22, 114:24,
115:1, 115:11,
117:15, 136:24,
137:19, 138:2,
142:14, 159:23,
160:11, 161:3,
162:16, 174:20,
177:23, 178:21,
179:5
**allegedly**
117:8, 126:12,
162:20, 171:23
**alleges**
168:10, 179:8
**allow**
9:8, 43:8,
43:20, 109:13,
148:13
**alone**
49:13, 50:21,
66:4
**along**
29:23, 121:9
**already**
9:1, 23:20,
93:21, 120:12,
151:20, 176:18
**also**
3:20, 5:20,
5:21, 5:25,
6:21, 11:24,

12:14, 12:19,
21:21, 21:24,
30:1, 31:9,
39:10, 41:17,
89:5, 89:15,
94:24, 95:9,
114:18, 115:11,
122:12, 124:15,
149:2, 155:2,
167:3, 167:11,
181:22, 183:6
**although**
69:25, 136:10
**amended**
83:9
**american**
1:11
**among**
150:25, 168:12,
183:1
**amount**
43:17, 47:4,
66:8, 66:20,
67:13, 67:15,
67:25, 68:11,
180:7, 180:13,
181:7, 181:19,
181:21, 182:8,
182:19
**amounts**
88:1
**analysis**
54:18
**analyst**
31:16, 36:18
**angela**
17:7, 17:12,
103:18, 103:19,
104:9
**another**
42:15, 42:18,
43:18, 132:17,
137:16, 185:24
**answer**
4:14, 9:6, 9:7,
9:16, 12:19,
14:24, 15:10,
15:15, 22:10,

23:6, 24:6,
24:24, 25:14,
33:23, 37:15,
42:10, 51:16,
51:25, 52:20,
54:15, 54:24,
58:2, 60:25,
61:25, 64:23,
65:14, 67:18,
67:19, 68:16,
69:8, 69:10,
70:23, 71:22,
72:12, 72:24,
73:5, 73:10,
73:21, 83:10,
83:17, 86:5,
88:21, 90:16,
91:25, 92:9,
92:21, 92:23,
93:16, 93:24,
94:10, 94:17,
99:13, 102:7,
103:14, 108:24,
110:10, 120:23,
123:20, 130:3,
134:3, 140:6,
144:21, 145:5,
150:4, 150:22,
157:22, 158:4,
159:17, 164:24,
172:7, 173:8,
178:11, 179:2,
179:14, 181:11
**answered**
42:9, 44:12,
44:25, 56:1,
57:11, 58:1,
65:22, 68:20,
109:25, 112:2,
118:19, 119:25,
120:21, 124:14,
125:11, 128:12,
128:25, 132:21,
138:10, 141:3,
141:16, 143:8,
143:16, 173:22,
175:15
**answers**
12:21, 12:25,

15:16, 85:4,
85:9, 85:19,
98:8, 124:10,
136:18, 144:25,
150:12, 162:24,
165:22, 171:16,
179:15
**antonio**
16:7, 16:8,
16:10, 16:22,
17:3, 17:18,
18:2, 18:7,
103:25, 104:8,
158:8, 158:16
**anybody**
10:3, 10:8,
15:21, 34:9,
34:17, 89:4,
99:19, 100:12,
101:4, 101:10,
106:10, 106:13,
113:11, 119:3,
135:16, 135:22
**anyone**
106:3
**anything**
8:8, 35:8,
59:4, 91:1,
99:20, 124:22,
131:16, 162:23
**anywhere**
132:13
**apologies**
34:11
**apologize**
7:19
**appearing**
6:20
**applicability**
79:4
**applicable**
68:15, 73:23,
81:23, 82:11,
139:15
**applies**
75:1, 181:22,
183:7
**apply**
75:19, 75:25,

76:13, 79:17,
79:24
**approach**
180:7, 180:13,
181:7, 181:20,
182:8, 182:19
**approaching**
86:21
**appropriate**
94:10, 109:2
**approval**
139:16
**approved**
117:18, 178:8
**approximate**
176:12
**approximately**
15:19, 15:20,
21:9, 32:4,
89:10, 159:6
**approximation**
40:13
**april**
22:2, 27:15,
27:16, 87:3
**area**
83:24, 104:5
**aren't**
34:23
**argumentative**
132:3
**arising**
6:16, 38:21
**around**
151:10
**arrangement**
59:1, 59:6,
63:2, 63:10,
64:9, 68:12,
102:23, 115:12,
131:11, 172:9,
172:19, 173:3,
173:6, 173:14,
174:5
**arrangements**
144:14, 145:1,
180:20
**articles**
139:12

aside
43:16, 96:2,
135:2
asked
11:9, 11:23,
42:8, 44:11,
44:24, 45:18,
46:14, 47:12,
55:25, 57:10,
57:25, 65:21,
68:19, 68:22,
109:24, 112:1,
116:21, 118:18,
119:24, 120:20,
120:22, 123:1,
123:17, 124:13,
125:10, 128:11,
128:24, 132:20,
135:8, 138:10,
141:2, 141:15,
143:8, 143:15,
173:22, 175:14
asking
40:9, 43:4,
43:16, 57:6,
57:16, 67:3,
124:8, 148:22,
178:15, 178:16,
181:9, 182:2,
182:13
aspects
142:16, 142:20
assert
80:4, 81:22
asserting
83:10
assigned
90:8, 102:15
assist
88:22
assume
67:4
assuming
68:8
asterisk
114:20
attached
4:7, 94:25

attain
147:15, 147:22,
148:9
attempted
114:15
attended
156:17
attending
5:13
attention
187:5
attorney
122:16, 156:16,
159:12, 160:11
attorney's
63:9, 63:17,
135:18, 135:25
attorney-client
14:23, 15:2,
15:4, 92:8,
92:19, 92:25,
94:18, 99:11
attorneys
107:16, 116:13,
116:14, 156:15,
159:15, 159:20
audio
186:15
august
157:3, 157:11,
157:14, 157:20,
158:9, 158:21,
159:4, 159:7,
160:5, 160:6
authorities
174:8
authority
19:14, 19:20,
20:1, 28:1,
38:20, 39:13,
39:15, 39:18,
115:15
authorization
139:16
authorize
108:11
authorized
108:13, 139:3,

139:8
availability
186:18
available
78:7, 78:24,
79:7, 79:14,
79:19, 80:11,
80:14
avenue
3:8, 3:16
average
151:25
awaiting
128:14
awarded
25:7, 28:19
awarding
24:14
awards
50:4
aware
13:11, 13:15,
57:13, 94:20,
97:19, 115:12,
119:8, 128:22,
145:12, 145:15,
145:19, 145:23,
151:7, 151:12,
183:20, 184:1,
184:9, 185:3,
185:8
away
41:11, 87:3

**B**

b) (6
4:8, 10:18,
10:22
bachelor's
29:22
back
18:7, 18:10,
18:13, 24:18,
25:10, 28:21,
37:17, 46:1,
51:5, 51:22,
59:12, 60:15,
60:22, 61:4,

65:25, 83:25,
84:10, 98:7,
105:7, 118:1,
136:2, 136:13,
136:19, 138:14,
153:21, 153:25,
156:23, 158:20,
161:19, 162:24,
165:18, 166:16,
169:17, 171:15,
171:21, 175:2,
175:4, 176:10,
177:17, 186:22,
186:24
background
163:14
ballin
156:17
barred
74:24, 77:24,
78:12, 78:17,
81:2, 82:10,
82:18
based
22:16, 32:5,
32:6, 53:21,
54:18, 57:13,
60:3, 78:6,
78:24, 79:6,
79:14, 79:18,
80:11, 80:16,
131:15, 137:24,
161:9, 169:15
basis
147:7, 147:15,
147:22, 148:8
bates
48:8, 49:7,
56:21, 114:3,
157:2
bear
69:14
beazley's
22:3, 23:21,
47:1, 88:18,
89:2, 90:1,
90:14, 90:20,
121:16, 124:5,

127:2, 127:7,
129:15, 135:10,
150:22, 156:13,
157:18, 163:5,
166:5
**became**
37:20
**because**
9:25, 34:23,
42:13, 49:21,
65:8, 70:16,
82:3, 119:12,
133:17, 149:1,
168:5, 176:7
**become**
13:15
**been**
6:8, 11:14,
13:3, 15:1,
15:24, 18:17,
18:19, 22:17,
23:25, 24:25,
25:3, 25:4,
27:6, 27:7,
27:20, 30:21,
37:4, 40:1,
42:24, 53:11,
53:14, 53:25,
54:4, 54:11,
54:16, 54:25,
55:1, 55:5,
55:9, 65:11,
70:9, 70:13,
72:23, 86:20,
87:9, 87:25,
88:15, 88:24,
89:17, 91:16,
91:19, 92:12,
93:12, 94:3,
100:8, 100:10,
100:21, 120:5,
120:22, 133:4,
133:13, 133:15,
135:3, 135:7,
135:8, 135:9,
138:2, 138:3,
141:13, 142:14,
142:25, 153:20,

174:23, 176:1,
178:8
**before**
2:9, 6:24,
8:18, 9:5, 9:7,
11:6, 17:20,
18:9, 23:19,
27:16, 29:2,
46:4, 46:12,
46:16, 49:19,
49:25, 68:22,
74:5, 85:8,
88:19, 89:19,
97:3, 97:5,
99:16, 102:25,
105:10, 111:13,
111:23, 136:20,
154:3, 154:11,
188:2
**beforehand**
118:8
**begin**
6:24
**beginning**
123:23, 124:8,
124:20, 169:20
**begins**
5:2, 86:6,
154:22
**behalf**
3:3, 3:12,
5:24, 28:2,
91:23, 93:13,
109:11, 115:16,
137:10, 137:17,
139:3, 140:3,
140:8, 140:12
**behavior**
32:15
**beier**
155:12
**being**
7:20, 25:9,
73:25, 74:7,
75:6, 76:2,
76:4, 76:21,
77:3, 77:14,
77:17, 78:4,

78:5, 79:6,
79:14, 79:18,
79:20, 79:25,
80:1, 80:2,
80:11, 80:21,
80:23, 81:9,
82:14, 82:17,
82:18, 82:21,
82:23, 86:8,
90:8, 91:17,
94:6, 94:17,
94:25, 101:17,
114:19, 132:25,
134:14, 135:4,
161:22, 166:12,
174:23, 176:2,
176:6
**belief**
83:7, 85:14
**believe**
13:22, 23:25,
24:3, 25:3,
26:2, 36:11,
53:12, 53:19,
54:1, 54:13,
54:20, 55:2,
56:3, 56:10,
56:23, 57:16,
59:19, 87:16,
91:7, 96:7,
97:12, 97:18,
105:13, 107:8,
108:7, 109:2,
116:13, 117:12,
117:17, 123:3,
130:25, 131:1,
131:2, 131:14,
131:25, 132:1,
132:6, 151:22,
154:13, 159:19,
168:17, 169:4,
169:9, 169:15,
170:4, 178:18,
178:19, 178:20
**believes**
112:22
**bell**
98:17

**below**
140:10
**beneficial**
172:9, 172:16,
172:23, 173:6,
173:19, 174:3,
174:11, 175:11
**benefit**
49:14, 49:22,
50:1, 50:22,
55:18, 55:22,
57:22, 58:6,
58:15, 58:18,
59:1, 59:6,
66:5, 66:7,
66:15, 66:21,
67:13, 68:1,
68:11, 70:14,
109:22, 151:9,
152:1, 152:15,
152:19, 152:25,
153:6
**benefits**
50:1, 150:5,
150:10, 150:16,
150:21, 150:25,
151:2, 151:3,
151:21, 152:7,
153:9, 153:16,
171:23, 172:2,
173:12
**best**
9:16, 42:13,
42:14, 43:4,
85:13
**beth**
20:4, 20:5,
20:7, 20:10,
20:12, 20:19,
28:3
**between**
63:2, 63:11,
64:10, 65:5,
87:14, 107:18,
108:16, 118:6,
121:16, 122:12,
130:8, 154:16,
156:1, 157:13,

157:18, 157:25,
158:20, 163:4,
163:18, 165:9,
172:20, 173:14,
174:5, 177:21,
179:4
**beyond**
8:2, 8:9,
62:22, 64:21,
67:17, 111:9,
126:6, 148:22
**bigger**
82:8
**binding**
12:9
**bio**
4:11, 29:7,
29:11, 29:19,
36:18, 36:23,
36:24, 37:18
**bit**
98:11, 185:19
**black's**
62:6, 62:7
**blacked**
114:12
**blacked-out**
115:17, 116:17,
166:25
**block**
139:24, 140:11
**board**
16:12, 16:14
**body**
48:7
**bond**
31:16, 36:17
**bonuses**
50:3
**both**
6:20, 7:20,
7:22, 13:19,
21:16, 38:11,
55:7, 55:10,
69:24, 95:16,
95:19, 96:6,
111:22, 137:20,
176:1

**bottom**
52:23, 71:4,
87:17, 87:19,
127:4, 138:25,
144:4, 146:18,
146:19, 157:2,
163:2, 165:18,
166:20, 179:18,
179:23
**box**
113:24, 126:18,
138:17
**brad**
37:8
**breach**
69:17, 71:2,
71:5
**breached**
70:1, 81:3
**breaches**
70:12
**break**
9:20, 9:21,
41:13, 45:18,
45:19, 83:23,
83:25, 84:2,
105:10, 153:20
**breaks**
9:18
**brickell**
3:16
**briefing**
99:25
**bring**
10:12
**brother**
54:10, 54:22,
106:4, 106:7,
115:19, 116:19,
117:9, 117:13,
117:21, 127:21,
131:12, 137:21
**brother's**
25:7, 51:4,
59:2, 59:6,
117:19, 172:13,
173:15, 174:6,
175:5, 175:6

**brought**
92:5, 123:18,
127:21
**buckman**
114:25, 115:1,
115:3
**bulk**
16:20, 16:21,
180:5, 181:5,
184:13, 184:14,
184:24
**burden**
114:14
**burglaries**
36:21
**burglary**
38:16
**business**
60:7, 115:7,
117:19, 131:11,
132:8, 137:9,
137:17, 145:21,
145:25, 146:4,
146:15, 150:5,
150:16, 150:21,
151:5, 151:10,
151:21, 152:8,
152:16, 152:20,
153:1, 153:7,
153:16, 169:7,
171:24, 172:2,
172:10, 172:12,
172:17, 172:18,
172:22, 173:13,
173:16, 173:20,
174:20, 175:5,
175:12, 175:21,
176:25, 177:10,
177:20, 178:2,
178:7, 179:8,
180:18
**businesses**
144:15, 145:2,
145:10, 146:21,
147:5, 147:20,
148:7, 150:6,
150:17, 172:3,
180:19, 181:15,

182:12
**buyer**
170:17, 171:8
**bylaw**
139:13

---
**C**
---

**call**
114:21, 125:3,
130:11, 138:1,
155:15
**called**
73:5, 114:25,
115:4
**calls**
45:8, 59:17,
103:12, 107:7,
108:8, 110:8,
110:16, 121:11,
121:15, 121:16,
122:12, 125:1,
130:13, 134:2,
154:23, 155:2,
155:4, 156:4,
156:6, 157:9,
164:20, 174:13
**came**
16:14, 16:19,
18:10
**can't**
28:24, 40:7,
45:5, 60:9,
60:17, 75:25,
77:2, 98:11,
98:12, 108:5,
143:4, 152:18,
171:13, 172:25,
173:9, 173:23,
173:25, 174:15,
175:16, 178:12
**cannot**
143:12, 178:12
**capability**
171:7
**capable**
168:23, 169:24,
170:5, 170:25,
171:11

capacities
168:19
capacity
6:22, 7:22,
7:24, 8:11,
12:9, 19:17
caralisa
122:14, 155:6,
155:16
career
28:9
carefully
34:24
carries
70:10, 146:25
carry
32:15
case
5:7, 9:4, 10:2,
11:24, 12:8,
13:4, 13:13,
14:5, 14:8,
14:14, 14:21,
15:7, 22:2,
24:11, 27:6,
27:16, 37:2,
42:17, 43:1,
43:8, 43:20,
46:7, 46:18,
52:18, 54:19,
61:1, 63:21,
64:19, 65:1,
65:6, 65:20,
69:11, 70:1,
72:5, 75:22,
76:2, 79:12,
83:19, 87:3,
123:15, 152:6,
169:5, 170:21,
171:9, 174:23,
179:6, 186:6,
188:10
cases
32:8, 33:17,
36:5, 36:14
cause
93:18, 94:2
cautioned
92:7, 92:18,

94:18, 99:11
center
19:5
certain
82:4, 136:24,
141:8, 143:25
certainly
8:3, 74:9,
93:16
certificate
188:1
certified
115:6, 170:5,
170:10, 171:5
certify
188:4
certifying
168:23, 169:23
chain
145:11
chance
46:20
chang
20:15, 20:18
chang's
20:16
characteristic
32:21, 33:5,
33:9
characteristics
32:10, 36:3,
36:10, 36:11,
149:3
characterization
92:17, 94:8
characterizations
65:13
characterized
129:20
charge
63:8, 183:13
charged
63:1, 63:18,
180:8, 181:7,
181:21, 182:8,
182:20
charging
180:14, 183:22,

184:2, 184:6,
184:11, 184:15,
184:19, 185:1
charlotte
3:21, 5:11
charters
139:13
chat
29:9, 29:15,
113:24, 136:5,
136:9, 138:16
check
48:11, 71:22,
82:5
checking
35:10
chemical
114:25, 137:1
chemicals
24:12, 42:5,
63:3, 63:11,
64:10, 143:23,
144:5, 144:12,
144:13, 164:12,
180:18, 181:10,
181:15, 182:24,
183:9, 183:12
child
31:14
childcare
186:3
chose
173:10
chou
164:12
chronological
158:14
chronology
158:6
chubb
30:6, 30:24,
31:18, 31:23,
37:19, 37:22,
37:24, 37:25,
38:2, 38:9,
39:6, 39:12
chubb's
38:13

circumstance
32:11
circumstances
28:24, 28:25,
29:4, 35:14,
101:7
city
7:6, 31:9,
31:12
civil
1:8, 60:23,
127:20, 133:17,
164:4, 174:23,
175:10, 176:3,
176:4, 178:4
claimed
58:10
claiming
48:20, 66:18
claims
7:17, 15:24,
16:5, 16:18,
17:2, 18:14,
18:17, 18:20,
19:1, 19:19,
19:24, 20:8,
20:17, 25:20,
28:8, 28:11,
28:16, 28:17,
30:11, 30:19,
31:1, 31:2,
31:22, 31:24,
32:2, 37:20,
38:3, 38:5,
38:6, 38:11,
38:13, 38:15,
38:19, 38:20,
38:21, 39:1,
39:6, 39:7,
39:10, 40:3,
40:12, 40:17,
40:22, 40:24,
41:20, 61:21,
74:24, 75:20,
77:24, 78:12,
78:16, 81:2,
82:10, 93:4,
93:8, 96:4,

96:19, 102:17,
103:2, 103:4,
136:23, 155:23,
166:1, 178:17
**clarification**
9:14, 46:14,
47:12
**clarify**
9:15, 35:22,
42:22, 59:23
**clark**
18:22, 18:23,
20:12, 20:14,
39:19, 39:20,
90:4, 90:6,
91:15, 92:4,
92:12, 92:17,
95:19, 99:7,
100:4, 100:6,
101:18, 101:19,
102:15, 104:14,
107:12, 107:18,
117:6, 155:7,
155:11, 155:12,
156:14, 160:21
**clean**
9:9
**clear**
26:4, 74:5
**client**
5:20, 75:15,
186:16
**close**
22:1, 26:25,
73:17, 86:21,
86:22
**closed**
64:19, 65:1,
136:11
**closes**
26:21, 27:5
**coates**
37:8, 89:5,
89:13, 89:14
**coca**
115:10
**coffee**
41:12

**cola**
115:10
**cole**
3:15, 5:24,
8:17, 91:13,
92:6, 92:14,
93:2, 104:20
**colleague**
5:25
**colleagues**
5:18
**collected**
86:8
**collusion**
49:14, 50:21,
66:5
**combination**
100:8
**come**
14:6, 14:14,
14:19, 30:10,
30:18, 32:9,
37:17, 83:25,
117:23, 149:24,
153:21
**coming**
16:12, 24:18,
160:19
**commencing**
89:19
**comment**
171:13
**commercial**
4:12, 19:10,
30:11, 38:14,
45:25, 46:6,
46:16, 177:6
**commission**
50:3, 188:17
**committed**
78:20
**common**
32:9, 32:19,
32:21, 33:5,
33:9, 35:5,
35:13, 36:3,
36:11, 95:23,
96:3, 125:24

**commonalities**
32:14
**communicate**
10:8
**communication**
96:10, 96:13,
97:8, 97:15,
102:9, 102:12,
102:23, 108:6,
116:1, 130:12
**communications**
14:23, 15:4,
92:9, 92:19,
94:19, 95:8,
95:12, 95:14,
95:17, 96:2,
99:12, 99:18,
100:3, 100:12,
100:15, 100:23,
101:15, 101:25,
102:4, 102:13,
102:19, 103:8,
105:12, 105:14,
105:17, 106:2,
106:3, 106:6,
106:9, 106:12,
106:18, 106:24,
107:2, 107:4,
107:5, 107:11,
107:18, 107:21,
107:23, 112:25,
113:3, 125:7,
125:9, 129:11,
129:22, 129:24,
135:17, 135:24,
154:16, 157:17,
157:25
**community**
35:18, 35:25
**companies**
24:14, 25:8,
28:11, 30:5,
30:10, 30:17,
30:20, 30:24,
31:3, 51:4,
59:2, 59:7,
114:23, 117:19,
127:22, 144:11,

150:8, 150:19,
172:5, 173:15,
174:6
**company**
1:6, 1:10,
1:12, 5:4, 5:5,
5:18, 5:25,
6:15, 6:16,
6:18, 6:21,
7:14, 17:21,
20:9, 28:18,
30:6, 32:16,
33:5, 33:13,
33:21, 34:1,
34:9, 34:17,
34:23, 35:8,
35:19, 36:1,
66:9, 95:9,
104:1, 114:25,
122:3, 131:11,
132:7, 147:6,
147:20, 158:25,
163:14, 168:24,
170:6, 171:11,
172:13, 173:11,
173:18, 174:3,
174:10, 175:5,
175:6, 175:11,
176:11
**company's**
4:16, 4:21,
84:8, 84:19,
122:21, 154:6,
154:9, 169:25
**competitive**
147:7, 147:15,
147:22, 148:8
**complaint**
4:14, 12:19,
15:15, 69:5,
69:8, 69:17,
69:19, 69:23,
70:23, 71:2,
71:8, 71:9,
71:10, 71:12,
72:12, 74:12,
86:4, 91:6,
168:3, 174:9,

175:9, 178:4
**complete**
65:9
**compound**
65:13, 111:19,
112:18, 123:25,
128:24, 131:5,
173:22, 178:10
**computer**
38:17
**concealment**
33:8, 33:11,
33:19, 34:3
**concede**
153:14
**concerns**
101:12
**conclude**
185:25
**concluded**
117:17, 118:2,
142:2, 185:21,
187:11
**conclusion**
117:23, 117:25,
134:2, 138:7,
141:9, 141:22,
142:21, 164:18,
177:2
**conclusions**
165:3, 165:12
**condition**
81:3
**conditions**
46:21, 47:1,
68:5, 68:14,
68:17, 70:7
**conduct**
32:15, 36:12,
110:3, 119:14,
179:9
**conducted**
1:17, 2:2
**conducting**
110:1, 110:19,
111:12, 111:21,
118:20, 132:23
**confer**
187:1

**conference**
10:1
**confidential**
129:10, 129:21,
186:15
**confirm**
15:5, 20:25,
85:9, 97:12,
138:3
**confirmed**
51:20
**conflict**
25:8, 139:10
**conflicts**
94:13
**connection**
46:21, 95:20,
139:18, 166:7
**connell**
122:14, 155:6,
155:11, 155:17,
155:21, 156:14,
160:22, 165:24
**conscious**
109:6
**consent**
139:16
**consider**
61:22
**consideration**
94:21, 175:18
**considerations**
159:25, 160:13,
161:5
**considering**
61:21
**constant**
17:24
**constitute**
55:18, 55:22,
57:21
**consummation**
139:19
**contend**
73:19, 183:6
**contending**
47:17, 47:21,
47:25, 151:3

**contends**
175:20, 175:21,
176:25, 182:5
**contention**
22:3, 131:10
**contents**
13:11, 156:10,
156:19
**continuation**
103:6, 167:8,
167:10
**continue**
26:14, 81:22,
166:24
**continued**
102:8, 102:11,
177:13
**continuing**
153:2, 176:22
**contract**
51:21, 69:18,
70:12, 71:2,
71:5, 144:11,
145:13, 146:14,
170:16
**contracts**
24:14, 24:17,
25:7, 28:19,
28:21, 53:4,
55:12, 57:2,
70:2, 115:15,
174:7, 175:8,
178:6, 179:25,
180:24, 183:14
**contractual**
146:5, 171:1
**contradict**
55:7
**contradicts**
131:9
**contrary**
54:8
**control**
25:10, 133:2,
133:5, 133:11,
133:16, 133:24,
135:1, 141:21
**controlled**
24:15, 24:19,

51:6, 51:22,
53:6, 53:23,
54:3, 54:9,
54:21, 55:7,
55:14, 56:6,
56:13, 57:4,
117:20, 137:21,
137:25, 141:14,
143:13
**controls**
138:8, 140:25,
141:22, 142:5,
143:6
**convenient**
186:8
**conversation**
96:22, 97:20,
155:9
**conversations**
98:3, 156:1
**convicted**
62:11, 62:17
**conviction**
62:24, 63:22,
63:24, 131:23
**copied**
95:16
**copies**
117:7, 118:24
**copy**
29:10, 29:18,
52:1, 122:23,
124:17, 126:10,
126:16, 127:17,
127:23, 128:21,
130:23, 154:14,
164:2, 167:4,
167:12
**corporate**
6:20, 7:9,
7:20, 8:1, 8:9,
11:10, 11:11,
12:9, 57:6,
141:20, 174:15
**correct**
16:15, 16:16,
18:8, 21:8,
21:24, 26:9,

29:24, 31:8,
31:20, 31:21,
32:3, 32:25,
36:1, 36:2,
39:8, 42:11,
45:7, 50:12,
51:11, 51:14,
51:18, 53:10,
53:24, 56:24,
59:13, 59:21,
61:3, 61:19,
64:1, 64:20,
66:7, 68:18,
69:1, 72:22,
74:16, 75:3,
75:9, 75:10,
75:11, 77:10,
78:23, 78:24,
80:6, 80:7,
80:19, 81:11,
81:25, 82:19,
82:20, 86:17,
86:23, 87:4,
88:3, 88:8,
91:13, 91:14,
91:17, 91:18,
101:19, 104:9,
105:24, 109:7,
111:22, 113:6,
116:2, 118:17,
118:25, 123:9,
125:5, 127:18,
129:5, 129:18,
130:19, 152:21,
157:14, 157:15,
158:22, 159:15,
180:22, 181:12,
181:22, 181:23,
182:5, 183:3,
183:12, 183:15,
188:5

**correctly**
36:23, 87:17

**corresponding**
70:22

**cost**
147:8, 147:16,
147:23, 148:10,

148:18, 149:4,
149:11, 149:19

**coughing**
43:3, 47:10,
59:5, 94:23,
112:23, 113:20,
118:24

**could**
14:10, 34:11,
38:15, 44:2,
47:20, 58:7,
59:23, 67:19,
76:11, 95:2,
109:22, 111:6,
120:17, 126:18,
127:25, 128:10,
128:22, 133:11,
134:16, 134:25,
136:5, 141:8,
146:4, 146:7,
161:16, 169:1,
169:13, 185:4,
185:10

**couldn't**
34:13, 34:19

**counsel**
5:14, 6:6,
6:14, 8:13,
8:15, 8:25,
15:6, 15:22,
28:4, 45:17,
52:7, 57:16,
74:11, 88:25,
90:2, 90:3,
91:12, 93:19,
93:20, 95:13,
95:15, 95:17,
96:3, 98:5,
100:16, 100:23,
100:24, 101:16,
101:17, 101:21,
102:2, 102:5,
102:9, 102:16,
104:22, 105:14,
108:11, 118:6,
118:7, 121:9,
122:12, 122:13,
125:2, 135:23,

155:8, 156:1,
156:2, 156:14,
157:18, 157:19,
158:1, 160:20,
163:5, 164:12,
187:2, 188:9

**counsel's**
122:16

**count**
69:18, 71:5

**counterclaim**
107:25, 126:11,
126:23, 127:8,
127:19, 128:18,
130:17, 132:13,
163:22, 164:3,
164:8, 164:9,
167:15

**countercomplaint**
4:19, 126:20,
126:24, 167:12,
168:11

**counts**
71:2

**couple**
8:24, 179:24,
181:12

**course**
9:19, 16:21,
21:17, 28:9,
30:9, 30:16,
50:2, 94:21,
95:6, 100:17,
101:8, 105:16,
132:8, 174:20,
175:21, 176:25,
177:10, 177:20,
178:2, 178:7,
179:8

**court**
1:1, 5:6, 6:2,
9:9, 42:14,
43:5, 46:14,
47:12

**cover**
22:7, 23:14

**coverage**
19:10, 21:5,

24:22, 28:10,
28:11, 30:11,
38:3, 38:21,
39:1, 39:2,
39:11, 39:18,
39:22, 39:25,
41:3, 41:5,
41:17, 41:18,
41:25, 46:13,
46:18, 46:22,
48:5, 65:8,
65:18, 65:24,
66:10, 67:15,
68:10, 70:2,
70:4, 70:14,
70:20, 72:1,
72:9, 72:20,
72:25, 75:16,
76:14, 76:18,
76:25, 81:4,
81:23, 83:18,
90:2, 90:3,
91:6, 94:22,
95:13, 95:15,
95:17, 101:16,
101:17, 101:20,
102:1, 102:9,
102:16, 121:9,
122:18, 130:7,
133:22, 134:6,
134:10, 135:12,
135:13, 141:7,
156:13, 160:20

**covered**
26:9, 26:18,
27:1, 39:8,
39:12, 40:25,
41:8, 42:2,
42:19, 43:9,
43:15, 43:21,
44:4, 58:10,
58:17, 67:5,
67:6, 68:8,
73:7, 73:16,
75:15

**covering**
33:8, 33:20

**coworkers**
34:22

credibility
178:22, 179:4
crime
4:12, 19:10,
30:12, 41:1,
45:25, 46:6,
46:16, 62:17,
70:8, 177:6
criminal
60:23, 61:1,
62:23, 63:8,
63:14, 63:21,
63:23, 75:1,
76:12, 76:24,
131:20, 131:22,
174:8, 174:9,
174:22, 175:9,
176:3, 178:4
criminally
63:1, 63:18
criminology
29:24, 32:6,
33:16, 174:2
crosstalk
140:16, 167:22,
182:1
csr
1:24
current
53:21
currently
142:6, 153:5
customer
145:13, 145:19,
145:23, 146:9,
146:13
customers
115:10, 144:17,
144:20, 144:22,
145:4, 145:8,
146:6
cut
172:18, 173:16,
174:7

**D**

daley
3:14, 6:1

damages
4:20, 43:15,
43:17, 70:16,
126:21, 126:24
data
180:1, 180:25
date
5:8, 22:17,
27:13, 87:16,
87:25, 89:8,
91:6, 96:7,
114:15, 158:10,
159:5, 159:10,
160:3, 167:14,
187:3, 187:6
dated
85:1, 114:6,
166:21, 167:10
dates
86:24, 156:9,
168:18
day
13:19, 13:23,
13:25, 14:3,
186:25, 187:9,
188:14
days
13:19
deal
61:3, 130:7,
168:7
dealing
38:3
dealings
137:1
december
1:18, 5:8,
17:12, 18:6,
21:12, 22:4,
71:23, 86:22,
87:16, 87:20,
89:20, 165:2,
188:15
deception
32:19, 34:2
decide
26:17, 58:9,
170:17, 170:18

decided
168:22, 169:22
decision
22:5, 22:7,
22:15, 23:14,
26:1, 26:8,
26:24, 27:8,
27:12, 27:16,
27:17, 27:22,
42:7, 43:24,
44:4, 72:8,
72:16, 72:19,
73:1, 93:1,
93:4, 93:6,
93:7, 102:3,
103:2, 103:7,
103:15, 103:17,
109:6, 129:6,
142:20, 168:12,
169:10, 171:8,
178:17
decision-maker
169:8
decision-making
58:20, 169:2,
169:6, 169:14
decisions
19:23, 38:21,
38:25
decree
139:14
deeper
115:23
default
139:11
defendant
5:24, 84:18,
122:2, 122:20,
154:8
defendant's
70:11
defendants
1:13, 3:12,
69:23, 70:1,
155:8
defense
74:6, 74:12,
74:15, 74:22,

74:23, 75:5,
75:12, 77:7,
77:11, 77:20,
77:22, 78:3,
78:10, 78:11,
78:22, 79:1,
79:5, 79:13,
79:17, 80:3,
80:9, 80:10,
80:15, 80:25,
81:1, 81:8,
81:15, 81:18,
82:6, 82:9,
82:13, 82:16,
82:21, 83:3,
83:18
defenses
71:16, 73:6,
73:11, 73:20,
74:3, 74:21,
77:5, 77:16,
78:8, 80:22,
83:8, 83:10,
83:16
defer
37:5, 43:12
defined
50:16, 61:23,
62:19, 132:18,
161:14, 162:2
definition
49:4, 49:6,
49:20, 50:8,
55:23, 57:23,
58:14, 58:22,
61:4, 62:2,
62:4, 62:10,
62:19, 64:7,
65:25, 66:6,
66:14, 66:16,
66:19, 68:24
definitions
49:6
definitive
27:21
definitively
39:11, 182:15
degrees
30:18, 174:1

delaney
155:12
delays
93:19, 94:2,
94:12
delivery
139:10, 139:19
demonstrate
22:12, 22:22,
23:23, 24:8,
64:3, 64:9,
65:17, 162:15
demonstrates
23:15, 44:7,
44:14, 45:2,
45:11, 64:14,
67:7
denial
39:13, 39:15,
39:18, 86:3
denied
39:10, 72:6
denies
71:8, 71:9,
71:11, 71:17
deny
19:15, 19:20,
20:1, 20:21,
27:10, 39:1,
41:18, 81:23
denying
21:2, 65:7,
65:18, 71:25
department
19:24, 24:13,
31:2, 31:22,
135:17, 135:24
depo
73:12
depos
3:21, 3:22,
5:12, 6:4
deposition
1:16, 2:2, 4:9,
5:3, 5:13, 7:21,
8:1, 8:18, 8:22,
9:19, 9:25,
10:14, 10:15,

10:19, 10:20,
10:22, 11:22,
11:25, 12:13,
12:15, 12:17,
13:3, 13:18,
15:8, 15:16,
15:19, 15:22,
42:13, 49:1,
73:19, 85:20,
97:25, 104:7,
104:12, 104:16,
104:20, 104:23,
123:1, 123:23,
137:6, 138:11,
185:25, 187:1,
187:9, 187:11
depositions
14:5, 14:12,
14:20, 21:24,
86:23
deprivation
49:12, 50:20,
61:10, 66:3
deprived
70:13
describe
38:10, 180:21
described
139:20, 185:5,
185:11
designated
11:15
designee
8:10
desired
135:2
desk
154:15
details
16:23, 32:12,
107:20, 166:8
determination
20:20, 21:5,
22:18, 23:1,
23:4, 25:18,
39:25, 43:21,
44:19, 44:23,
58:25, 65:24,

76:18, 132:10,
132:12, 132:15,
142:10, 142:18,
143:2, 143:10,
143:18, 165:16,
176:21, 176:23,
179:4, 180:15
determinations
41:3, 41:6,
41:17, 178:23
determine
25:16, 42:1,
43:8, 58:9,
58:16, 58:17,
114:16, 153:5,
174:19, 178:1
determined
109:11, 135:12,
140:24
determining
170:15, 170:25,
171:10, 175:18,
177:4, 179:6,
179:10
developed
86:9, 93:21
development
147:5, 147:20,
148:6
developmental
30:1
developments
83:12
diamond
20:4, 20:5,
20:10, 20:12,
20:19, 28:3
diamond's
20:7
dictionary
62:1, 62:3,
62:7
different
30:10, 102:22,
120:14, 154:23
difficulty
62:10, 125:21
digging
176:19

direct
18:3, 70:11,
100:12, 102:18,
105:11, 133:16,
134:19
directing
28:4, 147:21
direction
51:3
directly
48:17, 94:25,
95:10, 101:21,
102:4, 103:11,
105:17, 106:18,
106:20, 106:24,
116:13, 159:19
director
37:21, 38:12,
38:20
disagree
94:11
disclose
14:23, 92:19,
99:11, 172:15
disclosed
93:12, 118:7,
118:22
disclosing
92:8, 94:18
discovered
77:25, 136:24
discovery
22:1, 23:8,
26:20, 26:21,
26:25, 27:5,
42:16, 43:7,
43:19, 44:1,
64:19, 65:1,
73:17, 73:18,
73:19, 77:23,
83:11, 86:9,
86:14, 86:16,
86:18, 86:20,
86:22, 113:6,
113:13, 118:25,
151:8, 153:8,
169:5
discussed
13:24, 97:7,

122:15, 122:16,
155:21, 163:9,
165:24, 166:12
**discussing**
105:11, 154:15,
154:22
**discussion**
97:10, 107:24,
154:18, 166:9,
171:25, 186:15
**discussions**
16:22, 130:5,
155:23, 166:1,
166:5, 166:12,
166:15
**dishonest**
74:25, 76:12,
76:23, 78:20,
167:13
**dishonesty**
22:13, 22:18,
22:22, 23:16,
23:18, 23:24,
24:1, 24:4,
24:8, 25:4,
25:12, 25:17,
26:3, 26:18,
28:10, 30:12,
30:13, 30:14,
30:20, 30:25,
31:25, 32:8,
33:17, 38:6,
38:15, 38:22,
39:6, 40:3,
40:17, 40:24,
41:7, 41:19,
44:7, 44:10,
44:15, 45:3,
45:12, 58:12,
64:16, 65:17,
76:1, 76:20,
179:11
**dismissed**
61:2, 63:15,
63:16, 63:22,
131:21, 174:24,
176:2
**distribution**
180:6, 181:6,

184:17, 184:18,
184:25
**district**
1:1, 1:2, 5:6
**dive**
115:23
**diverse**
137:8, 137:16,
144:11, 144:14,
145:1, 145:9,
146:20, 147:5,
147:20, 148:7,
148:14, 148:15,
148:16, 149:1,
150:6, 150:17,
161:12, 163:20,
164:11, 165:11,
171:6, 180:19,
181:14, 181:23,
181:24, 182:11,
182:14, 182:23,
183:8, 183:14
**diversified**
137:2, 137:8,
139:25, 163:19
**diversity**
53:23, 106:14,
114:23, 115:2,
115:9, 137:1,
137:3, 137:15,
140:11, 143:13,
144:16, 145:2,
145:15, 146:22,
147:4, 147:13,
147:18, 148:5,
148:13, 148:24,
149:9, 152:1,
152:3, 159:23,
160:12, 161:4,
161:13, 163:17,
163:20, 168:13,
168:16, 168:20,
168:24, 169:24,
170:6, 170:8,
170:10, 170:12,
170:18, 171:4,
172:2, 181:17
**division**
1:3, 5:7

**document**
23:18, 44:21,
45:6, 49:5,
52:1, 52:21,
64:19, 64:25,
65:5, 72:7,
72:24, 73:18,
84:21, 84:25,
86:14, 86:22,
87:18, 88:23,
90:14, 122:8,
123:14, 123:21,
123:22, 124:9,
124:11, 127:1,
127:17, 128:18,
131:8, 136:16,
149:22, 154:14,
154:21, 176:16
**documentation**
21:4, 22:12,
23:15, 23:17,
44:6, 44:8,
44:14, 45:2,
45:11, 54:19,
58:11, 59:9,
64:14, 64:18,
65:7, 65:19,
88:2, 88:4,
88:7, 89:17,
91:21
**documents**
10:12, 12:16,
15:12, 15:14,
21:16, 21:20,
23:23, 65:8,
88:9, 88:11,
88:17, 88:25,
89:7, 89:21,
89:24, 90:13,
90:19, 93:11,
113:13, 116:15,
121:19, 121:20,
123:2, 123:5,
123:18, 124:4,
128:15, 159:9,
160:9
**doing**
33:9, 33:12,

33:20, 34:4,
34:24, 60:18,
110:7, 117:19,
125:25, 126:4,
137:9, 137:16,
141:19, 150:5,
150:16, 150:21,
151:4, 151:10,
151:21, 152:7,
152:16, 152:20,
153:1, 153:5,
153:6, 153:16,
171:24, 172:2,
172:12, 172:18,
172:22, 173:13,
173:19, 175:5,
175:12, 177:24
**dollar**
60:21
**dollars**
24:16, 60:21,
70:17
**dolowich**
98:17, 98:22,
99:19, 102:14,
102:16, 104:12
**done**
37:2, 146:4
**donna**
96:24, 96:25,
97:17
**doubt**
25:6
**doug**
13:7, 136:23
**dowdell**
13:7, 13:12,
91:22, 136:23,
136:24
**down**
139:23, 179:23
**dozens**
40:11
**draft**
127:8, 129:1,
129:8, 130:17,
131:16, 132:13,
163:22, 164:3,

164:8, 164:9,
167:15, 167:20,
168:3
**drafted**
114:19
**due**
36:20, 92:25,
172:14
**duly**
6:8
**during**
21:17, 78:21,
95:6, 96:5,
97:7, 100:10,
100:17, 105:15,
111:8, 112:22,
114:21, 115:16,
120:2, 120:11,
152:8, 160:24,
160:25, 164:19
**duty**
70:4

**E**

**e-l-l-i-s**
7:3
**each**
9:8, 11:15,
11:19, 28:23,
29:3, 31:1,
32:11, 101:6,
139:1, 139:7,
155:4
**earlier**
14:11, 25:25,
64:19, 65:1,
89:12, 89:16,
91:7, 121:10,
123:1, 123:10,
138:11, 159:13
**early**
86:10, 86:15,
86:22, 86:23,
133:3, 133:9,
134:15, 135:4
**earned**
50:2
**eastern**
5:10, 45:19

**education**
32:5
**effective**
147:2
**effort**
133:12
**eight**
31:17
**either**
10:8, 76:22,
77:4, 77:15,
80:23, 81:19,
104:8, 107:11,
159:3, 168:19
**electronically**
10:9
**ellis**
1:16, 2:2, 4:3,
5:3, 6:8, 6:12,
7:3, 7:21, 8:12,
8:19, 11:23,
14:25, 26:6,
34:15, 46:4,
57:18, 62:16,
74:8, 82:5,
84:13, 84:22,
95:6, 105:10,
113:21, 122:19,
151:13, 154:3,
187:1, 187:4,
187:9
**else**
10:3, 10:8,
59:4, 67:10,
89:4, 91:1,
108:2, 124:2,
124:22, 131:16,
132:13
**email**
95:12, 95:14,
101:10
**emails**
15:13, 107:8,
121:11, 164:20
**employed**
30:21, 103:24,
188:10
**employee-dishone-
sty**
75:15, 75:20,

76:15, 77:1,
102:17, 143:3
**employee-theft**
6:16, 19:11,
20:23, 66:19,
67:5, 67:23,
70:6, 72:20,
79:11, 94:23,
98:24, 109:5,
110:4, 133:14,
135:19, 141:1,
142:17
**employees**
32:15, 34:3,
109:21
**employer**
7:13, 30:12,
30:13, 104:3
**employment**
50:2, 78:21,
115:16, 163:13,
168:19
**encountered**
36:4
**end**
49:24, 73:18,
75:13, 116:16,
136:21, 179:23,
180:23, 186:25,
187:8
**ending**
48:8, 49:7,
56:21, 86:16,
157:3
**ends**
50:6
**engage**
35:9
**engaged**
24:3, 25:12,
33:10, 33:19,
34:2, 35:6,
62:18, 63:19,
67:9, 88:22,
89:6, 90:2,
90:7, 91:12,
177:10
**engagement**
89:9, 90:5

**engineering**
38:18
**enhance**
120:18
**enough**
20:24, 21:3,
24:7, 25:16,
39:24, 41:25,
42:6, 64:14,
64:18, 65:16
**entail**
38:15
**entailed**
161:20
**enter**
115:15, 139:8,
157:11
**entered**
114:8, 144:14,
144:25, 158:14,
166:21
**entering**
76:20, 158:12
**entire**
142:18, 151:14
**entities**
53:23, 54:21,
137:20, 137:23,
137:24, 140:25,
141:21
**entitled**
67:14, 71:17,
72:1, 72:7,
72:20, 126:23,
133:23, 154:8
**entity**
106:14, 115:4,
115:8, 134:9,
137:7, 139:17
**entry**
158:5
**equipment**
185:3, 185:9
**equivalent**
66:8
**escaping**
96:21
**esquire**
3:4, 3:5, 3:6,

3:13, 3:14
**est**
1:19, 187:11
**establish**
25:11
**established**
25:3, 26:3,
141:13, 146:22
**estimate**
28:14, 40:6,
40:10
**et**
5:5, 163:23
**eugene**
3:13
**evaluating**
73:3, 133:6,
142:1, 142:14,
142:24
**evaluation**
132:23
**even**
102:25, 128:22,
141:6, 141:9,
153:7, 172:21,
182:6
**event**
83:10
**ever**
8:21, 9:19,
76:12, 97:15,
99:18, 105:20,
113:5, 113:11,
117:2, 119:3,
162:19, 183:21,
184:1, 184:5,
184:10, 184:14,
184:18, 184:25
**everybody**
67:6, 105:3
**everything**
34:24
**evidence**
51:10, 53:17,
54:19, 55:6,
56:22, 57:8,
57:13, 63:9,
63:18, 64:8,

79:9, 80:8,
97:12, 125:14,
125:19, 152:14,
170:9
**exact**
27:12, 28:13,
40:5, 40:8,
40:9, 40:20,
60:4, 89:8,
107:20, 159:4,
168:18, 176:14
**exactly**
135:6
**examination**
4:4, 6:10,
13:7, 13:12,
13:16, 13:20,
13:25, 21:23,
91:21
**examiner**
37:20, 38:11,
38:19
**examining**
141:9
**example**
67:4, 67:20
**examples**
183:19
**exception**
75:14, 76:14
**exchange**
22:6, 65:5,
176:9, 180:2,
181:1
**exchanged**
65:20
**excluding**
31:4
**exclusion**
75:1, 75:14,
75:19, 76:11,
76:12, 76:24,
77:8
**exclusions**
68:7, 68:15,
68:18
**exculpates**
112:23

**excuse**
34:25, 41:10,
81:12, 82:14,
123:7
**execute**
139:3
**execution**
139:9, 139:18
**executive**
19:1
**exhibit**
4:6, 4:8, 4:10,
4:11, 4:12,
4:13, 4:16,
4:18, 4:19,
4:21, 10:18,
10:21, 11:1,
11:3, 11:5,
11:21, 12:2,
29:5, 29:6,
29:10, 29:15,
45:24, 46:5,
46:16, 47:6,
52:4, 52:5,
52:10, 52:12,
57:24, 61:18,
69:5, 69:10,
69:15, 69:16,
70:25, 84:7,
84:16, 84:18,
85:23, 98:8,
113:22, 114:1,
121:23, 121:24,
126:18, 126:19,
126:22, 127:1,
136:2, 136:10,
136:14, 138:14,
143:21, 144:2,
150:2, 150:15,
154:4, 154:5,
154:21, 156:24,
162:24, 165:21,
166:17, 171:15,
171:18, 179:13
**exhibits**
4:7, 4:14,
69:4, 69:7
**existence**
118:22

**expect**
27:15, 27:17,
43:6
**expecting**
43:18
**expense**
75:16
**expenses**
70:21
**experience**
32:7, 33:14,
33:15, 34:7,
36:6
**expert**
37:5, 37:7,
37:9, 43:12,
43:14
**experts**
88:22
**expires**
188:17
**explain**
42:12, 43:4,
95:15
**exposure**
81:6
**extent**
8:8, 74:25,
77:25, 78:13,
78:17, 81:2,
134:2
**eyes**
82:8

**F**

**fact**
25:6, 35:17,
40:25, 41:8,
42:2, 55:21,
57:17, 63:17,
110:9, 116:9,
123:5, 137:24,
138:8, 147:12,
151:12, 174:19
**facts**
29:4, 32:12,
42:15, 43:1,
43:17, 85:12,

86:2, 141:8,
141:10, 141:13,
175:17, 178:1
**fade**
98:13
**faded**
62:12, 95:3
**failing**
70:3
**fails**
74:12
**failure**
91:5, 172:14
**fair**
120:6
**false**
171:11
**familiar**
29:12, 46:24,
84:21
**family**
115:19, 116:19,
117:9
**far**
86:24, 103:6,
142:25, 160:23
**fbi**
135:18, 135:25
**february**
157:8, 157:13,
158:7, 158:17,
158:20
**federal**
63:1
**feel**
119:19
**fees**
50:3
**fellow**
34:3
**felt**
101:9, 112:5,
121:1
**few**
32:18, 43:19,
73:25, 107:7,
121:11
**fidelity**
31:16, 36:17,

37:19, 38:3,
38:11, 38:14
**figures**
43:1
**figuring**
34:8, 34:16
**file**
12:14, 12:17,
16:20, 16:21,
16:25, 17:16,
18:2, 18:4,
18:6, 18:12,
18:15, 18:17,
83:9, 90:7,
97:19, 97:21,
97:23, 99:17,
99:24, 100:9,
114:9, 126:12,
127:7, 127:18,
158:13, 161:9,
164:4, 173:17,
174:6, 174:8
**filed**
4:15, 69:8,
69:10, 71:22,
71:23, 72:8,
72:13, 72:25,
73:5, 73:21,
91:4, 91:11,
91:17, 92:3,
92:14, 93:3,
94:6, 94:15,
102:25, 107:25,
167:12, 176:4,
178:4
**files**
17:6, 127:2,
129:15
**filing**
139:16, 175:9
**final**
39:24, 117:23,
117:25, 142:10,
142:19, 143:1,
143:10, 143:18,
165:16
**finally**
164:17

**financial**
38:14, 49:14,
49:22, 49:25,
50:22, 55:18,
55:22, 57:21,
58:6, 58:15,
58:18, 58:25,
59:5, 66:5,
66:7, 66:15,
66:21, 67:13,
68:1, 68:11,
70:17, 188:11
**finish**
9:5, 9:7,
41:14, 123:8,
132:4
**fire**
172:11, 173:15
**fired**
172:21, 178:3
**firing**
175:7
**firm**
5:17, 90:9,
91:13, 91:15,
91:19, 92:6,
92:15, 93:2,
93:3, 93:10,
93:13, 94:3,
94:4, 94:9,
95:19, 98:16,
98:19, 98:22,
99:19, 104:19,
155:7, 155:12,
155:13
**firms**
90:12, 92:3,
92:11, 93:1,
93:10, 94:2
**first**
10:2, 13:23,
47:3, 47:5,
50:6, 58:12,
74:6, 74:11,
84:20, 87:10,
98:22, 113:4,
113:10, 118:22,
119:1, 119:7,

127:4, 129:9,
136:3, 139:1,
155:5, 157:16,
157:19, 157:24,
158:5, 171:16
**five**
41:11
**five-minute**
41:13
**floor**
7:5
**florida**
3:17
**folks**
116:10
**followed**
31:17
**following**
18:12, 50:6,
73:17, 99:5,
168:12
**follows**
6:9, 73:4
**foregoing**
188:3, 188:4
**forgive**
68:23
**formally**
6:25
**former**
48:22, 109:4,
109:21, 110:5,
115:19, 116:18,
117:9, 117:13,
128:20
**forms**
38:14
**forrest**
3:21, 5:12
**forth**
86:3
**found**
172:19, 173:3,
174:5
**founder**
115:3
**founds**
173:14

| | | | |
|---|---|---|---|
| **four** | **further** | **global** | 186:19, 187:1, |
| 21:7, 22:5, | 53:5, 55:13, | 24:13, 42:4, | 187:10 |
| 27:7, 27:20, | 65:19, 139:15, | 63:3, 137:2, | **good** |
| 49:5, 87:3, | 179:14 | 137:8, 139:25, | 6:12, 175:11 |
| 87:9, 88:3, | **future** | 147:1, 148:3, | **goodness** |
| 122:12, 142:21, | 80:18, 186:18, | 163:19 | 96:24 |
| 143:11, 152:13, | 187:3 | **go** | **goods** |
| 155:2 | **G** | 8:24, 16:8, | 147:6, 147:14, |
| **four-year** | **gates** | 37:25, 41:15, | 147:21, 148:7, |
| 87:14 | 3:7, 5:17 | 43:15, 45:19, | 150:8, 150:18, |
| **fourth** | **gave** | 61:4, 83:21, | 172:4 |
| 85:23 | 13:12, 21:7, | 84:1, 98:7, | **gosh** |
| **fraud** | 79:10, 130:12, | 102:5, 102:24, | 96:20 |
| 36:22, 38:17 | 130:15 | 103:9, 136:2, | **gotten** |
| **fraudulent** | **gene** | 136:15, 138:14, | 127:23, 153:6, |
| 38:17, 74:25, | 5:23, 8:6, | 138:21, 144:8, | 157:1 |
| 76:12, 76:23, | 74:10 | 156:23, 158:11, | **government** |
| 78:19 | **general** | 158:13, 161:15, | 63:1 |
| **free** | 35:21, 152:4 | 162:24, 162:25, | **governmental** |
| 14:24, 94:17, | **generally** | 165:18, 166:16, | 139:17 |
| 99:13 | 97:2, 97:7, | 171:15, 171:21, | **graduation** |
| **front** | 107:22, 163:15, | 180:21, 185:19, | 31:7 |
| 46:10, 61:6, | 166:10 | 185:21, 186:1, | **granddaughter** |
| 122:24, 123:2, | **getting** | 186:2, 186:13, | 115:2 |
| 124:12, 124:18 | 25:8, 30:17, | 186:14 | **granted** |
| **frontline** | 87:15, 173:12, | **goals** | 74:13 |
| 18:14 | 173:19 | 144:15, 145:2 | **greatest** |
| **fulfilled** | **gibson** | **goes** | 147:8, 147:15, |
| 146:5 | 115:3 | 43:14, 62:21, | 147:23, 148:9, |
| **full** | **give** | 159:22, 168:21 | 148:17, 149:3, |
| 7:2, 23:10, | 9:5, 9:16, | **going** | 149:10, 149:18 |
| 67:15, 143:21, | 27:23, 28:14, | 8:2, 8:5, 10:7, | **ground** |
| 144:3, 176:7 | 40:6, 40:10, | 27:6, 27:7, | 8:25 |
| **fully** | 67:4, 112:21, | 27:21, 41:12, | **group** |
| 139:2, 168:22, | 119:10, 119:22, | 45:21, 62:13, | 63:3, 63:11, |
| 169:23, 170:4 | 120:7, 121:3, | 63:2, 63:10, | 64:10, 137:3, |
| **function** | 126:10, 127:23, | 65:4, 65:25, | 137:15, 140:11, |
| 115:20, 116:19, | 129:6, 141:17, | 80:24, 82:3, | 143:13, 143:23, |
| 117:9, 183:16 | 148:25, 183:19 | 83:24, 84:4, | 144:5, 144:13, |
| **funds** | **given** | 101:15, 101:20, | 163:20, 180:18 |
| 53:3, 53:5, | 8:18, 8:21, | 102:1, 102:20, | **growth** |
| 55:11, 55:14, | 15:7, 16:17, | 105:4, 108:16, | 147:5, 147:19, |
| 56:5, 56:11, | 79:21, 158:20, | 109:13, 111:14, | 148:6 |
| 57:1, 59:20, | 174:1 | 126:12, 127:18, | **guess** |
| 60:5, 60:10 | **gives** | 153:20, 153:22, | 37:19, 136:13, |
| **funneled** | 20:21 | 169:3, 185:20, | 165:19 |
| 24:19, 25:10, | **giving** | 185:23, 185:24, | **H** |
| 28:20 | 149:10, 165:13 | 186:5, 186:11, | **half** |
| | | | 40:19, 84:1, |

164:25, 185:24
**half-brother**
24:15, 53:10
**half-brothers**
53:18
**halfway**
159:8
**hand**
63:4, 64:11,
175:19, 176:24,
177:21, 179:5,
188:13
**handed**
18:7
**handle**
16:18, 30:11,
31:24
**handled**
17:16, 28:9,
32:3, 40:4,
40:12, 102:18
**handler**
17:3, 17:9,
96:17, 96:19,
178:17
**handling**
18:4, 18:15,
26:12, 33:16,
36:5, 36:13,
38:13, 39:5,
40:3, 95:7,
97:19, 100:11,
100:18, 100:21,
101:2, 101:8
**hands**
167:16
**hang**
84:17
**happened**
48:20, 101:13
**happening**
98:15
**happy**
173:12
**hard**
122:23, 154:14
**harold**
3:22, 113:19

**head**
20:8, 20:17
**heading**
71:16
**headset**
105:25
**hear**
34:13, 98:12,
151:13
**heard**
134:5, 170:14
**help**
26:17, 123:18
**helpful**
9:3
**here**
5:2, 6:19,
8:13, 9:2,
10:17, 22:3,
45:7, 48:11,
57:7, 69:14,
73:12, 80:9,
80:14, 83:16,
83:17, 85:20,
113:19, 122:11,
124:3, 128:23,
131:2, 136:7,
143:4, 143:11,
150:23, 151:25,
152:12, 152:18,
165:2, 165:8,
169:11, 182:21
**hereby**
188:4
**herein**
85:13
**hereunto**
188:13
**hill**
90:4, 90:6,
91:15, 92:4,
92:12, 92:17,
95:19, 99:7,
100:4, 100:6,
101:18, 101:19,
102:15, 104:15,
107:12, 107:18,
117:6, 155:7,

155:11, 155:12,
156:15, 160:21
**himself**
116:11, 140:18,
159:14
**hold**
82:7, 136:7,
160:3
**honest**
67:3
**honesty**
35:1
**hopes**
27:2
**hoping**
27:11, 43:24
**hour**
84:1, 153:20,
185:24
**hours**
15:19, 15:20
**howard**
122:15, 155:7
**hundred**
28:15, 36:5
**hundreds**
21:15, 23:19,
32:2, 33:16,
40:11, 88:16
**hypothetical**
67:17

---

**I**

**identification**
7:20, 10:21,
11:3, 29:6,
45:24, 52:5,
69:7, 84:7,
113:22, 126:19,
154:5
**identified**
49:13, 50:21,
66:4
**identify**
8:15, 45:5,
86:2, 152:19
**immediately**
16:17, 172:18,

178:6
**important**
128:17
**impossible**
144:10
**improper**
65:13
**improvement**
184:23
**improvements**
181:4, 183:25,
184:1
**in-house**
28:6, 100:23,
104:22
**in-person**
107:9, 108:8
**inc**
1:10, 139:25,
163:19
**include**
50:1
**included**
38:5, 116:14,
159:24, 160:13,
161:5, 182:25,
183:3
**includes**
181:16
**including**
38:16, 50:3,
68:18, 81:4,
104:15, 113:14,
150:7, 150:17,
163:14, 163:17,
168:16, 172:3
**income**
77:8
**incorporations**
139:12
**incorrect**
81:12, 123:4
**increases**
81:6
**incumbent**
111:4
**incurred**
70:16, 70:18

indemnify
48:16
index
4:1
indicated
141:4, 161:16,
162:6
individual
4:10, 6:22,
7:22, 8:11,
11:2, 11:4,
11:22, 11:24,
12:8, 19:17,
57:17, 64:23
individually
26:5, 32:25
influence
168:15
inform
109:6, 109:12,
111:5, 111:24,
118:14, 119:20,
120:6, 127:22,
175:22
information
9:2, 11:11,
15:2, 20:25,
21:4, 22:6,
22:14, 22:22,
22:25, 23:3,
24:8, 25:16,
25:19, 26:15,
39:24, 42:1,
42:6, 42:24,
43:6, 45:16,
47:5, 53:21,
54:6, 54:8,
54:12, 65:16,
78:7, 78:24,
79:7, 79:15,
79:19, 80:12,
80:14, 80:17,
80:20, 83:6,
85:14, 86:8,
88:1, 90:22,
90:23, 91:20,
93:11, 93:20,
109:23, 112:11,

112:21, 117:5,
117:25, 118:15,
125:15, 125:20,
128:10, 130:18,
155:19, 161:8,
161:16, 161:21,
161:22, 162:3,
162:6, 162:7,
162:17, 162:19,
164:19, 165:4,
165:8, 165:14,
169:4, 178:16
informed
108:15, 112:15,
119:3, 125:6,
125:8
initial
7:19, 17:9,
98:21, 99:3,
102:13, 175:3
innocent
131:4, 131:15
input
168:15
instructed
14:22
instruction
38:17
insufficient
25:19, 83:6
insurance
1:9, 1:12,
4:16, 4:21, 5:5,
5:24, 6:15,
6:18, 6:21,
7:14, 20:8,
28:11, 30:5,
30:6, 30:10,
30:11, 30:17,
30:20, 30:23,
31:5, 70:2,
70:12, 70:14,
84:8, 84:19,
95:9, 122:3,
122:20, 132:24,
154:6, 154:9,
177:6
insured
21:4, 21:19,

21:21, 48:16,
49:12, 50:12,
50:13, 50:20,
61:10, 66:3,
66:9, 66:18,
67:7, 114:13,
114:18, 115:23,
115:24, 119:8,
122:17, 128:15,
143:1, 159:8,
159:24, 160:7,
160:9, 160:12,
161:4, 168:3,
173:10, 176:7
insured's
67:12, 68:9,
114:14, 114:15,
114:17, 149:25,
155:21, 165:25,
170:8, 170:12,
174:15, 178:13,
181:17
insureds
70:21
insurer
94:25
insuring
48:14, 75:16
integrity
35:2
intelligent
34:8, 34:16
interest
25:9, 94:13,
95:24, 128:5,
188:11
interject
74:4
internal
36:20, 157:16
international's
4:14, 69:5,
69:8, 69:17,
69:23, 124:6,
147:13, 148:5,
148:12
interpret
61:20, 174:17

interrogatories
4:22, 12:22,
84:20, 121:22,
121:25, 122:4,
122:5, 122:22,
124:6, 124:11,
124:24, 136:4,
154:7, 154:10,
162:25, 171:17,
179:16
interrogatory
12:20, 12:24,
15:15, 85:4,
85:9, 85:19,
85:25, 86:1,
86:7, 98:8,
136:18, 144:25,
150:4, 164:24,
165:22, 171:16,
172:7, 179:15
interrupt
7:18, 82:2,
185:15
inventory
180:5, 181:5,
184:8, 184:9,
184:24
investigated
93:12, 152:13
investigating
70:19, 79:3,
79:16, 87:9,
92:12, 94:4,
105:16, 110:12,
128:13, 128:17,
141:5, 141:7,
142:4, 142:6,
142:13, 143:17,
151:6, 153:13,
177:1
investigation
26:14, 26:16,
52:18, 57:14,
60:3, 93:22,
99:20, 100:1,
108:3, 109:1,
109:10, 109:17,
110:2, 110:12,

110:19, 111:2,
111:12, 111:21,
112:4, 112:6,
112:10, 112:20,
117:16, 117:23,
118:3, 118:21,
119:17, 119:19,
120:2, 120:5,
120:11, 120:18,
120:25, 121:8,
122:18, 125:25,
126:9, 128:3,
137:24, 138:4,
138:5, 138:13,
141:19, 142:2,
142:22, 143:12,
153:2, 153:4,
153:11, 153:13,
155:22, 165:25,
169:16, 174:18,
175:23, 176:3,
176:21, 177:4,
177:25, 179:10
**investigations**
110:4
**invited**
112:16
**invoices**
179:25, 180:24
**involved**
37:12, 88:24,
90:5, 94:3
**involvement**
17:6, 98:19
**involving**
31:24, 67:24
**ip**
3:23, 21:10,
23:20, 24:11,
27:19, 53:3,
53:4, 55:12,
56:5, 63:2,
72:17, 76:25,
89:25, 90:14,
101:10, 101:23,
102:4, 113:12,
114:22, 114:24,
115:9, 115:16,

137:19, 143:22,
143:24, 144:4,
144:11, 144:13,
144:25, 146:15,
149:4, 149:8,
150:4, 150:10,
150:15, 150:21,
153:14, 163:14,
164:11, 167:13,
168:5, 168:7,
168:13, 168:14,
168:15, 168:19,
168:22, 169:22,
171:4, 171:8,
171:24, 172:1,
172:17, 172:18,
175:4, 177:21,
178:7, 180:8,
180:14, 181:8,
181:10, 181:21,
181:23, 181:24,
182:9, 182:19,
182:20, 183:12,
183:22, 184:2,
184:5, 184:10,
184:15, 184:19,
185:1
**ip's**
63:11, 64:10,
108:4, 122:18,
141:1, 142:16,
155:22, 155:23,
163:17, 163:21,
165:9, 165:25,
166:1, 166:7,
168:12, 168:24,
169:24, 170:6
**irregularities**
136:25
**issue**
20:2, 39:12,
46:6, 79:12,
98:25, 152:13
**issued**
41:1
**issues**
101:12
**item**
55:17, 142:11,

143:19, 151:18,
152:11, 152:17,
152:23, 153:18,
162:10, 165:17,
168:12, 175:16,
184:21
**items**
15:17, 23:7,
26:19, 43:25,
44:3, 142:12
**itself**
100:9, 173:6
**iv**
37:20

---

**J**

**jag's**
25:10, 54:9,
54:22, 108:22,
117:21, 118:7,
119:5, 120:6,
121:12, 125:2,
126:10, 130:18,
137:21, 164:3,
166:6, 167:23
**jagannath**
24:1, 48:22,
48:25, 78:20,
114:22, 114:24,
115:7, 115:11,
115:14, 115:18,
115:20, 116:1,
116:5, 116:7,
116:11, 116:12,
116:18, 116:20,
116:23, 122:13,
163:18, 163:23,
164:12, 165:10,
166:2, 168:14,
168:25, 169:11,
169:25
**jagannath's**
4:19, 117:18,
126:20, 126:24,
156:15, 163:13,
163:22
**jane**
3:23, 5:21

**january**
26:21, 26:25,
27:5, 27:9,
86:23
**job**
1:22, 31:16,
36:6, 183:16
**john**
3:4, 5:16,
6:12, 7:18
**joined**
5:25, 17:20
**joint**
95:23, 95:24
**judgment**
132:16
**july**
16:2, 16:6,
16:14, 16:19,
17:4, 17:21,
17:23, 17:25,
18:11, 18:16,
31:20, 40:2,
46:7, 46:8,
99:24, 100:11,
100:22, 101:9,
104:1, 155:16,
155:18, 156:9,
156:13, 157:10,
159:4, 163:4,
164:25, 165:15,
177:17
**june**
18:11, 18:15,
114:21, 116:1,
118:1, 118:5,
118:11, 119:5,
121:17, 122:14,
125:4, 155:6,
155:10, 157:10,
159:12, 160:11
**jury**
42:14, 43:5
**justice**
135:17, 135:24

---

**K**

**k&l**
3:7, 5:17

karen
1:24, 2:9, 6:3,
188:2
kathy
115:3
kaufman
98:17, 98:22,
99:19, 102:14,
102:16, 104:11
kbg
115:4, 115:7,
164:11
keeley
14:1, 91:15,
91:19, 101:18,
104:15, 155:11,
155:16, 156:14,
160:21
keeley's
90:9, 93:2,
93:13
keep
52:9, 82:3,
108:20, 115:5,
172:22
kind
7:23, 23:17,
44:8, 60:2,
161:11
klerekoper
1:24, 2:9, 6:3,
188:2
knew
115:20, 117:13,
117:18
know
7:22, 7:24,
8:3, 9:14, 9:22,
13:24, 17:7,
17:8, 17:9,
17:15, 27:21,
28:23, 32:23,
55:1, 57:5,
100:2, 103:17,
103:23, 103:24,
104:2, 104:3,
104:4, 104:6,
106:17, 109:3,

109:19, 110:6,
110:10, 110:15,
111:14, 120:12,
130:15, 131:20,
136:6, 173:25,
174:22, 176:5,
185:18, 186:1
knowing
34:9, 117:20
knowledge
12:6, 16:11,
78:18, 83:6,
85:14, 156:7,
156:22
kumar
24:16, 53:9,
122:14, 137:21,
137:25, 140:7,
140:8, 140:14,
140:24, 141:14,
143:13, 155:24,
163:18, 163:21,
164:13, 165:10,
166:2
kumar's
156:16

L

laid
178:14
language
44:16, 45:4,
50:24, 71:19,
72:3, 83:13,
85:15, 147:10
large
21:19
last
7:2, 40:18,
84:24, 100:19,
136:22, 143:20,
144:3, 144:8,
144:9, 165:20,
179:24
late
79:10, 87:10,
87:15, 89:19
later
49:5, 72:15,

73:17, 76:6,
76:8, 80:5,
82:25, 83:17
laura
3:6, 5:19
law
5:16, 62:6,
62:7, 90:9,
90:12, 91:19,
92:2, 92:5,
92:11, 92:14,
93:1, 93:2,
93:3, 93:9,
93:10, 93:13,
94:2, 94:4,
98:16, 98:22,
104:19, 139:14
lawsuit
6:15, 91:4,
91:11, 91:13,
91:17, 92:3,
92:13, 93:3,
94:5, 94:15,
95:19, 102:25,
118:25, 125:5,
126:13, 164:4
lawyer
166:6
lawyers
102:20, 102:24,
103:9, 104:11,
104:14, 104:18,
107:18, 107:19,
108:21, 108:22,
116:6, 116:8,
116:10, 118:16,
119:14, 129:17,
129:25, 135:21,
155:18, 164:3,
165:6, 165:14,
166:6, 167:23,
177:17, 177:18
lead
134:16
leader
19:2
learn
14:6, 14:14,

14:19, 42:16,
107:17, 108:3
learned
99:20, 110:15,
110:23, 111:16,
112:7, 112:14,
113:5, 120:17,
121:2, 125:20,
128:4, 172:12,
175:4
learning
34:18
least
36:18, 111:5,
118:6, 135:3,
143:5, 156:25
leave
37:25
lee
17:7, 17:12,
103:18, 103:19,
104:9
left
18:3, 18:11,
104:1, 158:25,
159:6
legal
134:2
legitimate
60:7
less
27:5
let's
17:11, 18:5,
29:5, 32:18,
50:10, 61:4,
67:4, 67:21,
69:3, 85:22,
122:11, 136:15,
138:14, 151:2,
162:24, 186:13
letter
89:22, 90:21,
99:3, 114:18,
115:22
letting
110:6
level
145:15

light
140:23
liked
31:7
limit
81:23
limitations
82:11, 82:19
limited
67:13, 68:10,
81:5, 161:7
limits
19:8, 94:25,
95:11
line
41:15, 59:3,
59:5, 163:11
linkedin
4:11, 29:7,
29:11, 29:18,
36:18, 37:18
listed
12:15, 15:14,
155:15, 158:7,
165:8
listen
43:5
listing
158:8
litigation
13:9, 20:3,
20:22, 21:1,
21:17, 21:18,
21:23, 21:24,
24:2, 28:5,
37:10, 88:19,
89:23, 91:22,
93:14, 96:5,
97:4, 113:6,
113:14, 119:10,
125:22, 133:12
little
82:8, 91:4,
98:11, 185:18,
185:19
live
7:11, 7:12
llp
3:7, 3:15

located
19:3, 20:10,
104:2
logistical
185:5
long
15:18, 15:24,
17:12, 17:15,
18:9, 185:20,
186:2, 186:7
longer
92:4, 174:23,
185:19
look
10:17, 11:21,
12:17, 29:5,
42:22, 49:3,
62:3, 69:3,
69:16, 84:24,
85:25, 87:17,
140:10, 143:20,
150:1
looked
91:7, 176:18
looking
10:25, 136:20,
144:3, 149:17,
151:17, 151:19,
165:21, 167:7,
177:25
looks
155:5
loss
17:10, 17:11,
17:13, 18:1,
18:5, 20:25,
21:11, 43:17,
48:16, 50:15,
66:9, 66:18,
66:19, 67:7,
67:12, 67:15,
67:23, 68:9,
89:20, 90:25,
91:1, 99:4,
99:5, 103:16,
114:17, 152:9,
160:8
losses
36:20, 37:3,

38:18, 48:5,
70:18, 70:19,
70:20
lot
42:24, 42:25,
43:1, 185:22
lunch
83:23, 83:25,
84:2, 105:2,
105:10, 136:20
lying
32:21, 34:2,
175:24, 178:24

**M**

made
6:17, 19:23,
20:20, 22:4,
22:7, 24:11,
24:21, 25:18,
26:1, 26:8,
26:11, 39:20,
40:24, 41:3,
41:5, 41:16,
41:17, 47:18,
47:22, 48:1,
56:16, 65:24,
67:22, 72:8,
72:16, 72:19,
72:25, 76:2,
76:18, 93:4,
93:7, 103:7,
103:17, 111:7,
134:10, 135:4,
142:10, 142:17,
142:19, 143:1,
143:9, 143:18,
158:5, 165:16,
180:15, 181:11,
182:3
maintaining
81:14
majority
183:14
make
21:5, 22:15,
22:17, 22:25,
23:4, 23:13,

26:24, 27:8,
27:11, 27:15,
27:17, 38:20,
38:25, 39:24,
42:6, 43:20,
44:4, 44:18,
44:23, 58:24,
82:7, 83:24,
123:3, 132:9,
132:11, 132:14,
151:24, 156:25,
176:20, 176:23,
178:17, 178:22,
179:3
makes
118:4, 131:7,
134:6, 150:25
making
75:21, 169:10
malcolm
96:24, 96:25,
97:17
man
24:13, 131:4
management
103:2, 103:4,
180:5, 181:5,
184:8, 184:9,
184:24
manager
7:17, 18:17,
18:20, 18:22,
19:19, 42:4,
115:19, 116:19,
117:10, 117:13
managers
36:19, 115:12
mandated
146:9, 146:14
manner
115:8, 164:13
mannis
122:15, 155:7,
155:13, 155:17,
155:21, 156:15,
165:24, 166:6
manual
147:2, 148:4,

149:25
**manufacture**
144:12
**many**
28:8, 70:17,
120:21
**march**
147:3
**marked**
10:21, 11:3,
29:6, 45:24,
46:5, 52:5,
52:8, 69:7,
84:7, 113:22,
126:19, 154:4,
154:5
**marks**
187:8
**markup**
180:3, 180:8,
180:13, 181:2,
181:7, 181:21,
182:8, 182:20,
183:22, 184:2,
184:6, 184:10,
184:15, 184:19,
185:1
**mary**
3:23, 5:21
**material**
48:1
**materials**
142:25
**matter**
5:4, 8:20,
8:21, 16:1,
16:5, 39:25,
63:14, 63:21,
94:23, 95:21,
102:10, 102:25,
131:20, 132:23,
134:20, 135:23,
138:12, 141:5,
143:3, 143:10,
143:18, 174:22,
179:11
**matters**
11:9, 41:4,

85:12
**maxwell**
3:14
**maybe**
136:6
**mean**
17:23, 35:18,
45:10, 61:13,
65:7, 65:18,
75:13, 79:21,
80:13, 95:15,
102:12, 117:24,
135:21, 138:7,
149:6, 160:2,
160:17, 161:2,
161:18, 180:17,
185:22, 185:23
**meaning**
39:23, 46:25,
102:13, 145:10
**means**
14:8, 14:16,
14:19, 49:10,
50:18, 61:8,
61:23, 66:1,
80:16, 149:6,
149:8
**meant**
159:11
**media**
5:2
**meet**
108:11, 108:13,
110:4, 115:9,
144:15, 145:2,
149:2, 159:10,
160:10, 170:16
**meeting**
107:9, 108:8,
108:21, 109:4,
109:13, 109:20,
110:15, 110:21,
111:8, 111:13,
111:15, 111:17,
111:23, 111:24,
111:25, 112:14,
112:22, 113:5,
113:12, 113:15,

114:21, 115:25,
116:5, 118:5,
118:6, 118:9,
118:11, 118:13,
118:14, 118:16,
118:23, 119:4,
119:8, 119:13,
119:21, 120:17,
121:3, 121:13,
121:18, 125:3,
136:11, 155:19,
156:8, 156:12,
156:17, 156:19,
156:21, 156:25,
157:10, 159:14,
163:3, 163:4,
163:7, 163:9,
164:6, 164:20,
164:23, 165:6,
165:15, 165:24,
168:23, 169:24,
170:5, 171:7,
171:11, 177:16
**meetings**
108:15, 112:7,
121:14, 121:15,
125:21, 126:1,
154:15, 160:24,
160:25, 177:9,
177:14
**member**
35:18, 35:24
**memphis**
156:9, 156:13
**mention**
126:15
**mentioned**
9:1, 14:4,
17:21, 121:10,
125:1, 125:3,
160:7
**met**
116:11, 159:11
**methods**
156:10
**miami**
3:17, 29:22,
30:18

**michael**
90:9, 101:17,
155:11
**michigan**
2:10, 188:22
**mid-south**
24:18, 25:10,
51:4, 51:21,
53:3, 53:22,
54:2, 54:9,
54:21, 55:8,
56:5, 56:12,
57:2, 63:4,
63:12, 64:11,
106:13, 115:13,
117:20, 131:12,
137:3, 137:14,
137:15, 137:20,
138:9, 140:11,
140:12, 140:19,
140:25, 141:14,
141:23, 142:5,
143:13, 145:25,
146:5, 146:16,
149:10, 149:17,
150:7, 150:11,
150:18, 150:22,
151:5, 151:11,
151:22, 152:5,
152:8, 152:16,
152:21, 153:1,
153:7, 153:17,
162:21, 163:20,
163:22, 164:14,
165:10, 168:20,
171:24, 172:4,
172:11, 172:13,
172:17, 172:19,
172:20, 172:22,
173:1, 173:2,
173:13, 173:17,
173:20, 174:4,
174:12, 175:6,
175:9, 175:13,
177:11, 177:22,
178:5, 178:6,
181:22, 182:4,
182:14, 182:16,

182:25, 183:5,
184:22, 184:25,
185:8, 185:9
**mid-south's**
182:18
**middle**
95:3, 112:20,
165:19, 165:20
**might**
10:2, 42:16,
76:24, 79:17,
93:18
**million**
19:8, 59:12,
60:1, 67:7,
67:9, 160:8,
175:2, 176:10
**millions**
24:16, 70:17
**mills**
143:24
**mind**
41:13
**mind-set**
174:16
**mine**
136:10
**minor**
29:23, 30:1
**minority**
183:8
**minority-owned**
144:15, 145:1,
145:10, 146:21,
150:6, 150:17,
172:3, 180:19,
181:14, 182:12,
182:23
**minute**
8:6, 83:22,
84:17
**minutes**
41:11, 105:3,
153:21
**mischaracterizes**
123:12, 123:25,
126:6
**misleading**
65:13

**misrepresentation**
34:2
**misrepresentatio-
ns**
33:4, 47:18,
47:22
**missing**
49:20
**misspeak**
176:17
**misspoke**
30:14
**mistake**
159:14
**moment**
96:21, 185:16,
186:16
**monday**
1:18
**money**
24:18, 28:20,
49:11, 50:19,
59:15, 60:3,
60:6, 64:6,
66:2, 66:20,
67:25, 78:19,
133:20, 135:13,
146:10, 148:14,
148:15, 148:25,
149:9, 149:17
**monies**
24:16, 25:9,
51:2, 51:20,
61:9, 133:13
**monitor**
5:9
**month**
27:6, 64:20,
65:1
**months**
13:21, 27:19,
87:3
**more**
22:14, 27:23,
40:14, 40:16,
58:24, 65:4,
65:6, 163:15,
185:23

**morning**
6:12
**most**
179:24, 180:24
**much**
41:12
**multiple**
123:25, 125:1,
132:21, 142:9
**mutually**
174:11, 186:8,
187:2

**N**

**name**
6:12, 7:1, 7:2,
11:22, 96:18,
96:21, 98:17,
140:21
**named**
50:13
**narrative**
38:8, 90:25,
91:2
**nathan**
3:5, 5:19
**nature**
24:10, 24:20,
32:3, 75:20
**nd**
188:14
**near**
27:3, 27:4,
27:12, 27:18,
27:24, 43:25,
86:16, 187:3
**nearing**
22:1, 73:17,
73:18
**necessarily**
74:1
**necessary**
119:19, 131:23
**need**
7:23, 9:20,
10:2, 22:14,
22:25, 23:4,
26:16, 41:12,

43:6, 43:18,
44:6, 44:14,
45:1, 45:11,
58:24, 59:4,
59:9, 62:10,
62:17, 65:6,
67:24, 101:9,
138:17
**needed**
159:25, 160:14,
161:6, 161:12
**needing**
58:14
**needs**
168:24, 169:25,
170:6, 170:16,
171:7, 171:11,
186:3
**negotiating**
183:13
**neither**
188:9
**never**
29:2, 101:9,
101:13, 125:6,
125:8
**new**
7:7, 7:12,
16:18, 19:4,
20:11, 31:9,
31:13, 49:21,
83:24, 91:12,
92:5, 93:10,
93:19, 94:2,
104:4
**next**
9:7, 22:2,
41:11, 43:7,
49:19, 80:24,
115:5, 115:22,
146:25, 150:1,
158:11, 166:24,
184:4, 184:8,
184:13, 184:17
**ninth**
77:20
**nobody**
35:10

**nondisclosures**
48:1
**none**
156:4
**nonetheless**
134:14
**normal**
50:2
**notarial**
188:14
**notary**
2:10, 188:1,
188:22
**note**
114:6, 114:8,
114:13, 115:25,
116:4, 116:16,
116:25, 117:4,
140:4, 157:3,
157:7, 157:11,
157:16, 157:20,
157:23, 157:24,
158:5, 158:7,
158:8, 158:10,
158:12, 158:15,
159:7, 160:2,
160:3, 161:9,
161:15, 162:14,
162:18, 166:20,
166:25, 167:1,
167:10, 168:10,
169:11, 169:18
**notes**
4:18, 10:12,
12:14, 12:17,
16:25, 17:6,
97:21, 97:23,
100:7, 100:9,
113:8, 113:14,
113:21, 113:23,
114:9, 118:4,
118:24, 121:14,
124:16, 124:17,
124:23, 125:15,
156:23, 156:24,
157:15, 158:13,
158:15, 166:17,
166:22

**nothing**
157:13
**notice**
2:9, 4:8, 4:10,
8:3, 8:9, 10:15,
10:19, 10:20,
10:22, 11:2,
11:4, 11:6,
11:22, 11:25,
12:15, 12:17,
15:16, 17:10,
17:11, 17:13,
21:7, 64:22,
67:17, 78:14,
79:10, 80:10,
87:10, 87:12,
87:15, 87:20,
89:19, 94:24,
95:10, 96:6,
98:21, 99:5,
103:16, 126:7
**noticed**
133:3, 133:10,
135:5
**notices**
7:23, 78:15
**notion**
55:7
**notwithstanding**
22:5
**november**
85:1, 86:14,
87:8, 91:8,
92:3, 136:19,
158:16
**number**
5:3, 5:7, 14:7,
14:13, 21:22,
28:13, 40:5,
40:8, 40:9,
40:21, 41:23,
46:5, 46:8,
46:16, 48:10,
49:7, 52:8,
56:21, 86:1,
127:3, 157:3,
176:12, 176:14,
176:17, 179:15

**numbered**
48:8, 114:3,
154:21, 156:24,
157:2

**O**

**oath**
6:6, 13:7,
13:12, 13:16,
13:20, 13:25,
21:23, 91:22
**object**
130:13, 140:4
**objection**
15:9, 22:9,
23:2, 23:5,
24:5, 24:23,
25:13, 28:22,
33:22, 34:5,
35:3, 35:11,
35:15, 36:7,
36:15, 37:14,
42:8, 42:21,
43:11, 43:23,
44:11, 44:24,
45:8, 51:15,
51:24, 52:19,
54:14, 54:23,
55:3, 55:25,
56:7, 57:10,
57:25, 59:8,
59:17, 59:22,
60:8, 60:16,
60:24, 61:15,
61:24, 62:5,
62:21, 63:6,
63:13, 63:20,
64:21, 65:2,
65:12, 65:21,
66:11, 66:23,
67:16, 68:3,
68:13, 68:19,
88:20, 90:15,
91:24, 92:16,
93:15, 93:23,
94:7, 94:8,
94:16, 99:22,
101:14, 101:24,

102:6, 103:1,
103:12, 108:23,
109:8, 109:15,
109:24, 110:8,
110:16, 110:25,
111:9, 111:18,
112:1, 112:9,
113:7, 118:10,
118:18, 119:6,
119:15, 119:24,
120:9, 120:20,
121:5, 121:7,
123:7, 123:11,
123:24, 124:13,
125:10, 126:5,
128:11, 128:24,
130:1, 130:20,
131:5, 131:18,
132:2, 132:20,
134:1, 134:12,
138:10, 140:4,
140:13, 140:20,
141:2, 141:15,
141:24, 142:8,
142:23, 143:7,
143:15, 145:17,
148:19, 149:5,
149:13, 149:21,
157:21, 158:3,
159:16, 172:24,
173:7, 173:21,
174:13, 174:21,
175:14, 177:3,
177:12, 178:9,
179:1, 185:6,
185:13
**objects**
86:6
**obligation**
112:5, 121:1
**observation**
112:17, 113:16,
175:25
**observe**
13:19
**observed**
13:17, 13:22
**obtain**
49:14, 50:22,

66:5, 68:9,
147:7
**obtained**
59:19, 60:13,
60:20, 68:12,
109:23, 130:23,
151:10, 164:19,
167:4, 167:11
**obtaining**
112:11
**obviously**
158:13, 186:1
**occasion**
31:23
**occurred**
159:2, 160:24,
177:5, 179:12
**october**
114:6, 166:21,
167:2, 167:8,
167:11, 167:14,
188:18
**offer**
135:3
**offered**
132:25, 133:10,
134:14, 134:25,
161:22
**offhand**
41:21, 103:24,
104:3
**office**
3:14, 7:9,
19:5, 20:11,
63:9, 63:18,
135:18, 135:25
**officer**
188:2
**often**
34:16
**oftentimes**
34:20
**oh**
7:11, 31:11,
96:20, 96:24,
122:5, 124:17,
136:6, 136:13,
156:10

**omissions**
48:2
**once**
92:3, 92:13,
93:3, 94:15,
96:8, 99:10,
99:24, 120:23,
172:19, 173:14,
174:4
**one**
7:18, 13:19,
16:18, 28:17,
33:17, 34:13,
35:6, 42:15,
42:17, 43:17,
50:10, 63:4,
82:17, 84:14,
84:17, 97:16,
98:10, 107:8,
121:13, 124:9,
132:16, 138:18,
141:12, 155:4,
155:5, 155:8,
175:19, 176:1,
176:2, 176:24,
177:21, 179:5,
179:11, 181:17,
183:13, 184:4,
184:8, 184:13,
184:17
**ones**
15:14, 36:10,
91:20
**ongoing**
86:20, 118:3,
138:5, 141:20,
153:11
**only**
13:22, 38:3,
43:14, 76:16,
87:3, 97:15,
97:18, 102:24,
124:11, 133:19,
134:6, 140:18,
145:12, 148:6,
159:25, 160:14,
161:6, 171:4,
181:25

**open**
23:8, 29:17,
52:12, 52:13,
69:15, 70:24,
71:3, 84:14,
84:16, 85:24,
86:18, 113:25,
114:2, 114:4,
114:5, 126:22,
126:25, 136:14,
136:17, 138:18,
138:19
**opened**
69:13, 69:21
**opening**
12:1, 29:13
**operate**
143:24, 164:13
**operated**
185:10
**operations**
60:7, 146:20
**opportunity**
38:1, 119:11,
119:23, 120:8,
121:3, 133:1,
134:15
**opposed**
103:9
**order**
23:4, 44:22,
58:9, 64:2,
66:10, 139:16,
158:14, 167:24,
176:25
**ordinance**
139:14
**ordinary**
132:8, 174:20,
175:20, 177:10,
177:20, 178:2,
178:7, 179:7
**original**
12:19, 87:12,
87:15, 103:7
**other**
9:8, 9:20,
12:1, 12:16,

14:8, 14:16,
14:19, 14:20,
14:24, 15:12,
15:13, 15:14,
15:21, 25:21,
27:23, 28:16,
33:4, 34:21,
36:3, 36:9,
36:10, 40:22,
40:23, 41:6,
59:3, 59:4,
60:12, 63:4,
64:11, 67:11,
68:17, 74:20,
77:5, 77:16,
78:8, 78:19,
80:22, 81:18,
83:11, 83:15,
83:16, 85:14,
88:25, 90:12,
91:1, 98:4,
98:10, 102:17,
104:18, 106:14,
108:5, 113:12,
114:23, 115:11,
121:14, 121:15,
121:17, 124:4,
124:5, 124:9,
124:22, 134:9,
139:13, 141:9,
141:19, 144:14,
151:1, 151:24,
155:17, 164:10,
165:11, 168:12,
175:6, 177:22,
179:6, 179:25,
180:24, 183:8,
186:3, 186:5
**others**
34:23, 35:7,
49:14, 50:22,
66:5, 82:1,
104:19, 183:1,
183:4, 183:5,
183:6
**otherwise**
7:25, 10:2,
10:9, 13:11,

53:13, 54:2,
139:17, 188:11
**out**
6:16, 34:8,
34:12, 34:16,
62:12, 62:13,
67:8, 69:25,
73:15, 95:3,
98:13, 114:12,
129:15, 136:11,
172:19, 173:3,
173:14, 174:5,
178:14
**outcome**
188:12
**outside**
12:7, 28:4,
67:10, 100:24,
105:14, 135:23
**over**
8:24, 9:8,
16:6, 17:4,
18:3, 23:18,
28:9, 36:13,
40:18, 70:10,
71:6, 88:2,
91:4, 127:24,
130:17, 134:19,
135:10, 146:25,
158:18, 158:24,
168:15
**overall**
153:10
**overbroad**
128:11, 131:6,
131:19, 142:23
**owe**
128:7
**owed**
120:15
**own**
32:12, 33:14
**owned**
185:4, 185:9

**P**

**p&g**
115:10

**p-i-a**
7:2
**packaging**
180:5, 181:4,
184:4, 184:5,
184:24
**page**
4:2, 4:6, 47:3,
47:5, 48:8,
48:10, 48:12,
48:18, 52:24,
56:21, 69:18,
69:20, 70:11,
71:1, 71:4,
71:23, 75:13,
77:21, 80:24,
84:24, 85:22,
85:23, 87:17,
87:19, 98:9,
114:3, 115:5,
116:17, 121:22,
121:23, 127:5,
129:10, 136:15,
136:22, 138:21,
138:25, 140:21,
143:21, 144:1,
144:2, 146:18,
147:1, 148:11,
150:2, 150:14,
154:20, 154:21,
155:1, 156:24,
157:2, 158:11,
163:1, 163:2,
163:8, 165:18,
165:19, 165:20,
166:17, 166:19,
166:20, 166:24,
167:6, 167:7,
169:3, 171:17,
171:22, 171:25,
179:13, 179:17,
179:19, 179:20,
179:24
**pages**
1:23, 21:16,
23:19, 49:5,
88:16, 89:21,
130:17, 130:21

**paid**
25:9, 47:10,
47:14, 51:2,
51:21, 59:12,
60:14, 70:15,
135:13
**palmer**
3:23, 5:21
**paper's**
20:23, 39:17,
39:21, 41:24,
42:18, 46:17,
46:22, 76:13,
94:22, 98:24,
111:7, 126:13,
131:10, 135:19,
145:8, 147:4,
148:3, 173:24
**paragraph**
52:22, 55:10,
56:11, 56:17,
56:23, 57:15,
57:21, 69:22,
70:24, 71:6,
71:9, 71:10,
71:11, 136:21,
138:22, 138:25,
143:20, 143:21,
143:22, 144:3,
144:8, 144:10,
146:19, 150:1,
150:14, 154:22,
155:1, 155:3,
165:19, 165:20,
179:18, 180:17
**part**
13:22, 16:20,
25:2, 25:11,
50:8, 52:17,
58:20, 58:22,
61:3, 63:16,
66:13, 74:24,
78:12, 78:17,
82:10, 100:19,
110:11, 114:12,
116:17, 122:9,
123:14, 124:2,
146:14, 146:19,

147:18, 148:2,
168:20, 170:7,
170:11, 170:12,
178:25, 183:16
**partial**
146:18
**participate**
109:14, 112:16
**participated**
91:21, 107:10
**particular**
45:5, 102:10,
151:17, 152:11,
152:23, 153:18,
165:7, 165:15,
170:16, 171:7
**particularly**
48:8
**parties**
5:12, 53:2,
65:5, 163:9,
188:10
**partnership**
139:13
**party**
20:17, 28:19,
28:20, 139:4,
139:7
**passthrough**
115:8
**past**
43:2, 88:3
**pay**
59:25, 60:11,
133:20, 175:1
**paying**
60:22
**payment**
176:10
**payments**
133:22, 134:7,
134:10
**pdf**
48:10, 48:11,
48:12, 114:3
**pending**
9:21, 26:19,
32:24, 44:1

**pennsylvania**
3:9
**pensions**
50:4
**perform**
94:16, 182:17
**performed**
181:20
**performing**
108:25, 109:9,
109:16, 111:1,
111:12, 112:3,
112:10, 119:16,
119:18, 120:2,
120:4, 120:10,
120:24, 121:8,
126:8, 128:2
**period**
40:4, 42:16,
46:7, 49:18,
49:21, 78:1,
87:14, 89:25,
120:3, 120:11,
152:9, 158:18,
159:5
**permitted**
10:8
**person**
35:1, 35:25,
97:18, 134:9
**personally**
26:1, 90:18,
96:3
**persons**
33:4
**persuade**
42:17
**phone**
101:10, 107:7,
121:11, 155:4,
155:9
**photos**
115:18, 116:18,
116:21, 116:22,
116:23, 117:2,
117:3, 117:8
**phrase**
144:4

**pia**
1:16, 2:2, 4:3,
5:3, 6:8, 7:2,
7:21, 11:23,
74:5, 187:9
**pick**
101:9
**piece**
151:25
**pieces**
26:15
**pittsburgh**
3:9
**place**
97:13, 105:14,
108:16, 109:13,
111:15, 114:16,
118:14, 155:5,
156:6, 156:21,
157:9, 157:17,
163:3, 164:23
**plains**
7:12
**plaintiff**
1:7, 3:3, 5:17,
6:14, 71:17,
71:25, 78:13,
78:18, 78:21,
81:3, 87:20,
126:23, 136:22,
146:20
**plaintiff's**
4:22, 74:24,
77:24, 78:12,
78:16, 81:2,
82:10, 84:20,
121:25, 122:3,
136:25, 146:21,
154:7, 154:9
**plaintiffs**
147:1
**planet**
3:21, 3:22,
5:12, 6:3
**plant**
185:3, 185:9
**played**
168:25, 169:1,

169:12, 169:13,
170:1
**plaza**
7:5
**plead**
122:21
**please**
5:14, 35:4,
36:8, 40:6,
42:23, 56:8,
56:15, 64:24,
66:12, 92:10,
93:25, 100:20,
113:20, 123:8,
125:18, 134:4,
146:8, 148:1,
149:15, 150:13,
171:3, 177:15
**point**
18:12, 21:1,
25:19, 44:17,
44:21, 45:6,
76:10, 76:19,
77:4, 77:15,
79:24, 89:17,
99:6, 117:22,
118:3, 133:18,
134:19, 153:3,
153:13
**policies**
30:12, 61:5,
70:8
**policy**
4:12, 19:8,
20:25, 22:13,
22:19, 22:23,
24:9, 25:5,
25:17, 26:3,
39:12, 41:1,
41:4, 41:8,
42:20, 43:10,
44:16, 45:4,
45:14, 45:25,
46:6, 46:7,
46:8, 46:10,
46:12, 46:15,
46:16, 46:21,
47:1, 47:4,

47:11, 47:15,
47:19, 47:23,
48:2, 48:5,
48:8, 50:9,
50:13, 50:16,
57:24, 61:18,
62:20, 62:23,
63:24, 66:1,
68:5, 68:10,
68:15, 68:17,
75:1, 75:23,
76:15, 76:16,
76:20, 77:24,
77:25, 78:1,
78:15, 78:16,
81:4, 81:7,
95:1, 95:9,
95:10, 95:11,
131:24, 132:19,
132:24, 133:7,
133:21, 135:13,
135:14, 142:15,
143:3, 147:2,
148:3, 177:7,
179:4, 179:11
**policyholder**
39:1, 101:3,
101:5, 101:22,
102:19, 109:19,
110:6, 120:15,
125:16, 126:3,
126:4, 127:25,
128:6, 128:8,
128:9, 128:19,
134:7, 168:5,
178:19
**policyholders**
38:23, 40:23,
41:6
**portion**
66:16, 76:15,
76:16, 115:17,
166:25, 167:1
**portions**
13:17, 131:13
**position**
7:15, 20:7,
20:16, 31:12,

38:19, 114:16,
132:9, 132:11,
132:14, 133:5,
133:16, 134:18,
141:17, 162:13,
168:14, 168:25,
169:12, 170:1
**positive**
41:16
**possibility**
58:5
**possibly**
76:24
**posted**
136:5
**potential**
68:7, 73:15,
76:23, 77:8,
79:4, 79:24,
87:21
**potentially**
32:20, 33:3,
33:7, 33:24,
34:6, 55:20,
56:2, 58:3,
58:4, 58:7,
141:11
**practice**
125:24
**pre-litigation**
90:20
**preceded**
16:23, 22:6
**precedent**
70:8, 81:3
**preclude**
35:25
**predated**
168:14
**predecessor**
103:25
**preference**
84:3
**premature**
86:7
**premises**
38:16
**premium**
47:4, 47:10,

47:14
**premiums**
70:15
**preparation**
15:22, 37:12,
73:11, 85:19,
97:24, 104:12,
104:15, 104:20,
104:23
**prepare**
12:12
**prepared**
11:18, 73:24,
128:1
**preparing**
15:18, 104:7
**present**
3:20, 32:9,
159:20
**presentation**
54:17, 114:15
**presented**
160:24, 161:9
**presently**
83:5
**pretty**
124:19
**prevent**
76:24
**previous**
65:15, 93:20,
94:8, 169:18,
169:19, 171:14
**previously**
44:13, 45:1,
52:15, 52:21,
65:23, 68:21,
69:2, 76:3,
94:3, 110:11,
110:18, 111:20,
112:19, 113:18,
120:1, 123:20,
125:13, 132:22,
138:12, 141:4,
143:9, 159:3
**price**
180:7, 180:13,
181:7, 181:21,

182:8, 182:20
**pricing**
159:24, 160:13,
161:5
**principal**
114:22, 159:11,
160:10
**prior**
13:8, 16:5,
16:12, 17:4,
21:17, 21:23,
77:25, 89:23,
89:25, 90:7,
91:17, 91:22,
93:14, 94:5,
95:18, 96:5,
100:15, 119:2,
119:10, 125:5,
125:22, 133:22,
157:7
**privilege**
92:25
**privileged**
129:10, 129:21
**probably**
8:25, 186:5,
186:11
**problem**
106:1
**procedural**
148:4
**procedure**
147:2
**proceeding**
60:23
**proceedings**
60:23, 188:3,
188:5, 188:6
**process**
23:8, 58:21,
73:2, 110:19,
111:11, 111:21,
133:6, 169:2,
169:7, 169:14,
178:16, 181:4,
183:25, 184:1,
184:23
**processing**
180:5

**procurement**
47:19, 48:2
**procuring**
47:22
**produced**
23:20, 89:1,
89:22, 90:13,
90:19, 116:22,
127:2, 129:15
**producing**
113:13
**production**
44:22, 127:3
**professional**
15:25, 16:5
**professionals**
96:4
**profit**
50:4
**program**
144:16, 145:3,
146:22, 147:4,
147:14, 147:19,
148:5, 148:13,
148:24, 152:1,
159:23, 160:12,
161:4, 161:13,
163:17, 168:20,
170:8, 170:13,
170:18, 171:5
**programs**
152:4
**progressive**
30:5, 30:24,
31:4, 31:6,
31:8, 38:9
**promised**
168:5
**promising**
162:3, 162:12
**promote**
147:4, 148:6
**promoting**
147:19
**promotion**
37:21
**promotions**
50:4

proof
18:1, 18:5,
21:11, 89:20,
99:4, 160:8
property
49:11, 50:19,
61:9, 64:6,
66:2, 75:16
proposed
126:11
proposing
164:4
propounded
12:21, 136:4
protective
31:14
prove
114:14, 115:20
provide
11:10, 70:4,
78:13, 88:13,
91:5, 115:2,
117:7, 123:18,
127:12, 127:16,
128:8, 128:21,
143:24, 148:17,
148:24, 160:1,
160:14, 161:6,
161:12, 161:16,
161:24, 162:4,
162:7, 162:12,
162:19, 180:3,
181:3, 182:6,
183:18, 185:4,
185:10
provided
11:23, 13:8,
21:10, 21:15,
21:19, 42:25,
43:1, 87:20,
88:6, 88:17,
89:18, 90:1,
99:3, 100:5,
112:24, 113:2,
113:8, 115:18,
115:23, 116:15,
116:18, 117:6,
118:1, 121:21,

126:16, 129:1,
129:3, 129:14,
129:17, 142:25,
143:23, 150:8,
150:19, 153:8,
160:19, 162:9,
162:23, 164:5,
164:6, 171:23,
172:5, 176:7,
183:21, 184:2,
184:5, 184:10,
184:15, 184:19,
184:25
providence
3:14
provides
48:5
providing
133:22, 149:3,
149:18, 162:21
proving
67:23
provision
61:14, 62:9,
77:23, 78:15,
139:12
psychology
30:2, 32:5,
174:2
public
2:10, 188:1,
188:22
pull
52:3
purchaser
183:11
purchases
180:6, 181:5,
184:13, 184:24
purchasing
24:12, 28:18,
28:21, 42:4,
147:21, 148:25,
184:14
purported
106:10, 106:13,
162:16
purpose
96:12, 147:3,

147:13, 148:4
purposes
61:21, 68:25,
158:7
pursuant
2:9, 53:3,
55:12, 64:7,
77:23, 133:21
pursue
76:5, 76:8,
80:18, 133:11,
134:8
pursued
73:25, 75:6,
75:7, 76:4,
76:21, 77:3,
77:14, 77:17,
78:5, 79:6,
79:14, 79:18,
79:20, 79:25,
80:1, 80:2,
80:11, 80:23,
81:9, 82:15,
82:17, 174:23,
176:2, 176:6
pursuing
70:19, 74:3,
74:14, 74:21,
75:2, 76:10,
76:17, 77:6,
77:9, 78:4,
78:9, 78:22,
80:16, 81:19,
82:1, 82:12,
83:18, 134:16
pursuit
135:1, 135:11
put
11:1, 29:8,
29:15, 46:4,
84:13, 95:10,
126:18, 136:13,
154:3
putting
43:16, 73:15,
135:2

___Q___
qualification
182:16

qualified
170:15
qualifies
68:24
qualify
180:16
quality
147:8, 147:16,
147:23, 148:9,
148:17, 149:4,
149:11, 149:19
quantify
36:19, 37:3
quantity
23:22
question
9:5, 9:7, 9:12,
9:20, 14:10,
14:14, 14:25,
26:5, 30:15,
32:24, 34:12,
35:4, 36:8,
42:23, 47:20,
55:1, 56:8,
56:14, 59:23,
59:24, 64:24,
66:12, 72:11,
73:14, 92:10,
92:20, 92:22,
92:24, 93:25,
95:4, 98:10,
100:20, 111:19,
111:22, 120:14,
122:10, 123:8,
123:16, 125:18,
130:2, 131:25,
132:5, 133:8,
134:4, 134:22,
134:23, 142:4,
144:23, 146:7,
149:14, 150:9,
150:13, 150:20,
151:14, 171:3,
177:15, 177:24,
179:2, 179:3,
185:8, 185:16
question-and-ans-
wer
10:7

**questioning**
6:25, 14:1
**questions**
9:4, 12:6,
32:24, 123:19,
123:25, 142:9,
147:25, 184:22,
185:23
**quick**
41:15
**quote**
150:4, 159:10,
172:1, 177:13
**quoted**
148:20, 148:23
**quoting**
152:3

**R**

**raise**
82:24
**rather**
60:22, 102:20,
149:2
**rationale**
60:17, 168:9,
172:25, 173:9,
173:24, 173:25,
178:13
**reach**
141:22, 164:18
**reached**
132:16, 138:7,
141:8, 142:21,
165:3, 165:12,
177:2
**reaction**
110:24
**read**
6:6, 14:12,
49:24, 71:7,
116:17, 122:7,
130:22, 130:24,
131:16
**reading**
14:9, 14:16,
36:23, 49:25,
115:5, 122:19

**real**
67:21
**realize**
87:2
**really**
40:7, 40:20,
60:9, 67:2,
77:2, 141:17,
171:13, 174:19
**reason**
25:6, 53:12,
53:19, 54:1,
56:3, 56:9,
56:22
**reasons**
73:7, 73:15,
151:1
**reassigned**
18:2, 18:13
**recall**
12:25, 13:21,
14:2, 17:5,
41:21, 41:22,
60:4, 85:6,
85:16, 87:16,
88:14, 89:8,
91:3, 91:9,
96:7, 96:9,
96:11, 96:14,
97:2, 97:5,
97:9, 97:14,
98:2, 99:14,
99:23, 107:20,
107:22, 108:2,
108:5, 113:10,
113:11, 113:17,
116:12, 117:3,
117:11, 119:1,
119:2, 119:7,
124:21, 125:12,
125:23, 126:16,
132:25, 133:9,
134:14, 134:24,
135:3, 135:6,
136:1, 145:18,
145:22, 146:1,
146:12, 146:17,
152:11, 152:17,

152:22, 153:18,
154:18, 159:18,
159:20, 161:14,
162:5, 162:9,
162:22, 164:5,
166:8, 166:10,
166:13, 168:2,
168:8, 168:18,
170:20, 170:22,
171:25, 183:24,
184:3, 184:4,
184:7, 184:12,
184:14, 184:16,
184:18, 184:20,
184:23, 185:2,
185:7, 185:14
**receive**
87:12, 152:7,
153:16
**received**
15:5, 22:16,
23:10, 53:3,
55:11, 56:5,
57:2, 58:25,
59:5, 65:9,
65:16, 67:14,
67:25, 88:9,
116:22, 118:16,
125:17, 150:5,
150:10, 151:4,
152:20, 152:25,
153:9, 172:1
**receives**
150:15
**recently**
37:9
**recognizing**
60:12, 186:2
**recollection**
116:10, 158:23
**recommendation**
26:11
**recommendations**
39:20, 41:18
**recommended**
93:6
**record**
6:13, 7:1,

8:16, 9:9,
45:20, 45:22,
45:23, 46:2,
53:17, 62:15,
71:7, 74:6,
82:3, 83:22,
84:5, 84:6,
84:11, 105:5,
105:6, 105:8,
122:7, 153:23,
153:24, 154:1,
170:20, 186:13,
186:20, 186:21,
186:23, 186:25,
187:10, 188:5
**records**
114:17, 115:23
**recoup**
133:13, 134:10
**recoupment**
133:24
**recovering**
76:25
**recovery**
70:8, 70:19
**reduced**
188:7
**refer**
48:25, 62:1,
121:19, 121:20,
137:7, 150:24,
176:16
**reference**
10:13, 52:2,
118:5, 123:3,
123:15, 123:19,
124:5, 124:12,
124:15, 150:25,
151:24, 156:25,
157:19, 163:3,
163:7, 177:13
**referenced**
25:25, 55:23,
57:22, 113:9,
113:15, 121:13,
150:22
**references**
98:2, 155:25,

166:11
**referencing**
48:15, 183:10
**referred**
24:1, 24:13,
124:7, 180:20
**referring**
10:20, 26:5,
53:9, 69:24,
72:17, 90:10,
103:5, 107:15,
116:8, 116:24,
123:21, 136:23,
144:21, 145:8,
149:22, 150:11,
153:10, 154:13,
161:2, 161:19,
168:11, 169:17
**reflect**
17:6, 180:1,
181:1
**reflected**
100:7, 164:24
**refresh**
116:9, 158:23
**refused**
88:13
**refusing**
70:3
**regard**
11:5, 16:23,
18:20, 28:5,
39:21, 42:3,
58:13, 82:5,
84:3, 89:7,
94:14, 98:20,
98:24, 100:17,
174:16, 176:2,
180:11, 181:13,
182:22
**regarding**
11:11, 26:12,
80:10, 85:3,
89:2, 135:18,
155:18, 164:18,
165:3
**regardless**
134:23, 150:7,

150:18, 172:4
**regards**
143:2, 181:14,
182:11
**regular**
99:25
**regularity**
100:3
**regulation**
139:15
**related**
53:1, 115:21,
117:14, 122:17,
188:9
**relating**
82:17, 155:23,
163:15, 166:1,
180:1, 180:25
**relationship**
163:18, 172:15,
173:19, 174:4,
174:12, 175:12
**relationships**
165:9
**relayed**
125:12, 165:5
**relaying**
160:23
**release**
176:8, 176:9
**relevant**
108:3, 152:8
**reliability**
164:19, 165:4
**relief**
71:18, 72:7,
74:13
**remaining**
43:7, 43:19
**remember**
96:15, 96:18,
98:16, 159:1,
171:22
**remote**
5:11, 9:25
**remotely**
5:13
**rep**
7:21, 8:1

**repeat**
14:10, 34:12,
34:14, 35:4,
36:8, 47:20,
56:8, 56:14,
64:24, 66:12,
72:11, 92:10,
93:25, 95:3,
100:19, 125:18,
134:4, 144:22,
146:7, 147:25,
149:14, 150:13,
171:3, 177:15
**repeated**
111:19
**rephrase**
9:15, 133:8
**replace**
92:14
**replaced**
99:6, 99:9,
99:14, 99:16
**replacing**
102:16
**report**
18:20, 20:12,
20:14, 20:18,
43:14
**reported**
1:24, 53:11,
53:14, 53:25,
54:4, 54:11,
54:16, 54:25,
55:1, 55:5,
55:9, 115:7,
125:15, 125:19,
126:3, 167:13
**reporter**
6:2, 9:9,
46:14, 47:12,
188:1
**reporting**
19:24, 25:20,
25:24, 93:5,
93:8, 145:13
**reports**
15:5, 37:5,
37:7, 37:9,

37:13, 43:12
**reposted**
138:17
**represent**
5:15, 91:12
**representation**
95:24, 122:17
**representations**
171:14
**representative**
6:20, 12:10,
57:7, 101:22,
105:20, 106:7,
106:18, 107:1,
107:2, 116:24
**representatives**
94:24, 95:8,
98:4, 102:20,
103:10, 106:23,
107:12, 107:14,
108:12, 108:17,
109:20, 119:5,
120:7, 121:12,
121:16, 121:17,
125:2, 125:8,
125:17, 126:2,
126:10, 154:16,
154:24, 161:3,
161:23
**represented**
8:13
**representing**
5:12, 5:17,
6:3, 91:16,
92:5, 95:19,
100:13, 101:4,
107:19
**represents**
139:2, 139:7
**request**
23:21, 89:2,
90:1, 90:14,
118:25
**requested**
71:18, 88:4,
88:12, 115:1,
187:13, 188:8
**requesting**
72:1, 88:1

requests
88:8, 88:18,
89:22, 90:21,
155:19
require
62:23
required
63:24, 64:2,
78:14, 109:18,
139:18, 144:12,
145:20, 145:24
requirements
115:9, 144:16,
144:20, 145:3,
145:7, 145:12,
145:14, 146:6,
147:7, 147:14,
148:8, 171:1
requires
9:13
reservation
83:3
reserve
79:23
reserved
73:21
reserves
82:24, 83:9
reserving
76:5, 76:7,
80:4
residence
7:1, 7:4, 7:8
resolution
9:3
resolve
26:13, 130:6
respect
11:18, 21:5,
23:24, 24:9,
39:17, 41:24,
44:15, 45:3,
56:25, 57:1,
76:19, 79:11,
136:25, 156:9,
162:10, 165:7,
171:14, 177:6
respective
139:4

respond
74:5, 119:11,
119:23, 120:8,
120:18, 121:4,
123:13, 123:19,
128:1, 128:10,
128:23, 151:16
responded
123:16
responding
92:20
response
12:21, 23:20,
65:15, 71:1,
86:6, 88:8,
88:18, 89:1,
89:22, 90:13,
90:20, 92:9,
110:23, 111:7,
114:18, 115:22,
118:24, 121:21,
126:13, 134:24,
135:2, 135:10,
150:24
responses
4:17, 4:21,
23:10, 23:13,
70:23, 84:9,
84:19, 121:24,
122:2, 122:3,
122:21, 124:5,
124:23, 128:6,
136:3, 151:8,
153:9, 154:6,
154:9
responsibilities
38:10
responsibility
17:3, 17:13,
17:22, 17:24,
18:15, 40:18,
158:19
responsible
15:25, 16:4,
16:11, 88:15
responsive
122:10
rest
42:16, 81:22

restate
30:15
result
70:11, 139:11,
144:13, 151:4,
174:25
resulting
48:6, 48:16,
64:15, 87:21
resume
31:12, 186:5,
186:8, 186:12,
187:2
retain
92:12
retained
89:10, 89:11,
89:14, 90:12,
98:23
retention
90:6, 163:20
return
149:11
revealed
156:5, 156:20
revealing
15:3
reverse
158:14
review
12:20, 13:2,
13:6, 15:13,
46:20, 85:8,
85:18, 88:23,
89:7, 90:13,
90:18, 90:22,
90:23, 97:23,
118:4, 159:9,
160:10, 188:8
reviewed
12:14, 14:4,
15:13, 15:17,
16:25, 73:10,
89:24, 91:20,
93:12
reviewing
88:15, 88:25
revised
4:8, 10:18,

10:22
rights
79:23, 83:4,
83:9, 133:17,
133:19
ring
98:17
rise
20:22
risk
19:1, 36:19
robberies
36:21
robbery
38:16
robinson
3:15, 5:23,
8:17, 91:13,
92:6, 92:14,
93:2, 104:19
rockefeller
7:5, 19:5
rodriguez
3:22
role
38:10, 99:2,
164:10, 165:11,
169:1, 169:2,
169:6, 169:10,
169:12, 169:13,
170:1, 170:24,
171:10
roles
31:1
roman
37:20
room
10:1, 10:3,
29:9
rosemary
37:8
rough
28:14, 40:6,
40:10
roughly
18:11
route
102:8, 102:11

| | | | |
|---|---|---|---|
| **rpr**<br>1:24<br>**rule**<br>4:8, 10:18,<br>10:22, 139:14<br>**rules**<br>8:25<br><br>**S**<br><br>**said**<br>14:11, 18:6,<br>18:23, 22:21,<br>32:2, 36:18,<br>37:18, 41:16,<br>41:23, 41:25,<br>45:1, 63:23,<br>67:1, 73:10,<br>85:12, 97:24,<br>104:1, 105:13,<br>105:24, 108:7,<br>117:12, 120:12,<br>123:3, 124:19,<br>127:18, 142:19,<br>151:20, 159:10,<br>160:10, 172:1,<br>176:21, 179:17,<br>179:19, 183:25,<br>188:6<br>**salaries**<br>50:3<br>**same**<br>10:1, 19:5,<br>20:11, 35:15,<br>43:11, 43:23,<br>54:23, 55:3,<br>59:22, 62:5,<br>65:2, 66:20,<br>67:25, 72:23,<br>94:7, 109:15,<br>112:9, 114:18,<br>115:13, 115:20,<br>118:13, 120:9,<br>121:5, 121:7,<br>134:12, 144:2,<br>149:21, 159:25,<br>160:14, 161:5,<br>161:15, 161:17,<br>175:14, 184:22, | 185:8, 185:13<br>**sat**<br>95:10<br>**satisfied**<br>45:13, 70:9,<br>73:22<br>**satisfy**<br>23:17, 44:9,<br>45:6, 62:9,<br>65:10<br>**satisfying**<br>171:1<br>**saved**<br>69:12, 136:7<br>**saw**<br>117:3, 170:9<br>**say**<br>17:11, 18:5,<br>18:19, 20:5,<br>27:4, 28:24,<br>34:19, 37:7,<br>58:4, 64:17,<br>65:6, 72:17,<br>79:20, 102:11,<br>103:4, 105:23,<br>122:9, 127:9,<br>143:4, 148:14,<br>159:8, 159:22,<br>161:11, 161:15,<br>168:21, 179:24,<br>180:23<br>**saying**<br>21:2, 21:3,<br>27:24, 29:1,<br>29:3, 39:11,<br>48:15, 53:16,<br>72:16, 85:10,<br>86:6, 131:2,<br>132:6, 140:23,<br>144:24, 150:2,<br>150:15, 161:24,<br>169:11, 180:17,<br>182:11, 182:15,<br>182:21<br>**says**<br>49:10, 50:18,<br>53:1, 55:10,<br>61:8, 66:1, | 69:23, 70:7,<br>70:10, 71:5,<br>71:16, 75:13,<br>77:22, 78:11,<br>81:1, 82:9,<br>83:3, 83:5,<br>86:2, 87:19,<br>114:13, 114:20,<br>115:18, 116:4,<br>116:6, 116:18,<br>129:10, 136:22,<br>139:1, 139:7,<br>140:7, 140:14,<br>144:9, 144:10,<br>146:19, 147:1,<br>150:4, 151:23,<br>151:25, 156:8,<br>156:12, 163:8,<br>163:13, 164:10,<br>164:17, 165:22,<br>167:3, 167:11,<br>168:10, 178:19<br>**scheme**<br>32:16, 35:10,<br>42:3, 48:21,<br>58:19, 67:24,<br>68:1, 70:6,<br>72:21, 133:14,<br>141:1, 142:17<br>**scope**<br>8:2, 8:9, 12:7,<br>62:22, 64:22,<br>67:17, 111:10,<br>126:7<br>**scratch**<br>81:12, 81:17<br>**screen**<br>149:23<br>**scroll**<br>139:23<br>**seal**<br>188:14<br>**second**<br>4:22, 7:19,<br>13:25, 14:2,<br>84:14, 114:12,<br>121:22, 122:3,<br>122:5, 122:21, | 124:6, 124:10,<br>124:23, 144:9,<br>154:7, 154:10,<br>158:25, 160:3,<br>162:25, 163:10<br>**secondly**<br>155:10<br>**secret**<br>108:20, 110:21,<br>111:8, 111:13,<br>111:15, 111:23,<br>113:5, 113:12,<br>119:4, 119:21,<br>120:17, 125:3,<br>126:1, 163:4,<br>165:15, 177:8,<br>177:13<br>**secretly**<br>110:4<br>**section**<br>47:5, 148:11,<br>148:20, 148:21,<br>148:23<br>**securities**<br>49:11, 50:19,<br>61:9, 64:6, 66:2<br>**see**<br>10:16, 31:11,<br>47:3, 47:7,<br>48:7, 48:14,<br>48:18, 49:5,<br>49:16, 50:24,<br>53:1, 53:7,<br>55:16, 55:17,<br>56:16, 56:19,<br>61:11, 66:15,<br>69:22, 71:4,<br>71:13, 71:19,<br>72:3, 73:8,<br>83:13, 83:22,<br>84:25, 86:5,<br>86:11, 87:18,<br>87:23, 104:25,<br>113:24, 114:6,<br>114:10, 121:14,<br>122:11, 127:4,<br>127:10, 129:12,<br>136:7, 136:12, |

136:15, 136:20,
137:4, 137:5,
139:5, 139:6,
139:21, 139:24,
140:1, 140:10,
144:6, 144:18,
145:5, 146:23,
147:10, 147:17,
148:11, 148:20,
155:3, 155:25,
157:5, 158:7,
160:15, 163:2,
163:7, 163:10,
163:25, 164:15,
164:21, 166:3,
166:22, 167:3,
167:5, 167:9,
172:6, 179:11,
180:9, 187:5
**seeing**
98:2
**seeking**
121:9, 149:8
**seeks**
86:7
**seen**
11:5, 11:25,
28:16, 29:2,
36:13, 46:12,
46:15, 51:10,
51:13, 51:17,
52:14, 52:21,
117:2, 131:17,
169:5
**senior**
115:12
**sense**
83:25, 185:20,
186:4
**sent**
24:17
**sentence**
49:21, 50:5,
50:6, 136:22,
137:5, 139:1,
139:6, 144:8,
145:5, 146:25,
147:17, 165:20,

169:19
**sentences**
169:18, 169:20,
179:24
**separate**
50:5
**separated**
13:20
**september**
155:20, 158:12,
158:15, 165:23
**sequence**
52:8
**serve**
76:24
**service**
147:9, 147:16,
147:24, 148:10,
148:18, 149:4,
149:11, 149:19,
180:4, 181:3,
181:20, 182:7,
182:18, 183:19
**services**
114:24, 114:25,
147:6, 147:22,
148:8, 150:8,
150:19, 172:4,
180:2, 180:7,
180:12, 181:1,
181:6, 182:7,
182:19, 183:21,
184:5, 184:9,
184:14, 184:18,
184:25, 185:5,
185:11
**serving**
181:9
**session**
10:7
**set**
4:22, 22:2,
28:25, 29:4,
84:20, 86:3,
115:7, 121:22,
122:4, 122:5,
122:21, 124:6,
124:10, 124:23,

136:3, 154:7,
154:10, 162:25,
171:16, 188:13
**settle**
28:1
**settled**
69:25
**settlement**
4:13, 51:13,
51:17, 51:19,
52:6, 52:14,
52:23, 56:17,
59:11, 59:20,
59:25, 60:5,
60:22, 63:17,
129:11, 129:21,
129:23, 130:11,
138:15, 138:19,
138:22, 139:9,
140:17, 155:22,
166:1, 166:5,
166:9, 166:11,
166:15, 175:1,
176:8, 176:13,
176:15
**seven**
15:20
**seven-page**
122:8
**several**
13:21, 28:15,
31:18, 89:18,
91:16, 92:13,
101:3, 108:8,
120:13, 120:21
**shall**
48:16
**share**
167:20, 168:3,
168:4
**sharing**
50:4
**shiv**
24:15, 53:2,
53:9, 53:17,
53:24, 54:3,
54:10, 54:22,
55:7, 55:11,

56:10, 56:18,
59:12, 59:25,
62:25, 64:10,
67:24, 106:4,
106:7, 106:24,
107:13, 107:15,
107:19, 108:12,
108:18, 110:23,
111:3, 111:8,
112:7, 112:15,
112:21, 119:9,
125:7, 125:21,
129:18, 129:24,
130:6, 133:3,
133:11, 134:9,
134:17, 135:1,
135:11, 137:21,
137:25, 138:8,
140:7, 140:8,
140:14, 140:18,
140:24, 141:14,
141:22, 142:4,
143:5, 143:13,
154:17, 154:25,
155:18, 156:2,
165:13, 168:6,
176:10, 177:18,
178:5
**shiv's**
108:22, 121:17,
125:17, 157:19,
158:1, 163:5,
165:5, 175:1,
177:17
**short**
49:1, 138:1,
153:20
**shorthand**
137:15, 188:1
**shortly**
27:8
**should**
49:18, 127:8,
136:8
**show**
129:7, 167:18,
167:24, 168:7
**showed**
168:6

showing
117:8
shown
42:14
shows
29:21, 47:3,
158:11, 158:15
side
107:11, 120:19,
130:18
sign
115:13
signature
139:24, 140:11,
140:21, 187:12
signature-sc3
188:20
signed
51:14, 51:19,
56:10, 85:1,
85:3, 87:7,
140:8, 140:12
significant
150:5, 150:10,
150:16, 150:20,
171:23, 172:1
signing
85:8, 140:3,
140:18, 140:19
signs
33:18, 33:25
similar
114:23, 115:8,
164:13
similarly
9:6
simply
59:24
simpson
156:16
since
16:2, 17:22,
18:18, 30:5,
38:8, 40:1,
87:10, 87:25,
100:11, 100:21,
101:9, 123:22
sit
22:3, 45:7,

57:7, 80:9,
80:14, 83:17,
143:4, 143:11,
152:12, 152:18
sitaraman
4:19, 24:1,
48:22, 48:25,
78:20, 126:20,
126:23, 163:23
sitting
10:1, 10:3,
10:4
situation
35:5
six
15:20
six-page
138:19
sixth
3:8
size
19:25
skipping
71:6
social
38:17
sociology
29:22, 32:6,
174:2
sole
169:8
some
7:23, 12:24,
14:8, 14:16,
24:18, 26:19,
32:9, 32:14,
33:19, 43:25,
51:2, 51:20,
53:5, 55:13,
56:4, 57:1,
73:22, 86:21,
90:22, 95:24,
98:19, 99:6,
107:8, 107:24,
116:15, 126:11,
130:7, 141:19,
152:15, 152:25,
153:6, 164:25,

178:22, 180:3,
181:3, 182:6,
182:17, 183:18,
186:5, 187:5
somebody
25:21, 67:10,
97:16, 101:22
something
8:2, 28:24,
32:19, 58:8,
58:16, 111:4,
122:19, 123:15,
124:2, 128:5,
152:3, 162:15,
173:4
sometime
158:20
soon
78:18
sorry
12:1, 31:19,
54:7, 56:14,
62:14, 81:11,
85:25, 87:4,
98:14, 105:23,
105:24, 134:21,
144:1, 144:9,
156:10, 171:21
sort
95:24, 130:7
sound
173:4, 173:11,
173:18, 174:1,
174:10, 175:10
source
60:4, 60:9,
147:6, 147:14,
147:21, 148:7
sourcing
24:13, 42:4,
63:3, 137:2,
137:8, 139:25,
147:2, 148:3,
163:19
speak
15:21, 96:3,
98:11, 101:4,
102:3, 104:8,

104:11, 104:14,
104:18, 130:19,
173:9, 173:23,
173:25, 174:15
speaking
101:21, 103:10
specialist
31:14
specialty
24:12, 42:5,
63:3, 63:11,
64:10, 137:1,
143:23, 144:4,
144:13, 180:18,
181:10, 181:15,
182:24, 183:9,
183:12
specific
26:15, 28:25,
44:3, 44:21,
75:14, 76:14,
88:11, 110:9,
152:17, 182:14
specifically
17:5, 17:15,
23:12, 34:19,
53:2, 88:14,
88:24, 90:24,
91:3, 103:5,
131:1, 145:18,
145:22, 146:2,
152:22, 153:12,
154:22, 158:24,
162:22, 163:15,
170:22, 183:24,
184:3, 184:7,
184:12, 184:16,
185:2, 185:7,
185:14
specificity
166:13
specifics
14:2, 27:23,
96:11, 97:9,
108:5, 162:5,
184:20
speculate
40:8, 60:9,

60:17, 77:2,
172:25, 175:16,
178:12, 178:13,
178:15
**speculation**
45:9, 59:18,
103:13, 110:9,
110:17, 130:14,
174:14
**speed**
93:11
**spend**
15:18, 146:10,
149:9, 149:17,
176:19
**spending**
145:15, 148:14,
148:15
**spoke**
96:15, 97:1,
97:2, 97:17,
155:13, 155:17
**spoken**
104:22, 105:20
**stages**
86:10, 86:15
**standard**
5:10
**stands**
137:11
**start**
49:19
**started**
37:19, 97:4,
115:3
**starting**
27:14, 31:15,
31:19, 49:21,
71:1, 100:22
**starts**
143:22, 144:4,
150:2, 180:17
**state**
2:10, 5:15,
6:25, 74:12,
188:22
**stated**
6:13, 8:1,

44:13, 65:23,
68:21, 69:2,
74:11, 75:23,
76:3, 83:16,
85:13, 110:11,
110:18, 111:20,
112:19, 120:1,
120:24, 132:22,
138:12, 142:13,
143:9, 148:4,
151:8, 159:3,
162:14
**statement**
56:10, 56:16,
56:23, 57:9,
57:15, 57:20,
87:18, 123:4,
141:18, 143:22,
152:24, 164:21,
169:17, 171:9,
172:6, 180:11,
180:16, 181:11,
181:13, 181:19,
182:2, 182:10,
182:22, 183:10
**statements**
111:7, 119:12,
131:7, 132:10,
132:12, 132:15
**states**
1:1, 5:6, 83:5
**statute**
82:11, 82:18,
139:14
**steal**
33:12, 33:20,
34:9, 34:17,
34:22, 132:7
**stealing**
34:1, 35:19,
36:1, 131:10
**stenographically**
188:6
**steps**
115:22
**steve**
20:15, 20:16,
20:18

**still**
23:7, 26:16,
26:19, 35:23,
44:1, 44:18,
44:22, 68:4,
73:2, 79:3,
79:16, 86:8,
86:9, 86:18,
103:19, 103:21,
104:4, 111:1,
112:11, 117:24,
118:3, 120:1,
128:13, 128:14,
128:16, 132:22,
133:6, 136:8,
136:9, 138:5,
138:12, 138:18,
140:24, 141:5,
141:6, 141:7,
141:25, 142:13,
142:24, 143:17,
146:5, 151:6,
151:17, 153:11,
160:6
**stipulation**
6:6
**stolen**
133:13
**stoneturn**
89:3, 89:6
**stopping**
105:2
**story**
120:19, 130:18
**strike**
156:10
**structure**
19:24, 25:20,
25:24, 93:5,
93:8, 141:20
**studied**
52:17
**studying**
33:15
**subject**
11:8, 46:13,
46:17, 68:4,
68:14, 68:16,

106:14, 109:5,
141:1, 163:16
**submitted**
18:1, 18:6,
19:9, 20:2,
21:22, 37:10,
43:22, 72:21,
159:9, 160:8,
160:9
**subrogation**
133:2, 133:5,
133:18, 133:19,
134:19
**subsequent**
187:6
**subsequently**
102:14, 186:9
**substance**
13:15, 14:6,
14:15, 14:20,
15:4, 15:6,
100:2, 125:9
**substantial**
70:15, 70:18,
88:1, 88:7
**substantive**
6:24
**sue**
173:1, 173:2
**suffered**
37:4, 66:9,
70:17
**sufficient**
22:12, 97:12
**suggest**
57:8, 57:14,
60:19, 79:9,
105:2, 152:14
**suit**
173:17, 174:7
**suite**
3:16
**summaries**
112:24, 113:2
**sums**
70:18
**superior**
41:18

**superiors**
26:12, 39:22,
178:8
**supervision**
188:8
**supervisors**
117:18
**supplemental**
4:16, 84:8,
84:19, 85:18,
121:24, 136:3
**supplier**
115:9, 137:9,
137:16, 144:16,
145:3, 146:21,
147:4, 147:13,
148:5, 148:13,
148:23, 151:25,
152:4, 163:17,
168:13, 168:16,
168:24, 169:24,
170:6, 170:10,
170:12, 170:18,
171:5, 171:6,
180:3, 181:2,
181:10, 181:23,
181:24, 182:5,
182:14, 182:17,
183:18, 183:23
**suppliers**
53:4, 55:13,
115:2, 137:2,
148:14, 148:16,
149:1, 149:9,
161:12, 163:21,
164:11, 165:11,
180:1, 180:25,
181:18, 182:3,
182:23, 183:8,
183:14, 183:15,
185:12
**supply**
53:23, 145:11
**support**
59:9, 80:8,
80:15, 114:17,
161:17, 161:23,
162:13, 162:20

**supporting**
86:2
**sure**
8:25, 12:3,
14:11, 19:18,
34:14, 36:9,
41:14, 42:24,
49:23, 52:3,
56:9, 57:12,
66:13, 67:2,
74:8, 95:5,
98:15, 124:19,
186:17
**surface**
35:24
**switch**
92:11, 93:1
**switched**
92:2
**switching**
93:9, 94:2
**sworn**
6:5, 6:8, 153:8
**sylvester**
3:4, 4:4, 5:16,
6:11, 6:13, 8:5,
8:8, 19:18,
29:8, 29:14,
32:25, 33:1,
34:13, 34:14,
41:10, 41:14,
45:10, 45:17,
46:3, 52:9,
55:4, 74:10,
83:21, 84:12,
92:21, 95:2,
95:5, 98:14,
104:25, 105:9,
126:17, 132:4,
153:19, 154:2,
185:16, 185:22,
186:17, 186:24

**T**

**take**
9:21, 10:17,
11:6, 11:21,
12:3, 29:5,

29:11, 45:18,
50:10, 69:3,
83:23, 83:25,
84:2, 108:16,
109:13, 111:15,
133:1, 133:5,
133:11, 133:16,
134:16, 134:19,
134:25, 135:10,
153:19, 175:17
**taken**
13:3, 29:11,
97:13, 158:18,
188:3, 188:6
**takes**
35:9
**taking**
9:18, 16:6,
17:4, 49:11,
50:19, 61:9,
62:9, 62:18,
64:5, 66:2,
78:19, 81:5,
156:6, 157:9,
157:17, 178:13
**talk**
9:8, 17:2,
32:18, 67:21,
97:11, 101:11,
151:2, 183:17,
186:17
**talked**
36:10, 131:22,
171:22
**talking**
10:17, 19:16,
37:8, 118:9,
118:11, 137:7,
150:3, 152:5,
157:24, 166:11,
170:2, 175:3
**talks**
66:13
**tax**
150:25, 151:2,
151:3, 151:9,
151:21, 152:7,
152:15, 152:19,

152:25, 153:4,
153:6, 153:16
**team**
19:1
**tech**
11:1, 29:8,
29:14, 52:3,
113:19, 126:17
**technical**
62:10, 125:20
**technician**
3:22, 52:7,
52:11
**technologies**
115:4, 164:11
**telephone**
122:12, 125:1,
154:23, 155:2,
156:1, 156:4
**tell**
44:2, 69:12,
74:2, 74:20,
85:23, 110:20,
110:22, 111:16,
112:5, 112:13,
114:3, 119:12,
120:16, 121:1,
121:15, 157:1,
166:17, 177:18
**telling**
111:3, 113:11,
126:3, 153:14,
160:18, 170:24,
175:23, 178:23
**tells**
153:15
**telltale**
33:18, 33:25
**ten**
40:14
**ten-minute**
45:18
**tennessee**
1:2, 5:7
**term**
27:3, 27:4,
27:12, 27:18,
27:24, 43:25,

61:16, 78:21
**terminated**
78:16, 178:5
**terminating**
175:8
**terms**
46:21, 46:24,
46:25, 68:4,
68:14, 68:17,
93:19, 147:8,
147:16, 147:23,
148:9, 148:17,
149:4, 149:19,
170:15
**testified**
6:8, 14:8,
14:13, 159:13
**testify**
11:10, 11:18,
11:24
**testifying**
7:21, 7:25,
8:10, 12:8
**testimony**
8:10, 13:3,
13:16, 14:7,
14:15, 15:6,
15:8, 42:25,
44:18, 54:20,
121:10, 123:9,
123:12, 124:1,
126:6, 151:9,
170:14, 170:20
**th**
5:8, 7:5, 22:4,
26:21, 26:25,
27:5, 27:9,
78:10, 78:11,
78:25, 79:4,
79:17, 80:10,
80:15, 80:24,
81:1, 81:14,
82:6, 82:9,
82:14, 82:16,
83:2, 85:1,
86:14, 87:8,
91:8, 92:3,
114:6, 122:14,

136:19, 155:6,
155:16, 155:18,
155:20, 156:9,
156:13, 157:13,
163:4, 164:25,
165:23
**thank**
52:11, 68:6,
136:12, 187:4,
187:7
**thanks**
74:10
**theft**
28:8, 28:10,
28:16, 30:19,
31:1, 31:24,
32:7, 32:16,
33:10, 33:17,
35:5, 35:6,
35:10, 35:14,
36:5, 36:13,
38:5, 38:22,
39:5, 40:2,
40:16, 40:24,
41:7, 41:19,
42:2, 42:19,
48:6, 48:17,
48:21, 49:4,
49:6, 49:10,
50:9, 50:18,
55:24, 58:14,
58:23, 61:5,
61:8, 61:21,
62:19, 64:7,
64:15, 65:11,
66:1, 66:14,
67:9, 68:25,
87:22, 95:7,
97:13, 105:18,
109:22, 126:1,
126:2, 128:7,
128:20, 131:3,
131:15, 131:23,
132:18, 174:19,
175:19, 176:24,
177:5, 177:19,
178:1, 178:20,
179:7

**thefts**
36:21
**themselves**
5:15
**thereafter**
188:7
**therefore**
169:1, 169:13
**thief**
32:10, 33:6,
33:18, 33:19,
35:17, 35:23,
36:12, 68:12,
132:17, 132:18,
133:25, 162:13,
178:21, 179:5
**thiefs**
32:19, 34:7,
34:21
**thieves**
32:22, 34:16,
36:4
**thing**
171:4
**think**
7:23, 7:25,
8:2, 9:13,
14:11, 25:11,
29:1, 29:10,
29:11, 32:2,
35:13, 49:4,
59:15, 60:2,
60:6, 60:11,
60:14, 67:19,
68:22, 73:10,
97:23, 98:21,
105:1, 107:24,
107:25, 109:18,
110:14, 116:14,
120:5, 120:15,
124:7, 126:15,
136:6, 159:10,
159:13, 178:2,
186:10
**thinking**
101:13
**thinks**
173:18

**third**
20:17, 28:19,
28:20, 155:15,
163:10
**thought**
123:20, 173:5,
174:11, 175:11
**thousands**
21:16, 23:19,
88:16, 89:21
**threatened**
128:18
**three**
21:11, 40:19,
85:4
**three-and-a-half-**
**-year**
40:4
**three-party**
130:7
**through**
14:16, 15:1,
24:17, 46:8,
60:7, 86:9,
93:21, 101:16,
101:20, 102:1,
102:5, 102:9,
102:15, 102:20,
102:24, 103:9,
105:14, 130:7,
133:14, 158:16,
159:8, 162:21,
165:14
**throughout**
49:1, 53:15
**tier**
180:1, 180:3,
180:20, 180:25,
181:2, 181:10,
182:3, 182:4,
182:17, 183:18,
183:22, 185:11
**times**
16:2, 17:22,
17:24, 41:23,
120:13, 120:21,
132:21
**timing**
185:17

**title**
7:15, 18:25,
130:16
**titled**
130:15
**today**
5:11, 6:3,
8:13, 17:25,
18:16, 22:4,
45:7, 57:7,
72:15, 72:18,
73:12, 78:9,
80:9, 80:14,
83:17, 85:20,
100:16, 117:24,
143:4, 143:11,
152:12, 152:18,
186:2, 187:5
**today's**
5:8, 12:13
**told**
111:6, 119:22,
120:7, 177:8,
177:11
**took**
18:3, 31:15,
105:14, 118:14,
155:5, 156:21,
158:24, 163:3,
164:23, 175:4
**top**
71:23, 129:9,
129:20, 136:21,
163:8
**topics**
11:12, 11:16,
11:19, 12:7,
12:15
**totality**
142:1
**townsend**
3:5, 5:19
**transaction**
179:25, 180:25
**transactions**
177:21
**transcript**
4:7, 13:6,

14:9, 14:17,
188:4
**transcripts**
13:2, 14:5,
14:12
**transfer**
16:20, 16:21
**transferred**
17:17, 51:5,
51:22, 53:6,
55:14, 56:6,
56:12, 57:3
**transport**
180:4, 181:4,
183:20, 184:23
**transportation**
183:21
**trial**
22:2, 27:14,
27:16, 87:2
**trotta**
16:7, 16:9,
16:10, 16:22,
17:3, 17:18,
18:2, 18:7,
103:25, 104:8,
158:8, 158:16,
158:24
**true**
36:25, 53:20,
54:13, 54:20,
55:2, 55:21,
56:4, 56:11,
57:9, 57:15,
57:20, 72:23,
85:13, 146:3,
168:17, 170:23,
180:11, 188:5
**trust**
34:21, 35:1,
35:8, 35:9
**trusted**
35:7
**truth**
153:15, 170:24,
175:23, 178:24
**try**
133:13, 134:9

**trying**
130:6, 176:20,
176:23, 177:18,
185:19
**turn**
52:22, 69:20,
70:22, 85:22,
98:7, 114:2,
154:20, 179:13
**turns**
67:8
**two**
24:14, 85:4,
137:1, 140:25,
141:21, 164:25,
180:19
**two-day**
13:18
**type**
161:25, 162:15
**types**
36:20, 36:22,
38:18, 185:10
**typewriting**
188:7
**typically**
110:3
**typo**
49:20

| U |
| --- |

**unable**
92:23
**unbeknownst**
158:1
**unblacked-out**
167:1
**undefined**
61:16, 61:17
**under**
13:7, 13:12,
13:16, 13:20,
13:25, 19:9,
20:25, 21:23,
22:13, 22:18,
22:23, 25:5,
25:17, 26:3,
30:11, 38:8,

38:9, 39:12,
41:1, 41:4,
41:8, 42:20,
43:9, 45:14,
47:4, 50:9,
51:2, 51:21,
59:11, 63:24,
66:18, 68:10,
68:24, 70:8,
75:15, 75:23,
76:14, 76:17,
76:20, 81:4,
81:6, 91:22,
114:12, 116:17,
131:24, 132:18,
132:23, 133:7,
135:12, 135:13,
138:13, 139:11,
142:14, 143:3,
161:12, 179:11,
188:7
**underneath**
71:15, 83:2
**undersigned**
139:1
**understand**
6:19, 9:10,
9:13, 9:23,
10:6, 10:10,
11:8, 11:14,
12:5, 14:25,
19:7, 19:12,
22:24, 24:10,
24:20, 24:25,
26:6, 26:22,
32:9, 48:19,
48:23, 48:24,
51:1, 51:7,
51:12, 58:13,
61:1, 62:25,
63:7, 64:18,
64:25, 87:5,
93:9, 93:18,
94:1, 95:18,
108:14, 128:4,
128:16, 134:21,
137:11, 137:14,
137:19, 142:3,

142:19, 147:12,
148:12, 148:23,
149:6, 161:1,
162:12, 170:7,
182:13
**understanding**
7:24, 46:25,
93:19, 172:14
**understands**
51:8
**underwriter's**
81:6
**underwriters**
48:15
**undisclosed**
177:16
**unfortunately**
41:12
**unique**
28:23, 29:1,
29:3, 32:12,
101:6
**united**
1:1, 5:5
**university**
29:23, 30:18
**unknown**
157:17
**unlawful**
49:11, 50:18,
61:9, 61:13,
61:17, 61:22,
62:9, 62:18,
63:10, 63:19,
64:4, 64:12,
66:2, 78:19
**unless**
7:25, 135:11,
149:10, 149:18
**unquote**
177:13
**unstated**
83:8
**until**
9:5, 9:6,
17:25, 18:16,
31:7, 31:17,
135:11, 157:11

**unusual**
101:2
**update**
100:6, 117:6,
160:19
**updates**
100:5
**updating**
161:8
**upstanding**
35:18, 35:24
**use**
168:12
**utilize**
168:22, 169:22
**utilized**
146:20
**utilizing**
168:16

---
**V**
---

**vague**
178:9
**value**
147:8, 147:15,
147:23, 148:9,
148:17, 149:3,
149:18, 160:1,
160:14, 161:6,
161:11, 161:14,
161:19, 161:24,
161:25, 162:15,
162:16, 162:20,
180:6, 180:12,
181:6, 182:7,
182:18
**value-added**
180:2, 181:1
**various**
17:22, 17:23,
30:4, 30:17,
30:20, 36:20,
36:21, 88:18,
89:22, 90:21,
95:16, 131:7
**vary**
32:17
**varying**
16:2

**vc**
46:9
**veith**
3:6, 5:19
**vendor**
159:23, 160:12,
161:4, 161:13
**veracity**
132:10, 132:12,
132:15
**verification**
84:25, 85:3,
85:10, 85:15,
87:8
**verified**
12:24, 86:13,
98:9, 136:19,
144:24, 181:12
**versus**
163:23, 176:25
**vetted**
170:4
**vetting**
168:22, 169:23
**victim**
178:20
**victimized**
48:21
**video**
5:9, 5:13,
186:14
**videographer**
3:21, 5:2,
5:11, 6:2,
45:21, 46:1,
84:4, 84:10,
105:4, 105:7,
153:22, 153:25,
186:19, 186:22,
187:8
**videotaped**
1:16, 2:2, 5:3
**violation**
139:11
**virtually**
1:17, 2:3
**voice-identify**
5:14

**volume**
21:19

---
**W**
---

**wait**
9:5, 9:6, 81:14
**waiting**
23:13, 27:20,
44:3, 44:18,
44:22
**waived**
70:9
**waiver**
25:8
**want**
40:10, 70:22,
74:5, 82:3,
83:23, 84:1,
100:2, 110:15,
176:17, 176:19,
179:2, 186:6
**warrant**
83:12
**warrants**
139:2, 139:8
**watching**
34:23
**way**
9:8, 9:15,
42:15, 42:17,
43:17, 81:5,
82:4, 116:4,
132:16, 157:7,
158:6
**ways**
34:17, 180:19
**we'll**
9:18, 37:17,
41:15
**we're**
9:2, 9:25,
10:1, 10:16,
10:25, 22:1,
26:4, 27:11,
43:24, 73:16,
74:1, 76:9,
76:22, 77:3,
77:15, 78:4,

79:8, 80:16,
118:9, 118:11,
137:7, 141:4,
141:25, 142:13,
142:24, 143:17,
151:6, 151:17,
153:2, 165:21,
167:7, 177:4,
182:10, 185:18,
186:4, 186:11,
186:24
**we've**
22:16, 36:10,
46:5, 88:4,
153:20, 154:3,
176:18
**weeks**
27:19, 43:7,
43:19, 85:4,
181:12
**went**
34:12, 37:24
**western**
1:2, 1:3, 5:6,
5:7
**whatever**
96:2, 109:23
**whenever**
153:15
**whereof**
188:13
**whether**
20:21, 22:7,
23:14, 26:2,
26:8, 26:17,
26:25, 27:9,
42:1, 42:18,
43:15, 44:4,
49:13, 50:20,
58:9, 58:17,
58:25, 66:4,
72:9, 72:16,
72:19, 79:16,
83:7, 97:11,
105:11, 105:15,
106:17, 123:17,
132:17, 138:8,
140:24, 142:4,

153:5, 165:13,
170:15, 170:25,
171:10, 174:19,
175:18, 175:20,
176:24, 177:5,
179:6, 179:7
**white**
7:12
**whole**
74:24, 78:12,
78:17, 82:10,
182:2
**william**
3:14, 6:1,
18:22, 18:23,
20:12, 20:14,
39:19, 39:20
**willing**
186:1
**wilson**
37:9
**wish**
123:9
**withdraw**
73:24
**withdrawing**
74:1, 74:17,
74:18, 74:19,
75:4, 75:7,
75:24, 76:7,
76:9, 76:22,
77:4, 77:6,
77:11, 77:15,
78:2, 78:6,
78:25, 79:8,
79:22, 80:5,
81:20, 81:25,
152:24
**withdrawn**
74:7, 77:17,
78:5, 80:21,
80:23, 82:22,
82:23
**within**
12:6, 12:15,
19:23, 25:20,
25:24, 27:19,
33:5, 41:11,

48:7, 93:4,
93:7, 131:7,
145:11, 181:15,
182:23, 183:9
**without**
15:3, 25:8,
34:9, 34:17,
110:6, 126:3,
182:15
**witness**
4:2, 6:5, 6:7,
6:21, 11:10,
11:15, 14:22,
32:25, 44:17,
57:17, 62:13,
82:7, 92:7,
92:18, 94:17,
99:10, 151:15,
185:23, 186:2,
187:12, 188:13
**witnesses**
14:7, 14:13,
14:15, 15:7,
21:22
**woman-owned**
115:6
**women**
145:10
**word**
34:13, 49:19,
49:24, 50:7,
61:17
**words**
49:19, 49:25
**work**
30:18, 37:2,
37:24, 37:25,
38:9, 103:21,
103:23, 106:10,
106:13
**worked**
28:12, 30:4,
31:6, 31:8,
31:9, 31:16,
31:20, 36:17,
36:19, 106:10
**working**
30:9, 30:16,

31:18, 31:22,
32:7, 37:18,
40:1, 135:22
**works**
105:3
**wouldn't**
133:4, 168:7
**write**
161:2
**written**
78:14
**wrong**
35:8
**wrongfully**
60:13, 60:20
**wrote**
117:4, 162:11,
162:17

**Y**

**yeah**
29:17, 48:11,
48:12, 59:24,
72:12, 98:14,
122:6, 124:19,
124:21, 185:22
**year**
18:12, 22:2,
71:24, 72:7,
72:13, 72:15,
72:24, 73:14,
73:16, 73:21,
83:17, 89:12,
89:13, 89:16,
91:5
**years**
21:7, 21:11,
22:5, 27:7,
27:20, 31:17,
31:18, 36:13,
40:19, 87:10,
88:3, 89:18,
91:16, 92:13,
93:14, 93:21,
94:5, 101:3,
142:21, 143:11,
152:13, 165:1
**yep**
138:20

**york**
7:7, 7:12,
19:4, 20:11,
31:9, 31:13,
104:4

**Z**

**zurich**
1:11, 69:25,
94:14, 94:23,
94:24, 95:9,
95:20, 95:25,
96:4, 96:16,
96:17, 96:18,
97:16, 97:19,
98:3, 98:4

**$**

**$1**
67:7
**$110,124**
47:4
**$15**
19:8, 59:12,
59:25, 175:1,
176:10
**$500,000**
67:9

**0**

**00**
153:23, 185:18
**00301**
114:3
**020**
48:9
**024**
49:7
**02789**
1:9, 5:8
**03**
186:20
**0615**
56:21
**07**
1:19, 5:10
**08**
45:19, 45:22

**09**
186:23

**1**

**1**
105:8
**10**
1:19, 4:8,
5:10, 78:10,
78:11, 78:25,
79:4, 79:17,
80:10, 80:15,
153:21, 157:13,
171:17, 187:10,
187:11
**100**
40:16
**10010**
7:5
**11**
4:10, 45:19,
45:22, 46:2,
69:18, 75:13,
91:8, 92:3,
179:13, 179:17,
179:19, 179:20
**113**
4:18
**12**
26:21, 26:25,
27:5, 27:9,
70:11, 77:21,
80:24, 81:1,
81:14, 83:23,
84:5, 84:11,
104:25, 105:5,
114:6, 154:1
**126**
4:19
**13**
155:18, 156:9,
156:13, 163:4,
164:25
**130,000**
159:9, 160:9
**14**
166:17, 166:19,
166:20, 167:6

**15**
52:22, 55:10,
55:17, 56:11,
56:17, 56:23,
57:15, 57:21,
59:3, 59:5,
73:6, 73:15,
74:3, 82:6,
82:9, 82:14,
82:16, 83:2,
153:21, 167:7,
185:24
**15222**
3:9
**154**
4:21
**16**
7:5, 114:3,
122:14, 155:6,
169:3
**17**
4:13, 52:4,
52:5, 52:10,
83:23, 116:17,
138:14
**18**
1:18, 4:18,
5:8, 22:4, 84:5,
113:20, 113:22,
114:1, 156:24,
157:2, 166:17
**188**
1:23
**19**
4:19, 84:11,
126:18, 126:19,
126:22, 127:1
**1985**
146:22
**1st**
46:7, 46:8

**2**

**20**
155:10, 155:16,
166:21, 167:11,
185:24
**2002**
29:23

**2007**
31:8, 31:15,
32:8
**2011**
152:9
**2015**
31:17, 31:18,
37:24
**2019**
17:12, 31:19,
46:7, 87:10,
87:13, 87:15,
87:20, 89:20,
147:3, 152:9,
175:4
**2020**
16:3, 16:6,
16:15, 16:19,
17:4, 17:21,
17:23, 17:25,
18:6, 21:12,
21:13, 31:19,
31:20, 46:8,
89:20, 99:24,
100:11, 100:22,
101:9, 104:1,
158:12, 158:15,
158:16
**2021**
18:16, 114:7,
114:21, 116:1,
118:1, 118:5,
118:12, 119:5,
121:18, 122:14,
125:4, 155:5,
155:6, 155:10,
155:16, 155:20,
156:9, 157:4,
157:8, 157:10,
157:11, 157:14,
157:20, 158:7,
158:9, 158:17,
158:21, 159:1,
159:4, 159:7,
159:12, 160:5,
160:11, 163:4,
164:25, 165:15,
165:23, 166:21,

**167:11, 177:17**
**2022**
40:2, 71:23,
91:8, 92:4
**2023**
1:18, 5:9,
22:4, 85:1,
87:4, 87:8,
89:11, 89:15,
89:25, 136:19,
165:2, 188:15
**2024**
26:21, 87:4,
188:18
**21**
46:2, 155:10,
155:16, 166:21,
167:2, 167:11,
167:15
**210**
3:8
**22**
1:9, 4:21, 5:8,
154:4, 154:5,
154:21, 162:24,
165:21, 188:14
**24**
138:22, 138:25
**25**
11:8, 11:11,
11:16, 11:19,
12:7
**27**
46:9
**29**
4:11, 85:1,
86:14, 87:8,
136:19, 155:20,
165:23
**3**
**3**
153:23, 154:1,
157:4
**30**
4:8, 10:18,
10:22
**303**
157:3

**31**
114:7
**32**
160:8
**33131**
3:17
**36**
48:12
**4**
**4**
61:18, 185:18,
186:20, 186:23,
187:10, 187:11
**40**
105:2
**4250**
1:24
**44**
157:4
**45**
4:12, 7:5
**47**
105:8
**5**
**5**
114:7
**500,000**
67:11
**518471**
1:22
**52**
4:13, 104:25,
105:5
**5th**
74:22, 74:23,
75:12, 157:4,
157:11, 157:14,
157:20, 158:9,
159:7, 160:5
**6**
**6**
163:8
**60**
130:17
**62**
130:21

**680**
3:16
**69**
4:14
**6th**
77:7, 87:16,
87:20
**7**
**72**
69:22, 70:24,
71:6, 71:9
**73**
70:7, 71:6,
71:10
**74**
70:10, 71:6,
71:11
**75**
70:24
**777**
3:16
**7th**
71:23
**8**
**84**
4:16
**9**
**90190101**
46:9
**92**
188:20
**9th**
77:19, 77:22,
78:2