# **Exhibit 18**



# Transcript of Pia Ellis, Volume 2

**Date:** January 3, 2024
**Case:** International Paper Company -v- Beazley Insurance Company, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF TENNESSEE

3                    WESTERN DIVISION

4    - - - - - - - - - - - - - -x

5    INTERNATIONAL PAPER COMPANY,:

6              Plaintiff,      :

7    -v-                       :  Case No.

8                              :  22-02789-TLP-CGC

9    BEAZLEY INSURANCE COMPANY, :

10   INC., and ZURICH AMERICAN  :

11   INSURANCE COMPANY,         :

12             Defendants.     :

13   - - - - - - - - - - - - - -x

14      Continued Videotaped Deposition of PIA ELLIS

15                 CONDUCTED VIRTUALLY

16             Wednesday, January 3, 2024

17                    10:01 a.m.

18

19

20

21

22

23   Job No.: 519935

24   Pages: 1 - 187

25   Reported By: Brooklyn E. Schweitzer, RPR, CRR

1          Videotaped Deposition of PIA ELLIS,

2     conducted virtually.

3

4

5          *** ALL PARTIES ATTENDED REMOTELY. ***

6

7

8          Pursuant to Notice, before Brooklyn E.

9     Schweitzer, Registered Professional Reporter,

10    Certified Realtime Reporter, and Notary Public in

11    and for the Commonwealth of Pennsylvania.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    A P P E A R A N C E S

 2


 3        ON BEHALF OF THE PLAINTIFF:

 4           JOHN SYLVESTER, ESQUIRE

 5           NATHAN TOWNSEND, ESQUIRE

 6           LAURA VEITH, ESQUIRE

 7           K&L GATES LLP

 8           210 Sixth Avenue

 9           Pittsburgh, Pennsylvania 15222

10

11        ON BEHALF OF THE DEFENDANTS:

12           EUGENE MURPHY, ESQUIRE

13           WILLIAM MAXWELL DALEY, ESQUIRE

14           ROBINSON & COLE LLP

15           777 Brickell Avenue, Suite 680

16           Miami, Florida 33131

17

18     Also Present:    Harold Rodriguez, Technician

19                      Charlotte Forrest, Videographer

20                      Mary Jane Palmer

21

22

23

24

25
```

<pre>
1                    C O N T E N T S

2    EXAMINATION                              PAGE

3       By Mr. Sylvester                        6

4

5                    E X H I B I T S

6    EXHIBIT                                   PAGE

7    Exhibit 6    Previously Marked            12

8    Exhibit 17   Previously Marked            17

9    Exhibit 15   Email Chain

10                JAG.INS.00167770 - 00167783   70

11   Exhibit 7    Previously Marked            85

12   Exhibit 8    Email Chain

13                JAG.INS.00168402 - 00168404  102

14   Exhibit 9    Information for Mickey

15                JAG.INS.00149126 - 00149127  102

16   Exhibit 10   8/27/15 Diversified Global

17                Sourcing, Inc., Presentation

18                .00150855 - 00150894         109

19   Exhibit 11   Email Chain

20                JAG.INS.00130540 - 00130542  122

21   Exhibit 12   Email - JAG.INS.00131603     122

22   Exhibit 13   Spreadsheet                  125

23   Exhibit 16   Email - Zurich 002434        147

24   Exhibit 18   Previously Marked            153

25   Exhibit 4    Previously Marked            176
</pre>

| | | |
|---|---|---|
| 1 | P R O C E E D I N G S | |
| 2 | VIDEOGRAPHER:  Here continues the | 10:01:23 |
| 3 | videotaped deposition of Pia Ellis in the matter | 10:01:24 |
| 4 | of International Paper Company v. Beazley | 10:01:27 |
| 5 | Insurance Company, et al., in the United States | 10:01:31 |
| 6 | District Court for the Western District of | 10:01:35 |
| 7 | Tennessee, Western Division, Case | 10:01:37 |
| 8 | No. 22-02789-TLP-CGC. | 10:01:39 |
| 9 | Today's date is January 3rd, 2024.  The | 10:01:43 |
| 10 | time on the video monitor is 10:01 a.m. Eastern | 10:01:50 |
| 11 | Standard Time.  The remote videographer today is | 10:01:54 |
| 12 | Charlotte Forrest representing Planet Depos. | 10:01:56 |
| 13 | All parties of this video deposition are | 10:01:58 |
| 14 | attending remotely.  Would counsel please voice | 10:02:00 |
| 15 | identify themselves and state whom they represent. | 10:02:02 |
| 16 | MR. SYLVESTER:  Yes.  This is John | 10:02:04 |
| 17 | Sylvester of the law firm of K&L Gates along with | 10:02:06 |
| 18 | my colleagues Laura Veith and Nathan Townsend, and | 10:02:10 |
| 19 | we represent, as I said the Plaintiff, | 10:02:19 |
| 20 | International Paper Company, here today. | 10:02:21 |
| 21 | MR. MURPHY:  Gene Murphy with Robinson & | 10:02:21 |
| 22 | Kole on behalf of Beazley Insurance Company along | 10:02:24 |
| 23 | with my colleague, William Daley. | 10:02:27 |
| 24 | VIDEOGRAPHER:  The court reporter today is | 10:02:31 |
| 25 | Brooklyn Schweitzer representing Planet Depos. | 10:02:33 |

| | | |
|---|---|---|
| 1 | The witness will now be sworn. | 10:02:34 |
| 2 | (Oath stipulation read and agreed by | 10:02:34 |
| 3 | counsel and witness.) | 10:02:34 |
| 4 | PIA ELLIS, having been duly sworn testified as | 10:02:34 |
| 5 | follows: | 10:02:34 |
| 6 | EXAMINATION | 10:03:24 |
| 7 | BY MR. SYLVESTER: | 10:03:24 |
| 8 | Q   Thank you.  Good morning, Ms. Ellis.  This | 10:03:24 |
| 9 | is a continuation of the deposition -- | 10:03:26 |
| 10 | A   Good morning. | 10:03:28 |
| 11 | Q   -- of both you individually and you as a | 10:03:28 |
| 12 | corporate representative of Beazley Insurance | 10:03:31 |
| 13 | Company that commenced on December the 18th, 2023. | 10:03:35 |
| 14 | That was a few weeks ago.  Have you had a | 10:03:41 |
| 15 | chance since that time to review the transcript of | 10:03:44 |
| 16 | your testimony that you gave on that first day on | 10:03:46 |
| 17 | December 18th? | 10:03:49 |
| 18 | A   No. | 10:03:51 |
| 19 | Q   Do you have any desire to make any changes | 10:03:51 |
| 20 | or clarifications or modifications of the | 10:04:02 |
| 21 | testimony that you gave on December 18th? | 10:04:05 |
| 22 | A   No.  No. | 10:04:08 |
| 23 | Q   Did you do any additional preparation for | 10:04:13 |
| 24 | today's deposition -- that is between | 10:04:15 |
| 25 | December 18th -- and today? | 10:04:20 |

| | | |
|---|---|---|
| 1 | A  I met with counsel yesterday. | 10:04:22 |
| 2 | Q  Okay.  Did you review any documents? | 10:04:25 |
| 3 | A  Just the documents that were available | 10:04:31 |
| 4 | previously. | 10:04:44 |
| 5 | Q  And can you just generally describe what | 10:04:44 |
| 6 | those documents were as you recall? | 10:04:49 |
| 7 | A  The interrogatories. | 10:04:51 |
| 8 | Q  Did you review the transcripts of | 10:04:52 |
| 9 | testimony of any of the witnesses that have given | 10:04:56 |
| 10 | deposition testimony in this case?  Again, I'm | 10:05:01 |
| 11 | talking about -- | 10:05:03 |
| 12 | A  No. | 10:05:04 |
| 13 | Q  -- from December 18th to the present. | 10:05:04 |
| 14 | A  No. | 10:05:08 |
| 15 | Q  And did you speak to anybody other than | 10:05:09 |
| 16 | counsel in preparation for today's session of the | 10:05:12 |
| 17 | deposition? | 10:05:19 |
| 18 | A  I just advised my manager that the prior | 10:05:19 |
| 19 | deposition took place. | 10:05:22 |
| 20 | Q  Okay.  Did you talk about the substance of | 10:05:24 |
| 21 | the claim with anybody other than counsel in | 10:05:27 |
| 22 | preparation for your testimony here today? | 10:05:30 |
| 23 | A  No. | 10:05:32 |
| 24 | Q  When we last convened on December 18th, | 10:05:33 |
| 25 | 2023, for the first session of your deposition, as | 10:05:43 |

| | | |
|---|---|---|
| 1 | I recall, you stated that Beazley was still | 10:05:47 |
| 2 | investigating International Paper's claim for | 10:05:49 |
| 3 | coverage for employee theft in this case.  Do you | 10:05:59 |
| 4 | recall that testimony? | 10:06:02 |
| 5 | A  Yes, I do. | 10:06:03 |
| 6 | Q  Okay.  So now we're here January 3rd, | 10:06:04 |
| 7 | 2024.  Has Beazley made any decision regarding | 10:06:06 |
| 8 | whether they believe that International Paper's | 10:06:11 |
| 9 | employee theft claim is covered under the Beazley | 10:06:16 |
| 10 | policy? | 10:06:19 |
| 11 | A  I'm sorry.  Could you repeat that question | 10:06:20 |
| 12 | again? | 10:06:21 |
| 13 | Q  Yeah.  As you sit here today, now on | 10:06:22 |
| 14 | January 3rd, 2024, has Beazley made any decision | 10:06:24 |
| 15 | as to whether International Paper's employee theft | 10:06:28 |
| 16 | claim under the Beazley policy is covered? | 10:06:33 |
| 17 | A  Beazley continues to evaluate the alleged | 10:06:35 |
| 18 | claim, alleged losses under the policy.  We have | 10:06:43 |
| 19 | not made a final determination at this time. | 10:06:47 |
| 20 | Q  Okay.  And just to be clear, putting aside | 10:06:49 |
| 21 | the amount of damages or claimed loss, has Beazley | 10:06:52 |
| 22 | made a determination as to whether International | 10:06:56 |
| 23 | Paper's claim is covered at all, regardless of the | 10:06:59 |
| 24 | amount of the loss being calculated? | 10:07:03 |
| 25 | A  We're continuing to evaluate whether there | 10:07:06 |

1  has been an employee dishonesty with respect to        10:07:08

2  the insurance policy, their crime policy with           10:07:13

3  Beazley.                                                10:07:20

4      Q   Okay.  And when you say you're continuing       10:07:20

5  to evaluate, who is doing that evaluation?              10:07:22

6      A   Within the claims organization.                 10:07:24

7      Q   Yes.  Who within the claims organization        10:07:33

8  is doing that evaluation as of today?                   10:07:35

9      A   Well, myself along with the claims              10:07:40

10  management structure within Beazley.                    10:07:46

11      Q   And are those the same claims managers and     10:07:48

12  supervisors that you identified in your prior           10:07:50

13  session of the deposition?                              10:07:52

14      A   Yes.                                            10:07:53

15      Q   You understand that fact discovery closes      10:07:53

16  next week in this case?  Are you aware of that?         10:08:01

17      A   Yes.                                            10:08:04

18      Q   When does Beazley intend to make a             10:08:06

19  decision and communicate that decision to               10:08:11

20  International Paper as to whether the claim that         10:08:14

21  International Paper has made for employee theft is       10:08:19

22  or is not covered under the Beazley policy?             10:08:22

23      A   Well, in my prior testimony, within the        10:08:25

24  near future, but we have not made a decision as of      10:08:37

25  right now with respect to if there has been an          10:08:40

1   employee dishonesty under the policy language.          10:08:43

2       Q  Are there any particular facts that you're      10:08:46

3   waiting to learn about one way or another that         10:08:49

4   will inform your decision as to whether to cover       10:08:52

5   the claim or not?                                      10:09:00

6       A  Well, I understand that there's some            10:09:01

7   depositions that are scheduled for next week.  We      10:09:06

8   look forward to that information as well.              10:09:10

9       Q  Are there any particular depositions that       10:09:14

10  you believe are important to your decision?  And       10:09:20

11  that is Beazley's decision as to whether to cover      10:09:23

12  the claim?                                             10:09:27

13      A  Well, I understand that both -- well, Jag,       10:09:27

14  Mid-South, and DGS are scheduled for depositions       10:09:33

15  next week.                                             10:09:37

16      Q  And are you aware that counsel for Jag,          10:09:38

17  Mid-South, and DGS have indicated that they will       10:09:45

18  plead the Fifth Amendment against                      10:09:49

19  self-incrimination in response to any substantive      10:09:51

20  questions about this matter?                           10:09:55

21      MR. MURPHY:  The witness is instructed not          10:09:56

22  to disclose any attorney-client communications.        10:09:57

23  If that is the source of your information, you are     10:10:00

24  not to disclose it.                                    10:10:06

25      THE WITNESS:  Beazley looks forward to             10:10:07

1   hearing the testimony of next -- from next week.          10:10:10

2   BY MR. SYLVESTER:                                         10:10:13

3       Q   Right.  And if it turns out that there is        10:10:13

4   no testimony because they plead the Fifth                10:10:17

5   Amendment against self-incrimination, will that          10:10:20

6   inform Beazley's decision one way or another             10:10:24

7   whether this is a covered claim of employee theft?       10:10:27

8           MR. MURPHY:  Objection as to form.               10:10:30

9       A   I can't speak to that.  I -- we'd have to        10:10:31

10  see what the results are from next week.                 10:10:35

11      Q   Okay.  Are there any other facts or              10:10:37

12  evidence that you're waiting to receive before           10:10:43

13  making a decision about whether this claim is            10:10:45

14  covered, the claim that International Paper first         10:10:47

15  put Beazley on notice of in December of 2019?            10:10:52

16      A   Well, discovery is ongoing, and as I said,       10:10:55

17  there's some additional depositions that are             10:11:02

18  scheduled for next week, and we look forward to          10:11:04

19  having that additional information.                      10:11:09

20      Q   How soon after the close of discovery next       10:11:11

21  week would you anticipate that Beazley will make         10:11:15

22  its decision and communicate to IP whether it's          10:11:17

23  going to cover the claim?                                10:11:20

24      A   I can't give an exact date, but within the       10:11:22

25  near term.                                               10:11:29

| | |
|---|---|
| 1 | Q  And when you say within the near term, are | 10:11:30 |
| 2 | we talking days, weeks, months?  Give me an idea | 10:11:32 |
| 3 | of what the near term means. | 10:11:35 |
| 4 | A  Well, again, I can't give an exact time | 10:11:37 |
| 5 | frame, but I would say within the near term. | 10:11:42 |
| 6 | Q  Within a week or two after the close of | 10:11:49 |
| 7 | discovery?  Is that a reasonable interpretation of | 10:11:50 |
| 8 | near term? | 10:11:54 |
| 9 | MR. MURPHY:  Objection as to form; asked | 10:11:55 |
| 10 | and answered. | 10:11:57 |
| 11 | A  I would just say as I previously stated, | 10:12:04 |
| 12 | in the near term. | 10:12:06 |
| 13 | Q  Okay.  You can't be any more specific than | 10:12:07 |
| 14 | that? | 10:12:12 |
| 15 | MR. MURPHY:  Same objection. | 10:12:13 |
| 16 | A  No, not at this time. | 10:12:17 |
| 17 | Q  All right.  We put in the chat box | 10:12:19 |
| 18 | Exhibit 6, which is the answer of Beazley to | 10:12:24 |
| 19 | International Paper's complaint, including | 10:12:32 |
| 20 | affirmative defenses.  Do you have that in the | 10:12:34 |
| 21 | chat box, and can you pull that up? | 10:12:36 |
| 22 | A  Exhibit 6 or Exhibit 7?  There's two. | 10:12:40 |
| 23 | Q  Exhibit 6. | 10:12:42 |
| 24 | (Exhibit 6 was previously marked for | 10:13:06 |
| 25 | identification and is attached to the transcript.) | 10:13:07 |

1      Q  Tell me when you have it open.                    10:13:07

2      A  I have it open.                                   10:13:27

3      Q  Okay.  And can you go to Page 10 which is         10:13:28

4   the beginning of the affirmative defenses that are      10:13:30

5   stated by Beazley in response to International           10:13:34

6   Paper's complaint for coverage?  Tell me when you       10:13:36

7   have Page 10.                                           10:13:39

8      A  Okay.  I'm on Page 10.                            10:13:40

9      Q  Okay.  In our last session, I had asked           10:13:48

10  you some questions about the 15 affirmative             10:13:50

11  defenses that are listed on Pages 10, 11, 12, and       10:13:53

12  13 of Exhibit 6, Beazley's answer.                      10:13:58

13      And you had indicated, if my notes are              10:14:02

14  correct, that Beazley was withdrawing its first         10:14:06

15  affirmative defense, failure to state a claim; is       10:14:11

16  that correct?                                           10:14:14

17      A  Yes, that's correct.                             10:14:14

18      Q  Okay.  And you also indicated that Beazley       10:14:17

19  was not pursuing, although not withdrawing,             10:14:22

20  affirmative defenses No. 5, 6, 9, 10, and 15; is        10:14:26

21  that correct?                                           10:14:32

22      A  Let me just go back and check.                   10:14:32

23          You said 5, 6 --                                10:14:35

24      Q  5, 6 --                                          10:14:44

25      A  -- 9?                                            10:14:45

1    Q  And 15 are the ones that I had as -- you          10:14:47

2  had indicated previously when we last spoke on         10:14:52

3  December 18th that Beazley was not pursuing but         10:14:55

4  yet not withdrawing?                                   10:14:58

5    A  Yes, that's correct.                              10:15:00

6    Q  Okay.  And based on any developments in           10:15:04

7  the case since we last spoke on December 18th, is      10:15:09

8  Beazley -- has Beazley decided to withdraw any of      10:15:15

9  those five affirmative defenses, the fifth             10:15:18

10  affirmative defense, the sixth affirmative            10:15:25

11  defense, the ninth affirmative defense, the tenth     10:15:28

12  affirmative defense, or the fifteenth affirmative     10:15:33

13  defense?                                              10:15:37

14    A  No.                                              10:15:38

15    Q  So is your position with regard to 5, 6,         10:15:38

16  9, 10, and 15, Beazley is still not pursuing them     10:15:41

17  but yet not withdrawing them?                         10:15:45

18    A  Yes, that's correct.                             10:15:47

19    Q  Okay.  So that leaves the following             10:15:54

20  affirmative defenses that Beazley is still            10:15:55

21  pursuing, as I understand it.  If you take away       10:16:00

22  the first, the fifth, the sixth, the ninth, the       10:16:05

23  tenth, and the fifteenth affirmative defenses that    10:16:09

24  we just talked about, that leaves the second, the     10:16:12

25  third, the fourth, the seventh, the eleventh, the     10:16:17

| | | |
|---|---|---|
| 1 | twelfth, the thirteenth, and the fourteenth | 10:16:20 |
| 2 | affirmative defense. | 10:16:23 |
| 3 | Do I understand that Beazley is still | 10:16:24 |
| 4 | pursuing each of those affirmative defenses as of | 10:16:27 |
| 5 | this point? | 10:16:29 |
| 6 | A  Yes, that is correct. | 10:16:30 |
| 7 | Q  Okay.  So let's start with the second | 10:16:32 |
| 8 | affirmative defense, which states that Plaintiffs | 10:16:35 |
| 9 | claims are barred in whole or in part by the terms | 10:16:41 |
| 10 | and conditions of the Beazley policy, all of which | 10:16:44 |
| 11 | are preserved and none of which are waived? | 10:16:47 |
| 12 | With regard to that second affirmative | 10:16:50 |
| 13 | defense that Beazley is still pursuing, what facts | 10:16:52 |
| 14 | does Beazley have to support the assertion of that | 10:16:55 |
| 15 | second affirmative defense? | 10:17:02 |
| 16 | A  Well, at this time -- excuse me -- based | 10:17:04 |
| 17 | on current information, we don't have information | 10:17:09 |
| 18 | that would demonstrate that there was an employee | 10:17:16 |
| 19 | theft by Jag.  We've not seen anything that | 10:17:18 |
| 20 | demonstrated that he received a financial benefit | 10:17:30 |
| 21 | from the alleged scheme. | 10:17:33 |
| 22 | Q  Anything else? | 10:17:35 |
| 23 | A  Or that there was anything to indicate | 10:17:38 |
| 24 | that there was a theft as defined under our | 10:17:46 |
| 25 | policy. | 10:17:54 |

1      Q   Okay.  So you indicated that you haven't          10:17:57

2   seen any evidence that Jag received a financial           10:18:02

3   benefit from the alleged scheme; is that correct?         10:18:06

4          MR. MURPHY:  Objection as to form.  You            10:18:11

5   can answer.                                               10:18:12

6      A   Yes, that's correct.                               10:18:12

7      Q   Now, we looked at the settlement agreement         10:18:14

8   in which Jag and Shiv settled the claims against          10:18:20

9   International Paper that were brought by                   10:18:29

10  International Paper.  Do you recall when we looked         10:18:31

11  at that settlement agreement during the first             10:18:32

12  session?                                                  10:18:34

13     A   Yes.                                               10:18:34

14     Q   And you recall in that settlement                 10:18:36

15  agreement Jag and Shiv agreed as part of the              10:18:41

16  agreement that some of the contract moneys that           10:18:46

17  International Paper had paid to DGS and Mid-South          10:18:50

18  were transferred to accounts controlled by Jag.           10:18:55

19  Do you recall that?                                       10:18:58

20         MR. MURPHY:  Objection as to form.  You            10:19:00

21  can answer.                                               10:19:01

22     A   Can you pull up the document to that               10:19:02

23  section that you're referring to?                         10:19:10

24     Q   You don't recall that?                             10:19:11

25     A   Not that exact statement, no.                      10:19:13

| | |
|---|---|
| 1 | Q  Okay.  Let me ask the tech to -- if he | 10:19:17 |
| 2 | would pull up Exhibit 17 and post that in the chat | 10:19:29 |
| 3 | box. | 10:19:31 |
| 4 | (Exhibit 17 was previously marked for | 10:19:32 |
| 5 | identification and is attached to the transcript.) | 10:19:48 |
| 6 | Q  Can you download Exhibit 17, if you would? | 10:19:48 |
| 7 | A  I have it open. | 10:19:52 |
| 8 | Q  Okay.  Can you go to the bottom of Page 3 | 10:20:08 |
| 9 | of that settlement agreement that we looked at a | 10:20:10 |
| 10 | couple of weeks ago in your first session?  It was | 10:20:16 |
| 11 | a September 2022 settlement agreement and release | 10:20:18 |
| 12 | between International Paper on the one hand and | 10:20:25 |
| 13 | Jag and Shiv and DGS and Mid-South and some other | 10:20:27 |
| 14 | entities on the other hand. | 10:20:31 |
| 15 | Do you recall now looking at that | 10:20:33 |
| 16 | document? | 10:20:34 |
| 17 | A  Yes, I recall the document. | 10:20:35 |
| 18 | Q  Okay.  And can you look at Paragraph 15 at | 10:20:42 |
| 19 | the bottom of Page 3 of that settlement agreement? | 10:20:44 |
| 20 | A  Yes, I see it. | 10:20:49 |
| 21 | Q  And you see it says the related parties, | 10:20:50 |
| 22 | and specifically Jag and Shiv, agree that DGS and | 10:20:53 |
| 23 | Mid-South received funds from IP pursuant to their | 10:20:56 |
| 24 | contracts with IP and its suppliers and further | 10:21:00 |
| 25 | agree that some of those funds were transferred to | 10:21:03 |

| | | |
|---|---|---|
| 1 | accounts controlled by Jag. | 10:21:06 |
| 2 | Do you see that? | 10:21:07 |
| 3 | A  I see that. | 10:21:08 |
| 4 | Q  And do you see on the signature pages that | 10:21:10 |
| 5 | this settlement agreement is signed by Jag and | 10:21:14 |
| 6 | signed by Shiv on behalf of both himself, DGS, and | 10:21:17 |
| 7 | Mid-South? | 10:21:22 |
| 8 | A  I do. | 10:21:23 |
| 9 | Q  So isn't that evidence that Jag received a | 10:21:26 |
| 10 | financial benefit from the employee theft scheme; | 10:21:31 |
| 11 | that is that he was entered into contracts for IP | 10:21:38 |
| 12 | to pay money to DGS and Mid-South and some of that | 10:21:41 |
| 13 | money was funneled back to him?  Isn't that | 10:21:44 |
| 14 | evidence that Jag received a financial benefit | 10:21:48 |
| 15 | from this arrangement? | 10:21:50 |
| 16 | MR. MURPHY:  Objection as to form. | 10:21:53 |
| 17 | A  Well, again, I stated previously we have | 10:21:59 |
| 18 | not seen any documentation with respect to that. | 10:22:03 |
| 19 | Q  Well, isn't this documentation, their | 10:22:05 |
| 20 | admission that that in fact happened?  Isn't that | 10:22:09 |
| 21 | documentation? | 10:22:12 |
| 22 | MR. MURPHY:  Objection as to form. | 10:22:13 |
| 23 | A  Again, we haven't received documentation | 10:22:14 |
| 24 | which demonstrates that he received a financial | 10:22:20 |
| 25 | benefit. | 10:22:23 |

1    Q  So you don't consider --                    10:22:23

2    A  Alleged scheme.                             10:22:25

3    Q  You don't consider this Exhibit 17 to be    10:22:28

4  documentation that Jag received a financial      10:22:31

5  benefit from the alleged employee theft scheme?  10:22:35

6    A  It is a document, but it doesn't document   10:22:42

7  a financial benefit to him.                      10:22:47

8    Q  Well, what kind of document would you want  10:22:48

9  to see that would satisfy you that he received a 10:22:50

10  financial benefit from this arrangement where he 10:22:54

11  was signing contracts on behalf of International 10:22:59

12  Paper to his brother's company, and the money -- 10:23:03

13  some of the money from those contracts being paid 10:23:07

14  to his brother's company was being funneled back 10:23:09

15  to him?  What documentation do you want to see?  10:23:12

16      MR. MURPHY:  Objection as to form.           10:23:15

17    A  The current information does not            10:23:16

18  demonstrate that he received a financial benefit 10:23:24

19  from the alleged scheme.                         10:23:31

20    Q  Well, what documentation or information     10:23:33

21  would convince you that he did?                  10:23:35

22    A  We have not seen any bank records or any    10:23:37

23  financial documents indicating that he received a 10:23:46

24  financial benefit from the scheme, alleged scheme. 10:23:48

25    Q  Have you subpoenaed any bank records or     10:23:55

1    tried to obtain any bank records?                      10:23:59

2        A   Well, we also understand that there's been    10:24:01

3    a full release of Jag as well, this particular         10:24:09

4    document.                                              10:24:15

5        Q   Right.  I'm just asking you, have you          10:24:15

6    attempted to obtain the bank records that you          10:24:22

7    seemingly need to see in order to satisfy yourself     10:24:29

8    that Jag received a financial benefit?                 10:24:33

9        MR. MURPHY:  Objection as to form.                 10:24:41

10       A   Well, the insured would need to provide        10:24:47

11   documentation to demonstrate its loss under the        10:24:49

12   policy.                                                10:24:53

13       Q   Okay.  International Paper has given            10:24:54

14   Beazley a copy of the settlement agreement, right?     10:24:57

15       A   We have been provided a copy of it, yes.       10:24:59

16       Q   And you're saying that Jag's signing a         10:25:03

17   document that said he received money from his          10:25:08

18   brother's company that was paid by IP to his           10:25:11

19   brother's company, that that's -- that doesn't         10:25:15

20   satisfy you that he received a financial benefit?      10:25:17

21   Is that your testimony?                                10:25:20

22       MR. MURPHY:  Objection as to form;                 10:25:21

23   misleading.                                            10:25:24

24       A   Can you repeat the question?                   10:25:25

25       Q   Yes.  Is Beazley taking the position that      10:25:30

1   if International Paper provides a signed document        10:25:33

2   signed by Jag where he admits that money that IP         10:25:37

3   paid to Jag's brother's companies, DGS and               10:25:43

4   Mid-South, and some of that money was funneled           10:25:47

5   back to accounts controlled by Jag, that that is         10:25:50

6   not considered by Beazley to be evidence that he         10:25:54

7   received a financial benefit from this                   10:25:57

8   arrangement?  Is that your testimony?                    10:25:59

9        MR. MURPHY:  Objection as to form.                  10:26:02

10       A  The release itself doesn't demonstrate a         10:26:03

11  financial benefit to Jag.                                10:26:13

12       Q  With regard to --                                10:26:23

13       A  Sorry.                                           10:26:43

14       Q  -- that Beazley contends is a basis for          10:26:43

15  pursuing that second affirmative defense, that the       10:26:49

16  terms and conditions of the Beazley policy are           10:26:52

17  coverage for this claim?                                 10:26:57

18       A  I'm sorry.  Could you repeat that again,         10:27:01

19  please?                                                  10:27:03

20       Q  Right, yeah.  Just going through the             10:27:03

21  second affirmative defense to try and determine          10:27:05

22  what facts Beazley asserts support its claim in          10:27:08

23  the second affirmative defense that International        10:27:14

24  Paper's coverage claim is barred in whole or in          10:27:18

25  part by terms and conditions of the Beazley              10:27:20

| | |
|---|---|
| 1 | policy. | 10:27:22 |
| 2 | You gave one statement that you're not | 10:27:23 |
| 3 | satisfied that there was information supporting an | 10:27:29 |
| 4 | employee theft or that Jag received a financial | 10:27:33 |
| 5 | benefit.  Is there any other -- are there any | 10:27:36 |
| 6 | other facts or information to support that | 10:27:38 |
| 7 | affirmative defense that you can identify as you | 10:27:40 |
| 8 | sit here today? | 10:27:44 |
| 9 | A  Well, as I stated previously, that we | 10:27:45 |
| 10 | haven't seen that the alleged conduct was unlawful | 10:27:49 |
| 11 | either. | 10:27:53 |
| 12 | Q  And what would persuade you that the | 10:27:53 |
| 13 | alleged conduct was unlawful?  What type of | 10:27:58 |
| 14 | information would you want to see that you haven't | 10:28:03 |
| 15 | already seen from all the hundreds of thousands of | 10:28:05 |
| 16 | pages of documents that IP has produced? | 10:28:09 |
| 17 | MR. MURPHY:  Objection; asked and answered | 10:28:12 |
| 18 | during the last session. | 10:28:15 |
| 19 | A  You're asking what would be unlawful? | 10:28:16 |
| 20 | Q  No, what evidence would persuade Beazley | 10:28:34 |
| 21 | that Jag's conduct here was unlawful other than | 10:28:39 |
| 22 | evidence that International Paper has provided to | 10:28:44 |
| 23 | Beazley to date in the last four years, including | 10:28:48 |
| 24 | all the documents and all the testimony of | 10:28:52 |
| 25 | witnesses?  What else do you need or would you | 10:28:55 |

1   need to satisfy you that Jag's conduct was                    10:28:59

2   unlawful?                    10:29:03

3        MR. MURPHY:  Same objection.                    10:29:05

4     A  Well, again, I understand that these                    10:29:06

5   actions occurred during the normal course of                    10:29:15

6   business with the insured.  Unlawful is also going                    10:29:18

7   back to whether there was a theft.                    10:29:35

8     Q  When you say -- when you say these actions                    10:29:41

9   were in the normal course of business, do you                    10:29:43

10  believe it's within the normal course of business                    10:29:45

11  for somebody in Jag's position to send business to                    10:29:49

12  his brother's company and not disclose to anybody                    10:29:51

13  at International Paper that he's doing business                    10:29:56

14  with his brother's company and not disclose to                    10:29:58

15  anybody at International Paper that some of the                    10:30:02

16  money that International Paper is paying to his                    10:30:04

17  brother's company is being funneled back to Jag's                    10:30:07

18  accounts?  Do you think that's the normal course                    10:30:09

19  of business?                    10:30:12

20       MR. MURPHY:  Objection as to form;                    10:30:13

21  misstates the evidence.                    10:30:17

22    A  Well, again, we haven't seen documentation                    10:30:22

23  that he financially benefitted with respect to                    10:30:24

24  Jag.                    10:30:29

25    Q  You understand under the settlement                    10:30:29

1    agreement, Exhibit 17 that we just looked at, Jag        10:30:37

2    and Shiv paid a total of $15 million back to             10:30:40

3    International Paper in addition to whatever they          10:30:46

4    had to pay in back taxes to the IRS.                     10:30:47

5         Doesn't that indicate to you that Jag and           10:30:56

6    Shiv had received financial benefit from this            10:30:58

7    arrangement?                                             10:31:00

8         MR. MURPHY:  Objection as to form; asked            10:31:02

9    and answered during the last session.                   10:31:04

10    A  Well, again, we have not seen                        10:31:05

11    documentation to demonstrate that.                      10:31:11

12    Q  Well, you have documentation that they               10:31:13

13    paid $15 million, right, to International Paper to       10:31:20

14    settle the civil and criminal charges that were         10:31:26

15    brought against them?  You do know that, correct?       10:31:30

16        MR. MURPHY:  Objection as to form.                  10:31:34

17    A  We do have a copy of the settlement                  10:31:38

18    agreement, yes.                                         10:31:40

19    Q  Do you doubt that they paid $15 million to           10:31:41

20    International Paper?                                     10:31:44

21    A  No.                                                  10:31:44

22    Q  So where do you think they got the                   10:31:46

23    $15 million from?                                       10:31:51

24        MR. MURPHY:  Objection; asked and answered          10:31:53

25    during the last session.                                10:31:54

1    A  I couldn't say with certainty the source          10:31:56

2  of those funds.                                        10:32:04

3    Q  Let's look at the third affirmative               10:32:06

4  defense.  It says Plaintiff's claims are barred in     10:32:10

5  whole or in part to the extent that the, quote,        10:32:17

6  indirect or consequential exclusion in the Beazley     10:32:20

7  policy applies.  This exclusion applies, quote,        10:32:23

8  the underwriters will not be liable for costs or       10:32:27

9  expenses arising out of indirect or consequential      10:32:31

10 loss of any kind except for covered expenses under     10:32:34

11 the expense coverage insuring the agreement, end       10:32:38

12 quote.                                                 10:32:41

13    Do you see that third affirmative defense           10:32:42

14 on Page 10 of Exhibit 6?                               10:32:44

15    A  Yes, I do.                                       10:32:45

16    Q  What facts or information does Beazley            10:32:46

17 have that would support the assertion of the third     10:32:52

18 affirmative defense?                                   10:32:55

19    A  There were certain non-contractual               10:33:00

20 payments that IP made to majority suppliers that       10:33:09

21 were included as part of the claim.                    10:33:14

22    Q  Okay.  And which non-contractual payments         10:33:19

23 are you referring to?                                  10:33:23

24    A  I'm referring to the payment that the            10:33:24

25 insured made to the majority suppliers or invoices     10:33:30

1    or specialty chemicals that the insured paid                  10:33:42

2    directly to the majority suppliers and not to                 10:33:45

3    Mid-South or DGS.                                             10:33:50

4        Q  Okay.  Are those the amounts that                     10:33:52

5    international paper paid to majority suppliers for            10:33:57

6    products they had sold to DGS and Mid-South but              10:34:03

7    DGS and Mid-South never paid for, and therefore IP           10:34:08

8    was settling the claim that those majority                   10:34:12

9    suppliers had for payment of those chemical                  10:34:15

10   products?  Is that what you're referring to?                 10:34:22

11   There's about $2.7 million in IP's claim.  Is that           10:34:26

12   what you're referring to?                                    10:34:30

13       MR. MURPHY:  Objection as to form.  You                  10:34:32

14   can answer.                                                  10:34:33

15       A  I mean, I am referring to the roughly                 10:34:34

16   2.7 million in payments.                                     10:34:36

17       Q  Okay.  So does this defense, this third               10:34:39

18   defense relate to any other aspect of                        10:34:44

19   International Paper's claim, or is it restricted             10:34:47

20   to the 2.7 million of settlement payments that              10:34:50

21   International Paper made to majority suppliers to           10:34:53

22   satisfy invoices to DGS and Mid-South that DGS and          10:34:56

23   Mid-South had not paid?                                      10:35:02

24       A  It would apply to those payments along to            10:35:03

25   any similar type of payments that the insured              10:35:12

1   made.                                                 10:35:15

2       Q   Are you aware of similar payments in          10:35:15

3   International Paper's claim other than the            10:35:17

4   2.7 million settlement payments made to majority     10:35:19

5   suppliers that this third affirmative defense        10:35:25

6   applies to?                                           10:35:28

7       A   I don't recall offhand, but it would apply    10:35:29

8   to similar types of payments issued to third         10:35:42

9   parties.                                              10:35:45

10          There's also -- there were also some          10:35:46

11  commission payments that were included in the        10:35:48

12  claim presentation as well.                          10:35:53

13      Q   Are you talking about Tier 2 commission       10:35:55

14  amounts?                                              10:36:01

15      A   Yes.                                          10:36:01

16      Q   Are you saying that that's covered under      10:36:02

17  your third affirmative defense?                       10:36:06

18      A   It is.                                        10:36:08

19          MR. MURPHY:  Objection as to form.            10:36:09

20      Q   Okay.  And why is that?                       10:36:10

21      A   The -- because they're commission payments    10:36:14

22  that were issued by a majority suppliers.            10:36:24

23      Q   Right.  You understand --                     10:36:29

24      A   And --                                        10:36:32

25      Q   Sorry.  Go ahead.                             10:36:32

| | | |
|---|---|---|
| 1 | A  Go ahead. | 10:36:33 |
| 2 | Q  You understand that International Paper is | 10:36:34 |
| 3 | making a claim for overpayments that it made to | 10:36:38 |
| 4 | majority suppliers because of the commissions that | 10:36:42 |
| 5 | the majority suppliers had to make to DGS or | 10:36:46 |
| 6 | Mid-South?  Do you understand that that | 10:36:49 |
| 7 | approximately 1.9 million are payments that | 10:36:51 |
| 8 | International Paper made to majority suppliers out | 10:36:55 |
| 9 | of its own funds? | 10:36:58 |
| 10 | MR. MURPHY:  Objection as to form.  You | 10:37:01 |
| 11 | can answer. | 10:37:02 |
| 12 | A  Well, I understand that those are payments | 10:37:02 |
| 13 | that International Paper made to parties other | 10:37:07 |
| 14 | than DGS or Mid-South. | 10:37:12 |
| 15 | Q  Correct.  Those are payments that were | 10:37:14 |
| 16 | made to the majority suppliers that were inflated | 10:37:19 |
| 17 | because of the need for the majority suppliers to | 10:37:25 |
| 18 | pay commissions to DGS and Mid-South.  Are you | 10:37:32 |
| 19 | saying those amounts, which are about 1.9 million, | 10:37:34 |
| 20 | are the subject of your third affirmative defense? | 10:37:38 |
| 21 | MR. MURPHY:  Objection as to form.  You | 10:37:40 |
| 22 | can answer. | 10:37:42 |
| 23 | A  Yes. | 10:37:42 |
| 24 | Q  And why is that? | 10:37:59 |
| 25 | MR. MURPHY:  Objection; asked and | 10:38:04 |

1    answered.                                          10:38:06

2        A  Well, as stated previously, those are       10:38:08

3    payments that the insured made to entities other   10:38:10

4    than DGS or Mid-South.                             10:38:16

5        Q  And why is that significant if, in fact,    10:38:18

6    those were payments that International Paper had    10:38:24

7    to make because of the employee theft scheme?      10:38:25

8    What does it matter who they overpaid, whether     10:38:31

9    they overpaid DGS or Mid-South or whether they     10:38:34

10   paid the majority suppliers?  Why does that make a 10:38:38

11   difference under the policy as to whether that's   10:38:43

12   recoverable loss?                                  10:38:45

13       MR. MURPHY:  Objection; asked and             10:38:47

14   answered.                                          10:38:48

15       A  Well, again, the exclusion itself is with   10:38:53

16   respect to indirect or consequential loss.         10:38:55

17       Q  Right.                                      10:38:58

18       A  And those payments that you were just       10:38:59

19   referring to were not made to DGS or Mid-South.    10:39:02

20       Q  Right.  But where in the exclusion does it  10:39:09

21   say that payments have to be made to any           10:39:12

22   particular entity in the employee theft scheme in  10:39:16

23   order for that -- those payments to be recoverable 10:39:20

24   loss?                                              10:39:26

25       A  Well, the exclusion states the claims are   10:39:27

| | | |
|---|---|---|
| 1 | barred in whole or in part to the extent that | 10:39:30 |
| 2 | they're indirect or consequential. | 10:39:34 |
| 3 | Q  So why are payments to DGS and Mid-South | 10:39:37 |
| 4 | not indirect or consequential but payments under | 10:39:44 |
| 5 | the same scheme made to the majority suppliers | 10:39:48 |
| 6 | arising out of that scheme?  Why do you deem those | 10:39:52 |
| 7 | to be indirect or consequential? | 10:39:56 |
| 8 | MR. MURPHY:  Objection as to form. | 10:39:59 |
| 9 | A  Could you repeat your question again, | 10:40:04 |
| 10 | please? | 10:40:06 |
| 11 | Q  Right.  You seem to be saying that the | 10:40:06 |
| 12 | payments of the 2.7 million that IP made to settle | 10:40:09 |
| 13 | invoices with the majority suppliers to DGS and | 10:40:14 |
| 14 | Mid-South is different or that that falls within | 10:40:19 |
| 15 | this third affirmative defense of indirect or | 10:40:22 |
| 16 | consequential, and also that overpayments made to | 10:40:25 |
| 17 | the majority suppliers because of the commissions | 10:40:29 |
| 18 | that the majority suppliers had to pay to DGS and | 10:40:32 |
| 19 | Mid-South were also indirect and consequential, | 10:40:36 |
| 20 | and therefore fall within the third affirmative | 10:40:40 |
| 21 | defense; is that right? | 10:40:43 |
| 22 | Those two categories of IP's claim, you're | 10:40:45 |
| 23 | saying, are subject to the third affirmative | 10:40:49 |
| 24 | defense? | 10:40:52 |
| 25 | A  Well, again, as stated previously, the | 10:40:52 |

1    payments to majority suppliers the insured made,                10:41:02

2    they didn't make them to either DGS or Mid-South.               10:41:14

3        Q   Right.                                                  10:41:21

4        A   They made them to the majority suppliers.               10:41:21

5        Q   Right.  We can all agree --                             10:41:25

6        A   The product received.                                  10:41:27

7        Q   But where does it say that -- where in the             10:41:28

8    third affirmative defense or in that exclusion for             10:41:33

9    indirect or consequential loss, where does it say             10:41:38

10   that payments have to be made to any one                       10:41:43

11   particular entity or another in order for that               10:41:46

12   exclusion to either apply or not apply?  Because             10:41:49

13   you seem to be making the distinction between                10:41:52

14   payments under the scheme made directly to DGS or            10:41:55

15   Mid-South or payments made to majority suppliers             10:42:00

16   because of the scheme.                                         10:42:04

17       Where is it in the policy language of this              10:42:06

18   exclusion that makes that distinction?                        10:42:10

19       MR. MURPHY:  Objection as to form.                        10:42:15

20       A   Well, again, the exclusion does state the            10:42:23

21   underwriters should not be liable for losses               10:42:25

22   arising out of indirect or consequential loss of           10:42:28

23   any kind.                                                      10:42:31

24       Q   All right.  So with regard to the                   10:42:32

25   settlement payments that IP made to satisfy the            10:42:36

1    invoices that DGS and Mid-South did not pay, does          10:42:42

2    Beazley consider those to be indirect losses, or           10:42:47

3    does Beazley consider those to be consequential            10:42:51

4    losses under that exclusion?                               10:42:53

5         MR. MURPHY:  Objection as to form.  You               10:42:55

6    can answer.                                                10:42:58

7         A  Well, they appear to be payments that the          10:42:58

8    insured made for goods that they received.                 10:43:17

9         Q  Right.  And you understand that IP had             10:43:19

10   already paid DGS and Mid-South for those same              10:43:20

11   goods, so now they're having to pay twice to avoid         10:43:24

12   getting sued by the majority suppliers.                    10:43:29

13        So why is it that this exclusion applies              10:43:34

14   if they have to double pay for goods received?             10:43:39

15        MR. MURPHY:  Objection as to form; asked              10:43:47

16   and answered.                                              10:43:49

17        A  Again, we've included it to the extent it          10:43:56

18   applies to this particular matter with respect to          10:43:58

19   any indirect or consequential losses that have             10:44:01

20   been included as part of the claim.                        10:44:04

21        Q  And do you -- does Beazley consider those          10:44:06

22   settlement payments to the majority suppliers to           10:44:09

23   be indirect, or does it consider them to be                10:44:12

24   consequential under the terms of this exclusion?           10:44:16

25        MR. MURPHY:  Objection; asked and answered            10:44:19

1   within the last couple minutes.  It's almost the                10:44:22

2   exact same question, Counsel.                                   10:44:24

3       MR. SYLVESTER:  I agree.  I've been                         10:44:26

4   waiting for an answer.  You can sit here --                     10:44:29

5       MR. MURPHY:  She gave you an answer.  You                   10:44:31

6   don't like it.                                                  10:44:34

7       MR. SYLVESTER:  It's not a question of                      10:44:35

8   liking it.  I just want an answer.                              10:44:36

9   BY MR. SYLVESTER:                                               10:44:38

10      Q  Which one is it?  Is Beazley contending                  10:44:39

11  that that payment is indirect and therefore                     10:44:41

12  excluded, or is Beazley contending that it's                    10:44:44

13  consequential and therefore excluded?                           10:44:47

14      A  There's a potential application with                     10:44:49

15  respect to both.                                                10:44:56

16      Q  What's the difference between the two,                   10:45:03

17  indirect and consequential, in that exclusion?                  10:45:05

18      MR. MURPHY:  Objection as to form.                          10:45:10

19      A  Well, a consequential loss would be                      10:45:11

20  something that is as a result of a potential loss               10:45:26

21  that's covered under the policy, and indirect is                10:45:31

22  with respect to if something was a direct -- not a              10:45:43

23  direct loss to the insured.                                     10:45:51

24      Q  As regards to commissions that were paid                 10:45:59

25  by the majority suppliers that required                         10:46:15

1    overpayment by IG to the majority suppliers to          10:46:18

2    cover the costs of those commissions, does Beazley       10:46:22

3    consider those to be indirect losses or                 10:46:24

4    consequential losses as those terms are used in         10:46:27

5    this third affirmative defense?                         10:46:31

6         MR. MURPHY:  Objection; asked and                  10:46:34

7    answered.  You've already gotten the answer to          10:46:35

8    what's the difference.  She's told you potentially      10:46:37

9    both.                                                   10:46:40

10        MR. SYLVESTER:  That was with regard to            10:46:42

11   the other category, Gene.  I'm asking about a           10:46:43

12   different category loss.  She didn't answer.            10:46:47

13        THE WITNESS:  Actually, my response was to         10:46:51

14   both previously.                                        10:46:53

15   BY MR. SYLVESTER:                                       10:46:57

16    Q  So you're saying both amounts, the 2.7 and          10:46:57

17   the 1.9, Beazley considers both to be indirect and      10:47:01

18   to be consequential losses under the third              10:47:05

19   affirmative defense?  Is that your testimony?           10:47:10

20        MR. MURPHY:  Objection; misstates the              10:47:12

21   testimony.  Close, but it misstates the testimony.      10:47:14

22        You can answer.                                    10:47:17

23    A  Well, as I'm indicating previously,                 10:47:19

24   there's the potential for both of those buckets,        10:47:24

25   the 2.7 and the 1.9, and certainly any others that      10:47:31

1    fall into a similar category, to be both indirect          10:47:37

2    or consequential.          10:47:41

3        Q   When you say a potential, have you not          10:47:43

4    made a decision about that one way or another?          10:47:53

5        A   We're continuing to evaluate the claim at          10:47:55

6    this time.  Within Beazley.          10:47:59

7        Q   Okay.  Let's look at the fourth          10:48:02

8    affirmative defense.  The fourth affirmative          10:48:11

9    defense says Plaintiff's claims are barred in          10:48:13

10   whole or in part to the extent that the voluntary          10:48:16

11   exchange or purpose exclusion in the Beazley          10:48:19

12   policy applies.          10:48:21

13       This exclusion provides, and I quote,          10:48:23

14   liable for loss or expenses arising out of the          10:48:27

15   insured knowingly having given or surrendered          10:48:30

16   money, securities, or property in any exchange or          10:48:34

17   purchase with a third party, not in collusion with          10:48:38

18   an employee, provided that those exclusions shall          10:48:43

19   not apply to loss under the money orders and          10:48:45

20   counterfeit paper currency fraud insuring          10:48:48

21   agreement.          10:48:51

22       So with regard to the fourth affirmative          10:48:54

23   defense asserting the voluntary exchange or          10:48:56

24   purchase exclusion, what are the facts or          10:48:58

25   information which Beazley has to support the          10:49:03

1   assertion of this affirmative defense regarding          10:49:06

2   International Paper's coverage claim?                     10:49:10

3       A   The payments that were made based on the         10:49:18

4   information that we've seen were made voluntarily         10:49:21

5   by international paper in the procurement of the          10:49:29

6   specialty chemicals.                                     10:49:33

7       Q   You mean the payments made to DGS and            10:49:35

8   Mid-South were made voluntarily?  Is that your           10:49:46

9   assertion for this affirmative defense?                  10:49:48

10      A   Yes, that is correct.                            10:49:51

11      Q   Is it Beazley's contention that               10:49:58

12  International Paper knowingly paid DGS and                10:50:03

13  Mid-South payments knowing that those companies          10:50:07

14  were known and controlled by Jag's brother and           10:50:11

15  that Jag's brother's company was funneling money         10:50:18

16  back to Jag?  Do you think that that was a                10:50:21

17  voluntary decision by International Paper by              10:50:25

18  anybody other than Jag to do that?                       10:50:29

19      MR. MURPHY:  Objection as to form.                   10:50:31

20      A   Well, again, the payments that were made         10:50:42

21  for the purchase of the chemicals were made              10:50:44

22  voluntarily by International Paper.                       10:50:48

23      Q   Isn't it the case that any sort of               10:50:50

24  kickback scheme, that if a company is paying a           10:50:56

25  third -party contractor and some of that money is        10:51:00

1    being kicked back to purchasing agent, that that's          10:51:03

2    employee theft even though money is, in fact,               10:51:06

3    being transferred to a third party?  Doesn't that           10:51:11

4    always happen that way?                                     10:51:14

5          MR. MURPHY:  Objection as to form.                    10:51:15

6      A  I couldn't speak to -- to that.  I'm only              10:51:21

7    addressing this claim.                                      10:51:26

8      Q  Well, but you testified that you've                    10:51:27

9    handled many, many employee theft claims in your            10:51:29

10   career.  Are you saying that an employee scheme             10:51:32

11   where there is payments made by a company                   10:51:37

12   controlled by the purchasing agent to a third               10:51:41

13   party and that third party kicks back money to the          10:51:45

14   purchasing agent, that that can't be covered under          10:51:48

15   the Beazley commercial crime policy language                10:51:53

16   because the payment was, in fact, made by the               10:51:56

17   company to the third party?  Is that your                   10:52:01

18   testimony as to how that exclusion operates?                10:52:03

19         MR. MURPHY:  Objection as to form;                    10:52:06

20   misstates the testimony.                                    10:52:08

21     A  Well, again, I'm only here to address this             10:52:09

22   claim.                                                      10:52:16

23     Q  Well, you're here in your individual                   10:52:17

24   capacity as well as a representative of Beazley,            10:52:23

25   and so I'm asking you in your experience, are you           10:52:26

1    saying that this exclusion, this voluntary          10:52:29

2    exchange or purchase exclusion, would preclude      10:52:34

3    coverage for any sort of kickback scheme where a    10:52:37

4    purchasing agent is using its -- his purchasing     10:52:40

5    authority to send his employers money to a third    10:52:44

6    party and that third party then kicks back money    10:52:47

7    to the purchasing agent?  You're saying this        10:52:50

8    exclusion would prevent that from being employee    10:52:52

9    theft under the policy?                             10:52:55

10        MR. MURPHY:  Objection as to form;             10:52:57

11   incomplete hypothetical.                            10:53:01

12       A  Potentially.                                 10:53:08

13       Q  It's potentially excluded, but would it be   10:53:09

14   potentially covered as well in that scenario that   10:53:16

15   I just asked you for?                               10:53:19

16        MR. MURPHY:  Same objection.                   10:53:21

17       A  Each claim has unique facts and             10:53:23

18   circumstances, so I couldn't say with certainty in  10:53:29

19   that hypothetical scenario.                         10:53:36

20       Q  Well, in this case, if Jag is authorizing   10:53:38

21   payment to DGS and Mid-South, his brother's         10:53:47

22   company, and IP is making those payments and some   10:53:53

23   of that money is getting funneled back to Jag,      10:53:56

24   you're saying that that kind of a scheme is         10:53:59

25   excluded under the voluntary exchange or purchase   10:54:04

1    exclusion because IP is actually sending money to          10:54:07

2    a third party and that can't be employment theft?          10:54:10

3    Is that Beazley's position about how that                  10:54:14

4    exclusion operates?                                        10:54:16

5         MR. MURPHY:  Objection as to form.                    10:54:18

6      A  Can you repeat the question, please?                  10:54:23

7      Q  Is Beazley asserting that its voluntary               10:54:25

8    exchange or purchase exclusion applies in this             10:54:28

9    case simply because Jag was able to direct                 10:54:31

10   International Paper to send money to his brother's         10:54:38

11   company at DGS and Mid-South, and that the mere            10:54:39

12   act of International Paper sending money to Jag's          10:54:45

13   brother's company, that that prevents any claim           10:54:49

14   for employee theft under this policy?                     10:54:56

15        MR. MURPHY:  Objection as to form.  You              10:55:00

16   can answer.                                               10:55:01

17     A  Well, again, these were voluntary payments           10:55:01

18   that were made in the purchase of various                 10:55:14

19   specialty chemicals.                                      10:55:16

20     Q  Why do you say they were voluntary                   10:55:17

21   payments by international paper when these                 10:55:22

22   payments were made in violation of multiple               10:55:25

23   company purchasing requirements, conflicts of             10:55:31

24   interests were not disclosed, amounts that were           10:55:38

25   paid were not -- were increased unilaterally by           10:55:42

| | | |
|---|---|---|
| 1 | Jag in the SAP system, some of the payments made | 10:55:46 |
| 2 | to DGS or Mid-South were never the subject of any | 10:55:52 |
| 3 | contract? | 10:55:56 |
| 4 | Why were you saying that these were | 10:55:57 |
| 5 | voluntary payments by International Paper when Jag | 10:55:59 |
| 6 | was controlling these payments against company | 10:56:03 |
| 7 | policy? | 10:56:06 |
| 8 | MR. MURPHY: Objection as to form. | 10:56:09 |
| 9 | A Again, as stated previously, they were | 10:56:20 |
| 10 | payments that were made for the procurement of the | 10:56:22 |
| 11 | various specialty chemicals. | 10:56:27 |
| 12 | MR. MURPHY: Mr. Sylvester, when you get a | 10:56:28 |
| 13 | chance, we've been going about an hour. If we | 10:56:30 |
| 14 | could take a break, let me know when. But I don't | 10:56:34 |
| 15 | know if we're at a good breaking point here. | 10:56:39 |
| 16 | MR. SYLVESTER: Yeah. Let me just finish | 10:56:41 |
| 17 | this point, and then we'll take a break. | 10:56:42 |
| 18 | BY MR. SYLVESTER: | 10:56:44 |
| 19 | Q You understand, Ms. Ellis, that | 10:56:45 |
| 20 | International Paper was not aware, nobody other | 10:56:49 |
| 21 | than Jag was aware that he was doing business with | 10:56:51 |
| 22 | his brother's company when he was recommending and | 10:56:54 |
| 23 | directing contracts to DGS and Mid-South? Would | 10:57:01 |
| 24 | you agree with that? | 10:57:05 |
| 25 | A Would I agree with -- what is the | 10:57:06 |

| | | |
|---|---|---|
| 1 | question? | 10:57:15 |
| 2 | Q  Yeah.  Would you agree with the fact that | 10:57:15 |
| 3 | other than Jag, nobody at International Paper knew | 10:57:20 |
| 4 | that they were dealing with Jag's brother's | 10:57:23 |
| 5 | companies, DGS and Mid-South, when those contracts | 10:57:27 |
| 6 | for the purchase of specialty chemicals were | 10:57:33 |
| 7 | approved and were operating? | 10:57:39 |
| 8 | MR. MURPHY:  Objection as to form. | 10:57:44 |
| 9 | A  We understand that that's what's been | 10:57:45 |
| 10 | reported to Beazley. | 10:57:52 |
| 11 | Q  Well, does Beazley have any reason to | 10:57:54 |
| 12 | believe that anybody at IP knew that DGS and | 10:57:57 |
| 13 | Mid-South were companies that were under control | 10:58:03 |
| 14 | by Jag's brother? | 10:58:06 |
| 15 | MR. MURPHY:  Objection as to form; asked | 10:58:10 |
| 16 | and answered during the last session. | 10:58:12 |
| 17 | A  We're continuing to evaluate that piece. | 10:58:17 |
| 18 | Q  I understand you're evaluating, but as you | 10:58:21 |
| 19 | sit here today near the close of discovery, do you | 10:58:24 |
| 20 | have any evidence to demonstrate that anybody at | 10:58:27 |
| 21 | International Paper other than Jag knew that | 10:58:29 |
| 22 | International Paper is doing business with Jag's | 10:58:35 |
| 23 | brother's companies, DGS and Mid-South? | 10:58:39 |
| 24 | MR. MURPHY:  Same objection.  It's not | 10:58:42 |
| 25 | fair to ask her the same questions from the last | 10:58:44 |

1  session that she's already answered looking for a          10:58:47

2  different answer.  That's been addressed, Counsel.          10:58:51

3       MR. SYLVESTER:  I don't think so, plus               10:58:53

4  there's been additional investigation in the last          10:58:55

5  couple of weeks.  So I don't know whether there's          10:58:58

6  any new information that this witness has that she          10:59:01

7  didn't have, but I'm just going through these              10:59:05

8  affirmative defenses to see what evidence Beazley          10:59:07

9  believes supports the affirmative defenses.                10:59:12

10       So I would ask --                                    10:59:16

11       MR. MURPHY:  Fair enough.  That's fair              10:59:20

12  enough.  I mean, you can't say that in response to        10:59:21

13  my objection and not just let me say something.           10:59:23

14       That's fair enough, but the last time, you          10:59:26

15  know, there was reference during your questions           10:59:28

16  about, you know, photos that were supposedly              10:59:30

17  taken, you know, at a family event with the -- the        10:59:32

18  supervisor or the manager of Jag.                         10:59:35

19       I mean, this has been addressed.                    10:59:37

20       MR. SYLVESTER:  I don't -- I don't think            10:59:39

21  so.  I don't think I've asked this specific               10:59:41

22  question, but let me ask it again.                        10:59:43

23  BY MR. SYLVESTER:                                         10:59:45

24    Q  Are you aware of any evidence that anybody           10:59:45

25  at International Paper knew that they were doing           10:59:52

1    business with Jag's brother's companies owned and        10:59:57

2    controlled by Jag's brother; that is DGS and            11:00:01

3    Mid-South?                                              11:00:06

4         MR. MURPHY:  Same objection.                       11:00:07

5       A  Again, as stated previously, we're               11:00:08

6    continuing to evaluate.                                 11:00:11

7       Q  Your counsel has asked for a break, so           11:00:16

8    we're going to contend that break.                      11:00:20

9       A  Okay.                                            11:00:22

10        VIDEOGRAPHER:  We are going off the                11:00:22

11   record.  The time is 11:00 a.m.                         11:00:24

12        (A recess was taken.)                             11:00:25

13        VIDEOGRAPHER:  We are back on the record.          11:10:54

14   The time is 11:10 a.m.                                  11:10:56

15   BY MR. SYLVESTER:                                       11:10:58

16      Q  Ms. Ellis, again, we're looking at the          11:10:59

17   answer and affirmative defenses of Beazley in           11:11:03

18   response to Plaintiff International Paper's             11:11:07

19   complaint, Exhibit 6.                                   11:11:10

20        Can you look at the seventh affirmative           11:11:10

21   defense asserted by Beazley on Page 11 of               11:11:13

22   Exhibit 6?  Tell me when you have it.                   11:11:17

23      A  I have it.                                       11:11:25

24      Q  So in this affirmative defense, Beazley         11:11:26

25   states that Plaintiff's claims for attorneys'           11:11:31

1   fees, expenses, and costs in this action are                11:11:33

2   barred by the legal fees, costs, or expenses                11:11:34

3   exclusion in the Beazley policy.                            11:11:37

4        This exclusion provides, quote, the                    11:11:40

5   underwriter shall not be liable for loss or                 11:11:43

6   expenses incurred or paid by an insured in                  11:11:46

7   defending or prosecuting any legal proceeding or            11:11:49

8   claim provided that this exclusion shall not apply          11:11:52

9   to the coverage provided under the expense                  11:11:55

10  coverage insuring agreement, unquote.                       11:11:58

11       Do you see that defense?                               11:12:04

12   A  Yes, I do.                                              11:12:05

13   Q  What facts or information does Beazley                  11:12:06

14  have to assert this set of affirmative defense in           11:12:08

15  connection with International Paper's coverage?             11:12:14

16   A  Well, again, we haven't made a coverage                 11:12:21

17  determination at this time.  We're still                    11:12:24

18  evaluating that.                                            11:12:27

19       But with respect to the expense coverage,             11:12:30

20  insuring agreement does require Beazley's consent           11:12:37

21  prior to incurring fees that may apply within the           11:12:40

22  expense coverage insuring agreement.                        11:12:45

23   Q  Okay.  Well, you've seen International                  11:12:49

24  Paper's loss, which was submitted years ago.  What          11:12:55

25  aspects of that monetary claim for coverage is             11:13:00

1    Beazley contending may be excluded under this            11:13:04
2    legal fees, costs, and expense exclusion in the          11:13:07
3    policy?                                                  11:13:10
4        A  Well, again, the policy does require              11:13:11
5    consent prior to incurring -- prior to use of the        11:13:17
6    expense coverage, and then in this case, the             11:13:21
7    insured did not request to obtain Beazley's              11:13:25
8    consent prior to incurring various fees on this          11:13:29
9    particular matter.                                       11:13:32
10        And then separately, some of the fees that          11:13:35
11   were in cost expenses and so forth that were             11:13:40
12   incurred were in response to various subpoena            11:13:44
13   requests and document requests for the criminal          11:13:56
14   case, and those types of expenses, such as               11:14:00
15   prosecuting any legal proceeding, are -- are             11:14:09
16   barred with respect to legal fees, costs, or             11:14:15
17   expenses exclusion under the policy.                     11:14:19
18       Q  Okay.  I think I hear two different -- two        11:14:23
19   answers.  I want to dive into each of them.              11:14:27
20        First of all, which fees or expenses,               11:14:31
21   legal fees or expenses are you saying that Beazley       11:14:34
22   did not consent to, and therefore they're not            11:14:36
23   recoverable under the proof of loss submitted by         11:14:40
24   International Paper?  What fees and expenses are          11:14:45
25   you talking about?                                       11:14:47

1      A   Well, the consent is really insurers          11:14:48

2   requesting consent from Beazley.                    11:14:54

3      Q   Well, for example, as you know,               11:14:55

4   International Paper filed legal proceedings          11:15:07

5   against Jag and Shiv and the related companies in   11:15:10

6   order to seek reimbursement for amounts stolen      11:15:14

7   under this employee theft scheme.                   11:15:18

8           And as a result of that pursuit, Jag,       11:15:20

9   Shiv, and DGS and Mid-South, IP was able to         11:15:29

10  receive in settlement $15 million.                  11:15:35

11          However, as you know, with regard to        11:15:39

12  pursuing that, it wasn't -- it wasn't a pursuit     11:15:42

13  for free.  It cost money to pursue those entities   11:15:45

14  and persons' legal fees in order to obtain that,    11:15:49

15  and IP is subtracting the cost of pursuing Jag and  11:15:56

16  Shiv from the recovery to get a net recovery of     11:16:00

17  less than $15 million when you take out the legal   11:16:05

18  fees that it incurred in order to obtain that       11:16:09

19  $15 million settlement payment.                     11:16:12

20          Are you saying that those legal fees that   11:16:14

21  IP expended to get the $15 million should not be    11:16:18

22  an offset against the settlement payment of 15      11:16:23

23  million?                                            11:16:27

24      MR. MURPHY:  Objection as to form.              11:16:29

25      A   Well, again, as stated a few minutes ago,   11:16:32

| | | |
|---|---|---|
| 1 | the policy does require Beazley's consent with | 11:16:39 |
| 2 | respect to the use of the expense coverage | 11:16:42 |
| 3 | insuring agreement. | 11:16:46 |
| 4 | Q  Okay.  I'm not talking about expense | 11:16:48 |
| 5 | coverage.  I mean, we'll talk about that separate. | 11:16:51 |
| 6 | I'm talking about the legal fees that IP | 11:16:55 |
| 7 | paid to Butler Snow to pursue Jag and Shiv and | 11:16:59 |
| 8 | Mid-South and DGS that resulted in this settlement | 11:17:04 |
| 9 | payment of $15 million. | 11:17:07 |
| 10 | As you know, under its claim, | 11:17:08 |
| 11 | International Paper is subtracting from that 15 | 11:17:11 |
| 12 | million the legal fees that it cost to get that 15 | 11:17:14 |
| 13 | million, and so that it's a net settlement payment | 11:17:20 |
| 14 | of less than 15 million. | 11:17:27 |
| 15 | Are you saying that it's not properly | 11:17:28 |
| 16 | deductible from the 15 million in costs that the | 11:17:31 |
| 17 | legal fees, which were somewhere in the amount of | 11:17:34 |
| 18 | $844,000, are you saying that Beazley doesn't | 11:17:37 |
| 19 | agree that International Paper can reduce that 15 | 11:17:45 |
| 20 | million settlement by the amount of legal fees | 11:17:49 |
| 21 | incurred to get it in order to have a net recovery | 11:17:52 |
| 22 | of 14.15 million as opposed to 15 million? | 11:17:55 |
| 23 | MR. MURPHY:  Objection as to form. | 11:18:02 |
| 24 | A  If I'm understanding your question, | 11:18:04 |
| 25 | question, this exclusion is with respect to loss | 11:18:17 |

| | | |
|---|---|---|
| 1 | or expenses incurred -- as it states, incurred or | 11:18:22 |
| 2 | paid by an insured in defending or prosecuting any | 11:18:27 |
| 3 | legal proceeding or claim. | 11:18:30 |
| 4 | Q  I understand. | 11:18:36 |
| 5 | A  And then -- go ahead.  Sorry. | 11:18:37 |
| 6 | Q  Yeah.  So what aspect of International's | 11:18:40 |
| 7 | claim are you contending is excluded by that | 11:18:46 |
| 8 | exclusion, that legal fees, costs, or expenses | 11:18:49 |
| 9 | exclusion of the policy? | 11:18:53 |
| 10 | A  Well, this -- the exclusion is indicating | 11:18:55 |
| 11 | that legal fees, costs, and expenses incurred -- | 11:19:01 |
| 12 | in this case, and from your example, as far as | 11:19:09 |
| 13 | prosecuting any legal proceeding or claim, are | 11:19:12 |
| 14 | excluded. | 11:19:19 |
| 15 | Q  Right.  But do you understand that | 11:19:26 |
| 16 | International Paper isn't asking for payment of | 11:19:29 |
| 17 | those legal fees, it's simply subtracting those | 11:19:32 |
| 18 | legal fees from the settlement amount in order to | 11:19:36 |
| 19 | get a net settlement amount of 14.1 million? | 11:19:39 |
| 20 | There's nothing wrong with Beazley doing that, | 11:19:43 |
| 21 | correct? | 11:19:45 |
| 22 | MR. MURPHY:  Objection as to form. | 11:19:46 |
| 23 | Q  Or International Paper subtracting the | 11:19:47 |
| 24 | cost to get that 15 million in legal fees to | 11:19:52 |
| 25 | result in a net amount of settlement proceeds of | 11:19:58 |

1    14.1 million?  Would you agree that that is              11:20:02

2    appropriate?                                             11:20:05

3        MR. MURPHY:  Excuse my interruption.  I              11:20:09

4    thought you had finished earlier.  Objection as to       11:20:11

5    form.                                                    11:20:14

6        A  Well, the exclusion is with respect to           11:20:21

7    loss, shall not be liable for loss incurred or           11:20:24

8    expenses incurred or paid by insured in defending        11:20:31

9    or prosecuting any legal proceeding or claim.            11:20:34

10       Q  Well, let's break this down.  You know            11:20:39

11   that International Paper was pursuing Jag and Shiv        11:20:42

12   to obtain moneys back that were stolen through the       11:20:46

13   employee's scheme by filing this civil action and        11:20:54

14   by filing criminal charges?  You understand that         11:20:57

15   that happened, right?                                    11:20:59

16       A  I understand that there was a civil               11:21:01

17   complaint filed, yes.                                    11:21:06

18       Q  And Beazley did not object to                     11:21:07

19   International Paper filing that civil complaint in        11:21:13

20   an effort to recoup stolen funds, right?                 11:21:16

21       A  Beazley was not in a position to -- to            11:21:21

22   provide an objection to that.                            11:21:33

23       Q  Why do you say Beazley was not in a               11:21:34

24   position to provide an objection to International         11:21:40

25   Paper pursuing Jag and Shiv and Mid-South and DGS        11:21:42

1   for recouping stolen funds?                          11:21:47

2        A   Well, I understand there was the            11:21:50

3   allegation with respect to the funds, but Beazley    11:21:56

4   had not made a claim payment, so we had no ability   11:22:01

5   to object with regard to the civil complaint the     11:22:06

6   insured filed.                                       11:22:10

7        Q   Okay.  And Beazley did not object as a      11:22:11

8   matter of fact to IP pursuing Jag and Shiv and       11:22:16

9   Mid-South and DGS to try to recoup stolen funds;     11:22:22

10  is that correct?                                     11:22:26

11       A   Again, Beazley did not object or have the   11:22:26

12  ability to object to the insured filed a civil       11:22:37

13  complaint.                                           11:22:44

14       Q   And Beazley was happy that International     11:22:44

15  Paper was -- Shiv and DGS and Mid-South to try to    11:22:49

16  recoup stolen funds, wasn't it?                      11:22:54

17           MR. MURPHY:  Objection as to form.          11:22:57

18       A   Again, Beazley was not in a position to     11:22:58

19  object to the insured filing a civil complaint.      11:23:06

20       Q   And you understand that in order to pursue  11:23:08

21  that, you've got to pay lawyers to file lawsuits     11:23:17

22  and to pursue discovery and to put pressure on Jag   11:23:19

23  and Shiv and Mid-South and DGS in order to recoup    11:23:24

24  stolen funds, right?  That's how -- that's how it    11:23:29

25  works, isn't it?                                     11:23:31

1        MR. MURPHY:  Objection as to form.                      11:23:33

2     A   What exactly is your question?                          11:23:34

3     Q   That in order for International Paper to                11:23:44

4  pursue a civil action against Jag and Shiv and DGS             11:23:47

5  and Mid-South to try to recoup stolen funds, it's              11:23:53

6  got to pay lawyers to do that, right?                          11:23:56

7     A   We understand there may be costs                        11:23:58

8  associated with the insured filing civil action.               11:24:04

9     Q   And it's perfectly appropriate, if                      11:24:09

10 International Paper received a settlement payment               11:24:13

11 of 15 million, to subtract out the legal costs                 11:24:15

12 that it incurred before any moneys can be credited             11:24:20

13 to insured losses, right?                                      11:24:30

14        MR. MURPHY:  Objection.                                 11:24:34

15    Q   Versus what the net is after incurring the              11:24:34

16 expenses before there's any discussion of how any              11:24:38

17 net recovery should be distributed for the benefit             11:24:42

18 of the insurers or the policyholder, right?                    11:24:47

19        MR. MURPHY:  Objection as to form.                      11:24:51

20    A   Potentially, but, again, Beazley was not                11:24:53

21 in the position to object, and we are still in the             11:25:02

22 process of evaluating this matter under the                    11:25:05

23 insured's policy.                                              11:25:08

24    Q   Was Beazley contending that any of the                  11:25:09

25 legal fees that IP incurred in order to pursue Jag             11:25:13

| | | |
|---|---|---|
| 1 | and Shiv and Mid-South and DGS and obtain that | 11:25:19 |
| 2 | $15 million settlement, is Beazley contending that | 11:25:23 |
| 3 | any of that $844,000 of legal fees was | 11:25:26 |
| 4 | unreasonable? | 11:25:30 |
| 5 | A  We're reserving our rights with respect to | 11:25:30 |
| 6 | the reasonableness of those fees and to the extent | 11:25:34 |
| 7 | that they were for prosecuting the criminal action | 11:25:38 |
| 8 | as well. | 11:25:44 |
| 9 | Q  Why are you reserving your right as to | 11:25:45 |
| 10 | reasonableness?  What is it that would suggest | 11:25:53 |
| 11 | that any of those legal fees are unreasonable or | 11:25:55 |
| 12 | were incurred unreasonably? | 11:25:59 |
| 13 | A  We're continuing to evaluate that. | 11:26:00 |
| 14 | Q  And Beazley chose not to itself pursue Jag | 11:26:03 |
| 15 | and Shiv and Mid-South and DGS when given the | 11:26:18 |
| 16 | opportunity to do so by International Paper, | 11:26:22 |
| 17 | right? | 11:26:24 |
| 18 | A  Well, as stated previously, Beazley was | 11:26:26 |
| 19 | not in the position as far as standing to pursue | 11:26:30 |
| 20 | anyone with respect to the claim allegations, | 11:26:37 |
| 21 | because we had not made a payment under the | 11:26:42 |
| 22 | policy. | 11:26:45 |
| 23 | Q  Well, is Beazley second-guessing any of | 11:26:45 |
| 24 | the steps that International Paper took on its own | 11:26:56 |
| 25 | to pursue recoupment of stolen funds from Jag and | 11:26:59 |

1    Shiv?                                                    11:27:05

2        MR. MURPHY:  Objection as to form.                  11:27:08

3    A   Are you asking if we object to the                  11:27:23

4    insured's pursuit?                                      11:27:25

5    Q   No.  Are you saying that there's something          11:27:26

6    in the way that International Paper pursued Jag          11:27:30

7    and Shiv and Mid-South and DGS that Beazley thinks      11:27:35

8    was inappropriate or unreasonable or improper or        11:27:41

9    not -- not what Beazley would have done had it          11:27:45

10   controlled that pursuit?                                11:27:50

11       MR. MURPHY:  Objection as to form.                  11:27:54

12   A   Well, again, each claim is unique, and I            11:28:03

13   can't say necessarily what steps Beazley could          11:28:06

14   have taken if it had the ability to do so.              11:28:08

15   Q   Well, you understand that International             11:28:22

16   Paper says that it incurred $844,560 in legal fees      11:28:26

17   in order to obtain the $15 million recoupment of        11:28:30

18   funds from Jag and Shiv and Mid-South and DGS?          11:28:33

19   That sounds like a pretty good return on                11:28:37

20   investment, doesn't it?                                 11:28:39

21       MR. MURPHY:  Objection as to form.                  11:28:41

22   A   I couldn't say with certainty on that.              11:28:42

23   Q   Beazley has no opinion one way or another           11:28:48

24   on that?                                                11:28:51

25   A   I can't really speak to a return on                 11:28:51

1    investment.                                                    11:29:06

2        Q   Now, you note that International Paper                 11:29:07

3    hired E&Y to prepare the claim and detail in a                11:29:11

4    proof of loss the amounts that were stolen under             11:29:20

5    the employee theft claim that IP was making to                11:29:23

6    Beazley, correct?                                             11:29:28

7        A   Yes.                                                   11:29:28

8        Q   And Beazley approved the use of E&Y was a             11:29:31

9    consultant to perform that claims preparation                 11:29:40

10   activity, correct?                                            11:29:43

11       MR. MURPHY:   Objection as to form.                       11:29:44

12       A   Do you have the document that's indicating           11:29:45

13   that agreement?                                               11:29:57

14       Q   Not offhand.  I didn't know that this was            11:29:58

15   an issue in dispute.  Is Beazley contending that              11:30:01

16   it did not approve the use of E&Y by International            11:30:06

17   Paper to prepare the proof of loss that was                   11:30:12

18   ultimately submitted?                                         11:30:14

19       A   I would have to see the document that was            11:30:16

20   agreeing to that.                                             11:30:25

21       Q   You don't --                                         11:30:25

22       A   I don't recall offhand.                              11:30:26

23       Q   Okay.  We can come back to that.                     11:30:27

24       But assuming that Beazley approved the use               11:30:29

25   of E&Y to prepare the claim and present the proof            11:30:35

1  of loss, how is it that legal fees, costs, or          11:30:38

2  expenses exclusion applies to any of its fees or       11:30:44

3  expenses that were incurred in connection with         11:30:51

4  preparing the claim and submitting it to Beazley?      11:30:59

5      A  Well, again, it does state prosecuting any      11:31:03

6  legal proceedings as well.  And to the extent          11:31:20

7  that, for example, there were responses to the         11:31:23

8  government subpoenas, for example, that can            11:31:30

9  potentially fall within that exclusion.                11:31:38

10     Q  Well, if E&Y had to gather the documents        11:31:40

11  anyway to prove the claim, if it also produced        11:31:43

12  those documents to the government, that doesn't       11:31:47

13  make the cost of gathering a producing documents      11:31:52

14  to support the claim uncovered under the legal        11:31:56

15  fees, costs, or expenses simply because they also     11:32:01

16  use those documents to respond to a government        11:32:04

17  subpoena, isn't that right?                            11:32:07

18     MR. MURPHY:  Objection as to form;                 11:32:09

19  hypothetical.                                          11:32:10

20     A  Well, again, as stated previously, to the       11:32:11

21  extent that in my example that there were costs or    11:32:19

22  fees incurred responding to, for example, a           11:32:23

23  government agency subpoena, for example.               11:32:28

24     Q  Right.  But if the response was to produce      11:32:31

25  documents that were already being gathered to         11:32:39

1   support the claim, that doesn't make those costs          11:32:42

2   uncovered, does it?                                       11:32:47

3       MR. MURPHY:  Same objection.  You can                 11:32:52

4   answer.                                                   11:32:53

5       A  As stated previously, if it's responding           11:32:55

6   to, for example, a government or government agency        11:32:59

7   subpoena, responding to that type of request,             11:33:04

8   because we understand that there was a criminal           11:33:12

9   matter associated with this as well.                      11:33:17

10      Q  So what amounts of the $958,599 of claims           11:33:19

11  preparation expenses that have been submitted by          11:33:30

12  International Paper, what portion of that does             11:33:36

13  Beazley contend is excluded because it was a              11:33:38

14  response to a government subpoena?                         11:33:43

15      A  I would have to defer to the expert                 11:33:50

16  reports on that.  I don't have that number at             11:33:52

17  hand.                                                      11:33:56

18      Q  I've looked at the expert reports.  I               11:33:57

19  don't believe I see any number that is claimed to         11:34:01

20  be excluded.  Are you saying that in the expert           11:34:04

21  report submitted by Beazley that there's a number         11:34:09

22  of dollars that are contended to be excluded under        11:34:14

23  the legal fees, costs, and expenses exclusion of          11:34:21

24  the policy because they were in response to a             11:34:24

25  government subpoena?                                       11:34:28

1     A  I don't have that particular dollar                    11:34:29

2  amount.                                                       11:34:36

3     Q  Well, I'm not asking you for a figure or               11:34:37

4  dollar amount.  Do you believe that your expert,             11:34:43

5  Brad Wilson of StoneTurn, has given an opinion               11:34:47

6  about what portion of the $958,599 of claims                 11:34:52

7  preparation expenses are not covered because                 11:34:58

8  they're a response to a government subpoena?                  11:35:00

9     A  What I'm saying is what I said previously              11:35:03

10  today, is that fees -- legal fees noted, costs, or           11:35:15

11  expenses with respect to prosecuting any legal               11:35:23

12  proceeding or claim can potentially fall under               11:35:26

13  this particular exclusion.                                   11:35:30

14     Q  Okay.  I understand that point.  What I'm             11:35:32

15  asking you, because this is a last chance for us             11:35:36

16  to understand it, what specific costs out of that            11:35:39

17  claims preparation expense number of $958,599 is             11:35:44

18  Beazley contending are excluded or possibly                  11:35:50

19  excluded because they were responding to a                   11:35:55

20  government subpoena?                                          11:35:57

21        I don't see that anywhere in your                     11:35:58

22  discovery responses giving that number, and I                11:36:00

23  don't see it anywhere in your expert report.  So             11:36:02

24  what is the number so that we have an opportunity             11:36:05

25  fairly to evaluate that criticism?                           11:36:08

1        What is the number of dollars that you're          11:36:13

2   contending are not covered because they were           11:36:16

3   responding to a government subpoena?                    11:36:18

4        MR. MURPHY:  Objection as to form.  She --        11:36:22

5   asked and answered.  She can't give you a specific      11:36:25

6   figure.                                                 11:36:27

7        A  As I said previously this morning, I don't      11:36:29

8   have that exact number at hand.                         11:36:34

9        Q  Well, how are you going to give us that         11:36:37

10  number given that discovery is closing and that         11:36:42

11  your expert report doesn't address that?                11:36:44

12       A  Again, Beazley's continuing to preserve         11:36:46

13  its rights with respect to the potential                11:37:00

14  applicability of this particular exclusion.             11:37:03

15       Q  Well, when do you intend to inform              11:37:06

16  International Paper of a specific dollar number          11:37:09

17  that you believe is excluded by virtue of this          11:37:12

18  legal fees, costs, or expenses exclusion in the         11:37:19

19  policy?                                                 11:37:23

20       A  I can't give you an exact date.                 11:37:23

21       Q  Okay.  Let's look at the eighth                 11:37:42

22  affirmative defense, which is on Page 12 of             11:37:46

23  Exhibit 6.                                              11:37:51

24       It says that Plaintiff's claims are barred         11:37:51

25  in whole or in part to the extent that the              11:37:58

1   affiliates and prior employees exclusion in the          11:38:00

2   Beazley policy applies.                                  11:38:04

3          This exclusion provides, quote, the              11:38:05

4   underwriters shall not be liable under the               11:38:08

5   employee dishonesty, client property coverage, or        11:38:13

6   expense coverage insuring agreements for loss or         11:38:14

7   damage caused by, No. 1, any agent, broker,              11:38:17

8   factor, commission merchant, consignee,                  11:38:22

9   contractor, independent contractor, subcontractor,       11:38:25

10  or similar person or entity, or, two, any employee       11:38:28

11  acting alone or in collusion with any other              11:38:33

12  employee more than 30 days following the                 11:38:35

13  termination of such employee.                            11:38:37

14         What facts or information does Beazley            11:38:38

15  have to support the assertion of that eighth             11:38:42

16  affirmative defense?                                     11:38:44

17     A  Well, as stated previously today and in           11:38:46

18  earlier testimony, Beazley's still evaluating           11:39:05

19  whether there has been an employee dishonesty loss      11:39:11

20  with respect to the policy, and to the extent that      11:39:15

21  there has been, whether this exclusion may apply        11:39:22

22  as -- based on what we see in DGS and Mid-South         11:39:30

23  would be either contractors or potentially              11:39:37

24  independent contractors or subcontractors to the       11:39:40

25  insured.                                                11:39:47

1    Q  Right.  But this is talking about          11:39:48

2    underwriters shall not be liable for loss or   11:39:52

3    damage sustained by any insured -- in this case, 11:39:54

4    International Paper -- caused by, and it says any 11:39:57

5    agent, broker, factor, commission merchant,     11:40:00

6    consignee, contractor, independent contractor,  11:40:05

7    subcontractor, or similar person or entity.     11:40:07

8         You understand, don't you, that           11:40:10

9    International Paper is saying that its loss is   11:40:12

10   caused by its then-employee, Jag, right?        11:40:15

11   A  We understand those are the allegations.    11:40:20

12   Q  Right.  Well, Jag is not an agent, broker,  11:40:27

13   factor, commission merchant, consignee,         11:40:30

14   contractor, independent contractor, subcontractor, 11:40:37

15   or similar person or entity; he was at the time an 11:40:40

16   actual employee of International Paper, right?   11:40:43

17   A  Jag was an employee of International         11:40:45

18   Paper, yes.                                      11:40:49

19   Q  And it's International Paper's claim that    11:40:50

20   they suffered loss because of the actions of their 11:40:54

21   employee, Jag, while he was an employee, correct? 11:40:58

22   A  We understand those are the allegations.    11:41:02

23   Q  And the second part of this exclusion       11:41:09

24   talks about loss or damage sustained by any     11:41:13

25   insured caused by any employee acting alone or in 11:41:16

1    collusion with any other employee more than          11:41:19

2    30 days following the termination of such            11:41:22

3    employee.                                            11:41:24

4         Do you see that?                                11:41:25

5      A  Yes, I see that section of the exclusion.       11:41:26

6      Q  And that doesn't apply, right, because IP       11:41:32

7    is contending that it was Jag's actions while he     11:41:36

8    was an employee, not after he was terminated, that   11:41:40

9    give rise to his loss?  I mean, to IP's loss,        11:41:43

10   isn't that right?                                    11:41:49

11     A  I don't think that we're excluding              11:41:50

12   anything with respect to this exclusion, meaning     11:41:59

13   Beazley.                                             11:42:03

14     Q  Are you saying that some part of                11:42:03

15   International Paper's claimed loss involves           11:42:06

16   activities of Jag more than 30 days after he was     11:42:08

17   terminated?                                          11:42:11

18     A  I'm saying that Beazley is not excluding        11:42:12

19   any sections of that language.                       11:42:21

20     Q  Okay.  So is it then Point No. 1 rather         11:42:25

21   than Point No. 2 of this exclusion that you're       11:42:31

22   focused on?                                          11:42:34

23     A  We're -- we're considering it in its            11:42:35

24   entirety.                                            11:42:45

25     Q  Well, how could it possibly apply if IP's       11:42:46

| | | |
|---|---|---|
| 1 | claim for coverage is for its loss sustained and | 11:42:50 |
| 2 | caused by its employee, Jag, while he was an | 11:42:56 |
| 3 | employee?  How can this affiliates and prior | 11:42:58 |
| 4 | employees exclusion apply under any circumstance? | 11:43:04 |
| 5 | A  Well, again, as stated previously, | 11:43:06 |
| 6 | Beazley's still evaluating and has not determined | 11:43:15 |
| 7 | that an employee dishonesty has occurred with | 11:43:19 |
| 8 | respect to this alleged incident. | 11:43:22 |
| 9 | And, again, as alleged with respect to the | 11:43:25 |
| 10 | payments that were made to DGS and Mid-South, | 11:43:31 |
| 11 | which we qualify as contractors with regard to | 11:43:35 |
| 12 | Section 1 of that exclusion. | 11:43:40 |
| 13 | Q  But what precludes that Section 1 is that | 11:43:45 |
| 14 | it's loss or damage sustained by any insured | 11:43:55 |
| 15 | caused by. | 11:43:59 |
| 16 | Do you understand that International Paper | 11:44:00 |
| 17 | is saying that its loss was caused by the | 11:44:01 |
| 18 | dishonest activities of its employee, Jag?  Do you | 11:44:05 |
| 19 | understand that's the nature of our claim? | 11:44:12 |
| 20 | MR. MURPHY:  Objection as to form; asked | 11:44:14 |
| 21 | and answered. | 11:44:15 |
| 22 | A  Beazley understands that that's what the | 11:44:20 |
| 23 | insured has alleged; however, we also understand | 11:44:21 |
| 24 | that payments were made to contractors in this | 11:44:28 |
| 25 | reported incident. | 11:44:32 |

1     Q  Well, of course they were made to third      11:44:37

2  parties, Jag's brother's company or companies, and   11:44:39

3  moneys were filed back to Jag.  That's part of --     11:44:43

4  that's the way the scheme worked.                     11:44:47

5         But the cause is because Jag was an            11:44:49

6  employee who had purchasing authority and could       11:44:53

7  direct contract payments to third parties -- i.e.,    11:44:56

8  his brother's companies -- that could then funnel     11:45:02

9  money back to him.                                     11:45:04

10        So how would even Section 1 apply when the     11:45:06

11  whole basis for the scheme is that we had a           11:45:08

12  dishonest employee, Jag, who was able to direct       11:45:13

13  money to third parties such as DGS and Mid-South?     11:45:18

14  How could that possibly apply in this case?           11:45:24

15     MR. MURPHY:  Objection as to form; asked          11:45:28

16  and answered.                                         11:45:29

17     A  Again, this exclusion may apply, and           11:45:38

18  Beazley continues to assert the potential             11:45:41

19  applicability of this particular affirmative          11:45:45

20  defense.                                              11:45:48

21     Q  What additional information does Beazley        11:45:48

22  need to know before determining whether this          11:45:54

23  exclusion, the so-called affiliates and prior         11:45:57

24  employees exclusion, in the Beazley policy            11:46:03

25  applies?                                              11:46:07

1        A   Again, we're continuing to evaluate this          11:46:08
2    matter in totality.                                       11:46:20
3        Q   All right.  Let's go to the eleventh              11:46:21
4    affirmative defense on Page 12 of Exhibit 6.  It          11:46:27
5    says Plaintiff's claims are barred in whole or in         11:46:32
6    part under the recoveries provision in the Beazley        11:46:37
7    policy.                                                   11:46:39
8            The recoveries provision reads, quote,            11:46:40
9    recoveries, whether effected by the underwriters          11:46:43
10   or by the insured, less the cost of recovery,             11:46:46
11   shall be distributed as follows.                          11:46:49
12           It says, first, to the insured for the            11:46:51
13   amount of loss otherwise covered but in excess of         11:46:54
14   the limits of liability.  2), Second, to the              11:46:57
15   underwriters for the amount paid to the insured           11:47:00
16   for covered loss.  3), third, to the insured for          11:47:03
17   the deductible; and, fourth, to the insured for           11:47:07
18   loss specifically excluded hereunder.  Recovery           11:47:12
19   from reinsurance or indemnity of the underwriters         11:47:16
20   shall not be deemed a recovery hereunder.                 11:47:20
21           How does that recoveries provision of the         11:47:23
22   policy provide an affirmative defense to coverage         11:47:25
23   for Beazley?                                              11:47:27
24       A   Well, Beazley understands that there was a        11:47:28
25   settlement in this matter, and that the insured           11:47:42

1   has offset its claimed loss based on the alleged          11:47:46

2   scheme based on that amount of recovery.          11:47:55

3        Q   Okay.  Now, you understand that Beazley          11:47:58

4   has not paid any money to International Paper on          11:48:11

5   this claim, correct?          11:48:14

6        A   Correct.  There have not been any claim          11:48:15

7   payments by Beazley at this time.          11:48:21

8        Q   Okay.  And so that under this recoveries          11:48:23

9   provision, there's no provision that Beazley would          11:48:26

10  obtain any amount of that settlement payment          11:48:30

11  because Beazley has not paid any amounts to the          11:48:37

12  insured's recovered loss, correct?          11:48:40

13       A   Yes, that's correct.          11:48:46

14       Q   So Beazley is not claiming any entitlement          11:48:47

15  to that -- to any or all of that settlement amount          11:48:51

16  that was obtained by International Paper; isn't          11:48:57

17  that correct?          11:49:01

18       A   Yes, that's correct.          11:49:01

19       Q   Okay.  Let's look at the twelfth          11:49:04

20  affirmative defense.          11:49:12

21       The twelfth affirmative defense is          11:49:14

22  Plaintiff's claims are barred to the extent          11:49:24

23  Plaintiff has failed to mitigate any damages.          11:49:26

24       What are the facts or information that          11:49:30

25  Beazley has that would support assertion of this          11:49:32

| | | |
|---|---|---|
| 1 | defense, that International Paper had failed to | 11:49:34 |
| 2 | mitigate its damages? | 11:49:36 |
| 3 | A  Are you on 12 or 13? | 11:49:42 |
| 4 | Q  I'm on -- I'm sorry.  I'm on -- did I skip | 11:49:45 |
| 5 | over?  I'm sorry.  I read 13 when I should have | 11:49:53 |
| 6 | said 12.  Let's do 12 first, then 13. | 11:49:55 |
| 7 | The twelfth affirmative defense is, | 11:50:00 |
| 8 | Plaintiff's claims are barred to the extent | 11:50:03 |
| 9 | Plaintiff has breached any condition precedent to | 11:50:05 |
| 10 | coverage under the Beazley policy, including but | 11:50:09 |
| 11 | not limited to taking any action which in any way | 11:50:11 |
| 12 | increases the underwriters' exposure under the | 11:50:13 |
| 13 | Beazley policy. | 11:50:17 |
| 14 | So what facts or information does Beazley | 11:50:18 |
| 15 | have to support its assertion of the twelfth | 11:50:20 |
| 16 | affirmative defense that International Paper has | 11:50:25 |
| 17 | breached any condition precedent to coverage | 11:50:28 |
| 18 | including but not limited to taking any action | 11:50:33 |
| 19 | which in any way increases the underwriters' | 11:50:35 |
| 20 | exposure? | 11:50:39 |
| 21 | A  Well, as we were discussing earlier today, | 11:50:39 |
| 22 | there was a settlement agreement that was entered | 11:50:47 |
| 23 | into by the insured with Jag, DGS, and Mid-South. | 11:50:50 |
| 24 | And we understand that from the insured's own | 11:51:01 |
| 25 | evaluation of assets that there were potential | 11:51:11 |

1    significance that based on that agreement, as it       11:51:15

2    was a full release, could not be -- could no           11:51:25

3    longer be pursued.                                     11:51:29

4          And we understand that the source of the         11:51:31

5    settlement funds was not from a liquidation of any     11:51:37

6    of those properties that were listed in the            11:51:40

7    insured's Kroll report, for example.                   11:51:46

8       Q  Are you -- is Beazley contending that            11:51:50

9    International Paper should have gotten more money       11:51:55

10   in settlement than the $15 million that it             11:51:57

11   obtained?                                              11:51:59

12      A  Beazley is indicating that, based on the         11:52:00

13   information the insured provided, there were other     11:52:11

14   assets that were available and not pursued, and        11:52:14

15   the insured entered into a full release.               11:52:19

16      Q  Did you review the testimony of                  11:52:22

17   Plaintiff's witness, Danny Van Horn, to explain        11:52:25

18   why International Paper believed 15 million was         11:52:29

19   the maximum amount it could recover from Jag and       11:52:32

20   Shiv at Mid-South and DGS?                             11:52:36

21      A  No.                                              11:52:39

22      Q  Well, Beazley asked for a witness to             11:52:40

23   explain why they settled for that amount, 15           11:52:47

24   million, and not any more given all the facts and      11:52:51

25   circumstances, and you're saying that you haven't      11:52:55

1   read his testimony?                              11:52:57

2       MR. MURPHY:  Objection as to form;           11:52:59

3   argumentative.                                   11:53:01

4    A  No.  I've not read his testimony.            11:53:04

5    Q  Well, wouldn't you want to read his          11:53:07

6   testimony before making a judgment about whether 11:53:10

7   those properties, for example, were available to 11:53:13

8   increase the settlement amount?                  11:53:23

9       MR. MURPHY:  Objection as to form.  Well,    11:53:25

10  again, the insured did enter into a full release 11:53:38

11  in exchange for the payment that was issued, and 11:53:42

12  because of that release, if there's no further   11:53:52

13  ability to pursue Jag, Shiv, DGS, or Mid-South for 11:53:59

14  anything further.                                11:54:10

15   Q  Are you saying that Beazley, had it          11:54:14

16  controlled the litigation, could have gotten more 11:54:18

17  money or a more limited release?  Is that what   11:54:20

18  Beazley is contending had it taken over the      11:54:23

19  litigation pursuing Jag and Shiv?                11:54:29

20      MR. MURPHY:  Objection as to form; calls     11:54:31

21  for speculation; hypothetical.                   11:54:33

22   A  Well, as stated previously, Beazley did      11:54:36

23  not have -- was not in standing to take over     11:54:41

24  pursuit of those individuals, but we do understand 11:54:46

25  from the insured's own searches that they were   11:54:51

1  relisting holdings and that they were not the                11:54:56

2  source of the settlement funding.                            11:55:00

3      Q  Right.  And did you understand why they               11:55:02

4  were not the source of the funding?  Did you                 11:55:06

5  understand that those were not traceable to this             11:55:10

6  particular scheme given that many of those                   11:55:14

7  properties were owned by Jag or other entities               11:55:16

8  prior to the scheme having been effected?                    11:55:21

9      A  I can't comment on that.                              11:55:31

10     Q  Did you understand that the U.S.                      11:55:35

11 government didn't believe that it could seize                11:55:38

12 those funds because they couldn't trace them to              11:55:41

13 the scheme?                                                  11:55:45

14     MR. MURPHY:  Objection as to form; calls                 11:55:50

15 for speculation.                                             11:55:52

16     A  I can't comment on the government's                   11:55:56

17 settlement procurement strategy.                             11:56:01

18     Q  You understand that any additional moneys             11:56:04

19 that they had seized had to first be used to                 11:56:09

20 satisfy government obligations like tax                      11:56:13

21 obligations that Jag and Shiv and DGS and                    11:56:16

22 Mid-South had before there would be money left               11:56:21

23 over for recovery by International Paper?                     11:56:24

24     A  That's what was reported to Beazley.                  11:56:31

25     Q  And you understand that at the time of the            11:56:39

| | | |
|---|---|---|
| 1 | settlement, International Paper asked Beazley | 11:56:44 |
| 2 | whether it had any objection to the settlement, | 11:56:48 |
| 3 | and Beazley punted and said it would not consent | 11:56:50 |
| 4 | nor object to the settlement?  Do you recall that? | 11:56:57 |
| 5 | MR. MURPHY:  Objection as to form. | 11:57:01 |
| 6 | A  I recall that there was an objection. | 11:57:03 |
| 7 | Q  There was an objection? | 11:57:12 |
| 8 | A  There was a response by Beazley to the | 11:57:19 |
| 9 | request for consent, and Beazley did not provide | 11:57:23 |
| 10 | consent. | 11:57:27 |
| 11 | MR. SYLVESTER:  Let me ask, if I could, | 11:57:49 |
| 12 | Harold, to put up Exhibit 15. | 11:57:52 |
| 13 | (Exhibit 15 was marked for identification | 11:57:53 |
| 14 | and is attached to the transcript.) | 11:58:13 |
| 15 | BY MR. SYLVESTER: | 11:58:13 |
| 16 | Q  Can you open up Exhibit 15? | 11:58:14 |
| 17 | A  Yes.  I just have to, I think, save it | 11:58:15 |
| 18 | first. | 11:58:19 |
| 19 | Q  Is it not in your chat box?  It's in mine. | 11:58:20 |
| 20 | A  It is, but I have to save it, and then -- | 11:58:22 |
| 21 | I don't know.  That's just how the application is | 11:58:29 |
| 22 | working, I think similarly to the last session. | 11:58:31 |
| 23 | Okay.  I have the -- it's a 14-page | 11:58:44 |
| 24 | document? | 11:58:48 |
| 25 | Q  Yes.  I'm just going to ask you about the | 11:58:48 |

1    first page.  It's a trail of emails back and forth          11:58:50

2    regarding the proposed settlement with Jag and              11:58:56

3    Shiv and Mid-South between Mr. Keeley, who was              11:59:01

4    then representing Beazley, and Danny Van Horn, the          11:59:06

5    lawyer who was representing International Paper.             11:59:09

6         And if you look on the first page in this              11:59:14

7    email from Michael Keeley dated May the 2nd, 2022,          11:59:19

8    to Danny Van Horn.  Do you see that email?                 11:59:24

9    A  Yes, I do.                                               11:59:27

10   Q  And this is with regard to a proposed                   11:59:28

11   settlement with Jag and Shiv and Mid-South and DGS         11:59:33

12   in the 15 to $16 million range.                            11:59:38

13        And Mr. Keeley writes on May 2nd, 2022,               11:59:42

14   the insurers appreciate the information                    11:59:47

15   International Paper has provided.  Unfortunately,          11:59:49

16   given the various unanswered questions, neither of        11:59:53

17   the insurers has enough information to determine          11:59:56

18   whether the amount of the proposed restitution is         11:59:59

19   reasonable.  As a result, while Beazley does not          12:00:01

20   object to the fact that International Paper would         12:00:04

21   dismiss its claims against the two principals in         12:00:06

22   exchange for the proposed restitution payment, it        12:00:09

23   is unable to agree that the amount of the proposed       12:00:12

24   restitution payment is reasonable, and it reserves       12:00:15

25   its right to object to the reasonable -- to the          12:00:19

| | | |
|---|---|---|
| 1 | presumably reasonableness of any such payment if | 12:00:24 |
| 2 | additional information demonstrates that the | 12:00:29 |
| 3 | amount of the restitution payment is not | 12:00:31 |
| 4 | reasonable. | 12:00:33 |
| 5 | And then it goes on to say Beazley further | 12:00:33 |
| 6 | reserves all of its rights under the policy, | 12:00:38 |
| 7 | including the right to object that by dismissing | 12:00:41 |
| 8 | its claims against the principals, International | 12:00:43 |
| 9 | Paper has wrongly prejudiced Beazley's potential | 12:00:46 |
| 10 | subrogation rights.  While Zurich is also unable | 12:00:51 |
| 11 | to determine whether the amount of the proposed | 12:00:55 |
| 12 | restitution payment is reasonable, given the | 12:00:57 |
| 13 | amount of the proposed payment and Zurich's | 12:00:59 |
| 14 | attachment point on its excess policy, it does not | 12:01:02 |
| 15 | object to the amount of the restitution payment. | 12:01:05 |
| 16 | The insurers continue to reserve all of their | 12:01:08 |
| 17 | other rights and defenses in this matter.  Thank | 12:01:10 |
| 18 | you.  Regards, Michael Keeley. | 12:01:13 |
| 19 | Do you see that? | 12:01:14 |
| 20 | A  Yes, I see the email. | 12:01:15 |
| 21 | Q  Do you recall him sending the email at the | 12:01:17 |
| 22 | time and consulting with you about this at the | 12:01:19 |
| 23 | time in May of 2022? | 12:01:22 |
| 24 | A  Yes, I do. | 12:01:25 |
| 25 | Q  And he was representing both Beazley, | 12:01:26 |

| | | |
|---|---|---|
| 1 | first-layer insurer, and Zurich, the second-layer | 12:01:30 |
| 2 | insurer.  At the time, he was representing both | 12:01:33 |
| 3 | entities, correct? | 12:01:39 |
| 4 | A  Yes, he was. | 12:01:39 |
| 5 | Q  And for Zurich, he said that they did not | 12:01:40 |
| 6 | object to the amount of the restitution payment, | 12:01:43 |
| 7 | and as for Beazley, he said Beazley does not | 12:01:48 |
| 8 | object to the fact that International Paper would | 12:01:51 |
| 9 | dismiss its claims against the two principals in | 12:01:55 |
| 10 | exchange for the proposed restitution payment, is | 12:01:58 |
| 11 | unable to agree that the amount of the proposed | 12:02:02 |
| 12 | restitution payment is reasonable and reserves its | 12:02:04 |
| 13 | right to object to the reasonableness of any such | 12:02:08 |
| 14 | payment if additional information demonstrates | 12:02:11 |
| 15 | that the amount of the restitution payment is not | 12:02:14 |
| 16 | reasonable. | 12:02:16 |
| 17 | So my question to you, Ms. Ellis, is have | 12:02:17 |
| 18 | you gotten any additional information since May of | 12:02:21 |
| 19 | 2022 to demonstrate that the amount of the | 12:02:23 |
| 20 | restitution payment is not reasonable? | 12:02:28 |
| 21 | A  If Beazley has received any information | 12:02:42 |
| 22 | indicating that the settlement was unreasonable? | 12:02:44 |
| 23 | Q  Correct. | 12:02:47 |
| 24 | A  Well, as stated previously, there were | 12:02:48 |
| 25 | other assets available, and the settlement | 12:02:58 |

1    agreement precludes any further payments by Jag          12:03:03

2    and others for the alleged scheme.          12:03:11

3        Q   Okay.  And since that --          12:03:20

4        A   I mean, we know that there were other          12:03:24

5    assets.          12:03:26

6        Q   Right.  And I'm asking you, if Mr. Van          12:03:26

7    Horn in his deposition by your counsel explained          12:03:30

8    why it was not practical or feasible to go after          12:03:34

9    other assets, shouldn't you take that into          12:03:37

10   consideration into determining whether this          12:03:41

11   settlement of $15 million was reasonable?          12:03:44

12       A   Well, the agreement that was executed          12:03:46

13   prevents even one penny of any further payments by          12:03:58

14   Jag and others.          12:04:05

15       Q   Right.  And you understand that Mr. Van          12:04:09

16   Horn explained why he believed and International          12:04:12

17   Paper believed that it was reasonable in order to          12:04:16

18   get that $15 million to give the release that was          12:04:17

19   being demanded in light of the inability to          12:04:20

20   practically obtain any other moneys?  Shouldn't          12:04:24

21   you consider that testimony in determining whether          12:04:28

22   this was, in fact, a reasonable settlement?          12:04:32

23       MR. MURPHY:  Objection as to form.          12:04:36

24       A   Again, there were other known assets, and          12:04:37

25   this -- the release that the insured entered into          12:04:50

1    precludes any further payments, even of $1, or a          12:04:55

2    recurring basis from Jag or others.                       12:05:05

3      Q  I understand that, but my question is why            12:05:08

4    haven't you read the testimony of Mr. Van Horn            12:05:13

5    explaining why those other assets were not               12:05:17

6    practically available to increase the settlement         12:05:21

7    amount?                                                   12:05:25

8        MR. MURPHY:  Objection as to form.                    12:05:29

9      A  Well, my response isn't specific to just            12:05:36

10   the real estate holdings.  It's that the                 12:05:41

11   settlement that the insured entered into prevents        12:05:45

12   any further payments by Jag and others for the           12:05:48

13   reported alleged scheme.                                 12:05:52

14     Q  Well, do you realistically think that Jag           12:05:55

15   and Shiv were going to pay $15 million and not get       12:05:59

16   a release so that International Paper and its            12:06:03

17   insurers could go after them for more money?  Do         12:06:08

18   you really expect that that would happen in a            12:06:12

19   settlement?                                               12:06:14

20       MR. MURPHY:  Objection as to form; calls             12:06:15

21   for speculation.                                          12:06:17

22     A  Beazley is not able to speak to what their          12:06:17

23   expectations were, meaning Jag or Shiv.                   12:06:26

24     Q  Well, I'm asking you, do you know -- as a           12:06:30

25   person who's worked in this business for years, do       12:06:36

| | | |
|---|---|---|
| 1 | you know of any settlements where people agree to | 12:06:39 |
| 2 | pay $15 million and yet still allow, as part of | 12:06:43 |
| 3 | the settlement, for the other side to come after | 12:06:46 |
| 4 | them for more money later? | 12:06:49 |
| 5 | MR. MURPHY:  Objection; overbroad. | 12:06:54 |
| 6 | Objection as to form. | 12:06:56 |
| 7 | A  I'm only speaking on -- with respect to | 12:07:01 |
| 8 | this particular incident. | 12:07:09 |
| 9 | Q  I know, but I'm asking you from your years | 12:07:13 |
| 10 | of practical experience in the settlement, a | 12:07:15 |
| 11 | settlement usually involves a release of claims in | 12:07:19 |
| 12 | exchange for a payment. | 12:07:24 |
| 13 | Are you suggesting that this agreement, | 12:07:25 |
| 14 | this settlement is not reasonable because even | 12:07:27 |
| 15 | though we got $15 million, Jag and Shiv and | 12:07:29 |
| 16 | Mid-South and DGS insisted on having a release so | 12:07:36 |
| 17 | that we wouldn't come after them for more money? | 12:07:41 |
| 18 | Is that Beazley's position as to why the agreement | 12:07:43 |
| 19 | is unreasonable? | 12:07:49 |
| 20 | MR. MURPHY:  Same objection. | 12:07:50 |
| 21 | A  Well, going back to the affirmative | 12:07:53 |
| 22 | defense, it does state taking -- not limited to | 12:08:02 |
| 23 | taking any action which in any way increases the | 12:08:07 |
| 24 | underwriters' exposure, and we -- | 12:08:11 |
| 25 | Q  I'm sorry.  Go ahead. | 12:08:18 |

| | | |
|---|---|---|
| 1 | A  It's okay.  Go ahead. | 12:08:19 |
| 2 | Q  Yeah.  How did this settlement increase | 12:08:20 |
| 3 | Beazley's exposure? | 12:08:23 |
| 4 | MR. MURPHY:  Asked -- objection; asked and | 12:08:25 |
| 5 | answered. | 12:08:27 |
| 6 | A  As stated previously, there were other -- | 12:08:28 |
| 7 | there were other assets, known assets, and the | 12:08:33 |
| 8 | release entered into by the insured prevents | 12:08:39 |
| 9 | pursuing those assets or any other unknown assets | 12:08:45 |
| 10 | and/or, for example, any other payments for any | 12:08:50 |
| 11 | potential alleged losses even on a recurring | 12:08:56 |
| 12 | basis. | 12:09:01 |
| 13 | Q  The thirteenth affirmative defense saying | 12:09:02 |
| 14 | Plaintiff's claims are barred to the extent | 12:09:09 |
| 15 | Plaintiff has failed to mitigate any damages. | 12:09:11 |
| 16 | What facts or information does Beazley | 12:09:14 |
| 17 | have to support the thirteenth affirmative | 12:09:15 |
| 18 | defense? | 12:09:24 |
| 19 | A  Well, similar to the responses to the | 12:09:25 |
| 20 | twelfth affirmative defense, there was a | 12:09:27 |
| 21 | settlement that was entered into by the insured, | 12:09:33 |
| 22 | with Jag, DGS, and Mid-South that precludes any | 12:09:39 |
| 23 | further recoveries beyond what the insured has | 12:09:46 |
| 24 | already received to date. | 12:09:50 |
| 25 | And based on the material submitted from | 12:09:59 |

1    the insured from their own expert, there were          12:10:02

2    other known assets and potential unknown assets         12:10:04

3    that could have been source of recovery that are        12:10:09

4    now precluded.                                          12:10:11

5        Q  Is it Beazley's position that                    12:10:13

6    International Paper should not have entered into a       12:10:15

7    settlement with Jag and Shiv so as not to release       12:10:17

8    any claims against them and should have rejected        12:10:20

9    the offer of $15 million?  Is that Beazley's            12:10:27

10   position?                                               12:10:31

11       A  Beazley's position is that the insured's         12:10:32

12   actions failed to mitigate its alleged damages          12:10:43

13   from the alleged loss in this circumstance.             12:10:49

14       Q  Well, what should -- what should              12:10:54

15   International Paper have done differently, then,         12:10:57

16   to avoid -- or to further mitigate damages              12:11:00

17   according to Beazley?  What would International          12:11:07

18   Paper have done differently?                            12:11:09

19       A  Well, for example, we did not see any type       12:11:11

20   of financial disclosure or attestation by Jag,          12:11:22

21   Shiv, or others of their financial assets in            12:11:29

22   total.                                                  12:11:31

23       Q  Did you review the testimony of Mr. Horn         12:11:35

24   (sic) where he explained why that was the case?         12:11:38

25       MR. MURPHY:  Objection; asked and                   12:11:42

| | |
|---|---|
| 1 | answered. | 12:11:43 |
| 2 | A   Again, I have not reviewed any of the | 12:11:47 |
| 3 | deposition transcripts, and as stated previously, | 12:11:52 |
| 4 | we did not see any type of financial disclosure or | 12:11:56 |
| 5 | attestation from Jag, Shiv, or others with respect | 12:12:04 |
| 6 | to their assets. | 12:12:08 |
| 7 | Q   Well, did you understand that they weren't | 12:12:14 |
| 8 | willing to provide that as part of the settlement? | 12:12:16 |
| 9 | A   I don't have direct knowledge of that. | 12:12:18 |
| 10 | Q   Well, if they weren't willing to provide | 12:12:28 |
| 11 | that as part of a settlement because they feared | 12:12:30 |
| 12 | it might get them into more trouble with the IRS, | 12:12:33 |
| 13 | are you saying that as a result, International | 12:12:37 |
| 14 | Paper should not have entered into the settlement | 12:12:41 |
| 15 | and should not have obtained the $15 million, but | 12:12:43 |
| 16 | should have continued to litigate?  Is that what | 12:12:47 |
| 17 | Beazley is saying International Paper should have | 12:12:51 |
| 18 | done? | 12:12:54 |
| 19 | MR. MURPHY:  Objection as to form. | 12:12:54 |
| 20 | A   I can't speak to Jag, Shiv, either of | 12:12:55 |
| 21 | their mindsets. | 12:13:04 |
| 22 | Q   No, I'm not asking you about Jag or Shiv's | 12:13:06 |
| 23 | mindsets.  I'm saying if there was no settlement | 12:13:12 |
| 24 | available, if International Paper insisted on some | 12:13:15 |
| 25 | financial disclosure attestation, is it Beazley's | 12:13:18 |

| | | |
|---|---|---|
| 1 | position that International Paper, in that | 12:13:22 |
| 2 | circumstance, should have forsaken the settlement | 12:13:25 |
| 3 | of the 15 million and should just have continued | 12:13:30 |
| 4 | to litigate against Jag and Shiv? | 12:13:34 |
| 5 | Is that what you're saying would have | 12:13:37 |
| 6 | mitigated damages more so than what they did do, | 12:13:39 |
| 7 | which is to settle and take the 15 million? | 12:13:42 |
| 8 | MR. MURPHY:  Objection as to form. | 12:13:47 |
| 9 | A  Again, as previously stated, with regard | 12:14:01 |
| 10 | to mitigation, the insured entering into that | 12:14:08 |
| 11 | agreement while we still haven't -- Beazley hasn't | 12:14:11 |
| 12 | made a determination on coverage under the policy. | 12:14:15 |
| 13 | The agreement precludes any further recoveries of | 12:14:26 |
| 14 | even $1 from these individuals, which I understand | 12:14:30 |
| 15 | they've refused to disclose any other assets | 12:14:33 |
| 16 | outside of what the source of the 15 million. | 12:14:37 |
| 17 | Q  Right.  So is Beazley saying that | 12:14:43 |
| 18 | International Paper should not have entered into a | 12:14:49 |
| 19 | settlement with Jag and Shiv and obtained the 15 | 12:14:51 |
| 20 | million because there was no financial disclosure? | 12:14:54 |
| 21 | That's what you're saying International Paper | 12:14:59 |
| 22 | should have done, forsake the 15 million and | 12:15:01 |
| 23 | continue to litigate against Jag and Shiv?  That's | 12:15:08 |
| 24 | what you believe would have mitigated damages? | 12:15:11 |
| 25 | MR. MURPHY:  Objection as to form; asked | 12:15:18 |

| | | |
|---|---|---|
| 1 | and answered. | 12:15:20 |
| 2 | A  Well, Beazley is saying that the | 12:15:26 |
| 3 | settlement did not fully -- it didn't mitigate the | 12:15:33 |
| 4 | claim, and it prevented any further recoveries | 12:15:41 |
| 5 | from individuals that had other known and unknown | 12:15:46 |
| 6 | assets -- | 12:15:52 |
| 7 | Q  Right. | 12:15:53 |
| 8 | A  -- even a penny in the future. | 12:15:57 |
| 9 | Q  Right.  International Paper had said | 12:15:59 |
| 10 | that's the best deal they can get, 15 million in | 12:16:02 |
| 11 | exchange for the release, and it's a full release. | 12:16:05 |
| 12 | And Beazley -- is it your position that in | 12:16:08 |
| 13 | order to mitigate damages, International Paper | 12:16:10 |
| 14 | should have rejected the settlement, walked away | 12:16:15 |
| 15 | from the 15 million, and continued to litigate | 12:16:17 |
| 16 | against Jag and Shiv?  That's what you believe | 12:16:20 |
| 17 | alternatively International Paper should have done | 12:16:23 |
| 18 | to mitigate its damages versus what it did do in | 12:16:27 |
| 19 | settlement? | 12:16:30 |
| 20 | MR. MURPHY:  Objection as to form; asked | 12:16:34 |
| 21 | and answered. | 12:16:36 |
| 22 | A  Again, as stated this afternoon, the | 12:16:45 |
| 23 | settlement precludes -- that was executed, I | 12:16:47 |
| 24 | should say.  The settlement that was executed | 12:16:50 |
| 25 | precludes any further recoveries from these | 12:16:53 |

1    individuals.                                    12:16:56

2        Q   Okay.                                   12:17:01

3        A   And other assets that were known.       12:17:03

4        Q   One more affirmative defense, and then  12:17:06

5    we'll break for lunch.  The fourteenth affirmative  12:17:08

6    defense says Plaintiff's claims are barred in   12:17:12

7    whole or in part by the equitable doctrine of   12:17:16

8    waiver, estoppel, unclean hands and laches.     12:17:20

9            What information or facts does Beazley  12:17:24

10   have to support the assertion of that fourteenth  12:17:26

11   affirmative defense?                            12:17:34

12       A   That affirmative defense also goes back to  12:17:35

13   the settlement that was entered into.  We       12:17:45

14   understand that the insured entered into a full  12:17:46

15   release with Jag, DGS, and Mid-South from a     12:17:52

16   document we saw earlier today in our prior session  12:17:58

17   that precludes any further recoveries, payments,  12:18:01

18   et cetera, from the alleged scheme.             12:18:09

19       Q   Okay.  And which one -- which doctrine are  12:18:14

20   you referring to by the entered into the        12:18:17

21   settlement, waiver, estoppel, unclean hands and  12:18:21

22   laches?                                         12:18:27

23       A   We're looking at that in totality.      12:18:27

24       Q   How does entering into that settlement  12:18:30

25   give International Paper unclean hands?          12:18:33

| | |
|---|---|
| 1 | A  Well, again, the insured was aware of | 12:18:36 |
| 2 | other assets that were not the source of the | 12:18:45 |
| 3 | settlement funds. | 12:18:53 |
| 4 | Q  You understand that during the settlement | 12:18:54 |
| 5 | process, International Paper kept Beazley informed | 12:18:58 |
| 6 | of the negotiations and the settlement proposal | 12:19:01 |
| 7 | that was on the table, right? | 12:19:06 |
| 8 | A  There were communications. | 12:19:07 |
| 9 | Q  And at the end of the day -- | 12:19:17 |
| 10 | A  With -- | 12:19:20 |
| 11 | Q  Okay.  There were communications between | 12:19:20 |
| 12 | International Paper and Beazley about the proposed | 12:19:24 |
| 13 | settlement. | 12:19:26 |
| 14 | And at the end of the day when | 12:19:28 |
| 15 | International Paper had to make a decision, | 12:19:30 |
| 16 | Beazley would not either object nor would they | 12:19:31 |
| 17 | consent to the settlement, but simply said we | 12:19:35 |
| 18 | reserve our rights to later contest the settlement | 12:19:37 |
| 19 | if you go through with it; isn't that right? | 12:19:42 |
| 20 | A  Can you repeat the last part of that, | 12:19:45 |
| 21 | please? | 12:19:47 |
| 22 | Q  Yeah.  I'll just restate the question. | 12:19:48 |
| 23 | With regard to the communications between | 12:19:50 |
| 24 | International Paper and Beazley about the proposed | 12:19:55 |
| 25 | settlement with Jag and Shiv and Mid-South and | 12:19:59 |

1   DGS, at the end of the day when International          12:20:02

2   Paper had to make a decision as to whether to          12:20:05

3   accept the 15 million in settlement or not and         12:20:06

4   asked for Beazley's consent, Beazley responded by      12:20:10

5   saying it would neither object nor consent and it      12:20:16

6   was going to reserve its rights to content the         12:20:19

7   reasonableness of the settlement.                      12:20:22

8        That was the final answer that Beazley           12:20:24

9   gave to International Paper, right?                     12:20:26

10       MR. MURPHY:  Objection as to form.  You          12:20:30

11  can answer.                                            12:20:32

12   A  Well, Beazley did not object, but did             12:20:32

13  reserve its rights with respect to the settlement.     12:20:40

14   Q  Right.  And basically Beazley was telling         12:20:43

15  International Paper you're on your own to make a        12:20:47

16  decision; we reserve the right to second-guess it      12:20:49

17  at a later time?  Isn't that what Beazley              12:20:53

18  essentially told International Paper?                   12:20:55

19       MR. MURPHY:  Objection as to form.               12:20:58

20   A  Again, Beazley continued to assert its            12:21:00

21  rights with respect to the reasonableness of the       12:21:08

22  settlement that the insured was proposing.             12:21:10

23       MR. SYLVESTER:  Okay.  It's 12:21.  Why          12:21:19

24  don't we go off the record.                            12:21:22

25       VIDEOGRAPHER:  We are going off the              12:21:23

| 1 | record.  The time is 12:21 p.m. | 12:21:25 |
| 2 | (A recess was taken.) | 12:21:27 |
| 3 | VIDEOGRAPHER:  We are back on the record. | 13:04:11 |
| 4 | The time is 1:04 p.m. | 13:04:12 |
| 5 | BY MR. SYLVESTER: | 13:04:14 |
| 6 | Q  Ms. Ellis, we had been looking the | 13:04:14 |
| 7 | previous day at Exhibit 7, which is the Defendant | 13:04:20 |
| 8 | Beazley Insurance Company's supplemental responses | 13:04:25 |
| 9 | to Plaintiff's first set of interrogatories, and I | 13:04:27 |
| 10 | want you to open that up, if you would.  It should | 13:04:32 |
| 11 | be in your chat box.  And turn, if you would, to | 13:04:35 |
| 12 | Page 11, which I think is where we left off the | 13:04:37 |
| 13 | last time. | 13:04:40 |
| 14 | (Exhibit 7 was previously marked for | 13:04:40 |
| 15 | identification and is attached to the transcript.) | 13:05:03 |
| 16 | A  I have it open. | 13:05:03 |
| 17 | Q  Okay.  Could you turn to the bottom of | 13:05:04 |
| 18 | Page 11?  This is the response -- this is in the | 13:05:07 |
| 19 | lengthy response to Interrogatory No. 2 that we | 13:05:12 |
| 20 | had been looking at, the question of which was | 13:05:15 |
| 21 | identify all facts supporting your denial of any | 13:05:15 |
| 22 | allegations set forth in the complaint, and the | 13:05:25 |
| 23 | response goes on for a number of pages. | 13:05:27 |
| 24 | And so I wanted to continue with some | 13:05:29 |
| 25 | questions where we left off at the last session on | 13:05:35 |

| | | |
|---|---|---|
| 1 | December 18th.  The bottom last two sentences on | 13:05:37 |
| 2 | Page 11 when you're talking about diverse or | 13:05:42 |
| 3 | minority-owned business, this Tier 1 and Tier 2 | 13:05:48 |
| 4 | arrangements, the last two sentences say all or | 13:05:52 |
| 5 | most of the contracts, invoices, and other | 13:05:56 |
| 6 | transaction data relating to Tier 1 suppliers did | 13:05:58 |
| 7 | not reflect any value-added services in exchange | 13:06:02 |
| 8 | for this markup. | 13:06:05 |
| 9 | Where a Tier 1 supplier did provide some | 13:06:07 |
| 10 | form of additional service, for example, | 13:06:10 |
| 11 | transport, process improvements, packaging, | 13:06:12 |
| 12 | inventory management, bulk purchases, or | 13:06:16 |
| 13 | distribution, the value of those services did not | 13:06:19 |
| 14 | approach the amount of the price markup it charged | 13:06:23 |
| 15 | to IP. | 13:06:25 |
| 16 | Do you see that last two sentences on | 13:06:26 |
| 17 | Page 11? | 13:06:29 |
| 18 | A  Yes, I do. | 13:06:30 |
| 19 | Q  So where Beazley asserts the value of the | 13:06:36 |
| 20 | services provided by diversity, Tier 1 providers | 13:06:42 |
| 21 | did not approach the amount of the price of markup | 13:06:47 |
| 22 | had charged to IP, did Beazley do an analysis of | 13:06:51 |
| 23 | that to come up with that statement, some sort of | 13:06:53 |
| 24 | financial or other analysis to compare value of | 13:06:57 |
| 25 | services versus price charged in markup? | 13:07:01 |

1        A   Yes, there was analysis performed on that.          13:07:05

2        Q   And what analysis is that that you're               13:07:18

3    referring to?                                               13:07:21

4        A   I would defer to the expert reports on              13:07:24

5    that.                                                       13:07:28

6        Q   I mean, the only expert report that I saw           13:07:28

7    for Beazley that may touch on that is the Rose              13:07:36

8    Mary Coates expert report where she opined that a           13:07:40

9    typical distributor of chemicals would charge              13:07:43

10   about 8 to 10 percent.  Is that what you're                13:07:48

11   referring to there?                                         13:07:52

12       A   Well, again, I'm referring to the expert            13:07:52

13   reports.                                                    13:07:56

14       Q   Well, I mean, you only have two expert              13:07:58

15   reports.  Right?  Rosemary Coates and Brad Wilson,          13:08:02

16   correct?                                                    13:08:09

17       A   Yes.                                                13:08:13

18       Q   So what about the Rosemary Coates report            13:08:14

19   compares the value of the services provided by the          13:08:30

20   diverse Tier 1 providers versus the markup that it          13:08:32

21   charged?                                                    13:08:33

22       A   Can you repeat your question, please?               13:08:33

23       Q   Yeah.  What specifically in the Rosemary            13:08:42

24   Coates expert report are you referring to when you          13:08:46

25   say that you referred to that report to support             13:08:50

1   the statement that the value of the services            13:08:55

2   provided by diverse Tier 1 suppliers did not            13:08:57

3   approach the amount of the price markup that it         13:09:00

4   charged to International Paper?                          13:09:05

5       A   No.  I was saying to you that I defer to        13:09:08

6   the expert reports, not refer.                          13:09:13

7       Q   Well, are you saying that you believe the       13:09:14

8   expert reports support this statement at the            13:09:22

9   bottom of Page 11 of Exhibit 7?                         13:09:25

10      A   There was analysis performed, and it was        13:09:27

11  detailed in the expert reports.                         13:09:46

12      Q   Okay.  And when you say expert reports,         13:09:48

13  there are two of them that you submitted, Rosemary      13:09:50

14  Coates and then Brad Wilson.  Are you referring to      13:09:53

15  both of them providing support for this statement       13:09:56

16  that the value of the services performed by Tier 1      13:10:02

17  diverse suppliers did not approach the amount of        13:10:06

18  the markup price that it charged to International        13:10:09

19  Paper, or are you saying it's one or the other of       13:10:14

20  those two expert reports that addresses that            13:10:16

21  subject?                                                13:10:18

22       Do you have the question in mind,                  13:11:07

23  Ms. Ellis?                                              13:11:09

24      A   Well, I'm not sure what you're asking me,       13:11:10

25  if I had responded I would defer to the reports,        13:11:13

1    the expert reports.                              13:11:19

2        Q   Right, and I'm asking you, are you talking   13:11:20

3    about both Wilson and Coates supporting this    13:11:23

4    statement, or just one or the other of those two, 13:11:26

5    of Beazley's expert reports supporting this     13:11:31

6    statement?                                      13:11:34

7        A   Both.                                   13:11:45

8        Q   Okay.                                   13:11:45

9        A   To the extent they respond to that item. 13:11:47

10       Q   And how much of the markup that Tier 1   13:11:50

11   diversity suppliers charged to IP, how much of  13:11:57

12   that did not reflect any value of services it   13:12:00

13   performed?                                      13:12:04

14       A   I don't have an exact percentage on that. 13:12:04

15       Q   Do you have a rough idea of how much of  13:12:31

16   the price markup they were charging that was not 13:12:32

17   related to value of services performed but was  13:12:35

18   just pure profit?                               13:12:39

19       A   I don't have an exact number on that.   13:12:41

20       Q   Do you understand Beazley's position as to 13:12:50

21   that, should I ask Beazley's experts for those  13:12:51

22   amounts or percentages of the markup by Tier 1  13:12:57

23   diversity suppliers that did not relate to value 13:13:02

24   of services performed?                          13:13:11

25       A   Can you repeat your question, please?   13:13:12

1    Q  If I want to know Beazley's position about          13:13:14

2    how much of a price markup charged by IP's diverse     13:13:16

3    Tier 1 suppliers was not equivalent to the value       13:13:23

4    of the services performed, are you saying that I       13:13:29

5    should ask your experts, Mr. Wilson and                13:13:33

6    Ms. Coates, for the answer to that question?           13:13:35

7    A  Again, I would defer to the experts for             13:13:39

8    that item and their reports.                           13:13:46

9    Q  All right.  Can you go to Page 12 of                13:13:51

10   Exhibit 7?                                             13:13:59

11   In the middle of the first paragraph, do               13:14:10

12   you have that Page 12 in front of you?                 13:14:15

13   A  Yes, I do.                                          13:14:17

14   Q  It says in connection with the Tier 2               13:14:21

15   diversity arrangements, in many instances,             13:14:23

16   Jagannath confirmed with the chemical manufacturer     13:14:29

17   to include a Tier 2 diversity supplier as part of      13:14:34

18   a comprehensive arrangement that benefited IP in       13:14:36

19   multiple ways.                                         13:14:39

20   And when you say Jagannath negotiated with             13:14:40

21   the chemical manufacturers to conclude a Tier 2        13:14:47

22   diversity supplier, you're talking about in some       13:14:51

23   cases that Tier 2 diversity supplier was DGS and       13:14:54

24   Mid-South, right?                                      13:15:03

25   A  In some cases, yes.                                 13:15:05

1      Q  All right.  And so Beazley acknowledges          13:15:07
2  that Jag would negotiate on behalf of DGS and         13:15:16
3  Mid-South to get them to be accepted by the           13:15:16
4  majority supplier as a Tier 2 diversity supplier;     13:15:19
5  isn't that correct?                                   13:15:24
6      MR. MURPHY:  Objection as to form.                13:15:24
7      A  Whether he negotiated for them to be a         13:15:49
8  diversity supplier?                                   13:15:52
9      Q  Yes.  Isn't this saying that Jag               13:15:56
10  negotiated with some of the majority suppliers to    13:15:58
11  include Tier 2 diversity suppliers like DGS and      13:16:01
12  Mid-South to be Tier 2 partners with the majority    13:16:05
13  supplier?                                            13:16:10
14      A  That's what the sentence says, yes.           13:16:11
15      Q  Okay.  And it goes on to say that it was      13:16:25
16  part of an arrangement, the comprehensive            13:16:27
17  arrangement that benefitted IP in many ways?         13:16:30
18          How did including DGS and Mid-South as a     13:16:34
19  Tier 2 supplier with the majority supplier where     13:16:39
20  DGS and Mid-South got paid commissions for           13:16:40
21  purchases of chemicals by IP for the majority        13:16:42
22  supplier, how did that benefit IP?                   13:16:47
23      MR. MURPHY:  Objection as to form.               13:16:51
24      A  Well, we do understand that the insured       13:16:53
25  did have some diversity spend targets and that       13:17:03

1    information was being -- the spend was being          13:17:07

2    tracked to demonstrate the insured's use of           13:17:10

3    various diverse vendors within their supply chain.     13:17:20

4        Q   Okay.  Is that the benefit to IP that          13:17:29

5    you're referring to, to get DGS and Mid-South as a     13:17:32

6    Tier 2 supplier with its majority suppliers, the       13:17:36

7    fact that it increased the diversity spend             13:17:40

8    numbers?                                               13:17:43

9        A   Well, what I'm saying is IP had targets        13:17:52

10   that they were looking to meet, and that spend was     13:17:55

11   being tracked internally as well.                      13:17:59

12       Q   And even if that's correct, how does that      13:18:09

13   take away from the fact that Jag was stealing from     13:18:11

14   a company by directing business and dollars to DGS     13:18:15

15   and Mid-South and having some of those dollars         13:18:20

16   funneled back to him?                                  13:18:22

17           MR. MURPHY:  Objection as to form.             13:18:25

18       A   Can you repeat your question, please?          13:18:33

19       Q   Even if it's true that there was some          13:18:35

20   benefit to IP from getting DGS and Mid-South           13:18:37

21   included in diversity spend figures, how does that     13:18:42

22   take away from the fact that Jag was stealing from     13:18:46

23   the company by directing business to DGS and           13:18:49

24   Mid-South and then having some of that money           13:18:55

25   funneled back to himself?                              13:18:57

1     MR. MURPHY:  Objection as to form.                    13:19:02

2     A   Again, I'm not really understanding what          13:19:18

3  your question is.                                         13:19:19

4     Q   Okay.  The fact that there might be some           13:19:20

5  ancillary benefit to IP of increasing its diverse        13:19:22

6  spending targets doesn't take away from the fact         13:19:30

7  that Jag is stealing from the company by directing       13:19:32

8  contractual payments to DGS and Mid-South, his           13:19:36

9  brother's companies, and then getting some of that       13:19:40

10  money funneled back to him, right?                       13:19:43

11     MR. MURPHY:  Objection to form.                       13:19:45

12     A   I can't really comment on that.  I don't          13:19:47

13  think that Beazley's in agreement with that, with        13:19:49

14  that statement.                                          13:19:52

15     Q   Why are you in disagreement with that             13:19:53

16  statement?                                               13:20:01

17     A   Well, you're asking for Beazley to agree          13:20:01

18  on things that are still being evaluated.                13:20:10

19     Q   Well, if you assume hypothetically that           13:20:12

20  Jag is directing business to DGS and Mid-South           13:20:19

21  either as a Tier 1 or Tier 2 supplier such that          13:20:24

22  it's getting payments and those -- part of those         13:20:28

23  payments are being funneled back to Jag, isn't           13:20:30

24  that employee theft regardless of whether there's        13:20:39

25  some ancillary benefit to IP in increasing its           13:20:41

1    diverse spend target numbers?                    13:20:44

2        A  I can't comment on that.  It's still being  13:20:47

3    evaluated at this time.                           13:20:58

4        Q  Look at the second full photograph on Page  13:20:59

5    12.  It says DGS and Mid-South qualified as       13:21:18

6    diverse or minority-owned business under IP's     13:21:25

7    supplier diversity program.  DGS and Mid-South    13:21:29

8    provided value to IP through both goods and       13:21:32

9    services and their participation in IP's supplier  13:21:35

10   diversity program.  These entities entered into   13:21:40

11   Tier 1 and Tier 2 arrangements similar to many    13:21:43

12   other IP diverse or minority-owned business.  All  13:21:47

13   relevant agreements with DGS and Mid-South were   13:21:51

14   approved through IP's corporate channels and not  13:21:54

15   by Jagannath acting alone.  Like other diverse or  13:21:58

16   minority-owned business in the specialty chemicals  13:22:01

17   group, DGS and Mid-South did not have the ability  13:22:05

18   to produce the chemicals used by IP, which was    13:22:07

19   known to IP.                                      13:22:13

20       Okay.  Do you see that paragraph?            13:22:14

21       A  Yes, I do.                                 13:22:16

22       Q  It says DGS and Mid-South provided value   13:22:16

23   to IP through both goods and services and their   13:22:16

24   participation in the supplier diversity program.  13:22:26

25       What services were DGS and Mid-South          13:22:26

1    providing value to IP under these arrangements as          13:22:29

2    you are referring to in this answer on Page 12?             13:22:33

3         A  Well, from the materials provided, there           13:22:44

4    is indication that employees of DGS and Mid-South           13:22:46

5    were interacting with various individuals at the            13:22:50

6    mills, and they were also ensuring that the                 13:22:56

7    chemicals that were being -- that were ordered              13:23:03

8    were being -- were actually being delivered in the          13:23:06

9    appropriate quantities pursuant to the orders as            13:23:09

10   well during this time period.                               13:23:13

11        Q  What individuals at DGS do you contend              13:23:17

12   were doing that?                                            13:23:25

13        A  That were ensuring that goods were being            13:23:30

14   delivered?                                                  13:23:33

15        Q  Yes.                                                13:23:34

16        A  I don't have the exact names offhand.               13:23:34

17        Q  What individuals at Mid-South do you                13:23:37

18   contend were doing it?                                      13:23:42

19        A  I don't have the names offhand at this --           13:23:44

20   at this moment.  I don't recall.                            13:23:49

21        Q  Now, you said on the prior page that                13:23:50

22   whatever services DGS and Mid-South were providing          13:23:57

23   did not approach the amount of the price markup it          13:24:00

24   was charging to IP.                                         13:24:04

25        Do you recall that?                                    13:24:05

1    A   On Page 11?                                   13:24:06

2    Q   Yeah, bottom of Page 11.                      13:24:15

3    A   Yes, I see the bottom of Page 11.  Yes.       13:24:17

4    Q   So you acknowledge for whatever services      13:24:29

5  DGS and Mid-South were providing, they were         13:24:32

6  substantially overcharging IP for those services;   13:24:35

7  isn't that right?                                    13:24:41

8        MR. MURPHY:  Objection as to form.            13:24:41

9    A   I'm not in agreement with the statement        13:24:49

10  that you made.                                       13:24:51

11   Q   Well, how much --                              13:24:52

12   A   As far as what was written on the page.        13:24:53

13   Q   Well, that's -- that's what you said on         13:24:55

14  Page 11.  You said that the value of the services   13:24:57

15  didn't approach the amount being charged to IP?     13:25:01

16       Aren't you saying that whatever services      13:25:07

17  DGS or Mid-South provided, the value of those       13:25:09

18  services were well below the price markup it was    13:25:12

19  charging.                                            13:25:17

20       MR. MURPHY:  Objection as to form.            13:25:17

21   A   I would defer to the expert reports on         13:25:24

22  that.                                                13:25:26

23   Q   But you do agree with the statement that       13:25:27

24  Beazley made in its answer, that the value of the   13:25:35

25  services that Tier 1 suppliers like DGS and         13:25:38

| | | |
|---|---|---|
| 1 | Mid-South were providing did not approach the | 13:25:42 |
| 2 | amount of the price markup they were charging IP, | 13:25:44 |
| 3 | correct? | 13:25:47 |
| 4 | A  From the sentence on the bottom of | 13:25:48 |
| 5 | Page 11, yes, that's what we provided, what | 13:25:59 |
| 6 | Beazley provided. | 13:26:03 |
| 7 | Q  Now, did you believe that DGS was a | 13:26:03 |
| 8 | legitimate business organization? | 13:26:06 |
| 9 | A  Beazley can't really opine on the | 13:26:08 |
| 10 | legitimacy of their corporate organization. | 13:26:25 |
| 11 | Q  Does Beazley believe that Mid-South was a | 13:26:28 |
| 12 | legitimate business organization? | 13:26:31 |
| 13 | A  Again, Beazley is not in a position to | 13:26:34 |
| 14 | opine on the legitimacy of Mid-South. | 13:26:43 |
| 15 | Q  Do you understand that Mid-South was | 13:26:46 |
| 16 | created by Jag and Shiv to make it look like there | 13:26:52 |
| 17 | was a different diverse entity for one of the | 13:26:55 |
| 18 | majority suppliers that did not want to do | 13:26:58 |
| 19 | business with DGS when, in fact, Mid-South was | 13:27:01 |
| 20 | also owned and controlled by Jag's brother, Shiv? | 13:27:04 |
| 21 | Did you know that to be a fact? | 13:27:07 |
| 22 | MR. MURPHY:  Object as to form. | 13:27:10 |
| 23 | A  Again, I can't comment on that. | 13:27:13 |
| 24 | Q  Well, did you understand that Mid-South | 13:27:28 |
| 25 | was created because Solenis said it didn't want to | 13:27:30 |

| | | |
|---|---|---|
| 1 | do business with DGS because DGS knew the pricing | 13:27:34 |
| 2 | of its competitors Nalco?  Do you recall that | 13:27:37 |
| 3 | evidence in the record? | 13:27:42 |
| 4 | A  I don't recall that exact statement. | 13:27:43 |
| 5 | Q  Well, do you recall that Shiv controlled | 13:27:50 |
| 6 | both DGS and Mid-South when it was created to | 13:27:52 |
| 7 | address Solenis's concern that Solenis didn't want | 13:27:57 |
| 8 | to do business with DGS? | 13:28:03 |
| 9 | A  I don't recall that specific item. | 13:28:05 |
| 10 | Q  At the bottom of Page 12, it says in the | 13:28:11 |
| 11 | last paragraph, IP made payments to DGS and/or | 13:28:21 |
| 12 | Mid-South between 2011 and 2020.  During this | 13:28:26 |
| 13 | period, DGS and Mid-South provided chemicals and | 13:28:29 |
| 14 | services to various of IP's mills.  All of IP's | 13:28:30 |
| 15 | contracts with DGS and Mid-South were entered into | 13:28:34 |
| 16 | in the ordinary course of business. | 13:28:38 |
| 17 | Do you see that? | 13:28:41 |
| 18 | A  Yes, I do. | 13:28:42 |
| 19 | Q  Was it in the ordinary course of business | 13:28:43 |
| 20 | for Jag to deceive his superiors by claiming that | 13:28:49 |
| 21 | they were saving money using DGS and Mid-South | 13:28:57 |
| 22 | when, in fact, IP was paying more money by using | 13:29:00 |
| 23 | DGS and Mid-South? | 13:29:03 |
| 24 | MR. MURPHY:  Objection. | 13:29:05 |
| 25 | Q  Is that normal course of business in your | 13:29:06 |

| | | |
|---|---|---|
| 1 | mind? | 13:29:08 |
| 2 | MR. MURPHY:  Objection as to form. | 13:29:09 |
| 3 | A  Can you repeat the last part of your | 13:29:10 |
| 4 | question, please? | 13:29:16 |
| 5 | Q  Yeah.  Do you believe it's in the ordinary | 13:29:18 |
| 6 | course of business for IP to enter into contracts | 13:29:20 |
| 7 | with DGS and Mid-South when Jag was deceiving his | 13:29:23 |
| 8 | superiors by representing that they would be | 13:29:27 |
| 9 | saving money by doing business with DGS and | 13:29:32 |
| 10 | Mid-South when, in fact, they were going to be | 13:29:35 |
| 11 | paying more money by using DGS and Mid-South by | 13:29:37 |
| 12 | just dealing directly with the suppliers providing | 13:29:44 |
| 13 | the chemicals? | 13:29:46 |
| 14 | MR. MURPHY:  Objection as to form. | 13:29:52 |
| 15 | A  I'm sorry.  Can you repeat your question? | 13:29:54 |
| 16 | Q  Yeah.  When you said that all contracts | 13:30:12 |
| 17 | with DGS and Mid-South were entered into in the | 13:30:15 |
| 18 | ordinary course of business, do you think it's the | 13:30:19 |
| 19 | ordinary course of business when Jag is deceiving | 13:30:20 |
| 20 | superiors and telling them that entering into a | 13:30:26 |
| 21 | contract with DGS and Mid-South would save money | 13:30:29 |
| 22 | for the company when, in fact, in reality, it was | 13:30:33 |
| 23 | going to cost extra money to the company? | 13:30:37 |
| 24 | MR. MURPHY:  Same objection. | 13:30:40 |
| 25 | A  I don't recall the statements that may | 13:30:41 |

1    have been made by Jag, but we do understand that        13:30:44

2    they -- you know, the various agreements between        13:30:47

3    the insured and DGS and Mid-South were entered          13:30:51

4    through sort of normal channels and that, as            13:31:00

5    stated, were known to employees in the global           13:31:06

6    sourcing department as well, as well as is              13:31:10

7    insurance diversity supplier program.                   13:31:12

8        Q  And did you read the testimony of Jag's          13:31:15

9    superiors, Mickey Rivers and Metrick Houser?            13:31:18

10       A  I have not.                                       13:31:22

11       Q  Did you see testimony that they relied on        13:31:24

12   Jag to be truthful and subsequently found out that      13:31:29

13   he was not truthful in representing what these          13:31:32

14   contracts with DGS and Mid-South were all about?        13:31:36

15       MR. MURPHY:  Objection as to form.                  13:31:39

16       A  Again, I've not read their testimony.            13:31:40

17       Q  Don't you think it would be important to         13:31:48

18   read their testimony to determine whether it was        13:31:51

19   ordinary course of business when Jag presented          13:31:53

20   these contracts with DGS and Mid-South to his           13:31:56

21   superiors and never told them that DGS and              13:31:59

22   Mid-South were companies owned and controlled by        13:32:02

23   his brother?                                            13:32:07

24       MR. MURPHY:  Objection as to form.                  13:32:08

25       A  What is your question with regard to that?       13:32:10

1   Can you repeat that, please?                           13:32:18

2       Q   Yeah.  You said you hadn't read their         13:32:19

3   testimony.  Why haven't you read their testimony      13:32:21

4   when you're making statements that everything was     13:32:31

5   approved by Jag's superiors, and his superiors are    13:32:34

6   testifying that Jag lied to them and                  13:32:40

7   misrepresented information about these deals when     13:32:42

8   they signed off on them?  Wouldn't that be            13:32:47

9   important to your evaluation of this claim?           13:32:50

10      MR. MURPHY:  Objection as to form.                13:32:54

11      A   Again, I have not read their testimony.       13:32:56

12      Q   Do you intend to read their testimony?        13:33:03

13      Do you have the question?                         13:33:26

14      A   Potentially.                                  13:33:32

15      Q   Do you understand generally that his          13:33:34

16  superiors, Mickey Rivers and Metrick Houser,          13:33:50

17  testified that they relied on Jag to be honest and    13:33:54

18  forthcoming, but it turns out that Jag was            13:33:57

19  misrepresenting the nature of these deals with DGS    13:34:02

20  and Mid-South?  Do you understand generally, even     13:34:08

21  if you haven't read their testimony, that that's      13:34:12

22  the nature of what they were saying?                  13:34:14

23      MR. MURPHY:  Objection as to form.                13:34:18

24      A   Again, I can't speak to what they said or     13:34:22

25  did not say in their testimony.                       13:34:26

| | | |
|---|---|---|
| 1 | Q  Well, isn't that how an employee thief | 13:34:27 |
| 2 | often is able to accomplish theft, by abusing the | 13:34:32 |
| 3 | trust that their superiors have in them, and thus | 13:34:36 |
| 4 | the superiors don't check everything that they're | 13:34:43 |
| 5 | doing, but rather rely on them to be honest and | 13:34:45 |
| 6 | truthful, and they abuse that trust?  Isn't that a | 13:34:48 |
| 7 | pretty typical scenario for employee theft? | 13:34:51 |
| 8 | A  It could potentially be the case. | 13:34:54 |
| 9 | Q  Now, you say at the top of Page 13.  Would | 13:35:02 |
| 10 | you look at that?  It says various of the DGS and | 13:35:20 |
| 11 | Mid-South contracts provided for these companies | 13:35:27 |
| 12 | to deliver various services, including inventory | 13:35:29 |
| 13 | management, evaluation of new products, and tank | 13:35:32 |
| 14 | monitoring. | 13:35:35 |
| 15 | And then you cite a number of documents to | 13:35:36 |
| 16 | support Beazley's statement.  Do you see that? | 13:35:38 |
| 17 | A  Yes, I do. | 13:35:44 |
| 18 | Q  Like 4 or 5 documents.  Let's take a look | 13:35:47 |
| 19 | at some of those documents. | 13:35:51 |
| 20 | MR. SYLVESTER:  If we could, would you | 13:35:55 |
| 21 | pull up Exhibit 8 into the chat box?  And while | 13:35:57 |
| 22 | we're at it, put Exhibit 9 as well. | 13:36:03 |
| 23 | (Exhibits 8 and 9 were marked for | 13:36:05 |
| 24 | identification and are attached to the | 13:36:05 |
| 25 | transcript.) | 13:36:21 |

1      MR. SYLVESTER:  Harold, I don't see 8          13:36:21

2  or 9.  Have you posted those?  There's 8.  Can you  13:36:23

3  open 8?                                             13:36:28

4  BY MR. SYLVESTER:                                   13:36:46

5      Q  Do you have Exhibit 8 open?                  13:36:46

6      A  Just one moment.                             13:36:48

7         Yes, I have Exhibit 8 open.                  13:37:03

8      Q  Okay.  Go to the third and last page,        13:37:05

9  which is the Bates No. 1468404 that you cited in    13:37:07

10 your interrogatory responses, the specialty         13:37:12

11 chemical contract extension amendment dated         13:37:14

12 September 19th, 2019.                               13:37:19

13        Do you see that?                             13:37:20

14     A  Yes.  Yes, I do.                             13:37:21

15     Q  And like in Paragraph 2, it says, DGS will   13:37:23

16 assist the mill in evaluating newer products if     13:37:33

17 approved by the mill in an effort to reduce the     13:37:34

18 usage and/or improve the functional properties of   13:37:37

19 the product they manufactured.                      13:37:39

20        Do you see that?                             13:37:41

21     A  Yes, I do.                                   13:37:42

22     Q  No. 3 says DGS will evaluate the use of a    13:37:44

23 Pareto system in alignment by Nalco and if          13:37:50

24 approved by the mill in an effort to reduce the     13:37:52

25 chemical application.                               13:37:56

| | | |
|---|---|---|
| 1 | Do you see that? | 13:37:58 |
| 2 | A  Yes, I do. | 13:37:59 |
| 3 | Q  Now, this document is not signed by | 13:37:59 |
| 4 | anybody from International Paper, but it's signed | 13:38:02 |
| 5 | by Shiv, right? | 13:38:05 |
| 6 | Do you see his signature? | 13:38:11 |
| 7 | A  Yes, I see it.  Yes, I do. | 13:38:14 |
| 8 | Q  Now, this document was drafted by Jag, | 13:38:16 |
| 9 | right? | 13:38:19 |
| 10 | Well, let me ask the question this way. | 13:38:36 |
| 11 | If you go to the previous page, you'll see that | 13:38:39 |
| 12 | there's an email of Jyotika Balsara of Diversified | 13:38:41 |
| 13 | Global Sourcing to Jag enclosing the specialty | 13:38:51 |
| 14 | chemicals contract extension agreement.  Right? | 13:38:56 |
| 15 | Do you see that? | 13:38:57 |
| 16 | A  Yes, I do. | 13:38:58 |
| 17 | Q  And so this is a communication between Jag | 13:38:59 |
| 18 | and Shiv talking about the extension agreement, | 13:39:05 |
| 19 | right? | 13:39:07 |
| 20 | A  Page two? | 13:39:07 |
| 21 | Q  Yes. | 13:39:12 |
| 22 | A  Well, it looks like it's an email from -- | 13:39:12 |
| 23 | let me see -- okay.  I see it's from Balsara to | 13:39:27 |
| 24 | Jag and Shiv, yes. | 13:39:40 |
| 25 | Q  Right.  Balsara works for D GS, right? | 13:39:41 |

1    A  Well, her email is a diversified global                    13:39:44

2  sourcing email domain, yes.                                     13:39:55

3    Q  Okay.  But you understand that Jag and                     13:39:57

4  Shiv were alleged co-conspirators in this alleged              13:40:00

5  employee theft scheme, right?                                   13:40:05

6    A  That's what's been alleged, yes.                           13:40:06

7    Q  So the fact that they have a document                      13:40:09

8  between the two of them that says that DGS is                   13:40:11

9  providing services, that doesn't mean that they're             13:40:14

10  actually providing services; this could just be               13:40:18

11  paper that they're generating to cover their                   13:40:20

12  tracks and to make it look like they're providing             13:40:25

13  services even though they're not.  Isn't that                  13:40:27

14  possible?                                                      13:40:29

15    A  Potentially.  Potentially, yes.                           13:40:29

16    Q  But then why is Beazley relying on this                   13:40:37

17  document as evidence that DGS was providing                    13:40:40

18  services in connection with this contract?                     13:40:46

19    A  It's not the only document that we                        13:40:47

20  reference.                                                     13:41:02

21    Q  Okay.  Let's look at the next document,                   13:41:03

22  Exhibit 9.  Tell me when you have that up.  That's             13:41:05

23  the next one that you list in response to this                 13:41:11

24  interrogatory to support your statement about the             13:41:16

25  services that they provided.  Tell me when you                 13:41:20

| | | |
|---|---|---|
| 1 | have Exhibit 9. | 13:41:22 |
| 2 | A  Okay.  I have Exhibit 9 open. | 13:41:37 |
| 3 | Q  Okay.  It's entitled information for | 13:41:39 |
| 4 | Mickey.  This was -- if you look at the bottom | 13:41:41 |
| 5 | Bates numbers ending in numbers 149126 and 127, | 13:41:44 |
| 6 | those are the documents you're citing at the top | 13:41:50 |
| 7 | of Page 13 of your interrogatory answers to | 13:41:54 |
| 8 | support the notion that services were being | 13:41:58 |
| 9 | provided, right? | 13:42:03 |
| 10 | A  Yes. | 13:42:04 |
| 11 | Q  And if you look at -- like under the | 13:42:08 |
| 12 | heading diversity -- and Mickey is referring to | 13:42:14 |
| 13 | Mickey Rivers, Jag's superior, right? | 13:42:17 |
| 14 | Do you understand that? | 13:42:48 |
| 15 | A  Is there a question? | 13:42:49 |
| 16 | Q  Yeah.  Do you understand that Mickey | 13:42:51 |
| 17 | Rivers is the Mickey that is on the title, is | 13:42:53 |
| 18 | Mickey Rivers, Jag's superior? | 13:42:57 |
| 19 | A  Yes. | 13:43:00 |
| 20 | Q  And this is written by Jag to report to | 13:43:01 |
| 21 | his superior this document, Exhibit 9, right? | 13:43:07 |
| 22 | A  Yes. | 13:43:10 |
| 23 | Q  So if you look at Paragraph 3 under | 13:43:19 |
| 24 | diversity, it says diversify global sourcing, | 13:43:21 |
| 25 | which is DGS, to go from a Tier 2 supplier to a | 13:43:25 |

| | | |
|---|---|---|
| 1 | Tier 1 supplier addressing items such as | 13:43:28 |
| 2 | installing telemetry in Texarkana, to supply ASA | 13:43:31 |
| 3 | at Selma on a cost per A1 ton basis, new rosin | 13:43:31 |
| 4 | size injectors at Campti, remote tank monitoring | 13:43:31 |
| 5 | at Georgetown, and supply hypo and wet strength. | 13:43:47 |
| 6 | That's Jag describing what DGS is doing, | 13:43:50 |
| 7 | right? | 13:43:53 |
| 8 | A  Yes, that's what he wrote in the document. | 13:43:54 |
| 9 | Q  And he's the alleged thief, right?  Just | 13:44:00 |
| 10 | because he writes a document saying that DGS is | 13:44:10 |
| 11 | doing a bunch of things, that doesn't mean that | 13:44:14 |
| 12 | they're actually doing it if he's trying to cover | 13:44:17 |
| 13 | his tracks and make it look like DGS is a | 13:44:19 |
| 14 | legitimate company performing legitimate services, | 13:44:23 |
| 15 | right? | 13:44:28 |
| 16 | That's not dispositive of the question of | 13:44:28 |
| 17 | whether DGS is really providing these services | 13:44:30 |
| 18 | just based on what Jag is telling his superior, is | 13:44:33 |
| 19 | it? | 13:44:36 |
| 20 | A  Well, this document is summarizing the | 13:44:37 |
| 21 | activities of DGS and others. | 13:44:50 |
| 22 | Q  Right.  But if Jag is stealing from the | 13:44:53 |
| 23 | company by diverting contracts to DGS and he wants | 13:44:56 |
| 24 | to justify it to his superior, he can well be | 13:45:02 |
| 25 | lying about what DGS is doing to make it look like | 13:45:08 |

1   they're actually earning their profit when, in        13:45:11

2   fact, they're not doing any of the services or not     13:45:13

3   doing all of these services?  Isn't that what          13:45:16

4   thiefs do sometimes to cover their tracks?             13:45:19

5       MR. MURPHY:  Objection as to form.                 13:45:26

6    A  I can't really hypothesize on what a thief         13:45:32

7   may do --                                              13:45:36

8    Q  Well --                                            13:45:37

9    A  -- or not do.                                      13:45:38

10   Q  Is Beazley believing what DGS says it does         13:45:39

11  just because of what Jag says in a document to his     13:45:45

12  superior?                                              13:45:48

13   A  Well, as stated previously, summaries of          13:45:48

14  activities of multiple entities on the document.       13:45:59

15   Q  Right.  But Jag could be telling the truth        13:46:02

16  about some of the other entities but lying about       13:46:08

17  what DGS is doing to cover his tracks, right?          13:46:10

18  Isn't that possible?                                   13:46:14

19      MR. MURPHY:  Objection as to form; calls          13:46:18

20  for speculation.                                       13:46:21

21   A  I really couldn't say.                            13:46:26

22   Q  Well, does Beazley believe statements by         13:46:28

23  Jag as to what DGS and Mid-South were doing in         13:46:32

24  performing services during the alleged employee        13:46:38

25  theft scheme simply because Jag said so?               13:46:40

| | | |
|---|---|---|
| 1 | MR. MURPHY:  Objection as to form; | 13:46:44 |
| 2 | overbroad. | 13:46:46 |
| 3 | A  I mean, again, as I stated earlier, this | 13:46:56 |
| 4 | document summarizing the activities of multiple | 13:46:59 |
| 5 | parties. | 13:47:01 |
| 6 | Q  Does Beazley believe what Jag is saying | 13:47:02 |
| 7 | about what DGS does at these various mills? | 13:47:09 |
| 8 | A  Again, there were indications that there | 13:47:18 |
| 9 | was interactions with individuals from DJS with | 13:47:24 |
| 10 | parties at the mills, and we do understand that | 13:47:29 |
| 11 | the chemicals ordered were delivered. | 13:47:34 |
| 12 | Q  Okay.  Let's look at the next document | 13:47:39 |
| 13 | that you cited in support of DGS performing | 13:47:44 |
| 14 | services.  It's the -- we'll look at Exhibit 10. | 13:47:47 |
| 15 | MR. SYLVESTER:  Can you put Exhibit 10 | 13:47:54 |
| 16 | into the chat box? | 13:47:56 |
| 17 | (Exhibit 10 was marked for identification | 13:47:57 |
| 18 | and is attached to the transcript.) | 13:48:00 |
| 19 | BY MR. SYLVESTER: | 13:48:00 |
| 20 | Q  This is the August 27th, 2017, | 13:48:00 |
| 21 | presentation from DGS to IP, presentation | 13:48:02 |
| 22 | outlining services provided by DGS.  Do you see | 13:48:05 |
| 23 | that on the fourth line of your interrogatory | 13:48:09 |
| 24 | answer on Page 13? | 13:48:10 |
| 25 | A  Which exhibit were you just referring to? | 13:48:29 |

1    You said Exhibit 10, and Exhibit --                    13:48:31

2        Q   Yeah.  Exhibit 7, your interrogatory          13:48:33

3    answers where you're listing the support, the          13:48:35

4    document supporting the notion that DGS is             13:48:38

5    providing services to IP for the money that it's       13:48:41

6    charging.                                              13:48:46

7        The third document you list is an                  13:48:47

8    August 27th, 2015, presentation from DGS to IP         13:48:49

9    outlining services provided by DGS.  Do you see        13:48:54

10   your reference to that in support that Beazley is      13:48:58

11   relying on for the statement that DGS was              13:49:01

12   providing services to IP?                              13:49:04

13       A   Sorry, I'm going back and forth.               13:49:06

14       And your question is if that is                    13:49:25

15   Exhibit 10?                                            13:49:40

16       Q   No.  I'm asking you -- we'll look at           13:49:41

17   Exhibit 10 in a second, but this August 27th,          13:49:44

18   2015, presentation from DGS to International            13:49:47

19   Paper --                                               13:49:50

20       A   Yes.                                           13:49:51

21       Q   -- is that a document that Beazley is          13:49:51

22   citing in its interrogatories and relying on for       13:49:55

23   evidence that DGS provides services to IP for the      13:49:59

24   money that it's charging?                              13:50:02

25       A   Yes, it is cited within our -- within our      13:50:03

1   interrogatories.                                          13:50:14

2      Q   Okay.  So that's one of the documents that         13:50:14

3   Beazley's relying on to support the contention            13:50:20

4   that DGS provides valuable services to IP,                13:50:22

5   correct?                                                  13:50:26

6      MR. MURPHY:  Objection as to form.  You                13:50:27

7   can answer.                                               13:50:29

8      A   Well, as stated, it does say presentation          13:50:29

9   outlining services provided by DGS.                       13:50:37

10     Q   Okay.  So let's look at the document,              13:50:40

11  Exhibit 10.  Tell me when you have it open.               13:50:42

12     A   I do have it open.                                 13:50:47

13     Q   Okay.  And you see it's diversified --             13:50:48

14  first page, Diversified Global Sourcing, Inc., our        13:50:52

15  focus is the customer.  A presentation to                 13:50:56

16  International Paper dated August 27th, 2015,               13:50:59

17  right?                                                    13:51:01

18     A   Yes.                                               13:51:02

19     Q   This is the document referred to in your          13:51:06

20  interrogatory answers, correct?                           13:51:09

21     A   Yes.                                               13:51:10

22     Q   So go to the second page of the document.         13:51:10

23     Okay.  Tell me when you have it.                        13:51:22

24     A   Page 2?                                            13:51:24

25     Q   Yeah, Page 2.  It's page number ending            13:51:25

1    0856.                                                13:51:29

2        A  I have it open.                               13:51:40

3        Q  Okay.  You see the first bullet point, it     13:51:41

4    says our customers are our employer.                 13:51:44

5           Do you see that?                              13:51:47

6        A  Yes.                                          13:51:48

7        Q  Now, you realize that DGS only had one        13:51:48

8    customer, right?  International Paper.  It didn't     13:51:51

9    have multiple customers, correct?                    13:51:54

10       A  That's what's been reported.                  13:51:56

11       Q  Okay.  Even though it continues to refer       13:52:02

12   to multiple customers on this page, you understand   13:52:04

13   that that is incorrect, that they have one           13:52:06

14   customer that's paying them, International Paper.     13:52:11

15   Okay?  Is that right?                                13:52:15

16          MR. MURPHY:  Objection as to form.            13:52:17

17       A  That's what's been reported, yes.             13:52:24

18       Q  Okay.  Go to the next page.  And you see      13:52:26

19   the next page, which is ending in Bates No. 0857.    13:52:28

20       A  Yes.                                          13:52:38

21       Q  You see the first point says about DGS        13:52:39

22   antifoam.                                            13:52:43

23          Do you see that?                              13:52:44

24       A  Yes, I do.                                    13:52:45

25       Q  Do you see two lines down, DGS's antifoam     13:52:48

1   products.                                              13:52:54

2        Do you see that?                                  13:52:54

3   A   Yes, I do.                                         13:52:55

4   Q   You recognize that DGS doesn't have any            13:52:56

5   antifoam products, isn't that right?                   13:52:59

6   A   I can't recall that particular item.               13:53:02

7   Q   DGS doesn't make any products.  Aren't you         13:53:10

8   aware of that?                                         13:53:17

9   A   Again, I don't recall specifically on that         13:53:18

10  particular item.                                       13:53:27

11  Q   Okay.  Look at the next page.  At the              13:53:28

12  heading, it says about DGS, Nanjing, referring to      13:53:36

13  Nanjing in China.                                      13:53:41

14       Do you see that?  Do you have that page?          13:53:48

15  A   Yes, I do.                                         13:53:50

16  Q   Okay.  Now, you realize, don't you, that           13:53:51

17  DGS doesn't have a Nanjing operation or a Nanjing      13:53:56

18  facility such as pictured here on this slide;          13:54:03

19  isn't that right?                                      13:54:08

20       MR. MURPHY:  Objection as to form.                13:54:09

21  A   That's what's been reported.                       13:54:10

22  Q   This picture of DGS Nanjing is a picture           13:54:18

23  of another company's facility that they took off       13:54:22

24  the Internet and stuck in this PowerPoint; isn't       13:54:24

25  that right?                                            13:54:28

1      MR. MURPHY:  Objection as to form; calls        13:54:30

2  for speculation.                                    13:54:32

3      A  I don't know the source of the picture.      13:54:32

4      Q  If you look to the lower left and it says    13:54:41

5  DGS Nanjing owned 41 Chinese national patents and   13:54:43

6  one international patent.  Do you see that?          13:54:49

7      A  Yes, I do.                                    13:54:51

8      Q  That's a complete fabrication, right?  You   13:54:52

9  know that DGJ doesn't own any patents.  Are you     13:54:55

10  aware of that?                                      13:55:01

11      A  Beazley is not able to comment on any       13:55:02

12  patent that they may or may not have.               13:55:09

13      Q  Well, didn't you investigate before you     13:55:12

14  relied on this document as evidence to support the  13:55:14

15  notion that DGS provides valuable services to       13:55:16

16  International Paper, did you investigate any of      13:55:21

17  the facts in this document that are publicly        13:55:23

18  available to see whether this was a legitimate      13:55:27

19  document or whether it was a complete fabrication?  13:55:30

20      A  Beazley has reviewed the materials.         13:55:33

21      Q  I'm sorry?                                   13:55:50

22      A  Beazley has reviewed the materials.         13:55:51

23      Q  Yeah.  You reviewed the document, but did   13:55:53

24  you look behind it to see whether any of the facts  13:55:54

25  in here are accurate?                               13:55:57

1      A   Again, as just stated, Beazley has          13:55:58

2  reviewed the materials.                             13:56:10

3      Q   Go to the next page, 0859.  This            13:56:11

4  representation to IP about DGS Nanjing.  It says    13:56:25

5  the largest antifoam production base in Asia.       13:56:29

6          That's a complete lie, isn't it?  Have you  13:56:32

7  done any research to see whether DGS has any        13:56:35

8  operation in Asia to confirm that it does not?      13:56:38

9  Did you look into that?                             13:57:02

10     A   Again, we have been reviewing the           13:57:03

11 materials.                                          13:57:05

12     Q   Yeah.  You're reviewing this document and   13:57:05

13 you said you're relying on it, Beazley is relying   13:57:07

14 on this document, but this document is a complete   13:57:10

15 fabrication.                                        13:57:13

16         Is that something reasonable for Beazley    13:57:15

17 to rely on to support the statement in its          13:57:18

18 interrogatory answers that DGS provides valuable    13:57:22

19 services to IP?                                     13:57:27

20         MR. MURPHY:  Objection as to form;          13:57:37

21 argumentative.                                      13:57:38

22     A   Well, again, Beazley does understand that   13:57:39

23 the chemicals that were ordered were delivered and  13:57:44

24 they were paid for with respect to the claim.       13:57:51

25     Q   DGS is making a presentation to            13:57:54

1    International Paper in 2015 that is filled with        13:58:00

2    fraudulent statements and misrepresentations,          13:58:05

3    doesn't that tell you something about DGS not          13:58:12

4    being a legitimate arms-length business                13:58:14

5    organization doing business with IP?                   13:58:18

6        A  Well, again, as I just stated, Beazley          13:58:19

7    does understand that the chemicals that were           13:58:32

8    ordered as far as the transactions in question         13:58:34

9    were paid for and delivered to the insured.            13:58:40

10       Q  That doesn't answer my question.                13:58:42

11           My question is does the fact that DGS is       13:58:46

12   outright lying to IP about its operations, about       13:58:49

13   its products, about its facilities, doesn't that       13:58:53

14   tell you something about whether DGS is or is not      13:58:56

15   a legitimate organization doing business with          13:59:01

16   International Paper in the ordinary course of           13:59:05

17   business?                                              13:59:07

18           MR. MURPHY:  Objection as to form;             13:59:10

19   compound; assumes facts not in evidence.               13:59:11

20           You can answer if you can.  Well, as           13:59:14

21   stated previously, I can't comment on DGS's            13:59:25

22   structure.                                             13:59:28

23       Q  Well, have you looked at any of the             13:59:34

24   documents or reviewed any of the testimony of DGS      13:59:36

25   employees or former employees to learn that none      13:59:39

1    of this is true?                                    13:59:44

2          MR. MURPHY:  Objection as to form.            13:59:49

3      A  Beazley understands there's additional        14:00:01

4    depositions that will be held within the next --    14:00:03

5    looks like not next week but the following week.    14:00:07

6      Q  Sorry.                                         14:00:11

7      A  Go ahead.                                       14:00:13

8      Q  Go, to example, to Page 12 of this            14:00:14

9    presentation, which is Document No. 0866.  Where    14:00:18

10   it's talking about a patent number that it has for  14:00:32

11   paper machines and coatings.                        14:00:36

12         Do you see that?                              14:00:39

13     A  Yes, I do.                                      14:00:40

14     Q  And DGS is representing it has this            14:00:41

15   patent, No. 200910184384.6 issued in 2009 for       14:00:45

16   paper machine/coatings.                             14:00:54

17         Do you see that?                              14:00:57

18     A  Yes, I do.                                      14:00:58

19     Q  Did Beazley do any investigation to look      14:00:59

20   up in the public record this patent, whether in     14:01:04

21   fact DGS had this patent, only to find out that     14:01:09

22   DGS is not the owner of this patent; that another   14:01:12

23   corporation owns this patent and DGS is passing it  14:01:16

24   off as its own?                                     14:01:19

25     A  Beazley's not able to comment on the          14:01:21

1    patent number listed.                              14:01:30

2        Q  I'm asking did DG -- I'm sorry, did        14:01:32

3    Beazley do an investigation before relying on this  14:01:35

4    document as support for its position, to do a      14:01:38

5    public records such of these alleged DGS patents   14:01:42

6    to see if they were really DGS patents?            14:01:45

7        MR. MURPHY:  Objection as to form.  The        14:01:48

8    witness is instructed not to speculate.  If you    14:01:50

9    know, you can answer.                              14:01:53

10       A  I can't comment on that.  I'm not aware of  14:01:54

11   that.                                              14:02:02

12       Q  Can you go to the second to the last page   14:02:03

13   of this document, Page 39?  And it's Document No.   14:02:05

14   893.                                               14:02:18

15       A  893?                                        14:02:19

16       Q  Yeah.                                       14:02:21

17       A  Okay.  I have it open.                      14:02:22

18       Q  The heading for this slide says why DGS?    14:02:23

19          Okay?  Do you see that?                     14:02:32

20       A  Yes, I do.                                  14:02:36

21       Q  After No. 1 where it says diversity        14:02:38

22   supply:  minority-owned business that increases    14:02:41

23   supplier diversity.                                14:02:45

24          No. 2 says that DGS specializes in the      14:02:47

25   development, research, manufacturing, and          14:02:50

1    implementation of defoamer.                          14:02:52

2         Do you see that?                                14:02:54

3    A   Yes, I do.                                       14:02:55

4    Q   And do you realize that that is a complete       14:02:56

5    fabrication, that DGS doesn't develop, it doesn't    14:02:59

6    research, it doesn't manufacture, and it doesn't     14:03:03

7    implement defoamer?                                  14:03:06

8    A   As stated previously, I'm unable to              14:03:09

9    comment on DGS's structure and their operations.     14:03:17

10   Q   Do you believe this Exhibit 10 is a              14:03:23

11   reliable document for Beazley to rely on -- to       14:03:26

12   rely on it for the contention that Beazley is        14:03:31

13   making that DGS provides valuable services to IP     14:03:33

14   in exchange for the money it was paid?               14:03:39

15   A   I'm not able to speculate on that.               14:03:43

16   Q   Does the fact that DGS put together this         14:03:58

17   fraudulent document to misrepresent itself to IP,    14:04:03

18   does that lead you to believe that maybe the         14:04:09

19   people running DGS are not honest people?            14:04:12

20        MR. MURPHY:  Objection as to form.              14:04:17

21   A   Beazley's not able to comment on whether         14:04:20

22   DGS or Mid-South were honest or not.                 14:04:30

23   Q   But isn't that something you have to             14:04:35

24   determine in determining whether this is an          14:04:43

25   employee theft scheme versus an ordinary course of   14:04:46

1    business arrangement between IP and DGS?  Don't          14:04:49

2    you have to determine are these characters telling       14:04:51

3    the truth, or are they lying?  Isn't that part of        14:04:55

4    your evaluation?                                         14:04:57

5        A   Well, we are investigating things in            14:04:58

6    totality, but as stated previously, we understand        14:05:09

7    that the chemicals, the specialty chemicals and          14:05:12

8    the quantities that were ordered, were delivered         14:05:18

9    to IP and also paid for.                                 14:05:21

10       Q   Right.  And you also said in your                14:05:23

11   interrogatories that DGS and Mid-South were              14:05:29

12   overcharging well beyond any value they were             14:05:33

13   providing in services.  Do you recall that in your       14:05:37

14   interrogatory answer?                                    14:05:41

15       MR. MURPHY:  Objection as to form;                   14:05:41

16   misstates the testimony and the document.  Where         14:05:43

17   does it say overcharging?                                14:05:50

18       MR. SYLVESTER:  It says at the bottom of             14:05:53

19   Page 11, where a Tier 1 supplier did provide some        14:05:55

20   form of additional service which would transport         14:06:00

21   process improvements, packaging, inventory               14:06:03

22   management, purchases for distribution, the value        14:06:04

23   of those services did not approach the amount of         14:06:08

24   the price markup it charged IP.  That's what I was       14:06:10

25   referring to by overcharging.                            14:06:13

| | | |
|---|---|---|
| 1 | MR. MURPHY:  I stand on my objection. | 14:06:15 |
| 2 | THE WITNESS:  And what is the question | 14:06:28 |
| 3 | again, please? | 14:06:29 |
| 4 | BY MR. SYLVESTER: | 14:06:30 |
| 5 | Q  Don't you have to decide in making your | 14:06:30 |
| 6 | coverage determination who's telling the truth and | 14:06:34 |
| 7 | who's lying about whether this is a legitimate | 14:06:37 |
| 8 | ordinary course of business arrangement between IP | 14:06:41 |
| 9 | and DGS?  Isn't that part of your evaluation? | 14:06:43 |
| 10 | A  Well, the policy speaks to whether there | 14:06:48 |
| 11 | was employee dishonesty. | 14:06:58 |
| 12 | Q  And if Jag is directing money to his | 14:07:05 |
| 13 | brother's company and his brother's company is a | 14:07:08 |
| 14 | fraudulent company that misrepresents the IP what | 14:07:10 |
| 15 | it owns, what it does, what activities it engages | 14:07:16 |
| 16 | in, what patents it holds, doesn't that tell | 14:07:19 |
| 17 | you -- doesn't that inform Beazley that this is | 14:07:24 |
| 18 | not an ordinary course of business relationship | 14:07:29 |
| 19 | between IP and DGS? | 14:07:33 |
| 20 | MR. MURPHY:  Objection as to form; | 14:07:36 |
| 21 | incomplete hypothetical.  You can answer if you | 14:07:38 |
| 22 | have an answer. | 14:07:41 |
| 23 | A  I would just say, on behalf of Beazley, | 14:07:41 |
| 24 | potentially. | 14:07:58 |
| 25 | Q  Let's look at the next document you cited | 14:07:59 |

| | |
|---|---|
| 1 | in your interrogatory answers to support this | 14:08:06 |
| 2 | statement that DGS delivered services to IP. | 14:08:08 |
| 3 | MR. SYLVESTER:  I'll ask Exhibit 11 be put | 14:08:15 |
| 4 | into the chat, and also put in Exhibit 12 while | 14:08:18 |
| 5 | we're at it. | 14:08:22 |
| 6 | (Exhibits 11 and 12 were marked for | 14:08:24 |
| 7 | identification and are attached to the | 14:08:24 |
| 8 | transcript.) | 14:08:25 |
| 9 | BY MR. SYLVESTER: | 14:08:25 |
| 10 | Q  If you look back at your interrogatory | 14:08:25 |
| 11 | answer, Exhibit 7 on Page 13, the next document | 14:08:27 |
| 12 | you list after that PowerPoint presentation that | 14:08:32 |
| 13 | we just reviewed is an August 13th, 2019, email | 14:08:37 |
| 14 | from Jag to R. Kuenzinger. | 14:08:43 |
| 15 | A  You said which page on Exhibit 7? | 14:08:49 |
| 16 | Q  Exhibit 7, Page 13. | 14:08:51 |
| 17 | A  Okay. | 14:08:55 |
| 18 | Q  Where you're listing the documents that | 14:08:56 |
| 19 | Beazley relies on.  We've looked at the first | 14:08:58 |
| 20 | three of the five.  This is the fourth, | 14:09:01 |
| 21 | August 13th, 2019, email from Jag to Richard | 14:09:05 |
| 22 | Kuenzinger at International Paper. | 14:09:13 |
| 23 | A  Yes. | 14:09:21 |
| 24 | Q  And in his email on August 13th, he | 14:09:21 |
| 25 | responds to Mr. Kuenzinger asking, you know, what | 14:09:25 |

1   is the value that DGS is providing?                    14:09:28

2        And you can see that question at the top           14:09:35

3   of the next page, Page 0541.  On the first page,        14:09:37

4   Page 0540, Jag responds on August 13th, 2019, at        14:09:44

5   11:08 a.m., there's, like, six bullet points.           14:09:51

6        The third one says DGS is the diversity            14:09:59

7   arm for Nalco.  The value they bring to Georgetown      14:10:02

8   mill in firming up our Procter & Gamble business.       14:10:06

9   Procter & Gamble is the largest single customer         14:10:11

10  demanding diversity present.                            14:10:11

11       And four, at the Georgetown mill, DGS also         14:10:14

12  monitors tank levels using telemetry avoiding           14:10:17

13  demurrage charges and shortages of products.            14:10:23

14     A  Are you referring to Exhibit 11 now?              14:10:23

15     Q  Yes.                                              14:10:25

16     A  Hold on.  I have to save it.                      14:10:25

17        Okay.  You're on Page 1?                          14:10:33

18     Q  Yes.                                              14:10:40

19     A  Okay.                                             14:10:41

20     Q  This is a document that you say supports          14:10:42

21  the notion that DGS is providing services for the       14:10:44

22  money that it's paid, and I was reading some of         14:10:49

23  the five -- six points that Jag is listing in his       14:10:53

24  email to Richard Kuenzinger who works at one of         14:10:58

25  the mills in IP, and I read 3 and 4.                    14:11:02

| | | |
|---|---|---|
| 1 | And then Point 5 is at other mills, we | 14:11:07 |
| 2 | have had various value added contribution from | 14:11:11 |
| 3 | DGS.  Safety, capital for tanks, tank telemetry, | 14:11:14 |
| 4 | et cetera. | 14:11:19 |
| 5 | Do you see that? | 14:11:20 |
| 6 | A  Yes. | 14:11:21 |
| 7 | Q  So all of this is being written by Jag, | 14:11:21 |
| 8 | right? | 14:11:24 |
| 9 | A  It's an email from Jag, yes. | 14:11:24 |
| 10 | Q  Just because he says things, that doesn't | 14:11:30 |
| 11 | make them true?  If he's, in fact, stealing from | 14:11:35 |
| 12 | the company by diverting money to DGS improperly, | 14:11:39 |
| 13 | of course he's going to say that DGS is providing | 14:11:43 |
| 14 | valuable services in exchange for the money it's | 14:11:46 |
| 15 | being paid.  Wouldn't you expect him if he was, in | 14:11:49 |
| 16 | fact, engaged in an employee theft scheme to say | 14:11:52 |
| 17 | things like that to other people at IP to try to | 14:11:56 |
| 18 | get them off the trail of investigating DGS? | 14:12:03 |
| 19 | MR. MURPHY:  Objection as to form; calls | 14:12:06 |
| 20 | for speculation.  You can answer. | 14:12:08 |
| 21 | A  Potentially, but I couldn't say with | 14:12:10 |
| 22 | certainty that would be the case. | 14:12:25 |
| 23 | Q  Okay.  Let's look at the last document | 14:12:27 |
| 24 | that you listed, which is Exhibit 12. | 14:12:30 |
| 25 | This is a May 30th, 2019, email from Jag | 14:12:40 |

| | | |
|---|---|---|
| 1 | to Metrick Houser and Marvin Donaldson. | 14:12:49 |
| 2 | A  Is that in the chat? | 14:12:58 |
| 3 | MR. SYLVESTER:  Can we put Exhibit 12 in | 14:12:59 |
| 4 | the chat, and also, Harold, while you're at it, | 14:13:01 |
| 5 | put in Exhibit 13? | 14:13:05 |
| 6 | (Exhibit 13 was marked for identification | 14:13:07 |
| 7 | and is attached to the transcript.) | 14:13:08 |
| 8 | BY MR. SYLVESTER: | 14:13:32 |
| 9 | Q  Do you have 12 in the chat, Ms. Ellis? | 14:13:32 |
| 10 | MR. MURPHY:  Yeah, it just popped up. | 14:13:35 |
| 11 | TECHNICIAN:  You said 13 as well? | 14:13:38 |
| 12 | MR. SYLVESTER:  Yes, 13.  It's a | 14:13:41 |
| 13 | spreadsheet. | 14:13:45 |
| 14 | THE WITNESS:  I have it open. | 14:13:49 |
| 15 | BY MR. SYLVESTER: | 14:13:50 |
| 16 | Q  Okay.  Here's an email -- | 14:13:50 |
| 17 | A  Exhibit 12? | 14:13:52 |
| 18 | Q  Yes, Exhibit 12.  And, again, this is a | 14:13:53 |
| 19 | document you cited in support of the notion that | 14:13:55 |
| 20 | DGS provides valuable services to IP. | 14:14:00 |
| 21 | And in the email at the bottom half of | 14:14:04 |
| 22 | this page, it's a May 30th, 2019, email from Jag | 14:14:06 |
| 23 | to Marvin Donaldson and Metrick Houser.  Do you | 14:14:15 |
| 24 | see that? | 14:14:17 |
| 25 | A  Yes. | 14:14:18 |

| 1 | Q  Okay.  And in that, he lists various | 14:14:18 |
| 2 | things about DGS.  In Paragraph No. 1, it says, | 14:14:27 |
| 3 | Georgetown has accepted the importance of the | 14:14:32 |
| 4 | payment terms and acknowledges the importance of | 14:14:35 |
| 5 | diversity, contractual terms with P and G, and the | 14:14:37 |
| 6 | supply chain.  This was an easy sale since DGS was | 14:14:41 |
| 7 | the lowest cost after the technical service in | 14:14:44 |
| 8 | telemetry and payment terms.  While without all of | 14:14:47 |
| 9 | this, DGS was more expensive by $8,000 per year? | 14:14:51 |
| 10 | And then point No. 2 for the Riegelwood | 14:14:56 |
| 11 | mill, Jag says DGS was the lowest even without any | 14:15:01 |
| 12 | of the credits, so this may go the DGS route. | 14:15:05 |
| 13 | Do you see that? | 14:15:09 |
| 14 | A  Yes, I do. | 14:15:10 |
| 15 | Q  So he's representing -- Jag is -- that it | 14:15:11 |
| 16 | would be lowest cost to go to DGS for the | 14:15:14 |
| 17 | Georgetown mill and the Riegelwood mill, but this | 14:15:20 |
| 18 | is Jag talking, right?  Do you believe anything | 14:15:24 |
| 19 | Jag says just because he says it in trying to make | 14:15:26 |
| 20 | it seem like DGS is actually a value-added | 14:15:29 |
| 21 | provider for IP? | 14:15:36 |
| 22 | MR. MURPHY:  Objection as to form. | 14:15:38 |
| 23 | A  Well, we do see that the email was sent by | 14:15:45 |
| 24 | Jag to various individuals within IP. | 14:15:56 |
| 25 | Q  Right.  But if he's truly stealing from | 14:16:02 |

| | | |
|---|---|---|
| 1 | the company by improperly diverting contract | 14:16:07 |
| 2 | dollars to DGS, you would expect him to tell his | 14:16:10 |
| 3 | superiors to say that it's a good deal for the | 14:16:12 |
| 4 | company to be dealing with DGS, right?  Isn't that | 14:16:16 |
| 5 | what you would expect him to say to cover up what | 14:16:19 |
| 6 | he's doing? | 14:16:22 |
| 7 | MR. MURPHY:  Objection as to form; calls | 14:16:22 |
| 8 | for speculation. | 14:16:25 |
| 9 | A  Potentially it could be or could not be. | 14:16:26 |
| 10 | Q  Right.  But so for all of the documents | 14:16:42 |
| 11 | that you've cited are documents that are authored | 14:16:44 |
| 12 | by Jag or DGS to support the notion that DGS is | 14:16:48 |
| 13 | providing valuable services to International | 14:16:54 |
| 14 | Paper.  Do you have any documents not authored by | 14:16:57 |
| 15 | Jag or Shiv or DGS or Mid-South that are singing | 14:16:59 |
| 16 | the praises of DGS as being a valuable supplier? | 14:17:05 |
| 17 | MR. MURPHY:  Objection.  Excuse me. | 14:17:13 |
| 18 | Have you completed your question? | 14:17:16 |
| 19 | MR. SYLVESTER:  Yes. | 14:17:18 |
| 20 | MR. MURPHY:  Objection as to form. | 14:17:20 |
| 21 | THE WITNESS:  And what is your question | 14:17:26 |
| 22 | regarding the email? | 14:17:27 |
| 23 | BY MR. SYLVESTER: | 14:17:29 |
| 24 | Q  Yeah.  We just looked at a bunch of | 14:17:29 |
| 25 | documents that Beazley cited that support the | 14:17:32 |

1    notion that DGS is providing valuable services to          14:17:35

2    International Paper for the money it's charging,            14:17:39

3    but they're all authored by either Jag or Shiv or          14:17:41

4    DGS.                                                        14:17:45

5         Do you have -- and they're all alleged                14:17:46

6    co-conspirators in the theft.  Do you have any             14:17:49

7    documents written by somebody else outside the             14:17:52

8    alleged conspiracy singing the praises of DGS or           14:17:55

9    Mid-South as providing valuable services to IP?            14:18:01

10        MR. MURPHY:  Objection as to form.  You               14:18:04

11   can answer.                                                14:18:06

12     A  I don't recall the extent of other                    14:18:07

13   documents.                                                 14:18:16

14     Q  The last document that you list is a                  14:18:16

15   spreadsheet that was prepared by Jag.  We marked           14:18:23

16   that as Exhibit 13.  Can you open that?                    14:18:30

17     A  Okay.  I'm opening it now.  Just bear with            14:18:32

18   me for one second.                                         14:18:36

19        Okay.  I have it.  I have the Excel file              14:18:37

20   open.                                                      14:19:07

21     Q  Right.  So if you go to the first tab, I              14:19:08

22   think it's Riegelwood.  And this goes with the             14:19:14

23   prior document where Jag is providing cost numbers         14:19:16

24   for alternative suppliers for the Riegelwood mill.         14:19:20

25        And do you see that if you look in                    14:19:27

1   Column L, lo and behold, DGS is listed as having            14:19:30

2   the lowest net value spend after all the credits?           14:19:36

3   It's 126,000 versus the other suppliers listed who          14:19:41

4   have higher numbers?                                        14:19:50

5       A   Yes, I do.                                          14:19:51

6       Q   Okay.  So this is what he's showing Marvin          14:19:52

7   Donaldson and Metrick Houser in the prior email we          14:19:58

8   looked at saying that DGS is the lowest supplier            14:20:01

9   after he gives them various credits for the --              14:20:04

10  what he calls the credit -- where is it here? --            14:20:12

11  tank telemetry, inventory management, own truck             14:20:27

12  fleet, truck driver safety and training, supplier           14:20:30

13  visits twice per year.                                      14:20:34

14       Do you see how he gets $30,000 credit to               14:20:34

15  DGS to get that number down to 126,000?                     14:20:38

16      A   Yes.                                                14:20:45

17      Q   Okay.  And do you understand that DGS               14:20:46

18  doesn't have any trucks?  It doesn't have a truck           14:20:58

19  fleet?  Do you know that to be the case from the            14:21:00

20  evidence in the record?                                     14:21:03

21      A   I don't recall to the extent that they do           14:21:12

22  or do not have a truck fleet.                               14:21:16

23      Q   They don't have a single truck.  Don't you          14:21:18

24  know that?                                                  14:21:21

25      A   I don't recall on that item.                        14:21:22

1      Q  They don't do truck driver safety and          14:21:26

2   training.  Aren't you aware of that?                 14:21:32

3      A  I don't recall regarding that particular       14:21:36

4   item.                                                14:21:44

5      Q  So go to the Georgetown tab where he's         14:21:45

6   justifying Georgetown as the supplier in this        14:21:52

7   particular bidding process and shows, in column L,   14:21:59

8   that DGS is the lowest cost provider.  It's          14:22:10

9   174,000 compared to higher numbers for other         14:22:15

10  suppliers.                                           14:22:19

11      Do you see that?                                 14:22:19

12      A  Yes, I do.                                     14:22:20

13      Q  And, again, this is Jag talking.  Right?      14:22:23

14  This is Jag creating this document to justify        14:22:29

15  giving the business to DGS, right?                   14:22:36

16      A  Can you repeat your question, please?         14:22:40

17      Q  Yeah.  This Exhibit 13, which is the last     14:22:56

18  of the documents that you cite in support of         14:22:59

19  Beazley's statement that DGS is providing valuable   14:23:03

20  services to International Paper, it's another         14:23:08

21  document; in this case, a spreadsheet prepared by    14:23:10

22  Jag, right?                                          14:23:14

23      A  I don't recall who created the                14:23:25

24  spreadsheet.                                         14:23:26

25      Q  Well, if you -- if you'll accept my           14:23:30

| | | |
|---|---|---|
| 1 | representation that this is prepared by Jag based | 14:23:33 |
| 2 | on the prior exhibit that we looked at, | 14:23:37 |
| 3 | Exhibit 12, to which this applies, does Beazley | 14:23:40 |
| 4 | have any document or any evidence generated by | 14:23:47 |
| 5 | somebody other than one of the co-conspirators -- | 14:23:52 |
| 6 | Jag, Shiv, Mid-South, DGS -- saying that DGS or | 14:23:56 |
| 7 | Mid-South provides valuable services in exchange | 14:24:00 |
| 8 | for the money that they were charging IP and the | 14:24:03 |
| 9 | markup that they were getting? | 14:24:07 |
| 10 | MR. MURPHY:  Objection as to form; | 14:24:09 |
| 11 | overbroad. | 14:24:11 |
| 12 | A  I don't recall offhand. | 14:24:12 |
| 13 | MR. SYLVESTER:  Okay.  Why don't we take a | 14:24:24 |
| 14 | ten-minute break. | 14:24:25 |
| 15 | MR. MURPHY:  We'll come back at 2:35? | 14:24:26 |
| 16 | MR. SYLVESTER:  Yeah.  Thanks. | 14:24:30 |
| 17 | VIDEOGRAPHER:  We are going off the | 14:24:31 |
| 18 | record.  The time is 2:24 p.m. | 14:24:32 |
| 19 | (A recess was taken.) | 14:24:34 |
| 20 | VIDEOGRAPHER:  We are back on the record. | 14:36:44 |
| 21 | The time is 2:36 p.m. | 14:36:46 |
| 22 | BY MR. SYLVESTER: | 14:36:48 |
| 23 | Q  Ms. Ellis, we're back to Exhibit 7, the | 14:36:48 |
| 24 | interrogatory answer that was provided in response | 14:36:54 |
| 25 | to Interrogatory No. 2.  I would like you to look | 14:36:56 |

1    at Page 14 of Beazley's answer to Interrogatory          14:37:01

2    No. 2.  Again, that's Exhibit No. 7.                      14:37:05

3          Do you have Page 14 in front of you?               14:37:09

4      A  Yes, I do.                                           14:37:12

5      Q  If you look at the second to the last               14:37:13

6    paragraph on Page 14, it says that Jagannath did         14:37:17

7    not conceal the fact that he was negotiating             14:37:22

8    arms-length contracts with DGS and Mid-South             14:37:25

9    similar to other diverse or minority-owned               14:37:28

10   businesses.                                              14:37:31

11         Do you see that sentence?                          14:37:32

12     A  Yes, I do.                                           14:37:33

13     Q  Do you recognize that Jag never revealed            14:37:34

14   to his supervisors that DGS and Mid-South were           14:37:39

15   companies controlled by his brother, Shiv Kumar?         14:37:46

16     A  That he didn't do what?  Can you repeat             14:37:52

17   that part?                                               14:37:56

18     Q  Jag didn't tell his superiors that DGS and          14:37:57

19   Mid-South were owned and controlled by his               14:38:03

20   brother, Shiv Kumar?                                     14:38:05

21     A  That's what's been reported, yes.                   14:38:07

22     Q  And, in fact, DGS and Mid-South were                14:38:13

23   themselves essentially owned and controlled by the      14:38:20

24   same person, Shiv Kumar; isn't that right?              14:38:26

25     A  Yes, that's what's been reported.                   14:38:30

| | |
|---|---|
| 1 | Q  So when you say that Jagannath did not | 14:38:39 |
| 2 | conceal the fact that he was negotiating | 14:38:42 |
| 3 | arms-length with DGS and Mid-South, how can | 14:38:44 |
| 4 | Beazley say that when he revealed to his superiors | 14:38:50 |
| 5 | that both of the companies were owned and | 14:38:53 |
| 6 | controlled by his brother? | 14:38:55 |
| 7 | A  Well, from the information that we've | 14:38:58 |
| 8 | seen, he didn't -- Jagannath -- Jag didn't -- he | 14:39:12 |
| 9 | didn't disclose -- he didn't -- I mean, I don't | 14:39:20 |
| 10 | want to say didn't, did not, did not disclose. | 14:39:23 |
| 11 | He did indicate -- Jag did indicate that | 14:39:27 |
| 12 | he was negotiating contracts with DGS and | 14:39:33 |
| 13 | Mid-South. | 14:39:36 |
| 14 | Q  Right.  But he never told his superiors -- | 14:39:39 |
| 15 | Metrick Houser, Marvin Donaldson, Mickey Rivers -- | 14:39:44 |
| 16 | that those companies were owned and controlled by | 14:39:50 |
| 17 | his brother; isn't that right? | 14:39:52 |
| 18 | MR. MURPHY:  Objection as to form. | 14:39:55 |
| 19 | A  That's what's been reported. | 14:39:56 |
| 20 | Q  And he never revealed to his superiors -- | 14:39:58 |
| 21 | Mickey Rivers, Marvin Donaldson, Metrick Houser -- | 14:40:02 |
| 22 | that some of the money that IP was paying to DGS | 14:40:05 |
| 23 | and Mid-South were being funneled back to accounts | 14:40:09 |
| 24 | that he controlled; isn't that right? | 14:40:12 |
| 25 | MR. MURPHY:  Objection as to form. | 14:40:15 |

1    A   As stated previously, we have not seen --                     14:40:16

2    being Beazley -- documentation of financial                      14:40:20

3    benefit to Jagannath, to Jag.                                     14:40:24

4    Q   But if that is true, that's not an                           14:40:26

5    arms-length contract if he's dealing with his                    14:40:30

6    brother's company; isn't that right?                             14:40:33

7        MR. MURPHY:   Objection as to form.                          14:40:37

8    Q   To his superiors, failing to list that on                    14:40:38

9    conflict of interest statements year after year?                 14:40:42

10   That's not an arms-length contract, is it?                       14:40:45

11       MR. MURPHY:   Same objection.                                14:40:48

12   A   Can you repeat your question, please?                        14:40:57

13   Q   Yeah.   You said in Beazley's response on                    14:41:01

14   Page 14 that Jagannath did not conceal the fact                  14:41:04

15   that he was negotiating arms-length contracts with               14:41:07

16   DGS and Mid-South similar to other diverse or                    14:41:07

17   minority-owned businesses.                                       14:41:16

18       How can you say that when DGS and                            14:41:16

19   Mid-South were owned and controlled by his                       14:41:19

20   brother, and he never revealed that to anybody                   14:41:21

21   else at IP, that he was dealing with a company                   14:41:23

22   owned and controlled by his brother?                             14:41:27

23       MR. MURPHY:   Asked and answered.                            14:41:34

24   A   Well, I mean, as I stated previously, from                   14:41:38

25   the information that Beazley's seen in the                        14:41:43

| | | |
|---|---|---|
| 1 | presentation, Jag did not conceal that he was | 14:41:51 |
| 2 | negotiating the contracts with DGS or Mid-South. | 14:41:58 |
| 3 | Q  Right.  He said to everybody he's dealing | 14:42:02 |
| 4 | with DGS and Mid-South, but he never told anybody | 14:42:06 |
| 5 | that those were companies that were owned and | 14:42:09 |
| 6 | controlled by his brother; isn't that by | 14:42:11 |
| 7 | definition not an arm-length transaction when he's | 14:42:14 |
| 8 | engaged in a business transaction on behalf of the | 14:42:19 |
| 9 | company with one of his family members and doesn't | 14:42:22 |
| 10 | tell anybody about it?  That's not an arms-length | 14:42:25 |
| 11 | transaction, is it? | 14:42:28 |
| 12 | MR. MURPHY:  Objection as to form. | 14:42:29 |
| 13 | A  Well, again, he didn't -- he disclosed | 14:42:32 |
| 14 | that he was negotiating the contracts. | 14:42:44 |
| 15 | Q  But he pretended as if they were separate | 14:42:46 |
| 16 | independent entities that he had no relationship | 14:42:52 |
| 17 | with, but in fact both of these companies were | 14:42:55 |
| 18 | controlled by his brother.  That's not an | 14:43:00 |
| 19 | arms-length contract negotiation, is it? | 14:43:03 |
| 20 | MR. MURPHY:  Same objection. | 14:43:06 |
| 21 | A  As stated previously, he did make others | 14:43:07 |
| 22 | aware of the negotiations with International | 14:43:14 |
| 23 | Paper. | 14:43:21 |
| 24 | Q  But you don't have any evidence that he | 14:43:21 |
| 25 | told anybody at International Paper that he was | 14:43:23 |

1    dealing with DGA, a company owned and controlled          14:43:27

2    by his brother, or that he was dealing with               14:43:30

3    Mid-South, a company owned and controlled by his          14:43:32

4    brother; isn't that right?  You don't have any            14:43:36

5    evidence that he actually revealed that to                14:43:38

6    anybody, much less his superiors at International         14:43:40

7    Paper?                                                    14:43:45

8          MR. MURPHY:  Objection; overbroad,                 14:43:45

9    compound.  You can answer.                                14:43:47

10      A   Again, as stated previously, he -- Jag did         14:43:48

11   make others within IP aware of negotiations and          14:44:03

12   the contracts with DGS --                                 14:44:10

13      Q   That's not my question.  My question is do         14:44:13

14   you have any evidence that he told anybody at             14:44:15

15   IP -- Jag did -- including his superiors, that DGS        14:44:19

16   was a company owned by his brother or that                14:44:26

17   Mid-South was a company owned by his brother?             14:44:28

18   That's the specific question I'm asking, not              14:44:32

19   whether he revealed that he was dealing with a            14:44:34

20   company named DGS or a company named Mid-South.           14:44:36

21   But do you have any evidence that he revealed to          14:44:39

22   anybody at IP that he was dealing with companies          14:44:42

23   DGS and Mid-South that were owned and controlled          14:44:47

24   by his brother?                                           14:44:49

25         MR. MURPHY:  Same objection.                        14:44:51

1    A  I don't recall if there was specific -- a                14:44:52

2    specific document on that item.                             14:44:58

3    Q  At the bottom of Page 14 of this                         14:45:00

4    Exhibit 7, the last paragraph starts IP did not             14:45:04

5    follow its competitive bidding guidelines when it           14:45:09

6    came to diverse or minority owned businesses.               14:45:12

7        Do you see that?                                        14:45:15

8    A  Yes, I do.                                               14:45:16

9    Q  And when you are talking about diversity                 14:45:18

10   or minority-owned businesses, that includes DGS             14:45:26

11   and Mid-South, right?                                       14:45:29

12   A  Yes.                                                     14:45:32

13   Q  So Beazley agrees that when Jag was doing                14:45:41

14   business with DGS and Mid-South, this was -- Jag            14:45:46

15   was not following competitive bidding guidelines            14:45:49

16   when it came to dealing with DGS and Mid-South; is          14:45:53

17   that correct?                                               14:45:57

18   A  Well, Beazley understands that, more                     14:45:57

19   broadly, as stated, when it came to diverse                 14:46:08

20   minority-owned businesses, the same competitive             14:46:12

21   bidding guidelines were not followed.                       14:46:16

22   Q  And that includes with DGS and Mid-South,                14:46:18

23   right?                                                      14:46:22

24   A  Yes, and others, but not exclusively them.               14:46:23

25   Q  There are no other minority or diverse                   14:46:28

1   suppliers that IP was doing business with that          14:46:32

2   were owned or controlled by Jag's brother; is that      14:46:37

3   right?                                                  14:46:40

4       A  Not that we're aware of.                         14:46:40

5       Q  In the middle paragraph on Page 15, it          14:46:42

6   says IP's local sourcing department routinely           14:46:55

7   failed to properly document the transactions into       14:46:59

8   which it entered.                                       14:47:01

9          Do you see that statement?                       14:47:02

10      A  Yes --                                           14:47:04

11      Q  Middle of --                                     14:47:05

12      A  -- I do.  Yes, I do.                             14:47:06

13      Q  And that applies to Jag's transactions          14:47:08

14  with DGS and Mid-South, correct?                        14:47:11

15      A  Yes, that's correct.                             14:47:13

16      Q  So there were a number of payments and          14:47:35

17  purchases from IP to DGS and Mid-South that were        14:47:40

18  not properly documented according to IP business        14:47:44

19  guidelines; isn't that right?                           14:47:48

20      A  I would, again, refer back to the document      14:47:50

21  with respect to the first sentence on Page 15, the      14:48:16

22  middle paragraph.                                       14:48:21

23      Q  Which document are you referring to?            14:48:22

24      A  The one we're looking at, Exhibit 7.            14:48:23

25      Q  Right.  Yeah, there's a statement that         14:48:26

1    says IP's global sourcing department.  That's the          14:48:29

2    department in which Jag worked, correct?                   14:48:34

3        A  Yes.                                                 14:48:39

4        Q  Routinely failed to properly document the           14:48:39

5    transactions into which it entered, and that               14:48:44

6    applies to Jag's failure to properly document some         14:48:47

7    of the transactions between IP and DGS and IP and          14:48:51

8    Mid-South; isn't that right?                               14:48:56

9        MR. MURPHY:  Objection as to form.                      14:48:58

10       A  I don't recall if it was exclusively to --          14:49:01

11   with respect to DGS and Mid-South amongst others.          14:49:15

12       Q  Okay.  Can you turn to the next page, the           14:49:19

13   top of Page 16 of this Exhibit 7?  It says at the          14:49:24

14   top of Page 16, prior to the inception of the              14:49:32

15   policy, Plaintiff's employees periodically made            14:49:34

16   complaints about the services DGS and Mid-South            14:49:38

17   provided which were reported to the Plaintiff.             14:49:41

18   Notwithstanding these complaints, Plaintiff                14:49:45

19   continued to conduct business with DGS and                 14:49:49

20   Mid-South for nearly a decade.                             14:49:52

21       Do you see that?                                       14:49:54

22       A  Yes, I do.                                          14:49:55

23       Q  Okay.  What complaints were you referring          14:49:56

24   to?                                                        14:49:58

25       A  My understanding is there were some               14:50:14

1    complaints over time from certain mill staff.          14:50:16

2        Q  And other than complaining about the          14:50:21

3    prices that were being paid to DGS and Mid-South,          14:50:24

4    what complaints about the services they were          14:50:28

5    providing or not providing are you aware of?  I          14:50:33

6    don't see any documents cited here in support of          14:50:36

7    the sentence.  I want to know specifically what          14:50:39

8    complaints you're talking about.          14:50:41

9        A  I don't recall the specifics as far as the          14:51:04

10   complaints with respect to services.          14:51:06

11       Q  Can you recall generally what complaints          14:51:08

12   you're talking about here in this answer to the          14:51:14

13   interrogatory at the top of Page 16 of Exhibit 7?          14:51:16

14       A  Again, I don't recall the specifics on          14:51:18

15   that.          14:51:28

16       Q  And you say that complaints were made to          14:51:28

17   Plaintiff.  Who other than Jag were these          14:51:36

18   complaints made to about services DGS or Mid-South          14:51:38

19   were providing?          14:51:43

20       A  I don't recall who else outside of Jag          14:51:44

21   would have received those complaints.          14:51:59

22       Q  And if Jag received those complaints and          14:52:02

23   he is co-conspiring with DGS and Mid-South, you          14:52:05

24   would expect him to try to deflect those          14:52:12

25   complaints rather than disclose them or elevate          14:52:14

1    them to anybody else at IP, wouldn't you?  Isn't          14:52:16

2    that what an employee thief would do in                   14:52:22

3    furtherance of his theft scheme?                          14:52:25

4        MR. MURPHY:  Objection to form; calls for             14:52:27

5    speculation.                                              14:52:29

6        A  I'm not able to speculate on his mindset.          14:52:38

7        Q  Well, do you know of any complaints made           14:52:40

8    to Jag about DGS or Mid-South where instead of            14:52:43

9    deflecting them or suppressing them he actually           14:52:51

10   relayed them to any superior of his so that they          14:52:53

11   would find out about them?                                14:52:57

12       A  Again, I don't recall who received                 14:52:59

13   information regarding any complaints with regard          14:53:08

14   to DGS and Mid-South.                                     14:53:13

15       Q  You say that these complaints were known           14:53:17

16   prior to the inception of the policy.  Why is that        14:53:24

17   significant from a coverage standpoint if somebody        14:53:26

18   was complaining about DGS's services prior to the         14:53:30

19   inception of the policy?                                  14:53:33

20       A  It could suggest earlier knowledge.                14:53:35

21       Q  Earlier knowledge of what?                         14:53:59

22       A  Or earlier discovery.                              14:54:01

23       Q  Earlier discovery of what?                         14:54:06

24       A  Of any of the activities involving DGS and         14:54:08

25   Mid-South.                                                14:54:16

1    Q  Well, how does the fact that somebody          14:54:17

2  complained about DGS's services or Mid-South's      14:54:20

3  services prior to the inception of the policy, how  14:54:23

4  does that evidence that somebody knew that Jag was  14:54:28

5  stealing from the company by entering into          14:54:33

6  contracts with his brother's company and having     14:54:36

7  money funneled back to himself?  How does that      14:54:38

8  relate to any prior knowledge or discovery of       14:54:43

9  employee theft, the fact that somebody's            14:54:48

10 complaining about DGS's services?                   14:54:51

11   A  Well, again, I didn't say that it did.  I      14:54:57

12 said that it could potentially indicate that.       14:55:01

13   Q  Well, is -- is Beazley suggesting or           14:55:05

14 arguing that somehow International Paper knew        14:55:09

15 about or discovered the employee theft scheme       14:55:15

16 prior to the inception of the Beazley policy on     14:55:19

17 July 1, 2019?                                       14:55:21

18   MR. MURPHY:  Just note my objection to the        14:55:33

19 extent that she's testifying about the discovery    14:55:35

20 related to affirmative defenses.                    14:55:39

21   Q  You may answer.                                14:55:47

22   A  Can you repeat your question, please?          14:55:53

23   Q  Does Beazley have any evidence to support      14:55:55

24 the contention that International Paper knew or      14:55:58

25 discovered the employee theft scheme prior to the   14:56:01

1     inception of the Beazley policy on July 1, 2019?                    14:56:04

2          MR. MURPHY:  Same objection.  You can                          14:56:08

3     answer.                                                             14:56:09

4      A  Not at this time.                                               14:56:09

5      Q  The next paragraph on Page 16 says IP was                       14:56:18

6     aware of the scope of work performed by DGS and                     14:56:22

7     Mid-South prior to inception of a policy.  IP knew                  14:56:28

8     that there was a substantial markup associated                     14:56:31

9     with the DGS and Mid-South work and characterized                  14:56:36

10    Mid-South as a middleman.  See, for example, the                   14:56:40

11    February 11th, 2019, Brown email to Jag.                           14:56:42

12         Do you see that?                                              14:56:45

13     A  Yes, I do.                                                      14:56:46

14     Q  And I'll ask our tech put Exhibit 14 into                       14:56:49

15    the chat, and while he's doing that, let me ask                    14:56:56

16    you:  What's the significance of whether prior to                  14:56:59

17    the policy inception date of July 1, 2019, that if                 14:57:03

18    somebody knew that DGS and Mid-South was making a                  14:57:10

19    substantial markup, why is that relevant from an                   14:57:13

20    insurance coverage standpoint under the Beazley                    14:57:18

21    policy?                                                            14:57:21

22     A  As stated previously, could indicate                           14:57:21

23    potential earlier knowledge.                                       14:57:32

24     Q  Earlier knowledge of what?                                     14:57:35

25     A  Of the activities that are at issue.                           14:57:51

1      Q   Well, let's look at the one document that       14:57:54

2   you cite, which is Exhibit 14.  Do you have that      14:57:58

3   open?                                                  14:58:01

4      A   Yeah.  Just -- yes, I have it open.  It's       14:58:05

5   a two-page document?                                   14:58:13

6      Q   Yes.  This is an email exchange between         14:58:15

7   Matthew Brown, the mill controller at the              14:58:21

8   Maysville mill, and Jag.  And if you go backwards      14:58:27

9   to forwards, Matthew Brown sends an email on           14:58:31

10  Monday, February 11th, at 2:59 p.m., and it says       14:58:35

11  to Jag, Jag -- and this goes from page 1925 to         14:58:40

12  1926 -- I'm doing some research on cost reduction      14:58:48

13  opportunities for Maysville as part of our             14:58:52

14  $450 million cost reduction initiative and had a       14:58:55

15  few questions about our ASA purchases.  I              14:59:00

16  understand that we purchase our ASA through DGS,       14:59:03

17  who is basically a middleman for the chemical          14:59:06

18  between us and Nalco.  I also understand that the      14:59:09

19  markup DGS receives for ASA is fairly significant.     14:59:11

20  Is there a particular reason that we purchase our      14:59:16

21  ASA through DGS rather than directly for Nalco?        14:59:18

22  Is there anything preventing us from purchasing        14:59:22

23  directly through Nalco to eliminate the markup?        14:59:26

24      Do you see that?                                   14:59:29

25      A   Yes, I do.                                     14:59:30

1    Q   Okay.  And Jag responds at 4:14 p.m.,                14:59:31

2    Matt, let me review the price points and revert         14:59:36

3    back to you.  Global Sourcing has been tasked with       14:59:39

4    increasing the diversity spend and giving the            14:59:43

5    primary incumbent (in this case, Nalco) an               14:59:46

6    additional year in contract.  Do we plan to keep         14:59:50

7    the Nalco product for the near foreseeable future?       14:59:53

8    Thanks.                                                  14:59:56

9         And then in response, Matthew Brown                 14:59:56

10   responds, Jag, I completely understand and support      15:00:03

11   the task to increase diversity spend; however,           15:00:06

12   unless there is a distinct benefit that DGS is           15:00:10

13   providing, we are interested in obtaining the best       15:00:14

14   possible price for this product.  If there is a          15:00:17

15   benefit that justifies the added expense, please         15:00:19

16   help us understand what it is so we can discuss          15:00:22

17   locally.  At this point, I do not see us making a        15:00:25

18   wholesale change away from Nalco as long as they         15:00:28

19   are price competitive; however, I cannot commit          15:00:31

20   that they'll be the supplier over the long term.         15:00:34

21        Do you see that?                                    15:00:37

22   A   Yes, I do.                                           15:00:38

23   Q   Okay.  So how does this email exchange               15:00:40

24   demonstrate that Mr. Brown might know that Jag is        15:00:49

25   stealing from the company by doing business              15:00:53

1    unbeknownst to anybody with his brother's company,        15:00:56

2    DGS and Mid-South, and having money funneled back        15:01:00

3    from those contracts to Jag?                             15:01:03

4         MR. MURPHY:  Objection as to form.                  15:01:10

5      A  We have not stated what you just stated             15:01:11

6    with respect to this email.                              15:01:32

7      Q  Well, again, do you have any evidence to            15:01:33

8    support the notion that anybody at IP other than         15:01:39

9    Jag knew about the employee theft scheme that's          15:01:44

10   the subject of this coverage claim prior to the          15:01:49

11   inception of the Beazley policy on July 1, 2019?         15:01:52

12     A  I would just defer to our interrogatory             15:02:12

13   response on that.                                        15:02:23

14     Q  Go back to the settlement for $15 million           15:02:24

15   that we talked about earlier today.  That was            15:02:37

16   Exhibit 17 --                                            15:02:41

17     A  Yes.                                                15:02:46

18     Q  -- where in exchange for $15 million, IP            15:02:46

19   gave a release to Jag and Shiv and DGS and               15:02:51

20   Mid-South?  Do you recall that?                          15:02:56

21     A  Yes, I do.                                          15:02:56

22     Q  And we looked at an email exchange where            15:02:57

23   your joint counsel, Mr. Keeley, for Zurich and           15:02:58

24   Beazley stated his, I guess, position on behalf of       15:03:02

25   Beazley and Zurich to IP as to whether or not            15:03:09

| | | |
|---|---|---|
| 1 | there was an objection to him going ahead with the | 15:03:12 |
| 2 | settlement.  Do you recall that discussion? | 15:03:15 |
| 3 | A  From today?  Yes, I do. | 15:03:17 |
| 4 | Q  And did you or anybody at Beazley have any | 15:03:19 |
| 5 | discussions with anybody at Zurich about the | 15:03:26 |
| 6 | propriety of that settlement aside from counsel? | 15:03:30 |
| 7 | MR. MURPHY:  Objection as to form.  I | 15:03:39 |
| 8 | believe that was asked and answered during the | 15:03:40 |
| 9 | last session. | 15:03:42 |
| 10 | A  As previously stated, no. | 15:03:49 |
| 11 | Q  Can you take a look at Exhibit 16? | 15:03:51 |
| 12 | MR. SYLVESTER:  I'll ask that that be put | 15:03:57 |
| 13 | into the chat. | 15:03:58 |
| 14 | (Exhibit 16 was marked for identification | 15:03:59 |
| 15 | and is attached to the transcript.) | 15:04:21 |
| 16 | Q  When you see it in the chat, can you open | 15:04:21 |
| 17 | it? | 15:04:23 |
| 18 | A  Yeah.  It just came up. | 15:04:24 |
| 19 | MR. MURPHY:  I'm downloading it. | 15:04:25 |
| 20 | Q  Tell me when you have it open. | 15:04:41 |
| 21 | A  Okay.  I have it open. | 15:04:43 |
| 22 | Q  For the record, this is a document | 15:04:52 |
| 23 | produced by Zurich, Zurich No. 002434 regarding | 15:04:56 |
| 24 | the proposed settlement.  It's an email from Donna | 15:05:00 |
| 25 | Malcolm to Tracey Haley copied to Terri | 15:05:04 |

| | | |
|---|---|---|
| 1 | Schoenhaar. | 15:05:11 |
| 2 | Did you have any dealings with anybody at | 15:05:13 |
| 3 | Zurich by the name of Donna Malcom, Tracy Haley, | 15:05:15 |
| 4 | or Terri Schoenhaar with regard to this | 15:05:17 |
| 5 | International Paper claim? | 15:05:18 |
| 6 | A  Well, Donna Malcolm was the claim handler | 15:05:22 |
| 7 | for Zurich. | 15:05:30 |
| 8 | Q  I'm sorry.  Say that again.  I interrupted | 15:05:30 |
| 9 | you. | 15:05:32 |
| 10 | A  Donna -- Donna Malcolm was the claim | 15:05:33 |
| 11 | handler at Zurich. | 15:05:39 |
| 12 | Q  Okay.  And how were you aware of that? | 15:05:41 |
| 13 | A  Through emails with counsel. | 15:05:43 |
| 14 | Q  Okay.  And so here's Donna Malcolm's email | 15:05:44 |
| 15 | to others at Zurich, specifically Tracey Haley, | 15:05:52 |
| 16 | and the subject is the restitution/plea deal for | 15:05:59 |
| 17 | International Paper. | 15:06:07 |
| 18 | And she says, hi Tracey.  Wherever you | 15:06:07 |
| 19 | are, I hope you're enjoying yourself.  We have | 15:06:10 |
| 20 | been asked whether we would agree to a | 15:06:13 |
| 21 | restitution/sentencing deal worked out between the | 15:06:15 |
| 22 | U.S. Attorney's Office and the former employee of | 15:06:18 |
| 23 | IP and his half-brother which would essentially | 15:06:21 |
| 24 | necessitate that we waive subrogation. | 15:06:24 |
| 25 | Just a refresher, IP has claimed losses of | 15:06:27 |

| | | |
|---|---|---|
| 1 | 32 million plus resulting from an alleged scheme | 15:06:30 |
| 2 | perpetrated by the principal and his half-brother | 15:06:34 |
| 3 | regarding the provision (or not) of diversity | 15:06:37 |
| 4 | supplier services.  Beazley is primary with a 15 | 15:06:41 |
| 5 | million policy limit and a $1 million deductible; | 15:06:44 |
| 6 | our policy limit is 15 million. | 15:06:49 |
| 7 | The proposal is that the principal and his | 15:06:50 |
| 8 | half-brother would pay between 15 and $16 million | 15:06:53 |
| 9 | in restitution and the U.S. attorney would | 15:06:57 |
| 10 | recommend probation for the latter and two years | 15:06:59 |
| 11 | or less in prison for the principal.  A condition | 15:07:03 |
| 12 | of the agreement would be the dismissal with | 15:07:06 |
| 13 | prejudice of the civil suit IP filed against these | 15:07:10 |
| 14 | individuals and the companies they own.  We have | 15:07:13 |
| 15 | pressed for more details about how the restitution | 15:07:15 |
| 16 | to be paid would be funded (part cash and | 15:07:18 |
| 17 | liquidation of property) but have been given no | 15:07:22 |
| 18 | insight into the extent of the Defendants' assets. | 15:07:26 |
| 19 | The U.S. attorney insists that this is the best | 15:07:29 |
| 20 | deal to be gotten based upon what is known about | 15:07:32 |
| 21 | their holdings in the U.S. (actually the figure | 15:07:35 |
| 22 | being floated is substantially more than what | 15:07:37 |
| 23 | Kroll found when it researched the principal's | 15:07:40 |
| 24 | holdings). | 15:07:43 |
| 25 | We have been deluged with documents | 15:07:45 |

| 1 | provided by the insured and an EUO is continuing | 15:07:49 |
| 2 | but have yet to reach any conclusions regarding | 15:07:52 |
| 3 | coverage.  A couple of questions.  Does recovery | 15:07:55 |
| 4 | need to weigh in on this question?  Do you have | 15:07:58 |
| 5 | any thoughts on whether we should agree?  We are | 15:08:00 |
| 6 | sharing counsel with Beazley.  Here's Mike | 15:08:03 |
| 7 | Keeley's recommendations for Zurich. | 15:08:05 |
| 8 | And then it's redacted. | 15:08:05 |
| 9 | And at the end, it says if you want to | 15:08:08 |
| 10 | know my thoughts, I think we should agree.  Not | 15:08:09 |
| 11 | only does the proposed restitution possibly | 15:08:12 |
| 12 | extinguish any exposure we may have regarding this | 15:08:14 |
| 13 | claim, even if the Defendants have other assets | 15:08:18 |
| 14 | hidden overseas, I think it is magical thinking to | 15:08:21 |
| 15 | assume that we will be able to locate and actually | 15:08:25 |
| 16 | recover them.  Donna. | 15:08:28 |
| 17 | Do you see that language? | 15:08:30 |
| 18 | A  Yes, I do. | 15:08:31 |
| 19 | Q  Do you recall any communications where | 15:08:32 |
| 20 | Zurich indicated based on its analysis of the | 15:08:39 |
| 21 | proposed settlement that the settlement was a good | 15:08:42 |
| 22 | deal and it would be magical thinking to think | 15:08:48 |
| 23 | that they could get any more from the assets of | 15:08:50 |
| 24 | the Defendants, Jag and Shiv, if they didn't agree | 15:08:56 |
| 25 | to the deal? | 15:08:59 |

| | | |
|---|---|---|
| 1 | A   No, I don't recall any discussions with | 15:09:00 |
| 2 | Zurich. | 15:09:08 |
| 3 | Q   So you never spoke to Donna Malcolm at all | 15:09:09 |
| 4 | about this proposed arrangement or settlement with | 15:09:14 |
| 5 | Jag and Shiv and their entities? | 15:09:18 |
| 6 | A   There were joint calls with counsel. | 15:09:20 |
| 7 | Q   So you did have calls that included Donna | 15:09:27 |
| 8 | Malcolm, but counsel was on those calls? | 15:09:34 |
| 9 | A   Correct. | 15:09:38 |
| 10 | Q   Is that right? | 15:09:38 |
| 11 | A   I don't recall if there was any discussion | 15:09:40 |
| 12 | regarding -- | 15:09:45 |
| 13 | MR. MURPHY:  Excuse me.  The witness is | 15:09:46 |
| 14 | instructed not to disclose any attorney-client | 15:09:48 |
| 15 | confidential communications. | 15:09:50 |
| 16 | Q   Yeah.  My question's just a yes or no. | 15:09:53 |
| 17 | You don't have to tell me the substance, but did | 15:09:57 |
| 18 | you participate in calls with Donna Malcolm or | 15:09:59 |
| 19 | other claims people at Zurich where counsel was | 15:10:02 |
| 20 | present and you discussed the International Paper | 15:10:05 |
| 21 | claim? | 15:10:10 |
| 22 | MR. MURPHY:  Objection to the form; asked | 15:10:10 |
| 23 | and answered.  Although I guess I did interrupt | 15:10:12 |
| 24 | the answer, but she started out with yes. | 15:10:18 |
| 25 | A   The answer remains yes. | 15:10:25 |

1    Q  And how much such calls did you have with          15:10:28

2  representatives of Zurich, albeit with counsel           15:10:35

3  present?                                                 15:10:38

4    A  I don't recall a number.                            15:10:38

5    Q  Well, did you have multiple calls with              15:10:42

6  counsel present and representatives of Zurich in         15:10:46

7  attendance on those calls?                               15:10:52

8    A  Again, I don't recall a particular number.          15:10:53

9    Q  Did you have any calls relating                     15:11:04

10  specifically to the proposed settlement with Jag        15:11:09

11  and Shiv with Zurich representatives in attendance      15:11:12

12  and also with counsel in attendance?                    15:11:19

13    MR. MURPHY:  The witness is instructed not            15:11:21

14  to answer to the extent it would disclose any           15:11:23

15  attorney-client communications, and it seems to be      15:11:26

16  infringing upon the attorney-client privilege.          15:11:32

17    THE WITNESS:  I don't recall with respect             15:11:42

18  to that question.                                        15:11:43

19  BY MR. SYLVESTER:                                        15:11:44

20    Q  Could any such calls be reflected in your          15:11:44

21  claims notes?  We can go back and look at them,         15:11:47

22  Exhibit 18.                                              15:12:00

23    MR. SYLVESTER:  I'll ask if Harold would              15:12:01

24  put Exhibit 18 into the chat box.                        15:12:04

25    (Exhibit 18 was previously marked for                 15:12:21

1    identification and is attached to the transcript.)                    15:12:33

2    BY MR. SYLVESTER:                    15:12:33

3        Q   Tell me when you have Exhibit 18 open.                    15:12:33

4        A   I have it open.                    15:12:36

5        Q   Okay.  And so these settlement discussions                    15:13:02

6    were taking place in the summer of 2022 based on                    15:13:04

7    other documents.  Can you turn to your note, claim                    15:13:07

8    note June 13th, 2022, of this exhibit?  It's on                    15:13:13

9    page ending in 00290 of the document.                    15:13:25

10       A   Okay.                    15:13:29

11       Q   Do you have that?                    15:13:29

12       A   Yes.                    15:13:32

13       Q   And I believe it's page numbered five of                    15:13:33

14   the printed out claims notes.                    15:13:37

15           So your note for June 13th says -- and                    15:13:44

16   this is at 5:10 p.m. -- well, let me back up.                    15:13:46

17           There's one at 4:23 p.m.  You have two                    15:13:49

18   notes that day.  At the bottom of Page 5, it says                    15:13:58

19   there have been several communications with the                    15:14:02

20   insured and insured's counsel regarding the                    15:14:04

21   settlements reported proposed by the alleged bad                    15:14:06

22   actor employee and his brother.                    15:14:10

23           The insured wanted the carrier's consent                    15:14:11

24   to propose settlements as they would have included                    15:14:13

25   both the criminal case and the civil action, which                    15:14:17

1   is relevant to the insurance claim.  The insured          15:14:19

2   did not have any information on the source of the          15:14:22

3   funds; i.e., cash or liquidation of real estate or         15:14:25

4   other assets.                                              15:14:31

5        The insured wanted to confirm that if it              15:14:33

6   settled, they/it could still pursue the balance of         15:14:36

7   any alleged losses under the crime coverage.               15:14:40

8   Beazley advised it could not agree that the                15:14:45

9   settlement was reasonable.  It would have waived           15:14:47

10  Beazley's potential subrogation rights and                 15:14:50

11  precluded Beazley from pursuing recovery for any           15:14:54

12  potential claim payment.                                   15:14:54

13       We requested to have a financial affidavit            15:14:55

14  of Shiv and his brother, and the insured was not           15:14:58

15  able to provide it.  The insured only reported             15:15:01

16  that the assistant U.S. attorney reported that the         15:15:03

17  proposal would be the best deal he could get.              15:15:06

18       Do you see that language?                             15:15:09

19    A  Yes, I do.                                            15:15:10

20    Q  And was that your understanding at the                15:15:17

21  time of the request for consent that the assistant         15:15:19

22  U.S. attorney was reporting that the $15 million           15:15:23

23  amount was the best deal that could be had in              15:15:29

24  settlement with the claim?                                 15:15:31

25    A  That's what was reported at the time.                 15:15:33

1    Q  The note goes on to say the insured's          15:15:41

2    outside counsel had engaged Kroll and the report   15:15:45

3    of certain findings was only provided in April of  15:15:49

4    2022.  The report date was July 2021.  The report  15:15:51

5    noted about 27 real estate assets of approximately  15:15:55

6    six and a half million owned by Shiv and his        15:15:59

7    brother as of 2021.  There was also concern on      15:16:01

8    behalf of the insured that there may be other       15:16:07

9    entities transferred or purchased under the names   15:16:09

10   of other family members.  Consent of information    15:16:13

11   had been sent January 25th, June 14th, July 20th,   15:16:15

12   and November 15th.  To date, there's been no        15:16:19

13   settlement between the insured.  The insured        15:16:22

14   advised in May they'll participate in a mediation   15:16:25

15   with the former employee and his brother.  The      15:16:29

16   next date for the examination under oath is being   15:16:31

17   finalized for mid July.                             15:16:33

18       You mentioned the Kroll report of assets        15:16:35

19   that was provided by International Paper to          15:16:42

20   Beazley.  Did Beazley do any of its own             15:16:45

21   investigation or hire its own investigator to look  15:16:47

22   into assets available owned by Shiv or Jag to        15:16:52

23   satisfy a recoupment action?                        15:16:59

24   A  Beazley did investigate potential assets.        15:17:01

25   Q  What investigation did Beazley perform           15:17:14

| | | |
|---|---|---|
| 1 | other than looking at the Kroll report that was | 15:17:16 |
| 2 | provided by IP? | 15:17:19 |
| 3 | MR. MURPHY:  Again, the witness is | 15:17:25 |
| 4 | cautioned without disclosing any attorney-client | 15:17:32 |
| 5 | communications. | 15:17:34 |
| 6 | A  Beazley performed similar asset checks. | 15:17:41 |
| 7 | Q  Did Beazley hire an outside entity to do | 15:17:45 |
| 8 | that asset check? | 15:17:49 |
| 9 | A  Yes. | 15:17:50 |
| 10 | Q  And what outside entity was that? | 15:17:53 |
| 11 | A  StoneTurn. | 15:18:03 |
| 12 | Q  Is that the same entity that is an expert | 15:18:05 |
| 13 | witness now in this case for Beazley? | 15:18:10 |
| 14 | A  Yes. | 15:18:13 |
| 15 | Q  Did Beazley ever provide to IP the results | 15:18:20 |
| 16 | of that asset check that it did with StoneTurn? | 15:18:28 |
| 17 | A  No. | 15:18:32 |
| 18 | Q  Why not? | 15:18:34 |
| 19 | MR. MURPHY:  Objection to the extent it | 15:18:43 |
| 20 | calls for a legal conclusion.  Again, don't | 15:18:44 |
| 21 | disclose any attorney-client communications. | 15:18:46 |
| 22 | A  It's part of the claim investigation. | 15:18:49 |
| 23 | Q  Well, you're complaining in your claims | 15:19:07 |
| 24 | note that it took a while for International Paper | 15:19:10 |
| 25 | to provide Beazley with the Kroll report from | 15:19:12 |

1   July 2021 to April 2022, but IP did provide it to          15:19:18

2   Beazley.                                                    15:19:23

3       Why was Beazley not willing to provide its             15:19:24

4   own investigation report to International Paper?            15:19:26

5   Wouldn't that have been helpful for International           15:19:29

6   Paper to evaluate the reasonableness of the                15:19:32

7   settlement?                                                 15:19:35

8       MR. MURPHY:  Objection to the form and the             15:19:36

9   characterization of the Beazley investigation.             15:19:37

10      A  Again, it was part of our claim                     15:19:51

11  investigation.                                              15:19:52

12      Q  Can StoneTurn provide a written report to           15:19:53

13  Beazley regarding the asset investigation of Jag            15:19:58

14  and Shiv and their entities?                                15:20:03

15      A  Yes.                                                 15:20:05

16      Q  And when was that report provided to                15:20:13

17  Beazley by StoneTurn?                                       15:20:21

18      A  I don't -- I don't recall the exact date.           15:20:23

19      Q  Well, how long ago do you recall getting            15:20:25

20  it?                                                         15:20:32

21      A  It was in 2023.                                      15:20:33

22      Q  Are you willing to provide that asset               15:20:41

23  investigation report to International Paper now             15:20:43

24  that we know it exists?                                     15:20:47

25      MR. MURPHY:  The witness is instructed not             15:20:51

1    to answer without consulting with counsel.              15:20:52

2        Q   What did the report tell you about assets       15:21:07

3    available or owned by Jag or Shiv or DGS or             15:21:11

4    Mid-South or related companies?                         15:21:16

5        A   The findings were similar and in line with      15:21:18

6    the Kroll report.                                       15:21:29

7        Q   Well, if that's the case, is there a            15:21:30

8    reason not to provide it to International Paper?         15:21:43

9        MR. MURPHY:  Objection to the extent it             15:21:50

10   calls for a legal conclusion.  The witness should       15:21:51

11   not speculate.                                          15:21:54

12       A   I'm unable to comment on that question.         15:22:05

13       Q   So the StoneTurn report, what entities or       15:22:07

14   persons did it investigate in terms of assets?          15:22:14

15       A   As stated previously, it's in line with         15:22:18

16   the Kroll report.                                       15:22:25

17       Q   Did it investigate all the same entities        15:22:26

18   as well as Jag and Shiv personally?                     15:22:33

19       A   It was in line with the Kroll report.           15:22:37

20       Q   Did you give StoneTurn the Kroll report as      15:22:40

21   part of their base of information to investigate?        15:22:44

22       A   I don't recall if they were provided a          15:22:50

23   copy.                                                   15:22:59

24       Q   If they were, it would be in their files        15:22:59

25   presumably, right?                                      15:23:04

| | | |
|---|---|---|
| 1 | A   Maybe.  I can't really speculate, but -- | 15:23:06 |
| 2 | Q   Well, what did you ask them to do?  What | 15:23:19 |
| 3 | was -- what was their task?  When you sent them | 15:23:22 |
| 4 | out to investigate? | 15:23:26 |
| 5 | A   Potential assets of the third parties | 15:23:27 |
| 6 | identified in the claim. | 15:23:39 |
| 7 | Q   And which parties specifically were they | 15:23:41 |
| 8 | investigating? | 15:23:47 |
| 9 | A   Jag, Shiv, DGS, Mid-South.  I don't recall | 15:23:51 |
| 10 | if there were any others. | 15:24:01 |
| 11 | Q   When you got their report, did you make a | 15:24:04 |
| 12 | note of it in your claims notes? | 15:24:06 |
| 13 | A   I don't recall if there was a note entry | 15:24:08 |
| 14 | at that time. | 15:24:21 |
| 15 | Q   You say it was sometime in 2023 last year | 15:24:21 |
| 16 | that you got this report? | 15:24:26 |
| 17 | A   Yes. | 15:24:27 |
| 18 | Q   By that time, the settlement had already | 15:24:32 |
| 19 | been entered into, right? | 15:24:35 |
| 20 | A   The settlement was previously executed, | 15:24:36 |
| 21 | yes. | 15:24:45 |
| 22 | Q   Why didn't you do this investigation of | 15:24:46 |
| 23 | assets before the settlement was entered into so | 15:24:48 |
| 24 | that you could provide the benefit of that to | 15:24:52 |
| 25 | International Paper before it had to decide | 15:24:56 |

1    whether to enter into the settlement?                    15:24:58

2        A  Well, as previously stated, the results           15:25:00

3    were not dissimilar.                                     15:25:18

4        Q  I understand that, but at that point, the         15:25:19

5    ship had already sailed.  The settlement was            15:25:21

6    already entered into.                                    15:25:24

7            If you were going to do your own                 15:25:26

8    independent assets search, why didn't you do it at      15:25:27

9    a time before the settlement and share the results      15:25:31

10   with IP so that it would have the benefit of that       15:25:33

11   knowledge in terming whether to enter into the          15:25:35

12   settlement or not?  Why did you wait until after        15:25:37

13   the settlement was already done to do that              15:25:40

14   investigation?                                           15:25:41

15       A  The investigation has been ongoing.              15:25:42

16       Q  When did the investigation start?                15:25:51

17       A  When the claim was noticed.                      15:25:54

18       Q  No, I'm talking about when did StoneTurn's       15:26:14

19   asset investigation commence?                            15:26:17

20       MR. MURPHY:  Objection as to form; asked            15:26:19

21   and answered.                                            15:26:21

22       A  I don't recall the date that they began          15:26:24

23   their investigation with regard to StoneTurn.           15:26:26

24       Q  Yeah.  Did StoneTurn's investigation begin       15:26:28

25   before or after the settlement was reached with         15:26:31

| | | |
|---|---|---|
| 1 | Jag and Shiv? | 15:26:34 |
| 2 | A  Well, they said it was in 2023. | 15:26:34 |
| 3 | Q  That's when you said you got the report. | 15:26:43 |
| 4 | Is that when they started work, in 2023, on this | 15:26:46 |
| 5 | investigative report? | 15:26:49 |
| 6 | A  Yes. | 15:26:50 |
| 7 | Q  And so that leads to my question:  Why did | 15:26:54 |
| 8 | you wait until after the settlement was entered | 15:27:04 |
| 9 | into to hire somebody to do an asset investigation | 15:27:06 |
| 10 | rather than doing it before the settlement or | 15:27:11 |
| 11 | while the settlement was being considered so that | 15:27:14 |
| 12 | IP could have the benefit of that work in | 15:27:17 |
| 13 | considering whether to enter into the settlement? | 15:27:21 |
| 14 | MR. MURPHY:  Objection as to form; asked | 15:27:24 |
| 15 | and answered. | 15:27:26 |
| 16 | A  Well, at the time of the settlement, IP | 15:27:26 |
| 17 | had performed its own investigation and also had | 15:27:41 |
| 18 | knowledge of the source of the settlement funds. | 15:27:44 |
| 19 | Q  Go back to your claims notes, if you | 15:27:46 |
| 20 | would. | 15:27:59 |
| 21 | A  Okay.  I have them open. | 15:28:13 |
| 22 | Q  So can you look at the claims note for | 15:28:16 |
| 23 | August 17th, 2022, on Page 3 of the claims notes? | 15:28:24 |
| 24 | That's the page numbered ending in 288. | 15:28:31 |
| 25 | A  Excuse me. | 15:28:37 |

| | | |
|---|---|---|
| 1 | 288.  Okay.  I have it open. | 15:28:52 |
| 2 | Q  Okay.  So this is the indication -- well, | 15:28:55 |
| 3 | August 17th at 3:48 p.m.  It says the claim | 15:28:59 |
| 4 | investigation is continuing at this time.  The | 15:29:04 |
| 5 | insured has sent additional information in April | 15:29:07 |
| 6 | and May 2022 making reference to items contained | 15:29:10 |
| 7 | in about 160,000 of documents.  The second day of | 15:29:13 |
| 8 | the examination under oath of the insured's | 15:29:19 |
| 9 | employee is being finalized for July 2022.  The | 15:29:21 |
| 10 | insured has not received any settlements from the | 15:29:25 |
| 11 | alleged bad actor or his brother.  The insured | 15:29:28 |
| 12 | reported at the end of May that they may proceed | 15:29:31 |
| 13 | with a mediation with the former employee and his | 15:29:33 |
| 14 | brother.  Outcome is pending from the insured. | 15:29:37 |
| 15 | The second EUO is set for August 31st.  There are | 15:29:40 |
| 16 | outstanding questions with respect to coverage and | 15:29:45 |
| 17 | quantum on this matter.  The insured continues to | 15:29:48 |
| 18 | assert its loss is 29 to 32 million. | 15:29:50 |
| 19 | Do you see that? | 15:29:56 |
| 20 | A  Yes, I do. | 15:29:57 |
| 21 | Q  So you knew at that time that a | 15:29:58 |
| 22 | mediation -- it's a settlement mediation between | 15:30:01 |
| 23 | IP and Jag and Shiv is scheduled to take place | 15:30:05 |
| 24 | sometime in the near future as of August 17th, | 15:30:13 |
| 25 | 2022, correct? | 15:30:18 |

1    A  Yes.                                          15:30:18

2    Q  Did Beazley express any interest to          15:30:25

3  participate in that mediation?                     15:30:29

4    A  Beazley didn't have any standing because     15:30:31

5  we had not issued any claim payments at that time. 15:30:38

6    Q  Okay.  So you then enter a claim note on     15:30:41

7  October, October 25th of 2022, on Page 2.  This is 15:30:49

8  the most recent note that you've disclosed in      15:30:54

9  discovery.                                         15:30:57

10       And it says October -- do you have this      15:30:58

11  Page 2 of the document?                           15:31:00

12    A  Yes, I do.                                   15:31:01

13    Q  It says the insured has reported that it     15:31:05

14  is in the process of entering into a settlement   15:31:08

15  agreement with the former employee, his brother,  15:31:10

16  and several of their associated business entities 15:31:12

17  for the amount of $15 million.  This is the amount 15:31:15

18  the U.S. attorney has advised is part of the      15:31:17

19  frozen cash that would be turned over to the      15:31:20

20  insured.  The insured has also requested consent  15:31:22

21  to settle with the former employee and his broker 15:31:25

22  with a full release of the civil action and       15:31:27

23  dismissal of the criminal case.  We have not      15:31:30

24  agreed to the same as current information         15:31:34

25  indicates the settlement is not reasonable, as the 15:31:36

1   former employee, his brother, and several of their          15:31:38

2   associated business entities hold significant real          15:31:42

3   estate assets, at least 7/8 million per the                 15:31:46

4   insured, that could be sold to mitigate any                 15:31:50

5   claimed loss and further reduce any claim.  With a          15:31:52

6   full release, if coverage was confirmed, which it           15:31:55

7   has not, Beazley would be unable to take any                15:31:59

8   recovery actions against either party or the                15:32:01

9   associated businesses.                                      15:32:04

10      So if the -- if the Kroll report showed             15:32:05

11  that there was 7 to $8 million worth of real                15:32:09

12  estate assets and they're agreeing to pay                   15:32:12

13  $15 million, why does that mean that the                    15:32:14

14  settlement is unreasonable since they're paying             15:32:17

15  twice as much as what those real estate assets are          15:32:19

16  valued at?                                                  15:32:23

17      A  Well, as stated previously, the real            15:32:24

18  estate holdings and any other potential assets              15:32:37

19  were not the source of the funding of the                   15:32:40

20  settlement, and the insured entered into a                  15:32:42

21  release, which a -- a full release, which                   15:32:51

22  precluded pursuing any additional recoveries                15:32:54

23  against known or unknown assets.                            15:32:59

24      Q  So do you believe that International Paper       15:33:03

25  should have refused to enter into a settlement              15:33:09

1  unless Jag and Shiv liquidated the 7 to $8 million          15:33:13

2  worth of residential housing properties that they           15:33:19

3  owned that were referred to in the Kroll report?            15:33:22

4       MR. MURPHY:  Objection as to form.                     15:33:28

5       A  We're -- Beazley's referring to the                 15:33:30

6  inability to pursue further assets because of the           15:33:40

7  settlement agreement and its release terms.                 15:33:43

8       Q  But you're saying it's unreasonable                 15:33:48

9  because after the settlement, Jag and Shiv are              15:33:50

10 still going to have those 7 to $8 million of                15:33:53

11 residential housing.  Isn't that why you're saying          15:33:56

12 it's unreasonable?                                          15:33:58

13      A  Well, because of the release, we can't              15:34:07

14 even potentially pursue $1 from those individuals.          15:34:09

15      Q  So are you saying that International               15:34:15

16 should have insisted that Jag and Shiv kick the             15:34:20

17 tenants out of those houses and sell those                  15:34:22

18 properties for whatever they could get and give             15:34:24

19 all that money to International Paper, and if they           15:34:27

20 didn't do that, the settlement was unreasonable?            15:34:29

21 Is that Beazley's position?                                 15:34:32

22      A  Beazley's unable to speak to the occupancy          15:34:36

23 status of those properties, but as stated                   15:34:43

24 previously, because of the settlement terms,                15:34:48

25 there's an inability to pursue those individuals            15:34:51

1    for anything further because of the release that        15:34:55

2    was entered into.                                        15:34:57

3        Q   Right.  But I'm telling you, and if you          15:34:58

4    looked at the record, those are low-income housing       15:35:01

5    brackets.  So are you saying that if Beazley were        15:35:05

6    in charge of the litigation, they would have             15:35:07

7    insisted that all of those tenants get kicked out        15:35:09

8    of their houses and that those properties be sold        15:35:12

9    as part of any settlement, and that absent that          15:35:15

10   action, the settlement's not reasonable?                 15:35:19

11       MR. MURPHY:  Objection to form; asked and            15:35:22

12   answered; compound.  You're free to repeat your          15:35:25

13   answer.                                                  15:35:29

14       A   As I stated previously, we're not able to        15:35:29

15   speak to the occupancy of those properties, but          15:35:38

16   the insured's own asset check indicated the              15:35:48

17   various of those real estate holdings.                   15:35:53

18       Q   And did you understand that those were           15:35:56

19   held in other names other than solely in Jag's           15:35:58

20   name or solely in Shiv's name such that selling          15:36:05

21   them, obtaining a judgment and a lien was going to       15:36:09

22   be practically impossible even if they continued         15:36:11

23   litigation against Jag and Shiv?                         15:36:16

24       MR. MURPHY:  Objection.                              15:36:21

25       Q   Were you aware of that fact?                     15:36:22

| | |
|---|---|
| 1 | MR. MURPHY:  Objection as to form; | 15:36:23 |
| 2 | overbroad; presumes facts not in evidence.  You | 15:36:24 |
| 3 | can answer. | 15:36:29 |
| 4 | A  Beazley's unable to comment on the | 15:36:29 |
| 5 | mechanics of additional pursuit of those assets. | 15:36:37 |
| 6 | Q  So you say in your internal claim note | 15:36:41 |
| 7 | that the settlement is not reasonable, but that's | 15:36:43 |
| 8 | not what you said to IP, right?  What you said to | 15:36:46 |
| 9 | IP was that you wouldn't consent but you wouldn't | 15:36:51 |
| 10 | object, and you reserve your right to say that it | 15:36:57 |
| 11 | was unreasonable?  But here in October of 2022, | 15:37:00 |
| 12 | you made the statement that the settlement is not | 15:37:06 |
| 13 | reasonable. | 15:37:12 |
| 14 | So why the discrepancy between what your | 15:37:12 |
| 15 | internal note says where you're saying | 15:37:16 |
| 16 | definitively the settlement's not reasonable in | 15:37:18 |
| 17 | your communication to your lawyer to IP where all | 15:37:23 |
| 18 | he said was that Beazley was reserving its right | 15:37:26 |
| 19 | to contend that settlement was unreasonable at a | 15:37:30 |
| 20 | later time based on further information? | 15:37:33 |
| 21 | MR. MURPHY:  Objection as to form; | 15:37:37 |
| 22 | compound.  There's six sentences in that | 15:37:39 |
| 23 | question/statement.  You can answer if you | 15:37:47 |
| 24 | understood it. | 15:37:49 |
| 25 | A  Can you repeat what your question is, | 15:37:49 |

1  please?                                              15:37:56

2     Q  Yeah.  Had you made the decision on            15:37:56

3  October 25th of 2022 that the settlement entered     15:37:58

4  into any IP and Jag and Shiv was not reasonable as   15:38:01

5  stated in your internal claim note on Page 2 of      15:38:05

6  Exhibit 18?                                          15:38:09

7     A  Well, the note does state that --              15:38:11

8  indicates that the settlement is not reasonable.     15:38:47

9     Q  And is that Beazley's position right now,      15:38:51

10  that the settlement is not reasonable?              15:38:56

11     A  Yes, as it precludes the pursuit of even      15:38:58

12  $1 further from these individuals.                  15:39:25

13     Q  What is the amount of settlement that IP      15:39:28

14  could have entered into that Beazley would have     15:39:31

15  considered have been reasonable?                    15:39:33

16     MR. MURPHY:  Objection as to form.               15:39:37

17     A  Beazley's unable to comment on that.          15:39:46

18     Q  Well, you say it's unreasonable.  What        15:39:48

19  would have been reasonable?  If IP could have       15:39:50

20  gotten 16 million, would that have been reasonable  15:39:52

21  in Beazley's mind for a settlement of the claim     15:39:57

22  against Jag and Shiv?                               15:40:03

23     MR. SYLVESTER:  Objection as to form.            15:40:05

24     A  Again, I can't -- on behalf of Beazley --     15:40:06

25  advise of a particular number with regards to       15:40:15

| | | |
|---|---|---|
| 1 | reasonableness on this matter. | 15:40:19 |
| 2 | Q  Well, how much are you saying that IP | 15:40:21 |
| 3 | undersold the settlement for?  A million?  Two | 15:40:25 |
| 4 | million?  Five million?  How much more are you | 15:40:28 |
| 5 | saying IP should have gotten in order to have a | 15:40:30 |
| 6 | reasonable settlement? | 15:40:33 |
| 7 | MR. MURPHY:  Objection as to form.  Same | 15:40:37 |
| 8 | question, different words.  She told you she can't | 15:40:38 |
| 9 | give you a number. | 15:40:40 |
| 10 | A  As stated previously, I couldn't give an | 15:40:50 |
| 11 | exact number. | 15:40:52 |
| 12 | Q  Can you give me a general number of how | 15:40:53 |
| 13 | much more you believe IP should have received in | 15:40:55 |
| 14 | settlement that Beazley would have considered it | 15:41:00 |
| 15 | reasonable? | 15:41:02 |
| 16 | MR. MURPHY:  Same objection.  Also | 15:41:06 |
| 17 | mischaracterizes previous testimony. | 15:41:08 |
| 18 | A  I stated previously I'm not able to | 15:41:10 |
| 19 | provide a number. | 15:41:12 |
| 20 | Q  You just know that 15 million is too low, | 15:41:16 |
| 21 | but you can't tell me what the reasonable number | 15:41:19 |
| 22 | is; is that correct? | 15:41:21 |
| 23 | MR. MURPHY:  Objection as to form. | 15:41:23 |
| 24 | A  Again, I'm not able to provide a number | 15:41:25 |
| 25 | with respect to reasonableness. | 15:41:31 |

| | | |
|---|---|---|
| 1 | Q  In these claims notes, the last claim note | 15:41:34 |
| 2 | that's provided, at least the most recent one, is | 15:41:37 |
| 3 | October 25th, 2022.  We just read that into the | 15:41:39 |
| 4 | record.  Did you stop making claims notes after | 15:41:42 |
| 5 | October 25th, 2022? | 15:41:47 |
| 6 | A  No. | 15:41:49 |
| 7 | Q  Have you been making claim notes in this | 15:41:56 |
| 8 | claim file from October of 2022 until the present? | 15:42:01 |
| 9 | A  Yes. | 15:42:04 |
| 10 | Q  How come none of them are disclosed; that | 15:42:14 |
| 11 | is, they're all redacted after that point and | 15:42:21 |
| 12 | basically blacked out? | 15:42:23 |
| 13 | MR. MURPHY:  Objection.  To the extent | 15:42:25 |
| 14 | that would require the witness to disclose any | 15:42:28 |
| 15 | attorney-client communications, strategy in this | 15:42:33 |
| 16 | case, work product, mental impressions, she's | 15:42:38 |
| 17 | cautioned not to respond. | 15:42:41 |
| 18 | MR. SYLVESTER:  I'm sorry.  Did you | 15:42:44 |
| 19 | instruct her not to respond, Gene, or did you | 15:42:46 |
| 20 | caution her in her response? | 15:42:51 |
| 21 | MR. MURPHY:  I cautioned her. | 15:42:52 |
| 22 | MR. SYLVESTER:  Okay.  So she can respond? | 15:42:53 |
| 23 | MR. MURPHY:  She can respond as long as it | 15:42:55 |
| 24 | doesn't disclose any attorney-client | 15:42:58 |
| 25 | communications. | 15:43:01 |

| | | |
|---|---|---|
| 1 | THE WITNESS:  Beazley is unable to respond | 15:43:11 |
| 2 | to that item. | 15:43:13 |
| 3 | BY MR. SYLVESTER: | 15:43:14 |
| 4 | Q  We talked about the change in counsel from | 15:43:15 |
| 5 | Michael Keeley to the Robinson & Kole firm once | 15:43:29 |
| 6 | the litigation started in fall of 2022.  Do you | 15:43:33 |
| 7 | recall that discussion? | 15:43:36 |
| 8 | A  Yes, I do. | 15:43:36 |
| 9 | Q  Michael Keeley had been your counsel on | 15:43:39 |
| 10 | this claim for several years, correct? | 15:43:49 |
| 11 | A  He was our counsel prior to Robinson & | 15:43:50 |
| 12 | Kole. | 15:43:54 |
| 13 | Q  And Michael Keeley was also counsel for | 15:43:54 |
| 14 | Beazley in the Sherwin Williams' employee theft | 15:44:00 |
| 15 | case, was he not? | 15:44:05 |
| 16 | A  I don't -- I don't recall if he was. | 15:44:10 |
| 17 | Q  Was that your case, the Sherwin Williams' | 15:44:20 |
| 18 | case, the employee theft claim? | 15:44:23 |
| 19 | A  No, it was not. | 15:44:25 |
| 20 | Q  You had nothing to do with that case, for | 15:44:26 |
| 21 | that claim, against Beazley for employee theft? | 15:44:29 |
| 22 | A  I was not involved in the handling of that | 15:44:32 |
| 23 | claim. | 15:44:34 |
| 24 | Q  Do you remember who was? | 15:44:35 |
| 25 | A  I think Antonio Trotta. | 15:44:36 |

1    Q  And he was your predecessor on this case,          15:44:56

2  correct?                                                 15:44:59

3    A  Yes.                                                15:44:59

4    Q  Okay.  I just have a couple of final               15:45:03

5  questions about the policy, the Beazley policy, if       15:45:10

6  you would pull that out.                                 15:45:18

7       But before I do, with regard to these              15:45:19

8  claim notes, has Beazley set a reserve for this          15:45:21

9  claim; that is, International Paper's employee            15:45:30

10  theft claim?                                            15:45:36

11     MR. MURPHY:  Let me object.  I'm going to            15:45:41

12  presume that we've objected to the disclosure of        15:45:48

13  any preserved information in this case.  So you're      15:45:51

14  catching me on the spot here.                           15:45:58

15     MR. SYLVESTER:  Well, my question is --              15:46:03

16  first of all, it's just a yes or no question.  Has      15:46:05

17  Beazley set a reserve for this?                         15:46:08

18     MR. MURPHY:  Yes, but that could be going            15:46:12

19  too far.  Whether or not there's a reserve              15:46:14

20  shouldn't matter in terms of the coverage               15:46:17

21  analysis.                                               15:46:19

22       So I'm going to instruct the witness not          15:46:22

23  to answer that question.  It goes beyond --             15:46:25

24     MR. SYLVESTER:  On what basis?                       15:46:28

25     MR. MURPHY:  -- as well.                             15:46:31

| | | |
|---|---|---|
| 1 | MR. SYLVESTER:  I'm sorry.  On what basis | 15:46:33 |
| 2 | are you instructing the witness not to answer on? | 15:46:35 |
| 3 | MR. MURPHY:  It's outside the scope of the | 15:46:38 |
| 4 | notice, and so she was not prepared to answer that | 15:46:39 |
| 5 | question. | 15:46:42 |
| 6 | MR. SYLVESTER:  Right.  But she's also | 15:46:43 |
| 7 | noticed in her individual capacity.  And so I'll | 15:46:44 |
| 8 | ask her in her individual capacity. | 15:46:48 |
| 9 | BY MR. SYLVESTER: | 15:46:50 |
| 10 | Q  Has Beazley set a reserve for this claim, | 15:46:50 |
| 11 | Ms. Ellis? | 15:46:53 |
| 12 | MR. MURPHY:  Give me a moment, Ms. Ellis. | 15:46:58 |
| 13 | I'd prefer you pose your first question of | 15:47:16 |
| 14 | does she know whether they've set a reserve, which | 15:47:19 |
| 15 | probably -- no, I withdraw that. | 15:47:25 |
| 16 | All right.  I'm not comfortable | 15:47:27 |
| 17 | instructing her not to answer, but I'm not going | 15:47:36 |
| 18 | to let this go much farther past the first | 15:47:39 |
| 19 | question.  So she's free to answer in her personal | 15:47:44 |
| 20 | capacity if she knows whether or not Beazley's set | 15:47:47 |
| 21 | a reserve on this matter. | 15:47:53 |
| 22 | THE WITNESS:  Yes. | 15:48:02 |
| 23 | BY MR. SYLVESTER: | 15:48:03 |
| 24 | Q  And whose decision is it as to whether | 15:48:03 |
| 25 | though set a reserve and how much it's set as a | 15:48:09 |

```
1   reserve to this claim?                              15:48:15
2         MR. MURPHY:  Again, this answer is not as    15:48:16
3   a corporate representative.  These are in her own  15:48:18
4   person, individual capacity, correct?             15:48:23
5         Mr. Sylvester, you agree with that,          15:48:26
6   correct?                                           15:48:27
7         MR. SYLVESTER:  Yes, absolutely.             15:48:28
8         MR. MURPHY:  Okay.                           15:48:29
9   BY MR. SYLVESTER:                                   15:48:33
10    Q  You can answer.                               15:48:33
11        MR. MURPHY:  And I'll just object to the     15:48:35
12   overbroad nature of the question, but you can     15:48:36
13   answer to the extent that you know.               15:48:38
14    A  The decisions are made within the claims      15:48:40
15   organization structure.                           15:48:50
16    Q  And is the amount of the reserve set forth    15:48:52
17   in your claims notes?  Albeit the ones that we    15:48:56
18   received are blacked out, but is the amount of the 15:49:05
19   reserve in the claims notes?                      15:49:08
20    A  I don't recall.                               15:49:10
21    Q  What is the amount of the reserve set for     15:49:10
22   this claim by Beazley?                            15:49:15
23        MR. MURPHY:  The witness is instructed not   15:49:17
24   to answer.                                         15:49:19
25        MR. SYLVESTER:  I'm sorry?                   15:49:20
```

| 1 | MR. MURPHY: The witness is instructed not | 15:49:21 |
| 2 | to answer. I'm not going to -- you know, that is | 15:49:23 |
| 3 | going to be subject to a court order. I can't | 15:49:30 |
| 4 | permit her to respond to that. | 15:49:32 |
| 5 | We object to that. It's not relevant to | 15:49:34 |
| 6 | the issues that are set forth in the pleadings. | 15:49:37 |
| 7 | It was not specifically requested in the | 15:49:39 |
| 8 | deposition notice. She is not permitted in either | 15:49:42 |
| 9 | her corporate or individual capacity to respond to | 15:49:49 |
| 10 | that question. | 15:49:51 |
| 11 | MR. SYLVESTER: Well, let me ask this | 15:49:54 |
| 12 | predicate question. | 15:49:55 |
| 13 | BY MR. SYLVESTER: | 15:49:56 |
| 14 | Q  Do you know, Ms. Ellis, what the amount of | 15:49:56 |
| 15 | the reserve is set for this claim by Beazley? | 15:49:59 |
| 16 | MR. MURPHY: You're free to answer. | 15:50:03 |
| 17 | A  Yes. | 15:50:05 |
| 18 | Q  And so by the instruction of your counsel, | 15:50:12 |
| 19 | you could answer the question and give me the | 15:50:25 |
| 20 | number of dollars reserved for this claim, but | 15:50:27 |
| 21 | you're not going to because he's instructing you | 15:50:30 |
| 22 | not to answer; is that correct? | 15:50:32 |
| 23 | MR. MURPHY: Objection; compound, | 15:50:34 |
| 24 | overbroad. You can answer to the extent you | 15:50:37 |
| 25 | understand the question. | 15:50:40 |

1      A   I'm -- Beazley's following the advice of          15:50:41

2   counsel.                                                 15:50:50

3      Q   Okay.  So just to wrap up a couple                15:50:50

4   questions from the policy itself, Exhibit 4.             15:50:54

5          MR. SYLVESTER:  Harold, can you put               15:50:58

6   Exhibit 4 into the chat box, the Beazley policy at       15:51:00

7   issue?                                                   15:51:03

8          (Exhibit 4 was previously marked for              15:51:03

9   identification and is attached to the transcript.)       15:51:35

10     Q   Tell me when you have it open.                    15:51:35

11     A   Sure.  It just popped up.  Let me download        15:51:37

12   it again.                                               15:51:40

13                                                           15:51:41

14         Okay.  I have it open.                            15:52:02

15     Q   Can you turn to the second page that lists        15:52:04

16   the limits of liability for different aspects of        15:52:07

17   the coverage under this policy?                         15:52:10

18     A   Okay.  I'm on Page 2.                             15:52:16

19     Q   Yes.                                              15:52:18

20     A   Of the document.                                  15:52:20

21     Q   For employee dishonesty, the limit of            15:52:21

22   liability is $15 million, correct?                     15:52:24

23     A   Yes, limit per each loss.                         15:52:27

24     Q   Okay.  And there's a $1 million deductible       15:52:31

25   that's also listed.  Is that the limit and the         15:52:34

1   deductible that applies to this claim assuming          15:52:38

2   that it were covered, that that would be the limit      15:52:42

3   of liable for the loss over and above the               15:52:45

4   $1 million deductible?                                  15:52:49

5        A   Yes, that's the limit for a deductible         15:52:51

6   applicable for the employee dishonesty coverage.        15:52:59

7        Q   Okay.  And can you see down below it says      15:53:02

8   expense coverage, $500,000?                             15:53:05

9        A   Yes.                                           15:53:07

10       Q   And there's no deductible on that,             15:53:08

11  correct?                                                15:53:12

12       A   Yes, that's correct.                           15:53:12

13       Q   So just hypothetically, if International       15:53:13

14  Paper had a $20 million loss and had a million          15:53:22

15  dollars of expense in connection with this loss,        15:53:29

16  how much money would be recoverable from Beazley        15:53:31

17  assuming that you agreed with claim was covered?        15:53:33

18       A   The -- the limit would be 15 million,          15:53:37

19  assuming that there was a covered loss under the        15:53:48

20  policy.                                                 15:53:50

21       Q   Okay.  And if they also had incurred a         15:53:50

22  million dollars of expense, would International          15:53:53

23  Paper be able to recover an additional $500,000         15:54:00

24  for its expense?                                        15:54:04

25       MR. MURPHY:  Objection to the hypothetical         15:54:05

1    nature of the question.  You're free to answer.          15:54:07

2        A  Well, under the policy, if a loss is          15:54:11

3    covered under more than one insuring agreement,          15:54:35

4    the maximum payable amount under the policy would          15:54:38

5    not exceed the largest single applicable limit of          15:54:41

6    liability.          15:54:44

7        Q  So in my hypothetical where there's a          15:54:46

8    $20 million loss and a million dollars of expense,          15:54:51

9    what's the total amount of limits of coverage that          15:54:54

10   Beazley has available with respect to this -- that          15:54:57

11   loss?          15:55:01

12       MR. MURPHY:  Same objection.  You can          15:55:03

13   answer.          15:55:04

14       A  15 million.          15:55:05

15       Q  Okay.  Can you turn to the definitions          15:55:09

16   section of this policy for the definition of          15:55:18

17   discovery, which is on page ending in 022, Bates          15:55:26

18   numbered ending in 022?          15:55:34

19       A  Okay.  I have it out.          15:55:36

20       Q  And this is on page ending 022.  It's on          15:55:49

21   Page 3 out of 20 down at the bottom.  And it says          15:55:53

22   discovery or discovered means the moment when any          15:55:53

23   member of the controlled group of the insured          15:55:59

24   first becomes aware of facts which would cause a          15:55:59

25   reasonable person to believe that a loss covered          15:56:02

| | | |
|---|---|---|
| 1 | by this policy has been or will be incurred even | 15:56:04 |
| 2 | though the exact amount or details of loss may not | 15:56:07 |
| 3 | be known. | 15:56:10 |
| 4 | Do you see that? | 15:56:11 |
| 5 | A  Yes, I do. | 15:56:12 |
| 6 | Q  Okay.  And the control group is who has to | 15:56:15 |
| 7 | discover the loss in order for it to trigger this | 15:56:27 |
| 8 | discovery definition, correct? | 15:56:30 |
| 9 | A  Yes. | 15:56:34 |
| 10 | Q  And how is control group defined? | 15:56:41 |
| 11 | A  It's defined on the same page. | 15:56:44 |
| 12 | Q  And what is that definition? | 15:56:52 |
| 13 | A  The policy states control group means a | 15:56:53 |
| 14 | general counsel, human resource, internal audit or | 15:57:00 |
| 15 | risk management departments of the insured or | 15:57:03 |
| 16 | their equivalent. | 15:57:07 |
| 17 | Q  Okay.  And was that definition amended at | 15:57:09 |
| 18 | all in this policy in terms of who constitutes a | 15:57:17 |
| 19 | control group member?  And I would direct your | 15:57:22 |
| 20 | attention if you would to page ending 000415 of | 15:57:29 |
| 21 | this policy? | 15:57:38 |
| 22 | A  What page number is that of the document? | 15:57:39 |
| 23 | Q  Yeah, I'll tell you that in a second. | 15:57:41 |
| 24 | It's 29 of 36. | 15:57:43 |
| 25 | Tell me when you have that definition of | 15:58:01 |

1    amend definition of control group.                          15:58:04

2        A  I have it open.                                      15:58:05

3        Q  Okay.  And you see that it says that                 15:58:06

4    control group means the risk manager of the                 15:58:10

5    insured or their equivalent?                                15:58:12

6        A  Yes, I do.                                           15:58:14

7        Q  And that definition supersedes the                  15:58:17

8    definition that we just looked at on Page 3 of 20,          15:58:21

9    which is Page 022, right?  That definition                  15:58:33

10   including the general counsel, human resource,             15:58:36

11   internal audit or risk management, that's no               15:58:39

12   longer valid; it's just the risk manager of the            15:58:42

13   insured or their equivalent that is the control            15:58:49

14   group for purposes of the discovery definition             15:58:51

15   under this policy; is that right?                           15:58:57

16       A  Yes.                                                 15:58:59

17       Q  Okay.  So if one wants to determine                 15:59:02

18   whether and when the discovery of the alleged              15:59:07

19   employee theft scheme of Jag took place, the               15:59:11

20   discovery is wherever the risk manager of                  15:59:15

21   International Paper became aware of facts which            15:59:20

22   would cause a reasonable person to believe that a         15:59:26

23   loss covered by the policy has been or will be            15:59:28

24   incurred even though the exact amount or details          15:59:31

25   of the loss may not be known; is that right?              15:59:34

1      MR. MURPHY:  Objection as to form.  You     15:59:43

2  can answer.                                     15:59:45

3      A  You were just reading the rest of the    15:59:46

4  discovery language?                             15:59:49

5      Q  Yes.                                     15:59:50

6      A  Yes, that's correct.                     15:59:51

7      MR. MURPHY:  Just so you know, John, I'm    16:00:18

8  sure you're aware of it, but we're at four      16:00:20

9  o'clock.  Keep in mind we have child care       16:00:24

10 considerations here as well.                    16:00:27

11     MR. SYLVESTER:  Yeah.  I have, like, two     16:00:28

12 questions left.                                 16:00:30

13     MR. MURPHY:  Okay.                          16:00:31

14 BY MR. SYLVESTER:                               16:00:32

15     Q  So does Beazley have any evidence or aware 16:00:32

16 of any information that the risk manager of     16:00:35

17 International Paper was aware of the employee   16:00:40

18 theft scheme involving Jag prior to the inception 16:00:42

19 of this policy on July 1, 2019?                 16:00:47

20     A  No, not at this time.                    16:00:50

21     Q  Okay.  And then, finally, can you just go 16:00:58

22 to the definition of the word termination -- well, 16:01:00

23 I guess start with the --                       16:01:13

24     A  What page?                               16:01:18

25     Q  Yeah.                                    16:01:19

| | | |
|---|---|---|
| 1 | A  Of which page? | 16:01:20 |
| 2 | Q  I'm looking for the termination clause. | 16:01:21 |
| 3 | Look at Page 18 of 36 of the PDF. | 16:01:43 |
| 4 | A  Okay.  I have it.  I have that open. | 16:01:57 |
| 5 | Q  It's numbered in ending in 034.  It says | 16:02:04 |
| 6 | this policy shall terminate to any employee as | 16:02:10 |
| 7 | soon as any insured or any member of the control | 16:02:13 |
| 8 | group of the insured not in collusion with the | 16:02:15 |
| 9 | employee acquires knowledge of any unlawful taking | 16:02:17 |
| 10 | of money, securities, or property, or other | 16:02:20 |
| 11 | fraudulent or dishonest act committed by such | 16:02:24 |
| 12 | employee during any term of employment with the | 16:02:27 |
| 13 | insured. | 16:02:29 |
| 14 | And does Beazley have a position as to | 16:02:30 |
| 15 | when this termination of -- with respect to Jag | 16:02:35 |
| 16 | took place, on what date or dates the policy | 16:02:43 |
| 17 | terminated as to Jag which is coverage for | 16:02:54 |
| 18 | employee theft by Jag? | 16:02:57 |
| 19 | MR. MURPHY:  Object to form.  The witness | 16:02:59 |
| 20 | is instructed not to speculate.  This was not | 16:03:01 |
| 21 | clearly identified in the original notice. | 16:03:05 |
| 22 | A  I don't -- can you repeat your question? | 16:03:17 |
| 23 | I'm not sure what you're -- what you're asking. | 16:03:19 |
| 24 | Q  Yeah.  This provision -- I'm just asking | 16:03:21 |
| 25 | whether Beazley has a position as to the | 16:03:23 |

| | | |
|---|---|---|
| 1 | application of this provision as to whether and | 16:03:26 |
| 2 | when this policy terminated as to Jag for employee | 16:03:28 |
| 3 | theft?  Because it says this policy shall | 16:03:31 |
| 4 | terminate as to any employee as soon as the | 16:03:35 |
| 5 | insured or any member of the control group of the | 16:03:37 |
| 6 | insured not in collusion with the employee | 16:03:39 |
| 7 | acquires knowledge of any unlawful taking of | 16:03:41 |
| 8 | money, securities, or property, or other | 16:03:44 |
| 9 | fraudulent or dishonest act committed by such | 16:03:47 |
| 10 | employee during any term of employment. | 16:03:50 |
| 11 | And it goes on to say that policy shall | 16:03:53 |
| 12 | terminate in its entirety upon the occurrence of | 16:03:55 |
| 13 | any of the following, and this has to do with | 16:03:59 |
| 14 | other matters. | 16:04:03 |
| 15 | But -- not relevant here.  I'm just really | 16:04:04 |
| 16 | focused on Section one, and that is does Beazley | 16:04:09 |
| 17 | have a position as to when the employee theft | 16:04:13 |
| 18 | coverage for Jag has an employee terminated based | 16:04:16 |
| 19 | on the facts as known to them through its | 16:04:20 |
| 20 | investigation? | 16:04:24 |
| 21 | MR. MURPHY:  Same objection. | 16:04:28 |
| 22 | A  As stated previously, Beazley's not made a | 16:04:29 |
| 23 | determination with respect to the alleged employee | 16:04:39 |
| 24 | dishonesty. | 16:04:41 |
| 25 | Q  Okay.  At this point, I have no further | 16:04:43 |

| | | |
|---|---|---|
| 1 | questions.  We reserve our rights to recall the | 16:04:51 |
| 2 | witness with regard to questions for which | 16:04:55 |
| 3 | instructions not to answer were given and/or any | 16:05:01 |
| 4 | other basis. | 16:05:03 |
| 5 | We would request copies -- or a copy | 16:05:03 |
| 6 | produced of the StoneTurn asset investigation, | 16:05:07 |
| 7 | which I believe was fairly encompassed within our | 16:05:11 |
| 8 | document request and to which I don't believe it | 16:05:14 |
| 9 | has been produced, and we can follow up in writing | 16:05:17 |
| 10 | with that. | 16:05:22 |
| 11 | But at this point, I thank the witness for | 16:05:22 |
| 12 | her time and attention, and I'll adjourn unless, | 16:05:25 |
| 13 | Gene, you have any questions of the witness. | 16:05:29 |
| 14 | MR. MURPHY:  No questions.  We'll take | 16:05:31 |
| 15 | your request under advisement.  At this point, we | 16:05:33 |
| 16 | consider the deposition concluded and fully | 16:05:41 |
| 17 | reserve these rights to the extent that there's | 16:05:44 |
| 18 | any dispute in that regard. | 16:05:46 |
| 19 | Thank you.  Nothing further. | 16:05:48 |
| 20 | MR. SYLVESTER:  Thanks.  Let me just ask | 16:05:54 |
| 21 | the court reporter if we could have a rough draft | 16:05:55 |
| 22 | within a day, and the normal delivery for the | 16:05:59 |
| 23 | official transcript. | 16:05:59 |
| 24 | COURT REPORTER:  Sure.  Attorney Murphy, | |
| 25 | would you like a rough draft as well? | |

1          MR. MURPHY:  Yes, please.

2          COURT REPORTER:  And would you like an

3     expedite for the final?

4          MR. MURPHY:  What's normal turnaround time

5     for Planet Depos?

6          VIDEOGRAPHER:  Do you mind if I read us

7     off the video record really quick?

8          MR. SYLVESTER:  Yes.

9          MR. MURPHY:  Good idea.

10         VIDEOGRAPHER:  This marks the end of the

11    deposition of Pia Ellis.  We are going off the

12    record at 4:06 p.m.

13         (Off the record at 4:06 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                ACKNOWLEDGMENT OF DEPONENT

2

3            I, PIA ELLIS, do hereby acknowledge that

4    I have read and examined the foregoing testimony,

5    and the same is a true, correct and complete

6    transcription of the testimony given by me and any

7    corrections appear on the attached errata sheet

8    signed by me.

9

10

11

12    _____   _____

13    (DATE)                (SIGNATURE)

14

15

16

17

18

19

20

21

22

23

24

25

1       CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2

3           I, Brooklyn E. Schweitzer, the officer

4    before whom the foregoing deposition was taken, do

5    hereby certify that the foregoing transcript is a

6    true and correct record of the testimony given;

7    that said testimony was taken by me

8    stenographically and thereafter reduced to

9    typewriting under my direction; that reading and

10   signing was not requested; and that I am neither

11   counsel for, related to, nor employed by any of

12   the parties to this case and have no interest,

13   financial or otherwise, in its outcome.

14           IN WITNESS WHEREOF, I have hereunto set my

15   hand and affixed my notarial seal this 16th day of

16   January, 2024.  My commission expires:  May 20th,

17   2026.

18

19

20

21   _____

22   Brooklyn E. Schweitzer, RPR, CRR

23

24

25

**A**

**a1**
107:3
**ability**
50:4, 50:12,
53:14, 68:13,
94:17
**able**
39:9, 46:9,
63:12, 75:22,
102:2, 114:11,
117:25, 119:15,
119:21, 141:6,
150:15, 154:15,
166:14, 169:18,
169:24, 177:23
**about**
7:11, 7:20,
10:3, 10:20,
11:13, 13:10,
14:24, 26:11,
27:13, 28:19,
34:11, 35:4,
39:3, 40:13,
42:16, 45:25,
47:4, 47:5,
47:6, 57:6,
60:1, 60:24,
68:6, 70:25,
72:22, 79:22,
83:12, 83:24,
86:2, 87:10,
87:18, 89:3,
90:1, 90:22,
100:14, 101:7,
104:18, 105:24,
107:25, 108:16,
109:7, 112:21,
113:12, 115:4,
116:3, 116:12,
116:13, 116:14,
117:10, 121:7,
126:2, 135:10,
137:9, 139:16,
140:2, 140:4,
140:8, 140:12,
140:18, 141:8,

141:11, 141:18,
142:2, 142:10,
142:15, 142:19,
144:15, 146:9,
146:15, 147:5,
149:15, 149:20,
151:4, 155:5,
158:2, 160:18,
162:7, 171:4,
172:5
**above**
177:3
**absent**
166:9
**absolutely**
174:7
**abuse**
102:6
**abusing**
102:2
**accept**
84:3, 130:25
**accepted**
91:3, 126:3
**accomplish**
102:2
**according**
78:17, 138:18
**accounts**
16:18, 18:1,
21:5, 23:18,
133:23
**accurate**
114:25
**acknowledge**
96:4, 186:3
**acknowledges**
91:1, 126:4
**acknowledgment**
186:1
**acquires**
182:9, 183:7
**act**
39:12, 182:11,
183:9
**acting**
59:11, 60:25,
94:15

**action**
44:1, 49:13,
51:4, 51:8,
52:7, 66:11,
66:18, 76:23,
153:25, 155:23,
163:22, 166:10
**actions**
23:5, 23:8,
60:20, 61:7,
78:12, 164:8
**activities**
61:16, 62:18,
107:21, 108:14,
109:4, 121:15,
141:24, 143:25
**activity**
54:10
**actor**
153:22, 162:11
**actual**
60:16
**actually**
34:13, 39:1,
95:8, 105:10,
107:12, 108:1,
126:20, 136:5,
141:9, 149:21,
150:15
**added**
124:2, 145:15
**addition**
24:3
**additional**
6:23, 11:17,
11:19, 42:4,
63:21, 69:18,
72:2, 73:14,
73:18, 86:10,
117:3, 120:20,
145:6, 162:5,
164:22, 167:5,
177:23
**address**
37:21, 58:11,
98:7
**addressed**
42:2, 42:19

**addresses**
88:20
**addressing**
37:7, 107:1
**adjourn**
184:12
**admission**
18:20
**admits**
21:2
**advice**
176:1
**advise**
168:25
**advised**
7:18, 154:8,
155:14, 163:18
**advisement**
184:15
**affidavit**
154:13
**affiliates**
59:1, 62:3,
63:23
**affirmative**
12:20, 13:4,
13:10, 13:15,
13:20, 14:9,
14:10, 14:11,
14:12, 14:20,
14:23, 15:2,
15:4, 15:8,
15:12, 15:15,
21:15, 21:21,
21:23, 22:7,
25:3, 25:13,
25:18, 27:5,
27:17, 28:20,
30:15, 30:20,
30:23, 31:8,
34:5, 34:19,
35:8, 35:22,
36:1, 36:9,
42:8, 42:9,
43:17, 43:20,
43:24, 44:14,
58:22, 59:16,
63:19, 64:4,

64:22, 65:20,
65:21, 66:7,
66:16, 76:21,
77:13, 77:17,
77:20, 82:4,
82:5, 82:11,
82:12, 142:20

**affixed**
187:15

**after**
11:20, 12:6,
51:15, 61:8,
61:16, 74:8,
75:17, 76:3,
76:17, 118:21,
122:12, 126:7,
129:2, 129:9,
134:9, 160:12,
160:25, 161:8,
165:9, 170:4,
170:11

**afternoon**
81:22

**again**
7:10, 8:12,
12:4, 18:17,
18:23, 21:18,
23:4, 23:22,
24:10, 29:15,
30:9, 30:25,
31:20, 32:17,
36:20, 37:21,
39:17, 40:9,
42:22, 43:5,
43:16, 44:16,
45:4, 46:25,
50:11, 50:18,
51:20, 53:12,
55:5, 55:20,
58:12, 62:5,
62:9, 63:17,
64:1, 68:10,
74:24, 79:2,
80:9, 81:22,
83:1, 84:20,
87:12, 90:7,
93:2, 97:13,
97:23, 100:16,

101:11, 101:24,
109:3, 109:8,
113:9, 115:1,
115:10, 115:22,
116:6, 121:3,
125:18, 130:13,
132:2, 135:13,
136:10, 138:20,
140:14, 141:12,
142:11, 146:7,
148:8, 152:8,
156:3, 156:20,
157:10, 168:24,
169:24, 174:2,
176:12

**against**
10:18, 11:5,
16:8, 24:15,
40:6, 46:5,
46:22, 51:4,
71:21, 72:8,
73:9, 78:8,
80:4, 80:23,
81:16, 149:13,
164:8, 164:23,
166:23, 168:22,
171:21

**agency**
55:23, 56:6

**agent**
37:1, 37:12,
37:14, 38:4,
38:7, 59:7,
60:5, 60:12

**ago**
6:14, 17:10,
44:24, 46:25,
157:19

**agree**
17:22, 17:25,
31:5, 33:3,
40:24, 40:25,
41:2, 47:19,
49:1, 71:23,
73:11, 76:1,
93:17, 96:23,
148:20, 150:5,
150:10, 150:24,

154:8, 174:5

**agreed**
6:2, 16:15,
163:24, 177:17

**agreeing**
54:20, 164:12

**agreement**
16:7, 16:11,
16:15, 16:16,
17:9, 17:11,
17:19, 18:5,
20:14, 24:1,
24:18, 25:11,
35:21, 44:10,
44:20, 44:22,
47:3, 54:13,
66:22, 67:1,
74:1, 74:12,
76:13, 76:18,
80:11, 80:13,
93:13, 96:9,
104:14, 104:18,
149:12, 163:15,
165:7, 178:3

**agreements**
59:6, 94:13,
100:2

**agrees**
137:13

**ahead**
27:25, 28:1,
48:5, 76:25,
77:1, 117:7,
147:1

**al**
5:5

**albeit**
152:2, 174:17

**alignment**
103:23

**all**
2:5, 5:13,
8:23, 12:17,
15:10, 22:15,
22:24, 31:5,
31:24, 45:20,
64:3, 65:15,
67:24, 72:6,

72:16, 85:21,
86:4, 90:9,
91:1, 94:12,
98:14, 99:16,
100:14, 108:3,
124:7, 126:8,
127:10, 128:3,
128:5, 129:2,
151:3, 158:17,
165:19, 166:7,
167:17, 170:11,
172:16, 173:16,
179:18

**allegation**
50:3

**allegations**
52:20, 60:11,
60:22, 85:22

**alleged**
8:17, 8:18,
15:21, 16:3,
19:2, 19:5,
19:19, 19:24,
22:10, 22:13,
62:8, 62:9,
62:23, 65:1,
74:2, 75:13,
77:11, 78:12,
78:13, 82:18,
105:4, 105:6,
107:9, 108:24,
118:5, 128:5,
128:8, 149:1,
153:21, 154:7,
162:11, 180:18,
183:23

**allow**
76:2

**almost**
33:1

**alone**
59:11, 60:25,
94:15

**along**
5:17, 5:22,
9:9, 26:24

**already**
22:15, 32:10,

34:7, 42:1,
55:25, 77:24,
159:18, 160:5,
160:6, 160:13
**also**
3:18, 13:18,
20:2, 23:6,
27:10, 30:16,
30:19, 55:11,
55:15, 62:23,
72:10, 82:12,
95:6, 97:20,
120:9, 120:10,
122:4, 123:11,
125:4, 144:18,
152:12, 155:7,
161:17, 163:20,
169:16, 171:13,
173:6, 176:25,
177:21
**alternative**
128:24
**alternatively**
81:17
**although**
13:19, 151:23
**always**
37:4
**amend**
180:1
**amended**
179:17
**amendment**
10:18, 11:5,
103:11
**american**
1:10
**amongst**
139:11
**amount**
8:21, 8:24,
47:17, 47:20,
48:18, 48:19,
48:25, 57:2,
57:4, 64:13,
64:15, 65:2,
65:10, 65:15,
67:19, 67:23,

68:8, 71:18,
71:23, 72:3,
72:11, 72:13,
72:15, 73:6,
73:11, 73:15,
73:19, 75:7,
86:14, 86:21,
88:3, 88:17,
95:23, 96:15,
97:2, 120:23,
154:23, 163:17,
168:13, 174:16,
174:18, 174:21,
175:14, 178:4,
178:9, 179:2,
180:24
**amounts**
26:4, 27:14,
28:19, 34:16,
39:24, 46:6,
54:4, 56:10,
65:11, 89:22
**analysis**
86:22, 86:24,
87:1, 87:2,
88:10, 150:20,
172:21
**ancillary**
93:5, 93:25
**another**
10:3, 11:6,
31:11, 35:4,
53:23, 113:23,
117:22, 130:20
**answer**
12:18, 13:12,
16:5, 16:21,
26:14, 28:11,
28:22, 32:6,
33:4, 33:5,
33:8, 34:7,
34:12, 34:22,
39:16, 42:2,
43:17, 56:4,
84:8, 84:11,
90:6, 95:2,
96:24, 109:24,
111:7, 116:10,

116:20, 118:9,
120:14, 121:21,
121:22, 122:11,
124:20, 128:11,
131:24, 132:1,
136:9, 140:12,
142:21, 143:3,
151:24, 151:25,
152:14, 158:1,
166:13, 167:3,
167:23, 172:23,
173:2, 173:4,
173:17, 173:19,
174:2, 174:10,
174:13, 174:24,
175:2, 175:16,
175:19, 175:22,
175:24, 178:1,
178:13, 181:2,
184:3
**answered**
12:10, 22:17,
24:9, 24:24,
29:1, 29:14,
32:16, 32:25,
34:7, 41:16,
42:1, 58:5,
62:21, 63:16,
77:5, 79:1,
81:1, 81:21,
134:23, 147:8,
151:23, 160:21,
161:15, 166:12
**answers**
45:19, 106:7,
110:3, 111:20,
115:18, 122:1
**anticipate**
11:21
**antifoam**
112:22, 112:25,
113:5, 115:5
**antonio**
171:25
**anybody**
7:15, 7:21,
23:12, 23:15,
36:18, 41:12,

41:20, 42:24,
104:4, 134:20,
135:4, 135:10,
135:25, 136:6,
136:14, 136:22,
141:1, 146:1,
146:8, 147:4,
147:5, 148:2
**anyone**
52:20
**anything**
15:19, 15:22,
15:23, 61:12,
68:14, 126:18,
144:22, 166:1
**anyway**
55:11
**anywhere**
57:21, 57:23
**appear**
32:7, 186:7
**applicability**
58:14, 63:19
**applicable**
177:6, 178:5
**application**
33:14, 70:21,
103:25, 183:1
**applies**
25:7, 27:6,
32:13, 32:18,
35:12, 39:8,
55:2, 59:2,
63:25, 131:3,
138:13, 139:6,
177:1
**apply**
26:24, 27:7,
31:12, 35:19,
44:8, 44:21,
59:21, 61:6,
61:25, 62:4,
63:10, 63:14,
63:17
**appreciate**
71:14
**approach**
86:14, 86:21,

88:3, 88:17,
95:23, 96:15,
97:1, 120:23
**appropriate**
49:2, 51:9,
95:9
**approve**
54:16
**approved**
41:7, 54:8,
54:24, 94:14,
101:5, 103:17,
103:24
**approximately**
28:7, 155:5
**april**
155:3, 157:1,
162:5
**aren't**
96:16, 113:7,
130:2
**arguing**
142:14
**argumentative**
68:3, 115:21
**arising**
25:9, 30:6,
31:22, 35:14
**arm**
123:7
**arm-length**
135:7
**arms-length**
116:4, 132:8,
133:3, 134:5,
134:10, 134:15,
135:10, 135:19
**arrangement**
18:15, 19:10,
21:8, 24:7,
90:18, 91:16,
91:17, 120:1,
121:8, 151:4
**arrangements**
86:4, 90:15,
94:11, 95:1
**asa**
107:2, 144:15,

144:16, 144:19,
144:21
**asia**
115:5, 115:8
**aside**
8:20, 147:6
**asked**
12:9, 13:9,
22:17, 24:8,
24:24, 28:25,
29:13, 32:15,
32:25, 34:6,
38:15, 41:15,
42:21, 43:7,
58:5, 62:20,
63:15, 67:22,
70:1, 77:4,
78:25, 80:25,
81:20, 84:4,
134:23, 147:8,
148:20, 151:22,
160:20, 161:14,
166:11
**asking**
20:5, 22:19,
34:11, 37:25,
48:16, 53:3,
57:3, 57:15,
74:6, 75:24,
76:9, 79:22,
88:24, 89:2,
93:17, 110:16,
118:2, 122:25,
136:18, 182:23,
182:24
**aspect**
26:18, 48:6
**aspects**
44:25, 176:16
**assert**
44:14, 63:18,
84:20, 162:18
**asserted**
43:21
**asserting**
35:23, 39:7
**assertion**
15:14, 25:17,

36:1, 36:9,
59:15, 65:25,
66:15, 82:10
**asserts**
21:22, 86:19
**asset**
156:6, 156:8,
156:16, 157:13,
157:22, 160:19,
161:9, 166:16,
184:6
**assets**
66:25, 67:14,
73:25, 74:5,
74:9, 74:24,
75:5, 77:7,
77:9, 78:2,
78:21, 79:6,
80:15, 81:6,
82:3, 83:2,
149:18, 150:13,
150:23, 154:4,
155:5, 155:18,
155:22, 155:24,
158:2, 158:14,
159:5, 159:23,
160:8, 164:3,
164:12, 164:15,
164:18, 164:23,
165:6, 167:5
**assist**
103:16
**assistant**
154:16, 154:21
**associated**
51:8, 56:9,
143:8, 163:16,
164:2, 164:9
**assume**
93:19, 150:15
**assumes**
116:19
**assuming**
54:24, 177:1,
177:17, 177:19
**attached**
12:25, 17:5,
70:14, 85:15,

102:24, 109:18,
122:7, 125:7,
147:15, 153:1,
176:9, 186:7
**attachment**
72:14
**attempted**
20:6
**attendance**
152:7, 152:11,
152:12
**attended**
2:5
**attending**
5:14
**attention**
179:20, 184:12
**attestation**
78:20, 79:5,
79:25
**attorney**
149:9, 149:19,
154:16, 154:22,
163:18, 184:24
**attorney's**
148:22
**attorney-client**
10:22, 151:14,
152:15, 152:16,
156:4, 156:21,
170:15, 170:24
**attorneys**
43:25
**audit**
179:14, 180:11
**august**
109:20, 110:8,
110:17, 111:16,
122:13, 122:21,
122:24, 123:4,
161:23, 162:3,
162:15, 162:24
**authored**
127:11, 127:14,
128:3
**authority**
38:5, 63:6
**authorizing**
38:20

**available**
7:3, 67:14,
68:7, 73:25,
75:6, 79:24,
114:18, 155:22,
158:3, 178:10
**avenue**
3:8, 3:15
**avoid**
32:11, 78:16
**avoiding**
123:12
**aware**
9:16, 10:16,
27:2, 40:20,
40:21, 42:24,
83:1, 113:8,
114:10, 118:10,
130:2, 135:22,
136:11, 138:4,
140:5, 143:6,
148:12, 166:25,
178:24, 180:21,
181:8, 181:15,
181:17
**away**
14:21, 81:14,
92:13, 92:22,
93:6, 145:18

**B**

**back**
13:22, 18:13,
19:14, 21:5,
23:7, 23:17,
24:2, 24:4,
36:16, 37:1,
37:13, 38:6,
38:23, 43:13,
49:12, 54:23,
63:3, 63:9,
71:1, 76:21,
82:12, 85:3,
92:16, 92:25,
93:10, 93:23,
110:13, 122:10,
131:15, 131:20,
131:23, 133:23,

138:20, 142:7,
145:3, 146:2,
146:14, 152:21,
153:16, 161:19
**backwards**
144:8
**bad**
153:21, 162:11
**balance**
154:6
**balsara**
104:12, 104:23,
104:25
**bank**
19:22, 19:25,
20:1, 20:6
**barred**
15:9, 21:24,
25:4, 30:1,
35:9, 44:2,
45:16, 58:24,
64:5, 65:22,
66:8, 77:14,
82:6
**base**
115:5, 158:21
**based**
14:6, 15:16,
36:3, 59:22,
65:1, 65:2,
67:1, 67:12,
77:25, 107:18,
131:1, 149:20,
150:20, 153:6,
167:20, 183:18
**basically**
84:14, 144:17,
170:12
**basis**
21:14, 63:11,
75:2, 77:12,
107:3, 172:24,
173:1, 184:4
**bates**
103:9, 106:5,
112:19, 178:17
**bear**
128:17

**beazley's**
10:11, 11:6,
13:12, 36:11,
39:3, 44:20,
45:7, 47:1,
58:12, 59:18,
62:6, 72:9,
76:18, 77:3,
78:5, 78:9,
78:11, 79:25,
84:4, 89:5,
89:20, 89:21,
90:1, 93:13,
102:16, 111:3,
117:25, 119:21,
130:19, 132:1,
134:13, 134:25,
154:10, 165:5,
165:21, 165:22,
167:4, 168:9,
168:17, 168:21,
173:20, 176:1,
183:22
**became**
180:21
**because**
11:4, 27:21,
28:4, 28:17,
29:7, 30:17,
31:12, 31:16,
37:16, 39:1,
39:9, 52:21,
55:15, 56:8,
56:13, 56:24,
57:7, 57:15,
57:19, 58:2,
60:20, 61:6,
63:5, 65:11,
68:12, 69:12,
76:14, 79:11,
80:20, 97:25,
98:1, 107:10,
108:11, 108:25,
124:10, 126:19,
163:4, 165:6,
165:9, 165:13,
165:24, 166:1,
175:21, 183:3

**becomes**
178:24
**been**
6:4, 9:1, 9:25,
20:2, 20:15,
32:20, 33:3,
40:13, 41:9,
42:2, 42:4,
42:19, 56:11,
59:19, 59:21,
65:6, 69:8,
78:3, 85:6,
85:20, 100:1,
105:6, 112:10,
112:17, 113:21,
115:10, 132:21,
132:25, 133:19,
145:3, 148:20,
149:17, 149:25,
153:19, 155:11,
155:12, 157:5,
159:19, 160:15,
168:15, 168:19,
168:20, 170:7,
171:9, 179:1,
180:23, 184:9
**before**
2:8, 11:12,
51:12, 51:16,
63:22, 68:6,
69:22, 114:13,
118:3, 159:23,
159:25, 160:9,
160:25, 161:10,
172:7, 187:4
**began**
160:22
**begin**
160:24
**beginning**
13:4
**behalf**
3:3, 3:11,
5:22, 18:6,
19:11, 91:2,
121:23, 135:8,
146:24, 155:8,
168:24

**behind**
114:24
**behold**
129:1
**being**
8:24, 19:13,
19:14, 23:17,
37:1, 37:3,
38:8, 55:25,
74:19, 92:1,
92:11, 93:18,
93:23, 94:2,
95:7, 95:8,
95:13, 96:15,
106:8, 116:4,
124:7, 124:15,
127:16, 133:23,
134:2, 140:3,
149:22, 155:16,
161:11, 162:9
**believe**
8:8, 10:10,
23:10, 41:12,
56:19, 57:4,
58:17, 69:11,
80:24, 81:16,
88:7, 97:7,
97:11, 99:5,
108:22, 109:6,
119:10, 119:18,
126:18, 147:8,
153:13, 164:24,
169:13, 178:25,
180:22, 184:7,
184:8
**believed**
67:18, 74:16,
74:17
**believes**
42:9
**believing**
108:10
**below**
96:18, 177:7
**benefit**
15:20, 16:3,
18:10, 18:14,
18:25, 19:5,

19:7, 19:10,
19:18, 19:24,
20:8, 20:20,
21:7, 21:11,
22:5, 24:6,
51:17, 91:22,
92:4, 92:20,
93:5, 93:25,
134:3, 145:12,
145:15, 159:24,
160:10, 161:12
**benefited**
90:18
**benefitted**
23:23, 91:17
**best**
81:10, 145:13,
149:19, 154:17,
154:23
**between**
6:24, 17:12,
31:13, 33:16,
71:3, 83:11,
83:23, 98:12,
100:2, 104:17,
105:8, 120:1,
121:8, 121:19,
139:7, 144:6,
144:18, 148:21,
149:8, 155:13,
162:22, 167:14
**beyond**
77:23, 120:12,
172:23
**bidding**
130:7, 137:5,
137:15, 137:21
**blacked**
170:12, 174:18
**both**
6:11, 10:13,
18:6, 33:15,
34:9, 34:14,
34:16, 34:17,
34:24, 35:1,
72:25, 73:2,
88:15, 89:3,
89:7, 94:8,

94:23, 98:6,
133:5, 135:17,
153:25
**bottom**
17:8, 17:19,
85:17, 86:1,
88:9, 96:2,
96:3, 97:4,
98:10, 106:4,
120:18, 125:21,
137:3, 153:18,
178:21
**box**
12:17, 12:21,
17:3, 70:19,
85:11, 102:21,
109:16, 152:24,
176:6
**brackets**
166:5
**brad**
57:5, 87:15,
88:14
**breached**
66:9, 66:17
**break**
40:14, 40:17,
43:7, 43:8,
49:10, 82:5,
131:14
**breaking**
40:15
**brickell**
3:15
**bring**
123:7
**broadly**
137:19
**broker**
59:7, 60:5,
60:12, 163:21
**brooklyn**
1:25, 2:8,
5:25, 187:3,
187:22
**brother**
36:14, 41:14,
43:2, 97:20,

100:23, 132:15,
132:20, 133:6,
133:17, 134:20,
134:22, 135:6,
135:18, 136:2,
136:4, 136:16,
136:17, 136:24,
138:2, 153:22,
154:14, 155:7,
155:15, 162:11,
162:14, 163:15,
164:1
**brother's**
19:12, 19:14,
20:18, 20:19,
21:3, 23:12,
23:14, 23:17,
36:15, 38:21,
39:10, 39:13,
40:22, 41:4,
41:23, 43:1,
63:2, 63:8,
93:9, 121:13,
134:6, 142:6,
146:1
**brought**
16:9, 24:15
**brown**
143:11, 144:7,
144:9, 145:9,
145:24
**buckets**
34:24
**bulk**
86:12
**bullet**
112:3, 123:5
**bunch**
107:11, 127:24
**business**
23:6, 23:9,
23:10, 23:11,
23:13, 23:19,
40:21, 41:22,
43:1, 75:25,
86:3, 92:14,
92:23, 93:20,
94:6, 94:12,

94:16, 97:8,
97:12, 97:19,
98:1, 98:8,
98:16, 98:19,
98:25, 99:6,
99:9, 99:18,
99:19, 100:19,
116:4, 116:5,
116:15, 116:17,
118:22, 120:1,
121:8, 121:18,
123:8, 130:15,
135:8, 137:14,
138:1, 138:18,
139:19, 145:25,
163:16, 164:2
**businesses**
132:10, 134:17,
137:6, 137:10,
137:20, 164:9
**butler**
47:7

**C**

**calculated**
8:24
**calls**
68:20, 69:14,
75:20, 108:19,
114:1, 124:19,
127:7, 129:10,
141:4, 151:6,
151:7, 151:8,
151:18, 152:1,
152:5, 152:7,
152:9, 152:20,
156:20, 158:10
**came**
137:6, 137:16,
137:19, 147:18
**campti**
107:4
**can't**
11:9, 11:24,
12:4, 12:13,
37:14, 39:2,
42:12, 53:13,
53:25, 58:5,

58:20, 69:9,
69:16, 79:20,
93:12, 94:2,
97:9, 97:23,
101:24, 108:6,
113:6, 116:21,
118:10, 159:1,
165:13, 168:24,
169:8, 169:21,
175:3
**cannot**
145:19
**capacity**
37:24, 173:7,
173:8, 173:20,
174:4, 175:9
**capital**
124:3
**care**
181:9
**career**
37:10
**carrier's**
153:23
**case**
1:7, 5:7, 7:10,
8:3, 9:16, 14:7,
36:23, 38:20,
39:9, 45:6,
45:14, 48:12,
60:3, 63:14,
78:24, 102:8,
124:22, 129:19,
130:21, 145:5,
153:25, 156:13,
158:7, 163:23,
170:16, 171:15,
171:17, 171:18,
171:20, 172:1,
172:13, 187:12
**cases**
90:23, 90:25
**cash**
149:16, 154:3,
163:19
**catching**
172:14
**categories**
30:22

**category**
34:11, 34:12,
35:1
**cause**
63:5, 178:24,
180:22
**caused**
59:7, 60:4,
60:10, 60:25,
62:2, 62:15,
62:17
**caution**
170:20
**cautioned**
156:4, 170:17,
170:21
**certain**
25:19, 140:1,
155:3
**certainly**
34:25
**certainty**
25:1, 38:18,
53:22, 124:22
**certificate**
187:1
**certified**
2:10
**certify**
187:5
**cetera**
82:18, 124:4
**chain**
4:9, 4:12,
4:19, 92:3,
126:6
**chance**
6:15, 40:13,
57:15
**change**
145:18, 171:4
**changes**
6:19
**channels**
94:14, 100:4
**characterization**
157:9
**characterized**
143:9

**characters**
120:2
**charge**
87:9, 166:6
**charged**
86:14, 86:22,
86:25, 87:21,
88:4, 88:18,
89:11, 90:2,
96:15, 120:24
**charges**
24:14, 49:14,
123:13
**charging**
89:16, 95:24,
96:19, 97:2,
110:6, 110:24,
128:2, 131:8
**charlotte**
3:19, 5:12
**chat**
12:17, 12:21,
17:2, 70:19,
85:11, 102:21,
109:16, 122:4,
125:2, 125:4,
125:9, 143:15,
147:13, 147:16,
152:24, 176:6
**check**
13:22, 102:4,
156:8, 156:16,
166:16
**checks**
156:6
**chemical**
26:9, 90:16,
90:21, 103:11,
103:25, 144:17
**chemicals**
26:1, 36:6,
36:21, 39:19,
40:11, 41:6,
87:9, 91:21,
94:16, 94:18,
95:7, 98:13,
99:13, 104:14,
109:11, 115:23,

116:7, 120:7
**child**
181:9
**china**
113:13
**chinese**
114:5
**chose**
52:14
**circumstance**
62:4, 78:13,
80:2
**circumstances**
38:18, 67:25
**cite**
102:15, 130:18,
144:2
**cited**
103:9, 109:13,
110:25, 121:25,
125:19, 127:11,
127:25, 140:6
**citing**
106:6, 110:22
**civil**
24:14, 49:13,
49:16, 49:19,
50:5, 50:12,
50:19, 51:4,
51:8, 149:13,
153:25, 163:22
**claim**
7:21, 8:2, 8:9,
8:16, 8:18,
8:23, 9:20,
10:5, 10:12,
11:7, 11:13,
11:14, 11:23,
13:15, 21:17,
21:22, 21:24,
25:21, 26:8,
26:11, 26:19,
27:3, 27:12,
28:3, 30:22,
32:20, 35:5,
36:2, 37:7,
37:22, 38:17,
39:13, 44:8,

44:25, 47:10,
48:3, 48:7,
48:13, 49:9,
50:4, 52:20,
53:12, 54:3,
54:5, 54:25,
55:4, 55:11,
55:14, 56:1,
57:12, 60:19,
62:1, 62:19,
65:5, 65:6,
81:4, 101:9,
115:24, 146:10,
148:5, 148:6,
148:10, 150:13,
151:21, 153:7,
154:1, 154:12,
154:24, 156:22,
157:10, 159:6,
160:17, 162:3,
163:5, 163:6,
164:5, 167:6,
168:5, 168:21,
170:1, 170:7,
170:8, 171:10,
171:18, 171:21,
171:23, 172:8,
172:9, 172:10,
173:10, 174:1,
174:22, 175:15,
175:20, 177:1,
177:17
**claimed**
8:21, 56:19,
61:15, 65:1,
148:25, 164:5
**claiming**
65:14, 98:20
**claims**
9:6, 9:7, 9:9,
9:11, 15:9,
16:8, 25:4,
29:25, 35:9,
37:9, 43:25,
54:9, 56:10,
57:6, 57:17,
58:24, 64:5,
65:22, 66:8,

71:21, 72:8,
73:9, 76:11,
77:14, 78:8,
82:6, 151:19,
152:21, 153:14,
156:23, 159:12,
161:19, 161:22,
161:23, 170:1,
170:4, 174:14,
174:17, 174:19
**clarifications**
6:20
**clause**
182:2
**clear**
8:20
**clearly**
182:21
**client**
59:5
**close**
11:20, 12:6,
34:21, 41:19
**closes**
9:15
**closing**
58:10
**co-conspirators**
105:4, 128:6,
131:5
**co-conspiring**
140:23
**coates**
87:8, 87:15,
87:18, 87:24,
88:14, 89:3,
90:6
**coatings**
117:11, 117:16
**cole**
3:14
**colleague**
5:23
**colleagues**
5:18
**collusion**
35:17, 59:11,
61:1, 182:8,

183:6
**column**
129:1, 130:7
**come**
54:23, 76:3,
76:17, 86:23,
131:15, 170:10
**comfortable**
173:16
**commence**
160:19
**commenced**
6:13
**comment**
69:9, 69:16,
93:12, 94:2,
97:23, 114:11,
116:21, 117:25,
118:10, 119:9,
119:21, 158:12,
167:4, 168:17
**commercial**
37:15
**commission**
27:11, 27:13,
27:21, 59:8,
60:5, 60:13,
187:16
**commissions**
28:4, 28:18,
30:17, 33:24,
34:2, 91:20
**commit**
145:19
**committed**
182:11, 183:9
**commonwealth**
2:11
**communicate**
9:19, 11:22
**communication**
104:17, 167:17
**communications**
10:22, 83:8,
83:11, 83:23,
150:19, 151:15,
152:15, 153:19,
156:5, 156:21,

**companies**
21:3, 36:13,
41:5, 41:13,
41:23, 43:1,
46:5, 63:2,
63:8, 93:9,
100:22, 102:11,
132:15, 133:5,
133:16, 135:5,
135:17, 136:22,
149:14, 158:4
**company**
1:5, 1:9, 1:11,
5:4, 5:5, 5:20,
5:22, 6:13,
19:12, 19:14,
20:18, 20:19,
23:12, 23:14,
23:17, 36:15,
36:24, 37:11,
37:17, 38:22,
39:11, 39:13,
39:23, 40:6,
40:22, 63:2,
92:14, 92:23,
93:7, 99:22,
99:23, 107:14,
107:23, 121:13,
121:14, 124:12,
127:1, 127:4,
134:6, 134:21,
135:9, 136:1,
136:3, 136:16,
136:17, 136:20,
142:5, 142:6,
145:25, 146:1
**company's**
85:8, 113:23
**compare**
86:24
**compared**
130:9
**compares**
87:19
**competitive**
137:5, 137:15,
137:20, 145:19

170:15, 170:25

**competitors**
98:2
**complained**
142:2
**complaining**
140:2, 141:18,
142:10, 156:23
**complaint**
12:19, 13:6,
43:19, 49:17,
49:19, 50:5,
50:13, 50:19,
85:22
**complaints**
139:16, 139:18,
139:23, 140:1,
140:4, 140:8,
140:10, 140:11,
140:16, 140:18,
140:21, 140:22,
140:25, 141:7,
141:13, 141:15
**complete**
114:8, 114:19,
115:6, 115:14,
119:4, 186:5
**completed**
127:18
**completely**
145:10
**compound**
116:19, 136:9,
166:12, 167:22,
175:23
**comprehensive**
90:18, 91:16
**conceal**
132:7, 133:2,
134:14, 135:1
**concern**
98:7, 155:7
**conclude**
90:21
**concluded**
184:16
**conclusion**
156:20, 158:10
**conclusions**
150:2

**condition**
66:9, 66:17,
149:11
**conditions**
15:10, 21:16,
21:25
**conduct**
22:10, 22:13,
22:21, 23:1,
139:19
**conducted**
1:15, 2:2
**confidential**
151:15
**confirm**
115:8, 154:5
**confirmed**
90:16, 164:6
**conflict**
134:9
**conflicts**
39:23
**connection**
44:15, 55:3,
90:14, 105:18,
177:15
**consent**
44:20, 45:5,
45:8, 45:22,
46:1, 46:2,
47:1, 70:3,
70:9, 70:10,
83:17, 84:4,
84:5, 153:23,
154:21, 155:10,
163:20, 167:9
**consequential**
25:6, 25:9,
29:16, 30:2,
30:4, 30:7,
30:16, 30:19,
31:9, 31:22,
32:3, 32:19,
32:24, 33:13,
33:17, 33:19,
34:4, 34:18,
35:2
**consider**
19:1, 19:3,

32:2, 32:3,
32:21, 32:23,
34:3, 74:21,
184:16
**consideration**
74:10
**considerations**
181:10
**considered**
21:6, 161:11,
168:15, 169:14
**considering**
61:23, 161:13
**considers**
34:17
**consignee**
59:8, 60:6,
60:13
**conspiracy**
128:8
**constitutes**
179:18
**consultant**
54:9
**consulting**
72:22, 158:1
**contained**
162:6
**contend**
43:8, 56:13,
95:11, 95:18,
167:19
**contended**
56:22
**contending**
33:10, 33:12,
45:1, 48:7,
51:24, 52:2,
54:15, 57:18,
58:2, 61:7,
67:8, 68:18
**contends**
21:14
**content**
84:6
**contention**
36:11, 111:3,
119:12, 142:24

contest
83:18
continuation
6:9
continue
72:16, 80:23,
85:24
continued
1:14, 79:16,
80:3, 81:15,
84:20, 139:19,
166:22
continues
5:2, 8:17,
63:18, 112:11,
162:17
continuing
8:25, 9:4,
35:5, 41:17,
43:6, 52:13,
58:12, 64:1,
150:1, 162:4
contract
16:16, 40:3,
63:7, 99:21,
103:11, 104:14,
105:18, 127:1,
134:5, 134:10,
135:19, 145:6
contractor
36:25, 59:9,
60:6, 60:14
contractors
59:23, 59:24,
62:11, 62:24
contracts
17:24, 18:11,
19:11, 19:13,
40:23, 41:5,
86:5, 98:15,
99:6, 99:16,
100:14, 100:20,
102:11, 107:23,
132:8, 133:12,
134:15, 135:2,
135:14, 136:12,
142:6, 146:3
contractual
93:8, 126:5

contribution
124:2
control
41:13, 179:6,
179:10, 179:13,
179:19, 180:1,
180:4, 180:13,
182:7, 183:5
controlled
16:18, 18:1,
21:5, 36:14,
37:12, 43:2,
53:10, 68:16,
97:20, 98:5,
100:22, 132:15,
132:19, 132:23,
133:6, 133:16,
133:24, 134:19,
134:22, 135:6,
135:18, 136:1,
136:3, 136:23,
138:2, 178:23
controller
144:7
controlling
40:6
convened
7:24
convince
19:21
copied
147:25
copies
184:5
copy
20:14, 20:15,
24:17, 158:23,
184:5
corporate
6:12, 94:14,
97:10, 174:3,
175:9
corporation
117:23
correct
13:14, 13:16,
13:17, 13:21,
14:5, 14:18,

15:6, 16:3,
16:6, 24:15,
28:15, 36:10,
48:21, 50:10,
54:6, 54:10,
60:21, 65:5,
65:6, 65:12,
65:13, 65:17,
65:18, 73:3,
73:23, 87:16,
91:5, 92:12,
97:3, 111:5,
111:20, 112:9,
137:17, 138:14,
138:15, 139:2,
151:9, 162:25,
169:22, 171:10,
172:2, 174:4,
174:6, 175:22,
176:22, 177:11,
177:12, 177:8,
181:6, 186:5,
187:6
corrections
186:7
cost
45:11, 46:13,
46:15, 47:12,
48:24, 55:13,
64:10, 99:23,
107:3, 126:7,
126:16, 128:23,
130:8, 144:12,
144:14
costs
25:8, 34:2,
44:1, 44:2,
45:2, 45:16,
47:16, 48:8,
48:11, 51:7,
51:11, 55:1,
55:15, 55:21,
56:1, 56:23,
57:10, 57:16,
58:18
could
8:11, 21:18,
30:9, 40:14,

53:13, 61:25,
63:6, 63:8,
63:14, 67:2,
67:19, 68:16,
69:11, 70:11,
75:17, 78:3,
85:17, 102:8,
102:20, 105:10,
108:15, 127:9,
141:20, 142:12,
143:22, 150:23,
152:20, 154:6,
154:8, 154:17,
154:23, 159:24,
161:12, 164:4,
165:18, 168:14,
168:19, 172:18,
175:19, 184:21
couldn't
25:1, 37:6,
38:18, 53:22,
69:12, 108:21,
124:21, 169:10
counsel
5:14, 6:3, 7:1,
7:16, 7:21,
10:16, 33:2,
42:2, 43:7,
74:7, 146:23,
147:6, 148:13,
150:6, 151:6,
151:8, 151:19,
152:2, 152:6,
152:12, 153:20,
155:2, 158:1,
171:4, 171:9,
171:11, 171:13,
175:18, 176:2,
179:14, 180:10,
187:11
counterfeit
35:20
couple
17:10, 33:1,
42:5, 150:3,
172:4, 176:3
course
23:5, 23:9,

23:10, 23:18,
63:1, 98:16,
98:19, 98:25,
99:6, 99:18,
99:19, 100:19,
116:16, 119:25,
121:8, 121:18,
124:13
**court**
1:1, 5:6, 5:24,
175:3, 184:21,
184:24, 185:2
**cover**
10:4, 10:11,
11:23, 34:2,
105:11, 107:12,
108:4, 108:17,
127:5
**coverage**
8:3, 13:6,
21:17, 21:24,
25:11, 36:2,
38:3, 44:9,
44:10, 44:15,
44:16, 44:19,
44:22, 44:25,
45:6, 47:2,
47:5, 59:5,
59:6, 62:1,
64:22, 66:10,
66:17, 80:12,
121:6, 141:17,
143:20, 146:10,
150:3, 154:7,
162:16, 164:6,
172:20, 176:17,
177:6, 177:8,
178:9, 182:17,
183:18
**covered**
8:9, 8:16,
8:23, 9:22,
11:7, 11:14,
25:10, 27:16,
33:21, 37:14,
38:14, 57:7,
58:2, 64:13,
64:16, 177:2,

177:17, 177:19,
178:3, 178:25,
180:23
**created**
97:16, 97:25,
98:6, 130:23
**creating**
130:14
**credit**
129:10, 129:14
**credited**
51:12
**credits**
126:12, 129:2,
129:9
**crime**
9:2, 37:15,
154:7
**criminal**
24:14, 45:13,
49:14, 52:7,
56:8, 153:25,
163:23
**criticism**
57:25
**crr**
1:25, 187:22
**currency**
35:20
**current**
15:17, 19:17,
163:24
**customer**
111:15, 112:8,
112:14, 123:9
**customers**
112:4, 112:9,
112:12

---
**D**
---

**daley**
3:13, 5:23
**damage**
59:7, 60:3,
60:24, 62:14
**damages**
8:21, 65:23,
66:2, 77:15,

78:12, 78:16,
80:6, 80:24,
81:13, 81:18
**danny**
67:17, 71:4,
71:8
**data**
86:6
**date**
5:9, 11:24,
22:23, 58:20,
77:24, 143:17,
155:4, 155:12,
155:16, 157:18,
160:22, 182:16,
186:13
**dated**
71:7, 103:11,
111:16
**dates**
182:16
**day**
6:16, 83:9,
83:14, 84:1,
85:7, 153:18,
162:7, 184:22,
187:15
**days**
12:2, 59:12,
61:2, 61:16
**deal**
81:10, 127:3,
148:16, 148:21,
149:20, 150:22,
150:25, 154:17,
154:23
**dealing**
41:4, 99:12,
127:4, 134:5,
134:21, 135:3,
136:1, 136:2,
136:19, 136:22,
137:16
**dealings**
148:2
**deals**
101:7, 101:19
**decade**
139:20

**deceive**
98:20
**deceiving**
99:7, 99:19
**december**
6:13, 6:17,
6:21, 6:25,
7:13, 7:24,
11:15, 14:3,
14:7, 86:1
**decide**
121:5, 159:25
**decided**
14:8
**decision**
8:7, 8:14,
9:19, 9:24,
10:4, 10:10,
10:11, 11:6,
11:13, 11:22,
35:4, 36:17,
83:15, 84:2,
84:16, 168:2,
173:24
**decisions**
174:14
**deductible**
47:16, 64:17,
149:5, 176:24,
177:1, 177:4,
177:5, 177:10
**deem**
30:6
**deemed**
64:20
**defendant**
85:7
**defendants**
1:12, 3:11,
149:18, 150:13,
150:24
**defending**
44:7, 48:2,
49:8
**defense**
13:15, 14:10,
14:11, 14:12,
14:13, 15:2,

15:8, 15:13,
15:15, 21:15,
21:21, 21:23,
22:7, 25:4,
25:13, 25:18,
26:17, 26:18,
27:5, 27:17,
28:20, 30:15,
30:21, 30:24,
31:8, 34:5,
34:19, 35:8,
35:9, 35:23,
36:1, 36:9,
43:21, 43:24,
44:11, 44:14,
58:22, 59:16,
63:20, 64:4,
64:22, 65:20,
65:21, 66:1,
66:7, 66:16,
76:22, 77:13,
77:18, 77:20,
82:4, 82:6,
82:11, 82:12

**defenses**
12:20, 13:4,
13:11, 13:20,
14:9, 14:20,
14:23, 15:4,
42:8, 42:9,
43:17, 72:17,
142:20

**defer**
56:15, 87:4,
88:5, 88:25,
90:7, 96:21,
146:12

**defined**
15:24, 179:10,
179:11

**definition**
135:7, 178:16,
179:8, 179:12,
179:17, 179:25,
180:1, 180:7,
180:8, 180:9,
180:14, 181:22

**definitions**
178:15

**definitively**
167:16

**deflect**
140:24

**deflecting**
141:9

**defoamer**
119:1, 119:7

**deliver**
102:12

**delivered**
95:8, 95:14,
109:11, 115:23,
116:9, 120:8,
122:2

**delivery**
184:22

**deluged**
149:25

**demanded**
74:19

**demanding**
123:10

**demonstrate**
15:18, 19:18,
20:11, 21:10,
24:11, 41:20,
73:19, 92:2,
145:24

**demonstrated**
15:20

**demonstrates**
18:24, 72:2,
73:14

**demurrage**
123:13

**denial**
85:21

**department**
100:6, 138:6,
139:1, 139:2

**departments**
179:15

**deponent**
186:1

**depos**
5:12, 5:25,
185:5

**deposition**
1:14, 2:1, 5:3,
5:13, 6:9, 6:24,
7:10, 7:17,
7:19, 7:25,
9:13, 74:7,
79:3, 175:8,
184:16, 185:11,
187:4

**depositions**
10:7, 10:9,
10:14, 11:17,
117:4

**describe**
7:5

**describing**
107:6

**desire**
6:19

**detail**
54:3

**detailed**
88:11

**details**
149:15, 179:2,
180:24

**determination**
8:19, 8:22,
44:17, 80:12,
121:6, 183:23

**determine**
21:21, 71:17,
72:11, 100:18,
119:24, 120:2,
180:17

**determined**
62:6

**determining**
63:22, 74:10,
74:21, 119:24

**develop**
119:5

**development**
118:25

**developments**
14:6

**dg**
118:2

**dga**
136:1

**dgj**
114:9

**dgs's**
112:25, 116:21,
119:9, 141:18,
142:2, 142:10

**difference**
29:11, 33:16,
34:8

**different**
30:14, 34:12,
42:2, 45:18,
97:17, 169:8,
176:16

**differently**
78:15, 78:18

**direct**
33:22, 33:23,
39:9, 63:7,
63:12, 79:9,
179:19

**directing**
40:23, 92:14,
92:23, 93:7,
93:20, 121:12

**direction**
187:9

**directly**
26:2, 31:14,
99:12, 144:21,
144:23

**disagreement**
93:15

**disclose**
10:22, 10:24,
23:12, 23:14,
80:15, 133:9,
133:10, 140:25,
151:14, 152:14,
156:21, 170:14,
170:24

**disclosed**
39:24, 135:13,
163:8, 170:10

**disclosing**
156:4

disclosure
78:20, 79:4,
79:25, 80:20,
172:12
discover
179:7
discovered
142:15, 142:25,
178:22
discovery
9:15, 11:16,
11:20, 12:7,
41:19, 50:22,
57:22, 58:10,
141:22, 141:23,
142:8, 142:19,
163:9, 178:17,
178:22, 179:8,
180:14, 180:18,
180:20, 181:4
discrepancy
167:14
discuss
145:16
discussed
151:20
discussing
66:21
discussion
51:16, 147:2,
151:11, 171:7
discussions
147:5, 151:1,
153:5
dishonest
62:18, 63:12,
182:11, 183:9
dishonesty
9:1, 10:1,
59:5, 59:19,
62:7, 121:11,
176:21, 177:6,
183:24
dismiss
71:21, 73:9
dismissal
149:12, 163:23
dismissing
72:7

dispositive
107:16
dispute
54:15, 184:18
dissimilar
160:3
distinct
145:12
distinction
31:13, 31:18
distributed
51:17, 64:11
distribution
86:13, 120:22
distributor
87:9
district
1:1, 1:2, 5:6
dive
45:19
diverse
86:2, 87:20,
88:2, 88:17,
90:2, 92:3,
93:5, 94:1,
94:6, 94:12,
94:15, 97:17,
132:9, 134:16,
137:6, 137:19,
137:25
diversified
4:16, 104:12,
105:1, 111:13,
111:14
diversify
106:24
diversity
86:20, 89:11,
89:23, 90:15,
90:17, 90:22,
90:23, 91:4,
91:8, 91:11,
91:25, 92:7,
92:21, 94:7,
94:10, 94:24,
100:7, 106:12,
106:24, 118:21,
118:23, 123:6,

123:10, 126:5,
137:9, 145:4,
145:11, 149:3
diverting
107:23, 124:12,
127:1
division
1:3, 5:7
djs
109:9
doctrine
82:7, 82:19
document
16:22, 17:16,
17:17, 19:6,
19:8, 20:4,
20:17, 21:1,
45:13, 54:12,
54:19, 70:24,
82:16, 104:3,
104:8, 105:7,
105:17, 105:19,
105:21, 106:21,
107:8, 107:10,
107:20, 108:11,
108:14, 109:4,
109:12, 110:4,
110:7, 110:21,
111:10, 111:19,
111:22, 114:14,
114:17, 114:19,
114:23, 115:12,
115:14, 117:9,
118:4, 118:13,
119:11, 119:17,
120:16, 121:25,
122:11, 123:20,
124:23, 125:19,
128:14, 128:23,
130:14, 130:21,
131:4, 137:2,
138:7, 138:20,
138:23, 139:4,
139:6, 144:1,
144:5, 147:22,
153:9, 163:11,
176:20, 179:22,
184:8

documentation
18:18, 18:19,
18:21, 18:23,
19:4, 19:15,
19:20, 20:11,
23:22, 24:11,
24:12, 134:2
documented
138:18
documents
7:2, 7:3, 7:6,
19:23, 22:16,
22:24, 55:10,
55:12, 55:13,
55:16, 55:25,
102:15, 102:18,
102:19, 106:6,
111:2, 116:24,
122:18, 127:10,
127:11, 127:14,
127:25, 128:7,
128:13, 130:18,
140:6, 149:25,
153:7, 162:7
doing
9:5, 9:8,
23:13, 40:21,
41:22, 42:25,
48:20, 95:12,
95:18, 99:9,
102:5, 107:6,
107:11, 107:12,
107:25, 108:2,
108:3, 108:17,
108:23, 116:5,
116:15, 127:6,
137:13, 138:1,
143:15, 144:12,
145:25, 161:10
dollar
57:1, 57:4,
58:16
dollars
56:22, 58:1,
92:14, 92:15,
127:2, 175:20,
177:15, 177:22,
178:8

**domain**
105:2
**donaldson**
125:1, 125:23,
129:7, 133:15,
133:21
**done**
53:9, 78:15,
78:18, 79:18,
80:22, 81:17,
115:7, 160:13
**donna**
147:24, 148:3,
148:6, 148:10,
148:14, 150:16,
151:3, 151:7,
151:18
**double**
32:14
**doubt**
24:19
**down**
49:10, 112:25,
129:15, 177:7,
178:21
**download**
17:6, 176:11
**downloading**
147:19
**draft**
184:21, 184:25
**drafted**
104:8
**driver**
129:12, 130:1
**duly**
6:4
**during**
16:11, 22:18,
23:5, 24:9,
24:25, 41:16,
42:15, 83:4,
95:10, 98:12,
108:24, 147:8,
182:12, 183:10

**E**

**e&y**
54:3, 54:8,

54:16, 54:25,
55:10
**each**
15:4, 38:17,
45:19, 53:12,
176:23
**earlier**
49:4, 59:18,
66:21, 82:16,
109:3, 141:20,
141:21, 141:22,
141:23, 143:23,
143:24, 146:15
**earning**
108:1
**eastern**
5:10
**easy**
126:6
**effected**
64:9, 69:8
**effort**
49:20, 103:17,
103:24
**eighth**
58:21, 59:15
**either**
22:11, 31:2,
31:12, 59:23,
79:20, 83:16,
93:21, 128:3,
164:8, 175:8
**elevate**
140:25
**eleventh**
14:25, 64:3
**eliminate**
144:23
**ellis**
1:14, 2:1, 5:3,
6:4, 6:8, 40:19,
43:16, 73:17,
85:6, 88:23,
125:9, 131:23,
173:11, 173:12,
175:14, 185:11,
186:3
**else**
15:22, 22:25,

128:7, 134:21,
140:20, 141:1
**email**
4:9, 4:12,
4:19, 4:21,
4:23, 71:7,
71:8, 72:20,
72:21, 104:12,
104:22, 105:1,
105:2, 122:13,
122:21, 122:24,
123:24, 124:9,
124:25, 125:16,
125:21, 125:22,
126:23, 127:22,
129:7, 143:11,
144:6, 144:9,
145:23, 146:6,
146:22, 147:24,
148:14
**emails**
71:1, 148:13
**employed**
187:11
**employee**
8:3, 8:9, 8:15,
9:1, 9:21, 10:1,
11:7, 15:18,
18:10, 19:5,
22:4, 29:7,
29:22, 35:18,
37:2, 37:9,
37:10, 38:8,
39:14, 46:7,
54:5, 59:5,
59:10, 59:12,
59:13, 59:19,
60:16, 60:17,
60:21, 60:25,
61:1, 61:3,
61:8, 62:2,
62:3, 62:7,
62:18, 63:6,
63:12, 93:24,
102:1, 102:7,
105:5, 108:24,
119:25, 121:11,
124:16, 141:2,

142:9, 142:15,
142:25, 146:9,
148:22, 153:22,
155:15, 162:9,
162:13, 163:15,
163:21, 164:1,
171:14, 171:18,
171:21, 172:9,
176:21, 177:6,
180:19, 181:17,
182:6, 182:9,
182:12, 182:18,
183:2, 183:4,
183:6, 183:10,
183:17, 183:18,
183:23
**employee's**
49:13
**employees**
59:1, 62:4,
63:24, 95:4,
100:5, 116:25,
139:15
**employer**
112:4
**employers**
38:5
**employment**
39:2, 182:12,
183:10
**enclosing**
104:13
**encompassed**
184:7
**end**
25:11, 83:9,
83:14, 84:1,
150:9, 162:12,
185:10
**ending**
106:5, 111:25,
112:19, 153:9,
161:24, 178:17,
178:18, 178:20,
179:20, 182:5
**engaged**
124:16, 135:8,
155:2

engages
121:15
enjoying
148:19
enough
42:11, 42:12,
42:14, 71:17
ensuring
95:6, 95:13
enter
68:10, 99:6,
160:1, 160:11,
161:13, 163:6,
164:25
entered
18:11, 66:22,
67:15, 74:25,
75:11, 77:8,
77:21, 78:6,
79:14, 80:18,
82:13, 82:14,
82:20, 94:10,
98:15, 99:17,
100:3, 138:8,
139:5, 159:19,
159:23, 160:6,
161:8, 164:20,
166:2, 168:3,
168:14
entering
80:10, 82:24,
99:20, 142:5,
163:14
entirety
61:24, 183:12
entities
17:14, 29:3,
46:13, 69:7,
73:3, 94:10,
108:14, 108:16,
135:16, 151:5,
155:9, 157:14,
158:13, 158:17,
163:16, 164:2
entitled
106:3
entitlement
65:14

entity
29:22, 31:11,
59:10, 60:7,
60:15, 97:17,
156:7, 156:10,
156:12
entry
159:13
equitable
82:7
equivalent
90:3, 179:16,
180:5, 180:13
errata
186:7
esquire
3:4, 3:5, 3:6,
3:12, 3:13
essentially
84:18, 132:23,
148:23
estate
75:10, 154:3,
155:5, 164:3,
164:12, 164:15,
164:18, 166:17
estoppel
82:8, 82:21
et
5:5, 82:18,
124:4
eugene
3:12
euo
150:1, 162:15
evaluate
8:17, 8:25,
9:5, 35:5,
41:17, 43:6,
52:13, 57:25,
64:1, 103:22,
157:6
evaluated
93:18, 94:3
evaluating
41:18, 44:18,
51:22, 59:18,
62:6, 103:16

evaluation
9:5, 9:8,
66:25, 101:9,
102:13, 120:4,
121:9
even
37:2, 63:10,
74:13, 75:1,
76:14, 77:11,
80:14, 81:8,
92:12, 92:19,
101:20, 105:13,
112:11, 126:11,
150:13, 165:14,
166:22, 168:11,
179:1, 180:24
event
42:17
ever
156:15
everybody
135:3
everything
101:4, 102:4
evidence
11:12, 16:2,
18:9, 18:14,
21:6, 22:20,
22:22, 23:21,
41:20, 42:8,
42:24, 98:3,
105:17, 110:23,
114:14, 116:19,
129:20, 131:4,
135:24, 136:5,
136:14, 136:21,
142:4, 142:23,
146:7, 167:2,
181:15
exact
11:24, 12:4,
16:25, 33:2,
58:8, 58:20,
89:14, 89:19,
95:16, 98:4,
157:18, 169:11,
179:2, 180:24
exactly
51:2

examination
4:2, 6:6,
155:16, 162:8
examined
186:4
example
46:3, 48:12,
55:7, 55:8,
55:21, 55:22,
55:23, 56:6,
67:7, 68:7,
77:10, 78:19,
86:10, 117:8,
143:10
exceed
178:5
excel
128:19
except
25:10
excess
64:13, 72:14
exchange
35:11, 35:16,
35:23, 38:2,
38:25, 39:8,
68:11, 71:22,
73:10, 76:12,
81:11, 86:7,
119:14, 124:14,
131:7, 144:6,
145:23, 146:18,
146:22
excluded
33:12, 33:13,
38:13, 38:25,
45:1, 48:7,
48:14, 56:13,
56:20, 56:22,
57:18, 57:19,
58:17, 64:18
excluding
61:11, 61:18
exclusion
25:6, 25:7,
29:15, 29:20,
29:25, 31:8,
31:12, 31:18,

31:20, 32:4,
32:13, 32:24,
33:17, 35:11,
35:13, 35:24,
37:18, 38:1,
38:2, 38:8,
39:1, 39:4,
39:8, 44:3,
44:4, 44:8,
45:2, 45:17,
47:25, 48:8,
48:9, 48:10,
49:6, 55:2,
55:9, 56:23,
57:13, 58:14,
58:18, 59:1,
59:3, 59:21,
60:23, 61:5,
61:12, 61:21,
62:4, 62:12,
63:17, 63:23,
63:24

**exclusions**
35:18

**exclusively**
137:24, 139:10

**excuse**
15:16, 49:3,
127:17, 151:13,
161:25

**executed**
74:12, 81:23,
81:24, 159:20

**exhibit**
4:6, 4:7, 4:8,
4:9, 4:11, 4:12,
4:14, 4:16,
4:19, 4:21,
4:22, 4:23,
4:24, 4:25,
12:18, 12:22,
12:23, 12:24,
13:12, 17:2,
17:4, 17:6,
19:3, 24:1,
25:14, 43:19,
43:22, 58:23,
64:4, 70:12,

70:13, 70:16,
85:7, 85:14,
88:9, 90:10,
102:21, 102:22,
103:5, 103:7,
105:22, 106:1,
106:2, 106:21,
109:14, 109:15,
109:17, 109:25,
110:1, 110:2,
110:15, 110:17,
111:11, 119:10,
122:3, 122:4,
122:11, 122:15,
122:16, 123:14,
124:24, 125:3,
125:5, 125:6,
125:17, 125:18,
128:16, 130:17,
131:2, 131:3,
131:23, 132:2,
137:4, 138:24,
139:13, 140:13,
143:14, 144:2,
146:16, 147:11,
147:14, 152:22,
152:24, 152:25,
153:3, 153:8,
168:6, 176:4,
176:6, 176:8

**exhibits**
102:23, 122:6

**exists**
157:24

**expect**
75:18, 124:15,
127:2, 127:5,
140:24

**expectations**
75:23

**expedite**
185:3

**expended**
46:21

**expense**
25:11, 44:9,
44:19, 44:22,
45:2, 45:6,

47:2, 47:4,
57:17, 59:6,
145:15, 177:8,
177:15, 177:22,
177:24, 178:8

**expenses**
25:9, 25:10,
35:14, 44:1,
44:2, 44:6,
45:11, 45:14,
45:17, 45:20,
45:21, 45:24,
48:1, 48:8,
48:11, 49:8,
51:16, 55:2,
55:3, 55:15,
56:11, 56:23,
57:7, 57:11,
58:18

**expensive**
126:9

**experience**
37:25, 76:10

**expert**
56:15, 56:18,
56:20, 57:4,
57:23, 58:11,
78:1, 87:4,
87:6, 87:8,
87:12, 87:14,
87:24, 88:6,
88:8, 88:11,
88:12, 88:20,
89:1, 89:5,
96:21, 156:12

**experts**
89:21, 90:5,
90:7

**expires**
187:16

**explain**
67:17, 67:23

**explained**
74:7, 74:16,
78:24

**explaining**
75:5

**exposure**
66:12, 66:20,

76:24, 77:3,
150:12

**express**
163:2

**extension**
103:11, 104:14,
104:18

**extent**
25:5, 30:1,
32:17, 35:10,
52:6, 55:6,
55:21, 58:25,
59:20, 65:22,
66:8, 77:14,
89:9, 128:12,
129:21, 142:19,
149:18, 152:14,
156:19, 158:9,
170:13, 174:13,
175:24, 184:17

**extinguish**
150:12

**extra**
99:23

**F**

**fabrication**
114:8, 114:19,
115:15, 119:5

**facilities**
116:13

**facility**
113:18, 113:23

**fact**
9:15, 18:20,
29:5, 37:2,
37:16, 41:2,
50:8, 71:20,
73:8, 74:22,
92:7, 92:13,
92:22, 93:4,
93:6, 97:19,
97:21, 98:22,
99:10, 99:22,
105:7, 108:2,
116:11, 117:21,
119:16, 124:11,
124:16, 132:7,

132:22, 133:2,
134:14, 135:17,
142:1, 142:9,
166:25
**factor**
59:8, 60:5,
60:13
**facts**
10:2, 11:11,
15:13, 21:22,
22:6, 25:16,
35:24, 38:17,
44:13, 59:14,
65:24, 66:14,
67:24, 77:16,
82:9, 85:21,
114:17, 114:24,
116:19, 167:2,
178:24, 180:21,
183:19
**failed**
65:23, 66:1,
77:15, 78:12,
138:7, 139:4
**failing**
134:8
**failure**
13:15, 139:6
**fair**
41:25, 42:11,
42:14
**fairly**
57:25, 144:19,
184:7
**fall**
30:20, 35:1,
55:9, 57:12,
171:6
**falls**
30:14
**family**
42:17, 135:9,
155:10
**far**
48:12, 52:19,
96:12, 116:8,
140:9, 172:19
**farther**
173:18

**feared**
79:11
**feasible**
74:8
**february**
143:11, 144:10
**fees**
44:1, 44:2,
44:21, 45:2,
45:8, 45:10,
45:16, 45:20,
45:21, 45:24,
46:14, 46:18,
46:20, 47:6,
47:12, 47:17,
47:20, 48:8,
48:11, 48:17,
48:18, 48:24,
51:25, 52:3,
52:6, 52:11,
53:16, 55:1,
55:2, 55:15,
55:22, 56:23,
57:10, 58:18
**few**
6:14, 46:25,
144:15
**fifteenth**
14:12, 14:23
**fifth**
10:18, 11:4,
14:9, 14:22
**figure**
57:3, 58:6,
149:21
**figures**
92:21
**file**
50:21, 128:19,
170:8
**filed**
46:4, 49:17,
50:6, 50:12,
63:3, 149:13
**files**
158:24
**filing**
49:13, 49:14,

49:19, 50:19,
51:8
**filled**
116:1
**final**
8:19, 84:8,
172:4, 185:3
**finalized**
155:17, 162:9
**finally**
181:21
**financial**
15:20, 16:2,
18:10, 18:14,
18:24, 19:4,
19:7, 19:10,
19:18, 19:23,
19:24, 20:8,
20:20, 21:7,
21:11, 22:4,
24:6, 78:20,
78:21, 79:4,
79:25, 80:20,
86:24, 134:2,
154:13, 187:13
**financially**
23:23
**find**
117:21, 141:11
**findings**
155:3, 158:5
**finish**
40:16
**finished**
49:4
**firm**
5:17, 171:5
**firming**
123:8
**first**
6:16, 7:25,
11:14, 13:14,
14:22, 16:11,
17:10, 45:20,
64:12, 66:6,
69:19, 70:18,
71:1, 71:6,
85:9, 90:11,

111:14, 112:3,
112:21, 122:19,
123:3, 128:21,
138:21, 172:16,
173:13, 173:18,
178:24
**first-layer**
73:1
**five**
14:9, 122:20,
123:23, 153:13,
169:4
**fleet**
129:12, 129:19,
129:22
**floated**
149:22
**florida**
3:16
**focus**
111:15
**focused**
61:22, 183:16
**follow**
137:5, 184:9
**followed**
137:21
**following**
14:19, 59:12,
61:2, 117:5,
137:15, 176:1,
183:13
**follows**
6:5, 64:11
**foregoing**
186:4, 187:4,
187:5
**foreseeable**
145:7
**former**
116:25, 148:22,
155:15, 162:13,
163:15, 163:21,
164:1
**forrest**
3:19, 5:12
**forsake**
80:22

forsaken
80:2
forth
45:11, 71:1,
85:22, 110:13,
174:16, 175:6
forthcoming
101:18
forward
10:8, 10:25,
11:18
forwards
144:9
found
100:12, 149:23
four
22:23, 123:11,
181:8
fourteenth
15:1, 82:5,
82:10
fourth
14:25, 35:7,
35:8, 35:22,
64:17, 109:23,
122:20
frame
12:5
fraud
35:20
fraudulent
116:2, 119:17,
121:14, 182:11,
183:9
free
46:13, 166:12,
173:19, 175:16,
178:1
front
90:12, 132:3
frozen
163:19
full
20:3, 67:2,
67:15, 68:10,
81:11, 82:14,
94:4, 163:22,
164:6, 164:21

fully
81:3, 184:16
functional
103:18
funded
149:16
funding
69:2, 69:4,
164:19
funds
17:23, 17:25,
25:2, 28:9,
49:20, 50:1,
50:3, 50:9,
50:16, 50:24,
51:5, 52:25,
53:18, 67:5,
69:12, 83:3,
154:3, 161:18
funnel
63:8
funneled
18:13, 19:14,
21:4, 23:17,
38:23, 92:16,
92:25, 93:10,
93:23, 133:23,
142:7, 146:2
funneling
36:15
further
17:24, 68:12,
68:14, 72:5,
74:1, 74:13,
75:1, 75:12,
77:23, 78:16,
80:13, 81:4,
81:25, 82:17,
164:5, 165:6,
166:1, 167:20,
168:12, 183:25,
184:19
furtherance
141:3
future
9:24, 81:8,
145:7, 162:24

**G**

gamble
123:8, 123:9

gates
3:7, 5:17
gather
55:10
gathered
55:25
gathering
55:13
gave
6:16, 6:21,
22:2, 33:5,
84:9, 146:19
gene
5:21, 34:11,
170:19, 184:13
general
169:12, 179:14,
180:10
generally
7:5, 101:15,
101:20, 140:11
generated
131:4
generating
105:11
georgetown
107:5, 123:7,
123:11, 126:3,
126:17, 130:5,
130:6
getting
32:12, 38:23,
92:20, 93:9,
93:22, 131:9,
157:19
give
11:24, 12:2,
12:4, 58:5,
58:9, 58:20,
61:9, 74:18,
82:25, 158:20,
165:18, 169:9,
169:10, 169:12,
173:12, 175:19
given
7:9, 20:13,
35:15, 52:15,
57:5, 58:10,

67:24, 69:6,
71:16, 72:12,
149:17, 184:3,
186:6, 187:6
gives
129:9
giving
57:22, 130:15,
145:4
global
4:16, 100:5,
104:13, 105:1,
106:24, 111:14,
139:1, 145:3
go
13:3, 13:22,
17:8, 27:25,
28:1, 48:5,
64:3, 74:8,
75:17, 76:25,
77:1, 83:19,
84:24, 90:9,
103:8, 104:11,
106:25, 111:22,
112:18, 115:3,
117:7, 117:8,
118:12, 126:12,
126:16, 128:21,
130:5, 144:8,
146:14, 152:21,
161:19, 173:18,
181:21
goes
72:5, 82:12,
85:23, 91:15,
128:22, 144:11,
155:1, 172:23,
183:11
going
11:23, 21:20,
23:6, 40:13,
42:7, 43:8,
43:10, 58:9,
70:25, 75:15,
76:21, 84:6,
84:25, 99:10,
99:23, 110:13,
124:13, 131:17,

147:1, 160:7,
165:10, 166:21,
172:11, 172:18,
172:22, 173:17,
175:2, 175:3,
175:21, 185:11
**good**
6:8, 6:10,
40:15, 53:19,
127:3, 150:21,
185:9
**goods**
32:8, 32:11,
32:14, 94:8,
94:23, 95:13
**gotten**
34:7, 67:9,
68:16, 73:18,
149:20, 168:20,
169:5
**government**
55:8, 55:12,
55:16, 55:23,
56:6, 56:14,
56:25, 57:8,
57:20, 58:3,
69:11, 69:20
**government's**
69:16
**group**
94:17, 178:23,
179:6, 179:10,
179:13, 179:19,
180:1, 180:4,
180:14, 182:8,
183:5
**gs**
104:25
**guess**
146:24, 151:23,
181:23
**guidelines**
137:5, 137:15,
137:21, 138:19

**H**

**haley**
147:25, 148:3,

148:15
**half**
125:21, 155:6
**half-brother**
148:23, 149:2,
149:8
**hand**
17:12, 17:14,
56:17, 58:8,
187:15
**handled**
37:9
**handler**
148:6, 148:11
**handling**
171:22
**hands**
82:8, 82:21,
82:25
**happen**
37:4, 75:18
**happened**
18:20, 49:15
**happy**
50:14
**harold**
3:18, 70:12,
103:1, 125:4,
152:23, 176:5
**heading**
106:12, 113:12,
118:18
**hear**
45:18
**hearing**
11:1
**held**
117:4, 166:19
**help**
145:16
**helpful**
157:5
**here**
5:2, 5:20,
7:22, 8:6, 8:13,
22:8, 22:21,
33:4, 37:21,
37:23, 40:15,

41:19, 113:18,
114:25, 129:10,
140:6, 140:12,
167:11, 172:14,
181:10, 183:15
**here's**
125:16, 148:14,
150:6
**hereby**
186:3, 187:5
**hereunder**
64:18, 64:20
**hereunto**
187:14
**hi**
148:18
**hidden**
150:14
**higher**
129:4, 130:9
**himself**
18:6, 92:25,
142:7
**hire**
155:21, 156:7,
161:9
**hired**
54:3
**hold**
123:16, 164:2
**holdings**
69:1, 75:10,
149:21, 149:24,
164:18, 166:17
**holds**
121:16
**honest**
101:17, 102:5,
119:19, 119:22
**hope**
148:19
**horn**
67:17, 71:4,
71:8, 74:7,
74:16, 75:4,
78:23
**hour**
40:13

**houser**
100:9, 101:16,
125:1, 125:23,
129:7, 133:15,
133:21
**houses**
165:17, 166:8
**housing**
165:2, 165:11,
166:4
**however**
46:11, 62:23,
145:11, 145:19
**human**
179:14, 180:10
**hundreds**
22:15
**hypo**
107:5
**hypothesize**
108:6
**hypothetical**
38:11, 38:19,
55:19, 68:21,
121:21, 177:25,
178:7
**hypothetically**
93:19, 177:13

**I**

**idea**
12:2, 89:15,
185:9
**identification**
12:25, 17:5,
70:13, 85:15,
102:24, 109:17,
122:7, 125:6,
147:14, 153:1,
176:9
**identified**
9:12, 159:6,
182:21
**identify**
5:15, 22:7,
85:21
**ig**
34:1

implement
119:7
implementation
119:1
importance
126:3, 126:4
important
10:10, 100:17,
101:9
impossible
166:22
impressions
170:16
improper
53:8
improperly
124:12, 127:1
improve
103:18
improvements
86:11, 120:21
inability
74:19, 165:6,
165:25
inappropriate
53:8
inc
1:10, 4:17,
111:14
inception
139:14, 141:16,
141:19, 142:3,
142:16, 143:1,
143:7, 143:17,
146:11, 181:18
incident
62:8, 62:25,
76:8
include
90:17, 91:11
included
25:21, 27:11,
32:17, 32:20,
92:21, 151:7,
153:24
includes
137:10, 137:22
including
12:19, 22:23,

66:10, 66:18,
72:7, 91:18,
102:12, 136:15,
180:10
incomplete
38:11, 121:21
incorrect
112:13
increase
68:8, 75:6,
77:2, 145:11
increased
39:25, 92:7
increases
66:12, 66:19,
76:23, 118:22
increasing
93:5, 93:25,
145:4
incumbent
145:5
incurred
44:6, 45:12,
46:18, 47:21,
48:1, 48:11,
49:7, 49:8,
51:12, 51:25,
52:12, 53:16,
55:3, 55:22,
177:21, 179:1,
180:24
incurring
44:21, 45:5,
45:8, 51:15
indemnity
64:19
independent
59:9, 59:24,
60:6, 60:14,
135:16, 160:8
indicate
15:23, 24:5,
133:11, 142:12,
143:22
indicated
10:17, 13:13,
13:18, 14:2,
16:1, 150:20,

166:16
indicates
163:25, 168:8
indicating
19:23, 34:23,
48:10, 54:12,
67:12, 73:22
indication
95:4, 162:2
indications
109:8
indirect
25:6, 25:9,
29:16, 30:2,
30:4, 30:7,
30:15, 30:19,
31:9, 31:22,
32:2, 32:19,
32:23, 33:11,
33:17, 33:21,
34:3, 34:17,
35:1
individual
37:23, 173:7,
173:8, 174:4,
175:9
individually
6:11
individuals
68:24, 80:14,
81:5, 82:1,
95:5, 95:11,
95:17, 109:9,
126:24, 149:14,
165:14, 165:25,
168:12
inflated
28:16
inform
10:4, 11:6,
58:15, 121:17
information
4:14, 10:8,
10:23, 11:19,
15:17, 19:17,
19:20, 22:3,
22:6, 22:14,
25:16, 35:25,

36:4, 42:6,
44:13, 59:14,
63:21, 65:24,
66:14, 67:13,
71:14, 71:17,
72:2, 73:14,
73:18, 73:21,
77:16, 82:9,
92:1, 101:7,
106:3, 133:7,
134:25, 141:13,
154:2, 155:10,
158:21, 162:5,
163:24, 167:20,
172:13, 181:16
informed
83:5
infringing
152:16
initiative
144:14
injectors
107:4
ins
4:10, 4:13,
4:15, 4:20, 4:21
insight
149:18
insisted
76:16, 79:24,
165:16, 166:7
insists
149:19
installing
107:2
instances
90:15
instead
141:8
instruct
170:19, 172:22
instructed
10:21, 118:8,
151:14, 152:13,
157:25, 174:23,
175:1, 182:20
instructing
173:2, 173:17,

175:21
**instruction**
175:18
**instructions**
184:3
**insurance**
1:9, 1:11, 5:5,
5:22, 6:12, 9:2,
85:8, 100:7,
143:20, 154:1
**insured**
20:10, 23:6,
25:25, 26:1,
26:25, 29:3,
31:1, 32:8,
33:23, 35:15,
44:6, 45:7,
48:2, 49:8,
50:6, 50:12,
50:19, 51:8,
51:13, 59:25,
60:3, 60:25,
62:14, 62:23,
64:10, 64:12,
64:15, 64:16,
64:17, 64:25,
66:23, 67:13,
67:15, 68:10,
74:25, 75:11,
77:8, 77:21,
77:23, 78:1,
80:10, 82:14,
83:1, 84:22,
91:24, 100:3,
116:9, 150:1,
153:20, 153:23,
154:1, 154:5,
154:14, 154:15,
155:8, 155:13,
162:5, 162:10,
162:11, 162:14,
162:17, 163:13,
163:20, 164:4,
164:20, 178:23,
179:15, 180:5,
180:13, 182:7,
182:8, 182:13,
183:5, 183:6

**insured's**
51:23, 53:4,
65:12, 66:24,
67:7, 68:25,
78:11, 92:2,
153:20, 155:1,
162:8, 166:16
**insurer**
73:1, 73:2
**insurers**
46:1, 51:18,
71:14, 71:17,
72:16, 75:17
**insuring**
25:11, 35:20,
44:10, 44:20,
44:22, 47:3,
59:6, 178:3
**intend**
9:18, 58:15,
101:12
**interacting**
95:5
**interactions**
109:9
**interest**
134:9, 163:2,
187:12
**interested**
145:13
**interests**
39:24
**internal**
167:6, 167:15,
168:5, 179:14,
180:11
**internally**
92:11
**international's**
48:6
**internet**
113:24
**interpretation**
12:7
**interrogatories**
7:7, 85:9,
110:22, 111:1,
120:11

**interrogatory**
85:19, 103:10,
105:24, 106:7,
109:23, 110:2,
111:20, 115:18,
120:14, 122:1,
122:10, 131:24,
131:25, 132:1,
140:13, 146:12
**interrupt**
151:23
**interrupted**
148:8
**interruption**
49:3
**inventory**
86:12, 102:12,
120:21, 129:11
**investigate**
114:13, 114:16,
155:24, 158:14,
158:17, 158:21,
159:4
**investigating**
8:2, 120:5,
124:18, 159:8
**investigation**
42:4, 117:19,
118:3, 155:21,
155:25, 156:22,
157:4, 157:9,
157:11, 157:13,
157:23, 159:22,
160:14, 160:15,
160:16, 160:19,
160:23, 160:24,
161:9, 161:17,
162:4, 183:20,
184:6
**investigative**
161:5
**investigator**
155:21
**investment**
53:20, 54:1
**invoices**
25:25, 26:22,
30:13, 32:1,

86:5
**involved**
171:22
**involves**
61:15, 76:11
**involving**
141:24, 181:18
**ip's**
26:11, 30:22,
61:9, 61:25,
90:2, 94:6,
94:9, 94:14,
98:14, 138:6,
139:1
**irs**
24:4, 79:12
**issue**
54:15, 143:25,
176:7
**issued**
27:8, 27:22,
68:11, 117:15,
163:5
**issues**
175:6
**item**
89:9, 90:8,
98:9, 113:6,
113:10, 129:25,
130:4, 137:2,
171:2
**items**
107:1, 162:6
**itself**
21:10, 29:15,
52:14, 119:17,
176:4

---
**J**
---

**jag's**
20:16, 21:3,
22:21, 23:1,
23:11, 23:17,
36:14, 36:15,
39:12, 41:4,
41:14, 41:22,
43:1, 43:2,
61:7, 63:2,

97:20, 100:8,
101:5, 106:13,
106:18, 138:2,
138:13, 139:6,
166:19
**jagannath**
90:16, 90:20,
94:15, 132:6,
133:1, 133:8,
134:3, 134:14
**jane**
3:20
**january**
1:16, 5:9, 8:6,
8:14, 155:11,
187:16
**job**
1:23
**john**
3:4, 5:16,
181:7
**joint**
146:23, 151:6
**judgment**
68:6, 166:21
**july**
142:17, 143:1,
143:17, 146:11,
155:4, 155:11,
155:17, 157:1,
162:9, 181:19
**june**
153:8, 153:15,
155:11
**justifies**
145:15
**justify**
107:24, 130:14
**justifying**
130:6
**jyotika**
104:12

---
### K
---
**k&l**
3:7, 5:17
**keeley**
71:3, 71:7,

71:13, 72:18,
146:23, 171:5,
171:9, 171:13
**keeley's**
150:7
**keep**
145:6, 181:9
**kept**
83:5
**kick**
165:16
**kickback**
36:24, 38:3
**kicked**
37:1, 166:7
**kicks**
37:13, 38:6
**kind**
19:8, 25:10,
31:23, 38:24
**knew**
41:3, 41:12,
41:21, 42:25,
98:1, 142:4,
142:14, 142:24,
143:7, 143:18,
146:9, 162:21
**know**
24:15, 40:14,
40:15, 42:5,
42:15, 42:16,
42:17, 46:3,
46:11, 47:10,
49:10, 54:14,
63:22, 70:21,
74:4, 75:24,
76:1, 76:9,
90:1, 97:21,
100:2, 114:3,
114:9, 118:19,
122:25, 129:19,
129:24, 140:7,
141:7, 145:24,
150:10, 157:24,
169:20, 173:14,
174:13, 175:2,
175:14, 181:7
**knowing**
36:13

**knowingly**
35:15, 36:12
**knowledge**
79:9, 141:20,
141:21, 142:8,
143:23, 143:24,
160:11, 161:18,
182:9, 183:7
**known**
36:14, 74:24,
77:7, 78:2,
81:5, 82:3,
94:19, 100:5,
141:15, 149:20,
164:23, 179:3,
180:25, 183:19
**knows**
173:20
**kole**
5:22, 171:5,
171:12
**kroll**
67:7, 149:23,
155:2, 155:18,
156:1, 156:25,
158:6, 158:16,
158:19, 158:20,
164:10, 165:3
**kuenzinger**
122:14, 122:22,
122:25, 123:24
**kumar**
132:15, 132:20,
132:24

---
### L
---
**laches**
82:8, 82:22
**language**
10:1, 31:17,
37:15, 61:19,
150:17, 154:18,
181:4
**largest**
115:5, 123:9,
178:5
**last**
7:24, 13:9,

14:2, 14:7,
22:18, 22:23,
24:9, 24:25,
33:1, 41:16,
41:25, 42:4,
42:14, 57:15,
70:22, 83:20,
85:13, 85:25,
86:1, 86:4,
86:16, 98:11,
99:3, 103:8,
118:12, 124:23,
128:14, 130:17,
132:5, 137:4,
147:9, 159:15,
170:1
**later**
76:4, 83:18,
84:17, 167:20
**latter**
149:10
**laura**
3:6, 5:18
**law**
5:17
**lawsuits**
50:21
**lawyer**
71:5, 167:17
**lawyers**
50:21, 51:6
**lead**
119:18
**leads**
161:7
**learn**
10:3, 116:25
**least**
164:3, 170:2
**leaves**
14:19, 14:24
**left**
69:22, 85:12,
85:25, 114:4,
181:12
**legal**
44:2, 44:7,
45:2, 45:15,

45:16, 45:21,
46:4, 46:14,
46:17, 46:20,
47:6, 47:12,
47:17, 47:20,
48:3, 48:8,
48:11, 48:13,
48:17, 48:18,
48:24, 49:9,
51:11, 51:25,
52:3, 52:11,
53:16, 55:1,
55:6, 55:14,
56:23, 57:10,
57:11, 58:18,
156:20, 158:10
**legitimacy**
97:10, 97:14
**legitimate**
97:8, 97:12,
107:14, 114:18,
116:4, 116:15,
121:7
**lengthy**
85:19
**less**
46:17, 47:14,
64:10, 136:6,
149:11
**let's**
15:7, 25:3,
35:7, 49:10,
58:21, 64:3,
65:19, 66:6,
102:18, 105:21,
109:12, 111:10,
121:25, 124:23,
144:1
**levels**
123:12
**liability**
64:14, 176:16,
176:22, 178:6
**liable**
25:8, 31:21,
35:14, 44:5,
49:7, 59:4,
60:2, 177:3

**lie**
115:6
**lied**
101:6
**lien**
166:21
**light**
74:19
**liking**
33:8
**limit**
149:5, 149:6,
176:21, 176:23,
176:25, 177:2,
177:5, 177:18,
178:5
**limited**
66:11, 66:18,
68:17, 76:22
**limits**
64:14, 176:16,
178:9
**line**
109:23, 158:5,
158:15, 158:19
**lines**
112:25
**liquidated**
165:1
**liquidation**
67:5, 149:17,
154:3
**list**
105:23, 110:7,
122:12, 128:14,
134:8
**listed**
13:11, 67:6,
118:1, 124:24,
129:1, 129:3,
176:25
**listing**
110:3, 122:18,
123:23
**lists**
126:1, 176:15
**litigate**
79:16, 80:4,

80:23, 81:15
**litigation**
68:16, 68:19,
166:6, 166:23,
171:6
**llp**
3:7, 3:14
**lo**
129:1
**local**
138:6
**locally**
145:17
**locate**
150:15
**long**
145:18, 145:20,
157:19, 170:23
**longer**
67:3, 180:12
**look**
10:8, 11:18,
17:18, 25:3,
35:7, 43:20,
58:21, 65:19,
71:6, 94:4,
97:16, 102:10,
102:18, 105:12,
105:21, 106:4,
106:11, 106:23,
107:13, 107:25,
109:12, 109:14,
110:16, 111:10,
113:11, 114:4,
114:24, 115:9,
117:19, 121:25,
122:10, 124:23,
128:25, 131:25,
132:5, 144:1,
147:11, 152:21,
155:21, 161:22,
182:3
**looked**
16:7, 16:10,
17:9, 24:1,
56:18, 116:23,
122:19, 127:24,
129:8, 131:2,

146:22, 166:4,
180:8
**looking**
17:15, 42:1,
43:16, 82:23,
85:6, 85:20,
92:10, 138:24,
156:1, 182:2
**looks**
10:25, 104:22,
117:5
**loss**
8:21, 8:24,
20:11, 25:10,
29:12, 29:16,
29:24, 31:9,
31:22, 33:19,
33:20, 33:23,
34:12, 35:14,
35:19, 44:5,
44:24, 45:23,
47:25, 49:7,
54:4, 54:17,
55:1, 59:6,
59:19, 60:2,
60:9, 60:20,
60:24, 61:9,
61:15, 62:1,
62:14, 62:17,
64:13, 64:16,
64:18, 65:1,
65:12, 78:13,
162:18, 164:5,
176:23, 177:3,
177:14, 177:15,
177:19, 178:2,
178:8, 178:11,
178:25, 179:2,
179:7, 180:23,
180:25
**losses**
8:18, 31:21,
32:2, 32:4,
32:19, 34:3,
34:4, 34:18,
51:13, 77:11,
148:25, 154:7
**low**
169:20

**low-income**
166:4
**lower**
114:4
**lowest**
126:7, 126:11,
126:16, 129:2,
129:8, 130:8
**lunch**
82:5
**lying**
107:25, 108:16,
116:12, 120:3,
121:7

**M**

**machine**
117:16
**machines**
117:11
**made**
8:7, 8:14,
8:19, 8:22,
9:21, 9:24,
25:20, 25:25,
26:21, 27:1,
27:4, 28:3,
28:8, 28:13,
28:16, 29:3,
29:19, 29:21,
30:5, 30:12,
30:16, 31:1,
31:4, 31:10,
31:14, 31:15,
31:25, 32:8,
35:4, 36:3,
36:4, 36:7,
36:8, 36:20,
36:21, 37:11,
37:16, 39:18,
39:22, 40:1,
40:10, 44:16,
50:4, 52:21,
62:10, 62:24,
63:1, 80:12,
96:10, 96:24,
98:11, 100:1,
139:15, 140:16,

140:18, 141:7,
167:12, 168:2,
174:14, 183:22
**magical**
150:14, 150:22
**majority**
25:20, 25:25,
26:2, 26:5,
26:8, 26:21,
27:4, 27:22,
28:4, 28:5,
28:8, 28:16,
28:17, 29:10,
30:5, 30:13,
30:17, 30:18,
31:1, 31:4,
31:15, 32:12,
32:22, 33:25,
34:1, 91:4,
91:10, 91:12,
91:19, 91:21,
92:6, 97:18
**make**
6:19, 9:18,
11:21, 28:5,
29:7, 29:10,
31:2, 55:13,
56:1, 83:15,
84:2, 84:15,
97:16, 105:12,
107:13, 107:25,
113:7, 124:11,
126:19, 135:21,
136:11, 159:11
**makes**
31:18
**making**
11:13, 28:3,
31:13, 38:22,
54:5, 68:6,
101:4, 115:25,
119:13, 121:5,
143:18, 145:17,
162:6, 170:4,
170:7
**malcolm**
147:25, 148:6,
148:10, 151:3,

151:8, 151:18
**malcolm's**
148:14
**malcom**
148:3
**management**
9:10, 86:12,
102:13, 120:22,
129:11, 179:15,
180:11
**manager**
7:18, 42:18,
180:4, 180:12,
180:20, 181:16
**managers**
9:11
**manufacture**
119:6
**manufactured**
103:19
**manufacturer**
90:16
**manufacturers**
90:21
**manufacturing**
118:25
**many**
37:9, 69:6,
90:15, 91:17,
94:11
**marked**
4:7, 4:8, 4:11,
4:24, 4:25,
12:24, 17:4,
70:13, 85:14,
102:23, 109:17,
122:6, 125:6,
128:15, 147:14,
152:25, 176:8
**marks**
185:10
**markup**
86:8, 86:14,
86:21, 86:25,
87:20, 88:3,
88:18, 89:10,
89:16, 89:22,
90:2, 95:23,

96:18, 97:2,
120:24, 131:9,
143:8, 143:19,
144:19, 144:23
**marvin**
125:1, 125:23,
129:6, 133:15,
133:21
**mary**
3:20, 87:8
**material**
77:25
**materials**
95:3, 114:20,
114:22, 115:2,
115:11
**matt**
145:2
**matter**
5:3, 10:20,
29:8, 32:18,
45:9, 50:8,
51:22, 56:9,
64:2, 64:25,
72:17, 162:17,
169:1, 172:20,
173:21
**matters**
183:14
**matthew**
144:7, 144:9,
145:9
**maximum**
67:19, 178:4
**maxwell**
3:13
**maybe**
119:18, 159:1
**maysville**
144:8, 144:13
**mean**
26:15, 36:7,
42:12, 42:19,
47:5, 61:9,
74:4, 87:6,
87:14, 105:9,
107:11, 109:3,
133:9, 134:24,

164:13
**meaning**
61:12, 75:23
**means**
12:3, 178:22,
179:13, 180:4
**mechanics**
167:5
**mediation**
155:14, 162:13,
162:22, 163:3
**meet**
92:10
**member**
178:23, 179:19,
182:7, 183:5
**members**
135:9, 155:10
**mental**
170:16
**mentioned**
155:18
**merchant**
59:8, 60:5,
60:13
**mere**
39:11
**met**
7:1
**metrick**
100:9, 101:16,
125:1, 125:23,
129:7, 133:15,
133:21
**miami**
3:16
**michael**
71:7, 72:18,
171:5, 171:9,
171:13
**mickey**
4:14, 100:9,
101:16, 106:4,
106:12, 106:13,
106:16, 106:17,
106:18, 133:15,
133:21
**mid**
155:17

**mid-south's**
142:2
**middle**
90:11, 138:5,
138:11, 138:22
**middleman**
143:10, 144:17
**might**
79:12, 93:4,
145:24
**mike**
150:6
**mill**
103:16, 103:17,
103:24, 123:8,
123:11, 126:11,
126:17, 128:24,
140:1, 144:7,
144:8
**million**
24:2, 24:13,
24:19, 24:23,
26:11, 26:16,
26:20, 27:4,
28:7, 28:19,
30:12, 46:10,
46:17, 46:19,
46:21, 46:23,
47:9, 47:12,
47:13, 47:14,
47:16, 47:20,
47:22, 48:19,
48:24, 49:1,
51:11, 52:2,
53:17, 67:10,
67:18, 67:24,
71:12, 74:11,
74:18, 75:15,
76:2, 76:15,
78:9, 79:15,
80:3, 80:7,
80:16, 80:20,
80:22, 81:10,
81:15, 84:3,
144:14, 146:14,
146:18, 149:1,
149:5, 149:6,
149:8, 154:22,

155:6, 162:18,
163:17, 164:3,
164:11, 164:13,
165:1, 165:10,
168:20, 169:3,
169:4, 169:20,
176:22, 176:24,
177:4, 177:14,
177:18, 177:22,
178:8, 178:14
**mills**
95:6, 98:14,
109:7, 109:10,
123:25, 124:1
**mind**
88:22, 99:1,
168:21, 181:9,
185:6
**mindset**
141:6
**mindsets**
79:21, 79:23
**mine**
70:19
**minority**
137:6, 137:25
**minority-owned**
86:3, 94:6,
94:12, 94:16,
118:22, 132:9,
134:17, 137:10,
137:20
**minutes**
33:1, 46:25
**mischaracterizes**
169:17
**misleading**
20:23
**misrepresent**
119:17
**misrepresentatio-
ns**
116:2
**misrepresented**
101:7
**misrepresenting**
101:19
**misrepresents**
121:14

**misstates**
23:21, 34:20,
34:21, 37:20,
120:16
**mitigate**
65:23, 66:2,
77:15, 78:12,
78:16, 81:3,
81:13, 81:18,
164:4
**mitigated**
80:6, 80:24
**mitigation**
80:10
**modifications**
6:20
**moment**
95:20, 103:6,
173:12, 178:22
**monday**
144:10
**monetary**
44:25
**money**
18:12, 18:13,
19:12, 19:13,
20:17, 21:2,
21:4, 23:16,
35:16, 35:19,
36:15, 36:25,
37:2, 37:13,
38:5, 38:6,
38:23, 39:1,
39:10, 39:12,
46:13, 63:9,
63:13, 65:4,
67:9, 68:17,
69:22, 75:17,
76:4, 76:17,
92:24, 93:10,
98:21, 98:22,
99:9, 99:11,
99:21, 99:23,
110:5, 110:24,
119:14, 121:12,
123:22, 124:12,
124:14, 128:2,
131:8, 133:22,

142:7, 146:2,
165:19, 177:16,
182:10, 183:8

**moneys**
16:16, 49:12,
51:12, 63:3,
69:18, 74:20

**monitor**
5:10

**monitoring**
102:14, 107:4

**monitors**
123:12

**months**
12:2

**more**
12:13, 59:12,
61:1, 61:16,
67:9, 67:24,
68:16, 68:17,
75:17, 76:4,
76:17, 79:12,
80:6, 82:4,
98:22, 99:11,
126:9, 137:18,
149:15, 149:22,
150:23, 169:4,
169:13, 178:3

**morning**
6:8, 6:10, 58:7

**most**
86:5, 163:8,
170:2

**much**
89:10, 89:11,
89:15, 90:2,
96:11, 136:6,
152:1, 164:15,
169:2, 169:4,
169:13, 173:18,
173:25, 177:16

**multiple**
39:22, 90:19,
108:14, 109:4,
112:9, 112:12,
152:5

**myself**
9:9

## N

**nalco**
98:2, 103:23,
123:7, 144:18,
144:21, 144:23,
145:5, 145:7,
145:18

**name**
148:3, 166:20

**named**
136:20

**names**
95:16, 95:19,
155:9, 166:19

**nanjing**
113:12, 113:13,
113:17, 113:22,
114:5, 115:4

**nathan**
3:5, 5:18

**national**
114:5

**nature**
62:19, 101:19,
101:22, 174:12,
178:1

**near**
9:24, 11:25,
12:1, 12:3,
12:5, 12:8,
12:12, 41:19,
145:7, 162:24

**nearly**
139:20

**necessarily**
53:13

**necessitate**
148:24

**need**
20:7, 20:10,
22:25, 23:1,
28:17, 63:22,
150:4

**negotiate**
91:2

**negotiated**
90:20, 91:7,

91:10

**negotiating**
132:7, 133:2,
133:12, 134:15,
135:2, 135:14

**negotiation**
135:19

**negotiations**
83:6, 135:22,
136:11

**neither**
71:16, 84:5,
187:10

**net**
46:16, 47:13,
47:21, 48:19,
48:25, 51:15,
51:17, 129:2

**never**
26:7, 40:2,
100:21, 132:13,
133:14, 133:20,
134:20, 135:4,
151:3

**new**
42:6, 102:13,
107:3

**newer**
103:16

**next**
9:16, 10:7,
10:15, 11:1,
11:10, 11:18,
11:20, 105:21,
105:23, 109:12,
112:18, 112:19,
113:11, 115:3,
117:4, 117:5,
121:25, 122:11,
123:3, 139:12,
143:5, 155:16

**ninth**
14:11, 14:22

**nobody**
40:20, 41:3

**non-contractual**
25:19, 25:22

**none**
15:11, 116:25,

170:10

**normal**
23:5, 23:9,
23:10, 23:18,
98:25, 100:4,
184:22, 185:4

**notarial**
187:15

**notary**
2:10

**note**
54:2, 142:18,
153:7, 153:8,
153:15, 155:1,
156:24, 159:12,
159:13, 161:22,
163:6, 163:8,
167:6, 167:15,
168:5, 168:7,
170:1

**noted**
57:10, 155:5

**notes**
13:13, 152:21,
153:14, 153:18,
159:12, 161:19,
161:23, 170:1,
170:4, 170:7,
172:8, 174:17,
174:19

**nothing**
48:20, 171:20,
184:19

**notice**
2:8, 11:15,
173:4, 175:8,
182:21

**noticed**
160:17, 173:7

**notion**
106:8, 110:4,
114:15, 123:21,
125:19, 127:12,
128:1, 146:8

**notwithstanding**
139:18

**november**
155:12

**number**
56:16, 56:19,
56:21, 57:17,
57:22, 57:24,
58:1, 58:8,
58:10, 58:16,
85:23, 89:19,
102:15, 111:25,
117:10, 118:1,
129:15, 138:16,
152:4, 152:8,
168:25, 169:9,
169:11, 169:12,
169:19, 169:21,
169:24, 175:20,
179:22
**numbered**
153:13, 161:24,
178:18, 182:5
**numbers**
92:8, 94:1,
106:5, 128:23,
129:4, 130:9

**O**

**o'clock**
181:9
**oath**
6:2, 155:16,
162:8
**object**
49:18, 50:5,
50:7, 50:11,
50:12, 50:19,
51:21, 53:3,
70:4, 71:20,
71:25, 72:7,
72:15, 73:6,
73:8, 73:13,
83:16, 84:5,
84:12, 97:22,
167:10, 172:11,
174:11, 175:5,
182:19
**objected**
172:12
**objection**
11:8, 12:9,

12:15, 16:4,
16:20, 18:16,
18:22, 19:16,
20:9, 20:22,
21:9, 22:17,
23:3, 23:20,
24:8, 24:16,
24:24, 26:13,
27:19, 28:10,
28:21, 28:25,
29:13, 30:8,
31:19, 32:5,
32:15, 32:25,
33:18, 34:6,
34:20, 36:19,
37:5, 37:19,
38:10, 38:16,
39:5, 39:15,
40:8, 41:8,
41:15, 41:24,
42:13, 43:4,
46:24, 47:23,
48:22, 49:4,
49:22, 49:24,
50:17, 51:1,
51:14, 51:19,
53:2, 53:11,
53:21, 54:11,
55:18, 56:3,
58:4, 62:20,
63:15, 68:2,
68:9, 68:20,
69:14, 70:2,
70:5, 70:6,
70:7, 74:23,
75:8, 75:20,
76:5, 76:6,
76:20, 77:4,
78:25, 79:19,
80:8, 80:25,
81:20, 84:10,
84:19, 91:6,
91:23, 92:17,
93:1, 93:11,
96:8, 96:20,
98:24, 99:2,
99:14, 99:24,
100:15, 100:24,

101:10, 101:23,
108:5, 108:19,
109:1, 111:6,
112:16, 113:20,
114:1, 115:20,
116:18, 117:2,
118:7, 119:20,
120:15, 121:1,
121:20, 124:19,
126:22, 127:7,
127:17, 127:20,
128:10, 131:10,
133:18, 133:25,
134:7, 134:11,
135:12, 135:20,
136:8, 136:25,
139:9, 141:4,
142:18, 143:2,
146:4, 147:1,
147:7, 151:22,
156:19, 157:8,
158:9, 160:20,
161:14, 165:4,
166:11, 166:24,
167:1, 167:21,
168:16, 168:23,
169:7, 169:16,
169:23, 170:13,
175:23, 177:25,
178:12, 181:1,
183:21
**obligations**
69:20, 69:21
**obtain**
20:1, 20:6,
45:7, 46:14,
46:18, 49:12,
52:1, 53:17,
65:10, 74:20
**obtained**
65:16, 67:11,
79:15, 80:19
**obtaining**
145:13, 166:21
**occupancy**
165:22, 166:15
**occurred**
23:5, 62:7

**occurrence**
183:12
**october**
163:7, 163:10,
167:11, 168:3,
170:3, 170:5,
170:8
**offer**
78:9
**offhand**
27:7, 54:14,
54:22, 95:16,
95:19, 131:12
**office**
148:22
**officer**
187:3
**official**
184:23
**offset**
46:22, 65:1
**often**
102:2
**once**
171:5
**one**
10:3, 11:6,
17:12, 22:2,
31:10, 33:10,
35:4, 53:23,
74:13, 82:4,
82:19, 88:19,
89:4, 97:17,
103:6, 105:23,
111:2, 112:7,
112:13, 114:6,
123:6, 123:24,
128:18, 131:5,
135:9, 138:24,
144:1, 153:17,
170:2, 178:3,
180:17, 183:16
**ones**
14:1, 174:17
**ongoing**
11:16, 160:15
**only**
37:6, 37:21,

76:7, 87:6,
87:14, 105:19,
112:7, 117:21,
150:11, 154:15,
155:3

**open**
13:1, 13:2,
17:7, 70:16,
85:10, 85:16,
103:3, 103:5,
103:7, 106:2,
111:11, 111:12,
112:2, 118:17,
125:14, 128:16,
128:20, 144:3,
144:4, 147:16,
147:20, 147:21,
153:3, 153:4,
161:21, 162:1,
176:10, 176:14,
180:2, 182:4

**opening**
128:17

**operates**
37:18, 39:4

**operating**
41:7

**operation**
113:17, 115:8

**operations**
116:12, 119:9

**opine**
97:9, 97:14

**opined**
87:8

**opinion**
53:23, 57:5

**opportunities**
144:13

**opportunity**
52:16, 57:24

**opposed**
47:22

**order**
20:7, 29:23,
31:11, 46:6,
46:14, 46:18,
47:21, 48:18,

50:20, 50:23,
51:3, 51:25,
53:17, 74:17,
81:13, 169:5,
175:3, 179:7

**ordered**
95:7, 109:11,
115:23, 116:8,
120:8

**orders**
35:19, 95:9

**ordinary**
98:16, 98:19,
99:5, 99:18,
99:19, 100:19,
116:16, 119:25,
121:8, 121:18

**organization**
9:6, 9:7, 97:8,
97:10, 97:12,
116:5, 116:15,
174:15

**original**
182:21

**other**
7:15, 7:21,
11:11, 17:13,
17:14, 22:5,
22:6, 22:21,
26:18, 27:3,
28:13, 29:3,
34:11, 36:18,
40:20, 41:3,
41:21, 59:11,
61:1, 67:13,
69:7, 72:17,
73:25, 74:4,
74:9, 74:20,
74:24, 75:5,
76:3, 77:6,
77:7, 77:9,
77:10, 78:2,
80:15, 81:5,
82:3, 83:2,
86:5, 86:24,
88:19, 89:4,
94:12, 94:15,
108:16, 124:1,

124:17, 128:12,
129:3, 130:9,
131:5, 132:9,
134:16, 137:25,
140:2, 140:17,
146:8, 150:13,
151:19, 153:7,
154:4, 155:8,
155:10, 156:1,
164:18, 166:19,
182:10, 183:8,
183:14, 184:4

**others**
34:25, 74:2,
74:14, 75:2,
75:12, 78:21,
79:5, 107:21,
135:21, 136:11,
137:24, 139:11,
148:15, 159:10

**otherwise**
64:13, 187:13

**out**
11:3, 25:9,
28:8, 30:6,
31:22, 35:14,
46:17, 51:11,
57:16, 100:12,
101:18, 117:21,
141:11, 148:21,
151:24, 153:14,
159:4, 165:17,
166:7, 170:12,
172:6, 174:18,
178:19, 178:21

**outcome**
162:14, 187:13

**outlining**
109:22, 110:9,
111:9

**outright**
116:12

**outside**
80:16, 128:7,
140:20, 155:2,
156:7, 156:10,
173:3

**outstanding**
162:16

**over**
66:5, 68:18,
68:23, 69:23,
140:1, 145:20,
163:19, 177:3

**overbroad**
76:5, 109:2,
131:11, 136:8,
167:2, 174:12,
175:24

**overcharging**
96:6, 120:12,
120:17, 120:25

**overpaid**
29:8, 29:9

**overpayment**
34:1

**overpayments**
28:3, 30:16

**overseas**
150:14

**own**
28:9, 52:24,
66:24, 68:25,
78:1, 84:15,
114:9, 117:24,
129:11, 149:14,
155:20, 155:21,
157:4, 160:7,
161:17, 166:16,
174:3

**owned**
43:1, 69:7,
97:20, 100:22,
114:5, 132:19,
132:23, 133:5,
133:16, 134:19,
134:22, 135:5,
136:1, 136:3,
136:16, 136:17,
136:23, 137:6,
138:2, 155:6,
155:22, 158:3,
165:3

**owner**
117:22

**owns**
117:23, 121:15

| **P** | | | |

**packaging**
86:11, 120:21
**page**
4:2, 4:6, 13:3,
13:7, 13:8,
17:8, 17:19,
25:14, 43:21,
58:22, 64:4,
70:23, 71:1,
71:6, 85:12,
85:18, 86:2,
86:17, 88:9,
90:9, 90:12,
94:4, 95:2,
95:21, 96:1,
96:2, 96:3,
96:12, 96:14,
97:5, 98:10,
102:9, 103:8,
104:11, 104:20,
106:7, 109:24,
111:14, 111:22,
111:24, 111:25,
112:12, 112:18,
112:19, 113:11,
113:14, 115:3,
117:8, 118:12,
118:13, 120:19,
122:11, 122:15,
122:16, 123:3,
123:4, 123:17,
125:22, 132:1,
132:3, 132:6,
134:14, 137:3,
138:5, 138:21,
139:12, 139:13,
139:14, 140:13,
143:5, 144:11,
153:9, 153:13,
153:18, 161:23,
161:24, 163:7,
163:11, 168:5,
176:15, 176:18,
178:17, 178:20,
178:21, 179:11,
179:20, 179:22,

180:8, 180:9,
181:24, 182:1,
182:3
**pages**
1:24, 13:11,
18:4, 22:16,
85:23
**paid**
16:17, 19:13,
20:18, 21:3,
24:2, 24:13,
24:19, 26:1,
26:5, 26:7,
26:23, 29:10,
32:10, 33:24,
36:12, 39:25,
44:6, 47:7,
48:2, 49:8,
64:15, 65:4,
65:11, 91:20,
115:24, 116:9,
119:14, 120:9,
123:22, 124:15,
140:3, 149:16
**palmer**
3:20
**paper's**
8:2, 8:8, 8:15,
8:23, 12:19,
13:6, 21:24,
26:19, 27:3,
36:2, 43:18,
44:15, 44:24,
60:19, 61:15,
172:9
**paragraph**
17:18, 90:11,
94:20, 98:11,
103:15, 106:23,
126:2, 132:6,
137:4, 138:5,
138:22, 143:5
**pareto**
103:23
**part**
15:9, 16:15,
21:25, 25:5,
25:21, 30:1,

32:20, 35:10,
58:25, 60:23,
61:14, 63:3,
64:6, 76:2,
79:8, 79:11,
82:7, 83:20,
90:17, 91:16,
93:22, 99:3,
120:3, 121:9,
132:17, 144:13,
149:16, 156:22,
157:10, 158:21,
163:18, 166:9
**participate**
151:18, 155:14,
163:3
**participation**
94:9, 94:24
**particular**
10:2, 10:9,
20:3, 29:22,
31:11, 32:18,
45:9, 57:1,
57:13, 58:14,
63:19, 69:6,
76:8, 113:6,
113:10, 130:3,
130:7, 144:20,
152:8, 168:25
**parties**
2:5, 5:13,
17:21, 27:9,
28:13, 63:2,
63:7, 63:13,
109:5, 109:10,
159:5, 159:7,
187:12
**partners**
91:12
**party**
35:17, 36:25,
37:3, 37:13,
37:17, 38:6,
39:2, 164:8
**passing**
117:23
**past**
173:18

**patent**
114:6, 114:12,
117:10, 117:15,
117:20, 117:21,
117:22, 117:23,
118:1
**patents**
114:5, 114:9,
118:5, 118:6,
121:16
**pay**
18:12, 24:4,
28:18, 30:18,
32:1, 32:11,
32:14, 50:21,
51:6, 75:15,
76:2, 149:8,
164:12
**payable**
178:4
**paying**
23:16, 36:24,
98:22, 99:11,
112:14, 133:22,
164:14
**payment**
25:24, 26:9,
33:11, 37:16,
38:21, 46:19,
46:22, 47:9,
47:13, 48:16,
50:4, 51:10,
52:21, 65:10,
68:11, 71:22,
71:24, 72:1,
72:3, 72:12,
72:13, 72:15,
73:6, 73:10,
73:12, 73:14,
73:15, 73:20,
76:12, 126:4,
126:8, 154:12
**payments**
25:20, 25:22,
26:16, 26:20,
26:24, 26:25,
27:2, 27:4,
27:8, 27:11,

27:21, 28:7,
28:12, 28:15,
29:3, 29:6,
29:18, 29:21,
29:23, 30:3,
30:4, 30:12,
31:1, 31:10,
31:14, 31:15,
31:25, 32:7,
32:22, 36:3,
36:7, 36:13,
36:20, 37:11,
38:22, 39:17,
39:21, 39:22,
40:1, 40:5,
40:6, 40:10,
62:10, 62:24,
63:7, 65:7,
74:1, 74:13,
75:1, 75:12,
77:10, 82:17,
93:8, 93:22,
93:23, 98:11,
138:16, 163:5

**pdf**
182:3
**pending**
162:14
**pennsylvania**
2:11, 3:9
**penny**
74:13, 81:8
**people**
76:1, 119:19,
124:17, 151:19
**percent**
87:10
**percentage**
89:14
**percentages**
89:22
**perfectly**
51:9
**perform**
54:9, 155:25
**performed**
87:1, 88:10,
88:16, 89:13,

89:17, 89:24,
90:4, 143:6,
156:6, 161:17
**performing**
107:14, 108:24,
109:13
**period**
95:10, 98:13
**periodically**
139:15
**permit**
175:4
**permitted**
175:8
**perpetrated**
149:2
**person**
59:10, 60:7,
60:15, 75:25,
132:24, 174:4,
178:25, 180:22
**personal**
173:19
**personally**
158:18
**persons**
46:14, 158:14
**persuade**
22:12, 22:20
**photograph**
94:4
**photos**
42:16
**pia**
1:14, 2:1, 5:3,
6:4, 185:11,
186:3
**picture**
113:22, 114:3
**pictured**
113:18
**piece**
41:17
**pittsburgh**
3:9
**place**
7:19, 153:6,
162:23, 180:19,

182:16
**plaintiff**
1:6, 3:3, 5:19,
43:18, 65:23,
66:9, 77:15,
139:17, 139:18,
140:17
**plaintiff's**
25:4, 35:9,
43:25, 58:24,
64:5, 65:22,
66:8, 67:17,
77:14, 82:6,
85:9, 139:15
**plaintiffs**
15:8
**plan**
145:6
**planet**
5:12, 5:25,
185:5
**plea**
148:16
**plead**
10:18, 11:4
**pleadings**
175:6
**please**
5:14, 21:19,
30:10, 39:6,
83:21, 87:22,
89:25, 92:18,
99:4, 101:1,
121:3, 130:16,
134:12, 142:22,
145:15, 168:1,
185:1
**plus**
42:3, 149:1
**point**
15:5, 40:15,
40:17, 57:14,
61:20, 61:21,
72:14, 112:3,
112:21, 124:1,
126:10, 145:17,
160:4, 170:11,
183:25, 184:11,

184:15
**points**
123:5, 123:23,
145:2
**policy**
8:10, 8:16,
8:18, 9:2, 9:22,
10:1, 15:10,
15:25, 20:12,
21:16, 22:1,
25:7, 29:11,
31:17, 33:21,
35:12, 37:15,
38:9, 39:14,
40:7, 44:3,
45:3, 45:4,
45:17, 47:1,
48:9, 51:23,
52:22, 56:24,
58:19, 59:2,
59:20, 63:24,
64:7, 64:22,
66:10, 66:13,
72:6, 72:14,
80:12, 121:10,
139:15, 141:16,
141:19, 142:3,
142:16, 143:1,
143:7, 143:17,
143:21, 146:11,
149:5, 149:6,
172:5, 176:4,
176:6, 176:17,
177:20, 178:2,
178:4, 178:16,
179:1, 179:13,
179:18, 179:21,
180:15, 180:23,
181:19, 182:6,
182:16, 183:2,
183:3, 183:11
**policyholder**
51:18
**popped**
125:10, 176:11
**portion**
56:12, 57:6
**pose**
173:13

position
14:15, 20:25,
23:11, 39:3,
49:21, 49:24,
50:18, 51:21,
52:19, 76:18,
78:5, 78:10,
78:11, 80:1,
81:12, 89:20,
90:1, 97:13,
118:4, 146:24,
165:21, 168:9,
182:14, 182:25,
183:17
possible
105:14, 108:18,
145:14
possibly
57:18, 61:25,
63:14, 150:11
post
17:2
posted
103:2
potential
33:14, 33:20,
34:24, 35:3,
58:13, 63:18,
66:25, 72:9,
77:11, 78:2,
143:23, 154:10,
154:12, 155:24,
159:5, 164:18
potentially
34:8, 38:12,
38:13, 38:14,
51:20, 55:9,
57:12, 59:23,
101:14, 102:8,
105:15, 121:24,
124:21, 127:9,
142:12, 165:14
powerpoint
113:24, 122:12
practical
74:8, 76:10
practically
74:20, 75:6,

166:22
praises
127:16, 128:8
precedent
66:9, 66:17
preclude
38:2
precluded
78:4, 154:11,
164:22
precludes
62:13, 74:1,
75:1, 77:22,
80:13, 81:23,
81:25, 82:17,
168:11
predecessor
172:1
predicate
175:12
prefer
173:13
prejudice
149:13
prejudiced
72:9
preparation
6:23, 7:16,
7:22, 54:9,
56:11, 57:7,
57:17
prepare
54:3, 54:17,
54:25
prepared
128:15, 130:21,
131:1, 173:4
preparing
55:4
present
3:18, 7:13,
54:25, 123:10,
151:20, 152:3,
152:6, 170:8
presentation
4:17, 27:12,
109:21, 110:8,
110:18, 111:8,

111:15, 115:25,
117:9, 122:12,
135:1
presented
100:19
preserve
58:12
preserved
15:11, 172:13
pressed
149:15
pressure
50:22
presumably
72:1, 158:25
presume
172:12
presumes
167:2
pretended
135:15
pretty
53:19, 102:7
prevent
38:8
prevented
81:4
preventing
144:22
prevents
39:13, 74:13,
75:11, 77:8
previous
85:7, 104:11,
169:17
previously
4:7, 4:8, 4:11,
4:24, 4:25, 7:4,
12:11, 12:24,
14:2, 17:4,
18:17, 22:9,
29:2, 30:25,
34:14, 34:23,
40:9, 43:5,
52:18, 55:20,
56:5, 57:9,
58:7, 59:17,
62:5, 68:22,

73:24, 77:6,
79:3, 80:9,
85:14, 108:13,
116:21, 119:8,
120:6, 134:1,
134:24, 135:21,
136:10, 143:22,
147:10, 152:25,
158:15, 159:20,
160:2, 164:17,
165:24, 166:14,
169:10, 169:18,
176:8, 183:22
price
86:14, 86:21,
86:25, 88:3,
88:18, 89:16,
90:2, 95:23,
96:18, 97:2,
120:24, 145:2,
145:14, 145:19
prices
140:3
pricing
98:1
primary
145:5, 149:4
principal
149:2, 149:7,
149:11
principal's
149:23
principals
71:21, 72:8,
73:9
printed
153:14
prior
7:18, 9:12,
9:23, 44:21,
45:5, 45:8,
59:1, 62:3,
63:23, 69:8,
82:16, 95:21,
128:23, 129:7,
131:2, 139:14,
141:16, 141:18,
142:3, 142:8,

142:16, 142:25,
143:7, 143:16,
146:10, 171:11,
181:18
**prison**
149:11
**privilege**
152:16
**probably**
173:15
**probation**
149:10
**proceed**
162:12
**proceeding**
44:7, 45:15,
48:3, 48:13,
49:9, 57:12
**proceedings**
46:4, 55:6
**proceeds**
48:25
**process**
51:22, 83:5,
86:11, 120:21,
130:7, 163:14
**procter**
123:8, 123:9
**procurement**
36:5, 40:10,
69:17
**produce**
55:24, 94:18
**produced**
22:16, 55:11,
147:23, 184:6,
184:9
**producing**
55:13
**product**
31:6, 103:19,
145:7, 145:14,
170:16
**production**
115:5
**products**
26:6, 26:10,
102:13, 103:16,

113:1, 113:5,
113:7, 116:13,
123:13
**professional**
2:9
**profit**
89:18, 108:1
**program**
94:7, 94:10,
94:24, 100:7
**proof**
45:23, 54:4,
54:17, 54:25
**properly**
47:15, 138:7,
138:18, 139:4,
139:6
**properties**
67:6, 68:7,
69:7, 103:18,
165:2, 165:18,
165:23, 166:8,
166:15
**property**
35:16, 59:5,
149:17, 182:10,
183:8
**proposal**
83:6, 149:7,
154:17
**propose**
153:24
**proposed**
71:2, 71:10,
71:18, 71:22,
71:23, 72:11,
72:13, 73:10,
73:11, 83:12,
83:24, 147:24,
150:11, 150:21,
151:4, 152:10,
153:21
**proposing**
84:22
**propriety**
147:6
**prosecuting**
44:7, 45:15,

48:2, 48:13,
49:9, 52:7,
55:5, 57:11
**prove**
55:11
**provide**
20:10, 49:22,
49:24, 64:22,
70:9, 79:8,
79:10, 86:9,
120:19, 154:15,
156:15, 156:25,
157:1, 157:3,
157:12, 157:22,
158:8, 159:24,
169:19, 169:24
**provided**
20:15, 22:22,
35:18, 44:8,
44:9, 67:13,
71:15, 86:20,
87:19, 88:2,
94:8, 94:22,
95:3, 96:17,
97:5, 97:6,
98:13, 102:11,
105:25, 106:9,
109:22, 110:9,
111:9, 131:24,
139:17, 150:1,
155:3, 155:19,
156:2, 157:16,
158:22, 170:2
**provider**
126:21, 130:8
**providers**
86:20, 87:20
**provides**
21:1, 35:13,
44:4, 59:3,
110:23, 111:4,
114:15, 115:18,
119:13, 125:20,
131:7
**providing**
88:15, 95:1,
95:22, 96:5,
97:1, 99:12,

105:9, 105:10,
105:12, 105:17,
107:17, 110:5,
110:12, 120:13,
123:1, 123:21,
124:13, 127:13,
128:1, 128:9,
128:23, 130:19,
140:5, 140:19,
145:13
**provision**
64:6, 64:8,
64:21, 65:9,
149:3, 182:24,
183:1
**public**
2:10, 117:20,
118:5, 187:1
**publicly**
114:17
**pull**
12:21, 16:22,
17:2, 102:21,
172:6
**punted**
70:3
**purchase**
35:17, 35:24,
36:21, 38:2,
38:25, 39:8,
39:18, 41:6,
144:16, 144:20
**purchased**
155:9
**purchases**
86:12, 91:21,
120:22, 138:17,
144:15
**purchasing**
37:1, 37:12,
37:14, 38:4,
38:7, 39:23,
63:6, 144:22
**pure**
89:18
**purpose**
35:11
**purposes**
180:14

**pursuant**
2:8, 17:23,
95:9
**pursue**
46:13, 47:7,
50:20, 50:22,
51:4, 51:25,
52:14, 52:19,
52:25, 68:13,
154:6, 165:6,
165:14, 165:25
**pursued**
53:6, 67:3,
67:14
**pursuing**
13:19, 14:3,
14:16, 14:21,
15:4, 15:13,
21:15, 46:12,
46:15, 49:11,
49:25, 50:8,
68:19, 77:9,
154:11, 164:22
**pursuit**
46:8, 46:12,
53:4, 53:10,
68:24, 167:5,
168:11
**put**
11:15, 12:17,
50:22, 70:12,
102:22, 109:15,
119:16, 122:3,
122:4, 125:3,
125:5, 143:14,
147:12, 152:24,
176:5
**putting**
8:20

**Q**

**qualified**
94:5
**qualify**
62:11
**quantities**
95:9, 120:8
**quantum**
162:17

**question**
8:11, 20:24,
30:9, 33:2,
33:7, 39:6,
41:1, 42:22,
47:24, 47:25,
51:2, 73:17,
75:3, 83:22,
85:20, 87:22,
88:22, 89:25,
90:6, 92:18,
93:3, 99:4,
99:15, 100:25,
101:13, 104:10,
106:15, 107:16,
110:14, 116:8,
116:10, 116:11,
121:2, 123:2,
127:18, 127:21,
130:16, 134:12,
136:13, 136:18,
142:22, 150:4,
152:18, 158:12,
161:7, 167:23,
167:25, 169:8,
172:15, 172:16,
172:23, 173:5,
173:13, 173:19,
174:12, 175:10,
175:12, 175:19,
175:25, 178:1,
182:22
**question's**
151:16
**questions**
10:20, 13:10,
41:25, 42:15,
71:16, 85:25,
144:15, 150:3,
162:16, 172:5,
176:4, 181:12,
184:1, 184:2,
184:13, 184:14
**quick**
185:7
**quote**
25:5, 25:7,
25:12, 35:13,

44:4, 59:3, 64:8

**R**

**range**
71:12
**rather**
61:20, 102:5,
140:25, 144:21,
161:10
**reach**
150:2
**reached**
160:25
**read**
6:2, 66:5,
68:1, 68:4,
68:5, 75:4,
100:8, 100:16,
100:18, 101:2,
101:3, 101:11,
101:12, 101:21,
123:25, 170:3,
185:6, 186:4
**reading**
123:22, 181:3,
187:9
**reads**
64:8
**real**
75:10, 154:3,
155:5, 164:2,
164:11, 164:15,
164:17, 166:17
**realistically**
75:14
**reality**
99:22
**realize**
112:7, 113:16,
119:4
**really**
46:1, 53:25,
75:18, 93:2,
93:12, 97:9,
107:17, 108:6,
108:21, 118:6,
159:1, 183:15,
185:7

**realtime**
2:10
**reason**
41:11, 144:20,
158:8
**reasonable**
12:7, 71:19,
71:24, 71:25,
72:4, 72:12,
73:12, 73:16,
73:20, 74:11,
74:17, 74:22,
76:14, 115:16,
154:9, 163:25,
166:10, 167:7,
167:13, 167:16,
168:4, 168:8,
168:10, 168:15,
168:19, 168:20,
169:6, 169:15,
169:21, 178:25,
180:22
**reasonableness**
52:6, 52:10,
72:1, 73:13,
84:7, 84:21,
157:6, 169:1,
169:25
**recall**
7:6, 8:1, 8:4,
16:10, 16:14,
16:19, 16:24,
17:15, 17:17,
27:7, 54:22,
70:4, 70:6,
72:21, 95:20,
95:25, 98:2,
98:4, 98:5,
98:9, 99:25,
113:6, 113:9,
120:13, 128:12,
129:21, 129:25,
130:3, 130:23,
131:12, 137:1,
139:10, 140:9,
140:11, 140:14,
140:20, 141:12,
146:20, 147:2,

150:19, 151:1,
151:11, 152:4,
152:8, 152:17,
157:18, 157:19,
158:22, 159:9,
159:13, 160:22,
171:7, 171:16,
174:20, 184:1
**receive**
11:12, 46:10
**received**
15:20, 16:2,
17:23, 18:9,
18:14, 18:23,
18:24, 19:4,
19:9, 19:18,
19:23, 20:8,
20:17, 20:20,
21:7, 22:4,
24:6, 31:6,
32:8, 32:14,
51:10, 73:21,
77:24, 140:21,
140:22, 141:12,
162:10, 169:13,
174:18
**receives**
144:19
**recent**
163:8, 170:2
**recess**
43:12, 85:2,
131:19
**recognize**
113:4, 132:13
**recommend**
149:10
**recommendations**
150:7
**recommending**
40:22
**record**
43:11, 43:13,
84:24, 85:1,
85:3, 98:3,
117:20, 129:20,
131:18, 131:20,
147:22, 166:4,

170:4, 185:7,
185:12, 185:13,
187:6
**records**
19:22, 19:25,
20:1, 20:6,
118:5
**recoup**
49:20, 50:9,
50:16, 50:23,
51:5
**recouping**
50:1
**recoupment**
52:25, 53:17,
155:23
**recover**
67:19, 150:16,
177:23
**recoverable**
29:12, 29:23,
45:23, 177:16
**recovered**
65:12
**recoveries**
64:6, 64:8,
64:9, 64:21,
65:8, 77:23,
80:13, 81:4,
81:25, 82:17,
164:22
**recovery**
46:16, 47:21,
51:17, 64:10,
64:18, 64:20,
65:2, 69:23,
78:3, 150:3,
154:11, 164:8
**recurring**
75:2, 77:11
**redacted**
150:8, 170:11
**reduce**
47:19, 103:17,
103:24, 164:5
**reduced**
187:8
**reduction**
144:12, 144:14

**refer**
88:6, 112:11,
138:20
**reference**
42:15, 105:20,
110:10, 162:6
**referred**
87:25, 111:19,
165:3
**referring**
16:23, 25:23,
25:24, 26:10,
26:12, 26:15,
29:19, 82:20,
87:3, 87:11,
87:12, 87:24,
88:14, 92:5,
95:2, 106:12,
109:25, 113:12,
120:25, 123:14,
138:23, 139:23,
165:5
**reflect**
86:7, 89:12
**reflected**
152:20
**refresher**
148:25
**refused**
80:15, 164:25
**regard**
14:15, 15:12,
21:12, 31:24,
34:10, 35:22,
46:11, 50:5,
62:11, 71:10,
80:9, 83:23,
100:25, 141:13,
148:4, 160:23,
172:7, 184:2,
184:18
**regarding**
8:7, 36:1,
71:2, 127:22,
130:3, 141:13,
147:23, 149:3,
150:2, 150:12,
151:12, 153:20,

157:13
**regardless**
8:23, 93:24
**regards**
33:24, 72:18,
168:25
**registered**
2:9
**reimbursement**
46:6
**reinsurance**
64:19
**rejected**
78:8, 81:14
**relate**
26:18, 89:23,
142:8
**related**
17:21, 46:5,
89:17, 142:20,
158:4, 187:11
**relating**
86:6, 152:9
**relationship**
121:18, 135:16
**relayed**
141:10
**release**
17:11, 20:3,
21:10, 67:2,
67:15, 68:10,
68:12, 68:17,
74:18, 74:25,
75:16, 76:11,
76:16, 77:8,
78:7, 81:11,
82:15, 146:19,
163:22, 164:6,
164:21, 165:7,
165:13, 166:1
**relevant**
94:13, 143:19,
154:1, 175:5,
183:15
**reliable**
119:11
**relied**
100:11, 101:17,

114:14
**relies**
122:19
**relisting**
69:1
**rely**
102:5, 115:17,
119:11, 119:12
**relying**
105:16, 110:11,
110:22, 111:3,
115:13, 118:3
**remains**
151:25
**remember**
171:24
**remote**
5:11, 107:4
**remotely**
2:5, 5:14
**repeat**
8:11, 20:24,
21:18, 30:9,
39:6, 83:20,
87:22, 89:25,
92:18, 99:3,
99:15, 101:1,
130:16, 132:16,
134:12, 142:22,
166:12, 167:25,
182:22
**report**
56:21, 57:23,
58:11, 67:7,
87:6, 87:8,
87:18, 87:24,
87:25, 106:20,
155:2, 155:4,
155:18, 156:1,
156:25, 157:4,
157:12, 157:16,
157:23, 158:2,
158:6, 158:13,
158:16, 158:19,
158:20, 159:11,
159:16, 161:3,
161:5, 164:10,
165:3

**reported**
1:25, 41:10,
62:25, 69:24,
75:13, 112:10,
112:17, 113:21,
132:21, 132:25,
133:19, 139:17,
153:21, 154:15,
154:16, 154:25,
162:12, 163:13
**reporter**
2:9, 2:10,
5:24, 184:21,
184:24, 185:2
**reporter-notary**
187:1
**reporting**
154:22
**reports**
56:16, 56:18,
87:4, 87:13,
87:15, 88:6,
88:8, 88:11,
88:12, 88:20,
88:25, 89:1,
89:5, 90:8,
96:21
**represent**
5:15, 5:19
**representation**
115:4, 131:1
**representative**
6:12, 37:24,
174:3
**representatives**
152:2, 152:6,
152:11
**representing**
5:12, 5:25,
71:4, 71:5,
72:25, 73:2,
99:8, 100:13,
117:14, 126:15
**request**
45:7, 56:7,
70:9, 154:21,
184:5, 184:8,
184:15

**requested**
154:13, 163:20,
175:7, 187:10
**requesting**
46:2
**requests**
45:13
**require**
44:20, 45:4,
47:1, 170:14
**required**
33:25
**requirements**
39:23
**research**
115:7, 118:25,
119:6, 144:12
**researched**
149:23
**reserve**
72:16, 83:18,
84:6, 84:13,
84:16, 167:10,
172:8, 172:17,
172:19, 173:10,
173:14, 173:21,
173:25, 174:1,
174:16, 174:19,
174:21, 175:15,
184:1, 184:17
**reserved**
175:20
**reserves**
71:24, 72:6,
73:12
**reserving**
52:5, 52:9,
167:18
**residential**
165:2, 165:11
**resource**
179:14, 180:10
**respect**
9:1, 9:25,
18:18, 23:23,
29:16, 32:18,
33:15, 33:22,
44:19, 45:16,

47:2, 47:25,
49:6, 50:3,
52:5, 52:20,
57:11, 58:13,
59:20, 61:12,
62:8, 62:9,
76:7, 79:5,
84:13, 84:21,
115:24, 138:21,
139:11, 140:10,
146:6, 152:17,
162:16, 169:25,
178:10, 182:15,
183:23
**respond**
55:16, 89:9,
170:17, 170:19,
170:22, 170:23,
171:1, 175:4,
175:9
**responded**
84:4, 88:25
**responding**
55:22, 56:5,
56:7, 57:19,
58:3
**responds**
122:25, 123:4,
145:1, 145:10
**response**
10:19, 13:5,
34:13, 42:12,
43:18, 45:12,
55:24, 56:14,
56:24, 57:8,
70:8, 75:9,
85:18, 85:19,
85:23, 105:23,
131:24, 134:13,
145:9, 146:13,
170:20
**responses**
55:7, 57:22,
77:19, 85:8,
103:10
**rest**
181:3
**restate**
83:22

restitution
71:18, 71:22,
71:24, 72:3,
72:12, 72:15,
73:6, 73:10,
73:12, 73:15,
73:20, 148:16,
148:21, 149:9,
149:15, 150:11
restricted
26:19
result
33:20, 46:8,
48:25, 71:19,
79:13
resulted
47:8
resulting
149:1
results
11:10, 156:15,
160:2, 160:9
return
53:19, 53:25
revealed
132:13, 133:4,
133:20, 134:20,
136:5, 136:19,
136:21
revert
145:2
review
6:15, 7:2, 7:8,
67:16, 78:23,
145:2
reviewed
79:2, 114:20,
114:22, 114:23,
115:2, 116:24,
122:13
reviewing
115:10, 115:12
richard
122:21, 123:24
riegelwood
126:10, 126:17,
128:22, 128:24
rights
52:5, 58:13,

72:6, 72:10,
72:17, 83:18,
84:6, 84:13,
84:21, 154:10,
184:1, 184:17
rise
61:9
risk
179:15, 180:4,
180:11, 180:12,
180:20, 181:16
rivers
100:9, 101:16,
106:13, 106:17,
106:18, 133:15,
133:21
robinson
3:14, 5:21,
171:5, 171:11
rodriguez
3:18
rose
87:7
rosemary
87:15, 87:18,
87:23, 88:13
rosin
107:3
rough
89:15, 184:21,
184:25
roughly
26:15
route
126:12
routinely
138:6, 139:4
rpr
1:25, 187:22
running
119:19

**S**

safety
124:3, 129:12,
130:1
said
5:19, 11:16,

13:23, 20:17,
57:9, 58:7,
66:6, 70:3,
73:5, 73:7,
81:9, 83:17,
95:21, 96:13,
96:14, 97:25,
99:16, 101:2,
101:24, 108:25,
110:1, 115:13,
120:10, 122:15,
125:11, 134:13,
135:3, 142:12,
161:2, 161:3,
167:8, 167:18,
187:7
sailed
160:5
sale
126:6
same
9:11, 12:15,
23:3, 30:5,
32:10, 33:2,
38:16, 41:24,
41:25, 43:4,
56:3, 76:20,
99:24, 132:24,
134:11, 135:20,
136:25, 137:20,
143:2, 156:12,
158:17, 163:24,
169:7, 169:16,
178:12, 179:11,
183:21, 186:5
sap
40:1
satisfied
22:3
satisfy
19:9, 20:7,
20:20, 23:1,
26:22, 31:25,
69:20, 155:23
save
70:17, 70:20,
99:21, 123:16
saving
98:21, 99:9

saw
82:16, 87:6
say
9:4, 12:1,
12:5, 12:11,
23:8, 25:1,
29:21, 31:7,
31:9, 35:3,
38:18, 39:20,
42:12, 42:13,
49:23, 53:13,
53:22, 72:5,
81:24, 86:4,
87:25, 88:12,
90:20, 91:15,
101:25, 102:9,
108:21, 111:8,
120:17, 121:23,
123:20, 124:13,
124:16, 124:21,
127:3, 127:5,
133:1, 133:4,
133:10, 134:18,
140:16, 141:15,
142:11, 148:8,
155:1, 159:15,
167:6, 167:10,
168:18, 183:11
saying
20:16, 27:16,
28:19, 30:11,
30:23, 34:16,
37:10, 38:1,
38:7, 38:24,
40:4, 45:21,
46:20, 47:15,
47:18, 53:5,
56:20, 57:9,
60:9, 61:14,
61:18, 62:17,
67:25, 68:15,
77:13, 79:13,
79:17, 79:23,
80:5, 80:17,
80:21, 81:2,
84:5, 88:5,
88:7, 88:19,
90:4, 91:9,

92:9, 96:16,
101:22, 107:10,
109:6, 129:8,
131:6, 165:8,
165:11, 165:15,
166:5, 167:15,
169:2, 169:5
**says**
17:21, 25:4,
35:9, 53:16,
58:24, 60:4,
64:5, 64:12,
82:6, 90:14,
91:14, 94:5,
94:22, 98:10,
102:10, 103:15,
103:22, 105:8,
106:24, 108:10,
108:11, 112:4,
112:21, 113:12,
114:4, 115:4,
118:18, 118:21,
118:24, 120:18,
123:6, 124:10,
126:2, 126:11,
126:19, 132:6,
138:6, 139:1,
139:13, 143:5,
144:10, 148:18,
150:9, 153:15,
153:18, 162:3,
163:10, 163:13,
167:15, 177:7,
178:21, 180:3,
182:5, 183:3
**scenario**
38:14, 38:19,
102:7
**scheduled**
10:7, 10:14,
11:18, 162:23
**scheme**
15:21, 16:3,
18:10, 19:2,
19:5, 19:19,
19:24, 29:7,
29:22, 30:5,
30:6, 31:14,

31:16, 36:24,
37:10, 38:3,
38:24, 46:7,
49:13, 63:4,
63:11, 65:2,
69:6, 69:8,
69:13, 74:2,
75:13, 82:18,
105:5, 108:25,
119:25, 124:16,
141:3, 142:15,
142:25, 146:9,
149:1, 180:19,
181:18
**schoenhaar**
148:1, 148:4
**schweitzer**
1:25, 2:9,
5:25, 187:3,
187:22
**scope**
143:6, 173:3
**seal**
187:15
**search**
160:8
**searches**
68:25
**second**
14:24, 15:7,
15:12, 15:15,
21:15, 21:21,
21:23, 60:23,
64:14, 94:4,
110:17, 111:22,
118:12, 128:18,
132:5, 162:7,
162:15, 176:15,
179:23
**second-guess**
84:16
**second-guessing**
52:23
**second-layer**
73:1
**section**
16:23, 61:5,
62:12, 62:13,

63:10, 178:16,
183:16
**sections**
61:19
**securities**
35:16, 182:10,
183:8
**see**
11:10, 17:20,
17:21, 18:2,
18:3, 18:4,
19:9, 19:15,
20:7, 22:14,
25:13, 42:8,
44:11, 54:19,
56:19, 57:21,
57:23, 59:22,
61:4, 61:5,
71:8, 72:19,
72:20, 78:19,
79:4, 86:16,
94:20, 96:3,
98:17, 100:11,
102:16, 103:1,
103:13, 103:20,
104:1, 104:6,
104:7, 104:11,
104:15, 104:23,
109:22, 110:9,
111:13, 112:3,
112:5, 112:18,
112:21, 112:23,
112:25, 113:2,
113:14, 114:6,
114:18, 114:24,
115:7, 117:12,
117:17, 118:6,
118:19, 119:2,
123:2, 124:5,
125:24, 126:13,
126:23, 128:25,
129:14, 130:11,
132:11, 137:7,
138:9, 139:21,
140:6, 143:10,
143:12, 144:24,
145:17, 145:21,
147:16, 150:17,

154:18, 162:19,
177:7, 179:4,
180:3
**seek**
46:6
**seem**
30:11, 31:13,
126:20
**seemingly**
20:7
**seems**
152:15
**seen**
15:19, 16:2,
18:18, 19:22,
22:10, 22:15,
23:22, 24:10,
36:4, 44:23,
133:8, 134:1,
134:25
**seize**
69:11
**seized**
69:19
**self-incriminati-**
**on**
10:19, 11:5
**sell**
165:17
**selling**
166:20
**selma**
107:3
**send**
23:11, 38:5,
39:10
**sending**
39:1, 39:12,
72:21
**sends**
144:9
**sent**
126:23, 155:11,
159:3, 162:5
**sentence**
91:14, 97:4,
132:11, 138:21,
140:7

sentences
86:1, 86:4,
86:16, 167:22
sentencing
148:21
separate
47:5, 135:15
separately
45:10
september
17:11, 103:12
service
86:10, 120:20,
126:7
services
86:7, 86:13,
86:20, 86:25,
87:19, 88:1,
88:16, 89:12,
89:17, 89:24,
90:4, 94:9,
94:23, 94:25,
95:22, 96:4,
96:6, 96:14,
96:16, 96:18,
96:25, 98:14,
102:12, 105:9,
105:10, 105:13,
105:18, 105:25,
106:8, 107:14,
107:17, 108:2,
108:3, 108:24,
109:14, 109:22,
110:5, 110:9,
110:12, 110:23,
111:4, 111:9,
114:15, 115:19,
119:13, 120:13,
120:23, 122:2,
123:21, 124:14,
125:20, 127:13,
128:1, 128:9,
130:20, 131:7,
139:16, 140:4,
140:10, 140:18,
141:18, 142:2,
142:3, 142:10,
149:4

session
7:16, 7:25,
9:13, 13:9,
16:12, 17:10,
22:18, 24:9,
24:25, 41:16,
42:1, 70:22,
82:16, 85:25,
147:9
set
44:14, 85:9,
85:22, 162:15,
172:8, 172:17,
173:10, 173:14,
173:20, 173:25,
174:16, 174:21,
175:6, 175:15,
187:14
settle
24:14, 30:12,
80:7, 163:21
settled
16:8, 67:23,
154:6
settlement's
166:10, 167:16
settlements
76:1, 153:21,
153:24, 162:10
settling
26:8
seventh
14:25, 43:20
several
153:19, 163:16,
164:1, 171:10
shall
35:18, 44:5,
44:8, 49:7,
59:4, 60:2,
64:11, 64:20,
182:6, 183:3,
183:11
share
160:9
sharing
150:6
sheet
186:7

sherwin
171:14, 171:17
ship
160:5
shiv
16:8, 16:15,
17:13, 17:22,
18:6, 24:2,
24:6, 46:5,
46:9, 46:16,
47:7, 49:11,
49:25, 50:8,
50:15, 50:23,
51:4, 52:1,
52:15, 53:1,
53:7, 53:18,
67:20, 68:13,
68:19, 69:21,
71:3, 71:11,
75:15, 75:23,
76:15, 78:7,
78:21, 79:5,
79:20, 80:4,
80:19, 80:23,
81:16, 83:25,
97:16, 97:20,
98:5, 104:5,
104:18, 104:24,
105:4, 127:15,
128:3, 131:6,
132:15, 132:20,
132:24, 146:19,
150:24, 151:5,
152:11, 154:14,
155:6, 155:22,
157:14, 158:3,
158:18, 159:9,
161:1, 162:23,
165:1, 165:9,
165:16, 166:23,
168:4, 168:22
shiv's
79:22, 166:20
shortages
123:13
shorthand
187:1
should
31:21, 46:21,

51:17, 66:5,
67:9, 78:6,
78:8, 78:14,
79:14, 79:15,
79:16, 79:17,
80:2, 80:3,
80:18, 80:22,
81:14, 81:17,
81:24, 85:10,
89:21, 90:5,
150:5, 150:10,
158:10, 164:25,
165:16, 169:5,
169:13
shouldn't
74:9, 74:20,
172:20
showed
164:10
showing
129:6
shows
130:7
sic
78:24
side
76:3
signature
18:4, 104:6,
186:13
signature-p1kal
187:20
signed
18:5, 18:6,
21:1, 21:2,
101:8, 104:3,
104:4, 186:8
significance
67:1, 143:16
significant
29:5, 141:17,
144:19, 164:2
signing
19:11, 20:16,
187:10
similar
26:25, 27:2,
27:8, 35:1,

59:10, 60:7,
60:15, 77:19,
94:11, 132:9,
134:16, 156:6,
158:5
**similarly**
70:22
**simply**
39:9, 48:17,
55:15, 83:17,
108:25
**since**
6:15, 14:7,
73:18, 74:3,
126:6, 164:14
**singing**
127:15, 128:8
**single**
123:9, 129:23,
178:5
**sit**
8:13, 22:8,
33:4, 41:19
**six**
123:5, 123:23,
155:6, 167:22
**sixth**
3:8, 14:10,
14:22
**size**
107:4
**skip**
66:4
**slide**
113:18, 118:18
**snow**
47:7
**so-called**
63:23
**sold**
26:6, 164:4,
166:8
**solely**
166:19, 166:20
**solenis**
97:25, 98:7
**solenis's**
98:7

**some**
10:6, 11:17,
13:10, 16:16,
17:13, 17:25,
18:12, 19:13,
21:4, 23:15,
27:10, 36:25,
38:22, 40:1,
45:10, 61:14,
79:24, 85:24,
86:9, 86:23,
90:22, 90:25,
91:10, 91:25,
92:15, 92:19,
92:24, 93:4,
93:9, 93:25,
102:19, 108:16,
120:19, 123:22,
133:22, 139:6,
139:25, 144:12
**somebody**
23:11, 128:7,
131:5, 141:17,
142:1, 142:4,
143:18, 161:9
**somebody's**
142:9
**somehow**
142:14
**something**
33:20, 33:22,
42:13, 53:5,
115:16, 116:3,
116:14, 119:23
**sometime**
159:15, 162:24
**sometimes**
108:4
**somewhere**
47:17
**soon**
11:20, 182:7,
183:4
**sorry**
8:11, 21:13,
21:18, 27:25,
48:5, 66:4,
66:5, 76:25,

99:15, 110:13,
114:21, 117:6,
118:2, 148:8,
170:18, 173:1,
174:25
**sort**
36:23, 38:3,
86:23, 100:4
**sounds**
53:19
**source**
10:23, 25:1,
67:4, 69:2,
69:4, 78:3,
80:16, 83:2,
114:3, 154:2,
161:18, 164:19
**sourcing**
4:17, 100:6,
104:13, 105:2,
106:24, 111:14,
138:6, 139:1,
145:3
**speak**
7:15, 11:9,
37:6, 53:25,
75:22, 79:20,
101:24, 165:22,
166:15
**speaking**
76:7
**speaks**
121:10
**specializes**
118:24
**specialty**
26:1, 36:6,
39:19, 40:11,
41:6, 94:16,
103:10, 104:13,
120:7
**specific**
12:13, 42:21,
57:16, 58:5,
58:16, 75:9,
98:9, 136:18,
137:1, 137:2
**specifically**
17:22, 64:18,

87:23, 113:9,
140:7, 148:15,
152:10, 159:7,
175:7
**specifics**
140:9, 140:14
**speculate**
118:8, 119:15,
141:6, 158:11,
159:1, 182:20
**speculation**
68:21, 69:15,
75:21, 108:20,
114:2, 124:20,
127:8, 141:5
**spend**
91:25, 92:1,
92:7, 92:10,
92:21, 94:1,
129:2, 145:4,
145:11
**spending**
93:6
**spoke**
14:2, 14:7,
151:3
**spot**
172:14
**spreadsheet**
4:22, 125:13,
128:15, 130:21,
130:24
**st**
162:15
**staff**
140:1
**stand**
121:1
**standard**
5:11
**standing**
52:19, 68:23,
163:4
**standpoint**
141:17, 143:20
**start**
15:7, 160:16,
181:23

**started**
151:24, 161:4,
171:6
**starts**
137:4
**state**
5:15, 13:15,
31:20, 55:5,
76:22, 168:7
**stated**
8:1, 12:11,
13:5, 18:17,
22:9, 29:2,
30:25, 40:9,
43:5, 46:25,
52:18, 55:20,
56:5, 59:17,
62:5, 68:22,
73:24, 77:6,
79:3, 80:9,
81:22, 100:5,
108:13, 109:3,
111:8, 115:1,
116:6, 116:21,
119:8, 120:6,
134:1, 134:24,
135:21, 136:10,
137:19, 143:22,
146:5, 146:24,
147:10, 158:15,
160:2, 164:17,
165:23, 166:14,
168:5, 169:10,
169:18, 183:22
**statement**
16:25, 22:2,
86:23, 88:1,
88:8, 88:15,
89:4, 89:6,
93:14, 93:16,
96:9, 96:23,
98:4, 102:16,
105:24, 110:11,
115:17, 122:2,
130:19, 138:9,
138:25, 167:12,
167:23
**statements**
99:25, 101:4,

108:22, 116:2,
134:9
**states**
1:1, 5:5, 15:8,
29:25, 43:25,
48:1, 179:13
**status**
165:23
**stealing**
92:13, 92:22,
93:7, 107:22,
124:11, 126:25,
142:5, 145:25
**stenographically**
187:8
**steps**
52:24, 53:13
**still**
8:1, 14:16,
14:20, 15:3,
15:13, 44:17,
51:21, 59:18,
62:6, 76:2,
80:11, 93:18,
94:2, 154:6,
165:10
**stipulation**
6:2
**stolen**
46:6, 49:12,
49:20, 50:1,
50:9, 50:16,
50:24, 51:5,
52:25, 54:4
**stoneturn**
57:5, 156:11,
156:16, 157:12,
157:17, 158:13,
158:20, 160:23,
184:6
**stoneturn's**
160:18, 160:24
**stop**
170:4
**strategy**
69:17, 170:15
**strength**
107:5

**structure**
9:10, 116:22,
119:9, 174:15
**stuck**
113:24
**subcontractor**
59:9, 60:7,
60:14
**subcontractors**
59:24
**subject**
28:20, 30:23,
40:2, 88:21,
146:10, 148:16,
175:3
**submitted**
44:24, 45:23,
54:18, 56:11,
56:21, 77:25,
88:13
**submitting**
55:4
**subpoena**
45:12, 55:17,
55:23, 56:7,
56:14, 56:25,
57:8, 57:20,
58:3
**subpoenaed**
19:25
**subpoenas**
55:8
**subrogation**
72:10, 148:24,
154:10
**subsequently**
100:12
**substance**
7:20, 151:17
**substantial**
143:8, 143:19
**substantially**
96:6, 149:22
**substantive**
10:19
**subtract**
51:11
**subtracting**
46:15, 47:11,

48:17, 48:23
**sued**
32:12
**suffered**
60:20
**suggest**
52:10, 141:20
**suggesting**
76:13, 142:13
**suit**
149:13
**suite**
3:15
**summaries**
108:13
**summarizing**
107:20, 109:4
**summer**
153:6
**superior**
106:13, 106:18,
106:21, 107:18,
107:24, 108:12,
141:10
**superiors**
98:20, 99:8,
99:20, 100:9,
100:21, 101:5,
101:16, 102:3,
102:4, 127:3,
132:18, 133:4,
133:14, 133:20,
134:8, 136:6,
136:15
**supersedes**
180:7
**supervisor**
42:18
**supervisors**
9:12, 132:14
**supplemental**
85:8
**supplier**
86:9, 90:17,
90:22, 90:23,
91:4, 91:8,
91:13, 91:19,
91:22, 92:6,

93:21, 94:7,
94:9, 94:24,
100:7, 106:25,
107:1, 118:23,
120:19, 127:16,
129:8, 129:12,
130:6, 145:20,
149:4
**suppliers**
17:24, 25:20,
25:25, 26:2,
26:5, 26:9,
26:21, 27:5,
27:22, 28:4,
28:5, 28:8,
28:16, 28:17,
29:10, 30:5,
30:13, 30:17,
30:18, 31:1,
31:4, 31:15,
32:12, 32:22,
33:25, 34:1,
86:6, 88:2,
88:17, 89:11,
89:23, 90:3,
91:10, 91:11,
92:6, 96:25,
97:18, 99:12,
128:24, 129:3,
130:10, 138:1
**supply**
92:3, 107:2,
107:5, 118:22,
126:6
**support**
15:14, 21:22,
22:6, 25:17,
35:25, 55:14,
56:1, 59:15,
65:25, 66:15,
77:17, 82:10,
87:25, 88:8,
88:15, 102:16,
105:24, 106:8,
109:13, 110:3,
110:10, 111:3,
114:14, 115:17,
118:4, 122:1,

125:19, 127:12,
127:25, 130:18,
140:6, 142:23,
145:10, 146:8
**supporting**
22:3, 85:21,
89:3, 89:5,
110:4
**supports**
42:9, 123:20
**supposedly**
42:16
**suppressing**
141:9
**sure**
88:24, 176:11,
181:8, 182:23,
184:24
**surrendered**
35:15
**sustained**
60:3, 60:24,
62:1, 62:14
**sworn**
6:1, 6:4
**sylvester**
3:4, 4:3, 5:16,
5:17, 6:7, 11:2,
33:3, 33:7,
33:9, 34:10,
34:15, 40:12,
40:16, 40:18,
42:3, 42:20,
42:23, 43:15,
70:11, 70:15,
84:23, 85:5,
102:20, 103:1,
103:4, 109:15,
109:19, 120:18,
121:4, 122:3,
122:9, 125:3,
125:8, 125:12,
125:15, 127:19,
127:23, 131:13,
131:16, 131:22,
147:12, 152:19,
152:23, 153:2,
168:23, 170:18,

170:22, 171:3,
172:15, 172:24,
173:1, 173:6,
173:9, 173:23,
174:5, 174:7,
174:9, 174:25,
175:11, 175:13,
176:5, 181:11,
181:14, 184:20,
185:8
**system**
40:1, 103:23

---

**T**

**tab**
128:21, 130:5
**table**
83:7
**take**
14:21, 40:14,
40:17, 46:17,
68:23, 74:9,
80:7, 92:13,
92:22, 93:6,
102:18, 131:13,
147:11, 162:23,
164:7, 184:14
**taken**
42:17, 43:12,
53:14, 68:18,
85:2, 131:19,
187:4, 187:7
**taking**
20:25, 66:11,
66:18, 76:22,
76:23, 153:6,
182:9, 183:7
**talk**
7:20, 47:5
**talked**
14:24, 146:15,
171:4
**talking**
7:11, 12:2,
27:13, 45:25,
47:4, 47:6,
60:1, 86:2,
89:2, 90:22,

104:18, 117:10,
126:18, 130:13,
137:9, 140:8,
140:12, 160:18
**talks**
60:24
**tank**
102:13, 107:4,
123:12, 124:3,
129:11
**tanks**
124:3
**target**
94:1
**targets**
91:25, 92:9,
93:6
**task**
145:11, 159:3
**tasked**
145:3
**tax**
69:20
**taxes**
24:4
**tech**
17:1, 143:14
**technical**
126:7
**technician**
3:18, 125:11
**telemetry**
107:2, 123:12,
124:3, 126:8,
129:11
**tell**
13:1, 13:6,
43:22, 105:22,
105:25, 111:11,
111:23, 116:3,
116:14, 121:16,
127:2, 132:18,
135:10, 147:20,
151:17, 153:3,
158:2, 169:21,
176:10, 179:23,
179:25
**telling**
84:14, 99:20,

107:18, 108:15,
120:2, 121:6,
166:3
**ten-minute**
131:14
**tenants**
165:17, 166:7
**tennessee**
1:2, 5:7
**tenth**
14:11, 14:23
**term**
11:25, 12:1,
12:3, 12:5,
12:8, 12:12,
145:20, 182:12,
183:10
**terminate**
182:6, 183:4,
183:12
**terminated**
61:8, 61:17,
182:17, 183:2,
183:18
**termination**
59:13, 61:2,
181:22, 182:2,
182:15
**terming**
160:11
**terms**
15:9, 21:16,
21:25, 32:24,
34:4, 126:4,
126:5, 126:8,
158:14, 165:7,
165:24, 172:20,
179:18
**terri**
147:25, 148:4
**testified**
6:4, 37:8,
101:17
**testifying**
101:6, 142:19
**testimony**
6:16, 6:21,
7:9, 7:10, 7:22,

8:4, 9:23, 11:1,
11:4, 20:21,
21:8, 22:24,
34:19, 34:21,
37:18, 37:20,
59:18, 67:16,
68:1, 68:4,
68:6, 74:21,
75:4, 78:23,
100:8, 100:11,
100:16, 100:18,
101:3, 101:11,
101:12, 101:21,
101:25, 116:24,
120:16, 169:17,
186:4, 186:6,
187:6, 187:7
**texarkana**
107:2
**th**
6:13, 6:17,
6:21, 6:25,
7:13, 7:24,
14:3, 14:7,
86:1, 103:12,
109:20, 110:8,
110:17, 111:16,
122:13, 122:21,
122:24, 123:4,
124:25, 125:22,
143:11, 144:10,
153:8, 153:15,
155:11, 155:12,
161:23, 162:3,
162:24, 163:7,
168:3, 170:3,
170:5, 187:15,
187:16
**thank**
6:8, 72:17,
184:11, 184:19
**thanks**
131:16, 145:8,
184:20
**theft**
8:3, 8:9, 8:15,
9:21, 11:7,
15:19, 15:24,

18:10, 19:5,
22:4, 23:7,
29:7, 29:22,
37:2, 37:9,
38:9, 39:2,
39:14, 46:7,
54:5, 93:24,
102:2, 102:7,
105:5, 108:25,
119:25, 124:16,
128:6, 141:3,
142:9, 142:15,
142:25, 146:9,
171:14, 171:18,
171:21, 172:10,
180:19, 181:18,
182:18, 183:3,
183:17
**themselves**
5:15, 132:23
**then-employee**
60:10
**thereafter**
187:8
**therefore**
26:7, 30:20,
33:11, 33:13,
45:22
**thief**
102:1, 107:9,
108:6, 141:2
**thiefs**
108:4
**things**
93:18, 107:11,
120:5, 124:10,
124:17, 126:2
**think**
23:18, 24:22,
36:16, 42:3,
42:20, 42:21,
45:18, 61:11,
70:17, 70:22,
75:14, 85:12,
93:13, 99:18,
100:17, 128:22,
150:10, 150:14,
150:22, 171:25

**thinking**
150:14, 150:22
**thinks**
53:7
**third**
14:25, 25:3,
25:13, 25:17,
26:17, 27:5,
27:8, 27:17,
28:20, 30:15,
30:20, 30:23,
31:8, 34:5,
34:18, 35:17,
36:25, 37:3,
37:12, 37:13,
37:17, 38:5,
38:6, 39:2,
63:1, 63:7,
63:13, 64:16,
103:8, 110:7,
123:6, 159:5
**thirteenth**
15:1, 77:13,
77:17
**thought**
49:4
**thoughts**
150:5, 150:10
**thousands**
22:15
**three**
122:20
**through**
21:20, 42:7,
49:12, 83:19,
94:8, 94:14,
94:23, 100:4,
144:16, 144:21,
144:23, 148:13,
183:19
**tier**
27:13, 86:3,
86:6, 86:9,
86:20, 87:20,
88:2, 88:16,
89:10, 89:22,
90:3, 90:14,
90:17, 90:21,

90:23, 91:4,
91:11, 91:12,
91:19, 92:6,
93:21, 94:11,
96:25, 106:25,
107:1, 120:19
**time**
5:10, 5:11,
6:15, 8:19,
12:4, 12:16,
15:16, 35:6,
42:14, 43:11,
43:14, 44:17,
60:15, 65:7,
69:25, 72:22,
72:23, 73:2,
84:17, 85:1,
85:4, 85:13,
94:3, 95:10,
131:18, 131:21,
140:1, 143:4,
154:21, 154:25,
159:14, 159:18,
160:9, 161:16,
162:4, 162:21,
163:5, 167:20,
181:20, 184:12,
185:4
**title**
106:17
**today**
5:11, 5:20,
5:24, 6:25,
7:22, 8:13, 9:8,
22:8, 41:19,
57:10, 59:17,
66:21, 82:16,
146:15, 147:3
**today's**
5:9, 6:24, 7:16
**together**
119:16
**told**
34:8, 84:18,
100:21, 133:14,
135:4, 135:25,
136:14, 169:8
**ton**
107:3

**took**
7:19, 52:24,
113:23, 156:24,
180:19, 182:16
**top**
102:9, 106:6,
123:2, 139:13,
139:14, 140:13
**total**
24:2, 78:22,
178:9
**totality**
64:2, 82:23,
120:6
**touch**
87:7
**townsend**
3:5, 5:18
**trace**
69:12
**traceable**
69:5
**tracey**
147:25, 148:15,
148:18
**tracked**
92:2, 92:11
**tracks**
105:12, 107:13,
108:4, 108:17
**tracy**
148:3
**trail**
71:1, 124:18
**training**
129:12, 130:2
**transaction**
86:6, 135:7,
135:8, 135:11
**transactions**
116:8, 138:7,
138:13, 139:5,
139:7
**transcript**
6:15, 12:25,
17:5, 70:14,
85:15, 102:25,
109:18, 122:8,

125:7, 147:15,
153:1, 176:9,
184:23, 187:5
**transcription**
186:6
**transcripts**
7:8, 79:3
**transferred**
16:18, 17:25,
37:3, 155:9
**transport**
86:11, 120:20
**tried**
20:1
**trigger**
179:7
**trotta**
171:25
**trouble**
79:12
**truck**
129:11, 129:12,
129:18, 129:22,
129:23, 130:1
**trucks**
129:18
**true**
92:19, 117:1,
124:11, 134:4,
186:5, 187:6
**truly**
126:25
**trust**
102:3, 102:6
**truth**
108:15, 120:3,
121:6
**truthful**
100:12, 100:13,
102:6
**try**
21:21, 50:9,
50:15, 51:5,
124:17, 140:24
**trying**
107:12, 126:19
**turn**
85:11, 85:17,

139:12, 153:7,
176:15, 178:15
**turnaround**
185:4
**turned**
163:19
**turns**
11:3, 101:18
**twelfth**
15:1, 65:19,
65:21, 66:7,
66:15, 77:20
**twice**
32:11, 129:13,
164:15
**two**
12:6, 12:22,
30:22, 33:16,
45:18, 59:10,
71:21, 73:9,
86:1, 86:4,
86:16, 87:14,
88:13, 88:20,
89:4, 104:20,
105:8, 112:25,
149:10, 153:17,
169:3, 181:11
**two-page**
144:5
**type**
22:13, 26:25,
56:7, 78:19,
79:4
**types**
27:8, 45:14
**typewriting**
187:9
**typical**
87:9, 102:7

---
**U**
---

**ultimately**
54:18
**unable**
71:23, 72:10,
73:11, 119:8,
158:12, 164:7,
165:22, 167:4,

168:17, 171:1
**unanswered**
71:16
**unbeknownst**
146:1
**unclean**
82:8, 82:21,
82:25
**uncovered**
55:14, 56:2
**under**
8:9, 8:16,
8:18, 9:22,
10:1, 15:24,
20:11, 23:25,
25:10, 27:16,
29:11, 30:4,
31:14, 32:4,
32:24, 33:21,
34:18, 35:19,
37:14, 38:9,
38:25, 39:14,
41:13, 44:9,
45:1, 45:17,
45:23, 46:7,
47:10, 51:22,
52:21, 54:4,
55:14, 56:22,
57:12, 59:4,
62:4, 64:6,
65:8, 66:10,
66:12, 72:6,
80:12, 94:6,
95:1, 106:11,
106:23, 143:20,
154:7, 155:9,
155:16, 162:8,
176:17, 177:19,
178:2, 178:3,
178:4, 180:15,
184:15, 187:9
**undersold**
169:3
**understand**
9:15, 10:6,
10:13, 14:21,
15:3, 20:2,
23:4, 23:25,

27:23, 28:2,
28:6, 28:12,
32:9, 40:19,
41:9, 41:18,
48:4, 48:15,
49:14, 49:16,
50:2, 50:20,
51:7, 53:15,
56:8, 57:14,
57:16, 60:8,
60:11, 60:22,
62:16, 62:19,
62:23, 65:3,
66:24, 67:4,
68:24, 69:3,
69:5, 69:10,
69:18, 69:25,
74:15, 75:3,
79:7, 80:14,
82:14, 83:4,
89:20, 91:24,
97:15, 97:24,
100:1, 101:15,
101:20, 105:3,
106:14, 106:16,
109:10, 112:12,
115:22, 116:7,
120:6, 129:17,
144:16, 144:18,
145:10, 145:16,
160:4, 166:18,
175:25
**understanding**
47:24, 93:2,
139:25, 154:20
**understands**
62:22, 64:24,
117:3, 137:18
**understood**
167:24
**underwriter**
44:5
**underwriters**
25:8, 31:21,
59:4, 60:2,
64:9, 64:15,
64:19, 66:12,
66:19, 76:24

**unfortunately**
71:15
**unilaterally**
39:25
**unique**
38:17, 53:12
**united**
1:1, 5:5
**unknown**
77:9, 78:2,
81:5, 164:23
**unlawful**
22:10, 22:13,
22:19, 22:21,
23:2, 23:6,
182:9, 183:7
**unless**
145:12, 165:1,
184:12
**unquote**
44:10
**unreasonable**
52:4, 52:11,
53:8, 73:22,
76:19, 164:14,
165:8, 165:12,
165:20, 167:11,
167:19, 168:18
**unreasonably**
52:12
**until**
160:12, 161:8,
170:8
**usage**
103:18
**use**
45:5, 47:2,
54:8, 54:16,
54:24, 55:16,
92:2, 103:22
**using**
38:4, 98:21,
98:22, 99:11,
123:12
**usually**
76:11

--- V ---

**v**
1:7

**valid**
180:12
**valuable**
111:4, 114:15,
115:18, 119:13,
124:14, 125:20,
127:13, 127:16,
128:1, 128:9,
130:19, 131:7
**value**
86:13, 86:19,
86:24, 87:19,
88:1, 88:16,
89:12, 89:17,
89:23, 90:3,
94:8, 94:22,
95:1, 96:14,
96:17, 96:24,
120:12, 120:22,
123:1, 123:7,
124:2, 129:2
**value-added**
86:7, 126:20
**valued**
164:16
**van**
67:17, 71:4,
71:8, 74:6,
74:15, 75:4
**various**
39:18, 40:11,
45:8, 45:12,
71:16, 92:3,
95:5, 98:14,
100:2, 102:10,
102:12, 109:7,
124:2, 126:1,
126:24, 129:9,
166:17
**veith**
3:6, 5:18
**vendors**
92:3
**versus**
51:15, 81:18,
86:25, 87:20,
119:25, 129:3
**video**
5:10, 5:13,

185:7
**videographer**
3:19, 5:2,
5:11, 5:24,
43:10, 43:13,
84:25, 85:3,
131:17, 131:20,
185:6, 185:10
**videotaped**
1:14, 2:1, 5:3
**violation**
39:22
**virtually**
1:15, 2:2
**virtue**
58:17
**visits**
129:13
**voice**
5:14
**voluntarily**
36:4, 36:8,
36:22
**voluntary**
35:10, 35:23,
36:17, 38:1,
38:25, 39:7,
39:17, 39:20,
40:5

**W**

**wait**
160:12, 161:8
**waiting**
10:3, 11:12,
33:4
**waive**
148:24
**waived**
15:11, 154:9
**waiver**
82:8, 82:21
**walked**
81:14
**want**
19:8, 19:15,
22:14, 33:8,
45:19, 68:5,

85:10, 90:1,
97:18, 97:25,
98:7, 133:10,
140:7, 150:9
**wanted**
85:24, 153:23,
154:5
**wants**
107:23, 180:17
**way**
10:3, 11:6,
35:4, 37:4,
53:6, 53:23,
63:4, 66:11,
66:19, 76:23,
104:10
**ways**
90:19, 91:17
**we'll**
40:17, 47:5,
82:5, 109:14,
110:16, 131:15,
184:14
**we're**
8:6, 8:25,
35:5, 40:15,
41:17, 43:5,
43:8, 43:16,
44:17, 52:5,
52:13, 61:11,
61:23, 64:1,
82:23, 102:22,
122:5, 131:23,
138:4, 138:24,
165:5, 166:14,
181:8
**we've**
15:19, 32:17,
36:4, 40:13,
122:19, 133:7,
172:12
**wednesday**
1:16
**week**
9:16, 10:7,
10:15, 11:1,
11:10, 11:18,
11:21, 12:6,

117:5
**weeks**
6:14, 12:2,
17:10, 42:5
**weigh**
150:4
**weren't**
79:7, 79:10
**western**
1:2, 1:3, 5:6,
5:7
**wet**
107:5
**whatever**
24:3, 95:22,
96:4, 96:16,
165:18
**whereof**
187:14
**wherever**
148:18, 180:20
**whether**
8:8, 8:15,
8:22, 8:25,
9:20, 10:4,
10:11, 11:7,
11:13, 11:22,
23:7, 29:8,
29:9, 29:11,
42:5, 59:19,
59:21, 63:22,
64:9, 68:6,
70:2, 71:18,
72:11, 74:10,
74:21, 84:2,
91:7, 93:24,
100:18, 107:17,
114:18, 114:19,
114:24, 115:7,
116:14, 117:20,
119:21, 119:24,
121:7, 121:10,
136:19, 143:16,
146:25, 148:20,
150:5, 160:1,
160:11, 161:13,
172:19, 173:14,
173:20, 173:24,

180:18, 182:25,
183:1
**whole**
15:9, 21:24,
25:5, 30:1,
35:10, 58:25,
63:11, 64:5,
82:7
**wholesale**
145:18
**william**
3:13, 5:23
**williams**
171:14, 171:17
**willing**
79:8, 79:10,
157:3, 157:22
**wilson**
57:5, 87:15,
88:14, 89:3,
90:5
**withdraw**
14:8, 173:15
**withdrawing**
13:14, 13:19,
14:4, 14:17
**within**
9:6, 9:7, 9:10,
9:23, 11:24,
12:1, 12:5,
12:6, 23:10,
30:14, 30:20,
33:1, 35:6,
44:21, 55:9,
92:3, 110:25,
117:4, 126:24,
136:11, 174:14,
184:7, 184:22
**without**
126:8, 126:11,
156:4, 158:1
**witness**
6:1, 6:3,
10:21, 10:25,
34:13, 42:6,
67:17, 67:22,
118:8, 121:2,
125:14, 127:21,

151:13, 152:13,
152:17, 156:3,
156:13, 157:25,
158:10, 170:14,
171:1, 172:22,
173:2, 173:22,
174:23, 175:1,
182:19, 184:2,
184:11, 184:13,
187:14
**witnesses**
7:9, 22:25
**word**
181:22
**words**
169:8
**work**
143:6, 143:9,
161:4, 161:12,
170:16
**worked**
63:4, 75:25,
139:2, 148:21
**working**
70:22
**works**
50:25, 104:25,
123:24
**worth**
164:11, 165:2
**wouldn't**
68:5, 76:17,
101:8, 124:15,
141:1, 157:5,
167:9
**wrap**
176:3
**writes**
71:13, 107:10
**writing**
184:9
**written**
96:12, 106:20,
124:7, 128:7,
157:12
**wrong**
48:20
**wrongly**
72:9

**wrote**
107:8

### X

**x**
1:4, 1:13

### Y

**yeah**
8:13, 21:20,
40:16, 41:2,
48:6, 77:2,
83:22, 87:23,
96:2, 99:5,
99:16, 101:2,
106:16, 110:2,
111:25, 114:23,
115:12, 118:16,
125:10, 127:24,
130:17, 131:16,
134:13, 138:25,
144:4, 147:18,
151:16, 160:24,
168:2, 179:23,
181:11, 181:25,
182:24
**year**
126:9, 129:13,
134:9, 145:6,
159:15
**years**
22:23, 44:24,
75:25, 76:9,
149:10, 171:10
**yesterday**
7:1
**yourself**
20:7, 148:19

### Z

**zurich**
1:10, 4:23,
72:10, 73:1,
73:5, 146:23,
146:25, 147:5,
147:23, 148:3,
148:7, 148:11,
148:15, 150:7,

150:20, 151:2,
151:19, 152:2,
152:6, 152:11
**zurich's**
72:13

### $

**$1**
75:1, 80:14,
149:5, 165:14,
168:12, 176:24,
177:4
**$15**
24:2, 24:13,
24:19, 24:23,
46:10, 46:17,
46:19, 46:21,
47:9, 52:2,
53:17, 67:10,
74:11, 74:18,
75:15, 76:2,
76:15, 78:9,
79:15, 146:14,
146:18, 154:22,
163:17, 164:13,
176:22
**$16**
71:12, 149:8
**$2.7**
26:11
**$20**
177:14, 178:8
**$30,000**
129:14
**$450**
144:14
**$500,000**
177:8, 177:23
**$8**
164:11, 165:1,
165:10
**$8,000**
126:9
**$844,000**
47:18, 52:3
**$844,560**
53:16
**$958,599**
56:10, 57:6,

57:17

### .

**.00130540**
4:20
**.00131603**
4:21
**.00149126**
4:15
**.00150855**
4:18
**.00167770**
4:10
**.00168402**
4:13

### 0

**00**
43:11
**000415**
179:20
**00130542**
4:20
**00149127**
4:15
**00150894**
4:18
**00167783**
4:10
**00168404**
4:13
**002434**
4:23, 147:23
**00290**
153:9
**01**
1:17, 5:10
**022**
178:17, 178:18,
178:20, 180:9
**02789**
1:8, 5:8
**034**
182:5
**04**
85:4
**0540**
123:4

**0541**
123:3
**06**
185:12, 185:13
**08**
123:5
**0856**
112:1
**0857**
112:19
**0859**
115:3
**0866**
117:9

---
**1**
---

**1**
85:4
**1.9**
28:7, 28:19,
34:17, 34:25
**10**
1:17, 4:16,
5:10, 13:3,
13:7, 13:8,
13:11, 13:20,
14:16, 25:14,
43:14, 87:10,
109:14, 109:15,
109:17, 110:1,
110:15, 110:17,
111:11, 119:10,
153:16
**102**
4:13, 4:15
**109**
4:18
**11**
4:19, 13:11,
43:11, 43:14,
43:21, 85:12,
85:18, 86:2,
86:17, 88:9,
96:1, 96:2,
96:3, 96:14,
97:5, 120:19,
122:3, 122:6,
123:5, 123:14,

143:11, 144:10
**12**
4:7, 4:21,
13:11, 58:22,
64:4, 66:3,
66:6, 84:23,
85:1, 90:9,
90:12, 94:5,
95:2, 98:10,
117:8, 122:4,
122:6, 124:24,
125:3, 125:9,
125:17, 125:18,
131:3
**122**
4:20, 4:21
**125**
4:22
**126,000**
129:3, 129:15
**127**
106:5
**13**
4:22, 13:12,
66:3, 66:5,
66:6, 102:9,
106:7, 109:24,
122:11, 122:13,
122:16, 122:21,
122:24, 123:4,
125:5, 125:6,
125:11, 125:12,
128:16, 130:17,
153:8, 153:15
**14**
70:23, 132:1,
132:3, 132:6,
134:14, 137:3,
143:14, 144:2,
145:1, 155:11
**14.1**
48:19, 49:1
**14.15**
47:22
**1468404**
103:9
**147**
4:23

**149126**
106:5
**15**
4:9, 4:16,
13:10, 13:20,
14:1, 14:16,
17:18, 46:22,
47:11, 47:12,
47:14, 47:16,
47:19, 47:22,
48:24, 51:11,
67:18, 67:23,
70:12, 70:13,
70:16, 71:12,
80:3, 80:7,
80:16, 80:19,
80:22, 81:10,
81:15, 84:3,
138:5, 138:21,
149:4, 149:6,
149:8, 155:12,
169:20, 177:18,
178:14
**15222**
3:9
**153**
4:24
**16**
4:23, 139:13,
139:14, 140:13,
143:5, 147:11,
147:14, 168:20,
187:15
**160,000**
162:7
**17**
4:8, 17:2,
17:4, 17:6,
19:3, 24:1,
146:16, 161:23,
162:3, 162:24
**174,000**
130:9
**176**
4:25
**18**
4:24, 6:13,
6:17, 6:21,

6:25, 7:13,
7:24, 14:3,
14:7, 86:1,
152:22, 152:24,
152:25, 153:3,
168:6, 182:3
**187**
1:24
**19**
103:12
**1925**
144:11
**1926**
144:12

---
**2**
---

**2**
64:14, 131:15,
131:18, 131:21,
144:10
**2.7**
26:16, 26:20,
27:4, 30:12,
34:16, 34:25
**20**
103:12, 155:11,
178:21, 180:8,
187:16
**2009**
117:15
**200910184384.6**
117:15
**2011**
98:12
**2015**
110:8, 110:18,
111:16, 116:1
**2017**
109:20
**2019**
11:15, 103:12,
122:13, 122:21,
123:4, 124:25,
125:22, 142:17,
143:1, 143:11,
143:17, 146:11,
181:19
**2020**
98:12

**2021**
155:4, 155:7,
157:1
**2022**
17:11, 71:7,
71:13, 72:23,
73:19, 153:6,
153:8, 155:4,
157:1, 161:23,
162:6, 162:9,
162:25, 163:7,
167:11, 168:3,
170:3, 170:5,
170:8, 171:6
**2023**
6:13, 7:25,
157:21, 159:15,
161:2, 161:4
**2024**
1:16, 5:9, 8:7,
8:14, 187:16
**2026**
187:17
**21**
84:23, 85:1
**210**
3:8
**22**
1:8, 5:8
**23**
153:17
**24**
131:18
**25**
155:11, 163:7,
168:3, 170:3,
170:5
**27**
4:16, 109:20,
110:8, 110:17,
111:16, 155:5
**288**
161:24, 162:1
**29**
162:18, 179:24
**2nd**
71:7, 71:13
_____ 3 _____
**3**
64:16, 162:3

**30**
59:12, 61:2,
61:16, 124:25,
125:22
**31**
162:15
**32**
149:1, 162:18
**33131**
3:16
**35**
131:15
**36**
131:21, 179:24,
182:3
**39**
118:13
**3rd**
5:9, 8:6, 8:14
_____ 4 _____
**4**
145:1, 153:17,
185:12, 185:13
**41**
114:5
**48**
162:3
_____ 5 _____
**5**
153:16
**519935**
1:23
**59**
144:10
_____ 6 _____
**680**
3:15
_____ 7 _____
**70**
4:10
**777**
3:15
_____ 8 _____
**85**
4:11

**893**
118:14, 118:15