IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| INTERNATIONAL PAPER COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:22-cv-2789-MSN-CGC ) |
| BEAZLEY INSURANCE COMPANY, INC. and ZURICH AMERICAN INSURANCE COMPANY, | ) JURY TRIAL DEMANDED ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF INTERNATIONAL PAPER COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINION OF DEFENDANT'S EXPERT <u>ROSEMARY COATES</u>**

International Paper Company ("IP") has moved to exclude the proffered expert opinion testimony of Ms. Rosemary Coates. Ms. Coates has opined that it was reasonable and appropriate for DGS and Mid-South to charge an 8%-10% markup for the specialty chemicals that they bought from the Majority Suppliers and re-sold to IP. In so opining, Ms. Coates does not explain how she calculates this specific percentage, other than to say that she has years of experience working with various distribution companies – though none like DGS or Mid-South – and that such a mark-up range is reasonable for a typical distribution company. In so opining, Ms. Coates makes no effort to compare the services of DGS and Mid-South (or lack thereof) with services provided by a typical distribution company. She simply declares that 8%-10% is a reasonable amount of mark-up to have been charged by DGS and Mid-South. Beazley's brief in opposition to IP's motion to exclude Ms. Coates' expert opinion fails to remedy the infirmities in Ms. Coates' proffered opinion for the following reasons:

**First**, the Sixth Circuit does not "condone Ms. Coates' approach." ECF No. 108 at 3. Rather, Ms. Coates may rely on her experience as a basis to form her opinion, but she still "must include how and why the expert reached a particular result, not merely [her] conclusory opinions." *Jones v. Varsity Brands, LLC*, 20-cv-2892, 2024 WL 457173, at *3-4 (W.D. Tenn. Feb. 6, 2024) (Lipman, J.) (internals omitted). Even when an expert "has reviewed the relevant materials" and has "evaluated literally hundreds" of cases, as Ms. Coates purports to do, she must still "establish a nexus between [her] substantial experience" and the mark-up calculation "presently at issue." *Davis v. United States*, 302 F. Supp. 3d 951, 958-60 (S.D. Ohio 2017); *see also Vaughn v. Konecranes, Inc.*, 642 F. App'x 568, 577 (6th Cir. Mar. 1, 2016) ("The record demonstrates that Heath is . . . familiar with the mechanical workings of cranes. He lists the documents he reviewed to reach his conclusions, but the report does not explain *how* his experience led him to his conclusions."); *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 408 (6th Cir. 2006) (abrogated on other grounds); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 680 (6th 2011).

In *Williams v. Syphan*, a semi-truck struck a person on the highway, and the dispositive issue in the case became whether the victim was "on the shoulder and not in the roadway." 2023 WL 1305084, at *1 (6th Cir. Jan. 31, 2023). To prove that the semi-truck was at fault, an expert witness opined "that [the victim] stood . . . within one-to-two feet of the [shoulder] line, and that the right front side of the truck also crossed onto the shoulder, between one-to-three feet past the [shoulder] line." *Id.* at *2. The Sixth Circuit affirmed the exclusion of the expert because "no reliable methodology connects" the victim's location "to the known facts." *Id.* The expert relied on his "training and experience" and the "totality of the available data," but the Sixth Circuit held that these bases for the expert's opinion "cannot quantify the accident's location" or "explain [the expert's] conclusion about where the crash occurred." *Id.* at *3-4. The reasoning in *Williams*

applies here. Like in *Williams*, where the expert's reliance on his "training and experience" and the "totality of the available data" did not demonstrate how the expert "quantif[ied] the accident's location," Ms. Coates' purported "forty years of experience" and "review[] [of] the relevant facts from the case" do not demonstrate how she quantified the 8% to 10% mark-up percentage based on the services allegedly performed by DGS and Mid-South. *Id.*; ECF No. 108 at 3.

The cases Beazley relies on do not support Ms. Coates' failure to show her work. Again, an expert can rely on experience and the relevant materials to form an opinion, but the expert must also explain her methodology. In *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, the expert based his testimony on his experience and methodology, as Beazley notes. 474 F.3d 288, 296 (6th Cir. 2007); ECF No. at 11. But, unlike Ms. Coates, the expert in *Surles* also met his burden of "adequately explain[ing] how [his] experience leads to the conclusion reached." *Id.* The expert, retained in a case against Greyhound after a passenger attacked a driver and caused an accident, used his threat assessment experience "to make sense of" prior incident reports involving mentally ill passengers on Greyhound buses to "evaluate" whether Greyhound was providing adequate training to its bus drivers. *Id.* at 293-94. In his report, the expert went page-by-page and even line-by-line through Greyhound's training material to show how it did not adequately address potential incidents involving mentally ill passengers. *See* Ex. 1, May 3, 2005 Declaration of Robert J. Martin in *Surles v. Greyhound Lines, Inc.* at 3-4, 8-12 (also available at 2005 WL 6746789). The expert "adequately explained" how he reached his conclusion by interpreting data in prior incident reports, assessing Greyhound's bus driver training, and pointing out why the training was inadequate. *See Surles*, 474 F.3d at 296.

The other cases cited by Beazley are inapposite because they do not involve challenges, like IP's challenge of Ms. Coates, based on a failure to explain how experience leads to a proffered

opinion. *See Lewis v. S. Tr. Ins. Co.*, 22-cv-1079, 2023 WL 4671214, at *4 (W.D. Tenn. July 20, 2023); (party sought to exclude an expert because he lacked a "reasonable factual basis," for his opinions); *EEOC v. Autozone, Inc.*, No. 2923, 2005 WL 3591641, at *4 (W.D. Tenn. Dec. 29, 2005) (party sought to exclude expert because he assumed the validity of certain pieces of evidence); *First Tenn. Bank Nat'l Assoc. v. Barreto*, 268 F.3d 319, 333-35 (6th Cir. 2001) (party sought to exclude an expert's methodology because the methodology was not peer reviewed). Unlike the cases relied on by Beazley, this situation with Ms. Coates is analogous to *United States v. An Easement & Right-of-Way Over 3.74 Acres of Land*, where a land valuation expert in an eminent domain proceeding relied on "his extensive . . . experience" to opine that a piece of land suffered a "50 percent" diminution in value. 415 F. Supp. 3d 812, 817 (M.D. Tenn. 2019). He did not "explain the methods and principles used" to reach the 50 percent figure and "instead, his conclusion that the value of the area . . . is diminished by 50 percent appears to be a random and speculative extrapolation." *Id.* at 826. Similarly, Ms. Coates has picked an "8% to 10%" value at "random" without an explanation of how she reached her figure.

**Second**, while weakness in the factual basis of an expert's opinion normally goes to weight rather than admissibility, the expert still must put forward "some support" for her opinion "in the record." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008). Ms. Coates's expert report did not cite to a single specific document from the record to support her opinion that DGS or Mid-South provided value-added services that she equated to an 8%-10% markup. Beazley's Brief seems unable to support Ms. Coates' testimony, either. Ms. Coates claimed that Mark Allen provided "chemical engineering services" to "adjust machinery" and "work with the engineers on the production line." ECF. No. 89 at 14. In contrast, Beazley merely asserts that "Mark Allen . . . performed telemetry and monitored IP's tank levels and, after analyzing when the mill was likely

to run out of a chemical, he would place an order." ECF No. 108 at 17. Beazley makes no mention of Mark Allen working on the production line to adjust IP's machinery, because Mark Allen did not testify that he performed such services. Beazley also mis-characterizes the argument, such as when it asserts that IP recognizes the provision of the "A1 Ton pricing model" was a value added service. ECF No. 108 at 19. Regardless of whether A1 Ton pricing is valuable, Ms. Coates had no idea whether DGS provided the A1 Ton pricing model, so she cannot opine that DGS was entitled to a mark-up for provision of this supposed value-added service. ECF No. 89 at 19. Finally, Ms. Coates' testified that the 8% to 10% mark-up is the "'absolute floor, the bottom' . . . and, 'normally, the distributor would try to get additional percentage points based on the kind of value-added services they provide.'" ECF No. 108 at 15. According to Beazley, "even if any specific service was not provided, Ms. Coates would still believe that the 8%–10% was the bare minimum that DGS and Mid-South would be entitled to." *Id.* Beazley posits that Ms. Coates' opinion is that a distributor such as DGS and Mid-South should receive an 8% to 10% mark-up even if it does nothing of value to earn the markup. This view is an "obvious flaw" that vigorous cross examination cannot remedy, *Lionel, LLC*, 472 F.3d at 408, and should not be presented to a jury.

March 21, 2024

s/John Sylvester

| | |
|---|---|
| Jason W. Callen | John M. Sylvester (Pro Hac Vice) |
| TN Bar #015076 | Laura K. Veith (Pro Hac Vice) |
| K&L Gates LLP | Nathan Townsend (Pro Hac Vice) |
| 501 Commerce Street | K&L Gates Center |
| Suite 1500 | 210 Sixth Avenue |
| Nashville, TN 37203 | Pittsburgh, Pennsylvania 15222 |
| (615) 780-6700 | (412)-355-6500 |
| Jason.callen@klgates.com | John.sylvester@klgates.com |
| | Laura.veith@klgates.com |
| | Nathan.townsend@klgates.com |