**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL PAPER COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:22-cv-2789-MSN-CGC** |
| | ) | |
| **BEAZLEY INSURANCE COMPANY,** | ) | **JURY TRIAL DEMANDED** |
| **INC. and ZURICH AMERICAN** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>PROPOSED CIVIL JURY INSTRUCTIONS</u>**

Plaintiff International Paper Company ("IP") and Defendant Beazley Insurance Company ("Beazley"), in accordance with the Pretrial Procedures (ECF No. 110), respectfully request the Court to instruct the jury in accordance with the following joint Uniform Jury Instructions. The parties also separately submit several jury instructions for the Court's consideration, upon which the parties did not reach agreement. The parties reserve the right to alter, add or delete instructions during trial. The parties further reserve and request the opportunity to offer balancing instructions if a particular instruction is permitted over either party's objection.

**<u>Table of Contents</u>**

A.  The Parties' Joint Proposed Jury Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.  International Paper Company's Additional Proposed Instructions . . . . . . . . . . . . . . . . . . 40

C.  Beazley Insurance Company's Additional Proposed Jury Instructions . . . . . . . . . . . . . 48

A.    **THE PARTIES' JOINT PROPOSED JURY INSTRUCTIONS**

**GENERAL INSTRUCTIONS**

I.    **Before Voir Dire**

You have been summoned as prospective jurors in a civil case involving a claim for insurance coverage. The parties involved are International Paper Company and Beazley Insurance Company ("Beazley"). The attorneys for International Paper ("IP") are John Sylvester, Laura Veith, Nathan Townsend, Kobie Crosley, and Jason Callen.  The attorneys for Beazley are Gene Murphy, Max Daley, Brad Box, and Jerry Kizer.

You will be asked questions by the Court and by the attorneys. Although some of the questions may seem to be personal, they are intended to find out if you have any knowledge of this particular case, if you have any opinion that you cannot put aside or if you have had any experience in life that might cause you to identify yourself with one party or another. Jurors must be as free as humanly possible from bias, prejudice, or sympathy and must not be influenced by preconceived ideas about the facts or the law. The parties are entitled to jurors who approach this case with open minds until a verdict is reached.

Each party has a right to request that a certain number of prospective jurors be excused. If you are excused you should not consider it a reflection on you in any way.

T.P.I—Civil 1.01(2023 ed.).

## II.   After Voir Dire, Before Opening Statements

Before the trial begins, I am going to give you some instructions to help you understand how the case will proceed, what your duties will be, and how you should conduct yourselves during the trial.

As the trial judge, it is my responsibility to advise you what law is applicable to this case. You must accept and apply the law as given. As jurors, you serve as the sole judges of the facts and will be applying the facts to the law. Thus, you must determine which of the witnesses' testimony you accept, what weight you attach to it, and what inferences you will draw from it. The law does not, however, require you to accept all of the evidence. In deciding what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses and determine the weight you will give to that testimony. You must decide which witnesses you believe and how important you think their testimony is. You are not required to accept or reject everything a witness says. You are free to believe all, none, or part of any person's testimony.

Before you begin to hear and see evidence, however, the attorneys will make their opening statements. These statements will be brief outlines of what the attorneys expect the evidence to be. The attorneys are also permitted to make additional statements at the end of the case; these are called "closing statements." Unless you are otherwise instructed, statements made by the attorneys are not evidence. Those statements are made only to help you understand the evidence and apply the law to the evidence in the case. You should ignore any statement by any attorney that is not supported by the evidence you will hear and see during the trial.

During the trial, objections may be made to evidence or trial procedures. I may sustain objections to questions asked without permitting a witness to answer, or I may instruct you to disregard an answer that has been given. In deciding this case, you may not draw any inference from an unanswered question, and you may not consider testimony that you are instructed to disregard.

Any arguments about objections or motions are usually required to be made by the attorneys out of the hearing of the jury. Information may be excluded because it is not legally admissible. Excluded information cannot be considered in reaching your decision. A ruling that is made on an objection or motion will be based solely upon the law. You must not infer from a ruling that I hold any view or opinion for or against any party in this lawsuit.

After opening statements, I will give you additional information to aid you in evaluating the evidence you see and hear during the trial.

There are several rules concerning your conduct during the trial and during recesses that you should keep in mind.

First, do not conduct your own private investigation into this case, although you may be tempted to do so. For example, do not read any textbooks or articles concerning any issue in this case, or consult any other source of information, including those on Google or elsewhere on the internet. If you were to do that, you would be getting information that is not evidence. You must decide this case only on the evidence and law presented to you during the trial. Any juror who receives any information about this case other than that presented at trial must notify the court immediately.

Second, do not discuss the case either among yourselves or with anyone else during the trial. You must keep an open mind until you have heard all the evidence, the attorneys' closing arguments and my final instructions concerning the law. Any discussions before the conclusion of the case would be premature and improper.

Third, do not permit any other person to discuss the case in your presence. If anyone does attempt to do so, report this fact to the Court immediately without discussing the incident with any of the other jurors.

Fourth, do not speak to any of the attorneys, parties or witnesses in this case, even for the limited purpose of saying good morning. They are also instructed not to talk to you. In no other way can all the parties feel assured of your absolute impartiality.

Fifth, you must not use electronic devices to communicate with or provide any information, photographs or video to anyone by any means about this case. You must not use any electronic device or media, any text or instant messaging service; or any chat room, blog, or website to communicate with anyone or to conduct any research about this case. These devices may be used during breaks or recesses for personal reasons, but must not be used at any time during the trial to receive or send information about any issues related to this trial.

Does everyone understand and agree to be bound by these rules that I have just given to you? If so, please indicate your understanding and agreement by raising your right hand at this time. I will also have a copy of these rules available for you in the jury room.

T.P.I.—Civil 1.02 (2023 ed.).

### III.   Jury Instruction to Be Given After Opening Statements and Before the Presentation of Evidence

You have now heard the opening statements from the lawyers. We now begin with the presentation of evidence in this case.

The evidence generally consists of the numbered exhibits and the testimony of witnesses. The plaintiff, IP, will present evidence first. The defendant, Beazley, then will be given the opportunity to present evidence. Normally, the plaintiff will present all of the plaintiff's evidence before the other party presents any evidence. Exceptions are sometimes made, however, usually to accommodate a witness.

The witnesses will testify in response to questions from the attorneys. Witnesses are first asked questions by the party who calls the witness to testify and then others are permitted to cross-examine the witnesses. Although evidence is presented by asking questions, the questions themselves are not evidence. An insinuation contained in a question is not evidence. You should consider a question only as it gives meaning to a witness's answer.

There are two kinds of evidence; direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of a witness about what the witness personally observed.

Circumstantial evidence is indirect evidence that gives you clues about what happened. Circumstantial evidence is proof of a fact, or a group of facts, that causes you to conclude that another fact exists. It is for you to decide whether a fact has been proved by circumstantial evidence. If you base your decision upon circumstantial evidence, you must be convinced that the conclusion you reach is more probable than any other explanation.

For example, if a witness testified that the witness saw it raining outside that would be direct evidence that it was raining. If a witness testified that the witness saw someone enter a room wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You are to consider both direct and circumstantial evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

In making your decision, you must consider all the evidence in light of reason, experience and common sense.

Although you must consider all of the evidence, you are not required to accept all of the evidence as true or accurate.

You should not decide an issue by the simple process of counting the number of witnesses who have testified on each side. You must consider all the evidence in the case. You may decide that the testimony of fewer witnesses on one side is more convincing than the testimony of more witnesses on the other side.

You are the sole and exclusive judges of the credibility or believability of the witnesses who have testified in this case. You must decide which witnesses you believe and how important you think

their testimony is. You are not required to accept or reject everything a witness says. You are free to believe all, none, or part of any person's testimony.

In deciding which testimony you believe, you should rely on your own common sense and everyday experience. There is no fixed set of rules to use in deciding whether you believe a witness.

During the trial, objections may be made to evidence or trial procedures. I may sustain objections to questions asked without permitting a witness to answer, or I may instruct you to disregard an answer that has been given. In deciding this case, you may not draw any inference from an unanswered question, and you may not consider testimony that you are instructed to disregard.

In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove that it is entitled to coverage under the insurance policy.

The defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove that an exclusion or exclusions in the insurance policy bar coverage for part or all of the loss.

The term "preponderance of the evidence" means that amount of evidence that causes you to conclude that an allegation is probably true. To prove an allegation by a preponderance of the evidence, a party must convince you that the allegation is more likely true than not true.

If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence and the party having the burden of proving that issue has failed.

You must consider all the evidence on each issue.

I will give you further instructions on the law after you have heard and seen all of the evidence.

T.P.I.—Civil 1.03 (2023 ed.).

**IV.    Use of Juror Notes**

You are permitted to take notes during the trial. You may take notes only of verbal testimony from witnesses, including witnesses presented by deposition or videotape. You may not take notes during the opening statements or closing arguments or take notes of objections made to the evidence. You may not take notes during breaks or recesses. Notes may be made only in open court while witnesses are testifying.

Your notes should not contain personal reactions or comments, but rather should be limited to a brief, factual summary of testimony you think is important. Please do not let your note-taking distract you and cause you to miss what the witness said or how the witness said it. Remember that some testimony may not appear to be important to you at the time. That same testimony, however, may become important later in the trial.

Your notes are not evidence. You should not view your notes as authoritative records or consider them as a transcript of the testimony. Your notes may be incomplete or contain errors and are not an exact account of what was said by a witness.

T.P.I.—Civil 1.03 (2023 ed.).

## V.      Corporation Not to be Prejudiced

The fact that a corporation is a party must not influence you in your deliberations or in your verdict. Corporations and persons are equal in the eyes of the law. Both are entitled to the same fair and impartial treatment and to justice by the same legal standards.

T.P.I—Civil 1.05 (2023 ed.).

**JURY INSTRUCTIONS TO BE GIVEN AFTER**
**THE PRESENTATION OF EVIDENCE AND BEFORE DELIBERATIONS**

**VI.     General Instructions on the Applicable Law.**

Members of the jury, now that you have heard all of the evidence and the arguments of the lawyers, it is my duty to instruct you on the law that applies to this case. You will be provided with a written copy of these jury instructions.

It is your duty to find the facts from all the evidence in the case. After you determine the facts, you must apply the law that has been given to you, whether you agree with it or not. You must not be influenced by any personal likes or dislikes, prejudice or sympathy. You must decide the case solely on the evidence before you and according to the law given to you.

T.P.I.—Civil 15.01 (2023 ed.).

## VII.   Instructions to Be Considered as a Whole.

All of the instructions are equally important. The order in which these instructions are given has no significance. You must follow all of the instructions and not single out some and ignore others.

T.P.I.—Civil 15.02 (2023 ed.).

**VIII.   Burden of Proof and Consideration of the Evidence.**

I will now instruct you with regard to where the law places the burden of making out and supporting the facts necessary to prove the theories in the case.

When a party denies the material allegations of the other party's claims or affirmative defenses, the law places upon the party bringing the claim or affirmative defense the burden of supporting and making out each element of its claim or affirmative defense by the greater weight – or preponderance – of the evidence.

In this action, International Paper ("IP") has the burden of proving by a preponderance of the evidence that it suffered losses that come within the terms of the Beazley Employee Theft Insurance Policy, which I will explain to you in more detail. If you find that IP satisfies this initial burden, Beazley must then prove by a preponderance of the evidence that the loss is excluded, in whole or in part, under the exclusions in the Beazley Employee Theft Insurance Policy, which I will also explain to you in more detail.

The term "preponderance of the evidence" means that amount of evidence that causes you to conclude that an allegation is probably true.  To prove an allegation by a preponderance of the evidence, a party must convince you that the allegation is more likely true than not true.

If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence and the party having the burden of proving that issue has failed.

You must consider all evidence on each issue, regardless of who presented it.

T.P.I—Civil 1.03. (explaining that the "burden of proof instruction should also be given at part of the final instructions to the jury").

**IX.    Evidence**

You are to decide this case only from the evidence which was presented at this trial.  The evidence consists of:

1.  The sworn testimony of the witnesses who have testified, both in person and by deposition;

2.  The exhibits that were received and marked as evidence; and

3.  Any facts to which all the lawyers have agreed or stipulated.

T.P.I—Civil 2.01 (21st ed.).

## X.   Civil Stipulations

A stipulation is an agreement. The parties have stipulated that certain matters of fact are true. They are bound by this agreement, and in your consideration of the evidence you are to treat these facts as proven.

T.P.I—Civil 2.09 (2023 ed.).

The parties have stipulated to the following:

1. Plaintiff International Paper Company ("IP") is a manufacturer of pulp and paper products produced at mills throughout the United States and the world.

2. Defendant Beazley Insurance Company, Inc. ("Beazley") is an insurance company that issued an insurance policy, number V27C90190101, to IP (the "Policy").

3. The Policy is a binding contract between Beazley and IP.

4. Subject to the terms, conditions, and exclusions of the Policy, Beazley provides coverage for up to $15,000,000 for "**Loss**" resulting directly from "**Employee Theft**."

5. The Policy defines **Loss** as "direct financial loss."

6. The Policy defines **Employee Theft** as "the unlawful taking of **Money, Securities** or **Property** to the deprivation of an **Insured** by an **Employee**, whether identified or not, acting alone or in collusion with others to obtain financial benefit for the Employee."

7. IP meets the definition of an **Insured** under the Policy.

8. Sitaraman Jagannath, also known as "Jag," meets the definition of an **Employee** under the Policy.

9. Jag worked in IP's Global Sourcing Group to negotiate and purchase specialty chemicals on behalf of IP.

10. IP company policy prohibited an employee from purchasing goods or services from a family member without prior approval from IP management.

11. Shiv Kumar Seetharaman ("Shiv") is Jag's half-brother.

12. Shiv owned and controlled Diversified Global Sourcing, Inc., also known as "DGS," from at least 2010 through 2020.

13. Shiv owned and controlled Mid-South Diversity Group, Inc., also known as "Mid-South," from at least 2015 through 2020.

14.   In the course of his employment at IP and beginning in 2011, Jag participated in contract negotiations with his half-brother, Shiv, in connection with purchasing specialty chemicals from DGS and Mid-South.

15.   During 2011 through 2019, IP operated a "Supplier Diversity Program" to increase diversity participation in IP's supply chain.

16.   IP's relationship with its diverse suppliers in the diversity supplier program took two forms, known as Tier 1 and Tier 2 arrangements.

17.   IP's diverse supplier company policy required it to "source its goods and services requirements on a competitive basis to attain the greatest value in terms of quality, cost and service."

18.   DGS and Mid-South qualified as diverse suppliers, and both participated in Tier 1 and Tier 2 arrangements.

19.   In a Tier 1 arrangement, DGS and Mid-South contracted to purchase specialty chemicals from certain chemical suppliers, known as the "Majority Suppliers," and re-sold these specialty chemicals to IP at a mark-up.

20.   IP expected the mark-up obtained by all Tier 1 diversity suppliers to be offset by value-added services to IP.[1]

21.   In a Tier 2 arrangement, the Majority Suppliers sold specialty chemicals directly to IP. The Majority Supplier would then pay a commission or rebate to DGS and Mid-South.

22.   IP required all Tier 2 diversity suppliers to provide a value-added service during the majority supplier's process.[2]

23.   Jag's employment relationship ended with IP on or around November 20, 2019.

24.   IP terminated its relationships with DGS and Mid-South in December 2019.

25.   In December 2019, the United States Attorney's Office for the Western District of Tennessee filed a criminal complaint against Jag, and Jag was arrested.[3]

26.   The United States Attorney's Office for the Western District of Tennessee charged Jag with violating Chapter 18, United States Code Sections 1343 and 2 for "use of

---

[1] Beazley objects to the inclusion of this fact, even though it stipulated to the same fact in the parties' Proposed Joint Pre-Trial Order filed with the Court.

[2] Beazley objects to the inclusion of this fact, even though it stipulated to the same fact in the parties' Proposed Joint Pre-Trial Order filed with the Court.

[3] Beazley provisionally accepts this provision subject to the Court's ruling on its motion *in limine* relating to the filing of the criminal complaint, ECF No. 136. If granted, Beazley contends these facts would likely be excluded.

interstate wire communications in furtherance of a scheme and artifice to defraud International Paper and obtain monies and property from International Paper by means of false and fraudulent pretenses, representations and promises."[4]

27.    On October 5, 2020, IP sued Jag, Shiv, DGS, Mid-South, and several other entities Jag owned and controlled in the Chancery Court of Shelby County, Tennessee alleging that Jag, Shiv, DGS, Mid-South, and several other entities had defrauded IP.

28.    On September 24, 2022, IP settled with Jag, Shiv, DGS, Mid-South, and several other entities and executed a formal written settlement agreement that included a complete release of those entities.

29.    As part of the settlement, the defendants, including Jag and Shiv, agreed to pay IP $15,000,000, and IP agreed to dismiss its lawsuit against them.

30.    Beazley issued a written response to IP's proposed settlement stating it reserved its rights as it related to the settlement and the potential for coverage under the Policy.

31.    In response to IP's settlement with Jag and the other defendants, the United States Attorney's Office for the Western District of Tennessee moved to dismiss its criminal complaint against Jag without prejudice because "the proposed settlement of the civil case sufficiently addresses the government's interest such that further criminal prosecution is unwarranted."[5]

32.    Shiv was never charged with a crime in relation to IP's claim.

33.    Jag was charged, but not convicted of any criminal activity in relation to IP's claim.

34.    In December 2019, IP notified Beazley of a claim for coverage under the Policy's "Employee Theft" provision.

35.    In December 2020, IP provided Beazley with a Proof of Loss.

36.    After receiving IP's Proof of Loss, Beazley told IP that it requested further information from IP in the course of its investigation of the claim.

37.    On November 11, 2022, IP filed this action against Beazley.

---

[4] Beazley provisionally accepts this provision subject to the Court's ruling on its motion *in limine* relating to the filing of the criminal complaint, ECF No. 136. If granted, Beazley contends these facts would likely be excluded.

[5] Beazley provisionally accepts this provision subject to the Court's ruling on its motion *in limine* relating to the filing of the criminal complaint, ECF No. 136. If granted, Beazley contends these facts would likely be excluded.

## XI.     Corporation Not to be Prejudiced

The fact that a corporation is a party must not influence you in your deliberations or in your verdict. Corporations and persons are equal in the eyes of the law. Both are entitled to the same fair and impartial treatment and to justice by the same legal standards.

T.P.I—Civil 1.05 (2023 ed.)

## XII.   Direct and Circumstantial Evidence

There are two kinds of evidence; direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of a witness about what the witness personally observed.

Circumstantial evidence is indirect evidence that gives you clues about what happened. Circumstantial evidence is proof of a fact, or a group of facts, that causes you to conclude that another fact exists. It is for you to decide whether a fact has been proved by circumstantial evidence. If you base your decision upon circumstantial evidence, you must be convinced that the conclusion you reach is more probable than any other explanation.

For example, if a witness testified that the witness saw it raining outside, that would be direct evidence that it was raining. If a witness testified that the witness saw someone enter a room wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You are to consider both direct and circumstantial evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

In making your decision, you must consider all the evidence in light of reason, experience and common sense.

T.P.I.—Civil 2.02 (21st ed.).

## XIII.  Credibility of Witnesses

In deciding what the facts are, you must consider all of the evidence.  In doing this, you must decide which testimony to believe and which testimony not to believe.  You may believe all or any party of any witness's testimony.  In making that decision, you may take into account a number of factors, including the following:

1.    Was the witness able to see, or hear, or know the things about which that witness testified?

2.    How well was the witness able to recall and describe those things?

3.    What was the witness's manner while testifying?

4.    Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

5.    How reasonable was the witness's testimony considered in light of all of the evidence in the case?

6.    Was the witness's testimony contradicted by what that witness has said or done at another time, including in his or her deposition, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

You are not required to accept testimony, even though the testimony is uncontradicted and the witness is not impeached.  You may decide, because of the witness's appearance, bearing and demeanor, or because of the inherent improbability of the witness, or for other reasons sufficient to you, that such testimony is not worthy of belief.

These are some of the factors you may consider in deciding whether to believe testimony.

3 O'Malley, Grenig and Lee, Federal Jury Practice & Instructions § 105.01 (5th ed.); *Memphis Light Gas & Water v. Factory Mut. Ins. Co*., No. 2:22-cv-02065-MSN, atc, ECF No. 72 (instruction IX).

**XIV.   Impeachment of Witness**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached, and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely under oath about any material matter, you have a right to distrust the witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily or intentionally, and not because of mistake or accident or other innocent reason.

3 O'Malley, Grenig and Lee, Federal Jury Practice & Instructions § 105.04 (5th ed.); *Memphis Light Gas & Water v. Factory Mut. Ins. Co*., No. 2:22-cv-02065-MSN, atc, ECF No. 72 (instruction XI).

**XV.    Witness Willfully False**

You may conclude that a witness deliberately lied about a fact that is important to your decision in the case. If so, you may reject everything that witness said. On the other hand, if you decide that the witness lied about some things but told the truth about others, you may accept the part you decide is true and you may reject the rest.

T.P.I.—Civil 2.22 (2023 ed.).

## XVI.  Deposition Testimony

Certain testimony has been presented by deposition. A deposition is testimony taken under oath before the trial and preserved in writing or on videotape. You are to consider that testimony as if it had been given in court.

T.P.I.—Civil 2.06 (2023 ed.).

**XVII. Interrogatories**

During the course of the trial you may have heard reference made to the word "interrogatory". An interrogatory is a written question that must be answered under oath in writing. You are to consider interrogatories and their answers as if the questions had been asked and answered in court.

T.P.I.—Civil 2.07 (2023 ed.).

**XVIII. Expert Testimony—Determination of Weight**

Usually witnesses are not permitted to testify as to opinions or conclusions. However, a witness who has scientific, technical, or other specialized knowledge, skill, experience, training, or education may be permitted to give testimony in the form of an opinion. Those witnesses are often referred to as "expert witnesses."

You should determine the weight that should be given to each expert's opinion and resolve conflicts in the testimony of different expert witnesses. You should consider:

1. The education, qualifications, and experience of the witness[es]; and

2. The credibility of the witness[es]; and

3. The facts relied upon by the witness[es] to support the opinion; and

4. The reasoning used by witness[es] to arrive at the opinion

You should consider each expert opinion and give it the weight, if any, that you think it deserves. You are not required to accept the opinion of any expert.

T.P.I.—Civil 2.30 (2023 ed.).

## XIX.   Hypothetical Question

An expert witness was asked to assume that certain facts were true and to give an opinion based upon that assumption. This is called a hypothetical question. You must determine if any fact assumed by the witness has not been established by the evidence and the effect of that omission, if any, upon the value of the opinion.

T.P.I.—Civil 2.31 (2023 ed.).

**XX.    Statements of Counsel—Evidence Stricken Out—Insinuation of Questions.**

In reaching your verdict you may consider only the evidence that was admitted.  Remember that any questions, objections, statements or arguments made by the attorneys during the trial are not evidence.  Demonstrative aids used by the attorneys are also not to be considered as evidence.  If the attorneys have stipulated or agreed to any fact, however, you will regard that fact as having been proved.

Testimony that you have been instructed to disregard is not evidence and must not be considered. You are to decide the case solely on the evidence received at trial.

T.P.I.—Civil 15.03 (2023 ed.).

## XXI.   Ordinary Observations and Experiences

Although you must only consider the evidence in this case in reaching your verdict, you are not required to set aside your common knowledge. You are permitted to weigh the evidence in the light of your common sense, observations and experience.

T.P.I.—Civil 15.04 (2023 ed.).

## GENERAL INSTRUCTIONS ON THE APPLICABLE LAW

**XXII.        Breach of Insurance Contract**

An insurance policy is a contract.  As a contract, an insurance policy is the law between the parties and, where the language of the policy is clear and unambiguous, it must be enforced as written. The policy should be construed as a whole in a reasonable and logical manner and the language of the policy must be taken and understood in its plain, ordinary, and popular sense.

Here, the parties stipulated that the insurance policy is a binding contract between IP and Beazley, thus, the issues you must decide are whether IP proved by a preponderance of the evidence that Beazley breached the insurance policy and whether IP was damaged by the breach.

T.P.I—Civil 13.01, 13.10, 13.20 (2023 ed.); *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005); *Memphis Light Gas & Water v. Factory Mut. Ins. Co.*, No. 2:22-cv-02065-MSN, atc, ECF No. 72 (instruction XIX).

XXIII.     **Breach of Insurance Policy**

As it has been established that the insurance policy is a valid contract between IP and Beazley, you must determine whether Beazley breached the insurance policy. IP contends that Beazley breached the contract of insurance by failing to pay for the covered loss resulting from Jag's employee theft scheme.  Beazley contends that it did not breach the policy because IP has not established that the loss was covered under the policy, and also because IP's loss, in whole or in part, resulted from excluded causes.

If a party does not perform according to the contract terms, that party has committed a breach of the contract.  Any unexcused breach of contract allows a non-breaching party to recover damages.

Here, the insurance policy provides certain coverage for loss resulting directly from Employee Theft,, unless the loss is otherwise excluded.  IP has the burden of proving by a preponderance of the evidence that the losses that IP is claiming were the direct result of an "Employee Theft" under the policy, the requirements for which I will explain to you in another instruction.  If IP carries its burden, it is then the burden of Beazley to prove by a preponderance of the evidence that an exclusion applies to prevent recovery under the policy, in whole or in part.

T.P.I—Civil 13.01, 13.07, 13.10, 13.20, 13.21 (21st ed.); *Memphis Light Gas & Water v. Factory Mut. Ins. Co.*, No. 2:22-cv-02065-MSN, atc, ECF No. 72 (instruction XX).

**XXIV.      Damages**

If you find in favor of IP on its claims, you will then turn to the question of damages.  It is my duty to instruct you as to the proper measure of damages to be applied in that circumstance.  The fact that I instruct you as to the proper measure of damages should not be considered as an indication of any view of mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of damages are given for your guidance in the event you should find in favor of IP from a preponderance of the evidence in the case, in keeping with the other instructions I have given you.

*Memphis Light Gas & Water v. Factory Mut. Ins. Co*., No. 2:22-cv-02065-MSN, atc, ECF No. 72 (instruction XXIII).

**XXV.**        **All Instructions Not Necessarily Applicable**

The court has given you various rules of law to help guide you to a just and lawful verdict.  Whether some of these instructions will apply will depend upon what you decide are the facts.  The Court's instructions on any subject, including instructions on damages, must not be taken by you to indicate the Court's opinion of the facts you should find or the verdict you should return.

T.P.I.—Civil 15.11 (2023 ed.).

**XXVI. Contract Damages**

If you find by a preponderance of the evidence that IP is entitled to a verdict against Beazley for breach of contract, then you must determine the amount of damages that IP should recover, limited to the amounts that the policy at issue provides for.

If you determine that IP should recover, IP is entitled to be placed in as good a position as it would have occupied had the contract been fulfilled in accordance with its terms. IP is not entitled to be put in a better position by a recovery of damages for breach of contract than would have been realized had there been full performance. Damages that are remote or speculative may not be awarded.

T.P.I—Civil 14.70 (2023 ed).

## CONCLUDING INSTRUCTIONS

**XXVII.**     **Use of Juror Notes (After Trial)**

Some of you may have taken notes during the trial. Once you retire to the jury room you may refer to your notes, but only to refresh your own memory of the witnesses' testimony. You are free to discuss the testimony of the witnesses with your fellow jurors, but each of you must rely upon your own individual memory as to wheat a witness did or did not say.

In discussing the testimony, you may not read your notes to your fellow jurors or otherwise tell them what you have written. You should never use your notes to persuade or influence other jurors. Your notes are not evidence. Your notes should carry no more weight than the unrecorded recollection of another juror.

T.P.I.—Civil 15.12 (2023 ed.).

**XXVIII.        How Jurors Should Approach Their Task**

Your attitude and conduct at the beginning of your deliberations are very important. It is rarely productive for any juror to immediately announce a determination to hold firm for a certain verdict before any deliberations or discussions take place. Taking that position might make it difficult for you to consider the opinions of your fellow jurors or change your mind, even if you later decide that you might be wrong. Please remember that you are not advocates for one party or another. You are the judges of the facts in this case.

T.P.I.—Civil 15.15. (2023 ed.).

**XXIX.**      **Each Juror Should Deliberate and Vote on Each Issue to Be Decided**

Each of you should deliberate and vote on each issue to be decided.

Before you return your verdict, however, each of you must agree on the verdict so that each of you will be able to state truthfully that the verdict is yours.

T.P.I.—Civil 15.16 (2023 ed.).

**XXX.     Instructions as to Unanimous Verdict**

The verdict you return to the Court must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree to each answer. Your verdict must be unanimous.

It is your duty to consult with one another and to reach an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and to change your opinion if you are convinced that it is not correct.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

T.P.I.—Civil 15.17 (2023 ed.).

**XXXI.      Questions During Deliberations**

If a question arises during deliberations and you need further instructions, please print your question on a sheet of paper, knock on the door of the jury room, and give the question to my court officer.

I will read your question and I may call you back into the courtroom to try to help you. Please understand that I may only answer questions about the law and I cannot answer questions about the evidence.

T.P.I.—Civil 15.19 (2023 ed.).

**XXXII.      Prohibited Research and Communication**

I remind you that you are to decide this case based only on the evidence you have heard in court and on the law I have given you.  You are prohibited from considering any other information and you are not to consult any outside sources for information.  You must not communicate with or provide any information, photographs or video to anyone by any means about this case or your deliberations.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone or computer; the Internet, any text or instant messaging service; or any chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate with anyone or to conduct any research about this case.

T.P.I.—Civil 15.20 (2023 ed.).

**XXXIII.**        **Verdict Form**

Finally, ladies and gentlemen, we come to the point where we will discuss the form of your verdict and the process of your deliberations. You will be taking with you to the jury room a verdict form where you record your decisions. The verdict form reads as follows **[*Read Verdict Form – below*].**

*Memphis Light Gas & Water v. Factory Mut. Ins. Co*., No. 2:22-cv-02065-MSN, atc, ECF No. 72 (instruction XXXIII).

**XXXIV.** **Concluding Instruction**

You will not retire and select one of you to be the presiding juror for your deliberations. As soon as all of you have agreed upon a verdict, the presiding juror will complete and sign the verdict form and you will return with it to this room.

You may deliberate only when all of you are present in the jury room. You may not resume your deliberations after any breaks until all of you have returned to the jury room.

T.P.I.—Civil 15.21 (2023 ed.).

B. **INTERNATIONAL PAPER COMPANY'S ADDITIONAL PROPOSED JURY INSTRUCTIONS**

I. **FIFTH AMENDMENT PRIVILEGE**

If a non-party witness claims the Fifth Amendment privilege against self incrimination as a basis to refuse to testify or to answer a question, whether at trial or in a deposition, you may infer that the testimony of the witness would have been adverse to the party with whom that witness is related or aligned.

T.P.I.—Civil 2.24 (2023 ed.).

**Reason for Dispute:** IP contends that this instruction, from the Tennessee Pattern Instructions, is applicable for the reasons set forth in IP's opposition to Beazley's motion in limine on the same subject matter.

Beazley maintains that this instruction is not appropriate as, pursuant to the test set forth in *LiButti v. United States*, no adverse inference stemming from a non-party witness' invocation of the Fifth Amendment privilege against self-incrimination is warranted in this case. *See* 107 F.3d 110 (2d Cir. 1997) (in determining whether nonparty witness' invocation of privilege against self-incrimination in course of civil litigation and drawing of adverse inferences is admissible, court may consider the following nonexclusive factors: (1) nature of witness' relationship with and loyalty to party; (2) degree of control which party has vested in witness in regard to key facts and subject matter of litigation; (3) whether witness is pragmatically noncaptioned party in interest and whether assertion of privilege advances interests of witness and party in outcome of litigation; and (4) whether witness was key figure in litigation and played controlling role in respect to its underlying aspects). In the instant case, Mr. Jagannath and Mr. Kumar invoked the Fifth Amendment in a blanket fashion, and their testimony is not indicative of whether any illegal conduct occurred as both parties were asked overarching questions at their depositions and they made clear that they were not willing to answer **any** questions—a position that neither party pushed back on in seeking to compel further testimony.

Moreover, importantly, none of the *LiButti* factors weigh in favor of applying the inference: (1) Mr. Jagannath and Mr. Kumar did not appear to have loyalty or animosity toward Beazley or IP; (2) neither party has control over Mr. Jagannath and Mr. Kumar, who each had independent counsel; (3) there is no evidence that Mr. Jagannath and Mr. Kumar benefitted or were harmed by testifying given that they settled with IP already (without Beazley's consent). Accordingly, no inference is appropriate here. *See Zertuche v. United States*, No. 215CV02284JPMDKV, 2017 WL 6811994, at *13 (W.D. Tenn. Sept. 13, 2017) (adverse inference inappropriate where the factors weighed against the inference, applying the *LiButti* factors).

## II.    STATEMENT OF THE CASE

This case is an insurance coverage dispute between International Paper Company and Beazley Insurance Company, Inc., relating to a commercial crime policy Beazley issued to IP that, in relevant part, provides coverage for "Employee Theft," a term defined in the policy. IP submitted a claim for "Employee Theft" to Beazley seeking coverage for the money IP lost because of Sitaraman Jagannath's actions. IP then filed this lawsuit for breach of the commercial crime policy by Beazley, seeking the commercial crime policy's $15 million dollars of coverage. Beazley denies that IP is entitled to coverage and contends that, if it was, it is not entitled to the full limit of the policy.

IP alleges that one of its employees, Sitaraman Jagannath, also known as "Jag," used his position at IP to purchase chemicals for use at IP's pulp and paper mills from two companies that were a part of IP's Supplier Diversity Program and were owned and controlled by his half-brother in violation of IP's conflict of interest policy. IP further alleges that these two companies, known as "DGS" and "Mid-South," did not provide value in return for the profit they made on the sale of chemicals to IP, and Jag received a portion of the funds that DGS and Mid-South obtained from IP.

Beazley disputes that IP is entitled to any coverage based on a settlement between IP, Jag, Jag's half-brother, DGS, and Mid-South. Beazley also maintains that IP has failed to establish what, if any, money was actually paid to the employee, Jag, as a part of the alleged scheme. Beazley further alleges that the two companies, DGS and Mid-South, did provide some services for IP and that they were entitled to profits for the value of services performed. Beazley denies coverage for certain aspects of IP's claim that relate to payments made to third-parties other than DGS or Mid-South under the terms of the policy.

**Reason for Dispute:**  Beazley seeks to amend the last paragraph as excerpted below, without explanation.  IP submits the above Statement of the Case because it is the version to which the parties agreed in their Proposed Pre-Trial Order.

> Beazley ~~disputes~~rejects that IP is entitled to any coverage ~~based on a settlement between IP, Jag, Jag's half-brother, DGS, and Mid-South. Beazley also~~. The Employee Theft definition requires "…the unlawful taking of Money… to the deprivation of an Insured by an Employee … acting alone or in collusion with others to obtain financial benefit for the Employee.", Beazley has taken the position that IP has not satisfied the requirement of the Employee Theft coverage quoted above. Specifically, Beazley maintains that IP has failed to establish what, if any, money was actually paid to the employee, Jag, as a part of the alleged scheme. Beazley further alleges that the two companies, DGS and Mid-South, did provide some services for IP and that they were entitled to profits for the value of services performed. Beazley denies coverage for certain aspects of IP's claim that relate to payments made to third-parties other than DGS or Mid-South under the terms of the policy. In particular, Beazley contends that the Indirect or Consequential exclusion and the Voluntary Exchange or Purchase exclusion apply to IP's $2.9 million "settlement" payments of unpaid DGS/Mid-South invoices and the $1.7 million in Tier 2 commissions. IP, according to Beazley, had no obligation, contractual or otherwise, to make these payments.

## III.    COVERAGE UNDER THE POLICY

The Policy is a binding contract between Beazley and IP.

Subject to the terms, conditions, and exclusions of the Policy, Beazley provides coverage for up to $15,000,000 for "Loss" resulting directly from "Employee Theft."

The Policy defines Loss as "direct financial loss."

The Policy defines Employee Theft as "the unlawful taking of Money, Securities or Property to the deprivation of an Insured by an Employee, whether identified or not, acting alone or in collusion with others to obtain financial benefit for the Employee."

The parties agree that IP meets the definition of an Insured under the Policy.  The parties also agree that Sitaraman Jagannath, also known as "Jag," meets the definition of an Employee under the Policy.

An "unlawful taking of Money" under the policy does not require the employee to be convicted of a crime.  An unlawful taking is one that is "not lawful" or "not morally right or conventional."

P. Ellis Vol I, 62:16-24 ("Q.  Would you agree, Ms. Ellis, that an employee need not be convicted of a crime for him or her to have engaged in an unlawful taking as defined in this definition of employee theft in the Beazley policy?  . . .  A. The policy doesn't require criminal conviction."); "Unlawful"  Merriam-Webster.com  Dictionary,  available  at  https://www.merriam-webster.com/dictionary/unlawful (accessed 15 April 2024).

**Reason for Dispute:**  Beazley seeks to exclude the highlighted portions above from the proposed instruction, without explanation.  IP seeks to include the highlighted portions because the reflect testimony from Beazley's corporate witness and standard dictionary definitions.

## IV.   POLICY EXCLUSIONS

An insurance contract should be interpreted according to its plain, ordinary, and popular sense. Exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured, with any ambiguity construed against the insurer.   The insurance company has the burden of proving by a preponderance of the evidence that an exclusion in its policy applies to a claim.

*S. Tr. Ins. Co. v. Phillips*, 474 S.W.3d 660, 667 (Tenn. Ct. App. 2015); *Realty Shop, Inc. v. RR Westminster Holding, Inc*., 7 S.W.3d 581, 598 (Tenn. Ct. App. 1999); *Johnson & Assocs., LLC v. Hanover Ins. Grp., Inc*., 572 S.W.3d 636, 644 (Tenn. Ct. App. 2018).

**Reason for Dispute:**  IP seeks to include the instruction above because it is binding authority on a cannon of insurance contract interpretation.  Beazley's alternative instruction and position is set forth in Section C below.

## V.    SUBROGATION AND WAIVER

Waiver is the voluntary surrender of a known right. It can be proved by statements, acts, or conduct of a party showing an intent not to claim a right.

The parties may jointly agree to waive one or more requirements of the contract. If a party to the contract claims the other party waived a contract right, the burden of proof is on the party claiming the waiver to show that the other party gave up a contract right and did so with full and complete knowledge of the relevant facts.

Specifically, an insurance company waives its subrogation rights when it knows that its insured is negotiating a settlement with a third party, yet does not intervene or warn the insured that the settlement would result in losing coverage if the insured did not obtain the insurer's written consent to settle the claim. Additionally, if an insurance company simply decided to wait to see what developed rather than inform the insured that it risked losing the coverage it had been paying for if it carried out its course of action, a waiver has occurred.

If Beazley waived a particular term in the contract, Beazley can no longer enforce that part of the contract.

International Paper claims that Beazley waived certain terms as follows: Beazley's principal policy-based defense is that the settlement agreement between IP and Jag and Shiv (and their related entities) was entered into without Beazley's consent, and thus excuses Beazley from coverage because the settlement released Jag and Shiv and impaired Beazley's subrogation rights. However, by its terms, the subrogation provision only applies if Beazley has made a payment under the policy.  Further, IP tried to get Beazley to participate in the prosecution of the civil action and the ultimate settlement with Jag and Shiv, but Beazley refused to participate in both.  Beazley was well-informed of the settlement negotiations, which ultimately included the dismissal of the civil action and release of Jag, and Beazley never objected to settlement agreement or its terms, even though it was fully apprised of the terms.

Beazley denies that it waived its rights under the subrogation provision.

Finally, if you find that International Paper breached the subrogation provision, Beazley must show by a preponderance of the evidence that Beazley suffered prejudice in order to avoid its coverage obligations under the policy.

T.P.I.—Civil 13.09; *Am. Sur. Co. of N.Y. v. Diamond*, 136 N.E.2d 876, 879 (N.Y. 1956); *Caldwell v. Keystone Ins. Co.*, 243 A.2d 448, 450, 450 n.2 (Pa. Super. Ct. 1968); *Ross v. Pawtucket Mut. Ins. Co.*, 195 N.E.2d 892, 893 (N.Y. 1963); *Commercial Union Ins. Co. v. Postin*, 610 P.2d 984, 992 (Wyo. 1980); *Gaston v. Tenn. Farmers Mut. Ins. Co*., 120 S.W.3d 815, 819-20 (Tenn. 2003); *Talley v. State Farm Fire & Cas. Co*., 223 F.3d 323, 326 (6th Cir. 2000).

**Reason for Dispute:**  IP submits the instruction above because it is based on Tennessee Pattern Instructions and relevant and/or binding authority on an issue that Beazley has raised in the case. Beazley's alternative instruction and position is set forth in Section C below.

## VI.    DEFINITION OF "LOSS" UNDER THE POLICY

If IP is entitled to an award of damages, then it is entitled to the full amount of the loss, which is not limited to the amount of financial benefit received by the employee thief. Specifically, IP is not required to prove how much money Jag or Shiv may have obtained as a result of the employee theft scheme.  Rather, the Policy provides coverage for the amount of money IP lost as a result of the employee theft scheme, not the amount the employee unlawfully gained.

Pia Ellis Depo. Tran., at 66:18-68:5; *Sherwin-Williams Co. v. Beazley Ins. Co.*, No. 18-02964, 2020 WL 4226866, at *1 n.4 (D. Minn. 2020) (interpreting identical policy provision and holding that Employee Theft occurred even though employee only received ten percent of the stolen proceeds, with the rest going to a third-party vendor); *Recology, Inc. v. Berkley Regional Ins. Co.*, No. 20-cv-01150, 2023 WL 1070356, at *7 (N.D. Cal. Jan. 27, 2023) ("[t]he insurer agreed to cover [the insured's] losses, not the employees' gains, and the unlawful taking of [the insured's] property is not properly measured through quantification of kickbacks [to the employee]."); *Morris Kirschman & Co. v. Hartford Fire Ins. Co.*, No. 03-1743, 2004 WL 1934848, at *2 (E.D. La. Aug. 30, 2004) (same).

**Reason for the Dispute:** IP submits the above instruction because it is based on testimony from Beazley's corporate witness and it is from relevant authority on the same topic, which Beazley has put at issue in this case. Beazley's alternative instruction and position is set forth Section C below.

## VII.   "MADE WHOLE" DOCTRINE

A policyholder must be "made whole" before an insurer is entitled to any reimbursement. Here, IP contends that it incurred more than $31,485.910 in total losses, and IP recouped $15 million of those losses from the settlement with Jag and Shiv.  IP contends that the remaining loss amount of over $16 million is over the $15 million limit of the policy. If you find in favor of IP that its losses are in excess of the $15 million limit of the policy, then IP must be made whole before Beazley can claim any benefit from the settlement.  This is true regardless of any language contained in the insurance policy.

*York v. Servier County Ambulance Authority*, 8 S.W.3d 616, 621 (Tenn. 1999); *Abbott v. Blount County*, 207 S.W.3d 732, 733-34 (Tenn. 2006).

**Reason for the Dispute:** IP submits the above instruction because it is based on binding authority on the same topic, which Beazley has put at issue in this case.

Beazley maintains that this instruction is not appropriate because, as the Court of Appeals of Tennessee recently explained in *Hayes*, "the made whole doctrine is inapplicable" in situations where the insured settles with a tortfeasor without the insurer's consent, destroying the insurer's subrogation rights. *Hayes Fam. P'ship v. Tennessee Farmers Mut. Ins. Co.*, 683 S.W.3d 754, 763 (Tenn. Ct. App. 2023), *appeal denied* (Tenn. Dec. 19, 2023). The Court's decision in *Hayes* is "a published decision by the Tennessee Court of Appeals that has not been overruled or modified by a subsequent decision of the Tennessee Supreme Court . . . is controlling authority on this Court." *Ladd Landing, LLC v. Tennessee Valley Auth.*, 874 F. Supp. 2d 727, 733 (E.D. Tenn. 2012) (citing *Meadows v. State*, 849 S.W.2d 748, 752 (Tenn. 1993) (same))). Given that the doctrine does not apply, an instruction on the issue is wholly inappropriate.

Moreover, even if it applied (and it does not), the made whole doctrine is equitable in nature, and, therefore, its application is not a question for the jury but a legal question for the Court. *See Wilson v. Big Sandy Health Care, Inc.*, 576 F.3d 329, 332 (6th Cir. 2009) (right to a jury rests on whether "'the remedy sought and determine whether it is legal or equitable in nature'"); *Wimberly v. Am. Cas. Co. of Reading, Pa. (CNA)*, 584 S.W.2d 200, 203 (Tenn. 1979) ("our resolution of this case must be guided by general principles of equity, to wit, that the insured must be made whole"); *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 1998 WL 695637, at *2 (Tenn. Ct. App. Aug. 20, 1998) ("the court can make an equitable determination as to whether an injured party has been made whole"). *See also S. Farm Bureau Cas. Ins. Co. v. Tallant*, 362 Ark. 17, 25, 207 S.W.3d 468, 473 (2005) ("The decision on whether [the insured] was made whole was properly decided by the circuit court," not the jury, because the doctrine is equitable); *Green v. Ford Motor Co.*, 2011 WL 2666198, at *2 (W.D. Ark. June 15, 2011) ("neither the insured nor the insurer is entitled to a trial by jury on this issue"). Accordingly, any jury instruction related to the made whole doctrine is inappropriate because it is a purely legal question for the Court.

## VIII.  PRE-JUDGMENT INTEREST

IP seeks an award of prejudgment interest from Beazley. If IP is entitled to recover a judgment under the insurance policy, you may in your discretion award interest on the amount awarded at a rate not greater than 10% per year calculated from any date you choose beginning on or after the date that IP submitted its Proof of Loss to Beazley, which was December 7, 2020. The dollar amount of prejudgment interest will be calculated by the court at simple interest.

T.P.I.—Civil 13.35 (2023 ed.).

**Reason for the Dispute:** IP submits the above instruction because it is based on the Tennessee Pattern Instruction.

Beazley maintains that this instruction is inappropriate as courts applying Tennessee law have the power to decide both the availability of prejudgment interest and the relevant period for calculating such interest and, thus, even if IP was able to prove its entitlement to recovery, any interest awarded would likely be at a rate below the 10% maximum rate. *See, e.g. Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 312 (Tenn. Ct. App. 2020) (affirming denial of prejudgment interest where "the amount of the obligation was uncertain and that the existence of the obligation was disputed on legitimate grounds"); *Cook's Roofing, Inc. v. Hartford Underwriters Ins. Co.*, 2020 WL 4151216, at *18 (Tenn. Ct. App. July 20, 2020) (affirming shortened period for calculation of prejudgment interest where the delay was not attributable to defendant). S*ee also Mabey v. Maggas*, 2007 WL 2713726, at *10 (Tenn. Ct. App. Sept. 18, 2007) (explaining that "[t]he trial court's discretion 'extends not only to awarding of prejudgment interest but also to the amount of interest allowed and the time over which it shall be calculated.'")

Importantly, courts applying Tennessee law routinely provide prejudgment interest awards in amounts well below the 10% maximum rate, further supporting Beazley's objection to IP's instruction regarding pre-judgment interest. *See, e.g., Kroll (HK) Ltd. v. Pope Investments, LLC*, 2023 WL 4370440, at *9 (W.D. Tenn. July 6, 2023) (awarding 5.346% interest); *Claybrook v. Sunoco GP LLC*, 2023 WL 2664740, at *12 (E.D. Tenn. Mar. 28, 2023) (6.2%); *Stuart C. Irby Co. v. Thompson Brown, Inc.*, 2018 WL 11437816, at *4 (M.D. Tenn. Oct. 15, 2018) (1.52%).

## C.   BEAZLEY INSURANCE COMPANY'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

## I.   POLICY EXCLUSIONS

The Beazley Policy has certain exclusions that you are being asked to consider based upon the evidence presented by both Parties. The Verdict Form includes questions regarding these exclusions, and you shall refer to the following policy language of the exclusions to be addressed during your deliberations:

**Voluntary Exchange or Purchase**

The Underwriters shall not be liable for **Loss** or **Expenses** arising out of the Insured knowingly having given or surrendered Money**, Securities** or Property in any exchange or purchase with a Third **Party**, not in collusion with an **Employee**; provided that this exclusion shall not apply to loss under the Money Orders or Counterfeit Paper Currency Fraud insuring agreement;

**Indirect or Consequential**

The Underwriters shall not be liable for Loss or Expenses arising out of indirect or consequential loss of any kind except for covered Expenses under the Expense Coverage insuring agreement;

**Affiliates and Prior Employees**

The Underwriters shall not be liable under the Employee Dishonesty, Client Property Coverage or Expense Coverage insuring agreements for loss or damage sustained by any Insured caused by:

1. any agent, broker, factor, commission merchant, cosignee, contractor, independent contractor, subcontractor, or similar person or entity; or
2. any Employee acting alone or in collusion with any other employee more than 30 days following the termination of such **Employee**. **Legal Fees, Costs or Expenses**

The Underwriters shall not be liable for **Loss** or Expenses incurred or paid by an **Insured** in defending or prosecuting any legal proceeding or claim, provided that this Exclusion shall not apply to the coverage provided under the Expense Coverage insuring agreement;

**Reason for Dispute:** Beazley maintains that, pursuant to Tennessee law, the language of exclusions in an insurance policy, if clear and unambiguous, must be applied as written. *CapWecalth Advisors, LLC v. Twin City Fire Ins. Co.*, 665 F. Supp. 3d 862, 879 (M.D. Tenn. 2023), aff'd, No. 23-5359, 2024 WL 1134647 (6th Cir. Mar. 15, 2024) (the "ultimate duty of the Court is to enforce the words of the contract (the Policy) as written"); *Ludlow v. Life & Cas. Ins. Co. of Tenn.*, 31 Tenn. App. 508, 511, 217 S.W.2d 361, 362 (1948) ("if the language of the exclusion clause in the policy in question is not ambiguous, it is the duty of the court to give effect to the contract as written"). Accordingly, only the language of the relevant exclusions in the Beazley Policy should be provided to the jury, and, thus, Beazley objects to IP's proposed instruction.

IP disputes this instruction because it simply restates policy provisions, but does not provide the jury with instructions as to how exclusions in insurance policies are to be constructed.  Moreover, there is no evidence in the record that purports to support certain itemized exclusions, and it would be inappropriate to ask the jury to consider policy exclusions for which there is no evidence. IP submits its instruction, in Section B above, provides the jury with guiding authority on the proper construction of policy exclusions.

## II.    SUBROGATION

The insurance policy provides that the insured, International Paper, "shall do everything necessary to secure and preserve" Beazley's subrogation rights. A subrogation right is the right of an insurer to seek recovery of amounts it pays under an insurance policy from one or more third parties that the insured has rights to recover damages from in connection with the loss. For example, if a third party negligently drives a vehicle into an insured property, and the insurance company that insures the building pays the insured for its loss, the rights of the insured to recover against the third party who caused the damage are transferred to the insurance company to the extent of its payment. An insured impairs those rights if it gives up those rights in a settlement without the consent of the insurance company. If you find that International Paper materially breached the insurance policy by impairing Beazley's subrogation rights, International Paper has forfeited its rights under the policy and you should find in favor of Beazley.

*See, e.g., Hayes Family P'ship v. Tenn. Farmer Mut. Ins. Co.*, 683 S.W.3d 754, 761-62 (Tenn. Ct. App. 2023); *Ky. Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 497-98 (Tenn. Ct. App. 1999).

**Reason for Dispute:**  Beazley proposed this instruction if the Court denies Beazley's pending motion for summary judgment and leaves to the jury the issues relating to Beazley's subrogation rights and International Paper's waiver argument relating thereto. IP disputes this instruction because, inter alia, it misleadingly quotes only a part of the language of the subrogation condition of the Beazley policy.  IP submits its subrogation and waiver instructions in Section B above.

### III.    WAIVER OF SUBROGATION RIGHTS

International Paper contends that Beazley waived its subrogation rights. An insurance company may waive a provision in an insurance policy by the acts, representations, or knowledge of its agents. A waiver is an intentional relinquishment of a known right. In order for an insurance company to waive its rights, there must be a clear, unequivocal, and decisive act of the company, which shows a determination not to have the benefit intended. A waiver may be proven by an express declaration, by acts and declarations manifesting an intent and purpose not to claim the right, or by conduct. To prove a waiver by conduct, the record must show conduct on the part of the insurance company which is clearly inconsistent with an intention to insist upon a strict compliance with the provision at issue. International Paper has the burden of proving a waiver by a preponderance of the evidence.

*Ky. Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 498-99 (Tenn. Ct. App. 1999).

**Reason for Dispute:** Beazley maintains that there is no basis to find a waiver here. *See Kentucky Nat. Ins. Co. v. Gardner*, 6 S.W.3d 493, 499 (Tenn. Ct. App. 1999) ("After carefully reviewing the evidence presented in this case, we conclude that the evidence preponderates against a finding that [the insurer] waived its right to insist upon compliance with the policy's subrogation provision" where the insurer was aware of the underlying litigation against the tortfeasor but took no position and did not intervene).  Rather than silence—which the insurer in *Gardner* chose—Beazley never consented to the settlement, and, instead, it expressly reserved its rights, including with respect to whether IP prejudiced any potential subrogation rights.  By reserving the exact right it relies on now, there is no basis upon which an instruction for waiver would be appropriate. *See id.*

IP submits the jury instruction in Section B above on waiver and subrogation, based on the Tennessee Pattern Jury Instructions and binding authority on the topics.

## IV.   DEFINITION OF "LOSS" UNDER THE POLICY

The Beazley Policy includes the following "Loss" definition: "means the direct financial loss."

**Reason for Dispute:** Beazley contends that Tennessee law is silent on this issue, and consistent with Beazley's view regarding the "Policy Exclusions" jury instruction above, Beazley maintains that this instruction, related to the definition of "Loss" under the Policy, should simply state the definition of "Loss" as explicitly defined in the Policy—i.e., "direct financial loss." As outlined in Section B above, IP seeks to include testimony from Beazley's corporate designee regarding the definition of "Loss" under the Policy.

April 18, 2024

*s/John Sylvester*
John M. Sylvester (Pro Hac Vice)
Laura K. Veith (Pro Hac Vice)
Nathan Townsend (Pro Hac Vice)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
(412)-355-6500
John.sylvester@klgates.com
Laura.veith@klgates.com
Nathan.townsend@klgates.com

Jason W. Callen
TN Bar #015076
K&L Gates LLP
501 Commerce Street
Suite 1500
Nashville, TN 37203
(615) 780-6700
Jason.callen@klgates.com

*Counsel for International Paper Company*

*s/ Gene Murphy*
Bradford D. Box (TN Bar #16596)
Jerry Kizer (TN Bar #7652)
Rainey Kizer Reviere & Bell PLC
209 East Main Street
Jackson, TN 38301
(731) 426-8142
bbox@raineykizer.com

Gene Murphy (*Pro Hac Vice*)
Robinson & Cole LLP
777 Brickell Avenue, Suite 680
Miami, FL 33131
(786) 725-4110
emurphy@rc.com

William Daley (*Pro Hac Vice*)
Robinson & Cole LLP
One Boston Place, 25th Floor
Boston, MA 02108
(617) 557-5996
wdaley@rc.com

*Counsel for Beazley Insurance Company, Inc.*